IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., *et al.* | ) | Case No. 90-932 & 90-933 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtor. | ) | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| | ) | |
| RAMON E. O'NEILL | ) | Civil Action No. 06-568 (SLR) |
| BROWNIE N. INMAN | ) | Civil Action No. 06-569 (SLR) |
| J. TRIGG ADAMS | ) | Civil Action No. 06-570 (SLR) |
| | ) | |
| Appellants, | ) | Consolidation pending[1] |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **Objections due:  October 10, 2006** |
| CONTINENTAL AIRLINES, INC., *et al.* | ) | |
| | ) | |
| Appellees, | ) | |
| | ) | |

-------------------------------------------------------------x

## MOTION OF APPELLEE CONTINENTAL AIRLINES, INC. FOR AN ORDER (I) DISMISSING APPEALS, (II) AWARDING DAMAGES PURSUANT TO F.R.A.P. 38 AND BANKRUPTCY RULE 8020, AND (III) ENJOINING APPELLANTS

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (Delaware Bar No. 2847)
Joseph M. Barry (Delaware Bar No. 4221)
Kenneth J. Enos (Delaware Bar No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jbarry@ycst.com

Counsel to Continental Airlines, Inc.

Dated: September 29, 2006

---

[1]  On September 21, 2006, Continental filed a motion to consolidate these appeals.

Continental Airlines, Inc. ("Continental"), as an appellee herein, hereby moves this Court for an order (i) dismissing the above-captioned appeals (collectively, the "Appeals"), (ii) determining that the Appeals are frivolous, (iii) awarding damages to Continental in accordance with Rule 38 of the Federal Rules of Appellant Procedure (the "F.R.A.P.") and Rule 8020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (iv) enjoining the appellants. In support of the Motion, Continental respectfully states as follows:

## PRELIMINARY STATEMENT

Industrial pioneer Henry Ford's most famous and oft-cited quote is "Failure is the opportunity to begin again more intelligently." The appellants seem to have heeded a tortured version of this famed advice and used their failures as an opportunity to begin again. As this Court recognized the first time it adjudicated these issues in the appellants' prior appeals, "[t]he underlying dispute has a long and convoluted procedural history." *Adams v. Baldridge (In re Continental Airlines, Inc.)*, Civil Action No. 02-484 (SLR), at 2 (D. Del. March 31, 2003). So convoluted, in fact, that the appellants have come full circle: they lost in the United States Bankruptcy Court (the "Bankruptcy Court") in January 2002; lost before this Court in March 2003; lost before the United States Court of Appeals for the Third Circuit (the "Circuit Court") in March 2004; and had their petitions for *writ of certiorari* denied by the United States Supreme Court in December 2004. And here they are again, attempting to litigate the very same issue as if the nearly three years of appellate practice – at a cost of tens of thousands of dollars to Continental – never happened. The appellants' actions are nothing short of harassment and must be stopped.

## BACKGROUND

The background of this dispute has been stated with varying degrees of specificity in a number of reported and unreported opinions of the Bankruptcy Court, this Court and the Circuit Court. *See Air Line Pilots Association v. Continental Airlines, LLP Claimants (In re Continental*

*Airlines, Inc.)*, 125 F.3d 120, 124 (3d Cir. 1997) ("*Continental I*"); *In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr. D. Del. 1999), *affirmed by Eastern Pilots Merger Committee v. Continental Airlines*, 1999 U.S. Dist. LEXIS 23029 (D. Del. 1999), *affirmed by In re Continental Airlines, Inc.*, 279 F. 3d 226, 231-32 (3d Cir. 2002) ("*Continental II*"). This Court's prior adjudication of the appellants' appeals characterized those appeals as "legally incorrect," "untenable," "moot," and in the case of appellant Inman, untimely. *See Adams v. Baldridge*, C.A. No. 02-484 (D. Del. March 31, 2003) *rehearing denied*, April 28, 2003; *O'Neill v. Baldridge*, C.A. No. 02-375 & 02-479 (D. Del. March 31, 2003) *rehearing denied*, April 28, 2003; *Inman v. Baldridge*, C.A. No. 02-399 & 02-490 (D. Del. March 31, 2003). And most recently, in a still further perpetuation of related litigation by the appellants' former colleagues who formed yet another splinter group, the Eastern Pilots Merger Committee, Inc. (the "EPMC"), this Court recounted the background facts of this dispute before granting Continental's appeal and characterizing the EPMC's efforts as "futile," "not laudable," and "a waste of the assets of the estate, as well as a tremendous waste of judicial resources." *In re Continental Airlines, Inc.*, 2004 U.S. Dist. LEXIS 26644, *14-15 (D. Del. December 13, 2004).

In light of the Court's familiarity with this dispute and its prior admonitions regarding the merits of the appellants' efforts, Continental has limited the facts recited herein.

### The CBA, Eastern's and Continental's Bankruptcies and the Kasher Arbitration

On February 23, 1986, Eastern Air Lines ("Eastern") and the Air Line Pilots Association International ("ALPA") ratified a collective bargaining agreement (the "CBA"). The CBA included certain Labor Protective Provisions ("LPPs"), that required, in the event of a merger, integration of Eastern's pilot seniority list with those of the merged carrier. Shortly thereafter, Continental's parent acquired Eastern. Believing that this acquisition constituted a merger, ALPA requested arbitration to integrate Continental's and Eastern's seniority lists.

2

Eastern filed for protection under chapter 11 of the Bankruptcy Code in March 1989 and proceeded to arbitration with ALPA in April 1991 (the "Kasher Arbitration"). In the months between Eastern's chapter 11 filing and the April 1991 commencement of the Kasher Arbitration, Continental filed its own chapter 11 bankruptcy petitions.

### The ALPA/LPP Claimants Litigation and the Confirmation Order

In September 1991, ALPA filed claims in Continental's bankruptcy cases based upon, *inter alia*, an asserted right to seniority integration under the LPPs. In response, Continental filed an adversary proceeding seeking injunctive and declaratory relief contending that seniority integration was not feasible and that the claims represented nothing more than dischargeable general unsecured claims.

In February, 1993, the Bankruptcy Court entered orders finding that the equitable remedy of seniority integration constituted a dischargeable, general unsecured claim (the "February 1993 Orders"). On April 16, 1993, the Bankruptcy Court entered an order confirming (the "Confirmation Order") Continental's chapter 11 plan of reorganization which, among other things, enjoined the LPP arbitration. Both the February 1993 Orders and the Confirmation Order were appealed by ALPA and a group of former Eastern pilots referred to in the prior proceedings as the "LPP Claimants". During the pendency of the appeals, a second group of former Eastern pilots – the EPMC – also appeared and participated in the appeal. Prior to a decision on the then-pending appeals, Continental and ALPA settled the LPP litigation (the "ALPA Settlement").

This Court ultimately affirmed the Bankruptcy Court's rulings in all respects, save for the Bankruptcy Court's injunction of the arbitration proceedings. Continental and the LPP Claimants both appealed the District Court's rulings to the Circuit Court, which affirmed the District Court rulings (namely, *Continental I*).

3

**The Addington Group Litigation**

On or about October 23, 1998 – in contempt of the prior orders of, among others, this

Court – a civil action styled *Doyle Addington, et al. v. Continental Airlines, Inc.*, Civil Action No.

98-4858 (MTB), was filed in New Jersey (the "New Jersey Action") by a group of former Eastern

pilots and the EPMC (collectively, the "Eastern Pilots") seeking a declaratory judgment allowing

the Eastern Pilots to (i) specifically enforce any award of seniority integration against Continental,

and (ii) assert against Continental any damages arising from the collective bargaining agreement

arising from and after the effective date of Continental's confirmed Plan.  On December 16, 1998,

Continental sought and was awarded sanctions against the Eastern Pilots with respect to their

contempt of the orders of, among others, this Court by filing the New Jersey Action.  This Court

subsequently affirmed the Bankruptcy Court's ruling and the imposition of sanctions.  *See Eastern*

*Pilots Merger Committee v. Continental Airlines*, 1999 U.S. Dist. LEXIS 23029 (D. Del. 1999), as

did the Circuit Court, *see Continental II*, 279 F. 3d at 231-32.  The EPMC sought *certiorari* to the

Supreme Court which was denied.  *See Eastern Pilots Merger Committee v. Continental Airlines*,

123 S. Ct. 345 (2002).

**The Baldridge Class Action**

On October 12, 1999, a group of LPP Claimants that did not accept the ALPA Settlement

(the "Baldridge Class") commenced a class action adversary proceeding in Continental's chapter

11 cases styled *Baldridge v. Continental Airlines Holdings, Inc. (In re Continental Airlines, Inc)*,

Ch. 11 Case No. 90-932, Adv. No. A-99-412 (the "Baldridge Action").  The Baldridge Action

essentially sought declaratory judgment as to whether the one-year cap set forth in section

502(b)(7) of the Bankruptcy Code governed the calculation of the LPP Claimants' money

damages related to their LPP claims, if any.

4

A.    **Class Certification**

On October 26, 1999, the Baldridge Class filed a motion with the Bankruptcy Court seeking class certification (the "Class Certification Motion"). On December 13th and 14th, appellant Adams filed opposition papers to the Class Certification Motion. After conducting a hearing on notice, on February 3, 2000, the Bankruptcy Court issued its *Opinion on Motion for Class Certification and Order Granting Class Certification* (the "Class Certification Opinion") certifying the Baldridge Class as a non-opt-out class. *Baldridge v. Continental Airlines Holdings, Inc. (In re Continental Airlines, Inc.)*, Ch. 11 Case No. 90-932, Adv. No. A-99-412 (Bankr. D. Del. February 3, 2000). The Bankruptcy Court's Class Certification Opinion found that the requirements of Fed.R.Civ.P. 23(a) and (b)(2) had been satisfied and set forth specific findings of fact and conclusions of law in that regard. On July 10, 2001, the Bankruptcy Court entered an order clarifying the Class Certification Opinion which appellant Adams – over 4 months later – objected to on the basis that the Baldridge Class was underinclusive.[2]

B.    **The Baldridge Settlement**

The Bankruptcy Court ruled on October 12, 2000, that the claims of the members of the Baldridge Class, if any, – including all three appellants – were limited by section 502(b)(7) of the Bankruptcy Code; a ruling that the Baldridge Class appealed. *See Baldridge v. Continental Airlines Holdings, Inc. (In re Continental Airlines, Inc.)*, Civil Action No. AP-00069 (D. Del. 2000). The parties thereafter settled and on October 16, 2001, the Baldridge Class filed a motion seeking preliminary approval of the settlement (the "Baldridge Settlement"). On or about November 26, 2001, notice of the Baldridge Settlement and the hearing scheduled thereon was sent to each Baldridge Class member, including all three appellants. Pursuant to the Baldridge

---

[2] A copy of appellant Adams' November 5, 2001 filing in this regard is attached hereto as Exhibit A.

Settlement, each individual LPP claimant would be entitled to an allowed general unsecured claim in an amount 2 to 3½ times each Baldridge Class member's former annual salary (the "Settled Claim Amount"). As a result, in every instance, without exception, the Settled Claim Amount far exceeded the one-year wage-cap the LPP claims would have been subject to pursuant to the Bankruptcy Court's October 12, 2000 opinion.[3]

Each of the appellants objected to the Baldridge Settlement.[4] In his written objection, appellant Adams specifically opposed the Baldridge Settlement on the grounds that not all class members were notified and/or that the Baldridge Class was underinclusive. *See, e.g.*, Exhibit B, at ¶ 2, p. 3 ("His failure to contact ANY of the 60-plus pilots not in his original lawsuit group…condemns his to nothing short of gross malfeasance and, quite possibly, criminal intent to defraud…"). Neither appellants Inman or O'Neill directly raised the underinclusiveness of the Baldridge Class in their objections to the Baldridge Settlement.

At a hearing on January 31, 2002, to consider approval of the Baldridge Settlement and the appellants' objections thereto, appellant O'Neill personally appeared and argued the underinclusiveness of the class to the Court.[5] Following a lengthy presentation by Mr. O'Neill regarding class membership issue, the Bankruptcy Court expressly overruled all objections to the Baldridge Settlement, including the appellants'. *See id.* at p. 68 ("MR. BRADY: I did want to confirm that in approving the settlement, the Court is overruling all of the objections filed to the settlement. THE COURT: I am."); *id.* at p. 69 ("THE COURT: [B]ased on that and again my overruling the objections, I hereby enter the order approving the settlement agreement…"). At the

---

[3] As noted, *infra*, both this Court and the Circuit Court affirmed the Bankruptcy Court's conclusion that the Baldridge Settlement was fair in all respects. *See Adams v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-2376, at p. 7 (3d Cir. March 5, 2004) ("the Bankruptcy Court did not abuse its discretion in finding that the settlement was fair."); *O'Neill v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-2374 & 03-2375, at p. 8 (3d Cir. March 5, 2004) (same).

[4] A copy of the appellants' objections to the Baldridge Settlement are annexed hereto as Exhibits B through D.

[5] *See* Transcript of Hearing, *In re Continental Airlines, Inc.*, Ch. 11 Case No. 90-932, Adv. No. 99-412, at pp. 6-19; 24-30 (Bankr. D. Del. January 31, 2002), a copy of which is annexed hereto as Exhibit E.

conclusion of the January 31, 2002 hearing, the Bankruptcy Court entered its *Final Judgment and Order of Dismissal* (the "Settlement Order") approving the Settlement Agreement.[6]  The Settlement Order provides, in pertinent part, the following:

 a.     Appellants are all members of the Baldridge Class (*see* Settlement Order, at ¶ 2);

 b.     The Baldridge Class "shall be deemed to have released and forever discharged each and every  Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Release Parties." (Settlement Order, at ¶ 6);

 c.     "[T]he Class and anyone claiming through any of them will be forever barred and enjoined from commencing, instituting or prosecuting any action or other proceeding in any court of law or equity, arbitration tribunal or administrative or other forum directly, representatively or derivatively against any of the Released Parties as to any of the Settled Claims." (Settlement Order, at ¶ 10).

In order to participate in the Baldridge Settlement, Baldridge Class members such as the appellants were required to file a claim form and release no later than April 3, 2002.  None of the appellants did so.

**C.     Post-Baldridge Settlement Litigation**

     *I.     Motion to Compel Appellant O'Neill's Compliance*

On February 12, 2002, appellant O'Neill appealed entry of the Settlement Order and, on February 19, 2002, filed a request with the Bankruptcy Court that his "appeal be put on hold until local counsel is retained and the arbitration in progress determines the class plaintiffs and award."[7]  In other words, notwithstanding the Baldridge Settlement, appellant O'Neill sought to recommence the Kasher Arbitration.[8]

---

[6]  A copy of the Settlement Order is annexed hereto as Exhibit F.

[7]  A copy of Mr. O'Neill's February 19, 2002 filing is attached hereto as Exhibit G.

[8]  As the Court is aware, the Circuit Court subsequently determined that "O'Neill's right to arbitration has been mooted by the settlement." *See O'Neill,* at p. 9.

045085.1006

On March 6, 2002, Continental filed its *Motion of Continental to Enforce Compliance with Court Order and Objection of Continental to Request for Extension of Deadline from Rule 8006* (the "Motion to Compel O'Neill").[9] In the Motion to Compel O'Neill, Continental sought to compel appellant O'Neill to comply with the Settlement Order's mandate and refrain from seeking to recommence the Kasher Arbitration. Continental additionally sought an order from the Bankruptcy Court "enforcing its Final Judgment and Order of Dismissal and confirming that O'Neill is enjoined from seeking an arbitration on any issue related to his LPP Claim." Motion to Compel O'Neill, at ¶ 9. At the hearing to consider the Motion to Compel O'Neill, appellant O'Neill again personally appeared and raised, among other things, the alleged underinclusiveness of the Baldridge Class.[10] On May 2, 2002, the Bankruptcy Court entered an order granting the Motion to Compel O'Neill (the "Order to Compel").[11] Specifically, the Order to Compel enjoined appellant O'Neill from perpetuating any proceeding to enforce the LPPs and from advising other Baldridge Class members to forego participating in the Baldridge Settlement based on appellant O'Neill's allegations on appeal or otherwise.

## II.    *Motion to Expand Class Membership*

On April 25, 2002, the Baldridge Class filed its *Motion of Class Action Plaintiffs for Finding that Newly Identified Former EAL Pilots are Members of the Class, for Entry of Order Requiring CAL to Fund the Settlement for the New Class Members, for 90 Day Extension of Time to Provide Notice and for Approval of Form of Notice* (the "Class Expansion Motion").[12] As one might guess from the Marie de Sevigne-like title, the Class Expansion Motion sought a ruling that

---

[9] A copy of the Motion to Compel O'Neill is annexed hereto as Exhibit H.

[10] *See* Transcript of Hearing, *In re Continental Airlines, Inc.*, Ch. 11 Case No. 90-932, Adv. No. 99-412, at p. 20 (Bankr. D. Del. April 2, 2002), a copy of which is annexed hereto as Exhibit I ("Right now, I've got 1200 names that Mr. Myles refused to represent.").

[11] A copy of the Order to Compel is annexed hereto as Exhibit J.

[12] A copy of the Class Expansion Motion, without exhibits, is annexed hereto as Exhibit K.

256 newly identified former Eastern pilots were members of the Baldridge Class and relief related

thereto. In the Class Expansion Motion, the Baldridge Class outlines in painstaking detail the

measures taken to ensure that every potential member of the Baldridge Class was identified. *See*

Class Expansion Motion, at ¶¶ 5-7.[13]  On June 14, 2002, over Continental's objection, the

Bankruptcy Court granted the relief requested in the Class Expansion Motion and permitted

several hundred more former Eastern pilots to be included in the Baldridge Class.

**D.**    **Appellants' Prior Appeals**

> **I.**    ***Appellant Inman's Prior Appeal***

On February 22, 2002, appellant Inman appealed entry of the Settlement Order. On March

31, 2003, this Court dismissed the appeal and affirmed the Bankruptcy Court's entry of the

Settlement Order, opining as follows:

> Appellant's reading of the Third Circuit's decision is legally
> incorrect, as is abundantly clear from the procedural history recited
> above. The Third Circuit limited the scope of the arbitrable question
> to whether the Eastern pilots have established seniority integration
> rights. The Third Circuit further determined that if those rights were
> established, they would be satisfiable by the payment of money
> damages. The bankruptcy court limited the amount of money
> damages to one year's wages. The Settlement Agreement at issue
> increased the maximum claim award by two- or three-fold...The
> Settlement Agreement moots the arbitration proceeding by
> recognizing the Eastern pilots' claims to seniority integration and
> gives to members of the Baldridge LPP Class more value than that
> provided for in the bankruptcy court's summary decision...Not only
> is appellant's position untenable, but the appeal is moot, given the
> withdrawal of the pending appeals and the distribution of
> consideration to class members, acts in furtherance of the settlement
> which cannot be undone.

---

[13] The class membership reconciliation outlined in the Class Expansion Motion is <u>exactly</u> the relief requested in the
Pilot Motions to Compel (as defined below) that were filed over 4 years later and are the subject of these Appeals.

*Inman v. Baldridge (In re Continental Airlines, Inc.)*, Civil Action No. 02-399 & 02-490 (SLR), at pp. 7-8 (D. Del. March 31, 2003).[14] This Court also found appellant Inman's appeal to be untimely. *See id.* at 8. Appellant Inman did not appeal this Court's decision.

## II.    *Appellant Adams' Prior Appeal*

On February 12, 2002, appellant Adams appealed the entry of the Settlement Order arguing "essentially that the Baldridge LPP Class does not have the authority to enter into an agreement with Continental that overrides the September 27, 1997 Third Circuit Court of Appeals decision." *Adams v. Baldridge (In re Continental Airlines, Inc.)*, Civil Action No. 02-484 (SLR), at p. 7 (D. Del. March 31, 2003).[15] This Court dismissed appellant Adams' appeal and affirmed entry of the Settlement Order on identical grounds as it did the Inman appeal, except for the issue of timeliness. On April 28, 2003, this Court denied appellant Adams' request for rehearing.

Appellant Adams appealed to the Circuit Court. On appeal, appellant Adams raised, among other things, the alleged underinclusiveness of the Baldridge Class. *See Adams v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-2376, at p. 6 (3d Cir. March 5, 2004) ("Adams' objection to the class certification was based on his contention that the class was underinclusive.").[16] The Circuit Court affirmed this Court's dismissal of appellant Adams' appeal and found that "the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definition to file a claim by April 3, 2002. Thus, [Adams'] only objections to the class certification were remedied by the Bankruptcy Court." *Id.* at 6-7. The Circuit Court also affirmed on other grounds. Appellant

---

[14] A copy of this Court's decision is annexed hereto as Exhibit L.

[15] A copy of this Court's decision is annexed hereto as Exhibit M.

[16] A copy of the Circuit Court's decision is annexed hereto as Exhibit N.

Adams' subsequent petitions for rehearing *en banc* and for *writ of certiorari* to the United States Supreme Court were denied.

### III.    *Appellant O'Neill's Prior Appeal*

On February 12, 2002, appellant O'Neill also appealed entry of the Settlement Order. This Court dismissed appellant O'Neill's appeal and affirmed entry of the Settlement Order on identical grounds as it did the Adams appeal.[17]  Also like the Adams appeal, on April 28, 2003, this Court denied appellant O'Neill's request for rehearing.

Appellant O'Neill also appealed to the Circuit Court. On appeal, appellant O'Neill raised, among other things, the alleged underinclusiveness of the Baldridge Class. *See O'Neill v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-2374 & 03-2375, at p. 7 (3d Cir. March 5, 2004) ("O'Neill did object to the class certification at the hearing, but he only objected to the extent that he felt that class was underinclusive, as it failed to include certain pilots...").[18]  In fact, not only did appellant O'Neill argue the underinclusiveness issue, he filed a motion before the Circuit Court seeking to compel Continental to produce documents supporting his claim that the Baldridge Class was underinclusive.[19]  That motion was denied and the Circuit Court affirmed this Court's dismissal of appellant O'Neill's appeal and found that "[t]o the extent that O'Neill argues that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definition to file a claim by April 3, 2002.  Thus, this objection to the class certification was remedied by the Bankruptcy Court." *Id.* at p. 8.  The Circuit Court also affirmed

---

[17] A copy of this Court's decision is annexed hereto as Exhibit O.

[18] A copy of the Circuit Court's decision is annexed hereto as Exhibit P.

[19] A copy of appellant O'Neill's motion before the Circuit Court (without exhibits) is annexed hereto as Exhibit Q.

11

on other grounds. Appellant O'Neill's subsequent petitions for rehearing *en banc* and for *writ of certiorari* to the United States Supreme Court were denied.

## E.    Relitigation of the Class Membership Issue

On June 13, 2006, appellant Inman filed his *Motion to Compel and Compliance with January 31, 2002 Order* (the "Inman Motion to Compel") and on July 11, 2006 filed his *Motion of Objection to the Class Action Plaintiff's Stipulations for Motion to Reopen* (the "Inman Objection," and together with the Inman Motion to Compel, the "Inman Motions").[20] Notwithstanding that appellant Inman objected to the Baldridge Settlement in January 2002 and appealed entry of the Settlement Order in February 2002, appellant Inman states in the Inman Motion to Compel

> I was recently made aware, that a final 'settlement' was reached, and I downloaded the settlement from the internet. At no time in the past, did I receive a copy of this settlement with its respective claim form, or was made aware that such forms were sent....[the class representatives] should have notified me of this settlement.

Inman Motion to Compel, at ¶ 5. The Inman Motion to Compel requests that appellant Inman be permitted to participate in the Baldridge Settlement and requests that the Bankruptcy Court order a reconciliation of the class membership list due to alleged underinclusiveness. The Inman Objection is devoted almost entirely to the alleged underinclusiveness of the Baldridge Class.

On July 11, 2006, appellant O'Neill filed his *Motion to Compel Compliance with January 31, 2002 Order and Motion for Order Reopening Adversary Proceeding* (the "O'Neill Motion to Compel").[21] In the O'Neill Motion to Compel, appellant O'Neill concedes that "I appealed the settlement with an unsuccessful conclusion terminating at the Supreme Court level on March 09, 2004." O'Neill Motion to Compel, at ¶ 6. Appellant O'Neill further concedes that he failed to file a claim to participate in the Baldridge Settlement by the applicable deadline – over four years ago.

---

[20]   A copy of the Inman Motions are annexed hereto as Exhibit R.

*See id.* at ¶¶ 7-8. Nonetheless, appellant O'Neill requested that the Bankruptcy Court reopen the Baldridge Action for, ostensibly, the purpose of ordering Continental to award O'Neill a recovery under the Baldridge Settlement.

On July 18, 2006, appellant Adams filed his *Motion to Compel and Compliance with January 31, 2002 Order* (the "Adams Motion to Compel," and collectively with the Inman Motion to Compel and the O'Neill Motion to Compel, the "Pilot Motions to Compel").[22]  In the Adams Motion to Compel, appellant Adams concedes that he "objected to the idea of the Settlement verbally and in my briefs, but the Class counsel prevailed.  And the settlement was ordered." Adams Motion to Compel, at ¶ 4.  Appellant Adams further acknowledged in the Adams Motion to Compel that he has already argued and lost the purported underinclusiveness of the Baldridge Class and that he "declined to participate in the Settlement…" *Id.* at ¶ 4.  Despite these concessions, appellant Adams argues that

> no one has made arrangements for my forthcoming settlement award…[t]he appeal opinion stated that the settlement order 'remedied' my objection to the class certification.  But I have had no 'remedy,' since I have not been paid the settlement, nor have any other pilots who failed to be properly notified, nor even listed on the documents upon which the Court based the settlement agreement.

*Id.* at ¶ 5.  Incredibly, appellant Adams argues that the Baldridge Settlement is "null and void, in which event the only remedy is to arbitrate the composition of the list in its proper venue, under the Railway Labor Act." *Id.* at ¶ 6.  In other words, appellant Adams argues – nearly 5 years after the Baldridge Settlement was first agreed to – that arbitration under the LPPs is still a viable remedy.

The Bankruptcy Court held a hearing on July 31, 2006 (the "2006 Hearing"), to consider, among other things, the Pilot Motions to Compel.  Appellant Inman appeared personally at the

---

[21]  A copy of the O'Neill Motion to Compel is annexed hereto as Exhibit S.

[22]  A copy of the Adams Motion to Compel is annexed hereto as Exhibit T.

2006 Hearing and appellant Adams appeared telephonically.  Appellant O'Neill did not appear at the 2006 Hearing.  Predictably, appellants Adams and Inman mainly argued that the Court should compel a further reconciliation of the Baldridge Class membership due to its purported underinclusiveness.[23]  At various times during the 2006 Hearing, appellant Adams argued that the class membership list was "not true and accurate…and they [Continental and the Baldridge Class] knew it was not to be complete" (*id.* at p. 12), that the class membership was a "lie and a fraud" (*id.*), that the class membership list was "fraudulent" (*id.* at p. 19) and that the Baldridge Class and Continental "lied and they got away with it" (*id.*).  At the 2006 Hearing, the Bankruptcy Court orally ruled that (i) all class membership issues were previously litigated and affirmed on appeal (*see id.* at p. 19), and (ii) to the extent not raised in previous appeals, the appellants were precluded from raising them now.  *See id.* at pp. 19-20.  On July 26, 2006, the Bankruptcy Court entered an order (the "2006 Order") incorporating the oral rulings made at the 2006 Hearing and denying, among other things, the Pilot Motions to Compel.[24]  It is from the 2006 Order that the appellants appeal.

**G.     The Instant Appeals**

Appellant O'Neill characterizes the issue on appeal as the Bankruptcy

> Court's failure to reopen this case when overwhelming evidence in the
> record has been pointed out (totally ignored by this Court) proving the
> Settlement Agreement is a scheme and a fraud.  The Settlement Agreement
> is a product of fraudulent testimony.

Appellant O'Neill Statement of Issues on Appeal, at p. 1.[25]  Nearly every item identified by appellant O'Neill on his designation of the record on appeal appears to relate solely to the Baldridge Class membership and nothing else.

---

[23]  *See* Transcript of Hearing, *In re Continental Airlines, Inc.*, Ch. 11 Case No. 90-932, at p. 9-10, 12-13, 17-20 (Bankr. D. Del. July 21, 2006), a copy of which is annexed hereto as Exhibit U.

[24]  A copy of the 2006 Order is annexed hereto as Exhibit V.

Appellant Adams similarly states that the issue on appeal is the Bankruptcy "Court's failure to reopen this case when overwhelming evidence in the record has been pointed out but totally ignored by this Court, proving that the Settlement Agreement was obtained by fraudulent testimony." Appellant Adams Statement of Issue on Appeal, at p. 1.[26] Nearly every item identified by appellant Adams on his designation of the record on appeal appears to relate solely to the Baldridge Class membership and nothing else.

Appellant Inman similarly characterizes the issue on appeal as the Bankruptcy

> Court's failure to reopen this case when overwhelming evidence in the record has been pointed to (sadly ignored by this Court) proving that the Settlement Agreement is a deceptive and misleading mechanism to defraud a majority of LPP Claimants of the settlement which this Court has otherwise recognized and wisely allowed. Approximately 1500 LPP Claimants have not received the settlement to which they are entitled...

Appellant Inman Statement of Issues on Appeal, at p. 1.[27] Nearly every item identified by appellant Inman on his designation of the record on appeal appears to relate solely to the Baldridge Class membership and nothing else.

On September 21, 2006, Continental filed a motion to consolidated the Appeals and to be excused from the mandatory mediation practices of this Court. On September 29, 2006, appellant O'Neill filed papers in opposition to Continental's request to be excused from mediating this dispute (the "O'Neill Response").[28] Appellant O'Neill alleges throughout the O'Neill Response that the formation and membership of the Baldridge Class constitutes a fraud on the Court and accuses Continental and the Baldridge Class representatives of perjury. Incredibly, O'Neill alleges

---

[25] A copy of appellant O'Neill's Statement of Issues on Appeal and Designation of the Record is annexed hereto as Exhibit W.

[26] A copy of appellant Adams' Statement of Issues on Appeal and Designation of the Record is annexed hereto as Exhibit X.

[27] A copy of appellant Inman's Statement of Issues on Appeal and Designation of the Record is annexed hereto as Exhibit Y.

[28] A copy of appellant O'Neill's response (without exhibits) is annexed hereto as Exhibit Z.

15

that the Circuit Court's denial of his appeal supports his beliefs as to the alleged

underinclusiveness of the Baldridge Class. *See* O'Neill Response, at p. 3. In conclusion, appellant

O'Neill alleges that "[t]he irrefutable evidence demonstrates the clear intend to defraud the select

members of the Class. I expect the Court to act accordingly." O'Neill Response, at p. 17.

## ARGUMENTS

## I.    *Res Judicata* Bars the Appellants' Claims

"*Res judicata* . . . [is] fundamentally concerned with protecting persons from the expense

of multiple lawsuits, conserving judicial resources, and enhancing reliance on judicial acts by

immunizing against the possibility of inconsistent decisions. . . The doctrine[ is] designed to limit

*subsequent* relitigation of . . . claims which were fully and fairly decided previously." *Coca-Cola*

*Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 654 F. Supp. 1419, 1431 (D. Del. 1987)

(citations omitted).[29] The Third Circuit has held that the party asserting *res judicata* must

"demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the

same parties or their privies and (3) a subsequent suit based on the same causes of action." *Id.* at

89 (quoting *United States v. Athlone Inds.*, 746 F.2d 977 (3d Cir. 1984)). *Res judicata* requires

"that a plaintiff present in one suit all the claims for relief that he may have arising out of the same

transaction or occurrence." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). The

Third Circuit has held that *res judicata* is "not a mere matter of technical practice or procedure"

but "a rule of fundamental and substantial justice." *Equal Employment Opportunity Commission*

*v. U.S. Steel Corp.*, 921 F.2d 489, 492 (3d Cir. 1990) (internal citations omitted). "*Res judicata*

---

[29] As used herein, the term *res judicata* is intended to encompass the principles of claim and issue preclusion. *See In re Peterson*, 332 B.R. 678, 683 n.4 (Bankr. D. Del. 2005) ("Res judicata can also refer to claim preclusion and issue preclusion generally."), citing cases.

avoids the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.*

Here, there can be no clearer application of the doctrine of *res judicata*: the same issue (class membership) is being litigated by the same parties notwithstanding that the Bankruptcy Court adjudicated that issue and was affirmed on appeal to both this Court and the Circuit Court. As a result, these Appeals are entirely without merit and should be dismissed.

## II.    The Appellants Lack Standing to Raise the Claims of Other Pilots

"Standing to appeal in a bankruptcy case is limited to 'persons aggrieved' by an order of the bankruptcy court." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 24 (3d Cir. 2004). A "person aggrieved" must establish that "the order of the bankruptcy court 'diminishes their property, increases their burdens, or impairs their rights.'" *Id. quoting In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000). Under this rubric, standing will be "denied to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order." *In re PWS Holding Corp.*, 228 F.3d at 249 (internal quotations omitted). "Only those whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an appeal." *Id.*

Here, it is undisputed that the appellants are all members of the Baldridge Class. With the exception of appellant Inman, it is not disputed that the appellants had notice of their rights under the Baldridge Settlement. Appellant Inman's claim in the Inman Motion to Compel that he did not know of the Baldridge Settlement is either an intentionally false statement or the product of a faulty memory since appellant Inman objected to and appealed the Baldridge Settlement. That the appellants failed to file claims to receive a recovery under the Baldridge Settlement by the April 3,

17

2002 deadline is similarly undisputed. Thus, the appellants have no claims – period – much less claims that are in any way affected by the 2006 Order.

The only issue raised on appeal involves the alleged failure of the Baldridge Class representatives and/or Continental to notify certain class members of the settlement and/or to include certain pilots in the Baldridge Class who were qualified under the class's definition. In other words, the appellants are arguing the alleged rights of other pilots, not their own. Indeed, none of the appellants' rights are in any way affected by the Bankruptcy Court's 2006 Order since the only rights the appellants seek to enforce are not their own. Accordingly, the appellants lack standing to pursue this appeal.

## III.    The Appeals are Frivolous and an Award of Damages Should Issue

An award of damages under F.R.A.P. 38 or Bankruptcy Rule 8020 is appropriate where an appeal is frivolous. *See PDM Enterprises, Inc. v. Cape May Foods, Inc.*, 301 F.3d 147 (3d Cir. 2002); *Huck ex rel. Sea Air Shuttle Corporation v. Dawson*, 106 F.3d 45 (3d Cir. 1997); *Nagle v. Alspach*, 8 F.3d 141 (3d Cir. 1993). "An appeal is frivolous if it is wholly without merit." *Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) (citation omitted). A court must apply this standard objectively in determining whether and appeal is frivolous. *See id.* (citation omitted). That the appellants are *pro se*, does not shield them from liability for filing a frivolous appeal. *See Kunz v. Saul, Ewing, et al.*, 200 B.R. 101, 107 (D. Del. 1996) ("a litigant's *pro se* status does not shield him or her from sanctions for filing a frivolous appeal.") *citing Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994); *Stelly v. Commissioner of Internal Revenue*, 761 F.2d 1113, 1116 (5th Cir. 1985).[30]

---

[30]  In *Kuntz*, this Court was particularly unsympathetic to the appellant's *pro se* status given the litigation experience he had amassed over the years. *See Kuntz*, 200 B.R. at 108. Notwithstanding his characterization of himself as an "unsophisticated litigant" at the January 2006 hearing, appellant Adams has filed no less than fifteen motions, briefs and pleadings in the various Courts of the this Circuit over the years and appeared and argued at a number of contested hearings. Mr. Adams and Mr. O'Neill have fully briefed a case before the Circuit Court and petitioned for *writ of certiorari* to the United States Supreme Court – acts which many licensed attorneys will never do. To be sure, the appellants are anything but "unsophisticated litigants."

Circumstances where an appeal is found to be wholly without merit include where a litigant's claims were determined to be frivolous by the district court in the first instance and where only unsupportable legal and factual conclusions that were found to be "patently wrong" and "st[ood] logic on its head" were offered on appeal (*see, e.g., Huck ex rel. Sea Air Shuttle Corporation v. Dawson*, 106 F.3d at 52), or circumstances where the "appeal appeared to have been doomed to failure from the moment the plaintiff-appellants' brief was filed…" *Nagle*, 8 F.3d at 144.

The appellants' claims on appeal are entirely without merit and, indeed, are doomed to fail since, as discussed above, these issues have already been fully and finally litigated up through and including petitions for *writ of certiorari* to the United States Supreme Court. There is simply no legal basis under which the appellants' claims – claims that have already been fully adjudicated and lost – can prevail on appeal. Thus, the appellants' claims are entirely without merit and are, *a fortiori*, frivolous.

Accordingly, Continental respectfully requests that this Court grant damages in an amount to be determined by separate application, but in an amount no less than double Continental's reasonable costs, including attorneys' fees and costs, incurred with respect to the Pilot Motions and these Appeals.

## IV.    The Court Should Enjoin the Appellants' Vexatious Litigation

Pursuant to its equitable powers, a district court can "enjoin a party who has '[a] history of litigation entailing 'vexatious, harassment and needless expense to [other parties]' and [who poses] an unnecessary burden on the courts and their supporting personnel.'" *Becker v. Dunkin' Donuts of America, Inc.*, 665 F.Supp. 211, 116 (S.D.N.Y. 1987) *quoting In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). "In such cases, 'the traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy of law, do not apply to the issuance of an injunction

against vexatious litigation.'" *Becker*, 665 F.Supp. at 216 *quoting In re Martin-Trigona*, 737 F.3d at 1262. Such an injunction is appropriate where dismissing a case "by itself, will not free the defendant or the court from the expense and aggravation of future actions." *Becker*, 665 F.Supp. at 116. Continental submits that such a remedy is appropriate here given the appellants' outright refusal to accept the finality of the numerous adverse rulings against them. The appellants' tireless but futile efforts over the past decade have cost Continental hundreds of thousands of dollars and have grossly wasted the judicial resources of the courts in this Circuit. Continental submits that this Court can and should enjoin the appellants from pursuing, in any tribunal, any claim related to Continental, the LPPs or the Baldrige Class as a remedy for their vexatious pursuit of that which has been already lost.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Continental respectfully requests that this Court enter an order (i) dismissing the Appeals, (ii) determining that the Appeals are frivolous within the meaning of Bankruptcy Rule 8020 and F.R.A.P. 38, (iii) awarding Continental just damages and double costs, (iv) enjoining the appellants, and (v) granting such other and further relief as this Court deems necessary and proper under the circumstances.

Dated: Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
       September 29, 2006

Robert S. Brady (Delaware Bar No. 2847)
Joseph M. Barry (Delaware Bar No. 4221)
Kenneth J. Enos (Delaware Bar No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jbarry@ycst.com

Counsel to Continental Airlines, Inc.

DB01:2203642.2          045085.1006

## CERTIFICATE OF SERVICE

I, Joseph M. Barry, Esquire, hereby certify that I am not less than 18 years of age and that on September 29, 2006, I caused a copy of the attached document to be served on the following parties by Federal Express or Hand Delivery, as indicated:

**VIA FEDERAL EXPRESS**

Mr. Brownie N. Inman, pro se
18905 SW 128 Ct.
Miami, FL 33177

Mr. Ramon E. O'Neill, pro se
7424 SW 129 Ct.
Miami, FL 33183

Mr. J. Trigg Adams, pro se
3824 Park Avenue
Miami, FL 33133

**VIA HAND DELIVERY**

Bruce E. Jameson, Esquire
Prickett Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Counsel for James Baldridge, *et al.*

Joseph M. Barry (Delaware Bar No. 4221)

Dated: September 29, 2006

# EXHIBIT

# A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

2001 NOV -5  AM 11: 32

U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:                                          )
                                                )
CONTINENTAL AIRLINES, INC., et. al.,)           Case No. 90-932
                                                )           Chapter 11
            Debtors                             )
_____)
                                                )
JAMES BALDRIDGE, WILLIAM MANN, )
and LARRY DUNN, individually, and    )
as representatives of a class of persons )
similarly situated who are referred to as )
the LPP CLAIMANTS,                      )
                                                )
            Plaintiffs,                      )           Adversary Proceeding
                                                )           No. A-99-412
VS.                                             )           Class Action
                                                )
CONTINENTAL AIRLINES HOLDINGS, )
INC., CONTINENTAL AIRLINES, INC.,  )
and SYSTEM ONE HOLDINGS, INC.      )
                                                )
            Defendants.                    )
_____)

## OBJECTION TO THE PROPOSED AMENDMENT TO
## FEBRUARY 3, 2001 ORDER GRANTING CLASS CERTIFICATION

The undersigned, J. Trigg Adams, objects to the entry of the above-noted proposed

order since it would, if granted, ratify and confirm paragraphs 2, 3, 4, and 5 of the above-noted

February Order Granting Class Certification for the following reasons:

1. It is clear the Court's July 10, 2001, Order granting the plaintiff' (Baldridge, et al),

April 24, 2001 Motion To Certify Method For Identifying Class Members was based at least in

part on their assurance that they had notified all the pilots swept into the Class certified by the

Court's February 3, 2001 of this Motion, and that not a single objection to the entry of an Order

based on it had been received. In actuality, only pilots who were randomly selected were mailed

notices of the April 24, 2001 Motion. The same can be said for the proposed order, (document

number 58), which was mailed on or about October 16, 2001.

62

11/5/01

2. It is clear that granting the proposed order under discussion would not only ratify and confirms paragraphs 2, 3, 4 and 5 of the Court's February 3, 2000 Order Granting Class Certification but also would attest to the accuracy and completion of the list of Class members that has been attached to and made a part of the proposed Amended order as Exhibit A.  The fact of the matter is that all pilots whose names were included in the November 1990 Eastern Pilots System Seniority List who had neither settled, waived nor relinquished their LPP claims against Continental, not withdrawn their Proofs of Claim filed with the Clerk Of the Bankruptcy Court of the District Court of Delaware on or before April 15, 2000, were not included in the Exhibit A list.

3. The Court's finding in paragraph 3.b. of the February 3, 2000 Order Granting Class Certification is not supported by the language of Bankruptcy Code 502(b)(7).

Wherefore, the undersigned respectfully requests that this Court withhold approval of the above-discussed Proposal Of Amended Order Granting Class Certification.

Dated November 3, 2001

J. Trigg Adams
3824 Park Avenue
Miami, Florida 33133

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In Re: )<br>)<br>CONTINENTAL AIRLINES, INC., et. al., )<br>)<br>Debtors )<br>———————————————— )<br>)<br>JAMES BALDRIDGE, WILLIAM MANN, )<br>and LARRY DUNN, individually, and )<br>as representatives of a class of persons )<br>similarly situated who are referred to as )<br>the LPP CLAIMANTS, )<br>)<br>Plaintiffs, )<br>)<br>VS. )<br>)<br>CONTINENTAL AIRLINES HOLDINGS, )<br>INC., CONTINENTAL AIRLINES, INC., )<br>and SYSTEM ONE HOLDINGS, INC. )<br>)<br>Defendants. )<br>———————————————— ) | Case No. 90-932<br>Chapter 11<br><br><br><br><br><br>Adversary Proceeding<br>No. A-99-412<br>Class Action |

## CERTIFICATE OF SERVICE

I, **J. TRIGG ADAMS**, certify that service of the attached Objections was served on November 3, 2001, VIA Federal Express to the following people:

Bruce E. Jameson
Prickett, Jones & Elliott
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Miles J. Tralins
Tralins & Associates
Attorneys for LPP Claimants
One Biscayne Tower, Suite 2930
Miami, FL 33131

Dated November 3, 2001

_____
J. Trigg Adams
3824 Park Avenue
Miami, Florida 33133

# EXHIBIT

# B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE    2001 NOV -5  AM 11: 32

U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:                                          )
                                                )
CONTINENTAL AIRLINES, INC., et. al.,)           Case No. 90-932
                                                )           Chapter 11
            Debtors                             )
_____ )
                                                )
JAMES BALDRIDGE, WILLIAM MANN, )
and LARRY DUNN, individually, and   )
as representatives of a class of persons )
similarly situated who are referred to as )
the LPP CLAIMANTS,                       )
                                                )
            Plaintiffs,                  )           Adversary Proceeding
                                                )           No. A-99-412
VS.                                             )           Class Action
                                                )
CONTINENTAL AIRLINES HOLDINGS, )
INC., CONTINENTAL AIRLINES, INC., )
and SYSTEM ONE HOLDINGS, INC.  )
                                                )
            Defendants.                  )
_____ )

## OBJECTION TO PLAINTIFF'S MOTION FOR PRELIMINARY
## APPROVAL OF PROPOSED SETTLEMENT, CLASS ACTION

The undersigned, J. Trigg Adams, whose name appeared on the November, 1990

Eastern Pilots System Seniority List, and whose right to have an LPP dispute filed by ALPA in

1991 presented to an arbitrator selected from a strike list of seven candidates selected by the

National Mediation Board, objects to the above Plaintiff's Motion for the following reasons:

1. The proposed Settlement Agreement was not the result of an arms length negotiation

that followed this Court's February 3, 2000 Order Granting Class Certification. A reading of the

Stipulation and Agreement of Compromise and Settlement supports the conclusion that the

Class Plaintiffs and the Class Counsel were primarily concerned with crafting a Settlement

Agreement that served their best interests rather than the interests of the Class Members  They

are, in effect, asking this Court to approve a Settlement Agreement that pays them top dollar for

their efforts and reimburses them for all the expenses that they incurred while serving as Class

63

11/5/01

Plaintiffs and Class Counsel and, further, relieves them of the obligation to arbitrate the LPP Claims which they had indicated they would undertake up to the time this Court issued its February 3, 2000 Order Granting Class Certification. Further examination of this Stipulation also supports the conclusion that the Class Members wound up no better off as a result of this Settlement Agreement than they would have had they accepted payment under the provisions of Section 502(b)(7) of the Bankruptcy Act.

2. The proposed Settlement Agreement perpetuates the myth that any money damages awarded by the Arbitrator selected in accordance with the Provisions of Section 13 of the LPPs must be treated as unsecured claims for damages under Section 503(b)(7) of the Act and, as such, regardless of the amount of the money award rendered by the Arbitrator are capped by the "one year compensation" provision therein. However, a careful reading of this Section makes it clear that its provisions are relevant only if an employees claim for damages is "for damages resulting from the termination of an employment contract". That this is not the case, reference is made to the August 29, 1997 Opinion of the Third Circuit Court of Appeals wherein it found that Continental Airlines had assumed rather than rejected the Collective Bargaining Agreement that incorporated the LPP's in exchange for enormous benefits. Hence the Class Plaintiffs and Class Counsels' reliance on the provisions of Section 502(b)(7) to support the settlement of the hypothetical damages that could have been awarded by an arbitrator had they proceeded with the arbitration is inappropriate.

If there is any provision in Section 502 that would apply it would be Section 502(c)(2), which specifically addresses a claimant's right to payment arising from a right to an equitable remedy for breach of performance. This provision does not cap the amount of the claim paid under its provisions but indicates that the eventual amount to be paid will be based on an estimated amount of damages that could or would be awarded by an Arbitrator because the enforcement of the equitable remedy of seniority integration could prove to be impractical under the circumstances. I estimate that the Arbitrator would have paid me damages equal to the earnings that I would have received had I been integrated into the Continental System Seniority List on or about December 1, 1990 when Continental withdrew from the LPP arbitration that

commenced in 1989 under the chairmanship of Arbitrator Richard B. Kasher. I estimate that this would come to approximately $800,000 gross for which I would settle for $75,000.

<div align="center">CONCLUSION</div>

Based on the foregoing, the undersigned concludes that there is sufficient reasons for this Court to reject the proposed Settlement Agreement, they being (I) neither the undersigned nor any members of the Class were adequately represented by the Class Plaintiffs and the Class Counsel, and (II) the payments proposed under the Settlement Agreement are not authorized by either the Bankruptcy Act or the rulings of the Third Circuit of Appeals. For the record, the undersigned objects to the payment of the Attorney's fees and settled administration costs and the payment of $75,000 to the Class Plaintiffs.

Wherefore, the undersigned respectfully requests that this Court withhold Preliminary Approval of the Proposed Settlement Agreement.

Dated: November 3, 2001

J. Trigg Adams
3824 Park Avenue
Miami, Florida 33133

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

FILED

2001 NOV -5  AM II: 32

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

|                                                                                                                                                 |     |                                                                 |
| ----------------------------------------------------------------------------------------------------------------------------------------------- | --- | --------------------------------------------------------------- |
| In Re:                                                                                                                                          | )   |                                                                 |
|                                                                                                                                                 | )   |                                                                 |
| CONTINENTAL AIRLINES, INC., et. al.,                                                                                                            | )   | Case No. 90-932                                                 |
|                                                                                                                                                 | )   | Chapter 11                                                      |
| Debtors                                                                                                                                         | )   |                                                                 |
|                                                                                                                                                 | )   |                                                                 |
| JAMES BALDRIDGE, WILLIAM MANN, and LARRY DUNN, individually, and as representatives of a class of persons similarly situated who are referred to as the LPP CLAIMANTS, | )   |                                                                 |
|                                                                                                                                                 | )   |                                                                 |
| Plaintiffs,                                                                                                                                     | )   | Adversary Proceeding                                            |
|                                                                                                                                                 | )   | No. A-99-412                                                    |
| VS.                                                                                                                                             | )   | Class Action                                                    |
|                                                                                                                                                 | )   |                                                                 |
| CONTINENTAL AIRLINES HOLDINGS, INC., CONTINENTAL AIRLINES, INC., and SYSTEM ONE HOLDINGS, INC.                                                  | )   |                                                                 |
|                                                                                                                                                 | )   |                                                                 |
| Defendants.                                                                                                                                     | )   |                                                                 |

## CERTIFICATE OF SERVICE

I, **J. TRIGG ADAMS,** certify that service of the attached Objections was served on November 3, 2001, VIA Federal Express to the following people:

Bruce E. Jameson
Prickett, Jones & Elliott
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Miles J. Tralins
Tralins & Associates
Attorneys for LPP Claimants
One Biscayne Tower, Suite 2930
Miami, FL 33131

Dated November 3, 2001

J. Trigg Adams
3824 Park Avenue
Miami, Florida 33133

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

FILED

2002 JAN 16 AM 11: 22

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

JAMES BALDRIDGE, WILLIAM MANN, and ) Case No.: No. 90-932
                                    )
LARRY DUNN, individually, and as    ) Adversary Proceeding
                                    )
representatives of a class of persons )
                                    )
similarly situated who are referred )
                                    )
to as the LPP CLAIMANTS,            )
                                    )
          Plaintiff,                )
                                    )
    vs.                             )
                                    )
CONTINENTAL AIRLINES HOLDINGS, INC., )
                                    )
CONTINENTAL AIRLINES, INC. and SYSTEM )
                                    )
ONE HOLDINGS, INC.,                 )
                                    )
          Defendant                 )
                                    )

_____

### OBJECTION TO APPROVAL OF PROPOSED SETTLEMENT, CLASS ACTION

I, J. Trigg Adams, Eastern Airlines flight deck employee # 00440, object to

the approval of this settlement for the following reasons:


### I.  ARGUMENT

1.  This Court has allowed itself to be lulled into judging whether or not

    Section 502(b)(7) applied to the LPP Claimants, which it ought not to

    have done because Section 502 governs rejected or canceled contracts.

    Neither of the contracts under dispute, which dispute can only be settled

1/16/02

1/16

under the rules of the Railway Labor Act, (RLA), has ever been altered or canceled by any court or act of law.

2.  Class Counsel has knowingly misled this Court in obtaining that decision by misrepresenting his own actions and making material misstatements of fact to his clients as well as this Court.

To wit, he has acted always as if he could represent his original group exclusively, ignoring others who worked under the same contract, and as if any favorable ruling could apply only to them and not to all others protected by that contract. He even tried to get this Honorable Court to disallow their claims, as if he believed the RLA did not apply, that it allowed different employees under one Contract Bargaining Agreement, (CBA), to have different rules. He should know full well that although a claimant in bankruptcy could make an individual settlement, a settlement based on a dispute of a CBA must apply to all working under it.

To wit, he has knowingly led them into the fray with the promise all along that he would fight to "the highest court" for the RLA right to have any grievance processed up to and including an Arbitration under the auspices of the National Mediation Board. Then, after getting others than his original clients involuntarily swept into a Class when a few non-clients objected to his actions, he has suddenly done what the Defendants have wanted the Plaintiffs to do for thirteen long years: go away quietly with a pittance, because, he says, the outcome of an Arbitration would be uncertain. I, for one, wish to risk any loss in order to have my day in arbitration, for only there can I properly present my case under the governing law of my Contract, the RLA.

To wit; he has presented all these actions to his "clients" as *faits
accomplis*, never once polling them as to their desires, nor asking for a
consensus. And he especially has gone to great lengths to keep his new,
involuntary clients in the dark as to his actions, to the extent that
many of them do not even now know they are in a Class. His ONE day of
advertisement, in an non-aviation-oriented publication, can only be
described as malfeasance. His failure to contact ANY of the 60-plus
pilots not in his original lawsuit group, whose names, employee numbers,
addresses, phone numbers, and email addresses that I gave him condemns
him to nothing short of gross malfeasance, and, quite possibly, criminal
intent to defraud them of their right to due process under the RLA,
ensuring that he would collect a rich fee with no risk to his acquiring
it, but damning them certainly to no chance whatsoever at any potential
of a fair settlement.

3. I have a right under the RLA to an arbitration, affirmed by the Third
Circuit **125 F. 3d 120 (3d Cir. 1997)**, and this Court has been improperly
used to block me from exercising that right. Class Counsel has shown this
Court no evidence nor reasoning for that block, only whipsawing it around
by irrelevant and distracting motions that have further frustrated a
simple due process a further two years now, for a total of 13. The
defendants could only be made happier by all claimants suddenly
withdrawing all claims whatever.

4. If Class Counsel and his band of dues-paying brothers want to make a
cheap settlement with Defendants, I have no objection. However, they
should not be allowed to do it via the improper route of pretending that
they are employees of a canceled or rejected contract, and this one is

certainly not.  Nor should they be allowed to involuntarily sweep in with them anyone who has not had the opportunity to have an open and complete explanation as to his or her choices, which is the aim of this Settlement Proposal.

5. The Proposal is neither fair nor reasonable.  Since the Third Circuit has already ruled that the damages are convertible to monetary damages which this Court is fully competent to assess, the Arbitration can reasonably be done within a few weeks, there being no basis for the Continental pilots to raise lengthy objections to jealously guarded seniority.  Even if the damages were found by this Court to be pre-petition in nature, the resultant award would likely be many times the two years provided for in the Settlement Agreement.  If the Class Counsel had kept his word that he would fight for the right to an arbitration, it would in all likelihood be over at this point, so his argument that now it would cost too much and be too risky is disingenuous at best, and calculatedly invidious to his clients' best interest at worst.

6. The reaction of the Class to the Settlement.  Class Counsel makes a wholly self-serving statement based on no meaningful survey of all the members of his Class, especially having never contacted his involuntary members except to send them a set of forms that are deceptive by not mentioning how much each recipient will likely receive nor giving them any means of calculating it, and presenting it as if it were a done deal. It ranks right up there with Publisher's Clearing House ads.  And 20% of the Class executing and returning the forms is still less than half of the original dues-paying group who supposedly have been kept fully informed of what a great job he has been doing for them.

II.  CONCLUSION

For these and other reasons I object to the Proposed Settlement to about the same degree that I would object to a rattlesnake being brought into the house to catch rats.  Its danger to me would be far greater than that of any rodent. There has been no citation in all the filings that I have read that show a precedent for obstructing the straightforward duties and responsibilities of the parties to follow the course of the law of the Railway Labor Act, and thence the applicable Bankruptcy Code.

I therefore respectfully ask and pray that this Court disapprove this Motion For Approval Of Settlement, Class Action.  And, inasmuch as this Court would like to finally clear up this matter, I ask the Court to mandate the parties to proceed with the Arbitration with all haste, returning to this proper venue without further delay to have the claims adjudicated before It.

Date: January 15, 2002

Respectfully,

J. Trigg Adams

3824 Park Avenue

Miami, Florida 33133

305-665-8904

# CERTIFICATE OF SERVICE

FILED

2002 JAN 16  AM 11: 22

U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Objections to Settlement Agreement was served upon each of the following attorneys in the manner indicated below on January __15__, 2002.

**U. S. MAIL**
Myles J. Trailins
Trailins and Associates
One Biscayne Tower
2 S. Biscayne Blvd., #2930
Miami, FL 33131
Attorney for the Class

**U. S. MAIL**
Robert S. Brady
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Attorney for the Defendants

By: _____
J. Trigg Adams
Claimant

# EXHIBIT

# C

IN THE UNITED STATES BANKRUPTCY COURT F I L E D
FOR THE DISTRICT OF DELAWARE

2002 JAN 15   AM 10: 36

CLERK
U.S. BANKRUPTCY COURT
OF DELAWARE

In re:                                          }
                                                }   Case No. 901032
CONTINENTAL AIRLINES, INC., et. al., }   Chapter 11
                                                }
          Debtors                               }
_____ }
                                                }
JAMES BALDRIDGE, WILLIAM MANN, }
and LARRY DUNN, individually, and     }
as representatives of a class of persons }
similarly situated who are referred to as }
the LPP CLAIMANTS,                     }
                                                }
          Plaintiffs,                           }   Adversary Proceeding
                                                }   No. A-99-412
v.                                              }
                                                }
CONTINENTAL AIRLINES HOLDINGS, }
INC., CONTINENTAL AIRLINES, INC. }
and SYSTEM ONE HOLDINGS, INC.  }
                                                }
          Defendants.                           }
_____ }

## OBJECTIONS TO SETTLEMENT AGREEMENT

In numbered paragraph 1 of the Order scheduling this Settlement Hearing, the court indicated that the purpose for holding this hearing was to give it the opportunity to determine (i) whether the proposed Settlement on the proposed terms and conditions provided for in the Settlement Agreement, is fair, reasonable and adequate; (ii) whether final judgment as provided in Paragraph 7.01 of the Settlement Agreement should be entered thereon should dismiss all claims and causes of actions on the merit, with prejudice and without cost; and, (iii) whether to consider the application of Class Counsel for an award of attorneys' fees and reimbursement of costs and expenses, including Settlement Administration Costs and compensation awards for the Class Representatives. And in numbered paragraph 6 of this Order it is provided that any member may appear at the Settlement Hearing to show cause, if he, she or it has any, as to (i) whether or not the Class Representatives and Class Counsel have represented the Class adequately to satisfy due process, (ii) why the proposed Settlement should or should not be approved as fair, reasonable and adequate, (iii) why a

75

judgment should or should not be entered thereon, (iv) why Class Counsel should or should not be awarded their requested attorneys' fees, expenses and Settlement Administration Costs; (v) why the Class Representative should not be awarded reasonable compensation.

## DISCUSSION

### Regarding Paragraph 6 (i) above

The undersigned believes that there is sufficient cause to conclude that neither the Class Plaintiffs' nor Class Counsel had adequately represented the undersigned to satisfy due process. This conclusion is fueled by a number of considerations.

Firstly, the undersigned and approximately 400 of the LPP CLAIMANTS WERE forced into the class certified by this Court on February 3, 2000 were dues paying members of a non profit corporation that had been charted under the laws of the State of Florida in 1991 for the specific purpose of providing legal representation in proceedings such as this. Class Plaintiffs have been dues paying members and officers of this Florida Corporation and Class Counsel has served as its attorney from almost the day of its incorporation.

Secondly, following District Court and Appeals Court decisions resurrecting an LPP arbitration that had been permanently enjoined by this Court, the Class Plaintiffs and Class Counsel sent a series of letters to the former Eastern pilots, who were paying dues to this corporation assuring them that they would "proceed with the resurrected arbitration and seek seniority integration which would vest the rights of individual pilots to jobs and thus to an identical claim which can be calculated in terms of money damages if the bankruptcy court, over our objection, rejects the right to jobs in favor of payment."[1]

Thirdly, following the February 23, 1998 Supreme Court Order denying Class Counsels and Class Plaintiffs' petition for a writ of certiorari, neither Class Plaintiffs nor Class Counsel took any positive steps to proceed with the LPP arbitration as promised other than to file a second request with the National Mediation Board for a list of names of arbitrators from which a replacement arbitrator could be selected to replace the resigned arbitrator who had conducted LPP arbitration proceedings prior to this Court's injunction shutting it down.[2]

---

[1] See Class Counsel's September 25, 1997 letter to LPP Claimants vs. Continental Airlines: Ruling of the United States Court of Appeals (Exhibit 1).

[2] See Class Counsel's November 2, 1998 letter to the National Mediation Board and the Board's November 10, 1998 response to that letter. Also see an April 1, 1998 letter to Class Counsel from the National Mediation Board acknowledging receipt of a March 15, 1998 request to provide all parties involved in the Eastern Airlines, Inc./Continental Airlines, Inc. and Continental Airlines-

However, in a November 11, 1998 letter to the National Mediation Board signed by Jon A. Geier, with a copy to Class Counsel, requesting a strike panel of arbitrators to conduct the seniority integration arbitration ordered by both the District Court and the Third Circuit, it was noted that the parties had yet to select an arbitrator in part due to discussions underway between Class Counsel and Continental over a possible settlement of the LPP dispute.[3] It was learned after the Class Plaintiffs and Class Counsel had filed the October 12, 1999 complaint seeking Class Certification that they did not intend to participate in any LPP arbitration proceedings after the Supreme Court turned down their petition and, instead, decided to take those steps necessary to force upon the group of former Eastern pilots whom they represented the terms of an agreement in principle that had been reached sometime in 1998 and summarized in a September 20, 1999 letter intended for Class Counsel's eyes only.[4] It is noted that Class Counsel did not file for the declaratory action referred to in paragraph 3(1) of Exhibit 5 until three months after Class Plaintiffs' Adversary Proceeding had been filed.[5]

Considering the fiduciary relationship that the Class Plaintiffs and Class Counsel established with the members of the group involved, coupled with their assurances to these members that the dues that they would be paying to the Corporation following the Third Circuit's decision would be used solely to fund the cost of the resurrected LPP Arbitration, the members of this group were at the least entitled to formal notification sometime after the February 23, 1998 Supreme Court decision and before October 10, 1999 that they had abandoned their promise to represent their interests at an LPP arbitration and that they agreed to a Settlement Agreement that included a provision that for all practical purposes reinstated this Court's permanent injunction that was overturned by both the District Court and Third Circuit Court almost three years earlier. This is especially true since the Class Plaintiffs and Class Counsel intended to invoke Federal Bankruptcy Rule 7023 to enforce the terms of this Settlement Agreement against all the members of the group. Clearly, neither the Class Plaintiffs and Class Counsel have represented the members of this group adequately to satisfy due process. This would be especially true of the Class Plaintiffs who had been appointed to the Labor Merger Committee to make sure that the Labor Arbitration was turned from a promise to a reality.[6]

---

Section 13 LPP Arbitration with a strike list of replacement arbitrators so that you may select an arbitrator and expeditiously proceed with the arbitration (Exhibit 3). e 3

[3] Copy of this November 11, 1998 letter is reproduced as Exhibit Number 4. Specific attention is directed to Footnote 3 on page 2 of this Exhibit.

[4] This September 20, 1999 letter is reproduced in its entirety as Exhibit Number 5.

[5] See Plaintiffs' March 23, 2000, Motion and Memorandum for Final Summary Judgment.

[6] Notice to the membership that the Board had appointed the Class Plaintiffs to the LPP Merger Committee with the assurance that they would receive reasonable compensation for their services in this capacity, "if – and only if – the arbitration of these LPP Claims resulted in the awarding of jobs or the payment of money to the LPP Claimants. Exhibit No. 6.

### Regarding Paragraph 6 (ii) (iii), (iv) and (v) above

It is the undersigned's position that the failure of the fiduciaries to give any notice withdrawing from the LPP arbitration is serious enough to render the proposed settlement unfair, unreasonable and inadequate, and provides this Court with adequate reason for withholding judgment thereon, and enough reason why class counsel's request for attorney's fees, expenses and settlement administrative costs should be withheld, and, finally, why these class representatives should not be awarded compensation for services not rendered.

### CONCLUSION

It is the position of the undersigned that fiduciaries' denial of the undersigned's due process rights in this case were serious enough to nullify the whole process initiated with the filing of the Complaint seeking Class Status and to deny the benefits that would otherwise flow to both the Class Plaintiffs and Class Counsel.

Respectfully Submitted,

Ramon E. O'Neill
Class Member

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Objections to Settlement Agreement was served upon each of the following attorneys in the manner indicated below on January 14, 2002.

**FEDERAL EXPRESS**
Myles J. Tralins
Tralins And Associates
One Biscayne Tower
2 S. Biscayne Blvd., #2930
Miami, FL 33131
Attorney for the Class

**FEDERAL EXPRESS**
Robert S. Brady
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Attorney for Defendants

By: _____
Ramon E. O'Neill
Class Member

EXHIBIT 1

LAW OFFICES
TRALINS AND ASSOCIATES
ONE BISCAYNE TOWER • SUITE 3310
2 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131

TELEPHONE (305) 374-3300
TELEFAX (305) 374-4933

FILED

2002 JAN 15  AM 10: 36

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

September 25, 1997

Re:    LPP Claimants vs. Continental Airlines:
       Ruling of the United States Court of Appeals

Dear EPFF Member and LPP Claimant:

The United States Court of Appeals for the Third Circuit recently issued the enclosed decision in our appeal concerning the LPPs.

The Court ruled, as we argued, that *Continental Airlines is required to participate in the* National Mediation Board *(Kasher) arbitration proceedings.*

The Court ruled, as we argued, that because Continental Airlines did not reject the pilot's Eastern Air Lines collective bargaining agreement under the provisions of Section 1113 of the Bankruptcy Code, and because Continental relied on the agreement to obtain a ruling that the claim for seniority integration could be treated as a right to payment in the bankruptcy court and to obtain backing from investors for its plan of reorganization, that *Continental is bound by the Eastern Air Lines collective bargaining agreement.*

The Court ruled, against our position, that the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment. In other words, the Court held that *the right to seniority integration is satisfiable by the payment of money damages.*

We requested the Third Circuit to reconsider its decision equating jobs to money in the Petition for Rehearing which is also enclosed. The Court declined to do so.

Accordingly, with the approval of your Board of Directors, we are now preparing a petition to the United States Supreme Court requesting it to exercise is discretionary authority to review that portion of the Third Circuit's ruling which allows the bankruptcy court to replace jobs awarded through seniority integration with money.

The substance of the arguments which will be made to the Supreme Court in asking it to review and reverse the Third Circuit are:

1.    The only remedy provided under the EAL collective bargaining agreement in the event of a merger (sale or transfer of assets) is seniority integration and jobs. The Eastern System

Board of Adjustment specifically determined that money is not a substitute for jobs under the contract when it ruled on the scope of the EAL collective bargaining agreement. Indeed, the only parts of the Allegheny Mohawk LPPs which are included in the EAL CBA are the three specific provisions providing jobs because Eastern would not agree to any other form of compensation in the event of a sale or transfer of assets. No other provisions of the Allegheny Mohawk agreement are included in the EAL CBA; thus, the Third Circuit erred in relying on portions of Allegheny Mohawk which are not part of the EAL CBA.

2.    Continental is bound by the EAL CBA as Continental did not reject the CBA under Section 1113 of the Bankruptcy Act. The Congressional mandate of 1113 requires that the only way a CBA can be altered, amended or terminated is if 1113 is complied with. The decision allows the bankruptcy court to ignore Congress by altering, amending or terminating a collective bargaining agreement which is binding on CAL.

We anticipate that the Supreme Court will advise us within six to nine months whether it will accept our appeal. If it does, the issues will be fully briefed on the merits and the case will be argued and we will obtain a decision as to whether or not the right to jobs can be satisfied by money.

If the Supreme Court does not accept our appeal, we will proceed with the Kasher arbitration and seek seniority integration which will vest the rights of individual pilots to jobs and thus to an identifiable claim which can be calculated in terms of money damages if the bankruptcy court, over our objection, rejects the right to jobs in favor of payment.

An appeal of the bankruptcy judge's decision may then be taken if it is unwarranted by the evidence. (For example, if no showing is made that the integration of EAL pilots is disruptive to Continental's operations, then a decision relegating jobs to money may not be warranted.)

Finally, the Board has agreed to our retention of a bankruptcy expert to review our rights and remedies under Continental's plan of reorganization so that fully informed decisions can be made at the appropriate time as to how to proceed. As well, subject to Board approval, we shall consult with labor counsel on the integration issues.

If you have any questions concerning this letter or the enclosed decision of the Third Circuit, please write your questions down and fax or mail them to me. I will reply to all questions in a follow up letter to be sent next month.

Very truly yours,

TRALINS AND ASSOCIATES

Myles J. Tralins

MJT:jm

LAW OFFICES
TRALINS AND ASSOCIATES

;ent By: TRALINS & ASSOCIATES  ;          305 3744933  ;    Feb-25-99 10:51;

EXHIBIT 2

LAW OFFICES

TRALINS AND ASSOCIATES

ONE BISCAYNE TOWER · SUITE 3310
2 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 05131

TELEPHONE (305) 374-3300
TELEFAX (305) 374-4933

FILED

2002 JAN 15 PM 4 36
CLEARWATER OFFICE
3050 TAMPA ROAD
SUITE 192
PALM HARBOR, FLORIDA 34684
TELEPHONE (813) 723-5555
TELEFAX (813) 485-5555

November 2, 1998

*Via Telefax to 202-692-5086*

Carol Conrad
Senior Assistant
National Mediation Board
Washington, D.C. 20572

        Re:    LPP Claimants/Continental Airlines LPP Arbitration

Dear Ms. Conrad:

This letter confirms my telephone request made last week that we be provided with additional names of mediators with airline LPP and seniority integration experience.

Thank you very much.

                                        Sincerely,

                                        TRALINS AND ASSOCIATES
                                        Counsel for LPP Claimants

                                        Myles J. Tralins, Esq.

MJT:jm

cc: Jon Geier, Esq., Counsel for Continental Airlines



## NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692-5000

November 10, 1998

Myles J. Tralins, Esq.
Counsel for LPP Claimants
Tralins and Associates
2 South Biscayne Boulevard
One Biscayne Tower, Suite 3310
Miami, FL 33131

Re: LPP Claimants/Continental Airlines LPP Arbitration

Dear Mr. Tralins:

This is in response to exchange of correspondence requesting the National Mediation Board to provide a panel of neutrals for the case listed above, from which the parties may select one to hear the dispute.

The panel is enclosed. Please let us know the name of the neutral selected for the completion of our records.

By direction of the NATIONAL MEDIATION BOARD.

Stephen E. Crable
Chief of Staff

Enclosure

Copy with enclosure:

Jon A. Geier, Esq., Counsel for Continental Airlines

SEC/cmc



**NATIONAL MEDIATION BOARD**
WASHINGTON, D.C. 20572

EXHIBIT 3

FILED

2002 JAN 15  AM 10: 36

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

(202) 523-5920

April 1, 1998

Myles J. Tralins, Esq.
**TRALINS AND ASSOCIATES**
One Biscayne Tower, Suite 3310
2 South Biscayne Boulevard
Miami, Florida 33131

Re: Eastern Airlines, Inc./Continental Airlines, Inc.
and Continental Airlines -Section 13 LPP Arbitration

Dear Mr. Tralins

This is in response to your letter of March 15, 1998, requesting the National Mediation Board to provide all parties to the proceeding with a strike list of replacement arbitrators so that you may select an arbitrator and expeditiously proceed with the arbitration.

The panel is enclosed. <u>Please let us know the name of the neutral selected for the completion of our records</u>.

By direction of the NATIONAL MEDIATION BOARD.

Stephen E. Crable
Stephen E. Crable
Chief of Staff

Copies to with Enclosures:

Jon A. Geier, Esq., Counsel for Continental Airlines, Inc.
Daniel P. Casey, Esq., Counsel for Continental Airlines, Inc.
John A. McGuinn, Esq., Counsel for Frontier Pilots
Dennis Gordon, Esq., Counsel for Continental Airlines, Inc.
Daniel Katz, Esq., Counsel for People Express Pilots
Louis Meltz, Esq., Counsel for Independent Assn. Of Continental Pilots
Ronald B. Natalie, Esq., Counsel for Eastern Pilots
James L. Linsey, Esq., Counsel for ALPA

ent By: TRALINS & ASSOCIATES    ;           305 3744933  ;        Feb-25-99 10:52;       Page 11

EXHIBIT 4

LAW OFFICES OF

# PAUL, HASTINGS, JANOFSKY & WALKER LLP

FILED

A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

ROBERT P. HASTINGS H941-1998)
COUNSEL
LEE G. PAUL
LEONARD S. JANOFSKY
CHARLES M. WALKER

400 SFACHTREE ST., N.E., STE. 2400
ATLANTA, GEORGIA 30308-2222
TELEPHONE (404) 815-2400

695 TOWN CENTER DRIVE
COSTA MESA, CALIFORNIA 92626-1924
TELEPHONE (714) 668-6200

555 SOUTH FLOWER STREET
LOS ANGELES, CALIFORNIA 90071-2371
TELEPHONE (213) 683-6000

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2400

TELEPHONE (202) 508-9500

FACSIMILE (202) 508-9700

INTERNET www.phjw.com

November 11, 1998

2002 JAN 16 PM 12:06

NEW YORK, NEW YORK 10022-4697
TELEPHONE (212) 318-6000

345 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94104-2635
TELEPHONE (415) 439-5300

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

1055 WASHINGTON BOULEVARD
STAMFORD, CONNECTICUT 06901-2217
TELEPHONE (203) 961-7400

1299 OCEAN AVENUE
SANTA MONICA, CALIFORNIA 90401-1078
TELEPHONE (310) 319-3300

ARK MORI BUILDING, 30TF FLOOR
12-32, AKASAKA I-CHOME
MINATO-KU, TOKYO 107, JAPAN
TELEPHONE (713) 3586-4711

OUR FILE NO.
19978.59928

WRITER'S DIRECT ACCESS
(202)508-9589
jageier@phjw.com

## VIA FACSIMILE AND REGULAR MAIL
Ms. Priscilla Ziegler
Staff Coordinator, Arbitration
National Mediation Board
1301 K Street, N.W., Suite 250E
Washington, D.C. 20572-0002

Re:    Eastern Pilot Merger Committee Request for Arbitration Panel

Dear Ms. Ziegler:

On behalf of Continental Airlines, Inc. ("Continental") this responds to the request by John C. Lenahan that the National Mediation Board supply a panel of arbitrators to conduct a seniority integration arbitration between 300 former Eastern Air Lines, Inc. ("Eastern") pilots and Continental. Mr. Lenahan purports to make his request behalf of an entity called the Eastern Pilots Merger Committee.[1]  Continental objects to and opposes Mr. Lenahan's request on the following grounds: (1) the NMB has already supplied a panel of arbitrators to Myles Tralins, counsel to approximately 300 other former Eastern pilots for the identical dispute entailing Labor Protective Provisions ("LPPs") in effect when Eastern still existed and supplying another panel almost certainly would result in inconsistent arbitration results, and (2) to the extent the EPMC alleges this is a "different" dispute than the one for which Mr. Tralins has sought a panel of arbitrators, Eastern is no longer a carrier covered by the Railway Labor Act and therefore the Board has no authority to perform services.

The Longstanding Eastern LPP Arbitration Already is Underway.  The NMB previously supplied a panel of arbitrators in response to the request of certain former Eastern pilots, represented by attorney Myles Tralins, seeking to arbitrate pursuant to the LPP clause of the 1986 collective bargaining agreement between Eastern and the Air Line Pilots Association ("ALPA") (the "Eastern LPPs"). In this arbitration proceeding, the former Eastern pilots assert

---

[1]    To the extent the EPMC requests an arbitration panel as the "representative" of certain pilots, Continental contests any representative status.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

Ms. Priscilla Ziegler
November 11 1998
Page 2

that Eastern somehow "merged" with Continental and thereby triggered a seniority integration proceeding under the Eastern LPPs. The BPMC apparently seeks to arbitrate the same dispute.

By way of background, arbitration of the Eastern LPPs began in proceedings brought by ALPA before arbitrator Richard R. Kasher, who issued a preliminary procedural ruling on August 4, 1992. This arbitration proceeding was long in abeyance, due, first to the Eastern, and then the Continental, bankruptcies and subsequent court proceedings and an ALPA settlement too lengthy to enumerate here. Suffice it to say that on August 29, 1997, the United States Court of Appeals for the Third Circuit affirmed the rulings of the United States District Court for the District of Delaware vacating an injunction against continuation of an arbitration.[1/] *In re Continental Airlines, Inc.*, 125 F.3d 120 (3d Cir. 1997), cert. denied, 118 S. Ct. 1049 (1998). Arbitrator Kasher, however declined further participation on the grounds (a) the District Court's decision specifically stated that the Kasher Arbitration was over and that individual pilots would have to begin anew to the extent they had standing and (b) that none of the parties that had selected Mr. Kasher remained in the proceeding. Mr. Tralins, on behalf of his clients, thereafter requested and was provided a panel of arbitrators from the NMB.[2/]

The NMB should not supply another panel of arbitrators for the identical dispute. This is not a case where there can be multiple grievances arising out of repeated alleged violations of a single work rule. The question whether Eastern and Continental merged, and how seniority should be integrated, entail's group rights that can, by their very nature, only be resolved once, in a single proceeding. The very language of LPP § 13(a), incorporated by reference into the Eastern-ALPA agreement, provides for a single arbitration proceeding conducted by "an arbitrator selected from a panel of seven names furnished by the National Mediation Board." This panel has already been supplied. If any other former Eastern pilots wish to be heard on this

_____

[2/]    The Third Circuit also affirmed the District Court's holdings that (a) whether individual pilots had standing to pursue arbitration after ALPA withdrew was a minor dispute for an arbitrator and (b) the bankruptcy LPP claims filed by Eastern pilots were, at best, general unsecured, pre-petition claims not entitled to specific performance or an administrative priority. In addition, before any seniority arbitration proceeding could commence, there would have to be a finding that a merger had in fact occurred. The fact that the Board dismissed the single carrier case brought by the unions representing the former Eastern employees should be dispositive on that question. *In re Eastern Air Lines, Inc.*, 17 N.M.B. 432, 448-50 (1990).

[3/]    The parties have not yet selected an arbitrator, in part due to discussions between Mr. Tralins and Continental on a possible settlement of this dispute. Because Mr. Tralins' clients were the only former Eastern pilots to timely request a panel of arbitrators from the NMB, he has recently filed a motion in the Delaware Bankruptcy Court seeking to have the LPP claims of all other unresolved LPP claims dismissed for failing to perfect their right to arbitration. The motion remains pending.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

Ms. Priscilla Ziegler
November 11 1998
Page 3

subject, their recourse is before the arbitrator selected from the panel already provided. Of course, Continental contends that other than the pilots represented by Mr. Tralins, former Eastern pilots failed to timely petition for arbitration.

### The NMB Has No Jurisdiction To Appoint Arbitrators Except in The LPP Dispute That Accrued While Eastern Was Operational. The LPP arbitration already underway seeks to arbitrate a right that allegedly accrued in the past, under the old Eastern-ALPA collective bargaining agreement. If the EPMC is asserting some right that accrued more recently under the Eastern-ALPA agreement, the controversy is not covered by the Railway Labor Act,[4] and the NMB lacks the power to appoint arbitrators. The NMB has no authority to take any action in such a matter, even the ministerial act of supplying names of arbitrators, because Eastern is no longer a "carrier by air engaged in interstate or foreign commerce . . ." as defined in the Railway Labor Act. 45 U.S.C. § 181. See RLEA v. Wheeling Acquisition Corp., 736 F.Supp. 1397, 1402-03 (E.D.Va. 1990) (company that did not currently own any rail lines or provide any rail services was not a "carrier" under RLA, and had no "employees" under RLA; therefore, controversy not subject to RLA procedures), aff'd. 914 F.2d 53, 56 (4th Cir. 1990). The NMB's sole statutory authority is to assist the resolution of disputes between "carriers" employees of carriers, and their representatives. E.g. 45 U.S.C. § 155. The NMB zealously guards against involvement in controversies that are not within its statutory mandate. See The SABRE Group, Inc., 25 N.M.B. 466 (1998) (declining to opine whether or not SABRE was subject to the RLA, since the request did not fall in one of the well-recognized areas of NMB activity).

In sum, the NMB has no authority to act in non-carrier disputes and should not respond to the EPMC's request. To do so would undermine the LPP arbitration that is already underway, and delay resolution of a controversy of many years duration.

---

4/      The pilots represented by Mr. Lenehan recently filed a law suit in the District Court for the District of New Jersey seeking a declaration that they "are entitled to two separate, distinct and concurring remedies, namely, (1) enforcement of the [Eastern-ALPA] Collective Bargaining Agreement and the [Eastern] LPPs which require seniority integration plus damages for Continental's failure to comply with the Collective bargaining Agreement and the LPPs subsequent to the confirmation of [Continental's] plan of reorganization, and (2) liquidation of their proofs of claim under the Continental bankruptcy plan of reorganization." This frivolous lawsuit is in contempt both of the order confirming Continental's plan of reorganization and the decision of the Third Circuit.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

Ms. Priscilla Ziegler
November 11 1998
Page 4

If you have any questions with respect to this letter, please call the undersigned at the number provided above. Thank you for your consideration of this matter.

Very truly yours,

Jon A. Geier

of PAUL, HASTINGS, JANOFSKY & WALKER

Counsel for CONTINENTAL AIRLINES, INC.

cc:    John C. Lenahan
       Myles Tralins
       Stephen Crable
       Robin Curtis

EXHIBIT 5

## Continental



Continental Airlines, Inc.    Tel 713 324 3000
41st Floor HQSLG         Fax 713 324 5161
1600 Smith Street
Houston TX 77002

FILED
2002 JAN 15  AM 10: 36

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

September 20, 1999

CONFIDENTIAL
For Settlement Purposes Only

Miles J. Tralins, Esq.
Tralins & Associates
One Biscayne Tower, Suite 3310
2 South Biscayne Tower
Miami, FL 33131

    Re:    *EMPC v. Continental Airlines, Inc.*

Dear Mr. Tralins:

    This letter sets forth the terms of a settlement proposal to resolve the labor protective provision claims ("LPP claims") filed by former Eastern Air Lines, Inc. pilots which remain pending and unliquidated in the Continental Airlines, Inc. bankruptcy proceeding. This proposal is made in order to avoid the burden, inconvenience and expense of litigating those claims, including the litigation of a seniority integration arbitration which will be a necessary precedent to liquidating the claims in the Delaware Bankruptcy Court.

    In terms of evaluating the settlement proposal set forth below, you should know what Continental's positions would be if, as a result of the seniority integration arbitration, there was any liability (a result which, as you know, Continental does not believe would occur) and the parties were required to litigate the liquidation of the LPP claims. First, it is Continental's position that the LPP claims are subject to a limitation of one year's back pay pursuant to Bankruptcy Code Section 502(b)(7). Second, any damages that would accrue if liability were found would commence, at the latest, as of January 1991 and hence would be based upon the pilot pay structure in place for Continental at that time. Third, the liability to any pilot would depend upon the status they would have had (*i.e.* Captain, First Officer, Second Officer) based upon the integrated seniority list and given Continental's pilot staffing requirements as between January and December 1991. Continental does understand that you disagree with the applicability of the Section 502(b)(7) limitation, and perhaps some of Continental's other positions as well.

    However, in order to avoid what could be years longer litigation and to finally resolve these long-pending claims, Continental would propose the following settlement terms:

    (1)    If, as a result of the declaratory action we understand you will bring on behalf of all eligible EAL pilots, a final declaratory ruling is issued that the LPP claims are subject to a limitation of one year's back pay pursuant to Bankruptcy Code



Mr. Miles J. Tralins, Esq.
September 20, 1999
Page 2

Section 502(b)(7), the bankruptcy estate will grant each former Eastern pilot with an unresolved LPP claim (list to be agreed to by the parties) an agreed claim in the face amount of $110,000;

(2)    The claims will be paid as are all general unsecured prepetition Class 13 claims under the Reorganization Plan confirmed on April 27, 1993;

(3)    Because this settlement provides a face value claim greater than the one-year 502(b)(7) limitation,[1] settling former Eastern pilots with unresolved LPP claims must agree to sign a general release releasing the bankruptcy estate and Continental and all affiliates or related parties from any claims arising out of the alleged Eastern merger.

Before proceeding to make this offer generally available, we would like to have your agreement that you will endorse the terms of the settlement to the pilots you represent.

If you have any questions, please do not hesitate to call me. I look forward to hearing your response after you have had the opportunity to discuss it with your clients.

Very truly yours,

Robin E. Curtis
Managing Attorney
Labor and Employment

cc:    Jon Geier
Jim Patton

---

[1] Pursuant to the Pilot Employment Policy revised August 1, 1990, Ch. 12, effective 4/1/91, the pay scale for a first year captain was $59.41 per flight hour with a 72 flight hour per month guarantee resulting in an annual salary 51,330.24. Of course, the pay scale for first and second officers was substantially lower.

EXHIBIT 6

# LPP MERGER COMMITTEE APPOINTED

As most of you know, extensive time and assistance for our legal counsel will be required from LPP Claimant pilot representatives with respect to preparation for and participation in the NMB LPP Arbitration.

For approximately 8 years, your Executive Committee of Larry Dunn, Bill Mann and Jim Baldridge, has provided the overwhelming portion of the work and effort involved in maintaining our organization, looking after its finances, interfacing with our members, gathering information and coordinating efforts on a myriad of fronts with our lawyers and providing pilot representation where and when required.

Fortunately for us, Larry, Bill and Jim have made their time available, even at personal sacrifice or hardship.

The NMB LPP Arbitration will require an even greater commitment of time from our pilot representatives.

Larry, Bill and Jim have agreed to step up to the plate on our behalf and serve as our Merger Committee and your Board is deeply appreciative for their commitment.

Because of these additional and time consuming duties, your Board has decided that if - and only if - the LPP Claims are successful, resulting in the award of jobs or the payment of money to the LPP Claimants, reasonable compensation for that success and their time and effort in making it happen should be provided to Larry, Bill and Jim.

The Board is certain that all of you agree.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

FILED

2002 JAN 17  AM 11: 37

Case No. 90-932
Chapter 11

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                                          }
                                                }
CONTINENTAL AIRLINES, INC., et. al.,            }
                                                }
                    Debtors                     }
                                                }
_____                }
                                                }
JAMES BALDRIDGE, WILLIAM MANN,                  }
and LARRY DUNN, individually, and               }
as representatives of a class of persons        }
similarly situated who are referred to as       }
the LPP CLAIMANTS,                              }
                                                }
                    Plaintiffs,                 }        Adversary Proceeding
                                                }        No. A-99-412
v.                                              }
                                                }
CONTINENTAL AIRLINES HOLDINGS,                  }
INC., CONTINENTAL AIRLINES, INC.                }
and SYSTEM ONE HOLDINGS, INC.                   }
                                                }
                    Defendants.                 }
_____                }

## OBJECTIONS TO SETTLEMENT AGREEMENT

In numbered paragraph 1 of the Order scheduling this Settlement Hearing,
the court indicated that the purpose for holding this hearing was to give it the
opportunity to determine (i) whether the proposed Settlement on the proposed
terms and conditions provided for in the Settlement Agreement, is fair,
reasonable and adequate; (ii) whether final judgment as provided in Paragraph
7.01 of the Settlement Agreement should be entered thereon should dismiss all
claims and causes of actions on the merit, with prejudice and without cost; and,
(iii) whether to consider the application of Class Counsel for an award of
attorneys' fees and reimbursement of costs and expenses, including Settlement
Administration Costs and compensation awards for the Class Representatives.
And in numbered paragraph 6 of this Order it is provided that any member may
appear at the Settlement Hearing to show cause, if he, she or it has any, as to (i)
whether or not the Class Representatives and Class Counsel have represented
the Class adequately to satisfy due process, (ii) why the proposed Settlement
should or should not be approved as fair, reasonable and adequate, (iii) why a

1/17/02
81

judgment should or should not be entered thereon, (iv) why Class Counsel should or should not be awarded their requested attorneys' fees, expenses and Settlement Administration Costs; (v) why the Class Representative should not be awarded reasonable compensation.

## DISCUSSION

### Regarding Paragraph 6 (i) above

The undersigned believes that there is sufficient cause to conclude that neither the Class Plaintiffs' nor Class Counsel had adequately represented the undersigned to satisfy due process. This conclusion is fueled by a number of considerations.

Firstly, the undersigned and approximately 400 of the LPP *claimants were* forced into the class certified by this Court on February 3, 2000 were dues paying members of a non profit corporation that had been charted under the laws of the State of Florida in 1991 for the specific purpose of providing legal representation in proceedings such as this. Class Plaintiffs have been dues paying members and officers of this Florida Corporation and Class Counsel has served as its attorney from almost the day of its incorporation.

Secondly, following District Court and Appeals Court decisions resurrecting an LPP arbitration that had been permanently enjoined by this Court, the Class Plaintiffs and Class Counsel sent a series of letters to the former Eastern pilots, who were paying dues to this corporation assuring them that they would "proceed with the resurrected arbitration and seek seniority integration which would vest the rights of individual pilots to jobs and thus to an identical claim which can be calculated in terms of money damages if the bankruptcy court, over our objection, rejects the right to jobs in favor of payment."[1]

Thirdly, following the February 23, 1998 Supreme Court Order denying Class Counsels and Class Plaintiffs' petition for a writ of certiorari, neither Class Plaintiffs nor Class Counsel took any positive steps to proceed with the LPP arbitration as promised other than to file a second request with the National Mediation Board for a list of names of arbitrators from which a replacement arbitrator could be selected to replace the resigned arbitrator who had conducted LPP arbitration proceedings prior to this Court's injunction shutting it down.[2]

[1] See Class Counsel's September 25, 1997 letter to LPP Claimants vs. Continental Airlines; Ruling of the United States Court of Appeals (Exhibit 1).

[2] See Class Counsel's November 2, 1998 letter to the National Mediation Board and the Board's November 10, 1998 response to that letter. Also see an April 1, 1998 letter to Class Counsel from the National Mediation Board ac' nowledging receipt of a March 15, 1998 request to provide all parties involved in the Eastern Airlines, Inc./Continental Airlines, Inc. and Continental Airlines-

However, in a November 11, 1998 letter to the National Mediation Board signed by Jon A. Geier, with a copy to Class Counsel, requesting a strike panel of arbitrators to conduct the seniority integration arbitration ordered by both the District Court and the Third Circuit, it was noted that the parties had yet to select an arbitrator in part due to discussions underway between Class Counsel and Continental over a possible settlement of the LPP dispute.[3]  It was learned after the Class Plaintiffs and Class Counsel had filed the October 12, 1999 complaint seeking Class Certification that they did not intend to participate in any LPP arbitration proceedings after the Supreme Court turned down their petition and, instead, decided to take those steps necessary to force upon the group of former Eastern pilots whom they represented the terms of an agreement in principle that had been reached sometime in 1998 and summarized in a September 20, 1999 letter intended for Class Counsel's eyes only.[4]  It is noted that Class Counsel did not file for the declaratory action referred to in paragraph 3(1) of Exhibit 5 until three months after Class Plaintiffs' Adversary Proceeding had been filed.[5]

Considering the fiduciary relationship that the Class Plaintiffs and Class Counsel established with the members of the group involved, coupled with their assurances to these members that the dues that they would be paying to the Corporation following the Third Circuit's decision would be used solely to fund the cost of the resurrected LPP Arbitration, the members of this group were at the least entitled to formal notification sometime after the February 23, 1998 Supreme Court decision and before October 10, 1999 that they had abandoned their promise to represent their interests at an LPP arbitration and that they agreed to a Settlement Agreement that included a provision that for all practical purposes reinstated this Court's permanent injunction that was overturned by both the District Court and Third Circuit  Court almost three years earlier.  This is especially true since the Class Plaintiffs and Class Counsel intended to invoke Federal Bankruptcy Rule 7023 to enforce the terms of this Settlement Agreement against all the members of the group.  Clearly, neither the Class Plaintiffs and Class Counsel have represented the members of this group adequately to satisfy due process.  This would be especially true of the Class Plaintiffs who had been appointed to the Labor Merger Committee to make sure that the Labor Arbitration was turned from a promise to a reality.[6]

---

Section 13 LPP Arbitration with a strike list of replacement arbitrators so that you may select an arbitrator and expeditiously proceed with the arbitration (Exhibit 2 & 3)

[3] Copy of this November 11, 1998 letter is reproduced as Exhibit Number 4.  Specific attention is directed to Footnote 3 on page 2 of this Exhibit.

[4] This September 20, 1999 letter is reproduced in its entirety as Exhibit Number 5.

[5] See Plaintiffs' March 23, 2000, Motion and Memorandum for Final Summary Judgment.

[6] Notice to the membership that the Board had appointed the Class Plaintiffs to the LPP Merger Committee with the assurance that they would receive reasonable compensation for their services in this capacity, "if – and only if – the arbitration of these LPP Claims resulted in the awarding of jobs or the payment of money to the LPP Claimants. Exhibit No. 6.

**Regarding Paragraph 6 (ii) (iii), (iv) and (v) above**

It is the undersigned's position that the failure of the fiduciaries to give any notice withdrawing from the LPP arbitration is serious enough to render the proposed settlement unfair, unreasonable and inadequate, and provides this Court with adequate reason for withholding judgment thereon, and enough reason why class counsel's request for attorney's fees, expenses and settlement administrative costs should be withheld, and, finally, why these class representatives should not be awarded compensation for services not rendered.

## CONCLUSION

It is the position of the undersigned that fiduciaries' denial of the undersigned's due process rights in this case were serious enough to nullify the whole process initiated with the filing of the Complaint seeking Class Status and to deny the benefits that would otherwise flow to both the Class Plaintiffs and Class Counsel.

Respectfully Submitted,

Ramon E. O'Neill
Class Member

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Objections to Settlement Agreement was served upon each of the following attorneys in the manner indicated below on January 14, 2002.

**FEDERAL EXPRESS**
Myles J. Tralins
Tralins And Associates
One Biscayne Tower
2 S. Biscayne Blvd., #2930
Miami, FL 33131
Attorney for the Class

**FEDERAL EXPRESS**
Robert S. Brady
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Attorney for Defendants

By: _Ramon O'Neill_
Ramon E. O'Neill
Class Member

LAW OFFICES

## TRALINS AND ASSOCIATES

ONE BISCAYNE TOWER · SUITE 3310
2 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131

TELEPHONE (305) 374·3300
TELEFAX (305) 374·4933

Exhibit 1

September 25, 1997

Re:    LPP Claimants vs. Continental Airlines:
       Ruling of the United States Court of Appeals

Dear EPFF Member and LPP Claimant:

The United States Court of Appeals for the Third Circuit recently issued the enclosed decision in our appeal concerning the LPPs.

The Court ruled, as we argued, that *Continental Airlines is required to participate in the* National Mediation Board *(Kasher) arbitration proceedings.*

The Court ruled, as we argued, that because Continental Airlines did not reject the pilot's Eastern Air Lines collective bargaining agreement under the provisions of Section 1113 of the Bankruptcy Code, and because Continental relied on the agreement to obtain a ruling that the claim for seniority integration could be treated as a right to payment in the bankruptcy court and to obtain backing from investors for its plan of reorganization, that *Continental is bound by the Eastern Air Lines collective bargaining agreement.*

The Court ruled, against our position, that the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment. In other words, the Court held that *the right to seniority integration is satisfiable by the payment of money damages.*

We requested the Third Circuit to reconsider its decision equating jobs to money in the Petition for Rehearing which is also enclosed. The Court declined to do so.

Accordingly, with the approval of your Board of Directors, we are now preparing a petition to the United States Supreme Court requesting it to exercise is discretionary authority to review that portion of the Third Circuit's ruling which allows the bankruptcy court to replace jobs awarded through seniority integration with money.

The substance of the arguments which will be made to the Supreme Court in asking it to review and reverse the Third Circuit are:

1.    The only remedy provided under the EAL collective bargaining agreement in the event of a merger (sale or transfer of assets) is seniority integration and jobs. The Eastern System

Board of Adjustment specifically determined that money is not a substitute for jobs under the contract when it ruled on the scope of the EAL collective bargaining agreement. Indeed, the only parts of the Allegheny Mohawk LPPs which are included in the EAL CBA are the three specific provisions providing jobs because Eastern would not agree to any other form of compensation in the event of a sale or transfer of assets. No other provisions of the Allegheny Mohawk agreement are included in the EAL CBA; thus, the Third Circuit erred in relying on portions of Allegheny Mohawk which are not part of the EAL CBA.

2.    Continental is bound by the EAL CBA as Continental did not reject the CBA under Section 1113 of the Bankruptcy Act. The Congressional mandate of 1113 requires that the only way a CBA can be altered, amended or terminated is if 1113 is complied with. The decision allows the bankruptcy court to ignore Congress by altering, amending or terminating a collective bargaining agreement which is binding on CAL.

We anticipate that the Supreme Court will advise us within six to nine months whether it will accept our appeal. If it does, the issues will be fully briefed on the merits and the case will be argued and we will obtain a decision as to whether or not the right to jobs can be satisfied by money.

If the Supreme Court does not accept our appeal, we will proceed with the Kasher arbitration and seek seniority integration which will vest the rights of individual pilots to jobs and thus to an identifiable claim which can be calculated in terms of money damages if the bankruptcy court, over our objection, rejects the right to jobs in favor of payment.

An appeal of the bankruptcy judge's decision may then be taken if it is unwarranted by the evidence. (For example, if no showing is made that the integration of EAL pilots is disruptive to Continental's operations, then a decision relegating jobs to money may not be warranted.)

Finally, the Board has agreed to our retention of a bankruptcy expert to review our rights and remedies under Continental's plan of reorganization so that fully informed decisions can be made at the appropriate time as to how to proceed. As well, subject to Board approval, we shall consult with labor counsel on the integration issues.

If you have any questions concerning this letter or the enclosed decision of the Third Circuit, please write your questions down and fax or mail them to me. I will reply to all questions in a follow up letter to be sent next month.

Very truly yours,

TRALINS AND ASSOCIATES

Myles J. Tralins

MJT:jm

Exhibit 2

LAW OFFICES

# TRALINS AND ASSOCIATES

ONE BISCAYNE TOWER · SUITE 3310
2 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131

TELEPHONE (305) 374-3300
TELEFAX (305) 374-4933

CLEARWATER OFFICE
3050 TAMPA ROAD
SUITE 103
PALM HARBOR, FLORIDA 34684
TELEPHONE (813) 443-2954
TELEFAX (813) 443-2899

November 2, 1998

*Via Telefax to 202-692-5086*

Carol Conrad
Senior Assistant
National Mediation Board
Washington, D.C. 20572

Re:    LPP Claimants/Continental Airlines LPP Arbitration

Dear Ms. Conrad:

This letter confirms my telephone request made last week that we be provided with additional names of mediators with airline LPP and seniority integration experience.

Thank you very much.

Sincerely,

TRALINS AND ASSOCIATES
Counsel for LPP Claimants

Myles J. Tralins, Esq.

MJT:jm

cc: Jon Geier, Esq., Counsel for Continental Airlines

ent By: TRALINS & ASSOCIATES ;



# NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692-5000

November 10, 1998

Myles J. Tralins, Esq.
Counsel for LPP Claimants
Tralins and Associates
2 South Biscayne Boulevard
One Biscayne Tower, Suite 3310
Miami, FL 33131

### Re: LPP Claimants/Continental Airlines LPP Arbitration

Dear Mr. Tralins:

This is in response to exchange of correspondence requesting the National Mediation Board to provide a panel of neutrals for the case listed above, from which the parties may select one to hear the dispute.

The panel is enclosed. <u>Please let us know the name of the neutral selected for the completion of our records.</u>

By direction of the NATIONAL MEDIATION BOARD.

Stephen E. Crable
Chief of Staff

Enclosure

Copy with enclosure:

Jon A. Geier, Esq., Counsel for Continental Airlines

SEC/cmc



(202) 823-5920

**NATIONAL MEDIATION BOARD**
WASHINGTON, D.C. 20572

Exhibit 3

**April 1, 1998**

Myles J. Tralins, Esq.
TRALINS AND ASSOCIATES
One Biscayne Tower, Suite 3310
2 South Biscayne Boulevard
Miami, Florida 33131

Re: Eastern Airlines, Inc./Continental Airlines, Inc.
and Continental Airlines -Section 13 LPP Arbitration

Dear Mr. Tralins

This is in response to your letter of March 15, 1998, requesting the National
Mediation Board to provide all parties to the proceeding with a strike list of
replacement arbitrators so that you may select an arbitrator and expeditiously
proceed with the arbitration.

The panel is enclosed. <u>Please let us know the name of the neutral selected for
the completion of our records.</u>

By direction of the NATIONAL MEDIATION BOARD.

Stephen E. Crable

Stephen E. Crable
Chief of Staff

Copies to with Enclosures:

Jon A. Geier, Esq., Counsel for Continental Airlines, Inc.
Daniel P. Casey, Esq., Counsel for Continental Airlines, Inc.
John A. McGuinn, Esq., Counsel for Frontier Pilots
Dennis Gordon, Esq., Counsel for Continental Airlines, Inc.
Daniel Katz, Esq., Counsel for People Express Pilots
Louis Meltz, Esq., Counsel for Independent Assn. Of Continental Pilots
Ronald B. Natalie, Esq., Counsel for Eastern Pilots
James L. Linsey, Esq., Counsel for ALPA

ent By: TRALINS & ASSOCIATES ;

Exhibit 4

LAW OFFICES OF

## PAUL, HASTINGS, JANOFSKY & WALKER LLP

A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

1299 PENNSYLVANIA AVENUE, N.W.

WASHINGTON, D.C. 20004-2400

TELEPHONE (202) 508-9500

FACSIMILE (202) 508-9700

INTERNET www.phjw.com

ROBERT P. HASTINGS (1910-1998)
COUNSEL
LEE G. PAUL
LEONARD S. JANOFSKY
CHARLES M. WALKER

600 PEACHTREE ST., N.E., STE. 2400
ATLANTA, GEORGIA 30308-2294
TELEPHONE (404) 815-2400

695 TOWN CENTER DRIVE
COSTA MESA, CALIFORNIA 92626-1924
TELEPHONE (714) 668-6200

555 SOUTH FLOWER STREET
LOS ANGELES, CALIFORNIA 90071-2371
TELEPHONE (213) 683-6000

WRITER'S DIRECT ACCESS
(202)508-9589
jagcicr@phjw.com

399 PARK AVENUE
NEW YORK, NEW YORK 10022-4697
TELEPHONE (212) 318-6000

345 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94104-2635
TELEPHONE (415) 856-1600

1055 WASHINGTON BOULEVARD
STAMFORD, CONNECTICUT 06901-2217
TELEPHONE (203) 961-7400

1299 OCEAN AVENUE
SANTA MONICA, CALIFORNIA 90401-1078
TELEPHONE (310) 319-3300

ARK MORI BUILDING, 30TH FLOOR
12-32, AKASAKA I-CHOME
MINATO-KU, TOKYO 107, JAPAN
TELEPHONE (03) 3586-4711

OUR FILE NO.
19978.59928

November 11, 1998

<u>VIA FACSIMILE AND REGULAR MAIL</u>
Ms. Priscilla Ziegler
Staff Coordinator, Arbitration
National Mediation Board
1301 K Street, N.W., Suite 250E
Washington, D.C. 20572-0002

Re:    Eastern Pilot Merger Committee Request for Arbitration Panel

Dear Ms. Ziegler:

On behalf of Continental Airlines, Inc. ("Continental") this responds to the request by John C. Lenahan that the National Mediation Board supply a panel of arbitrators to conduct a seniority integration arbitration between 300 former Eastern Air Lines, Inc. ("Eastern") pilots and Continental. Mr. Lenahan purports to make his request behalf of an entity called the Eastern Pilots Merger Committee.[1]  Continental objects to and opposes Mr. Lenahan's request on the following grounds:  (1) the NMB has already supplied a panel of arbitrators to Myles Tralins, counsel to approximately 300 other former Eastern pilots for the identical dispute entailing Labor Protective Provisions ("LPPs") in effect when Eastern still existed and supplying another panel almost certainly would result in inconsistent arbitration results, and (2) to the extent the EPMC alleges this is a "different" dispute than the one for which Mr. Tralins has sought a panel of arbitrators, Eastern is no longer a carrier covered by the Railway Labor Act and therefore the Board has no authority to perform services.

<u>The Longstanding Eastern LPP Arbitration Already is Underway</u>.  The NMB previously supplied a panel of arbitrators in response to the request of certain former Eastern pilots, represented by attorney Myles Tralins, seeking to arbitrate pursuant to the LPP clause of the 1986 collective bargaining agreement between Eastern and the Air Line Pilots Association ("ALPA") (the "Eastern LPPs").  In this arbitration proceeding, the former Eastern pilots assert

---

[1]    To the extent the EPMC requests an arbitration panel as the "representative" of certain pilots, Continental contests any representational status.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

Ms. Priscilla Ziegler
November 11 1998
Page 2

that Eastern somehow "merged" with Continental and thereby triggered a seniority integration proceeding under the Eastern LPPs. The EPMC apparently seeks to arbitrate the same dispute.

By way of background, arbitration of the Eastern LPPs began in proceedings brought by ALPA before arbitrator Richard R. Kasher, who issued a preliminary procedural ruling on August 4, 1992. This arbitration proceeding was long in abeyance, due, first to the Eastern, and then the Continental, bankruptcies and subsequent court proceedings and in ALPA settlement too lengthy to enumerate here. Suffice it to say that on August 29, 1997, the United States Court of Appeals for the Third Circuit affirmed the rulings of the United States District Court for the District of Delaware vacating an injunction against continuation of an arbitration.[2] *In re Continental Airlines, Inc.*, 125 F.3d 120 (3d Cir. 1997), cert. denied, 118 S. Ct. 1049 (1998). Arbitrator Kasher, however declined further participation on the grounds (a) the District Court's decision specifically stated that the Kasher Arbitration was over and that individual pilots would have to begin anew to the extent they had standing and (b) that none of the parties that had selected Mr. Kasher remained in the proceeding. Mr. Tralins, on behalf of his clients, thereafter requested and was provided a panel of arbitrators from the NMB.[3]

The NMB should not supply another panel of arbitrators for the identical dispute. This is not a case where there can be multiple grievances arising out of repeated alleged violations of a single work rule. The question whether Eastern and Continental merged, and how seniority should be integrated, entail's group rights that can, by their very nature, only be resolved once, in a single proceeding. The very language of LPP § 13(a), incorporated by reference into the Eastern-ALPA agreement, provides for a single arbitration proceeding conducted by "an arbitrator selected from a panel of seven names furnished by the National Mediation Board." This panel has already been supplied. If any other former Eastern pilots wish to be heard on this

---

2/    The Third Circuit also affirmed the District Court's holdings that (a) whether individual pilots had standing to pursue arbitration after ALPA withdrew was a minor dispute for an arbitrator and (b) the bankruptcy LPP claims filed by Eastern pilots were, at best, general unsecured, pre-petition claims not entitled to specific performance or an administrative priority. In addition, before any seniority arbitration proceeding could commence, there would have to be a finding that a merger had in fact occurred. The fact that the Board dismissed the single carrier case brought by the unions representing the former Eastern employees should be dispositive on that question. *In re Eastern Air Lines, Inc.*, 17 N.M.B. 432, 448-50 (1990).

3/    The parties have not yet selected an arbitrator, in part due to discussions between Mr. Tralins and Continental on a possible settlement of this dispute. Because Mr. Tralins' clients were the only former Eastern pilots to timely request a panel of arbitrators from the NMB, he has recently filed a motion in the Delaware Bankruptcy Court seeking to have the LPP claims of all other unresolved LPP claims dismissed for failing to perfect their right to arbitration. The motion remains pending.

:ent By: TRALINS & ASSOCIATES ;

PAUL, HASTINGS, JANOFSKY & WALKER LLP

Ms. Priscilla Ziegler
November 11 1998
Page 3

subject, their recourse is before the arbitrator selected from the panel already provided. Of course, Continental contends that other than the pilots represented by Mr. Tralins, former Eastern pilots failed to timely petition for arbitration.

### The NMB Has No Jurisdiction To Appoint Arbitrators Except in The LPP Dispute That Accrued While Eastern Was Operational.

The LPP arbitration already underway seeks to arbitrate a right that allegedly accrued in the past, under the old Eastern-ALPA collective bargaining agreement. If the EPMC is asserting some right that accrued more recently under the Eastern-ALPA agreement, the controversy is not covered by the Railway Labor Act,[4] and the NMB lacks the power to appoint arbitrators. The NMB has no authority to take any action in such a matter, even the ministerial act of supplying names of arbitrators, because Eastern is no longer a "carrier by air engaged in interstate or foreign commerce . . ." as defined in the Railway Labor Act. 45 U.S.C. § 181. *See RLEA v. Wheeling Acquisition Corp.*, 736 F.Supp. 1397, 1402-03 (E.D.Va. 1990) (company that did not currently own any rail lines or provide any rail services was not a "carrier" under RLA, and had no "employees" under RLA; therefore, controversy not subject to RLA procedures), *aff'd, 914 F.2d 53, 56 (4th Cir. 1990)*. The NMB's sole statutory authority is to assist the resolution of disputes between "carriers," employees of carriers, and their representatives. E.g. 45 U.S.C. § 155. The NMB zealously guards against involvement in controversies that are not within its statutory mandate. *See The SABRE Group, Inc.*, 25 N.M.B. 466 (1998) (declining to opine whether or not SABRE was subject to the RLA, since the request did not fall in one of the well-recognized areas of NMB activity).

In sum, the NMB has no authority to act in non-carrier disputes and should not respond to the EPMC's request. To do so would undermine the LPP arbitration that is already underway, and delay resolution of a controversy of many years duration.

---

4/    The pilots represented by Mr. Lenehan recently filed a law suit in the District Court for the District of New Jersey seeking a declaration that they "are entitled to two separate, distinct and concurring remedies, namely, (1) enforcement of the [Eastern-ALPA] Collective Bargaining Agreement and the [Eastern] LPPs which require seniority integration plus damages for Continental's failure to comply with the Collective bargaining Agreement and the LPPs subsequent to the confirmation of [Continental's] plan of reorganization, and (2) liquidation of their proofs of claim under the Continental bankruptcy plan of reorganization." This frivolous lawsuit is in contempt both of the order confirming Continental's plan of reorganization and the decision of the Third Circuit.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

Ms. Priscilla Ziegler
November 11 1998
Page 4

If you have any questions with respect to this letter, please call the undersigned at the number provided above. Thank you for your consideration of this matter.

Very truly yours,

Jon A. Geier
of PAUL, HASTINGS, JANOFSKY & WALKER

Counsel for CONTINENTAL AIRLINES, INC.

cc:    John C. Lenahan
       Myles Tralins
       Stephen Crable
       Robin Curtis

**Continental**



Exhibit 5

Continental Airlines, Inc.     Tel  713 324 5000
41st Floor  HQSLG              Fox 713 324 5161
1600 Smith Street
Houston TX 77002

September 20, 1999

Miles J. Tralins, Esq.                          **CONFIDENTIAL**
Tralins & Associates                      **For Settlement Purposes Only**
One Biscayne Tower, Suite 3310
2 South Biscayne Tower
Miami, FL  33131

    Re:   *EMPC v. Continental Airlines, Inc.*

Dear Mr. Tralins:

    This letter sets forth the terms of a settlement proposal to resolve the labor protective provision claims ("LPP claims") filed by former Eastern Air Lines, Inc. pilots which remain pending and unliquidated in the Continental Airlines, Inc. bankruptcy proceeding. This proposal is made in order to avoid the burden, inconvenience and expense of litigating those claims, including the litigation of a seniority integration arbitration which will be a necessary precedent to liquidating the claims in the Delaware Bankruptcy Court.

    In terms of evaluating the settlement proposal set forth below, you should know what Continental's positions would be if, as a result of the seniority integration arbitration, there was any liability (a result which, as you know, Continental does not believe would occur) and the parties were required to litigate the liquidation of the LPP claims. First, it is Continental's position that the LPP claims are subject to a limitation of one year's back pay pursuant to Bankruptcy Code Section 502(b)(7). Second, any damages that would accrue if liability were found would commence, at the latest, as of January 1991 and hence would be based upon the pilot pay structure in place for Continental at that time. Third, the liability to any pilot would depend upon the status they would have had (*i.e.* Captain, First Officer, Second Officer) based upon the integrated seniority list and given Continental's pilot staffing requirements as between January and December 1991. Continental does understand that you disagree with the applicability of the Section 502(b)(7) limitation, and perhaps some of Continental's other positions as well.

    However, in order to avoid what could be years longer litigation and to finally resolve these long-pending claims, Continental would propose the following settlement terms:

    (1)    If, as a result of the declaratory action we understand you will bring on behalf of all eligible EAL pilots, a final declaratory ruling is issued that the LPP claims are subject to a limitation of one year's back pay pursuant to Bankruptcy Code



Mr. Miles J. Tralins, Esq.
September 20, 1999
Page 2

Section 502(b)(7), the bankruptcy estate will grant each former Eastern pilot with an unresolved LPP claim (list to be agreed to by the parties) an agreed claim in the face amount of $110,000;

(2)     The claims will be paid as are all general unsecured prepetition Class 13 claims under the Reorganization Plan confirmed on April 27, 1993;

(3)     Because this settlement provides a face value claim greater than the one-year 502(b)(7) limitation,[1] settling former Eastern pilots with unresolved LPP claims must agree to sign a general release releasing the bankrupcy estate and Continental and all affiliates or related parties from any claims arising out of the alleged Eastern merger.

Before proceeding to make this offer generally available, we would like to have your agreement that you will endorse the terms of the settlement to the pilots you represent.

If you have any questions, please do not hesitate to call me. I look forward to hearing your response after you have had the opportunity to discuss it with your clients.

Very truly yours,

Robin E. Curtis
Managing Attorney
Labor and Employment

cc:    Jon Geier
       Jim Patton

_____

[1] Pursuant to the Pilot Employment Policy, revised August 1, 1990, Ch. 12, effective 4/1/91, the pay scale for a first year captain was $59.41 per flight hour with a 72 flight hour per month guarantee resulting in an annual salary of $51,330.24. Of course, the pay scale for first and second officers was substantially lower.

Exhibit 6

# LPP MERGER COMMITTEE APPOINTED

As most of you know, extensive time and assistance for our legal counsel will be required from LPP Claimant pilot representatives with respect to preparation for and participation in the NMB LPP Arbitration.

For approximately 8 years, your Executive Committee of Larry Dunn, Bill Mann and Jim Baldridge, has provided the overwhelming portion of the work and effort involved in maintaining our organization, looking after its finances, interfacing with our members, gathering information and coordinating efforts on a myriad of fronts with our lawyers and providing pilot representation where and when required.

Fortunately for us, Larry, Bill and Jim have made their time available, even at personal sacrifice or hardship.

The NMB LPP Arbitration will require an even greater commitment of time from our pilot representatives.

Larry, Bill and Jim have agreed to step up to the plate on our behalf and serve as our Merger Committee and your Board is deeply appreciative for their commitment.

Because of these additional and time consuming duties, your Board has decided that if - and only if - the LPP Claims are successful, resulting in the award of jobs or the payment of money to the LPP Claimants, reasonable compensation for that success and their time and effort in making it happen should be provided to Larry, Bill and Jim.

The Board is certain that all of you agree.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Class Member's Appearance was served upon each of the following attorneys in the manner indicated below on January _11o_, 2002.

**FEDERAL EXPRESS**
Myles J. Tralins
Tralins And Associates
One Biscayne Tower
2 S. Biscayne Blvd., #2930
Miami, FL 33131
Attorney for the Class

**FEDERAL EXPRESS**
Robert S. Brady
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Attorney for Defendants

By: _____
Ramon E. O'Neill

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    }
                                          }       Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al., }            Chapter 11
                                          }
         Debtors                          }
_____}
                                          }
JAMES BALDRIDGE, WILLIAM MANN, }
and LARRY DUNN, individually, and         }
as representatives of a class of persons }
similarly situated who are referred to as }
the LPP CLAIMANTS,                        }
                                          }
         Plaintiffs,                       }        Adversary Proceeding
                                          }           No. A-99-412
                                          }
v.                                        }
                                          }
CONTINENTAL AIRLINES HOLDINGS, }
INC., CONTINENTAL AIRLINES, INC.         }
and SYSTEM ONE HOLDINGS, INC.            }
                                          }
         Defendants.                       }
_____}

## APPEARANCE

Please be advised that the undersigned member of the Class certified by this Court on February 3, 2000 will appear and represent himself at the Settlement Hearing that will be conducted by this Court on January 31, 2002, daytime, in a Court room of the United States Bankruptcy Court for the District of Delaware, 844 King Street, Wilmington, Delaware, to show cause why he believes (i) that the Class Representatives and Class Counsel have not represented the Class adequately to satisfy due process, (ii) why the proposed settlement should not be approved as fair and adequate, (iii) why a judgment should not be entered thereon, (iv) why Class Counsel should not be awarded his requested attorney's fees, expenses and Settlement Administration Costs; (v) why the Class Representatives should not be awarded compensation.

Ramon E. O'Neill
Class Member

# EXHIBIT

# D

15 JAN 2002

FILED

2002 JAN 17  AM 11: 31

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

Case number 90-932

## OBJECTIONS TO THE SETTLEMENT AGREEMENT

I, BROWNIE N INMAN Easter employee # 37593 preserve my right to

arbitration as awarded by the Third Circuit Court 125 F.3d 120 ( 3d Cir. 1997).

Respectfully,

Brownie Inman

Name

Address
BROWNIE N INMAN
A905 SW 128 CT 33177
MIAMI FL

1/17/02

80

18905 SW 128 Ct
Miami , Fl 33177

Jan 15 2002

To whom it may concern,

I, Brownie N Inman, Eastern Airline employee number 37593, object to the EAL LPP claimants class action settlement, known also as the Baldridge LPP class action, for the following reasons:

1) I was an EAL crew member since March 1989. I was covered under the EAL collective bargaining agreement.

2) I was not recognized by CAL under the previous settlement known as the ALPA/CAL settlement. Therefore I was not recognized as a plaintiff then, by CAL.

3) Now under the LPP Claimaints settlement I am recognized as a plaintiff.

4) The CAL estate has manipulated who is a plaintiff, in which settlement, for the enrichment of its own estate.

5) This settlement agreement should include for those plaintiffs that were locked out of the participation in the ALPA/CAL agreement the following :

   a) A right of hire, dated back to the CAL/ALPA agreement.
   b) Interline passes as they were offered under the ALPA/CAL agreement.

6) I am unable to attach any copies of the CAL/EAL settlement, however my attorney Mr. Myles Trailins, the EPFF attorney, in reference to his affidavit of Dec 26 2001 stated he has compared the list of names to verify the accuracy of the ALPA/CAL settlement , therefore he can produce the required documents, regarding the above statement.

Brownie N Inman

18905 SW 128 Ct
Miami , Fl 33177

Jan 15 2002

To whom it may concern,

I, Brownie N Inman, Eastern Airline employee number 37593, object to the EAL LPP claimants class action settlement, known also as the Baldridge LPP class action, for the following reasons:

1) The EPFF board, which was elected for a one year term approximately seven years ago, has not held subsequent elections, and is therefore illegal and in no way entitled to construct a superior settlement for themselves,ie: 75 thousand dollars vs 8000, without the approval of the membership of EPFF.

2) Mr. Myles Trailins, the EPFF attorney, has knowingly and comfortably dealt with this illegal board for years and provided very little consultation or interaction with the membership of EPFF.

3) The proposed settlement is satisfactory only to the board and to Mr. Trailins.

*Brownie N Inman*

*15 JAN 2002*

## OBJETIONS TO SETTLEMENT AGREEMENT

I *Brownie N. Inman* Eastern Airlines employee # *37593* object to

EAL LPP Claimants Settlement ; case number 90-932 Chapter 11. For the following

reasons:

*A. 922 F.2d at 984* (Decided Dec. 21, 1990)

1. The nature of this case has already been decided in *922 F.2d at 984 , Ionosphere*

   *Club, Inc. [Texas Air / Continental Holdings / Continental Airlines] v. Air Line*

   *Pilots Association, International [LPP Claimants].* As we read the history of the

   case *922 F. 2d at 987 through 988*; the only difference between the chronological

   history in this case now in the Third Circuit and the one decided on the Second

   Circuit is that "**on June 21, 1989, Eastern filed a motion in the bankruptcy court**

   **to reject the collective bargaining agreement pursuant to 1113. Eastern**

   **withdrew that motion on July 26 , 1989.**" The history of this Collective Bargaining

   Agreement and Continental is straightforward, Continental has always, and will always

   use every possible means to reject this CBA. Contrary to the Second Circuit decision

   where Continental was the defendant, Continental is still trying to reject this CBA by

   manipulating this bankruptcy court in the Third Circuit .

2. The Second Circuit goes through a thorough analysis *922 F. 2d at 989 through*

   *989* regarding the intent by Congress of the enactment of 1113. In this analysis the

   court even quotes Senator Packwood's statements, one of the sponsors of the Bankruptcy

   Reform Act of 1984 and the enactment of 1113.

3 . The Second Circuit analysis *922 F. 2d at 989 through 989* also makes it very

   clear that a CBA can only be rejected through the means of 1113. More specifically the

court at *922 F. 2d at 990.* states : **We construe subsection 1113(f) quite literally.**
**We hold that it was meant to prohibit the application of any other provision of**
**the Bankruptcy Code [11 U.S.C. 502 (b)(7) ] when the application would permit**
**the debtor to achieve a unilateral termination or modification of a collective**
**bargaining agreement without meeting the requirements of 1113.**

B. *In Re: Ionosphere Club, Inc. [Texas Air / Continental Holdings / Continental*
   *Airlines] v. Air Line Pilots Association, International [LPP Claimants].*
   *Docket No. 93-5054 (Decided 1994)*

1. The Second Circuit again analyzes the issue of the co-existence of two sections of
   the bankruptcy law, Sections 507 and 1113. The court clearly recognizes that the
   EAL  Pilots collective bargaining agreement is not a rejected contract. It clearly
   upholds its decision on *922 F.2d at 984*  which states: **We construe subsection**
   **1113(f) quite literally.  We hold that it was meant to prohibit the application of**
   **any other provision of the Bankruptcy Code [11 U.S.C. 502 (b)(7) ] when the**
   **application would permit the debtor to achieve a unilateral termination or**
   **modification of a collective bargaining agreement without meeting the**
   **requirements of 1113.**

C. 502 (b) (7) Proceedings

In these proceedings this court comes to the following analysis as a means to
determine  that the EAL pilots CBA is a rejected contract..
**And, Indeed, the Third Circuit made it very clear that the former Eastern pilots**
**should never become employees of Continental:**

> **we are convinced that the particular circumstances of this case might the**

I Eastern Airlines employee # object to

enforcement of the equitable remedy of seniority integration impractical such than an alternative money award would be appropriate. The seniority integration sought by the LPP claimants and the group of 31 could potentially result in the displacement of many Continental pilots. Such displacements has the potential to create an environment rife with hostility and low morale, not to mention a detrimental effect on employer-employee relations." In re Continental Airlines, supra, at 136: emphasis supplied.

The intent of the Third Circuit as its writing continues,

The circumstances indicated that seniority integration would not be a feasible remedy and that an alternative remedy of monetary damages would be appropriate. Therefore, we conclude that the right of seniority integration gives rise to a "right of payment" such that the remedy constitutes a "claim" dischargeable in the bankruptcy.

We take care to note the boundaries of our holdings. It is not our purpose to suggest the award the arbitrator should grant, if an award is warranted upon disposition of the LPP dispute. Our holding is limited to how the claims should be treated in bankruptcy. Simply put, we hold that any claim based on an award of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment. As such, the right to seniority integration is satisfiable by the payment of money damages."

The above indicates that this Bankruptcy court has taken the decision of the Third Circuit out of contents and reached a decision contrary to the Third Circuit Court opinion. If the Third Circuit intentions was to terminate the CBA, it would have never allowed the

I Eastern Airlines employee # object to

LPP Claimants to pursue arbitration. On the contrary the decision states:

> **Accordingly, we conclude that Continental is bound by its prior**
>
> **representations that it has a duty to arbitrate the LPP dispute.**

The 11 U.S.C. 502 (b)(7) only applies to terminated or rejected contracts. The above

three decisions upholds that the CBA between the Eastern pilots and Continental as a non-

rejected contract. The Third Circuit Decision does not limit the award or rejects the CBA, it

merely says that an arbitrator award must be converted to a monetary claim in bankruptcy

**D.    Meaningful negotiations between LPP Claimants and Continental**

It has been Continental's position since the filing of their second amended plan of

reorganization that:

a.    *The LPP Claims, all of which are based on an alleged duty to conduct seniority*

   *integration arbitration, are time-barred because ALPA [LPP Claimants] did not*

   *seek a timely judicial determination that Continental had a duty to arbitrate.*

**Not True.**    *922 F.2d at 984; In Re: Ionosphere Club, Inc. [Texas Air /*

   *Continental Holdings / Continental  Airlines] v. Air Line Pilots*

   *Association, International [LPP Claimants]. Docket No. 93-5054)*

   *and 125 F. 3d  120 (3d Cir. 1997)*

All three opinions have proved Continental wrong since 1986. Continental since 1986 has

pleaded along these and similar grounds

b.    *The attempts to apply the LPPs of the Eastern-ALPA collective bargaining*

   *agreement to Continental presents  a representation dispute within the*

   *exclusive jurisdiction of the National Mediation Board, which has previously*

dismissed ALPA's petition to declare that Continental and Eastern were "single
carries".

**Not True.**  *922 F.2d at 984 In Re: Ionosphere Club, Inc. [Texas Air /*
*Continental Holdings / Continental Airlines] v. Air Line Pilots*
*Association, International [LPP Claimants].  Docket No. 93-5054*
*(Decided 1994) and 125 F. 3d  120 (3d Cir. 1997)*

Again, the three opinions have proved Continental wrong. This is not an issue of
representation .

*c. There is no basis to conclude that Continental is bound by the LPPs of the*
*Eastern-ALPA agreement or that it has any duty to arbitrate.*

**Not True.**  *922 F.2d at 984In Re: Ionosphere Club, Inc. [Texas Air /*
*Continental Holdings / Continental Airlines] v. Air Line Pilots*
*Association, International [LPP Claimants].  Docket No. 93-5054*
*(Decided 1994) and 125 F. 3d  120 (3d Cir. 1997).*

Again, the three opinions have proved Continental wrong. The first opinion which was rendered
before the filing of the second amended plan of reorganization by Continental holding Texas
Air/Continental Holdings /Continental Airlines had a duty to arbitrate. Before Continental filed the
second amended plan of reorganization, Continental was fully aware of its duty to arbitrate, instead it
consciously decided to deceive this Bankruptcy court and its creditors. The other two opinions
reaffirmed the first opinion.

In a letter from **Paul, Hastings, Janorky & Walker LLP dated November 11, 1998,** Continental
attorneys state *"Continental contends that other than the pilot represented by Mr. Tralins, former
Eastern pilots failed to timely petition for arbitration."* This is absolutely incorrect , as the grievance
process continues **without abatement** until satisfied or withdrawn. Continental is still trying to play a
numbers game, trying to reduce the amount of claimants at any cost.. In this letter at footnote #2

I Eastern Airlines employee # object to

Continental admits the following *The Third Circuit also affirmed the District Court's holdings that (a) whether individual pilots had standing to pursue arbitration after ALPA withdrew was a minor dispute for an arbitrator.*

All this litigation has cost me money, at 100 cents on the dollar. With the stagnation of the process some of us have reached the age where we are at the end of our careers. Mr. Myles Tralins is telling us that we should take the settlement and out of our shares pay him and the named plaintiffs. We have proved Continental wrong reasonable negotiations are in order. Continental has fought hard and long to prevent me from exercising my legal right to an arbitration. What this settlement offers does not even come close to a fair compensation, and it improperly voids my right of access to the only legally constituted machinery to process grievances under the Railway Labor Act, which no court can deny me.

E.    *The Third Circuit also affirmed the District Court's holdings that (a) whether individual pilots had standing to pursue arbitration after ALPA withdrew was a minor dispute for an arbitrator*

In the same letter from **Paul, Hastings, Janorky & Walker LLP dated November 11, 1998,** Continental admits the following *The Third Circuit also affirmed the District Court's holdings that (a) whether individual pilots had standing to pursue arbitration after ALPA withdrew was a minor dispute for an arbitrator.* It clearly means that it is my decision and only my decision to pursue arbitration. It is not the decision of the class plaintiff or class counsel. It is also recognized in this letter by Continental that " *The question whether Eastern and Continental merged, and how seniority should be integrated, entails group rights that can by their nature only be resolved once in a single proceeding. The very language of LPP S 13 (a), incorporated by reference into the Eastern-ALPA agreement, provides for a single arbitration proceeding conducted by "an arbitrator selected from a panel of seven names furnished by the National Mediation Board."*

At Continental convenience I have the right to arbitrate under certain circumstances and for other circumstances I do not.

I Eastern Airlines employee # object to

The Third Circuit at **125 F. 3d 120 (3d Cir. 1997)** ruled **"Accordingly, we conclude that Continental is bound by its prior representations that it has a duty to arbitrate the LPP dispute"** This settlement agreement is for the convenience of Continental, Class Counsel (Mr. Tralins) and named Class Representatives [ Baldridge, Dunn & Mann ] andhas been exclusively designed by Continental to abrogate my rights, the samerights Mr. Tralins fought against Continental during the ALPA/ Continental agreement. For these reasons I object to this agreement and request this court to preserve my rights to proceed with arbitration.

LPP Claimant

*Brownie N Inman*



FILED

2002 JAN 17  AM 11:31

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

The following documents published by the US Department of Aviation clearly
demonstrate the routes of Eastern Airlines have been merged with those of
Continental Airlines.  This can be verified at :

download files:  car00web.pdf     pages 31-39
                 carweb01.pdf      pages 30-39

**U.S. AIR CARRIER INTERNATIONAL ROUTE AUTHORITY**
**ISSUED AS OF NOVEMBER 15, 2000**

# CARRIER REPORT

Office of International Aviation
U.S. Air Carrier Licensing Division
U.S. Department of Aviation
Washington, D.C. 20595
Telephone: (202) 366-2406 or 6519

31

| | | | | | |
|---|---|---|---|---|---|
| CONTINENTAL AIRLINES | NADI, FIJI | LONG BEACH, CAL | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | OAKLAND, CALIFO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | ONTARIO, CALIFO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | PORTLAND, OREGO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | PAGO PAGO, SAMO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | SAN DIEGO, CALI | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | SEATTLE, WASHIN | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | SAN FRANCISCO, | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NADI, FIJI | SAN JOSE, CALIF | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | FRENCH POLYNESI | HONOLULU, OAHU, | 9211046 | 921124 | 176 |
| CONTINENTAL AIRLINES | FRENCH POLYNESI | LOS ANGELES, CA | 9211046 | 921124 | 176 |
| CONTINENTAL AIRLINES | FRENCH POLYNESI | PAGO PAGO, SAMO | 9211046 | 921124 | 176 |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | HONOLULU, OAHU, | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | LOS ANGELES, CA | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | LONG BEACH, CAL | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | OAKLAND, CALIFO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | ONTARIO, CALIFO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | PORTLAND, OREGO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | PAGO PAGO, SAMO | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | SAN DIEGO, CALI | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | SEATTLE, WASHIN | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | SAN FRANCISCO, | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | PAPEETE, SOC. I | SAN JOSE, CALIF | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | INDONESIA | U.S. POINTS | 00-8-19 | 8/22/00 | 029F |
| CONTINENTAL AIRLINES | NEW ZEALAND | HONOLULU, OAHU, | 9211046 | 921124 | 176 |
| CONTINENTAL AIRLINES | NEW ZEALAND | LOS ANGELES, CA | 9211046 | 921124 | 176 |
| CONTINENTAL AIRLINES | NEW ZEALAND | PAGO PAGO, SAMO | 9211046 | 921124 | 176 |
| CONTINENTAL AIRLINES | CANADA | U.S. POINTS | 95-6-26 | 95/6/23 | 659 |
| CONTINENTAL AIRLINES | WINNIPEG, MAN., | BISMARCK, NORTH | 8612050 | 861217 | 073F |
| CONTINENTAL AIRLINES | WINNIPEG, MAN., | MINOT, NORTH DA | 8612050 | 861217 | 073F |

**CONTINENTAL OR EASTERN**

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | SAN ANDRES IS., | FT. LAUDERDALE, | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | SAN ANDRES IS., | MIAMI, FLORIDA, | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | SAN ANDRES IS., | NEW ORLEANS, LO | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | SAN ANDRES IS., | ST.THOMAS,VIRGI | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | SAN ANDRES IS., | ST.CROIX,VIRGIN | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | HARTFORD, CT/SP | 8610057 | 861027 | 110 |

32

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | PHILADELPHIA, P | 8610057 | 861027 | 157 |

33

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | NEWARK, NEW JER | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | NEW YORK, NEW Y | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ST. LOUIS, MISS | 8801043 | 880225 | 59 |

34

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | ATLANTA, GEORGI | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | BALTIMORE, MARY | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | CHICAGO, ILLINO | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | DETROIT, MICHIG | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | NEWARK, NEW JER | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | NEW YORK, NEW Y | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | MIAMI, FLORIDA, | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | PHILADELPHIA, P | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | WASHINGTON, D.C | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | HAVANA, CUBA | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | HAVANA, CUBA | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | NEW YORK, NEW Y | 8801043 | 880225 | 59 |

35

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | POINTE A PITRE, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ATLANTA, GEORGI | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEWARK, NEW JER | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEW YORK, NEW Y | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | WASHINGTON, D.C | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ATLANTA, GEORGI | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEWARK, NEW JER | 8610057 | 861027 | 58 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEW YORK, NEW Y | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | WASHINGTON, D.C | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |

36

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | FORT DE FRANCE, | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | AGUADILLA, PUER | 8801043 | 880225 | 69 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |

37

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ST. LOUIS, MISS | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CHILE | U.S. POINTS | 8610057 | 861027 | 131 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | NEWARK, NEW JER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | NEW YORK, NEW Y | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ST. LOUIS, MISS | 8801043 | 880225 | 59 |

38

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BELGIUM | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | GERMANY (WEST) | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | LUXEMBOURG | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | NETHERLANDS | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | SWITZERLAND | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | TEL AVIV-YAFO, | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | JORDAN | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | ALLENTOWN, PENN | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | SCRANTON/WILKES | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | PHILADELPHIA, P | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | SYRACUSE, NEW Y | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ALBANY, NEW YOR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ATLANTA, GEORGI | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | AUGUSTA, MAINE, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | BIRMINGHAM, ALA | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | BOSTON, MASSACH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | BALTIMORE, MARY | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | COLUMBIA, SOUTH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | AKRON/CANTON, O | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHATTANOOGA, TE | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHICAGO, ILLINO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHARLESTON, SOU | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CLEVELAND, OHIO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHARLOTTE, NORT | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | COLUMBUS, OHIO, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CORPUS CHRISTI, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | COLUMBUS, GEORG | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CINCINNATI, OHI | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | DAYTONA BEACH, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | DETROIT, MICHIG | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | EVANSVILLE, IND | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | FT. LAUDERDALE, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | GAINESVILLE, FL | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | GREENSBORO/HIGH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | GREENVILLE/SPAR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | HARTFORD, CT/SP | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | HOUSTON, TEXAS, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | NEW HAVEN, CONN | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | INDIANAPOLIS, I | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | JACKSONVILLE, F | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | LEXINGTON/FRANK | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MONTGOMERY, ALA | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MIAMI, FLORIDA, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MILWAUKEE, WISC | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MELBOURNE, FLOR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MOBILE, ALABAMA | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MINNEAPOLIS/ST. | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | NEW ORLEANS, LO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | NEW YORK, NEW Y | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ORLANDO, FLORID | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | WEST PALM BEACH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | PHILADELPHIA, P | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | PENSACOLA, FLOR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | PROVIDENCE, RHO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | RALEIGH/DURHAM, | 9110034 | 911017 | 148 |

39

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | TORONTO, ONTARI | RICHMOND, VIRGI | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ROANOKE, VIRGIN | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | SAN ANTONIO, TE | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | LOUISVILLE, KEN | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | SARASOTA/BRADE N | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ST. LOUIS, MISS | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | TOLEDO, OHIO, U | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | TAMPA, FLORIDA, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | WASHINGTON, D.C | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | ALLENTOWN, PENN | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | SCRANTON/WILKES | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | PHILADELPHIA, P | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | SYRACUSE, NEW Y | 9110035 | 861027 | 071F |
| **DELTA AIR LINES** | | | | | |
| DELTA AIR LINES | COSTA RICA | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | EL SALVADOR | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | GUATEMALA | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | HONDURAS | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | NICARAGUA | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | CANCUN, MEXICO | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | COZUMEL, MEXICO | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | GUADALAJARA | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MONTERREY, MEXICO | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | DALLAS/FT. WORTH | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | DALLAS/FT. WORTH | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | HOUSTON, TX | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | HOUSTON, TX | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | VILLAHERMOSA | HOUSTON, TX | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | LAS VEGAS, NV | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | AGUASCALIENTES | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | HERMOSILLO, MEXICO | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | LEON, MEXICO | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | PUERTO VALLARTA | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | MIAMI, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MERIDA, MEXICO | MIAMI, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | MIAMI, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | NEW ORLEANS, LA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | NEW YORK, NY | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | NEW YORK/NEWARK | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | ORLANDO, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | GUADALAJARA, MEXICO | PHOENIX, AZ | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | GUAYMAS, MEXICO | PHOENIX, AZ | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | HERMOSILLO, MEXICO | PHOENIX, AZ | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | PHOENIX, AZ | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | SAN DIEGO, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | SAN JOSE DEL CABO | SAN DIEGO, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY, ME | LOS ANGELES, CA | 9205020 | 920617 | 630 |
| DELTA AIR LINES | ACAPULCO, MEXIC | LOS ANGELES, CA | 9205020 | 920617 | 630 |
| DELTA AIR LINES | GUADALAJARA, ME | LOS ANGELES, CA | 9205020 | 920617 | 630 |
| DELTA AIR LINES | LEON, MEXICO | ATLANTA, GA | N00-7390 | 6/5/00 | EXEM |
| DELTA AIR LINES | SAN JOSE DEL CABO, MEXICO | ATLANTA, GA | N00-7390 | 6/5/00 | EXEM |
| DELTA AIR LINES | MEXICO CITY, ME | LOS ANGELES, CA | 9205020 | 920617 | 630 |
| DELTA AIR LINES | PANAMA REPUBLIC | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |

**U.S. AIR CARRIER INTERNATIONAL ROUTE AUTHORITY**
**ISSUED AS OF NOVEMBER 1, 2001**

# CARRIER REPORT

Office of International Aviation
U.S. Air Carrier Licensing Division
U.S. Department of Aviation
Washington, D.C. 20595
Telephone: (202) 366-2406 or 6519

| EASTERN/CONTINENTAL | FREEPORT, BAHAM | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | NEW YORK, NY | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | WEST PALM BEACH | 8810057 | 861027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | WEST PALM BEACH | 8610057 | 881027 | 110 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | FREEPORT, BAHAM | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | ATLANTA, GEORGI | 8610057 | 881027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | JACKSONVILLE, F | 8810057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | NEW YORK, NY | 8610057 | 881027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GEORGE TOWN, BA | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | NEW YORK, NY | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | GREAT HARBOUR C | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | HARTFORD, CT/SP | 8810057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | BALTIMORE, MARY | 8610057 | 881027 | 157 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | NEW YORK, NY | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |

32

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | MARSH HARBOUR, | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | MARSH HARBOUR, | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMA | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | NEW YORK, NY | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | NASSAU, BAHAMAS | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | NEW YORK, NY | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | ROCK SOUND, BAH | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | CHICAGO, ILLINO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | NEW YORK, NY | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | TREASURE CAY, B | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | ATLANTA, GEORGI | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | HARTFORD, CT/SP | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | BALTIMORE, MARY | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | CHICAGO, ILLINO | 8610057 | 861027 | 110 |

33

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | WEST END, BAHAM | CLEVELAND, OHIO | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | NEWARK, NJ | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | JACKSONVILLE, F | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | NEW YORK, NY | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | ORLANDO, FLORID | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | MIAMI, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | PHILADELPHIA, P | 8610057 | 861027 | 157 |
| EASTERN/CONTINENTAL | WEST END, BAHAM | TAMPA, FLORIDA, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARBADOS, BARBA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ANTIGUA, WEST I | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | ATLANTA, GEORGI | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | BALTIMORE, MARY | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | CHICAGO, ILLINO | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | DETROIT, MICHIG | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | NEWARK, NJ | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | NEW YORK, NY | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | MIAMI, FLORIDA, | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | PHILADELPHIA, P | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | BERMUDA, ATLANT | WASHINGTON, D.C | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | HAVANA, CUBA | FT. LAUDERDALE, | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | HAVANA, CUBA | WEST PALM BEACH | 8610057 | 861027 | 110 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |

34

| EASTERN/CONTINENTAL | SANTO DOMINGO, | NEWARK, NJ | 8801043 | 880225 | 59 |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | SANTO DOMINGO, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | SANTO DOMINGO, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRAND CAYMAN, W | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | POINTE A PITRE, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | PORT AU PRINCE, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ATLANTA, GEORGI | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEWARK, NJ | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | NEW YORK, NY | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | KINGSTON, JAMAI | WASHINGTON, D.C | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ATLANTA, GEORGI | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEWARK, NJ | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | NEW YORK, NY | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | MONTEGO BAY, JA | WASHINGTON, D.C | 8610057 | 861027 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | FORT DE FRANCE, | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | AGUADILLA, PUER | 8801043 | 880225 | 59 |

36

| | | | | | |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | CURACAO, NETH. | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CURACAO, NETH. | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. MAARTEN, NE | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | GRENADA, WINDWA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |

| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | ST. KITTS, LEEW | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ST. LUCIA, W. I | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ATLANTA, GEORGI | 8801043 | 880225 | 69 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | OMAHA, NEBRASKA | 8801043 | 880226 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | ARUBA, ARUBA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | NEWARK, NJ | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | TRINIDAD & TOBA | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | CHILE | U.S. POINTS | 8610057 | 861027 | 131 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ATLANTA, GEORGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | AGUADILLA, PUER | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | CLEVELAND, OHIO | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | NEWARK, NJ | 8801043 | 880226 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | FT. LAUDERDALE, | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | NEW YORK, NY | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | MAYAGUEZ, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | MIAMI, FLORIDA, | 8801043 | 880225 | 59 |

38

| EASTERN/CONTINENTAL | BARRANQUILLA, C | OMAHA, NEBRASKA | 8801043 | 880225 | 59 |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | BARRANQUILLA, C | PONCE, PUERTO R | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | SAN JUAN, PUERT | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ST. LOUIS, MISSOURI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ST.THOMAS,VIRGI | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BARRANQUILLA, C | ST.CROIX,VIRGIN | 8801043 | 880225 | 59 |
| EASTERN/CONTINENTAL | BELGIUM | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | GERMANY | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | LUXEMBOURG | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | NETHERLANDS | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | SWITZERLAND | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | TEL AVIV-YAFO, | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | JORDAN | U.S. POINTS | 8610057 | 861027 | 165 |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | ALLENTOWN, PENN | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | SCRANTON/WILKES | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | PHILADELPHIA, P | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | OTTAWA, ONTARIO | SYRACUSE, NEW Y | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ALBANY, NEW YOR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ATLANTA, GEORGI | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | AUGUSTA, MAINE, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | BIRMINGHAM, ALA | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | BOSTON, MASSACH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | BALTIMORE, MARY | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | COLUMBIA, SOUTH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | AKRON/CANTON, O | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHATTANOOGA, TE | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHICAGO, ILLINO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHARLESTON, SOU | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CLEVELAND, OHIO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CHARLOTTE, NORT | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | COLUMBUS, OHIO, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CORPUS CHRISTI, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | COLUMBUS, GEORG | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | CINCINNATI, OHI | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | DAYTONA BEACH, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | DETROIT, MICHIG | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | EVANSVILLE, IND | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | FT. LAUDERDALE, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | GAINESVILLE, FL | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | GREENSBORO/HIGH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | GREENVILLE/SPAR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | HARTFORD, CT/SP | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | HOUSTON, TEXAS, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | NEW HAVEN, CONN | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | INDIANAPOLIS, I | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | JACKSONVILLE, F | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | LEXINGTON/FRANK | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MONTGOMERY, ALA | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MIAMI, FLORIDA, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MILWAUKEE, WISC | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MELBOURNE, FLOR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MOBILE, ALABAMA | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | MINNEAPOLIS/ST. | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | NEW ORLEANS, LO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | NEW YORK, NY | 9110034 | 911017 | 148 |

39

| EASTERN/CONTINENTAL | TORONTO, ONTARI | ORLANDO, FLORID | 9110034 | 911017 | 148 |
|---|---|---|---|---|---|
| EASTERN/CONTINENTAL | TORONTO, ONTARI | WEST PALM BEACH | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | PHILADELPHIA, P | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | PENSACOLA, FLOR | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | PROVIDENCE, RHO | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | RALEIGH/DURHAM, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | RICHMOND, VIRGI | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ROANOKE, VIRGIN | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | SAN ANTONIO, TE | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | LOUISVILLE, KEN | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | SARASOTA/BRADEN | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | ST. LOUIS, MISSOURI | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | TOLEDO, OHIO, U | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | TAMPA, FLORIDA, | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | TORONTO, ONTARI | WASHINGTON, D.C | 9110034 | 911017 | 148 |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | ALLENTOWN, PENN | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | SCRANTON/WILKES | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | PHILADELPHIA, P | 9110035 | 861027 | 071F |
| EASTERN/CONTINENTAL | MONTREAL, QUEBE | SYRACUSE, NEW Y | 9110035 | 861027 | 071F |
| **DELTA AIR LINES** | | | | | |
| DELTA AIR LINES | COSTA RICA | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | EL SALVADOR | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | GUATEMALA | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | HONDURAS | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | NICARAGUA | U.S. POINTS | 99-2-8 | 2/5/99 | 152 |
| DELTA AIR LINES | CANCUN, MEXICO | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | COZUMEL, MEXICO | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | GUADALAJARA | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MONTERREY, MEXICO | ATLANTA, GA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | CINCINNATI, OH | N01-10457 | 9/6/01 | EXEM |
| DELTA AIR LINES | CANCUN, MEXICO | DALLAS/FT. WORTH | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | DALLAS/FT. WORTH | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | HOUSTON, TX | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | HOUSTON, TX | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | VILLAHERMOSA | HOUSTON, TX | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | LAS VEGAS, NV | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | AGUASCALIENTES | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | HERMOSILLO, MEXICO | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | LEON, MEXICO | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | PUERTO VALLARTA | LOS ANGELES, CA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | MIAMI, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MERIDA, MEXICO | MIAMI, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | MIAMI, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | NEW ORLEANS, LA | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | CANCUN, MEXICO | NEW YORK, NY | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | NEW YORK/NEWARK | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | MEXICO CITY | ORLANDO, FL | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | GUADALAJARA, MEXICO | PHOENIX, AZ | 00-5-31 | 5/30/00 | 562 |
| DELTA AIR LINES | GUAYMAS, MEXICO | PHOENIX, AZ | 00-5-31 | 5/30/00 | 562 |

# EXHIBIT

# E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                  . Case No. 90-932 (MFW)
                                        . Adversary No. 99-412(MFW)
                                        .
  CONTINENTAL AIRLINES, INC.,  .
  et al.,                               . 824 Market Street
                                        . Wilmington, Delaware  19801
                      Debtors.  .
                                        . January 31, 2002
. . . . . . . . . . . . . . . . . . .   . 2:35 p.m.
JAMES BALDRIDGE, et al.,                .
                                        .
              Plaintiffs,               .
                                        .
         vs.                            .
                                        .
CONTINENTAL AIRLINES, INC.,    .
et al.,                                 .
                                        .
              Defendants.       .
. . . . . . . . . . . . . . .   .

TRANSCRIPT OF HEARING
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Debtors:                    Young Conaway Stargatt & Taylor,
                                  LLP
                                By:  ROBERT S. BRADY, ESQ.
                                1000 West Street, 17th Floor
                                Wilmington, Delaware 19801

For Plaintiffs:                 Myles J. Tralins & Associates
                                By:  MYLES J. TRALINS, ESQ.
                                Miami, Florida

Audio Operator:                 Monique Edwards

 Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311  Fax No.  (609) 587-3599

2

APPEARANCES (Cont'd.):

For the Plaintiffs:                    Prickett Jones & Elliott
                                       By:  BRUCE JAMESON, ESQ.
                                       1310 King Street, P.O. Box 1328
                                       Wilmington, Delaware 19899-1328

3

1        THE COURT:  Good afternoon.

2        MR. BRADY:  Good afternoon, Your Honor.

3        MR. TRALINS:  Good afternoon, Your Honor.  Myles
4   Tralins and Bruce Jameson on behalf of the LPP class action
5   plaintiffs.  Also with us are from your right to left, Jim
6   Baldridge, Bill Mann, and Larry Dunn who are the class
7   representative plaintiffs.

8        Your Honor, we're here on the petition to approve the
9   settlement and to approve the application for attorney fees for
10  class representation representative compensation for claims
11  administration fees and for cost.  My understanding from the
12  agenda that was submitted to you by Continental was that the
13  first issue that we were to discuss concerns the list of LPP
14  plaintiffs which was an issue that Your Honor, of course, was
15  concerned with at the November 16th hearing.

16       Your Honor, what we've done with respect to that, as
17  Your Honor had directed, was we did file affidavits that laid
18  out how the list was put together and checked and double
19  checked to make sure that it was correct.  Essentially,
20  Continental Airlines had a list of all the persons who accepted
21  the Continental Airline Pilots Association settlement
22  agreement, and from that, which they called their takers list,
23  they know that there is a certain finite number of people who
24  filed claims in this action that settled those claims.

25       We also had a list of the persons from the EPMC or

4

1 Addington Group that withdrew the claims in bankruptcy, and so

2 that is also a finite number of people whose claims no longer

3 are cognizable in that action -- in this action.  As it turned

4 out, there were a couple of corrections to the initial list

5 that we filed, because the attorneys for EPMC contacted us when

6 they looked at our initial lists and pointed out that somehow

7 or another a couple of the people who had withdrew their claims

8 were still on the list, and we deleted those people.

9           In addition, Your Honor, we looked at the seniority

10 list that Eastern Airlines had in order to verify that the

11 persons on the list were, in fact, pilots with employee numbers

12 that meet the criteria set forth in the class definition, and

13 as a result of going through all of that, we have a list of 583

14 pilots.  It's the same numbers it was back on November 16th,

15 although a couple were dropped and a couple were added to take

16 care of the corrections, and in discussing and working out with

17 Continental how to make certain that the Court's concerns with

18 regard to anybody who might have been missed have an

19 opportunity to come in.

20           What we would propose to the Court, and we'd so

21 modify the proposed final judgment, is that the settlement

22 agreement provided that persons have up until April 3rd, 2002

23 to file their proofs of claim.  Now, Your Honor, we did publish

24 initially -- I'm sorry.  We did mail out initially the notices

25 of settlement and the proofs of claim on November 26th, 2001.

5

1    The claims administrator did that.  The web site went up the

2    next day, November 27th, 2001, and the publication in the

3    national edition of <u>USA Today</u> occurred pursuant to the Court's

4    order on December 3rd, 2001, and as a result of those various

5    forms of notice, we did, of course, receive the 21 objections

6    that were lodged in the docket.  There were a couple of people

7    who contacted both Mr. Brady and myself -- a Mr. Taylor and Mr.

8    Vitros -- who said that they were not on the list, but they

9    became aware of the pendency of the action because of both the

10   web site and the publication, and we adjusted the list to add

11   them in, and by the same token, the persons who we missed who

12   should've been dropped that took the EPMC settlement were also

13   picked up and dropped as a result of that.  So we know that the

14   notice was effective.

15           But, in any event, the settlement, as we worked it

16   out with Continental, provides up until April 3rd for persons

17   to file their proofs of claim, and what we would propose to the

18   Court is language in the final judgment that says that, "The

19   Court finds that the class consists of those persons identified

20   on Exhibit A, attached hereto --" that's the list of 583 people

21   "-- without prejudice to persons who file a proof of claim on

22   or before April 3rd, 2002 and who established to the mutual

23   agreement of the parties or absent same to the Court that they

24   satisfy all criteria necessary to be included in the class."

25           Of course, the criteria is the criteria that's

**J&J COURT TRANSCRIBERS, INC.**

6

1  contained in the class definition that Your Honor entered back

2  at the time that you certified this as a class action in

3  February of 2001. So we think that with that failsafe method

4  of making certain that anybody who pops up later on who might

5  have been missed has an opportunity to come in. We think that

6  we hopefully have satisfied the Court's concerns about having a

7  mechanism to include people if they were inadvertently missed

8  and did not file their claim.

9          THE COURT: All right. Does anybody wish to be heard

10 regarding that -- the class certification issue?

11         MR. O'NEILL: Yes, Your Honor.

12         THE COURT: Please step forward and identify yourself

13 for the record.

14         MR. O'NEILL: My name is -- thank you -- my name is

15 Ramon O'Neill, and I'm a LPP claimant. A little bit of the

16 background. I'm the founder of EPFF, which later become LPP

17 claimants, and we -- I'd like to talk a little bit about this

18 class definition, Your Honor, because we've got 700 names

19 missing from this list, and here's where are -- I arrive from.

20         Class definition includes all members of the Airline

21 Pilots Association. All members of the Airline Pilots

22 Association, per the Runway Labor Act, are all members covered

23 under a collective bargaining agreement. One of the problems

24 that we have here today is the negotiations between the debtor

25 and the class counsel has been conveniently done to exclude

J&J COURT TRANSCRIBERS, INC.

7

1  these 700 --

2          THE COURT:  Who are these 700?  Have they settled

3  their claims already?

4          MR. O'NEILL:  No, ma'am.  They are on our seniority

5  list on November of 1990.  All right?  Now here's what's

6  happening, Your Honor.

7          Back in 1991 in this Bankruptcy Court, without -- the

8  best I could find out without notion of this Court knowing that

9  there was an arbitration taking place during these proceedings,

10 which is called the Jerome Ross arbitration, which included

11 Peoples Express, Continental, New York Air, and Frontier

12 Airlines, all of who were subsidiaries of Texas Air which later

13 became Continental Holding, later became Continental Airlines.

14 Out of the 700 people that are missing which -- and we go into

15 an arbitrator.  The arbitrator will use the seniority list as

16 the class, because that is the real class once we get into an

17 arbitration.

18         There is a big group that Continental conveniently --

19 all right -- honor the labor protective provisions and

20 protected their jobs.  They protected their seniority.  They're

21 in Continental right now, Your Honor.  I got the arbitration

22 with me.  I got part of the seniority list with me that will

23 show exactly what happened, and it's Mr. Ross' arbitration that

24 states very clearly that Continental hired pilots in 1987 only

25 and for Eastern convenience.  Those pilots came to Eastern.

8

1          THE COURT:  Well let me hear from the debtor.
2   What --

3          MR. BRADY:  Your Honor, I believe you've already
4   ruled as to what constitutes this class.  In Your Honor orders
5   of February 3rd there are three criteria to be part of this
6   class.  You have to be entitled to the benefits of the
7   collective bargaining agreement between Eastern and the Airline
8   Pilots Association in effect at the time of the alleged merger
9   between Eastern and Continental.  You had to have timely filed
10  a proof of claim in the bankruptcy proceeding for the
11  enforcement of the labor protected provisions in the CBA, and
12  you had to not have settled, waived, or otherwise relinquished
13  your claim against Continental.

14          The affidavits we've submitted, both Continental and
15  the class plaintiffs, a list that we have attached, are the
16  people who meet this criteria.

17          THE COURT:  Well what about the 700 people who he
18  says are not on that list?

19          MR. BRADY:  Well, first, I don't know if Mr. O'Neill
20  has standing to raise this issue on their behalf.  I don't know
21  who they are.  I believe he said that they are working for
22  Continental.  As a result, they probably did not file a claim
23  against Continental, and therefore would not --

24          THE COURT:  For reinstatement.

25          MR. BRADY:  -- constitute this class.

**J&J COURT TRANSCRIBERS, INC.**

9

1          MR. O'NEILL:  That's not true, Your Honor.  The
2    Airline Pilots Association filed a claim on their behalf.
3    They've got a blanket umbrella claim that was filed in this
4    Court.

5          MR. BRADY:  The Airline Pilots Association withdrew
6    their claim as a result of the Continental settlement.

7          THE COURT:  Yes, they withdrew their claim as a part
8    of that settlement, but others had the right to file claims.

9          MR. O'NEILL:  That's correct, and others under the
10   Third Circuit Court, Your Honor, have a right to arbitrate.
11   The class will be established in the arbitration.  What they
12   have created is a sub-class that the arbitrator will have, and
13   this -- I mean it's ridiculous.  I'm sorry to say that, but I
14   could prove right now right here that they -- this arbitration
15   took place in this Court with -- well you were not presiding
16   the case.

17         THE COURT:  There was no arbitration in this Court.

18         MR. O'NEILL:  Yes, ma'am.  I got the arbitration.  I
19   got the dates.  There was an arbitration in this Court.  They
20   hid it.  They never told anybody.

21         THE COURT:  Well do you know what he's referring to?

22         MR. BRADY:  No, Your Honor.  I've been working on
23   this case since December 3rd, 1990, and I have no idea of what
24   he's talking about.  I'm unaware of any arbitration that
25   occurred before Judge Bailey.

                    **J&J COURT TRANSCRIBERS, INC.**

10

1    MR. O'NEILL:  Okay.  Your Honor, if we go to the

2 class 13 claims, at this point there is a claim on behalf of

3 Peoples Express Merger Committee.  I got a copy of that which

4 proves there was a claim due to that arbitration.  I've got the

5 arbitration with me, Your Honor.

6    THE COURT:  Do you want to introduce anything into

7 evidence?

8    MR. O'NEILL:  Yes, ma'am.

9         (Pause)

10    MR. O'NEILL:  Your Honor, I introduce Jerome Ross

11 arbitration.  Let me make sure I got the right copies.

12         (Pause)

13    MR. O'NEILL:  Your Honor, if we go back to the last

14 page of the arbitration and we look at the dates, the decision

15 was rendered August 13, 1991.  The bankruptcy proceedings of

16 Continental Airlines started August 3rd of 1990.  All right?

17    If we look at the schedule of the arbitrator, which

18 is on page seven, he delineates all his schedule, and you could

19 see the hearings were taking place under the bankruptcy

20 proceedings of Continental Airlines.

21    If we go to page --

22    THE COURT:  What -- start over again.

23    MR. O'NEILL:  The last page --

24    THE COURT:  What page are you?

25    MR. O'NEILL:  On the last page, Your Honor, and I'll

11

1  go slow.

2          THE COURT:  It was August of '91, yes.

3          MR. O'NEILL:  August, '91.  If we go to page seven,

4  second paragraph, starting with, "Hearing before the

5  undersigned arbitrator were held," the hearings were taking

6  place during these proceedings.  It delineates they obviously -

7  - it will say December 14th and 15th.  It's after the

8  proceedings of this Bankruptcy Court started.  All right.

9          If we go to page 58, in the middle of the first

10 paragraph, second sentence on page 58, Your Honor, "The

11 Continental pilots hired after April, '87 were hired for the

12 benefit of Eastern and not Continental.  It would be unfair to

13 place them ahead of the FMR," which means they were merged.

14 These pilots came to Eastern, and I would like to introduce at

15 the present time part of the seniority list which will

16 demonstrate that pilots going from one seniority list to

17 another.

18         THE COURT:  Now where is this Exhibit 8 from?

19         MR. O'NEILL:  Okay.  If -- counsel already spoke

20 about December, 1990 pilot seniority list, which obviously he

21 could attest, and so did the --

22         THE COURT:  What is this, and where --

23         MR. O'NEILL:  Okay.  That --

24         THE COURT:  -- is it from?

25         MR. O'NEILL:  Okay.  Your Honor, the front page is a

12

1 copy of Eastern pilots -- an excerpt of Eastern pilots

2 seniority list.

3          THE COURT:  It's part of the Eastern pilots seniority

4 list.

5          MR. O'NEILL:  Yes, ma'am.  The second page is part of

6 Continental pilots seniority list.  If we go to the Eastern

7 pilots seniority list and we go down by seniority number 3698,

8 we got Mr. Benson, R.B.  In other words, Robert Benson, hired,

9 seniority date 03/06 of '89, as a DC-9 captain.  None of us,

10 Your Honor, being senior to him were captains on the nine at

11 that point on time.

12          THE COURT:  Well are you testifying?

13          MR. O'NEILL:  No.

14          THE COURT:  Is this all conceded?

15          MR. O'NEILL:  What do you mean conceded?  They have

16 --

17          MR. BRADY:  Your Honor, with respect to the first

18 exhibit, it appears to involve Peoples Express and, of course,

19 this class is related to those who were covered by the Eastern

20 collective bargaining agreement, so I'm not sure of the

21 relevance.

22          THE COURT:  I haven't read it, but --

23          MR. BRADY:  Well, certainly this class are those who

24 are claiming entitlement to the protections of the LPP

25 provisions in the Eastern collective bargaining agreement.  I'm

13

1  not sure of the relevance of the first exhibit which deals with

2  Peoples Express. I've never seen the second exhibit and cannot

3  attest to its accuracy or its relevance.

4        MR. TRALINS: Your Honor, I might be of a little

5  assistance. The documentation that Mr. O'Neill has given you

6  concerns an arbitration that was conducted pursuant to a Court

7  order, and at page seven it says who it involves, and it

8  involved Continental, PEX, Frontier, and New York Airlines, and

9  the purpose of that arbitration was to determine how to

10 integrate the pilots from PEX, Frontier, and New York into

11 Continental's seniority list, because Continental had acquired

12 various assets -- had acquired the airlines actually, and what

13 the arbitrator talks about in this is how to merge those lists

14 together, and that has nothing to do at all with the issue

15 that's before us other than the fact that what Mr. O'Neill's

16 pointing to is that the arbitrator in that case found that some

17 of these pilots had derived from or were flying routes that had

18 been owned by Eastern Airlines. None of that is germane to the

19 issue here where Eastern Airline employees filed claims in this

20 bankruptcy in 1991 contending that they were entitled to

21 seniority rights of Continental because of a merger involving

22 Eastern which wasn't a party to this other arbitration.

23        So I think what Mr. O'Neill's saying is that there is

24 another arbitration that provides some evidence that Eastern

25 assets, in fact, were acquired by Continental, but the bottom

**J&J COURT TRANSCRIBERS, INC.**

14

1   line of it is that, that would be evidence to be utilized in an

2   arbitration, if one were necessary, to determine whether or not

3   there was a merger between Eastern and Continental.  And the

4   reason the settlement is before the Court is that Continental

5   has essentially conceded, for purposes of resolving these

6   claims, that it recognizes the claims of all of the Eastern

7   pilots who assert entitlement for purposes of settling those

8   claims.  There is no need for an arbitration, because it

9   recognized the claims, and pursuant to Your Honor's decision

10  with regard to the application of 502(b)(7), not only will it

11  pay them pursuant to Your Honor's ruling but pursuant to the

12  settlement agreement, it will pay them substantially more than

13  they would otherwise be entitled to.  Since Mr. O'Neill -- on

14  the one hand, he's pointed to evidence that would support the

15  proof of a merger, but we don't need to get to that point,

16  because of the practicality -- the practical effect of Your

17  Honor's decision.

18          The other point, Your Honor, is that the first page

19  is taken from the Eastern seniority list of November of 1990,

20  and the second page identifies itself as a page from the

21  Continental seniority list from July 1st, 2000.

22          THE COURT:  It's only one page so -

23          MR. TRALINS:  I'm sorry.  Mr. O'Neill gave me two

24  pages.

25          THE COURT:  Yes, I mean one page of each.

J&J COURT TRANSCRIBERS, INC.

15

1          MR. TRALINS:  Yes, ma'am.  The first page I recognize

2  as having come from the Eastern 1990 seniority list, and the

3  second list is the pilot seniority list, at least according to

4  its identifiers, of Continental, July 1st, 2000.

5          THE COURT:  Yes.

6          MR. O'NEILL:  Your Honor, I only brought one page,

7  because it was practical, but both plaintiffs and the debtors

8  could supply both seniority lists, and as Mr. Tralins has

9  already confirmed, that is not a Peoples Express seniority

10 list.  That is an Eastern pilot seniority list was covered in

11 the collective bargaining agreement which --

12         THE COURT:  But what does this decision have to do

13 with this?

14         MR. O'NEILL:  Ma'am, that you're excluding 700 pilots

15 that --

16         THE COURT:  Where is the list of the 700 pilots, and

17 who are they, and why do you say they're missing?

18         MR. O'NEILL:  The reason why they're missing is,

19 because they never wanted this Court to find out that these

20 pilots, some of them, have been given full remedy under the

21 LPP's, Your Honor.

22         THE COURT:  Now the pilots who did not file proofs of

23 claim are not covered by this, so if they did not file a proof

24 of claim in this case --

25         MR. O'NEILL:  Your Honor --

                    **J&J COURT TRANSCRIBERS, INC.**

16

1    THE COURT:  -- they're not covered by this.

2    MR. O'NEILL:  They did file proof of claims, because

3  ALPA filed proof of claims on their behalf.

4    THE COURT:  And withdrew its claim when it settled.

5    MR. O'NEILL:  That is correct, but -- all right?  And

6  all litigation we have taken -- we have taken the stand that we

7  have represented all pilots that had a right to arbitrate, and

8  just as counsel said, they were covered by the collective

9  bargaining agreement, which they were.  That was part of the

10  class requirement.  These pilots were covered by the collective

11  bargaining agreement.

12    THE COURT:  If they want to be covered by the class,

13  they have to file a proof of claim here.  They have until April

14  to file a proof of claim here if they want to be covered by

15  this.  So if they're missing, and if you have the list, give it

16  to the debtor.  The debtor will provide notice --

17    MR. O'NEILL:  Okay.

18    THE COURT:  -- but they have until April 3rd?

19  Thirteenth?  Third?

20    MR. BRADY:  April 3rd, Your Honor.

21    THE COURT:  Now, Your Honor, my question to this

22  Court is some of these pilots have already been given full

23  relief.

24    THE COURT:  Then they have no claim.

25    MR. O'NEILL:  And how come we've been treating it

17

1 differently?

2 THE COURT:  Well I only deal with what you're

3 entitled to be treated.  I cannot deal with how others may have

4 been treated.

5 MR. O'NEILL:  Even though we're in a class at this

6 point on time?

7 THE COURT:  They haven't filed a proof of claim,

8 because they cut a different deal with the debtor I presume.

9 Are you referring to the ALPA and the other --

10 MR. O'NEILL:  No, ma'am.

11 THE COURT:  -- settling --

12 MR. O'NEILL:  There is no separate deal.  What the

13 debtor has done is they have picked and choosed pilots and

14 merge them and made them whole.  They took them to Continental.

15 They got their seniorities over there.  That's what I'm trying

16 to demonstrate with that -- those two pieces of paper I gave

17 you.  Mr. Benson has been completed compensated.  The full

18 rights of the LPP's were given to Mr. Benson, and like that

19 there's about 40 pilots, and here we are in a class, and this

20 Court is saying that once we go to arbitration, we come back,

21 we're going to dealt with a 502(b)(7) which is a disparity of

22 the class itself, and that's my question.  There's different

23 remedies within the class.  It's not an equitable remedy.

24 THE COURT:  Well how does the debtor want to address

25 that?

J&J COURT TRANSCRIBERS, INC.

18

1          MR. BRADY:  Your Honor, I'm not aware of Mr. Benson

2    being -- his hiring and his circumstances surrounding that.  It

3    may have been that Continental did hire Eastern pilots when

4    Eastern ceased operations, and Continental would hire pilots if

5    it had openings.  I know as part of the ALPA settlement, there

6    was some provision made for the ability to re-hire some of the

7    pilots under ALPA.  Those who took that are getting different

8    treatment than those who remain, but those are the chances one

9    takes when one seeks to pursue different remedies.

10          The EPMC, Your Honor, withdrew their claims in the

11   bankruptcy and sought to recover under the New Jersey action.

12   Just recently, the Third Circuit ruled affirming Your Honor and

13   the District Court that, that action is barred, so those

14   claimants will receive nothing.  People will receive different

15   recoveries if they choose different options in the bankruptcy

16   case.  If settlements are offered and not taken, you take the

17   risk that you may get a different treatment based on what --

18          This is a pot plan.  Eventually, the pot will be

19   gone, and those who don't participate will not recover.  That's

20   an unfortunate reality in a bankruptcy proceeding when the

21   money to go around is not nearly enough to cover the claims.

22          MR. O'NEILL:  Your Honor, addressing Mr. Benson

23   again, Mr. Benson goes through a three-way LPP assurance from

24   Texas Air.  Mr. Benson starts at Peoples Express.  His

25   seniority is dictated by the Ross arbitration.  Peoples Express

19

1  ceases operation.  Mr. Benson is an employee of Eastern

2  Airlines.  Under Eastern's collective bargaining agreement,

3  there is no more LPP's on Benson, because Peoples Express had

4  already ceased.

5  　　　　Mr. Benson was a captain at Peoples.  Mr. Benson's

6  seniority was respected when he comes to Eastern Airlines as a

7  captain.  Mr. Benson's seniority again is respected when he

8  goes to Continental as a captain.  He's not a new hire, as the

9  debtor claims, and like that, we've got 40 other pilots which

10  falls within the same class that the arbitrator will put

11  together, and what the debtor and the counsellor are trying to

12  do is create a sub-class and this not to come to light.

13  　　　　THE COURT:  Well those who chose different avenues

14  got different treatment, as the debtor said.  Those who settled

15  under ALPA got different treatment.

16  　　　　MR. O'NEILL:  That is correct, Your Honor.

17  　　　　THE COURT:  But I don't believe that you can complain

18  that you did not get the treatment that others who settled got

19  when you had the opportunity under ALPA to settle and did not.

20  　　　　MR. O'NEILL:  I am not complaining about that, Your

21  Honor.  What I'm complaining is what the debtor and the class

22  counsellor are trying to do is keep me away from an

23  arbitration.  That is my remedy.

24  　　　　THE COURT:  Well deal with that.  That's a different

25  issue.  Mr. Tralins.

20

1          MR. TRALINS:  And, Your Honor, that issue is the
2     issue that's at the core of the 21 objections that Your Honor
3     received.  Perhaps the clearest statement of the law of the
4     case was in the Third Circuit's decision filed last Friday,
5     January 25th, 2002 in what -- in the case that they now refer
6     to themselves as Continental two, and the Court said at page
7     six with regard to the core of the decision that, "The legal
8     basis for the relief awarded arbitration to determine
9     entitlement to and if so the amount of damages was the heart of
10    the whole issue that's before the Court."
11         And certainly, the Third Circuit in Continental one
12    ruled favorably for the LPP claimants in requiring Continental
13    to arbitrate the issue of whether or not there was a merger,
14    and certainly, we acted as soon as the Supreme Court denied
15    certiorari to proceed with that arbitration, but in the
16    analysis and in the negotiations that we had with Continental,
17    we realized that the key to the issue was, since Continental
18    was absolutely and unequivocally vested with the right to sub
19    -- to the equitable remedy of money damages for jobs, to
20    determine what the measure of damages were.
21         In 1991, when the Airline Pilots Association filed
22    its proof of claim in this Court, Continental's reaction
23    immediately was to file an objection to the claim that flat out
24    stated, number one, we don't believe there was a merger, but
25    number two, if there was a merger, the value of the claims are

21

1  limited by 502(b)(7) to one year's wages.  In one of the

2  exhibits that Mr. O'Neill attached to his objection and that

3  Mr. Mendez also attached to his -- it was a carbon copy of the

4  objection -- in fact, they attach a page of the proposed

5  disclosure plan of Continental where Continental talks about

6  the fact that they were setting aside over $200 million to

7  address the potential liability on LPP claims based upon the

8  application of 502(b)(7) which was Continental's position that

9  it was all their liability was.

10       So when we talked about this with Continental and we

11  mutually agreed that it would be in everybody's best interest -

12  - the pilots and everybody -- and by this time the litigation

13  had been going on for eight years to try to figure a way out to

14  resolve this -- we recognized that the key to the issue is what

15  are your damages, and if we could get that issue resolved, we

16  would know whether or not we should go forward with an

17  arbitration and take our chances that we'd be able to prove

18  that there was a merger assuming we couldn't come to a

19  settlement that my clients felt would adequately compensate

20  them, and that the Court would approve, or we would get the

21  case settled, and it was within that context that Continental

22  said even though the salary ranges were $31,000 to $51,000, if

23  one year applies to flight officers and second -- and first

24  officers and captains, we will agree that if we're correct and

25  you're wrong, we'll still value the claims in bankruptcy at

22

1  $110,000.

2       As a quid pro quo for going forward on a class wide

3  basis as a (b)(2) class, non-opt out class, because it is a

4  legal question that equally affects every LPP claimant as to

5  what they're money damages are, we'll do that, so that at least

6  we can start to put an end to this litigation that's been going

7  on forever.

8       And so the core of this issue is, at least from the

9  objector's standpoint is they still want their day in Court.

10 They want their day in Court, because they want to prove

11 through an arbitration that there was a merger, and they like

12 to do that I think for psychological reasons, for emotional

13 reasons.  They've been tied up in it a long time.

14      There's no question Mr. O'Neill has been involved

15 with this case from day one.  He was one of the first persons

16 who brought this together along with Mr. Dunn and Mr. Mann and

17 Mr. Baldridge, but putting emotions aside for a moment, the

18 fact of the matter is that under the Third Circuit's decision

19 that the legal basis for the relief awarded is arbitration to

20 determine entitlement to and if so the amount of damages since

21 the damage issue has been resolved, it's pointless to have an

22 arbitration, and I would respectfully suggest to Your Honor,

23 and I think Continental will confirm this, that if anyone of

24 the 21 objectors who want to preserve their right to

25 arbitration make a demand for arbitration to the National

23

1 Mediation Board and the appointment of an arbitrator --
2 Continental will simply say we recognized their claims in
3 bankruptcy.  There's no need to have an arbitration, because we
4 recognized the claims, and we're willing to pay them based on
5 the Court's 502(b)(7) ruling.

6         And although my clients, Mr. Baldridge, Mr. Mann, Mr.
7 Dunn, and myself as counsel -- I certainly couldn't represent
8 to the Court that we're happy with the decision that was made
9 applying 502(b)(7).  On the other hand, we understand the
10 decision.  We believe -- I believe, and I've advised my
11 counsel, that Your Honor's decision will be sustained or would
12 be sustained on appeal, and that to buy three or four more
13 years' worth of appeals and then three or four or five years'
14 worth of arbitration proceedings to prove that there was a
15 merger to end up -- if we could win on that issue and end up
16 right back in Court and drag this out, just doesn't make any
17 sense any longer.

18         So I think really what we're doing here is applying
19 the law of the case as it deals with measure of damages to a
20 settlement agreement that compensates -- not only compensates
21 the members of the class adequately but gives them anywhere
22 between two times and three and a half times what they would
23 otherwise receive if they went through the arbitration,
24 prevailed at the arbitration, had the seniority integration
25 done, and came back to Continental -- came back to this Court

24

1 and asked for their damages based on 502(b)(7) or one year's

2 wages.

3        And that really is the heart of the settlement and

4 why we believe that all of the Gerst criteria that we talked

5 about in the petition have been satisfied.  It's been a long

6 torturous route over 11 years to get to this point.  We first

7 had to start with the injunction that was entered as against

8 Continental.  I was -- participated, and I was there at the

9 Casher arbitration proceedings when Continental flat out said

10 they're not coming and got an injunction that said they didn't

11 have to participate.

12        And, of course, as Your Honor is well aware from the

13 opinions that you've written, we took that all the way up to

14 the Supreme Court and then came back here, and  it was building

15 that law of the case that allowed us to get to the point with

16 Continental, after 11 years of battling, to achieve what we

17 believe is a just and fair settlement of this case for the

18 benefit of all of the class members.

19        THE COURT:  All right.  Mr. O'Neill.

20        MR. O'NEILL:  Thank you, Your Honor.  Your Honor, I

21 agree with Mr. Tralins' comments.  It's been a very hard

22 battle, but when we started this, our goal was to get into

23 arbitration, and the objection that I sent, there are three

24 letters to the National Mediation Board.

25        THE COURT:  But address his issue it would make no

25

1  sense to go to arbitration now because --

2          MR. O'NEILL:  No, it makes sense because --

3          THE COURT:  Why?

4          MR. O'NEILL:  -- because we were part of the Ross

5  arbitration.  We became part of the Ross arbitration when Mr.

6  Ross merged some of our pilots in that arbitration.

7          THE COURT:  What do you think you will win -- if you

8  win the arbitration, what do you think you will get?

9          MR. O'NEILL:  Well we've got to find out if this

10 Court could overturn the arbitration, because it's an

11 arbitration that was already consummated in 1991.

12          Under the Runway Labor Act, once you put a list on,

13 the obligation of the debtor was to submit all of the Eastern

14 pilots in this arbitration, and they did not.  They only

15 submitted some.

16          THE COURT:  Well but --

17          MR. O'NEILL:  So the arbitration concluded in 1991.

18 Now we go back to --

19          THE COURT:  This arbitration did not deal with

20 Eastern.

21          MR. O'NEILL:  Yes, ma'am, and take --

22          THE COURT:  Where does it say it deals with Eastern?

23          MR. O'NEILL:  In a lot of places, ma'am.

24          THE COURT:  Well it doesn't say it in the caption.

25          MR. O'NEILL:  It does mention that there were pilots,

J&J COURT TRANSCRIBERS, INC.

26

1  all right, and if we go back to --

2        THE COURT:  It doesn't say that it's in reference to

3  the Eastern pilots.

4        MR. O'NEILL:  No, ma'am, but throughout the

5  arbitration, the arbitrator makes rulings and observations of

6  all -- of everybody merged together and how he brings these

7  specific pilots into his arbitration.

8        If we go back to page 58 where I read at, Your

9  Honor --

10        THE COURT:  Well go to page 133.  There is no

11  award --

12        MR. O'NEILL:  Towards the -- specifically to the

13  Eastern pilots.

14        THE COURT:  Correct.

15        MR. O'NEILL:  That's correct, but there is an award,

16  all right, to the pilots that were on furlough from Eastern.

17        THE COURT:  Where is that?

18        MR. O'NEILL:  That's basically said immediately -- it

19  starts immediately after, "Bankers insert former PX pilots D.A.

20  Hill --"

21        THE COURT:  What page?  What page?

22        MR. O'NEILL:  One 34, ma'am.

23        THE COURT:  And where is it?

24        MR. O'NEILL:  Well it doesn't specifically say

25  Eastern pilots, but if we take the list of Eastern pilots and

27

1 the list of Continental, it will reflect that there were

2 Eastern pilots on the Eastern collective bargaining agreement

3 that were merged in six, seven, and eight not including more

4 senior like Mr. Benson.

5          THE COURT:  Well but those were PEX pilots.

6          MR. O'NEILL:  No, ma'am, they were Eastern pilots.

7 PEX did not exist.  There were Eastern pilots on the Eastern

8 pilots seniority list.

9          THE COURT:  Well but this is dealing with former PEX

10 pilots not with Eastern pilots.  The decision dealt with

11 Peoples Express not with Eastern, and while they may at that

12 moment have been an Eastern pilot, the award was based on the

13 Peoples Express merger.  Was it not?

14          MR. O'NEILL:  Yes and no.  All right?  The yes is

15 Continental represented them as Peoples Express pilots.

16          THE COURT:  Well --

17          MR. O'NEILL:  All right.  That's --

18          THE COURT:  -- former Peoples Express pilots.

19          MR. O'NEILL:  Former Peoples Express pilots.  In

20 reality they're Eastern pilots under the Eastern collective

21 bargaining agreement.

22          THE COURT:  Well at that moment they were, but this

23 dealt with what was the effect of the acquisition of Peoples

24 Express --

25          MR. O'NEILL:  That is --

**J&J COURT TRANSCRIBERS, INC.**

28

1          THE COURT:  -- not with the acquisition of Eastern.

2          MR. O'NEILL:  That is correct, Your Honor, but --

3          THE COURT:  Okay.

4          MR. O'NEILL:  -- throughout the arbitration it

5   explains how were -- how it was proper to move these pilots

6   from Peoples Express to Continental to Eastern back to

7   Continental or some from Peoples Express down to Continental.

8   So basically when you have a whole merged conglomerate of

9   airlines, the Runway Labor Act under its definition calls it a

10  merger.

11         Now Continental kept this arbitration away from us,

12  kept this arbitration away from this Court, kept us away from

13  arbitration so we could join this arbitration at that proper

14  time.

15         THE COURT:  Well -- and that was sustained by the

16  Third Circuit and the Supreme Court --

17         MR. O'NEILL:  In 1992.

18         THE COURT:  Right with respect to your rights.

19  Haven't your rights already been decided by the Third Circuit's

20  decision that you can only get a money judgment?

21         MR. O'NEILL:  Well, you know, it's supposed to be --

22         THE COURT:  So even if I let you go to arbitration,

23  you would not get anything other than a money judgment.

24         MR. O'NEILL:  Yes, that's true, but I could go after

25  Continental for inferred labor practices.  It all depends how

29

1  the arbitrator gives me the award, Your Honor.

2        THE COURT:  Whatever you get, you can only get a

3  money judgment.

4        MR. O'NEILL:  That's correct, but I -- the

5  question --

6        THE COURT:  So we're talking today how much that

7  money is.

8        MR. O'NEILL:  That's correct, Your Honor.  You're

9  limiting me to 502(b)(7).  I'm saying --

10        THE COURT:  I've already done that.

11        MR. O'NEILL:  Yes, you have.  I'm saying, ma'am, when

12  that was taking place, this Court did not know that there were

13  pilots in the Eastern pilots seniority list, part of this class

14  compensated as a whole.

15        THE COURT:  Well but they were compensated not

16  because they were Eastern pilots, but because they were Peoples

17  Express pilots.

18        MR. O'NEILL:  No, ma'am, we got -- in this list we

19  also got a pilot that got compensated in money.  He never went

20  back to Continental Airlines, and his --

21        THE COURT:  Well but that's what the debtor's

22  offering you, money.

23        MR. O'NEILL:  Yea, but he got compensated 100 cents

24  on the dollar.

25        THE COURT:  Well --

J&J COURT TRANSCRIBERS, INC.

30

| | |
|---|---|
| 1 | MR. O'NEILL:  I'm getting compensated on a year's |
| 2 | salary, which we'll discuss the amount later, which is not |
| 3 | true, what Continental's paying either.  The amount is way |
| 4 | higher than $50,000, Your Honor. |
| 5 | THE COURT:  What was your salary? |
| 6 | MR. O'NEILL:  My salary was $72,000 a year, ma'am. |
| 7 | THE COURT:  Well, the offer is 110,000 in equivalent. |
| 8 | MR. O'NEILL:  That is correct. |
| 9 | THE COURT:  So it is more than the one year. |
| 10 | MR. O'NEILL:  It is, yes, but it's -- okay.  It's -- |
| 11 | but that doesn't include my furlough pay which my collective |
| 12 | bargaining agreement includes.  That does not include my |
| 13 | vacation, which the collective bargaining agreement -- all |
| 14 | right?  There's 42 sections to this collective bargaining |
| 15 | agreement, Your Honor, and they're just referring to us pay -- |
| 16 | a year's salary.  I had -- all right -- salary, pension of six |
| 17 | percent a year, vacation, which if I round it up it's about |
| 18 | $143,000. |
| 19 | THE COURT:  But all of that is included within the |
| 20 | one year cap. |
| 21 | MR. O'NEILL:  No, ma'am.  That is a one-year cap. |
| 22 | THE COURT:  Have you evaluated his particular claim |
| 23 | and -- |
| 24 | MR. BRADY:  No, Your Honor, none of this appears in |
| 25 | his response to the settlement, so 1 was unaware.  I can -- no |

31

1    one, to our knowledge, prior to today has disputed the fact

2    that $110,000 was more than any one year salary of any of the

3    pilots covered by the CBA.

4    　　　　MR. O'NEILL:  Your Honor, I did bring it up in the

5    objection.  I did submit an exhibit that's a letter from

6    Continental which was -- I was going to address.

7    　　　　THE COURT:  What letter is your objection?

8    　　　　MR. O'NEILL:  Okay.

9    　　　　THE COURT:  On the agenda.  Let me ask Mr. Brady.

10   　　　　MR. BRADY:  He is C, Your Honor -- 2C.

11   　　　　THE COURT:  And K.  Which one is it?

12   　　　　MR. BRADY:  I believe they're duplicates.

13   　　　　THE COURT:  All right.  I have your response.  What

14   did you attach?

15   　　　　MR. O'NEILL:  There is a letter from Continental

16   Airlines to Mr. Myles Tralins dated September 20th, 1999.

17   　　　　THE COURT:  Let me find it.

18   　　　　　　　　　　　　(Pause)

19   　　　　THE COURT:  September 25th, 1997?

20   　　　　MR. O'NEILL:  No, September 20th, 1999 which is

21   basically the settlement proposal to Mr. Tralins.

22   　　　　THE COURT:  Okay, and?

23   　　　　MR. O'NEILL:  On the second page there's a footnote

24   on the bottom, "Pursuant to pilot employment policy," he

25   writes, "August 1st, 1990, Chapter 12, effective 4/1/91, the

**J&J COURT TRANSCRIBERS, INC.**

32

1 pay scale of the first-year captain would've been $59.51 per

2 flight hour for 72 hours a month guaranteed -- salary 51 330 at

3 34."

4          Your Honor, none of us are one-year captains here to

5 start off with.  The median here, it's a lot more senior than

6 Continental.  The median, if there was an arbitration, we

7 would've been merged in 1986.  In 1991 I would've had a median

8 of 11 years cap.  Also, what Continental fails to tell Mr.

9 Tralins is that there was also a add on to this yearly salary

10 at Continental which was basically a need to clause which was

11 brought to this Court, and it was sent to arbitration under Mr.

12 Geyer, and I got the order of the Court which add ons to the

13 salary of Continental.

14          So the median of a year's salary, Your Honor, if we

15 start and compute of all the class plaintiffs is sitting on

16 $74,000 a year.

17          THE COURT:  Well how do I know that, that's the

18 median?

19          MR. O'NEILL:  Well, they always have -- I mean I

20 could go through three different documents, and I get three

21 different numbers from the debtor.  I go to the re-

22 organizational plan --

23          THE COURT:  But can I -- can somebody give me a

24 better feel for -- if I assume you're correct and each of the

25 pilots won arbitration and, therefore, the debtor was directed

33

1 to put them in at your seniority level, do you have any

2 evidence of what each of the pilots seniority -- asserted

3 seniority level was?

4          MR. O'NEILL:  Yes, ma'am.  We asked for three.

5          THE COURT:  Well, do you have the list?  I mean --

6          MR. O'NEILL:  I don't have the whole list, Your

7 Honor, but they do.  They've been consulting with us.  The

8 class plaintiff -- the class counsel tells me, "Well I've

9 looked over this list, and I have consulted."  I've looked

10 through lists and different documents, and I get different

11 amounts, so I did a research, and I also found need to cross,

12 which I'll be more gladly to enter into the Court.

13          THE COURT:  All right.  Let me ask Mr. Tralins.

14          MR. TRALINS:  Yes, Your Honor?

15          THE COURT:  I wasn't aware that 51,000 was based on

16 first-year salary.

17          MR. TRALINS:  Your Honor, I've had some discussions

18 with Continental concerning the salary ranges.  I referred

19 earlier to one of the exhibits to the documentation submitted

20 by Mr. O'Neill, and at page 825 of it Continental said in its

21 filing -- and I think this was back in 1991 or '92 -- "The

22 maximum amount of any LPP claim is the value of one year's

23 compensation for each pilot.  The weighted average compensation

24 for Continental pilots is approximately $67,581."

25          And then they go on to point out that these

34

1  are 502(b)(7) claims, and what they say is that Continental
2  proposes to reserve based on an estimate of $202,743,000 for
3  the LPP claims based upon this $67,581 figure which they tell
4  the Court should substantially over reserve for the claims even
5  if they are ultimately allowed, because the proposed estimate
6  reserves for every LPP claim, but, in fact, many pilots who
7  filed claims were too low on the seniority list to have been
8  hired by Continental even if the LPP's have been in effect,
9  and, of course, that also included flight officers, first
10 officers who start at a much lower level.

11         Continental -- and Mr. Brady and I talked about this
12 last week -- advised us that the maximum salary ranges that
13 they had for pilots at that point in time was far below the
14 $110,000 figure.  It's my understanding -- and I certainly
15 stand corrected if I'm wrong -- that in addition, the 502(b)(7)
16 claim or limitation is a wage limitation, and that fringe
17 benefits such as contributions to retirement plans are not
18 necessarily included in that calculation, but I will tell the
19 Court I have no expertise and do not profess any to say that
20 with any certainty.

21         THE COURT:  Well it refers to compensation, but I
22 believe that the courts have interpreted that to include --
23 well I know for example car allowances and other benefits that
24 are otherwise determined to be in the nature of compensation.
25 I don't know what -- can you explain to me what the furlough

35

1  allowance would be, for example?

2          MR. TRALINS: My understanding from reading the

3  collective bargaining agreement is as it was negotiated that

4  there are various additional means of compensating pilots

5  depending on what their particular work conditions are, and

6  furlough is one of them.  If they're furloughed and they're not

7  working, they're still entitled to some base salary.

8          Of course, the other problem is that you also -- one

9  must also realize that the purpose of seniority integration was

10 to move the pilots over from one airline to another if there

11 was a merger and preserve their seniority level by integrating

12 it, but it did not guarantee that they would come in at a

13 completely new salary level, and the merger date that was

14 stipulated to with regard to this litigation that no one has

15 every disputed was the Eastern Airlines shutdown date of

16 January 18th, 1991.

17         On January 18th, 1991 the salary levels at

18 Continental, which was -- had just -- had emerged from a

19 bankruptcy and was going back into another one was

20 substantially lower than the salary levels were for pilots such

21 as Mr. O'Neill at Eastern Airlines.  So even though his

22 seniority may have been preserved, his salary level and

23 compensation benefits would not have been conserved.  He simply

24 would've come in and fit into Continental's existing salary

25 structure which Mr. Brady can certainly speak to with a lot

36

1    more authority than I can.

2                THE COURT:  Yes, did you -- was the reference to the
3    67,000 weighted average a calculation based on the Continental
4    Air salary structure taking into account the relevant pilot's
5    years of seniority?

6                MR. BRADY:  That is my understanding, Your Honor.
7    That was in connection with our reserve motion when we wanted
8    to do the initial distribution after confirmation.  These
9    claims obviously were still up in the air, and Continental did
10   calculate that average as a way to reserve for these LPP
11   claims.

12               One other note, of course, Your Honor, too is this is
13   a settlement.  Continental has always maintained that there was
14   no merger between Eastern and Continental.  Obviously, if this
15   were not settled and were to go to arbitration, Continental
16   would prevail, and these claimants would receive zero under the
17   LPP provisions.  Continental is in effect assuming that they
18   win on that point for purposes of settlement only in order to
19   resolve these, and we believe $110,000 is above any one-year
20   salary offered by Continental to pilots including first
21   officers and below.

22               THE COURT:  Well as of the alleged merger date, what
23   was Continental Airlines maximum salary for pilots?

24               MR. BRADY:  Your Honor, I don't believe I have an
25   exact figure on that.  What Continental's in-house attorneys

37

1  have told me, it was well below $110,000.  That's if you apply

2  the $51,000 for a first-year captain and you went up, but you

3  never get close to $110,000.

4          THE COURT:  Mr. O'Neill, do you dispute that?

5          MR. O'NEILL:  Yes, ma'am.  In the arbitration --

6          THE COURT:  Step forward.

7          MR. O'NEILL:  Sorry.  In the arbitration it does

8  delineate all the pay scales of all pilot groups.

9          THE COURT:  Which is Exhibit 9 that you've handed me?

10         MR. O'NEILL:  Yes, ma'am.

11         THE COURT:  Where would I find that in there?

12         MR. O'NEILL:  It's going to take me a few seconds,

13 ma'am.

14         THE COURT:  Okay.

15                      (Pause)

16         MR. O'NEILL:  Page 34, Your Honor.  It's the second

17 paragraph.  It says, "Continental salaries for captains range

18 from 48,750 for first four years of service to 50,000 for five

19 years to ten years of service in the amount of 52,500."  The

20 majority of the plaintiffs got over ten years.  The majority of

21 the plaintiffs got over 14 years, Your Honor.

22         THE COURT:  Well but it still would be the maximum

23 looks to be 64,000.

24         MR. O'NEILL:  All right.  Yes, Your Honor, but also

25 Continental had a furlough clause.

                **J&J COURT TRANSCRIBERS, INC.**

38

1          THE COURT:  Well but you wouldn't get paid the 64
2   plus furlough.

3          MR. O'NEILL:  That's part of the collective
4   bargaining agreement, Your Honor.

5          THE COURT:  You wouldn't get both.

6          MR. O'NEILL:  Ah, yes --

7          THE COURT:  If you're furloughed, you'd be getting
8   your furlough pay not your regular pay.

9          MR. O'NEILL:  That is up to the arbitrator, ma'am.
10  It's not up to -- really to us.  They're the one will really
11  specify how the structure was, and there's also a me too clause
12  that attaches to this, Your Honor.

13         THE COURT:  And what is that?

14         MR. O'NEILL:  A me too clause was anytime any officer
15  of Continental got a pay raise, so did the Continental pilots.
16  It was something that Mr. Geyer brought to this Court.

17         THE COURT:  But what we're dealing with is what
18  you're claim was as of the alleged merger date, and this
19  appears to be, since it was done in August I think of '91 -- I
20  mean that's after, so it could not be more than 64,000 I guess
21  based on this decision.

22         MR. O'NEILL:  That's correct, Your Honor, but that
23  doesn't include pensions, Your Honor.  There was a six percent
24  pension in it, and the furlough clause we have -- really have
25  to look at Continental's contract.

**J&J COURT TRANSCRIBERS, INC.**

39

1    THE COURT:  Well again six percent, it would be --
2  the maximum would be six percent of the 64,000.  Six percent
3  per year you're telling me?

4    MR. O'NEILL:  Yes, ma'am.

5    THE COURT:  What other benefits under the collective
6  bargaining agreement?

7    MR. O'NEILL:  Well we had our right to get recall.
8  That's part of the furlough.  In other words, when Continental
9  started hiring in 1992 and '93, we should've been recalled --
10  offered employment.

11    THE COURT:  But again --

12    MR. O'NEILL:  Okay.  That's --

13    THE COURT:  That would be covered by your salary.
14  I'm assuming that you win the arbitration and you're ordered to
15  be reinstated.  You'd be entitled to the one-year salary and
16  the --

17    MR. O'NEILL:  And furlough pay.

18    THE COURT:  But you're getting your salary, so,
19  therefore, you're not furloughed.

20    MR. O'NEILL:  No, ma'am, because it all depends when
21  -- how the furlough would've been structured.  Like right now,
22  to give you an example, we got pilots that are getting
23  furloughed from U.S. Air that have been notified they're
24  getting furloughed in September, and as part of the agreement,
25  depending how the collective bargaining agreement is and

**J&J COURT TRANSCRIBERS, INC.**

1  interpreted by an arbitrator -- all right -- they will get that

2  furlough -- that salary plus furlough pay plus pension plus

3  whatever they had on their 401K plus passes, which we're not

4  getting, plus medical benefits for a period of time.

5         THE COURT:  You won't get furlough pay in addition to

6  salary.

7         MR. O'NEILL:  Yes, ma'am, you do.

8         THE COURT:  Not if you're ordered reinstated.

9         MR. O'NEILL:  Well if I'm -- well it all depends when

10  I got reinstated, but we're not going to get reinstated, Your

11  Honor.

12         THE COURT:  Right.  You're getting a cash award --

13         MR. O'NEILL:  We're getting terminated.

14         THE COURT:  You're getting a cash award in -- well I

15  think you'd only get -- I assume the furlough pay was less than

16  the salary.

17         MR. O'NEILL:  It all depends -- again, it all depends

18  how the collective bargaining agreement was structured.

19         THE COURT:  All right.

20         MR. O'NEILL:  Some collective bargaining agreements

21  say you'll get your year's salary and then furlough pay.  Some

22  of them just start as furlough pay.  That part I'm not really

23  familiar with.  I know it's Section 40 of our collective

24  bargaining agreement.

25         THE COURT:  Well I have to determine whether the

J&J COURT TRANSCRIBERS, INC.

41

1  110,000 is more or less than what you'd get if you got the --

2  if you won in arbitration.  I mean it seems even if all the

3  benefits are included and the six percent pension based on a

4  maximum salary, the 110,000 still seems to be more than one

5  year's worth of compensation even if you won.

6           MR. O'NEILL:  No, Your Honor, because it all depends

7  how the arbitrator gives you the award.  An arbitrator on the

8  Runway Labor Act awarded me the seniority, but it could award

9  me damages, also.  All right?  So the damages here, because

10 Continental has refused, all right, to arbitrate, are endless,

11 so it all depends how you structure your --

12          THE COURT:  But I've already decided the Bankruptcy

13 Code gives you one year --

14          MR. O'NEILL:  One year.

15          THE COURT:  -- so it doesn't make it endless.  All

16 right.  I'm sorry, Mr. Tralins.

17          MR. TRALINS:  Your Honor, there are a couple of other

18 fundamental points that I think are important for the Court to

19 be aware of.  Number is that the collective bargaining

20 agreement between Eastern and its pilots was signed actually

21 the night before Texas Air acquired Eastern Airlines, and when

22 it was signed, the provision that deal with the LPP's was

23 handwritten in on the back of the otherwise typewritten and

24 negotiated collective bargaining agreement, and what it said

25 was that Sections 2, 3, and 13 of the Allegheny Labor --

J&J COURT TRANSCRIBERS, INC.

42

1 Allegheny Mohawk LPP's are adopted herein.  Allegheny Mohawk
2 some years before had, had litigation over what the LPP's
3 meant, and the only thing that really was adopted and carried
4 through was the fact that pilots were looking for and seeking
5 protection in the event of a merger through the sale of certain
6 assets that would impact on pilot jobs.

7        The issue before an arbitrator is only -- there are
8 only two issues before the arbitrator -- any arbitrator that
9 would arise out of the Continental dispute for the LPP
10 claimants.  One, was there a merger, and two, if so to
11 integrate the pilots.  Issues of awarding damages under
12 Eastern's collective bargaining agreement were not an issue,
13 have never been an issue, and were never any part of the
14 proceedings as against Continental or for the LPP claimants,
15 although the union asserted halfheartedly a right to front pay
16 and back pay.

17        During the arguments before the District Court Judge,
18 the Third Circuit, and in the briefs before the United States
19 Supreme Court, it was clear that the only thing anybody was
20 ever looking for were jobs based upon the LPP provisions.

21        The second point that I think is important, and Mr.
22 Brady alluded to it, is I've been looking at this for 11 years
23 and looking hard at the problems and the issues that we would
24 face as to whether or not we would be able to prevail on the
25 issue of a merger, and candidly, I have advised my clients and

43

1  it is my opinion that, that is a very difficult task not only,

2  because we have to go back 16 or 17 years, but because we've

3  got, first of all, a decision that was previously made when the

4  union brought litigation.  It was a single carrier.  There was

5  no single carrier, which creates certainly a barrier that there

6  was a merger.

7         We've got a second problem to overcome, and that is

8  that the Eastern and Continental bankruptcies ran separately

9  from each other in the Second and Third Circuits, and, in fact,

10 there was litigation that the Eastern estate brought against

11 Continental resulting in a settlement and payment of

12 substantial monies, so you have entities that are not acting as

13 if they've been merged, and you've got a myriad of other issues

14 -- corporate issues, securities issues, FAA issues, DOT issues

15 -- that would make it a difficult -- very difficult

16 arbitration.

17        I think that whoever prevailed in that arbitration on

18 the issue of merger would be facing a series of appeals because

19 of the complexity of the issues that one has to look at, and so

20 in evaluating what's going to happen down the road, one of the

21 factors that we looked at was are we going to be able to

22 prevail if we go to a merger -- if we go to an arbitration on

23 the issue of merger, and that's another reason why it seemed to

24 us that being able to achieve the settlement, that for the vast

25 majority of these pilots represents well over two times -- for

44

1  some three times -- the amount of compensation they would've

2  otherwise received with regard to their claim, makes sense and

3  is proper and appropriate.  It's -- and that, of course, was

4  also talked when we discussed the <u>Gersh</u> criteria.

5          THE COURT:  Right.  Mr. O'Neill?

6          MR. O'NEILL:  Thank you, Your Honor.  Your Honor, I

7  think it's time for all of us to make clear to the Court that

8  there was a merger.  You know?

9          THE COURT:  Well let me -- I'm assuming there was a

10  merger.

11          MR. O'NEILL:  All right, but Mr. Myles here is saying

12  that it will take a long time to litigate.  If Continental's

13  counsel in 1997, when we got the Third Circuit Court ruling,

14  would've gone into arbitration at that point on time, that

15  would've not be an issue here.  The 502(b)(7) I'm pretty sure

16  would've been addressed totally different, and because the

17  arbitrator --

18          THE COURT:  No, it would not have been.

19          MR. O'NEILL:  Well, Your Honor, you would've had an

20  award from an arbitrator that would've explained all the

21  corrupts acts of the debtor and --

22          THE COURT:  Well, I just -- quite frankly, my only

23  decision was whatever the claim was, and even assuming that you

24  have a claim, that you won the arbitration whatever that award

25  be, whether it be a million dollars or $100,000, must it be

**J&J COURT TRANSCRIBERS, INC.**

1  capped under the Bankruptcy Code, and that was the pure legal
2  issue before me on that, and I found it has to be capped
3  regardless of the amount of the award.  So for purposes of that
4  I assumed that these were valid claims.  That there would be an
5  award by the arbitrator.  Mr. Tralins is explaining that rather
6  than at first litigate the arbitration, he's simply explaining
7  that there was no given that the arbitration would be won.  But
8  even for purposes of today, I think I'm willing to accept that
9  you have a viable claim that you could've brought in the
10  arbitration, and that, honestly, the arbitrator could've
11  awarded substantial damages since 1990.  I mean it would be ten
12  times your salary --

13              MR. O'NEILL:  That's --

14              THE COURT:  -- just on the salary alone.

15              MR. O'NEILL:  Yes, ma'am.

16              THE COURT:  But, unfortunately, the Bankruptcy Code
17  has a cap for employee compensation claims just as it has a cap
18  for landlord claims and government claims, you know,
19  disallowing penalty claims, for example.  There are a lot of
20  disallowances in the Bankruptcy Code that Congress made the
21  decision to include.  My decision simply was that it would
22  apply to your type of a claim as well.

23              So assuming that you have a valid claim, assuming
24  that it may be ten times your -- what your salary was in 1990,
25  the fact that it's capped by a one-year cap, why isn't the

46

1   $110,000 claim a fair claim for you?

2          MR. O'NEILL:  Ma'am, because you're assuming a 1990

3   integration when it's really a 1986.

4          THE COURT:  Well whatever year it was.  Let's assume

5   it's '86, so it's 15 -- 16 years' worth of pay.

6          MR. O'NEILL:  All right.  It --

7          THE COURT:  It's still capped by one year.

8          MR. O'NEILL:  Yes, then there would've been a merger.

9   If you look even at the arbitration -- the arbitration of Mr.

10  Ross says that we were more pilots at Eastern than at

11  Continental.  There would've been an election for a collective

12  bargaining agent.

13         THE COURT:  Well but you can't now get that specific

14  performance.  You can't get that merger.  You can't get the

15  integration.  You're not going to get a job.

16         MR. O'NEILL:  Yes, but if it would've happened -- you

17  asked me hwy.  If it would've happened --

18         THE COURT:  Yes.

19         MR. O'NEILL:  -- we would've been at Eastern's

20  pilot's salary structure.  We would've been protected under the

21  collective bargaining agreement until there would've been an

22  election of a representative of -- a labor representative.

23         THE COURT:  Well what was the Eastern pilot structure

24  at that time?

25         MR. O'NEILL:  Class counsel should tell us, because

**J&J COURT TRANSCRIBERS, INC.**

1 he has the contract, Your Honor.

2          THE COURT:  Yes, what was the -- if he's correct,

3 then the structure would've been based on the Eastern pilot

4 salary.  What were those salaries?

5          MR. TRALINS:  Your Honor, I don't believe that the --

6 if there was a merger between Eastern and Continental in 1986,

7 and that was recognized, what would the salary structure have

8 been?  I don't know, but I honestly couldn't tell you, although

9 I suspect that if we're talking about what Continental Airlines

10 was paying, they filed a bankruptcy at that point in time, as I

11 recall, to get rid of the union contract which resulted in a

12 subsequent legislation adopting 1113, and they did that,

13 because their salaries were low, and they wanted to keep them

14 low, so when you move from one airline to another, you may

15 preserve your seniority, but you don't preserve your salary

16 structure.  You come in at whatever level they're at, and the

17 salaries in 1986 just logically I'm certain --

18          THE COURT:  Okay.

19          MR. TRALINS:  -- were lower than they ere in 1991.

20          THE COURT:  Yes.  Well in the absence of any further

21 evidence on this point, I have to assume that the salaries were

22 less than the arbitrator found they were as of August of '91.

23 So it's still a little more -- the maximum would be a little

24 more than half of what is offered today in this settlement.

25 Does anybody else wish to be heard on the settlement -- the

48

1  fairness of the settlement?

2                    (No verbal response)

3         THE COURT:  Well I'm satisfied the amount of the

4  settlement is fair.  It recognizes from both Continental's

5  perspective as well as from the pilot's perspective that there

6  has been substantial and costly litigation on all of these

7  points by the parties.  It recognizes the Third Circuit's

8  ruling that these claims cannot be allowed in anything other

9  than dollar fashion, and it also recognizes this Court's ruling

10 of the effect of Section 502(b)(7) on these claims, and the

11 offer of $110,000 exceeds what the one-year cap would be on all

12 of the class claimants.  The debtor's willing to make that

13 payment to resolve the litigation once and for all, so I will

14 approve it as a fair recovery for the class members.

15        With respect to the issue of the missing 700, I'm not

16 prepared to find that they have not been included, those who

17 have, in fact, filed claims, and, therefore, are covered by the

18 definition, but to the extent that any party wishes to opt in,

19 if you will, by filing a proof of claim by April 3, I will ask

20 Mr. O'Neill to provide the list to Mr. Brady, so that notice

21 can go to those parties, so if they want to participate, they

22 may file a proof of claim.

23        MR. O'NEILL:  Your Honor?

24        THE COURT:  Yes?

25        MR. O'NEILL:  How about class counsel supplies the

**J&J COURT TRANSCRIBERS, INC.**

49

1  list, because Mr. Brady -- as you well know, they're the care
2  keepers of our records.  They've got all our addresses.  He
3  could supply the list to him.

4          THE COURT:  Do you have the list to which Mr.
5  O'Neill's referring?

6          MR. TRALINS:  I'm not sure which people he's talking
7  about, quite frankly, but I certainly think that both Mr. Brady
8  and I can work together with the claims administrator, although
9  that's not something the claims administrator planned on doing
10  but --

11          THE COURT:  Who would have --

12          MR. TRALINS:  -- to try to find addresses, I mean if
13  he's got peoples' names, then --

14          THE COURT:  Do you have the names of who you think
15  are missing?

16          MR. O'NEILL:  Your Honor, I could go by the seniority
17  list, but they -- Continental has the last address as of 1991.

18          THE COURT:  Well I didn't realize it was a question
19  of the addresses.  I thought it was a question of referring to
20  those and seeing who were part of the two, if you will, opt out
21  classes that have previously settled or gone to New Jersey.

22          MR. TRALINS:  Your Honor, maybe Mr. O'Neill can
23  correct me if I'm wrong, but I think he's talking about new
24  hire -- what's referred to as the new hires after the strike
25  started.  Is that right?

50

1          MR. O'NEILL:  One of them is new hires, and the other
2  one are the 40 pilots that are at Continental.

3          THE COURT:  That were hired by Continental.

4          MR. O'NEILL:  No, ma'am, that were transferred with
5  seniority to Continental.

6          THE COURT:  Well they wouldn't have -- would they
7  have a claim?  They worked.

8          MR. TRALINS:  They worked -- they're working now for
9  Continental Airlines.

10          MR. O'NEILL:  Yes, that's correct, ma'am.  They --

11          THE COURT:  So they wouldn't really have a claim, so
12  I don't think they're necessary.  The new hires, are they
13  covered by this?

14          MR. TRALINS:  Your Honor, there were people who came
15  to work at Eastern Airlines after the Airline Pilots
16  Association ordered a strike, and its members went on strike in
17  support of the International Association of Machinists strike.
18  The union took the position that those people were scabs, and
19  we had litigation against the union with regard to that, which
20  ultimately was decided against this group of people.

21          When the union filed its claim in bankruptcy in 1991,
22  they did so on behalf of their members.  Its on the face of
23  their claim -- on behalf of the persons who were members of the
24  union as of the time the union took the position that there was
25  a merger which was the day after the collective bargaining

J&J COURT TRANSCRIBERS, INC.

51

1  agreement was signed in 1986.

2        Continental's position is that new hires who were --
3  who came to work for Eastern Airlines during a period of time
4  when the union persons were on strike and who never became
5  members of the union were not part of that, and, in fact, in
6  the Continental ALPA settlement documents approved by the
7  Bankruptcy Court, the exclusion -- those persons were excluded
8  from the settlement.  Some of them have claims here, but they
9  have claims, because they were part of the group that I
10  represented, and I filed individual claims in bankruptcy on
11  their behalf in 1991.

12        Continental has recognized those claims, because they
13  filed claims in these bankruptcy proceedings, but Continental
14  has taken the position -- and it's not something that we did
15  not address.  We negotiated and argued about it quite
16  vociferously as to whether or not these people should be
17  included or not included, and Continental's position was
18  adamant, and that is if they weren't a member of the union and
19  had a claim filed by the union on their behalf, or if they
20  didn't file a claim individually, or if they didn't have a
21  claim filed -- that I filed on their behalf, then they didn't
22  have a claim filed, and, therefore, they're time barred from
23  filing a claim, and unfortunately, most of the seven -- or all
24  the 700 people -- I think that's the group Mr. O'Neill's really
25  talking about who were new hires or hired after the Eastern

52

1 ALPA strike began -- are persons who did not file claims.

2       THE COURT:  Did they get notice of the bar date, Mr.
3 Brady?

4       MR. BRADY:  Your Honor, I couldn't answer that.  I
5 can't recall back to that point.  It was so long ago and who
6 got notice.  I mean Continental's position -- Your Honor, this
7 is about resolving claims.  The case is 12 years old.  We have
8 -- we still have disputed claims we're trying to resolve.  All
9 of those creditors who had valid and allowed claims are still
10 waiting for another distribution, and as a result, we need to
11 resolve this case and close this case and settle.

12       THE COURT:  Yes, I know, but if there are parties who
13 may have claims but were never provided notice --

14       MR. BRADY:  It's Continental's position, Your Honor
15 -- and we certainly can attempt to find that list and in this
16 period to see if they want to try to file a claim -- we reserve
17 the right to object to it as untimely, but the fact is these
18 are people who are supposedly covered by the collective
19 bargaining agreement and entitled to the protections of the
20 LPP.

21       If Eastern was taking the position --

22       THE COURT:  If the Eastern union was taking the
23 position, but they were not.

24       MR. BRADY:  That they were not -- their members,
25 they're not covered by the collective bargaining agreement,

**J&J COURT TRANSCRIBERS, INC.**

53

1  and, therefore, they cannot sustain a claim under the LPP's.

2          THE COURT:  Mr. O'Neill.

3          MR. O'NEILL:  Your Honor, then again, that's not

4  Eastern's union's position.  That would be up to the arbitrator

5  to decide who had the claim, and the arbitration's only work on

6  seniority lists.  They don't work if there's a member or non-

7  member.

8          To answer a previous question that you made, were we

9  notified of the bar time, the answer is no.  That was one of

10 the problems we had filing the claims.  The claims were

11 originally, Your Honor, signed by myself, all right, and Mr.

12 Dunn.  We were -- it was done on a room, and we started handing

13 them out, and Mr. Mann financed the deal.  Then we went

14 searching for counsel.

15         THE COURT:  But did you include the new hires in your

16 group?

17         MR. O'NEILL:  Yes, ma'am, they are included, and

18 there's one new hire in objecting to this order.

19         THE COURT:  But did you endeavor to include all the

20 new hires that you knew of?  I mean did they get notice of your

21 forming --

22         MR. O'NEILL:  Yes, ma'am, the Chapter EPFF, it's for

23 all Eastern pilots.  It doesn't matter new hires or old hires

24 or --

25         THE COURT:  Well, and to the extent they did

                    **J&J COURT TRANSCRIBERS, INC.**

54

1  communicate with Mr. Tralins, claims were filed on their behalf
2  is what I'm hearing.

3          MR. TRALINS:  Yes, Your Honor, the group was -- the
4  -- I don't know how many people attended the first meeting, but
5  there may have been a thousand or more.  Ultimately, the group
6  -- the people who decided to proceed with the claims numbered
7  close to 700.  It was 690 pilots.  Of those, roughly a third
8  were pilots like Mr. O'Neill, Mr. Dunn, Mr. Mann, and Mr.
9  Baldridge who had been working for Eastern for a period of time
10 pre-strike, and the -- at least half, if not a larger amount --
11 and I'm sorry that I don't have the percentages right, but at
12 least half of the group were all new hires.  So there were new
13 hires that consciously elected not to participate even though
14 that they were aware of it.  To say that it wasn't common
15 knowledge would be inaccurate, because it was common knowledge
16 in terms of what was going on.

17         Later on in the proceedings when ALPA settled with
18 Continental, the ALPA people sent settlement documents out, and
19 they did that -- I wasn't aware of it, and ultimately, the
20 District Judge allowed pilots who received the documents, sign
21 the documents, and sent them back to rescind their settlement,
22 (a) because they've been improperly communicated with, but (b)
23 because they didn't have an opportunity to get appropriate
24 notice as to what was really happening.  So I think it's fair
25 to say that the world of Eastern pilots between bulletin

**J&J COURT TRANSCRIBERS, INC.**

55

1  boards, pilot communications, the monthly newsletters, that Mr.
2  Dunn, Mr. Baldridge, and Mr. O'Neill have been putting out --
3  and Mr. Mann have been putting out for 11 years communicated
4  this fact, and certainly, I filed 690 of the claims as counsel
5  on these peoples' behalf.

6          THE COURT:  All right.  I'm satisfied that no new
7  notice need go out then with that clarification.  All right.

8          MR. TRALINS:  Your Honor, the other issues before the
9  Court concern class counsel compensation, class representative
10  compensation, class administrator compensation, and
11  reimbursement of expenses.  I'm not sure which order you'd like
12  me to begin with but --

13          THE COURT:  Whatever you'd like.

14          MR. TRALINS:  Thank you, Your Honor.  Your Honor,
15  starting with class counsel compensation, as the documentation
16  indicates that I filed, my involvement in this case goes back
17  11 years, and during that 11-year period, as the 166-page
18  invoice detailing the services indicates, the time that I
19  expended was 17 hundred and 22 hours -- point one hours, and
20  the associates who work directly under me on this matter was
21  about half of that -- 832.9 hours.  Those associates, for the
22  most part, had average experience of eight to ten years on the
23  appellate matters.  I was working, for example, with Richard M.
24  Gale, who I clerked for when I was in the law school.  Mr. Gale
25  has been a member of the bar of the State of Florida for 40

56

1  years and is -- over 40 years.  Forty-five years and is an
2  appellate lawyer exclusively.

3      Most of the other lawyers were between eight and ten
4  years of associates' time at the time that they worked on this
5  case, and when one looks to the total amount of hours that we
6  would bill at, at the normal loadstar rate it's, as I
7  indicated, up until the beginning of January, just under
8  $900,000 or $897,077.50, and applying that as against the
9  requested contingency fee, we end up with a loadstar based on
10  yesterday's closing price of Continental's stock at $29.10 a
11  share I think it was of under two times, which fits well within
12  the criteria enunciated by the Third Circuit as well as other
13  Circuits as being more than fair, reasonable, and adequate.

14      This case was financed in part, and one of the
15  reasons why I was able to handle it all of these years is
16  because the group did not -- the not-for-profit group of
17  Eastern Pilots For Fairness essentially has been run at times
18  almost on a full-time basis by Mr. Baldridge, Mr. Mann, and Mr.
19  Dunn, was able to contribute a certain amount of money towards
20  deferring the overhead and expenses.  That amount of money was
21  $221,000 over the 11-year period, and in determining how to
22  equalize the fees for the folks that reached into their pockets
23  to make this happen, the way to do that was to give them back a
24  credit against the request 30 percent contingency fee, which is
25  what we've requested and attempted to explain in the

57

1  documentation, so that in effect the fees for the 206 persons

2  who have carried this during this period of time are capped at

3  18 -- are 18 percent.  When you do the multipliers on that and

4  you multiply it out in conjunction with the amount of stock

5  that would be that would go back to them, at the closing value

6  of the stock today, it's about $262,500.

7          In addition to the $221,000 in fees that the group

8  has paid to me over these years, they've paid Mr. Jameson's

9  firm as bankruptcy counsel $44,000, and when you add that to

10  the 221, you're basically at the same figure.  So the proposal

11  is to equalize the fee amongst all participants in the class by

12  my in effect crediting back to the 206 members the monies that

13  they've advanced to me and to the Prickett law firm, so that

14  they don't bear a disproportionate amount of fees.

15          I've laid out my background, my resume, and I think

16  the Court is well aware of the complexities of this case and

17  the numerous appeals and matters that have been handled over

18  the years.  Certainly, the -- when one looks to the standards

19  that we've laid out in the petition and talk about the fact

20  that what the range of common fund percentage fees are, the 30

21  percent request is well within the range of fees that the

22  courts have determined are reasonable and appropriate, and I

23  would respectfully submit that in this case we meet that

24  criteria.

25          There were only four objections filed that were

**J&J COURT TRANSCRIBERS, INC.**

58

1 directed towards fees, and those four objections basically

2 said, "Well, you were paid something on account all along, so

3 you're really not entitled to anything anymore," except for one

4 of them filed by Mr. McKinnon, who is one of this -- of the

5 group of 206 people, and he says I should pay a 20 percent fee,

6 not a 30  percent fee, and, in fact, he's being charged an 18

7 percent fee, if he gets the credit back, so even by his own

8 calculation, ultimately the contingency fee, if awarded, would

9 be less than what he acknowledges is reasonable and

10 appropriate.

11        Turning Your Honor to the cost and expenses, we

12 provided the Court with a detailed statement of all the

13 expenses that have been incurred in this litigation that

14 commenced with the Casher arbitration back in 1991 that I

15 attended along with Eastern Airlines and the Airline Pilots

16 Association that Continental Airlines declined to participate

17 in, and these funds of $95,530.14 have been advanced by Eastern

18 Pilots For Fairness, and the request is to reimburse that not-

19 for-profit group the monies that have been expended, so that

20 again the 206 persons who allowed us to get this far can be

21 reimbursed and are not charged a disproportionate amount to the

22 other class members who are part of the class which is 350

23 other people -- 360 other people who didn't contribute anything

24 to the ongoing costs.

25        The largest single expenses in here other than the

**J&J COURT TRANSCRIBERS, INC.**

59

1  cost of the appeals and the printing and what not are the fees
2  that were paid to Francis W. Rushing, PhD. in conjunction with
3  the work that he did on calculating and determining the value
4  of the LPP claims.  Those fees were split in half.  In other
5  words, what's in this bill is 50 percent of that, because we
6  had a breach of duty of fair representation claim pending
7  against the union, the Airline Pilots Association, and the
8  measure of damages in that case was the same as this, because
9  our position was that while the union was promising Eastern
10 pilots that they would pursue what they called their
11 fragmentation policy and enforcement of the LPP's against
12 Continental, they were telling Continental pilots, because they
13 wanted to get back on the property, "Don't worry about the
14 Eastern guys.  They'll never be here if you make us your
15 collective bargaining representative," and our view was that
16 the measure of damages that we were seeking in that case was
17 directly related to the inability of pilots to obtain jobs, and
18 so when we looked at the LPP's and we looked at the measure of
19 damages that we were arguing here and arguing there, and they
20 were essentially identical, I simply allocated the cost of the
21 experts between the two cases equally, but that's how we ended
22 up with the -- with that figure of $95,530.14 which was
23 expended by the not-for-profit organization.

24         The Garden City Group has provided us with a detailed
25 bill of the work that they've done.  The largest single cost

**J&J COURT TRANSCRIBERS, INC.**

60

1   was $14,400 for the USA Today advertisement that was placed.
2   They did -- they have set up and they've manned a web site.
3   They have set up and operated an 800 telephone number.  They've
4   set up and established a database as they lay it out.  They
5   printed and they're handling all of the proofs of claims and
6   making certain that they're properly submitted, and Your Honor,
7   I would advise the Court that as of today, approximately 50
8   percent of the class members have filed and sent in proofs of
9   claim, which I think speaks very greatly as to class member
10  support for the settlement and for the proposal.  I mean we've
11  already got 50 percent of them in even though they know that
12  the final hearing has not yet -- had not been scheduled at the
13  time that they sent it in.

14          I -- since there's ongoing work that the Garden City
15  Group is doing, they gave me an estimate to complete, which is
16  the 95 hundred and 17 dollar and 50 cent figure on the last
17  page of their invoice.  They tell me that hopefully it'll be
18  less than that, but they promise that it would not -- even if
19  they did more work, it would not exceed this figure, so when
20  they propose final judgment with regard to the award, we
21  indicated that it would not exceed this figure if Your Honor
22  felt that these costs were fair and appropriate for the Garden
23  City Group.

24          I did interview a number of claims administrators.  I
25  did try to find and negotiate it to get the best possible

**J&J COURT TRANSCRIBERS, INC.**

61

1 prices I could for this.  They have done an awful lot of work,
2 and they've been I think more than fair and conservative with
3 us in terms of the pricing.

4          Your Honor, the fourth request is the request for
5 class representative compensation awards, and we provided the
6 law to the Court that supports such awards, and there's a
7 fairly wide range that the awards have been granted in, but,
8 Your Honor, I don't think that there's any case that I found
9 that shows the type of work and commitment that Mr. Baldridge,
10 Mr. Mann, and Mr. Dunn have put in other than -- that compares
11 to this case.

12          As Mr. O'Neill pointed out, the primary reason this
13 got started 11 years ago was because of the efforts of the four
14 of them, and it was the three gentlemen -- Mann, Baldrige, and
15 Dunn -- who were available on call several days a week whenever
16 it was necessary to do whatever was necessary in order to
17 advance the calls and take it forward.  As Mr. O'Neill
18 indicated to the Court, Mr. Mann reached into his pocket and
19 advanced funds over the years -- advanced funds to get it
20 started as did Mr. Dunn.

21          In their affidavits they talk about the effort that
22 they had in forging a plan of action in organizing telephone
23 chains.  They published, printed, and disseminated over the
24 years on virtually a monthly basis a newsletter to keep
25 everyone apprised of what was going on.  They've traveled with

**J&J COURT TRANSCRIBERS, INC.**

62

1  me various times on trips to Atlanta, to Boston, to New York,

2  the New York area to meet with Eastern pilots to talk about

3  what's happening.  We have produced two video tapes that we've

4  sent out not only to members of the group but to anybody else

5  that wanted them to apprise them of what was happening.  One of

6  the video tapes dealt specifically -- and it was about two

7  hours long -- specifically with the discussion of the Third

8  Circuit's decision and the impact of it and also discussed

9  Continental's position and the implications of the 502(b)(7)

10 argument well before the Court's decision was made on that

11 issue.

12      I just -- 11 years ago did not believe I'd be

13 involved -- I'm glad I'm involved with the gentlemen for 11

14 years, because they're terrific people to deal with, but none

15 of us believed that this would ever go as long and as difficult

16 and as hard a road as it has been, and they've just done a

17 superb job.

18      The impact on the 583 members of the class with

19 regard to the requested compensation for them is three shares

20 of stock out of the 340 gross settlement shares.  So when you

21 look at that and look at a request for 17 hundred shares of

22 stock so that they're taking stock like everybody else, I would

23 respectfully submit to the Court that it is fair, adequate, and

24 reasonable consideration for 11 years of work that each of them

25 have put in.  Your Honor, they're here, and if the Court has

63

1  any questions of Mr. Baldridge or Mr. Mann or Mr. Dunn, they're

2  certainly --

3        THE COURT:  I don't, but I do have a question of the

4  mechanism for the credit back.  Your request is -- of this

5  Court is approval of a 30 percent --

6        MR. TRALINS:  Yes, Your Honor.

7        THE COURT:  -- then you will arrange for the credit

8  back or repayment, if you will, to the 206 members of the group

9  that --

10        MR. TRALINS:  We have a -- of course, we know exactly

11  who the 206 people are.  The mechanism of the settlement is

12  Morgan Stanley has agreed to serve as a disbursing agent and

13  set up an escrow account.  With regard to the 206 persons, the

14  fees that would be charged against their stock would be 18

15  percent not 30 percent if the Court were -- or whatever the

16  percentage is that the Court awarded, but in any event, the

17  amount of fees from their 340 shares and their $83.14 would be

18  18 percent giving them back the credit by giving them back the

19  funds that they advanced in order to make this happen, and by

20  the same token, the sufficient stock would need to be sold in

21  order to pay the claims administrator and to repay Eastern

22  Pilots For Fairness the $95,000 that it's laid out in expenses,

23  so that it could then remit that in accordance with its

24  arrangements with its 206 members.

25        THE COURT:  So well -- explain that again with

J&J COURT TRANSCRIBERS, INC.

64

1  respect to the 95,000.

2        MR. TRALINS:   Eastern Pilots For Fairness has
3  advanced the $95,000, and since it's their money, the $95,000
4  would go back to Eastern Pilots For Fairness which is a not-
5  for-profit corporation that was formed in 1991.

6        THE COURT:   That will happen before any distribution
7  to --

8        MR. TRALINS:   Yes, Your Honor.   We would propose that
9  the claims administrator fees, the Court costs, because in
10 effect that's what the $95,000 are, the -- whatever award Your
11 Honor makes as to attorney fees, and class representative
12 awards be paid from the gross settlement compensation as is
13 defined in the settlement agreement, and that the net amounts
14 then be remitted with the understanding that the class counsel
15 fees for the 206 people are limited to 18 percent, so they get
16 a credit back for what they've already advanced.

17       THE COURT:   All right.   Does anybody wish to be heard
18 then?  Mr. O'Neill.

19       MR. O'NEILL:   Your Honor, I'm in agreement with Mr.
20 Myles on his -- on the cost of all this litigation.   What I'm
21 not in agreement with Mr. Myles is the conduct that Continental
22 has had throughout the years.   How come we should be penalized
23 on a gross disbursement and not all these costs come above the
24 goals?  We're getting double penalized.   We have financed all
25 of this litigation because of inappropriate actions of

65

1 | Continental.  We have made a lot of efforts, and by the way,
2 | they're not the only three persons that worked on this case 100
3 | percent.  I was one out of 100 percent on it.  It's just that
4 | we don't -- me and class counsel always conflict on issues, but
5 | I was his biggest researcher.  You know?

6 | And there were more -- and one thing that I wish
7 | counsel would've done is to communicate to the group to really
8 | find out all our expenses, because every single one of us did
9 | something through all this litigation, which it's too late
10 | right now to complain, but I do want the LPP class plaintiffs
11 | are requesting or counsel is requesting they do deserve,
12 | because it's been a very, very hard battle, Your Honor.
13 | Thanks.

14 | THE COURT:  Thank you.  Anybody else wish to be
15 | heard?

16 | (No verbal response)

17 | THE COURT:  Well let me go I guess with the last
18 | first.  I agree with the statement and on my review of I guess
19 | the small fraction of the case that I was involved in I do
20 | agree that the class representatives have kept this alive and
21 | devoted substantial amounts of their personal time not simply
22 | for prosecution and recovery of their own claims but for the
23 | claims of everybody in the class that they represented even
24 | before the class was certified, and I'm satisfied from the
25 | presentation and the documents presented that I have reviewed

66

1  that the -- really their actions did go above and beyond the
2  cause, and they are entitled to some recovery as compensation
3  for that effort, and I think the amount suggested is clearly
4  reasonable in light of the 11 years of this contentious
5  proceeding, and I am also aware that acting as a representative
6  of a group often subjects those representatives to the ire of
7  people who are not angry at them but angry at others including
8  specifically the debtor, and there's no way to compensate
9  people for that, but I will approve the compensation requested
10 in partial satisfaction of that.

11      With respect to attorney's fees, the 30 percent is
12 clearly within the range of compensation considered reasonable
13 by courts.  In this instance, there was not any assurance at
14 all that there would be any recovery, and certainly, if there
15 was a recovery, there was not any assurance that it would be in
16 cash or cash equivalents, so I'm satisfied that a percentage in
17 the amount of 30 percent is not unreasonable for class counsel
18 to bring this again contentious issue to a resolution, and I'm
19 satisfied and pleased that counsel is honoring its commitment
20 to the members of the group that retained counsel initially to
21 provide them with a credit back honoring its arrangement with
22 them, and I will approve the mechanism that has been set up to
23 assure that.

24      But with respect to those that were not part of the
25 group, 30 percent of a class action recovery is clearly

67

1   reasonable, and I will approve it.  Obviously, the expenses are

2   reimbursable and due -- have to come off the top of a

3   settlement, because that's the mechanism by which expenses are

4   paid.  Those expenses were incurred for the benefit of

5   everybody, and I had no concern or disagreement with any of the

6   expenses submitted, and they appear reasonable and reasonably

7   related to the prosecution of these claims, and so I will

8   approve the settlement proposed and the fees related thereto.

9              Do we have a proposed order on that?

10             MR. TRALINS:  Yes, Your Honor.  Your Honor, approach?

11             THE COURT:  Yes.

12                          (Pause)

13             THE COURT:  Is this different from what was

14   previously submitted?  Do you have a black line?

15             MR. TRALINS:  Yes, Your Honor, it is different.  We

16   filled in the dates.

17                          (Pause)

18             THE COURT:  Let me fill in the amount of the awards.

19   It's 17 hundred dollars per -- excuse me -- 17 hundred shares

20   per for the class representatives?

21             MR. TRALINS:  Yes, Your Honor.  Your Honor, if I may

22   approach.

23             THE COURT:  Oh, I was looking for that.

24                          (Pause)

25             THE COURT:  All right.  I've filled in those amounts.

**J&J COURT TRANSCRIBERS, INC.**

68

1          MR. TRALINS:  Your Honor, this is the red line

2 version.

3          THE COURT:  Stricken.  All right.  Okay.

4                          (Pause)

5          THE COURT:  All right.  Thank you.

6          MR. BRADY:  Your Honor, just to confirm for the

7 record, because it's not explicitly stated in the order and

8 because we didn't address each and every objection as filed, I

9 did want to confirm that in approving the settlement, the Court

10 is overruling all of the objections filed to the settlement.

11          THE COURT:  I am.

12          MR. JAMESON:  Your Honor, one other housekeeping

13 matter.  I'm sorry.  Bruce Jameson of Prickett Jones.  We

14 signed, out in the hallway before we walked in here, an amended

15 version of the settlement agreement that had one minor revision

16 to it which relates to the definition of the effective date.  I

17 can hand up the original stipulation here, or if you prefer, I

18 can take it back and sign it electronically, but I do want to

19 make sure the Court's aware of it.

20          THE COURT:  I think it should be submitted now.  I

21 will have it filed.

22          MR. JAMESON:  But the last page has the red line

23 change.  It just makes a minor adjustment to the definition of

24 effective date.

25          THE COURT:  Okay.

**J&J COURT TRANSCRIBERS, INC.**

69

1          MR. JAMESON:  One other housekeeping matter, Your
2   Honor.  Just so that we fill out the record, there is an appeal
3   pending from Your Honor's ruling about the 502(b)(7).  Mr.
4   Brady raised just the other day the potential problem of
5   whether this Court would have jurisdiction given the pendency
6   of the appeal.

7          Yesterday we submitted an order to Judge Robinson
8   which she signed remanding this matter to the Court for
9   purposes of hearing and approving the settlement.  I can hand
10  up a copy of that order, if Your Honor would like.

11         THE COURT:  Thank you.

12         MR. JAMESON:  Your Honor, with those things, I think
13  we have now advised you of or submitted to you everything that
14  is relevant to this matter.

15                    (Pause)

16         THE COURT:  All right.  Well based on that and again
17  my overruling the objections, I hereby enter the order
18  approving the settlement agreement and the fees requested.

19         All right.  Anything else?

20         MR. BRADY:  Nothing further, Your Honor.

21         MR. TRALINS:  Nothing further, Your Honor.

22         THE COURT:  We'll stand adjourned then.  Thank you.

23         MR. TRALINS:  Thank you, Your Honor.

24                  * * * * *

25

70

1                           **CERTIFICATION**

2              I, PATRICIA C. REPKO, certify that the foregoing is a

3    correct transcript to the best of my ability, from the

4    electronic sound recording of the proceedings in the above-

5    entitled matter.

6

7                                          Date:  April 5, 2002

8    PATRICIA C. REPKO
9    J&J COURT TRANSCRIBERS, INC.

# EXHIBIT

# F

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re: } | |
| } | Case No. 90-932 |
| CONTINENTAL AIRLINES, INC., et. } | Chapter 11 |
| al., } | |

In Re:                                              }
                                                    }     Case No. 90-932
CONTINENTAL AIRLINES, INC., et.    }     Chapter 11
al.,                                                }
                                                    }
         Debtors                          }
                                                    }
JAMES BALDRIDGE, WILLIAM           }
MANN, and LARRY DUNN,              }
individually, and                                   }
as representatives or a class of           }
persons similarly situated who are         }
referred to as the LPP CLAIMANTS,      }
                                                    }
         Plaintiffs,                     }     Adversary Proceeding
                                                    }     No. A-99-412
v.                                                  }     Class Action
                                                    }
CONTINENTAL AIRLINES               }
HOLDINGS, INC., CONTINENTAL        }
AIRLINES,                                           }
INC. and SYSTEM ONE HOLDINGS,      }
INC.                                                }
                                                    }
         Defendants.                     }
                                                    }

**FINAL JUDGMENT AND ORDER OF DISMISSAL**

This matter having come before this Court on Motion for Approval of a Settlement in this class action, and the Court, having considered all papers filed in connection with said motion, good cause appearing therefor, it is,

ORDERED, ADJUDGED AND DECREED THAT:

1. This Court has jurisdiction over the subject matter of this litigation and over all Parties, including all members of the Class.

2. On November 26, 2001: (a) the Class Settlement Notice, together with copies of the Proof of Claim substantially in the forms annexed as Exhibits 1 to 3 to Exhibit B, respectively, to the Settlement Agreement were mailed by First Class Mail to all members of the Class as identified on Exhibit C to the Settlement Agreement at their addresses listed therein; (b)the Summary Notice for Publication, substantially in the form annexed as Exhibit 2 to Exhibit B to the Settlement Agreement was published once in the National Edition of USA Today on December 3, 2001; and (c) both the Summary Notice for Publication and the Class Settlement Notice were posted on the Internet by Class Counsel on November 27, 2001. Such notice is hereby determined to be in full compliance with Rule 23 of the Federal Rules of Civil Procedure and of due process, is found to be the best notice practicable under the circumstances, and to constitute due and sufficient notice to all Persons entitled thereto.

3. The Court finds that the Class consists of those persons identified on Exhibit A attached hereto, without prejudice to persons who file a Proof of Claim on or before April 3, 2002 and who establish, to the mutual agreement of the parties, or, absent same, to the Court, that they satisfy all criteria necessary to be included in the Class.

4. This Court hereby approves the Settlement set forth in the Stipulation and Agreement of Compromise and Settlement (the "Settlement Agreement") dated

October 16, 2001, and finds that the Settlement of the claims of the Plaintiffs and the Class embodied therein is, in all respects, fair, reasonable and adequate to the Class. The terms and phrases used in this judgment shall have the same definition and meaning as in the Settlement Agreement.

5. The Court hereby dismisses on the merits with prejudice and without costs or attorneys' fees except as provided for in the Settlement Agreement, any and all claims, actions, requests for relief or causes of action alleged in the Baldridge class action complaint by Plaintiffs and the members of the Class as to all Defendants.

6. Upon the Effective Date, the Class Representatives and the Class, on behalf of themselves, the Persons they represent, their heirs, predecessors, successors and assigns, or any Person claiming or purporting to claim through any of the foregoing, for good and sufficient consideration, the adequacy of which is hereby acknowledged, shall be deemed to have released and forever discharged each and every Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Released Parties.

7. Upon the Effective Date, Class Counsel, on behalf of the Class Representatives and the Class, shall file a dismissal with the clerk of the United States District Court for the District of Delaware of the Baldridge LPP Class Action plaintiffs' pending appeal of the October 12, 2000 Order and Opinion of this Court.

8. Upon the Effective Date, Class Counsel, on behalf of the Class Representatives and the Class, shall withdraw its Demand for LPP Arbitration filed with the National Mediation Board in March, 1998.

9. Upon the Effective Date, the Class Representatives and all of the Members of the Class and anyone claiming through any of them will be forever barred and enjoined from commencing, instituting or prosecuting any action or other proceeding in any court of law or equity, arbitration tribunal or administrative or other forum directly, representatively or derivatively against any of the Released Parties as to any of the Settled Claims.

10. The Settlement Agreement, all proceedings undertaken in accordance with the terms set forth therein and all papers relating to it are not, and shall not be construed to be, an admission by any Party of either the validity of any of the claims or defenses or of liability to Plaintiffs, any member of the Class or any others with respect to any LPP claim arising out of the alleged Eastern merger, which liability is hereby expressly denied and disclaimed by Continental. The Settlement Agreement and any of the papers, negotiations, transactions or proceedings relating thereto, or any of the terns hereof or recitations herein, shall not be offered or received in evidence in any proceeding as an admission on the part of the Parties, or any of them, of liability or of the merit or lack of merit of any claim or defense.

11.    This Court has reviewed the application of Class Counsel for an award of attorneys' fees and hereby awards Class Counsel __30__% of the Gross

4

Settlement Consideration which shall be paid to Class Counsel upon the Effective Date.

12.    This Court has reviewed the application of Class Representatives James Baldridge, William Mann and Larry Dunn for a compensation award and hereby awards each, for the  services each performed as Class Representatives in this litigation, __1,700__ shares of Continental Airlines common stock to be distributed from the Gross Settlement Consideration  upon the Effective Date.

13.    This Court has reviewed the application of Class Counsel for reimbursement of expenses advanced by Eastern Pilots for Fairness, Inc. and hereby awards Eastern Pilots for Fairness, Inc. $ 95,530.14 to be paid from the Gross Settlement Consideration upon the Effective Date.

14.    This Court has reviewed the application  of Class Counsel  for the payment of claims administration and publication expenses of the Claims Administrator and hereby awards The Garden City Group, Inc.  claims administration expenses not to exceed $ 49,140.48 to be paid from the Gross Settlement  Consideration upon the Effective Date.

15.    If this Final Judgment is reversed, vacated, or modified, this Final Judgment (except for this Paragraph and paragraph 10 hereof) shall be rendered null and void and vacated *nunc pro tunc,* the Settlement shall be deemed terminated pursuant to the terms of the Settlement Agreement and the Parties shall be deemed to have reverted to their respective status and position as provided in Article VIII of the Settlement Agreement.

5

16. Without in any way affecting the finality of this Final Judgment, this Court hereby reserves and retains continuing jurisdiction over matters subsequently arising concerning this Settlement, including performance of the Settlement Agreement and the Settlement embodied therein, including, but not limited to the award of attorneys' fees, costs and expenses to Class Counsel and the Class from the Gross Settlement Consideration, the approval or rejection of any Proofs of Claim filed by members of the Class, the approval of settlement Administration Costs and the distribution of the proceeds of the Settlement in accordance with the Settlement Agreement and Continental's Revised Second Amended Joint Plan on Reorganization.

SO ORDERED ___Jan. 31___ ,2002.

BY THE COURT:

_____
MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

6

**EXHIBIT A**

## BALDRIDGE LPP CLASS ACTION CLAIMANTS

1.   Abbott, Robert D.

2.   Aber, L.A.

3.   Abrams, Billy L.

4.   Adams, Jr., J.T.

5.   Adams, Keith J.

6.   Alexander, Harold

7.   Alford, Wayne L.

8.   Alvarez, Jr. Jose A.

9.   Anderson, Ronald R.

10.  Andrews, Jr. George M.

11.  Angeletti, Thomas J.

12.  Armstrong, III F.C.

13.  Arnott, Brian G.

14.  Atteberry, William M.

15.  Ayer, K.H.

16.  Baalen, P.

17.  Babbitt, J. Randolph

18.  Baldoni, L.A.

19.  Baldridge, James H.

20.  Balukonis, V.J.

21.  Baque, III Frank

22.   Barge, Patrick S.

23.   Barnes, H. Bryant

24.   Barnes, William H.

25.   Barrero, Frank

26.   Bartlett, David R.

27.   Bauch, James H.

28.   Beard, Ronald E.

29.   Beattie, Donald G.

30.   Beaty, Gregory L.

31.   Behr, Peter J.

32.   Bell, D.A.

33.   Bell, L.

34.   Beltran, J.E

35.   Berghane, D. A.

36.   Bergstein, D.S.

37.   Berry, A.L.

38.   Berwick, T.N.

39.   Beveridge, A.I..

40.   Bialko, Peter J.

41.   Biggs, Clifford G.

42.   Bisgnano, Charles

43.   Bjelkevig, Richy A.

44.   Blackburn James R.

45.    Blair, T.D.

46.    Blankenship, Jr. O.T.

47.    Blix, Victor E. III

48.    Boja, Robert N.

49.    Bonna, F.

50.    Boswell, L.L.

51.    Brablec, Douglas D.

52.    Bradley, W.D.

53.    Bradley, R.

54.    Brandt, William, M.

55.    Braynon, Oscar J.

56.    Bredthauer, Dirk

57.    Bromschwig, Kurt F.

58.    Brown, Walter R.

59.    Browning, David L.

60.    Bryant, Charles C.

61.    Buchanan, E.J.

62.    Bundrant, William D

63.    Bunn, Larry D.

64.    Buntin, Edward S.

65.    Burke, R.T.

66.    Burke, John A.

67.    Burkhart, Ronnie L.

68.    Burns, David A.

69.    Butler, David S.

70.    Butts, Ronald G.

71.    Carl, George L.

72.    Carlson, Bruce E.

73.    Carter, Bruce, R.

74.    Carter, D.L.

75.    Case, Douglas W.

76.    Chaile, Bruce

77.    Champage, Carl M.

78.    Chapo, James E.

79.    Charnes, Jonathan

80.    Cheek, Raymond T.

81.    Chirino, Rafael E.

82.    Christopher, Anthony S.

83.    Cirrotti, Dennis J.

84.    Clark, Ronald D.

85.    Clark, D.E.

86.    Clark, Wesley C.

87.    Clary, B.K.

88.    Clary, M.R.

89.    Cocuzzo, D.J.

90.    Cohn, Alan S.

91.   Cole, John D.

92.   Cole, William F.

93.   Colli, G.F.

94.   Collier, W.R.

95.   Commander, Jr. John B.

96.   Compton, John P.

97.   Connell, E.W.

98.   Connolly, James M.

99.   Conti, R.G.

100.  Cook, Carl D.

101.  Cook, Kenneth E.

102.  Cooper, T.L.

103.  Cornay, Ray

104.  Cowen, John B.

105.  Craig, Robert L.

106.  Crane, W.E.

107.  Craus, C.M.

108.  Crawford, D.B.

109.  Crow, Kenneth P.

110.  Crush, James M.

111.  Curran, T.R.

112.  Daniel, Jr., James W.

113.  Davidson, William F.

114.    Davis, Charles B.

115.    Davis, Gerald O.

116.    Davison, David J.

117.    Davoust, W.P.

118.    De Phillips, Floyd M.

119.    Deeton, James L.

120.    Delaria, David J.

121.    Deming, Maurice A.

122.    Devereaux, John A.

123.    Devton, John R.

124.    Dickinson, Randall L.

125.    Dickman, George A.

126.    Dixon Carroll

127.    Dobson, Gordon W.

128.    Doctorchik, Scott

129.    Dodson, Bonnie U.

130.    Dodson, Theodore E.

131.    Doglione, Frank

132.    Donovan, M.D.

133.    Donovan, M.F.

134.    Dorticos, Raul H.

135.    Dublin, Robert S.

136.    Duckworth, Thomas O.

137. Dugger, T.R.

138. Dundas, Charles P.

139. Dunn, L.J.

140. Dunn, R.A.

141. Durante, J.P.

142. Durkin, G.P.

143. Dyer, Charles G.

144. Dylong, J.

145. Ealy, R.L.

146. Eastman, J.D.

147. Edwards, K.A.

148. Egut, Ronald S.

149. Eldridge, Dorothy J.

150. Elmdanat, R.

151. Emery, James C,

152. Engelke, Marc J.

153. Engelke, Warren L.

154. Erickson, Alan W.

155. Evans, R.H.

156. Fahn, C.L.

157. Fant, Jr. Glenn E.

158. Farenga, J.H.

159. Farnsworth, Earnest L.

160.   Farnsworth, K.L.

161.   Farrell, Richard L.

162.   Faulkner, H.C.

163.   Feliu, John E.

164.   Finch, R.A.

165.   Fisher, III Joel F.

166.   Fong, G.W.

167.   Foresto, J.M.

168.   Forsberg, Scott

169.   Foster, Hubert E.

170.   Foster, Robert W.

171.   Fowells, James E.

172.   Francis, R.H.

173.   Frank, William

174.   Frater, K.X.

175.   Frazier, Bennie W.

176.   Freytes, Luis R.

177.   Friedrichs, Howard W.

178.   Fritch, Donald A.

179.   Frost, Wayne B.

180.   Fryling, Albert A.

181.   Fugedy, J.J.

182.   Gaedtke, Michael L.

183.   Garcia-Vergara, H.

184.   Gardner, David E.

185.   Gary, Carrol J.

186.   Garza, E.

187.   George, Henry R.

188.   Geraghty, James D.

189.   Gibson, Randall

190.   Gordon, D.G.

191.   Gorman, Barry William

192.   Govatos, John D.

193.   Grafton, Jr. J.R.

194.   Grau, F.L.

195.   Green, Grant S.

196.   Green, G.A.

197.   Greene, David L.

198.   Greksa, G.J.

199.   Grenie, A.A.

200.   Gribas, Kenneth

201.   Griffin, Donny E.

202.   Griffith, Bobbie

203.   Griggs, R.P.

204.   Groff, W.V.

205.   Grubbs, R.E.

206.  Gructzner, Allen

207.  Grzegorzak, S.K.

208.  Gunn, George H.

209.  Gurl, John T.

210.  Gurley, Louis E.

211.  Hall, B.W.

212.  Hall, Howard W.

213.  Halloran, D.

214.  Hamilton, Walcott B.

215.  Haney, Fred C.

216.  Hansen, P.W.

217.  Hanshaw, R.G.

218.  Harn, George F.

219.  Harrell, Bruce

220.  Harris, R.J.

221.  Hartley, J.D.

222.  Hassett, P.R.

223.  Hastings, Gregory A.

224.  Hauth, David A.

225.  Hawkins, Thomas R.

226.  Hiatt, Jr. H.W.

227.  Higgins, R.F.

228.  Hill, W.B.

229. Hinsdale, James P.

230. Hipps, William D.

231. Hodgers, Benjamin

232. Hooton, J.W.

233. Houston, Charles M.

234. Howard, C.A.

235. Howard, Charles B.

236. Howard, James W.

237. Huddleston, J.D.

238. Huges Jr., James R.

239. Hunter, Richard I.

240. Hurley, Jay

241. Hutchin, Robert A.

242. Hutson, R.T.

243. Ingle, W. D.

244. Ingram, Capt. Culpepper F.

245. Inman, Brownie N.

246. Iranipour, F.

247. Jacobowitz, L.

248. Jansen, C.W.

249. Jaye, Mamadou D.

250. Johansen, William H.

251. Johnson, R.A.

252.   Johnson, C.T.

253.   Johnson, G.M.

254.   Johnson, Richard A.

255.   Johnson, R. A.

256.   Johnson, Robert E.

257.   Jones, John L.

258.   Jordan, W.O.

259.   Kalantsri, F.

260.   Kane, S.G.

261.   Keeler, R.L.

262.   Kennedy, M.J.

263.   Khan, N.

264.   Kimble, R. L.

265.   Kingwell, R.A.

266.   Kluthe, D.B.

267.   Kovec, Robert

268.   Koziol, R. L.

269.   Kritcher, Lawrence N.

270.   Krueger, Fred W.

271.   Kucklick, Joc

272.   Kurtz, Hugo E.

273.   Laine, J. R.

274.   Laing, R. C.

275.   Lamaute, L .L.

276.   Lambie, J. M.

277.   Lamecker, D. R.

278.   Landa, George

279.   Landry, Jr. Donald J.

280.   Lane, F. W.

281.   Lane, Jr. Gordon B.

282.   Lane, Malcolm V.

283.   Langer, Lawrence E.

284.   Lantz, K. M.

285.   Latham, Richard C.

286.   Lavarello, E. F.

287.   Lawrence, Charles W.

288.   Lea, Robert G.

289.   Lee, J. R.

290.   Lee, Allan R.

291.   Lehman, L.G.

292.   Leonhardt, Stephen J.

293.   Levy, Simon

294.   Lewandowski, R.A.

295.   Lewicki, John A.

296.   Lewis, Gary M.

297.   Liebing, Kurt M..

298.  Lindell R.W.

299.  Lindner, A.

300.  Link, C.R.

301.  Linn, D. N.

302.  Lorenzo, Gustavo A.

303.  Love, F.W.

304.  Lyter, Jr. Henry B.

305.  Lytle, Richard A.

306.  Maarouf, D. H.

307.  Manduley, Leonard

308.  Malone, Steven J.

309.  Mann, William B. Jr.

310.  Manning, Bob S.

311.  Marciano, Anthony P.

312.  Marcinek, Jerry V.

313.  Marino, Edward H.

314.  Martinez-Alegri, J.

315.  Marsh, A.A.

316.  Mason, Hugh C.

317.  Mathis, G. K.

318.  Mathisen, N.A.

319.  Matthews, Patrick M.

320.  Maugeri, Peter J.

321.   Mauro, A.F.

322.   McCabe, Larry G.

323.   McCann, Joseph P.

324.   McCartney, Kenneth L.

325.   McClannahan, Richard W.

326.   McCracke, Keith K.

327.   McDonald, T.L.

328.   McHenry, J.R.

329.   McKenna, C.E

330.   McKenna, William D.

331.   McKennan, D.J.

332.   McKeon, A. T.

333.   McLean, D. W.

334.   McMahon, Michael S.

335.   McQuigg, A.R.

336.   McRae, James D.

337.   Means, James A.

338.   Menchini, R.L.

339.   Mendez, E.

340.   Merly, Hector M.

341.   Mesmer, Frederick H.

342.   Michael, Donald K.

343.   Milanette, R. T.

344.    Miller, Daniel P.

345.    Miller, Frank P.

346.    Miller III, W.B.

347.    Miller, James A.

348.    Miller, Robert L.

349.    Miller, Thomas O.

350.    Minardi, Jame V.

351.    Misencik, Paul R.

352.    Miskotten, Edward

353.    Mitchell, D.S.

354.    Mittelstaedt, George J.

355.    Moffitt, R.E.

356.    Moktadier, John

357.    Montgomery, D. J.

358.    Mooney, R. O.

359.    Moore, Donald B.

360.    Moore, Jr., R.E.

361.    Morgan D. P.

362.    Morrey, Frank J.

363.    Morrison, Edward H

364.    Morrison, David L.

365.    Mortensen, KimT.

366.    Moslener, C. F.

367. Munger, Steven S.

368. Munsterman, R.A.

369. Murphy, Paul R.

370. Murray, H. M.

371. Murray, Thomas O.

372. Musick, Jr., Charles R.

373. Myers, III, Wilson D.

374. Nagy, S.L.

375. Nall, Jr. Robert L.

376. Nelsen, R .J.

377. Nelson, Douglas C.

378. Ness, R.A.

379. Neumann, P.G.

380. Nicchia, Leonard R.

381. Nicholson, William T.

382. Norman, II J. S.

383. O'Connell, John M.

384. Ogden, Thomas H.

385. Ogilvie, Thurston

386. Oneill, Ramon E.

387. ORourke, M.J.

388. Ortiz, Boris

389. Osborne, Richard A.

390.    Osman, Dale E.

391.    Ouzts, Jr., J. F.

392.    Palermo, F.G.

393.    Palmer, Douglas M.

394.    Pappas, T

395.    Pareira, Fred

396.    Parkinson, Richard E.

397.    Parr, William J.

398.    Paschke, J.M.

399.    Patel, P. Raman

400.    Paulcy, Leon Trenton

401.    Peacock, Donald J.

402.    Peacon, Robert C.

403.    Peery, T.H.

404.    Pell, Thomas A.

405.    Pennic, J. R.

406.    Penrod, Gary B.

407.    Perez, Jr. Efrain

408.    Perkins, D. Grier

409.    Perry Jr A.G.

410.    Peters, L. W.

411.    Petko, J. G.

412.    Pettit, B.D.

413.    Phillips, R. A.

414.    Phillips, Henry C.

415.    Phillips, Terry E.

416.    Pinkerton, K. R.

417.    Pipkin, R. P.

418.    Poirer, Noel A.

419.    Potter, Martin

420.    Preis, M.J.

421.    Priest, Peter D.

422.    Priest, Paul B.

423.    Putonen, Leonard R.

424.    Raju, K.V.

425.    Ramaprakash, T. S.

426.    Rawlings, Jr. Walter E.

427.    Rawls III, F. H.

428.    Ray, C. G.

429.    Redd, W. J.

430.    Reeh, Charles D.

431.    Regan, J. H.

432.    Reik, K. M.

433.    Reinholtz, R. E.

434.    Reitan, A. G.

435.    Reno, Richard W.

436.    Reynolds, D. D.

437.    Richards, K. L.

438.    Roberts, Reginald

439.    Roberts, R. E.

440.    Robertson, James L.

441.    Robinson, Kenneth D.

442.    Rodriguez, F. A.

443.    Rogers, D. J.

444.    Rosenthal, Eugene P.

445.    Rosman, Ken

446.    Ross, Thomas D.

447.    Rosser, John P.

448.    Rupert II, John F.

449.    Ryan, Edward J.

450.    Sandusky, William A.

451.    Santiago, Stanley

452.    Sauer, D. P.

453.    Saunders, Daniel S.

454.    Schanzlin, D. N.

455.    Schedel, J.R.

456.    Schrag, James A.

457.    Schriner, Jr. D. O.

458.    Schroll, Jr. John E.

459.    Schultheis, D. H..

460.    Sccor, E. F.

461.    Self, G.W.

462.    Sessums, Stephen E.

463.    Sewell, Jr. H. J.

464.    Sheehan, F. J.

465.    Shepard, Gary C.

466.    Shore, G.E.

467.    Shoun, J. W.

468.    Shriver, Larry L.

469.    Simmons, Gary

470.    Sirmans, J. W.

471.    Sizemore, Samuel E.

472.    Smith, Andrew C.

473.    Smith, Charles E.

474.    Smith, David W.

475.    Smith, Jack G.

476.    Smith, Jr. S. D.

477.    Smith, Robert Leo

478.    Smith, Carl C.

479.    Sofferin, Jeffrey

480.    Sorenson, John P.

481.    Spieker, Jr. Samuel G.

482.    Spillman, Harry L.

483.    Spitler, Douglas H.

484.    Sposito, James

485.    Stanton, Donald H

486.    Starzyk, E. S.

487.    Steward, Donald E.

488.    Stewart, Wayne M.

489.    Stifel, Arthur C.

490.    Stokes, Clifford J.

491.    Stone, Alan C.

492.    Stone, Cary A.

493.    Stone, Edward E.

494.    Stow, Calvin E.

495.    Strader, Sr. James R.

496.    Stradley, K. W.

497.    Straessle, Gregory C.

498.    Strong, D. B.

499.    Strus, M. W.

500.    Sullivan, E. M.

501.    Sullivan, Ennis C.

502.    Sullivan, John L.

503.    Sullivan, Robert F.

504.    Syman, John E.

505. Taliaferro, Jr. C.E.

506. Talton, W.G.

507. Tate, Joe F.

508. Taylor, Dean H.

509. Taylor, J. M.

510. Taylor, Jr. Glyn M.

511. Taylor, Jr. Henry A.

512. Taylor, Michael J.

513. Taylor, Robert A.

514. Terrence, J. Fitzgerald

515. Tew, Jr. B. D.

516. Theakston, Peter A.

517. Thompson, Jerry L.

518. Thompson, R. L.

519. Thompson, Steve C.

520. Thomson, III John B.

521. Thornton, Kenneth

522. Threlkeld, J. G.

523. Tippett, Jeannette S.

524. Tipton, Larry K.

525. Tomelden, Arthur P.

526. Toole, Oliver A.

527. Torres, C. T.

528. Towney, Jr. James R.

529. Trauger, H. R.

530. Treadwell, J. P.

531. Triplett, David M..

532. Trivett, Roscoe H.

533. Tucker, Joe R.

534. Tucker, D.

535. Tucker, T.T.

536. Tumlin, William H.

537. Turner, J. R.

538. Unger, R. A.

539. Urso, Michael T.

540. Vanek, A. G.

541. Vara, R.W.

542. Vaughan, Michael J.

543. Vesty, Charles H.

544. Villanueva, R.

545. Villers, David L.

546. Vohra, P. P.

547. Vonkleeck, John S.

548. Voudy, John E.

549. Vrettos, Nicholas

550. Wagner, Ronald

551.  Walby, Thomas F.

552.  Walker, T. W.

553.  Walther, F. O.

554.  Walton, M.R.

555.  Waterstreet, Mark A.

556.  Watson, M.D.

557.  Watt, A. K.

558.  Weaver, Linda B.

559.  Webb, Jr. Rufus

560.  Weir, James R.

561.  Weisbruch, J. E.

562.  Weller, Jr. A. E.

563.  Wengert, R. D.

564.  West, Peter

565.  Westby, Dorothy C.

566.  Westphall, Robert C.

567.  Whitaker, R.B.

568.  White, Robert L.

569.  Whitford, James E.

570.  Whitley, Donald D.

571.  Whitney, Richard A..

572.  Wilkie, James R.

573.  Wilson, James S.

574. Wingate, Wesley A.

575. Wood, T. R.

576. Wood, Steven C.

577. Wright, Dean S.

578. Yates, G. W.

579. Yeater, Don

580. Young, Thomas J.

581. Zeng, Robert E.

582. Ziobro, Thomas J.

583. Zito, Joseph

C:\MyFiles\LPP final list 1-31-2002.wpd

# EXHIBIT

# G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                                }
                                                       }
                                                       }          Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,   }          Chapter 11
                                                       }
         Debtors                                  }
_____          }
                                                       }
JAMES BALDRIDGE, WILLIAM MANN, }
and LARRY DUNN, individually, and  as    }
representatives of a class of persons           }
similarly situated who are referred to as      }
the LPP CLAIMANTS,                           }
                                                       }
              Plaintiff,                             }          Adversary Proceeding
                                                       }            No. A-99-412
                                                       }            Class Action
v.                                                    }
                                                       }
CONTINENTAL AIRLINES HOLDINGS, }
INC., CONTINENTAL AIRLINES, INC.       }
AND SYSTEM ONE HOLDINGS, INC.        }
                                                       }
              Defendants.                          }
_____          }

### Request for Extension of Deadline
### from Rule 8006

We request an extension of deadline form rule 8006 and in compliance with local rule 16.5 for the following reasons:

    a) Unable to retain local counsel as required by the local rules in this short period of time and geographical distance.

    b) We had applied for the re-commencement of the arbitration before this hearing, in order to determine who belongs in this Class Action pursuant to 125 F.3d 120 (3rd Cir. 1997). (Exhibit 1)

    c) We were unable to obtained access to CM/ECF system till 02/15/02 in order to obtain court documents required. (Exhibit 2)

We are requesting this appeal to be put on hold until local counsel is retained and the arbitration in progress determines the class plaintiffs and award.

We will keep this court informed of our progress in an expedited manner.

February 18, 2002

Ramon E. O'Neill
Appellant
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Request for Extension of Deadline was served upon each of the following attorneys in the manner indicated below on February 18, 2002.

**FEDERAL EXPRESS TO:**

TRALINS AND ASSOCIATES
One Biscayne Tower
2 S. Biscayne Blvd., Suite #2930
Miami, Florida 33131
Telephone 305-374-3300
Attorney for Class Plaintiffs

Robert S. Brady
Young, Conaway, Stargatt & Taylor
The Bradywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Attorney for Defendants

By: _____
Ramon E. O'Neill
Appellant

EXHIBIT 1

. .C. . L MEDIATION BOAR -

2002 JAN 29  P 12: 14

**John G. Loomos, Esq.**
*14260 SW 153 Pl.*
*Miami, FL 33196*
*(305) 233-4005*
*(305) 233-9511 Fax*

January 29, 2002

*Via Telefax to (202) 692-5086*

Ms. Carol Conrad
Senior Assistant
Arbitration
National Mediation Board
Washington D. C. 20572

Re: Eastern Airlines Inc., Continental Airlines Inc., and Continental Airlines
    Section 13 LPP arbitration

Dear Ms. Conrad,

This letter is a follow-up of Ramon E. O'Neill's telephone request that the National Mediation Board furnish the undersigned with a panel of seven neutrals from which the parties to the above dispute may select the arbitrator who will chair the aforementioned LPP arbitration.

It would be most helpful if the individuals whose names are proffered have served as arbitrators on arbitration boards created by a collectively bargained agreement and/or as a neutral assigned to System Boards of Adjustment established under the provisions of the Railway Labor Act, as amended.

Four such names that come to mind: Richard I. Bloch, Frank Elkouri, Richard Kasher, and Jerome Ross. Needless to say, seasoned arbitrators who have had experience integrating the Pilot System Seniority Lists of merged airlines will be better poised to expedite the hearing portion of this LPP arbitration and to prepare his or her opinion and award in a timely fashion.

Yours very truly,

John G. Loomos

# PACER SERVICE CENTER
## U.S. COURTS - PACER · P.O. BOX 277773 · ATLANTA, GA 30384-7773

EXHIBIT 2

February 12, 2002

Ramon E. Oneill
Ramon E. Oneill
7424 Sw 129 CT.
Miami, FL  33183

Dear Ramon E. Oneill:

Thank you for your interest in the Public Access to Court Electronic Records (PACER) system. PACER is a service provided by the federal judiciary for electronic access to federal court case information. The Judicial Conference of the United States has established a fee to be collected for access to PACER. All registered agencies or individuals will be assessed the charge of $.07 per page for web access or $.60 per minute of dial-up access.

Quarterly statements will be generated and sent to each registered user accruing usage on PACER with a balance due of $10 or more. For more information on our billing procedures, see our web site, http://pacer.psc.uscourts.gov. Payment in full of the billed amount is due each quarter or further access to the system will be restricted until outstanding balances are cleared.

Your firm's login is
Your firm's password

Most U.S. Courts currently offer both an Internet service and a dial-up service. The login and password issued by the PACER Service Center will allow access to both the Internet and dial-up PACER sites. You must register with each PACER dial-up site; however, your login and password will work at all PACER Internet sites. Dial-up PACER modem numbers and links to Internet PACER sites can be found at our web site, http://pacer.psc.uscourts.gov.

A free account information service is available for all registered users of PACER at the PACER Service Center's web site. It offers a multitude of on-line services including allowing users to update account information, change passwords, view account balances, download statements, sort statements by client code, and register with additional courts. Visit our web site at http://pacer.psc.uscourts.gov. These options can be found under the account information button.

A PACER manual can be downloaded from the PACER Service Center web site in PDF format. You will need Adobe Acrobat Reader to view the manual. The manual is located at http://pacer.psc.uscourts.gov/documents/pacermanual.pdf. If you

## PUBLIC ACCESS TO COURT ELECTRONIC RECORDS

# EXHIBIT

# H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al., | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | re: Docket No. 103 |
| INC., | ) | |
| | ) | |
| Appellees. | ) | |

## MOTION OF CONTINENTAL TO ENFORCE COMPLIANCE WITH COURT ORDER AND OBJECTION OF CONTINENAL TO REQUEST FOR EXTENSION OF DEADLINE FROM RULE 8006

Continental Airlines, Inc. ("Continental"), hereby moves for an order compelling

compliance with this Court's order dated January 31, 2002 (the "Final Judgment and Order of

Dismissal") and objects ("Objection") to the Request for Extension of Deadline from Rule 8006

("Request for Extension"), filed by Ramon O'Neill ("O'Neill") and, in support thereof,

respectfully represents the following:

11 8

3-6-02

**BACKGROUND**

1.        On October 12, 1999, James Baldridge, William Mann and Larry Dunn,

individually (the "Named Plaintiffs") and as representatives of a class of persons similarly

situated (the "LPP Claimants"), commenced a putative class action seeking a declaration that if

the arbitration of the LPP dispute resulted in a determination that a merger between Continental

and Eastern occurred, the money damages to which the LPP Claimants would be entitled should

be calculated from the date of seniority integration and should not be limited under section

502(b)(7) of the Bankruptcy Code.

2.        On February 3, 2000, this Court entered an order granting class

certification under rule 23(b) of the Federal Rules of Civil Procedure (the "Class Certification

Order"). Pursuant to the Class Certification Order, members of the class were precluded from

opting out of the class unless they withdrew their claim against the bankruptcy estate of

Continental. The class certification was not timely appealed, thereby binding to the class each

LPP Claimant who did not withdraw his or her claim.

3.        On October 12, 2000, this Court entered a final order on summary

judgment (the "Summary Judgment Order"), which held that the value of the claims held by the

LPP Claimants (the "LPP Claims") would be limited to one year's wages under section 502(b)(7)

of the Bankruptcy Code in the event an arbitrator concluded a "merger" occurred between

Continental and Eastern. That decision was appealed.

4.        On October 16, 2001, the LPP Claimants and Continental filed a

settlement agreement (the "Settlement Agreement"), which this Court confirmed in its Final

Judgment and Order of Dismissal, dated January 31, 2002. Pursuant to the Settlement

Agreement, the LPP Claimants and Continental agreed that the LPP Claimants would receive an

allowed pre-petition general unsecured claim in the amount of $110,000 (the "Allowed Claim").

In consideration of the Allowed Claim, each of the LPP Claimants agreed to release Continental from any all claims and causes of action asserted in the litigation arising out of the alleged Eastern merger.

5.    On February 12, 2002, O'Neill filed a Notice of Appeal (the "Notice of Appeal") regarding this Court's Final Judgment and Order of Dismissal, entered January 31, 2002.

6.    On February 19, 2002, O'Neill filed, in this Court, his Request for Extension seeking an indefinite stay of his appeal. In support thereof, O'Neill alleges an extension is warranted because, among other reasons, the appeal should be stayed pending the outcome of an arbitration that will determine which LPP Claimants are properly part of the class.

## ARGUMENT

7.    Preliminarily, O'Neill's Notice of Appeal, filed February 12, 2002, was untimely filed under Rule 8002 of the Federal Rules of Bankruptcy Procedures, which requires that notice of appeals be filed within 10 days of the entry of an order. This Court entered its Final Judgment and Order of Dismissal on January 31, 2002. Under Rule 8002, an appeal from that order must have been filed by February 11, 2002 to be timely. O'Neill's appeal was filed on February 12, 2002. Under controlling case law, the failure to file a timely notice of appeal creates a jurisdictional defect barring appellate review. Shareholders v. Sound Radio Inc., 109 F.3d 873 (3d Cir. 1997). Accordingly, Continental intends to file a separate Motion to Dismiss O'Neill's appeal.[1]

---

[1]    O'Neill also failed to seek a stay pending his appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, and the transactions contemplated in the Final Judgment and Order of Dismissal have been substantially consummated.

3

8.    In his Request for Extension, O'Neill seeks an order of this Court indefinitely extending the time in which he must file a designation of the record under Rule 8006 so that an arbitration to determine who is properly a member of the class of LPP Claimants may occur. This Court's Final Judgment and Order of Dismissal, however, precludes such an arbitration. That order specifically provides in paragraph 9 that the LPP Claimants "will be forever barred and enjoined from commencing, instituting or prosecuting any action or other proceeding in any court of law or equity, <u>arbitration tribunal</u> or administrative or other forum ... against [Continental] as to any of the Settled Claims." Because the basis for O'Neill's request for an extension directly conflicts with that order, which is binding on O'Neill unless overturned on appeal, his request for an extension must be denied.

9.    Additionally, Continental requests that this Court enter an order enforcing its Final Judgment and Order of Dismissal and confirming that O'Neill is enjoined from seeking an arbitration on any issue related to his LPP Claim. In its Final Judgment and Order of Dismissal, the Court retained jurisdiction over matters that may arise concerning the implementation of the order. The Court, moreover, possesses the inherent authority to enforce its own orders. In re Continental Airlines, Inc., 236 B.R. 318 (Bankr. D. Del. 1999). Accordingly, because the Court's previous order precludes arbitration between LPP Claimants and Continental, O'Neill's sole remedy at this time is to pursue his attempted appeal of the Court's Final Judgment and Order of Dismissal.

4

WHEREFORE, Continental respectfully requests that this Court 1) deny

O'Neill's Request for Extension and 2) enter an Order enforcing its Final Judgment and Order of

Dismissal and confirming that O'Neill is enjoined from seeking an arbitration on any issue

related to his LPP Claim.

Dated: March 4, 2002
Wilmington, Delaware

<div style="margin-left:40%">

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Robert S. Brady (No. 2847)
1000 West Street
The Brandywine Building, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorney for Continental

</div>

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., et al., | ) | Case No. 90-932 MFW |
| | ) | |
| Debtors. | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM MANN, | ) | |
| and LARRY DUNN, individually, and as | ) | |
| representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. A-99-412 |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, INC. | ) | |
| and SYSTEM ONE HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) SS |
| NEW CASTLE COUNTY | ) |

Sandi Van Dyk, being duly sworn according to law, deposes and says that she is employed by the law firm of Young Conaway Stargatt & Taylor, LLP, attorneys for the Debtors, and that on the 6th day of March, 2002, she caused a copy of **Motion of Continental to Enforce Compliance With Court Order and Objection of Continental to Request for Extension of Deadline From Rule 8006** to be served to those parties on the attached service list in the manner indicated.

*Sandi Van Dyk*
Sandi Van Dyk

SWORN TO AND SUBSCRIBED before me this 6th day of March, 2002.

*Angela M. Colson*
Notary Public

ANGELA M. COLSON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Aug. 31, 2003

WP3:741669.1                                                                                       45085.1005

## SERVICE LIST
### 3/6/2002

Robin E. Curtis
Edna Smith
Continental Airlines, Inc.
1600 Smith- HQSLG
P.O. Box 4607-HQSLG
Houston, TX 77210
*First Class Mail*

Myles J. Tralins
Tralins & Asso.
Two South Biscayne Blvd., Suite 3310
One Biscayne Tower
Miami, FL 33131
*First Class Mail*

Ramon E. O'Neill
7424 SW 129 Ct.
Miami, Fl 33183
*First Class Mail*

Bruce E. Jameson, Esq.
Prickett Jones & Elliott
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

*Hand Delivery*

United States Trustee
Office of the United States Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801
*Hand Delivery*

# EXHIBIT

# I

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

2002 JUN 13  PH 2:00

- - -

In re:                          :   Chapter 11
                                :
CONTINENTAL AIRLINES, INC.,     :   Case Nos. 90-932 (MFW)
et al                           :     through 90-984
                    Debtor      :

. . . . . . . . . . . . . .

HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

- - -

Wilmington, Delaware
April 2, 2002

- - -

APPEARANCES:

                    ROBERT S. BRADY, ESQUIRE
                    Young Conaway Stargatt & Taylor, LLP
                    The Brandywine Building, 17th Floor
                    1000 West Street
                    Wilmington, DE  19801
                    For the Debtor

                    MYLES TRALINS, ESQUIRE
                    Tralins & Associates
                    For the LLP Class Action

                    BRUCE JAMESON, ESQUIRE
                    Prickett Jones & Elliott, P.A.
                    1310 King Street
                    Wilmington, DE  19899-1328
                    For the LLP Class Action

                    RAMON E. O'NEILL, Pro Se

                    - - -

Audio Operator:     Jennifer M. Patone

Transcribed By:     Jo-Anne L. Hutt

        (Proceedings recorded by electronic sound recording;
transcript provided by AAERT-certified transcribers.)

- - -



**Laws Transcription Service**
48 W. La Crosse Avenue
Lansdowne, PA 19050
(610) 623-4178



2

1        (The proceedings occurred in open court at 3:14 p.m.

2    as follows:)

3            MR. BRADY:  Good afternoon, your Honor.

4            THE COURT:  Good afternoon.

5            MR. BRADY:  Robert Brady on behalf of Continental

6    Airlines, Inc., et al.

7            Your Honor, this is the date and time set for

8    Continental's motion to compel enforcement of this Court's

9    final judgment and order of dismissal in the Baldridge (ph)

10   class action proceeding and it's also Continental's objection

11   to Mr. O'Neill's request for an extension of his deadlines

12   under Bankruptcy Rule 8006 with respect to his appeal of your

13   Honor's order of January 31.

14           Continental is seeking an order today, your Honor,

15   in just two narrow points; one, that Mr. O'Neill as a member

16   of the non-opt out class in the Baldridge adversary

17   proceeding is bound by this Court's final judgment entered

18   unless and until an appellate court reverses, vacates, or

19   modifies that order.  Specifically, your Honor, Mr. O'Neill

20   and other class members are bound by Paragraph 9 of the final

21   judgment which provides:

22           "Upon the effective date, the class representatives

23   and all of the members of the class and anyone claiming

24   through any of them will be forever barred and enjoined from

25   commencing, instituting, or prosecuting any action or other

3

1    proceeding in any court of law or equity, arbitration

2    tribunal, or administrative or other form directly,

3    representatively, or derivatively against any of the released

4    parties as to any of the settled claims."

5         And I can represent for the record that the

6    effective date of the settlement has occurred, your Honor,

7    and therefore Paragraph 8 is operative and enforceable unless

8    overturned on appeal.

9         The second point we are seeking an order on, your

10   Honor, is that the Court should deny Mr. O'Neill's request

11   for an extension of time under Bankruptcy Rule 8006 to

12   designate the record and issues on appeal. Mr. O'Neill lists

13   three reasons why an extension is warranted;

14        One, that he's unable to obtain local counsel. Your

15   Honor, his request for an extension was filed on February

16   19th, so we believe there's been ample time to locate local

17   counsel.

18        Two, Mr. O'Neill indicates that he's waiting for the

19   results of an arbitration that he intends to proceed with to

20   determine the class members and the award. Your Honor, of

21   course it's Continental's position that your Honor's order

22   has enjoined any such arbitration.

23        And, three, that Mr. O'Neill has been unable to

24   access the electronic docket, but I believe now that he has

25   had access to the electronic docket. Therefore, we request

4

1   that his extension motion be denied and that the Court set a

2   date by which Mr. O'Neill must file his designation of the

3   record and issues, so that the matter can be sent to the

4   District Court to be adjudicated.

5          Now, your Honor, what has Mr. O'Neill been doing

6   that we believe violates this Court's order of January 31?

7   Well, one by his own papers, your Honor? He's indicated that

8   he intends to proceed with an arbitration to determine the

9   class members and the award. Of course, your Honor's order

10   has already done that. Your Honor has issued orders

11   certifying the class and approving the settlement of, again,

12   this non-opt out class action of which Mr. O'Neill is a class

13   member.

14          Through a website, your Honor, that Mr. O'Neill is a

15   party to, and this is attached to the LLP claimants joinder,

16   Mr. O'Neill is broadcasting what is unfortunately misleading

17   and false information, and is causing other members of the

18   class to take actions that we believe will adversely effect

19   their legal rights; namely, Mr. O'Neill has advised those

20   parties that they still have a right to join his appeal, and

21   that they have a right to join his arbitration. We believe

22   both of those are clearly legally wrong and through

23   broadcasting this, your Honor, we believe he's adversely

24   effecting the rights of the other members of the class.

25          So, unfortunately, as a result of Mr. O'Neill's

5

1    action, he is causing class members not to send in proof of

2    claim forms by the deadlines set forth in your Honor's order

3    indicating that somehow their settlement option may survive

4    either through the filing of untimely notices of appeal, or

5    through an arbitration that's enjoined.

6        These are not, therefore, harmless acts, your Honor.

7    These are acts that clearly violate your Honor's order.

8    They're costing Continental money, as we must respond to

9    these actions.

10        Mr. O'Neill has a remedy and that is his appeal of

11    your Honor's January 31 order.  Now, Continental and the LLP

12    claimants believe that appeal was filed untimely, but that's

13    not an issue for today, your Honor, that is an issue that

14    will be decided by the District Court on appeal.  But that is

15    the sole remedy available to Mr. O'Neill at this point.  And

16    that is to pursue that appeal of your Honor's order.  It's

17    not to proceed, or attempt to proceed with an arbitration

18    before the National Arbitration Board; it is not to actively

19    try to get people to join an appeal or to proceed with

20    arbitration.

21        All of those acts, we believe, violate your Honor's

22    order and that order is going to be the subject of an appeal

23    to the District Court.

24        THE COURT:  Let me ask you a question:  Do I have

25    jurisdiction to deal with a motion for extension of time to

6

1  file the statement of issues on appeal?

2          MR. BRADY:  Your Honor, we believe because of the

3  way the structure is set up, and that is that the notice of

4  appeal is filed, the designation on the record, and the

5  issues, and counter-designation are all filed at the

6  Bankruptcy Court level.  And then the Bankruptcy Clerk's

7  Office sends it to the District Court, and only then does the

8  District Court docket the appeal and start a proceeding at

9  the District Court level, that this is appropriately before

10  your Honor because it's administrative in nature, your Honor.

11  It's in the nature of extending a deadline before we get to

12  the District Court.

13          THE COURT:  Well, except that Rule 8011 deals with

14  motions.  It says they shall be filed with the District Court

15  or the Bankruptcy Appellate Panel.

16          MR. BRADY:  Your Honor, I know the LLP claimants,

17  the class representatives, have moved to dismiss the appeal

18  and they have filed that with the District Court.  But the

19  District Court at this point has no case number assigned to

20  this, because they've not received the paperwork from the

21  Bankruptcy Court that would initiate the action.

22          THE COURT:  Well, then, but they get a miscellaneous

23  number.  That's what happens with motions to dismiss.

24          MR. BRADY:  When, your Honor, the motion was brought

25  before the Court, if your Honor thinks the District Court

7

1    should hear it, we can bring a similar motion before the

2    District Court.  We simply responded to the motion since it

3    was filed before this Court.

4            We think your Honor can.  It's administrative in

5    nature.  This is not to the substance of what is being

6    appealed.  It's procedural.

7            THE COURT:  Well, I don't know how it was docketed,

8    but the caption does say "The District of Delaware.  United

9    States District Court for the District of Delaware."

10            MR. BRADY:  It appears --

11            THE COURT:  It appears that Mr. O'Neill ---

12            MR. BRADY:  It appears, however, on the docket of

13    this adversary proceeding.

14            THE COURT:  Mm-hmm.

15            MR. BRADY:  Which is why we brought this motion, but

16    our --

17            THE COURT:  Right.

18            MR. BRADY:  As I indicated, our motion is both an

19    objection to that and an affirmative motion seeking to compel

20    enforcement of your Honor's order.

21            THE COURT:  All right.

22            Mr. O'Neill, you wish to respond?

23            MR. O'NEILL:  Yes, ma'am.

24            Good afternoon, your Honor.

25            THE COURT:  Good afternoon.

8

1          MR. O'NEILL:  I'm sorry we're back here.  And if my

2    tone gets too high, please let me know, because I've been

3    losing my hearing throughout the years flying airplanes.

4          Your Honor, to start off with, I filed for the

5    arbitration based on Mr. Myles' recommendation of two

6    conversations that I had with him prior to our March 31st

7    hearing.  He reassured me that I had a right to arbitrate.

8    And we looked at Document 57, your Honor, which was the

9    document that was sent to us, not that he sent to me that's

10   filed in this court, which was the document...

11         (Pause.)

12         ... which was the document dealing with the

13   settlement agreement -- and I don't know if you could pull it

14   out, ma'am, but I --

15         THE COURT:  I don't have that in front of me.  Do

16   you want to show me what you're referring to?

17         MR. O'NEILL:  May I?

18         THE COURT:  You may.

19         MR. O'NEILL:  I need to read it, ma'am.

20         (Handing document to Court.)

21         THE COURT:  Let me see where it starts so I know

22   what this is.

23         (Pause.)

24         All right.  This is the stipulation and agreement of

25   compromise and settlement filed in this adversary at Section

9

1   4.04 is what you're referring me to?

2           MR. O'NEILL: Yes, where it says, "I hereby."

3           THE COURT: It is hereby. Section 4.04 states:

4   "Upon the effective date the class representatives, and all

5   of the members of the class who timely sign and file a proof

6   of claim, and execute a release with the claim's

7   administrator, and anyone claiming through any of them, will

8   be forever barred and enjoined from commencing, instituting,

9   or prosecuting any action or other proceeding in any court of

10  law or equity, arbitration, tribunal, or administrative or

11  other form directly, representatively, or derivatively

12  against any of the released parties as to any of the settled

13  claims. It is affirmatively recognized and agreed that the

14  Bankruptcy Court's determination that the LLP claims are

15  limited to one year's back pay pursuant to Bankruptcy Code,

16  Section 502B7, is binding on all LPP claimants, irrespective

17  of whether or not any such LLP claimants submits his or her

18  completed proof of claim and executed release."

19          THE COURT: Is that --

20          MR. O'NEILL: Basically, your Honor, I'm trying to

21  find the proof of claim. If a proof of claim on the back

22  says "I hereby select." They gave me the option to select to

23  participate in that.

24          THE COURT: Do you have a copy of the proof of

25  claim?

10

1    MR. O'NEILL:  I'm trying to find it, ma'am.

2    MR. BRADY:  I do not, your Honor.

3    (Pause.)

4    THE COURT:  Oh, it's the last page?

5    MR. TRALINS:  Your Honor, I have a copy.

6    THE COURT:  I think it's attached.

7    MR. TRALINS:  To the form --

8    THE COURT:  It's Exhibit C to the settlement?

9    MR. TRALINS:  Yes.

10    (Pause.)

11    MR. O'NEILL:  And it starts, "I hereby elect."

12    THE COURT:  "I hereby elect to participate in the

13    settlement agreement."

14    MR. O'NEILL:  Well, I'm not electing to participate,

15    ma'am.

16    THE COURT:  But you understand that on the first

17    page it states the effect.

18    "If you fail to file a proof of claim and release

19    form by April 3rd your claim will be subject to rejection and

20    you will be precluded from receiving any benefits under the

21    settlement of the case."

22    MR. O'NEILL:  That's correct, but it doesn't

23    preclude to proceed to arbitration.

24    THE COURT:  Well, the effect of it did.

25    MR. O'NEILL:  Ma'am, okay, we are dealing with an

11

1   non-rejected collective bargaining agreement.  It's been
2   stated by this Court the rights, okay -- and this is out of
3   your own opinion, ma'am, and I'll read it:

4          Mr. Adams also raised the issue concerning the
5   Eastern pilots to arbitrate under the Railway Labor Act.
6   Since the Third Circuit Court's decision expressly that all
7   individual Eastern pilots to proceed to arbitration to decide
8   whether they have claims to seniority integration under the
9   LLP.  We need not to address this issue at this time.
10  This --

11         THE COURT:  I did not address the issue.

12         MR. O'NEILL:  That's correct, ma'am, but --

13         THE COURT:  But I did address it in the settlement.

14         MR. O'NEILL:  All right, but the two orders,
15  opinions from the Court, expressly say that is an individual
16  right, okay?  Mr. Tralins, under our collective bargaining
17  agreement, it's not our representative and I've got the
18  collective bargaining agreement there, which I'll show you,
19  ma'am.

20         (Handing document to Court.)

21         The collective bargaining agreement, and if I may
22  again --

23         THE COURT:  No, I know the collective bargaining
24  agreement gave you the right to arbitrate.

25         MR. O'NEILL:  And that it's an individual right.

12

1      THE COURT: However, the effect of a class action is

2  that all members in a class action where there is no opt out,

3  all members are bound by it.

4      MR. O'NEILL: Okay. Okay, ma'am. If that's the

5  case, how come Mr. Myles is telling me on the phone that I

6  have a right to arbitrate?

7      THE COURT: Well, I don't know about that.

8      MR. O'NEILL: How come he -- he come he did not tell

9  the class members, Look, I'm not giving you an opt out. Mr.

10  Myles is the attorney of a corporation in Florida by the name

11  of EPFF. That's the way we communicate. It's his duty as

12  the attorney of the corporation, and the three main

13  plaintiffs were under direct orders to let us know what the

14  intent of the corporation is.

15      And he assured me that I did have the right to

16  arbitrate. So if Continental wants to take the matter up of

17  arbitration, he can take it with Mr. Myles, not me.

18      THE COURT: Do you wish to respond?

19      MR. TRALINS: Yes, your Honor. Your Honor, after

20  the Third Circuit ruled in the United States Supreme Court

21  denied certiorari, I instituted arbitration proceedings

22  before the National Mediation Board because, first of all,

23  there's a six month statute of limitations that applies.

24  And, at that point, the Third Circuit had determined that we

25  had a right to arbitrate the issue of whether or not there

13

1   was merger, and if so, how to integrate the pilots into
2   Continental's work force, and that was my duty to do so.
3           Once I did that, and proceeded with it, and we
4   obtained an initial strike panel from the National Mediation
5   Board, we engaged in discussions with Continental's
6   attorneys, both Mr. Brady and Mr. Patton of Young Conaway
7   here, and Mr. Guyer from their Washington firm that provides
8   them with representation, ultimately we ended up with a
9   settlement.
10          Now, there was -- we certainly were intent on
11  proceeding with an arbitration if we could not resolve the
12  issues by settlement, but in analyzing it, it had seemed to
13  me that since the core issue that Continental raised at the
14  very outset of the case, when they filed their first
15  objection to the Airline Pilot Association's proof of claim,
16  it was filed on behalf of all of their members, they said
17  even if there is an obligation, and we deny that there is,
18  the obligation is a general unsecured pre-petition claim in
19  bankruptcy and it is limited at best to one year's wages
20  under the provisions of 502B7.  So that's been an issue that
21  Continental has maintained steadfastly since 1991, 1992.
22          And it seemed to me that it would be an effort -- it
23  would involve a tremendous effort in time and resources and
24  money, money that many of my clients could ill-afford not to
25  go without, even in terms of a settlement, for the years that

14

1    it would take to get this issue resolved. So I thought that

2    first it would be important to decide what's the measure of

3    damages even if we win --

4              THE COURT: Well, I --

5              MR. TRALINS: -- and that's how we arrived at the

6    settlement and that's why the arbitration didn't go forward

7    at that point.

8              THE COURT: I understand that, but did you make any

9    representations to Mr. O'Neill or anyone else that

10   arbitration was still an option if the settlement agreement

11   were approved?

12             MR. TRALINS: No, your Honor. The representations

13   that were made was that we had an arbitration, it was

14   proceeding, we had people who were working on that

15   arbitration. Subsequent to that, the documentation that was

16   sent out, and there were newsletters sent out by the group to

17   the members of the corporation Mr. O'Neill's referring to,

18   discussed what the settlement was, discussed what the options

19   were. I made an hour and a half videotape that was sent out,

20   there were 500 copies of that to discuss the Third Circuit's

21   decision in detail.

22             And the fact of the matter is when Mr. O'Neill asked

23   me about, my response was great, you can send a letter -- for

24   Mr. O'Neill -- you can send a letter to the National

25   Mediation Board, you can ask them for a panel, but you're

15

1   never going to see, in my opinion, Continental at an
2   arbitration with you, because they've already agreed to treat
3   it as if you won the arbitration, and settle your claim with
4   more than you get even if you went through it and you won.
5   And I'm a little frustrated because what's happened, your
6   Honor, is we've got 46 late filed notices of appeal that
7   started being filed February 18th, and one of them came in
8   today, from people who are acting under the misapprehension
9   that there is an arbitration pending when there is not.  The
10  National Mediation Board has a copy of the Court's orders,
11  and has a copy of the Third Circuit's decision, and has not
12  issued a panel despite Mr. O'Neill's request, but people
13  believe there's an arbitration pending, and people also
14  believe that they have a current right to an appeal -- the
15  judgment of this Court that was entered January 31st when
16  that time is long since gone and this publication and
17  dissemination of information that are keeping people from
18  sending in the proofs and claim, and we're now looking with a
19  bar date, under the judgment, of tomorrow, which is why I
20  joined in Continental's motion.
21          And I know I went further than your Honor's
22  question, but the frustrating thing about this is that these
23  pilots are people that had jobs at a viable airline that was
24  destroyed as a result of circumstances entirely beyond their
25  control.  Most of them have had a very hard time of it since

16

1    then because of what happened to the airline industry, and a

2    very difficult time finding jobs, and many of them -- and

3    this last group is representative of that -- are people who

4    simply are diehard committed to one way or another getting a

5    job somewhere with Continental, or getting something, or

6    continuing the fight because they're upset and angry about

7    what happened 11 or 12 years ago.

8         But it's over with. And explaining that -- I can't

9    tell you how many hours and hours I've spent trying to

10   explain it to people and I don't know that it's not that they

11   don't get it, as much as they really don't want to because of

12   the subjective emotional feelings that are involved and

13   that's why, if there's going to be an appeal and a

14   determination as to whether or not Mr. O'Neill's notice of

15   appeal was timely, we really need to get that decided quickly

16   and by the same token, I think it's important that the class

17   members not be misled --

18        THE COURT:  Right.

19        MR. TRALINS:  -- in believing that there's a right

20   to arbitrate when there's not or that there's a right to

21   greater compensation in that which the Court has awarded

22   subject to appeal and we need to get on with it and get it

23   concluded.

24        THE COURT:  All right.  Thank you.

25        MR. TRALINS:  Yes, your Honor.

17

1        MR. O'NEILL:  Your Honor, before we proceed, I just

2   want to make sure that this Court doesn't interpret me like

3   an angry creditor.  It's far from those premises.

4        Second, my background, I've got 23 arbitrations.

5   I've got over 2,000 grievance procedures.  I used to be the

6   grievance chairman at Eastern.

7        THE COURT:  Mm-hmm.

8        MR. O'NEILL:  I know the procedures.  Mr. Myles is

9   talking to this Court like is an authority on the Railway

10   Labor Act.  He's basically saying that he had a six month

11   statute of limitation to file for the arbitration.

12        No, your Honor, that arbitration was enjoined by

13   this Court.  That arbitration was in process.  The reason why

14   the Casher (ph) arbitration was stopped is because

15   Continental, using the law -- and this is the problem.

16   Continental's been using the law to stop the arbitration --

17   went to Mr. Casher, and Arbitrator Casher says --

18        THE COURT:  I am aware of all these facts, but you

19   were here at the hearing on approval of the --

20        MR. O'NEILL:  Yes.

21        THE COURT:  -- class settlement.

22        MR. O'NEILL:  Yes, ma'am, and I brought some

23   subjects up, and I was not ready to answer your questions at

24   that time.  On some of the subjects that were brought up, I

25   basically told you that the only person that could decide

18

1    those subjects is the arbitrator.

2            THE COURT:  However, I overruled your objections.

3            MR. O'NEILL:  Yes.

4            THE COURT:  And I held that the class settlement was

5    appropriate and I ordered that as a result of that the

6    arbitration -- any arbitration proceedings are enjoined.

7            MR. O'NEILL:  Ma'am, my question is:  You enjoining

8    again the arbitration?

9            THE COURT:  Yes.

10            MR. O'NEILL:  The District Court told you you can't.

11    The Third District Court told you you can't.  Basically, you

12    have created a class -- the class was established back in

13    1987.

14            THE COURT:  If I'm wrong, the District Court --

15            MR. O'NEILL:  Will do it.

16            THE COURT:  -- will overrule me.

17            MR. O'NEILL:  Okay.

18            THE COURT:  But in the meantime you cannot tell

19    people that they can ahead with arbitration.

20            MR. O'NEILL:  Ma'am, that is not correct, okay?  My

21    best friend signed this agreement.  I have not told anybody.

22    It's on the website.  It's what happened in this court.  I

23    did find using Mr. Myles' standard, okay, which he claims

24    he's been in arbitration, which he has never been in

25    arbitration, ma'am, he just filed with the NAB. The NAB is

19

1  the authority to basically manage.  We have never been in

2  arbitration, your Honor.

3         THE COURT:  Well, whether you have or not, that is

4  all irrelevant.

5         MR. O'NEILL:  But I filed --

6         THE COURT:  There is no arbitration that can proceed

7  after the day I signed that settlement agreement unless the

8  District Court reverses.

9         MR. O'NEILL:  Okay.  And the only reason it's that

10 way, ma'am, is because I filed for the arbitration before the

11 hearing.  I did not have proof, when I came to this hearing,

12 that I was already in arbitration, to ask for a stay in

13 (indiscernible) on time.  I couldn't come to this Court and

14 say, I filed for the arbitration.  We've got to stop this

15 procedure.  I needed a copy from the NAB.  I got a copy

16 stamped from the NAB three days after the hearing.

17        THE COURT:  All right.  Well, you cannot proceed

18 with that as a result of my order.

19        MR. O'NEILL:  I can.  They have blocked it already,

20 so I don't know what they're complaining about.

21        THE COURT:  Well, the problem appears to be that

22 others under this settlement, if proofs of claim are not

23 filed, they will get nothing.  If a proof of claim is filed,

24 they will get a distribution based on the one year, 110,000 I

25 think it is --

20

1          MR. O'NEILL:  Yes.

2          THE COURT:  -- per pilot.

3          MR. O'NEILL:  But, ma'am, that's not a problem.

4   They could extend the deadline.  They have to extend the

5   deadline.  They have gotten more people showing up that

6   belongs in it.  Right now I've got 1200 names that Mr. Myles

7   refused to represent.

8          THE COURT:  But have you told those 1200 people to

9   file proofs of claim?

10         MR. O'NEILL:  Ma'am, he is the class counsel.  I

11  mean, I can't be calling -- I did this.  I put this group

12  together, I put it to work, three class representatives took

13  over, they said they had worked all this time.  Mr. Myles has

14  a -- supposedly a website, which is not a website really,

15  it's a settlement site, so it's his duty.  I mean, he's

16  getting 30 percent.

17         THE COURT:  Let me hear from Mr. Tralins.

18         MR. TRALINS:  Your Honor, there are two distinct

19  groups that comprise the Eastern pilots as of the time of the

20  eastern shutdown, and those groups were the pilots who were

21  on Eastern's payroll in Eastern's seniority list prior to

22  March 5th, 1989, prior to the IAM strike, which the Eastern

23  pilots went out for, in sympathy with, pursuant to the

24  instruction of their union, most of them did, and in new

25  hires, who were hired by Eastern during the process from

21

1    between March and August of 1989.  Approximately 1100 pilots

2    fall into the category of being hires.

3         When the Airline Pilots Association filed its proof

4    of claim, it did so on behalf of the pilots who were members

5    of ALPA, that's expressly what the claim says.  I had raised

6    this issue with Continental and taking the position with

7    Continental that anybody who was employed by Eastern Airlines

8    was part of the collective bargaining group, irrespective of

9    whether or not they were a member of the union.

10         THE COURT:  Mm-hmm.

11         MR. TRALINS:  The union absolutely refused to

12   recognize these people, the union did not file a claim on

13   their behalf.  Three to 400 of them did file claims, which I

14   filed -- I filed for most of them, and Mr. O'Neill early on

15   was instrumental in bringing a lot of those people on board

16   so that their claims could be filed and their rights

17   protected.  And I believe, in fact, he and the class rep were

18   working together and prepared the proofs of claims for the

19   pilots to file in the bankruptcy.

20         Continental's position was if somebody filed a proof

21   of claim, which is what the class definition that the Court

22   ultimately entered as an order here, if somebody filed a

23   proof of claim on a timely basis, we'll recognize it, but we

24   will not recognize proofs of claims that were not filed by

25   persons.  Continental has recognized that all of the pilots

22

1   who were pre -- and correct me if I'm wrong, Bob -- but pre-

2   strike, pre-March 5th, 1989, had proofs of claims filed on

3   their behalf by the union, because that's expressly what the

4   union did.

5          THE COURT:  Right.

6          MR. TRALINS:  And just last week Mr. Brady told me

7   that in reviewing the list of claimants, that they had found

8   88 or 93 additional persons who they recognize -- there's

9   another 240-some, but they weren't sure who they were -- and

10  I've been going through the lists as well to try to make

11  certain that everybody who has a right to participate in the

12  settlement is identified and does receive notice.

13         And in conjunction with that -- we discussed this

14  this morning -- and one of the things we're going to ask the

15  Court would be to extend the time consistent with the Court's

16  prior ruling for another 60 days for the filings of proofs of

17  claims, so that we can identify all these people.

18         What Mr. O'Neill is talking about is 1100 people,

19  more or less, but the vast majority of those are new hires,

20  and Continental's position with regard to them was they

21  didn't file claims individually, they weren't members of the

22  union, the union didn't file the claims for them, and they're

23  time barred because they didn't file a claim, and therefore

24  they're not going to recognize them.

25         THE COURT:  Is that the people to whom you're

23

1    referring, the new hires?

2            MR. O'NEILL:  No, no, there's more than that, ma'am.

3            This section of the collective bargaining agreement,

4    which I've got a copy of it, it's known as 186, which is

5    known as the Alcary (ph) decision, ma'am.  The Alcary

6    decision does not put specific dates.

7            It says everybody that is flying for Eastern

8    Airlines as of February 24th, and I've got the decision with

9    me, so you could read it, ma'am.  That is the award.  The

10   award does not limit time.  The only person that wants to

11   limit time here is Continental.  It's not even Mr. Tralins.

12   Continental wants to limit the time.

13           If I have a new hire, and he got in trouble at

14   Eastern Airlines, as a grievance person I had to represent

15   him.  That is the law.

16           THE COURT:  Well, the problem is there are bar dates

17   for filing proofs of claim.

18           MR. O'NEILL:  Ma'am.

19           THE COURT:  And if they filed a proof of claim, then

20   they would be covered, but if they did not file a proof of

21   claim within the time, and they were -- the union did not

22   file a proof of claim on their behalf --

23           MR. O'NEILL:  That is --

24           THE COURT:  -- then they would be time barred.

25           MR. O'NEILL:  That's not correct.  The union filed a

24

1   proof of claim based on Grievance 186. They didn't put no

2   names of no individuals. It was an open filing.

3            Now, the union represent -- did not represent those

4   pilots, all right?

5            THE COURT: Mm-hmm.

6            MR. O'NEILL: Mr. Tralins was not able to object to

7   that. If you look at the district decision --

8            THE COURT: Mm-hmm.

9            MR. O'NEILL: -- because he was time barred, because

10  this appeal was not filed on time, okay? So he can't come up

11  here and say what happened.

12           The duty under the Railway Labor Act is you

13  represent everybody. Out of people that were working at

14  Eastern before March 4th, 1989 -- and my records as a strike

15  chairman will indicate -- 60 percent of the pilots were

16  members of ALPA. The other 40 percent were not. So --

17           THE COURT: But the other 40 percent did file proofs

18  of claim here. They had a right to file a proof of claim

19  themselves.

20           MR. O'NEILL: Ma'am, ALPA stated that we're filing a

21  proof of claim on everybody's behalf. We --

22           THE COURT: To whom did they state that?

23           MR. O'NEILL: They sent us paperwork on it. That's

24  where I copied the claim from. Mr. Tralins did not file the

25  proof of claim for us. We did it on our own. I copied ALPA

25

1   and I basically said, okay, we've got to do it on our own,

2   because ALPA is going to sell us down the drain.

3          THE COURT:  Mm-hmm.

4          MR. O'NEILL:  That's what happened.  He wasn't

5   involved in the case when those filings came.

6          THE COURT:  He says ALPA said they weren't

7   representing the new hires.

8          MR. O'NEILL:  Ma'am, at that point when the filing

9   was done, ALPA filed a claim based on Grievance 186.  It did

10  not say who they were going to represent.

11         THE COURT:  Does anybody have the ALPA proof of

12  claim?

13         MR. BRADY:  I did not bring it, your Honor.  This is

14  Robert Brady for the record.  But I will note for the record

15  that ALPA withdrew its proof of claim as part of its

16  settlement.  So the ALPA claim was formally withdrawn from

17  the case and Continental has reviewed it.  As Mr. Tralins

18  indicated, it indicated they were filing a claim on behalf of

19  their members.  Continental has always taken the position

20  that if someone did not file a proof of claim individually,

21  or with a member of ALPA that could be represented the class

22  proof of claim filed by ALPA, they had not participated in

23  the bankruptcy.

24         At face, your Honor, this is still, though very

25  complicated, a bankruptcy proceeding.  Continental confirmed

26

1   its plan in 1993, went effective shortly thereafter, and is
2   trying to make distributions to the creditors in this case.
3   There are a large number of creditors who are waiting for
4   what they hope will be a final distribution and we can't make
5   it until we resolve the proofs of claim that were filed and
6   that's what we're here on the class action, that was the
7   basis of the settlement.  Continental would have never
8   entered the settlement, your Honor, if it was a opt out
9   settlement.

10          We've been down that road before.  This was an
11  attempt to fully and finally resolve the claims filed in the
12  bankruptcy by the LLP claimants, that was the basis of the
13  settlement, and that is why we offered in excess of what your
14  Honor had ruled was the appropriate amount of their claim.
15  Put this issue to rest and close the bankruptcy.

16          THE COURT:  But you're also seeking, without
17  affording an opportunity to file a proof of claim, to release
18  claims against the debtor from those who did not file proofs
19  of claim, and an injunction; am I wrong?

20          MR. BRADY:  Your Honor, the class members are all
21  people who filed claims.  Mr. O'Neill filed a claim.  The
22  injunction --

23          THE COURT:  Then why are we arguing about this?

24          MR. BRADY:  -- the injunction is clearly --

25          THE COURT:  Only as to those who filed proofs of

27

1 claim.

2       MR. BRADY:  Only those who filed proofs of claim.

3       THE COURT:  All right.  So why are we arguing about

4 this issue?

5       MR. O'NEILL:  Ma'am, because the claims, they are --

6 are because of our rights on arbitration, which everybody's

7 included.  The reason why we have this claim is because of an

8 arbitration that took place that includes all pilots.

9       THE COURT:  And this settlement settles your claim

10 and your right to arbitration.

11       MR. O'NEILL:  Yes, that's what it's doing.

12       THE COURT:  I already decided that.  If you disagree

13 with that, you can go to the District Court.

14       MR. O'NEILL:  I understand that, ma'am, but the

15 reason why we're arguing is because Mr. Tralins, all right,

16 basically got up here and he stated that he did certain

17 things which he hasn't done, and one of them is he hasn't

18 represented the class properly.

19       THE COURT:  Well, I've already decided that he did.

20       MR. O'NEILL:  Okay.

21       THE COURT:  And I've already approved the

22 settlement.

23       MR. O'NEILL:  All right.

24       The debtor agrees to an extension to give notice to

25 parties to the extent any of Mr. O'Neill's communications may

28

1    have misled them?

2         MR. BRADY:  Your Honor, reluctantly because of

3    what's transpired the debtor has agreed to a 60 day extension

4    across the board for class members who put their paperwork in

5    to participate.  I did not have an opportunity to check this

6    with the post-effective date committee.  There is a post-

7    effective date committee that is very anxious to get the

8    final distribution out to the creditors, but I did not have

9    an opportunity to review that with them, but they are not

10   present today, your Honor, but Continental has agreed to that

11   60 day extension.

12        MR. O'NEILL:  May I ask now, your Honor, you've got

13   a 60 day extension, who is going to be included?  We've got

14   pilots that were in this collective bargaining agreement

15   since February 24th, 1986.  We've got pilots all the way down

16   to January 18th of '91.

17        THE COURT:  I am only dealing with those who are

18   members of this class to the extent they filed a proof of

19   claim.

20        MR. BRADY:  Your Honor, the settlement does provide

21   a mechanism.  Basically, your Honor defines who is a class

22   member.  They have an opportunity to reach out to either

23   myself or Mr. Tralins and ask to be included in the class.

24   If we disagree, they have the right to come to your Honor and

25   ask to be put in the class.  If we agree -- and as Mr.

29

1    Tralins indicated -- we have located class members that

2    should have been on the list that we are adding to the list

3    through consent of both Continental and the Baldridge

4    plaintiffs.  We will add those.  Anyone who comes forward who

5    meets the criteria of the test that your Honor approved as to

6    who a class member is will be added.

7            If they disagree with our decision, should we turn

8    them down, they have the opportunity to come before your

9    Honor and seek to be added to the class.

10           THE COURT:  All right.  You may have your pleading

11   back.

12           (Document handed back to counsel.)

13           THE COURT:  Well, I'm going to grant the debtor's --

14   it's a join motion, is it?  Well, the debtor's motion to

15   enforce compliance.

16           And, Mr. O'Neill, I am going to direct you not to

17   continue any arbitration or to advise any other class member

18   that they have the right to proceed with arbitration.

19           MR. O'NEILL:  Ma'am, I never --

20           THE COURT:  In the absence of the District Court

21   reversing my order approving the settlement.

22           MR. O'NEILL:  Ma'am, I understand your compelling,

23   but I never did that.

24           THE COURT:  All right.

25           MR. O'NEILL:  Okay?

30

1          THE COURT:  Well, don't do it in the future.

2          And I will grant an extension to the class members

3    of 60 days.  I think that is necessary to correct any

4    misunderstanding the parties may have to assure that all

5    those who are entitled to share in this settlement, do, in

6    fact, participate.

7          I don't think I have jurisdiction to deal with the

8    request for an extension of deadline under Rule 8006.  So I

9    think the debtor and anybody else who wants to respond to

10   that should file a separate response in the District Court.

11   And if you can alert the Clerk's Office that the request for

12   the extension really should have been docketed in the

13   District Court as well under Rule 8011.

14         MR. BRADY:  Very well, your Honor.

15         THE COURT:  All right.

16         MR. TRALINS:  Your Honor, consistent with the

17   Court's ruling, the other problem that I know is there is

18   that because Mr. O'Neill has published a form notice of

19   appeal that's on his website.  Like I said, I saw before the

20   hearing, and in the afternoon's mail we got another one

21   today.  There are 46 people who have filed what they, I guess

22   believe are notices of appeal, rather than proofs of claim,

23   and there's no doubt in that they're time barred with the

24   appeal --

25         THE COURT:  Mm-hmm.

1        MR. TRALINS:  -- and I'm concerned about their

2   reliance and representation on the website that they have a

3   right to appeal when they do not.

4        THE COURT:  Well, I won't deal with that, but I

5   think that those 46 should specifically be addressed in a new

6   notice advising them that the deadline has been extended, but

7   has not affected by any appeal until or unless an appeal

8   order is signed.  There's been no stay pending appeal.  So

9   that they should file their claims within the new deadline.

10       MR. TRALINS:  Your Honor, there's one other matter.

11  Bruce?

12       MR. JAMESON:  Your Honor, Bruce Jameson from

13  Prickett, Jones, and this is really housekeeping and it has

14  to do with getting this over to the District Court.

15       We filed on March -- I guess 6th -- a motion to

16  dismiss the appeal and also to transfer the record over to

17  the District Court to hear our motion to dismiss, because we

18  believe the appeal is not timely.

19       THE COURT:  Right.

20       MR. JAMESON:  I talked to the Clerk's Office last

21  week who advised me they were waiting for instructions from

22  the Court to transfer it over.  So it's really a logistical

23  question since the Court has now ruled that the motion to

24  extend time should also be heard by the District Court, and

25  there should be no additional designations I think since the

32

1   extension of time is to make those designations, my question

2   is:  Do I need to submit a form of order to the Court or how

3   should I follow-up to get that file transferred over to the

4   District Court?

5   THE COURT:  Follow-up with the clerk, and I will,

6   myself -- nobody's asked me for instructions.

7   MR. JAMESON:  Okay.

8   THE COURT:  So, but I will orally tell them that it

9   should be -- any motion to dismiss the appeal should be sent

10   to the District Court.

11   MR. JAMESON:  Thank you, your Honor.

12   MR. O'NEILL:  Your Honor, I've got one more item

13   believe it or not.

14   When we were here the last time, Mr. Tralins forgot

15   to bring up that EPFF, the three members of named plaintiffs,

16   with concurrence had an agreement with me that I was going to

17   get compensated for all the work I've done throughout the

18   years.  And he did not include that as part of his expenses

19   and I have never been compensated for all my work.

20   THE COURT:  I don't recall this.

21   MR. TRALINS:  The only issue before the Court in

22   terms of what the Court had jurisdiction over was the award

23   -- the requested award for class plaintiff compensation.

24   THE COURT:  Mm-hmm.

25   MR. TRALINS:  I have -- it's in the minutes of the

1   Eastern Pilots for Fairness, Not for Profit Corporation, and

2   it's been something that's been consistent all along, and

3   that is that corporation has had volunteer work for 11 years

4   and it needs to make its own internal business decisions how

5   and under -- and what it wants to do for the people that have

6   put in a tremendous amount of time and effort.

7          Mr. O'Neill is one of those people, and put in a

8   substantial amount of time, and I'm certain that the

9   corporation will address that appropriately.  It's just not

10  -- it's not an issue for the Court.  It's an issue that's

11  internal to the operation of that corporation.

12         THE COURT:  Yeah, why is it before me?

13         MR. TRALINS:  I'm not sure.

14         MR. O'NEILL:  I just brought it up, ma'am, because

15  the main plaintiffs basically came to this Court, and I

16  recognize some that were -- a lot of them had 1700 shares,

17  but at no time the main plaintiffs -- included the people

18  that have done a lot of work.  And in reality, I've done most

19  of the work.  The reason why we're here today is because I

20  did the work.

21         THE COURT:  Well, I'll let you address that with the

22  organization.

23         MR. O'NEILL:  But --

24         THE COURT:  But it's not before me.

25         All right.  I'll look for a formal order from you,

34

1   Mr. Brady.

2           MR. BRADY:  Yes, your Honor.

3           THE COURT:  All right.  We'll stand adjourned then.

4           (Court adjourned at this time.)

5                           -  -  -

## CERTIFICATION

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_Geraldine C. Laws_                    6/11/02
Geraldine C. Laws, CET                      Date
Laws Transcription Service

# EXHIBIT
# J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al.. | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | |
| INC., | ) | |
| | ) | |
| Appellees. | ) | |

## ORDER RE: DOCKET NO. 118

AND NOW, the Court having considered the Motion Of Continental To Enforce

Compliance With Court Order (the "Motion") And Objection Of Continental To Request For

Extension Of Deadline From Rule 8006 (the "Objection") dated March 4, 2002 [Docket No. 118;

and the Court having considered the responses filed by Ramon E. O'Neill ("O'Neill") [Docket

Nos. 153 and 164] and the joinder filed by the LPP Class Action Plaintiffs [Docket No. 152] and

all related pleadings; and a hearing having been held on April 2. 2002 (the "Hearing"); and for the reasons stated by the Court on the record at the Hearing, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that absent further order of this Court or an appellate court, O'Neill is bound by the terms of the Court's Final Judgment and Order of Dismissal, dated January 31, 2002, a copy of which is attached hereto as Exhibit A (the "Final Judgment"), and specifically O'Neill and anyone acting on his behalf or at his direction are enjoined from commencing, instituting or prosecuting any action or other proceeding in any court of law or equity, arbitration tribunal or administrative or other forum against Continental as to any of the Settled Claims as that term is defined in the Final Judgment; and it is further

ORDERED, that O'Neill and anyone acting on his behalf or at his direction is prohibited from attempting to cause any LPP class member to forgo their right to participate in the class action settlement by advising them they have a current right to appeal the Final Judgment and/or that they have a current right to join an arbitration for enforcement of the labor protective provisions against Continental; and it is further

ORDERED, that pursuant to Bankruptcy Rule 8011, O'Neill's Request For Extension Of Deadline From Rule 8006 and Continental's Objection thereto are properly considered by the District Court.

Dated: Wilmington, Delaware
~~April~~, 2002
May 2

Mary F. Walrath
United States Bankruptcy Judge

2

# EXHIBIT

# K

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al., | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | re: Docket No. 169 |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' OBJECTION TO MOTION FOR FINDING
THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE
MEMBERS OF THE CLASS, FOR ENTRY OF ORDER
REQUIRING CAL TO FUND SETTLEMENT FOR NEW
CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

The above-captioned defendants ("Continental") hereby object to the Motion of

the LPP Class Action Plaintiffs (the "Motion") for (i) a finding that 226[1] "newly identified"

former Eastern Airlines ("EAL") pilots listed on Exhibit A to the Motion are members of the

---

[1] The Motion seeks to include 256 people in the class. Continental has located individual proofs of claim filed by approximately 30 of these people and, therefore, has no objection to their inclusion.

257
6-2-02

class certified herein (the "Proposed New Members") and (ii) certain related relief, and in support respectfully represent as follows:

<div align="center">

**PRELIMINARY STATEMENT**

</div>

1.     The so-called "New Members" that are the subject of the Plaintiffs' Motion are neither "newly identified" nor are they properly members of the certified class. Plaintiffs' counsel has previously raised the issue of whether to include in the class certain non-settling former EAL pilots that were allegedly covered under a proof of claim filed by the Air Line Pilots Association ("ALPA"), but who did not file individual proofs of claim, and it was rejected by Continental. The basis for Continental's position is that when ALPA released and withdrew its proof of claim as part of its settlement with Continental, each ALPA member was advised in writing that if they opted-out of the settlement and failed to individually file a proof of claim, they would be barred from seeking any individual LPP relief against Continental, absent a court order. Since that time (April 1994), none of the Proposed New Members have sought relief to file an individual proof of claim or participated in these bankruptcy proceedings in any way. Accordingly, the Proposed New Members do not meet the requirements for class membership and are not entitled to participate in the class action settlement.

<div align="center">

**BACKGROUND**

</div>

2.     On February 3, 2000, this Court entered its Opinion On Motion For Class Certification, and a copy of which is attached hereto as Exhibit A (the "Class Certification Opinion"). In its Class Certification Opinion, the Court found that the class consists of "all Eastern Airlines flight deck employees (a) who are entitled to the benefits of the collective bargaining agreement (the "CBA") between Eastern Airlines and Air Lines Pilots Association in

<div align="center">

2

</div>

effect at the time that Eastern Airlines allegedly merged with Continental; (b) who filed a timely claim in these proceedings for enforcement of the labor protection privileges ("LPPs") embodied in the CBA; and (c) who did not settle, waive or relinquish his or her LPP claim with Continental." Class Certification Opinion at p. 2.

3.    The Plaintiffs subsequently filed a motion for an order clarifying the method of identifying class members (the "Motion To Clarify") after a dispute arose between the parties over the interpretation of the phrase *"who filed a timely claim"* in the class definition.   In their Motion to Clarify, Plaintiffs specifically raised the issue of whether former EAL pilots covered under the ALPA proof of claim should be part of the class.  After significant discussion, the parties agreed not only on a modified class definition as set forth in the Court's July 10, 2001 Order Granting Class Action Plaintiffs' Motion To Clarify Method Of Identifying Class Members (the "Class Clarification Order"), a copy of which is attached as Exhibit B, but ultimately on a list of eligible class members which was subsequently filed with the Court.  The list was *critical* to Continental because the parties were working towards a settlement of the class action.  Since there were limited reserves available from which to pay creditors, Continental did not believe that it or its creditors (including the Post-Effective Date Committee) could form a reasoned judgment about the propriety of any settlement until all interested parties understood the total size of the class.

4.    As a result of this process, the parties mutually identified 583 LPP Class Action Plaintiffs and a final settlement was reached awarding each of those claimants an allowed general unsecured Class 13 claim of $110,000.  At the preliminary settlement hearing conducted on November 16, 2001, the Court requested that both the Plaintiffs and Continental submit

3

affidavits describing how the list of class members was created.   A copy of the Mr. Tralins'

Affidavit for Plaintiffs is attached hereto as Exhibit C and Ms. Smith's Affidavit for Continental

is attached hereto as Exhibit D.  While both affidavits very clearly indicate that all ALPA

members who accepted the ALPA settlement were deleted from the list, neither affidavit includes

in the class those ALPA members who opted-out of the settlement, but did not timely file an

individual proof of claim.

      5.     Indeed, Mr. Tralins' Affidavit, which confirms that he cross-checked the

list against "Eastern Airlines pre-IAM strike seniority list" and "Eastern's November 1990

seniority list", expressly provides that he believes the list (which does not include the Proposed

New Members) is **"a complete and accurate list of all eligible members of the class in this**

**proceeding."**  Tralins' Affidavit at p. 3 (emphasis supplied).  While it is true that both Plaintiffs

and Continental have since determined that certain additions and deletions to the list are

warranted[2], it is not likely that Plaintiffs completely "missed" 226 people.  Moreover, the Smith

Affidavit states that the list was derived from the official claims register in these cases

identifying individual LPP claims.  Smith Affidavit, p.2, ¶ 3(a).

      6.     Notwithstanding the foregoing, and after the class action settlement was

approved by the Court and fully-funded by Continental, Plaintiffs bring their Motion to add the

Proposed New Members utilizing a procedure in the settlement order that was intended for use

by individuals who believed they should be included in the class (not the Plaintiffs who had

already verified the accuracy of the class list).

---

[2]     Since the list was created, Continental has discovered approximately 90 people that properly filed individual LPP claims and, therefore, should be included in the class.  Continental is waiting for Plaintiffs to confirm that the inclusion of these people in the class is acceptable.  As stated earlier, approximately 30 of the people on Continentals' list are also on Plaintiffs' list attached to the Motion.

7.    Plaintiffs raise two arguments as to why the Proposed New Members should be part of the class: (i) since Continental agreed that these former EAL pilots were eligible to participate in the ALPA settlement as a result of being covered by the ALPA proof of claim, Continental cannot now argue that their "claims" were not timely filed, and (ii) the Court's order approving the ALPA settlement provided that those who opted-out of the settlement could continue to pursue their LPP claims against Continental. As set forth below, neither argument is valid and therefore the Motion must be denied.

## OBJECTION

8.    It is undisputed that as part of its settlement with Continental, ALPA waived, released, withdrew and dismissed all of its claims against Continental. ALPA Settlement , pp. 9-10, §§ 8 and 9.[3] The question then is what happened to those eligible ALPA members who opted-out of the settlement. The release provisions of the settlement agreement are quite clear: ALPA's release "shall have no effect at all on (1) any claims or rights of **any pilot who has filed a claim for such in the Delaware Bankruptcy Proceedings** and does not participate in this Settlement Agreement... ". ALPA Settlement at p. 9, § 8(B) (emphasis supplied). ALPA's release and withdrawal of its proof of claim, however, most definitely impacted those pilots that had not filed an **individual** proof of claim in the bankruptcy case and the effect on "nonparticipating pilots" was made very clear to the ALPA members while they considered the settlement.

---

[3]    A copy of the ALPA settlement is attached as Exhibit B to Plaintiffs' Motion.

5

9.      On April 12, 1994, ALPA sent a letter to its members advising them of the terms of the settlement with Continental.   A copy of the letter is attached hereto as Exhibit E.  In addition to urging its members to accept the settlement, ALPA made the following points:

> Under the settlement agreement, ALPA and Continental (and its corporate affiliates) agree to waive all claims that they currently maintain or may maintain against each other. (p.4)

> In addition, the Association agrees that it will provide no support or assistance, direct or indirect, to any former Eastern pilot who seeks to pursue claims against Continental. (p.4)

> If you decline to participate (and if the settlement becomes effective), you are free to litigate an LPP claim against Continental on your own or through your personal representative provided that you had filed a timely individual LPP claim against Continental in the Continental bankruptcy proceeding. (p. 5)

> Pilots who failed to file such individual claims are likely barred from seeking any individual LPP relief against Continental absent a court order. (p. 5)

Thus, Plaintiffs' assertions in their Motion that Continental's position that ALPA members who did not accept the settlement and did not timely file an individual proof of claim would not be entitled to participate in distributions under the plan is (i) "inconsistent", (ii) "new", (iii) "not logical or a fair expression of the spirit and intent of [ALPA Settlement]" and (iv) "made to defeat the claims of the newly discovered Class Action Plaintiffs" are just plain wrong. Continental's position was fully disclosed to ALPA members and without objection from ALPA.  Most importantly, however, is that none of the Proposed New Members have ever filed or attempted to file an individual proof of claim and/or participate in these bankruptcy proceedings since opting-out of the settlement.

10.     Moreover, Judge Balick's order approving the ALPA settlement is not inconsistent with Continental's position.   Those ALPA members who chose not to participate in

6

the ALPA settlement and who timely filed individual proofs of claim <u>did</u> retain their LPP claims and Continental settled those claims as part of this class action adversary proceeding. ALPA appropriately warned its members who had not filed individual proofs of claim that if they did not accept the ALPA Settlement they would be barred from recovering on their LPP Claims. There is nothing in the Court's order that authorizes the opt-out pilots to individually pursue the proof of claim filed and withdrawn by ALPA. Indeed, in response to the objections filed to the settlement, Judge Balick specifically found that "[t]he Court does not have authority to re-make the settlement upon a plan suggested by objecting pilots." Order at p. 2.

11.    Finally, with respect to the related relief requested by the Motion, since the Proposed New Members are not properly part of the class, there is no reason to extend the deadline by which they must accept the class action settlement[4]. Continental has and will agree to a limited extension of the bar date for those people that the parties have <u>mutually</u> agreed are properly part of the class so that proper notice is given and those claimants have sufficient time to review and complete the necessary paperwork.

## CONCLUSION

12.    The Continental Bankruptcy has been pending since December 3, 1990 (almost 12 years). Both before and since confirming its chapter 11 plan and going effective in April 1993, Continental has worked diligently to resolve the more than 40,000 proofs of claim

---

[4]    The parties previously agreed that the June 3, 2002 bar date would be extended until June 30, 2002 only with respect to the 256 people identified in Plaintiffs' motion and the approximately 90 additional people identified by Continental. The bar date has already expired with respect to all others.

filed against the various debtors. The vast majority of allowed creditors received their initial

distribution under the plan in late 1993 and have been waiting since then for a determination of

whether there will be a final distribution and, if so, in what amount.   It would be patently unfair

to the allowed creditors of Continental who have waited a very long time for the claims

resolution process to conclude to grant these Proposed New Members each an $110,000 claim in

this bankruptcy proceeding when they have taken no steps whatsoever to pursue an individual

LPP claim against Continental.   Even now, it is not the individuals requesting class membership,

but Plaintiffs' counsel.  These former EAL pilots were clearly advised of the result if they did not

accept the ALPA settlement and by opting-out and not seeking leave to file an individual claim,

they effectively relinquished any claim against the Debtors.  It would be unfair for Plaintiffs or

this Court to grant them a windfall.

WHEREFORE, Continental respectfully requests that this Court deny the Motion

and grant Continental such other and further relief as may be necessary.

Dated: June 7, 2002
Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Robert S. Brady (No. 2847)
1000 West Street
The Brandywine Building, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorney for Continental

8

# EXHIBIT

# L

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) |
| <u>et al</u>., | ) Case Nos. 90-932 through |
| | ) 90-984-MFW |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| BROWNIE NORWOOD INMAN, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) C.A. No. 02-399-SLR |
| | ) C.A. No. 02-490-SLR |
| JAMES BALDRIDGE, WILLIAM | ) |
| MANN and LARRY DUNN, | ) |
| individually and as | ) |
| representatives of a class | ) |
| of persons similarly situated | ) |
| who are referred to as LPP | ) |
| CLAIMANTS, | ) |
| | ) |
| Appellees. | ) |

**MEMORANDUM ORDER**

At Wilmington this 31st day of March, 2003, having reviewed appellees' motions to dismiss the above captioned appeals and the papers submitted in connection therewith;

IT IS ORDERED that said motions (02-399/D.I. 10; 02-490/D.I. 5) are granted, for the reasons that follow:

1.   **Standard of Review.**  This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a).  In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's

legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991)(citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

　　2. **Background.** The underlying dispute has a long and convoluted procedural history. On February 23, 1986, Eastern Airline ("Eastern") and its pilots' union, the Air Lines Pilot Association ("ALPA"), ratified a collective bargaining agreement. On February 24, 1986, Texas Air Corporation, the parent of Continental Airlines, Inc. ("Continental"), acquired Eastern. ALPA asserted that the acquisition was a merger requiring integration of the Eastern and Continental pilots' seniority lists under Eastern's collective bargaining agreement. When

2

Eastern and Continental refused to bargain with ALPA on the
issue, ALPA initiated arbitration.

3.  In March 1989, Eastern filed for protection under
chapter 11 of the Bankruptcy Code and asserted that the automatic
stay precluded ALPA from proceeding with the arbitration.  After
protracted litigation, the Court of Appeals for the Second
Circuit held that the automatic stay did not preclude
arbitration.  In re Ionosphere Clubs, Inc., 922 F.2d 984 (2d Cir.
1990).  ALPA and Eastern thereafter proceeded with arbitration,
during which ALPA sought prospective integration of the Eastern
and Continental pilots' seniority lists and back pay until the
integration was completed.

4.  Continental filed for protection under chapter 11 of the
Bankruptcy Code in December 1990.  ALPA (and certain individual
Eastern pilots) filed unliquidated proofs of claim in that
proceeding.  Continental filed objections and sought a
declaration that the claims were general unsecured prepetition
dischargeable claims compensable by an award of monetary damages.
ALPA disagreed and asserted that the pilots were entitled to
specific performance of the collective bargaining agreement,
namely, seniority integration.  In addition, ALPA asserted that
only the arbitrator had jurisdiction to determine whether a
merger had occurred as defined by the collective bargaining

3

agreement.[1]

5.   The United States Court of Appeals for the Third Circuit
ultimately held "that any claim based on an award of seniority
integration arising out of the resolution of the [labor
arbitration] dispute will be treated as a claim in bankruptcy
giving rise to a right of payment.  As such, the right to
seniority integration is satisfiable by the payment of money
damages."   In re Continental Airlines, 125 F.3d 120, 136 (3d Cir.
1997).   The Third Circuit prefaced its holding with the following
language:

> We take care to note the boundaries of our
> holding.  It is not our purpose to suggest
> the award the arbitrator should grant, if
> an award is warranted upon disposition of
> the [labor arbitration] dispute.  Our holding
> is limited to how the claims should be
> treated in bankruptcy.

Id. at 136.  In other words, the Third Circuit, in its 1997
decision, determined the proper forum (arbitration) for
resolution of the pilots' substantive rights (whether they have
seniority integration rights), while maintaining the bankruptcy
court's jurisdiction to determine the "manner in which the

---

[1]On October 12, 1999, James Baldridge, William Mann and
Larry Dunn, individually and as the representatives of a number
of former Eastern pilots (referred to as the "LPP Claimants"
since 1991), filed an adversary proceeding against Continental.
By order dated February 3, 2000 and amended July 10, 2001, the
bankruptcy court certified a non-opt out class that included
appellant (the "Baldridge LPP Class").  Appellant did not object
to entry of the class certification order nor did he seek an
appeal from that order.

[claims] in bankruptcy would be treated if a right to seniority integration is established." Id. at 131, n. 8.[2]

6.  By order dated October 12, 2000, the bankruptcy court granted summary judgment to Continental, finding that, if the Eastern pilots established their right to seniority integration in arbitration, each of the pilots' claims would be treated as a general unsecured prepetition claim and that the value of each such claim for payment purposes would be limited to one year's wages pursuant to Rule 502(b)(7).  (Bk. Case No. 90-932, D.I. 46)

7.  Although appellant did not file an individual appeal from that order, an appeal from this order was filed by the "Baldridge LPP Class Action" plaintiffs.

8.  On or about November 26, 2001, a settlement notice was sent to each member of the "Baldridge LPP Class," including appellant.  (D.I. 1, attachment at Ex. A)  After a hearing, the bankruptcy court entered an order on January 31, 2002 (the "Settlement Order") approving a settlement (the "Settlement Agreement") between the Baldridge LPP Class (appellees herein)

_____

[2]Despite the Third Circuit's ruling, a group of dissatisfied Eastern pilots thereafter filed a lawsuit in the United States District Court for the District of New Jersey seeking enforcement of their collective bargaining rights outside the arbitration proceeding.  That lawsuit was transferred to this court and thereafter dismissed.  Eastern Pilots Merger Committee v. Continental Airlines, C.A. No. 99-795-SLR (D. Del. September 12, 2000), aff'd, 279 F.3d 226 (3d Cir. 2002), cert. denied, __ U.S. __, 123 S. Ct. 345 (2002).

and Continental, whereby:

a. The bankruptcy court dismissed "on the merits with prejudice. . . any and all claims, actions, requests for relief or causes of action alleged in the Baldrige class action complaint by plaintiffs and the members of the class as to all Defendants." (D.I. 1, attachment at Ex. A, ¶ 5)

b. The Class Representatives "shall be deemed to have released and forever discharged each and every Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Released Parties." (Id. at ¶ 6)

c. Class Counsel, on behalf of the Class Representatives and the Class, "shall file a dismissal with the clerk of the United States District Court for the District of Delaware of the Baldridge LPP Class Action plaintiffs' pending appeal of the October 12, 2000 Order and Opinion of [the bankruptcy court]. (Id. at ¶ 7)

d. Class counsel, on behalf of the Class Representatives and the Class, "shall withdraw its Demand for LPP Arbitration filed with the National Mediation Board in March 1998." (Id. at ¶ 8)

e. "[T]he Class Representatives and all of the Members of the Class and anyone claiming through any of them will be forever barred and enjoined from commencing, instituting or

6

prosecuting any action or other proceeding in any court of law or equity, arbitration tribunal or administrative or other forum directly, representatively or derivatively against any of the Released Parties as to any of the Settled Claims." (<u>Id</u>. at ¶ 9)

 f. As the court understands the terms of the settlement, the Class members should receive under the settlement "a claim value two to three and one-half times one year's wages. . . ." (D.I. 29 at ¶ 3)

 9. **Analysis of the merits.** In his appeal, appellant essentially argues that the Baldridge LPP Class does not have the authority to enter into an agreement with Continental "that overrides the September 29, 1997, Third Circuit Court of Appeals decision." (D.I. 25, ¶ 15) Appellant characterizes the September 29, 1997 decision as holding "that the rights of individual pilots to pursue their claims for seniority integration would be an issue folding within to the exclusive jurisdiction of an arbitrator selected in accordance of Section 13(a) of the Labor Protective Provisions." (D.I. 25, ¶ 13)

 10. Appellant's reading of the Third Circuit's decision is legally incorrect, as is abundantly clear from the procedural history recited above. The Third Circuit limited the scope of the arbitrable question to be whether the Eastern pilots have established seniority integration rights. The Third Circuit further determined that if those rights were established, they

would be satisfiable by the payment of money damages. The
bankruptcy court limited the amount of money damages to one
year's wages. The Settlement Agreement at issue increased the
maximum claim award by two- or three- fold. Appellant did not
individually appeal from the class certification order or from
the summary judgment order of the bankruptcy court. The
Settlement Agreement moots the arbitration proceeding by
recognizing the Eastern pilots' claims to seniority integration
and gives to members of the Baldridge LPP Class more value than
that provided for in the bankruptcy court's summary judgment
decision.

11. **Mootness.** Not only is appellant's position untenable,
but the appeal is moot, given the withdrawal of the pending
appeals and the distribution of consideration to class members,
acts in furtherance of the settlement which cannot be undone.

12. **Timeliness.** The bankruptcy court entered its final
judgment and order of dismissal on January 31, 2002. The
deadline for a notice of appeal from the settlement order was
Monday, February 11, 2002, pursuant to Rule 8002 of the Federal
Rules of Bankruptcy Procedure. Appellant filed his notice of
appeal on February 21, 2002.

13. **Conclusion.** For the reasons stated above, the motions
to dismiss are granted; the January 31, 2002 Settlement Order
entered by the bankruptcy court is affirmed and the appeal

8

dismissed.[3]


<div align="right">
<u>      Sue L. Robinson     </u>
United States District Judge
</div>

---

[3]To convolute the procedural history of this dispute even further, the sole appellant to actually appear at the settlement hearing in order to formally object to the terms of the settlement was Ramon E. O'Neill. Mr. O'Neill appealed the Settlement Order to this court in C.A. No. 02-375-SLR. A series of "joinders" in that appeal were filed by numerous other individuals. On May 2, 2002, the bankruptcy judge entered an order which, in effect, directed Mr. O'Neill (and only Mr. O'Neill) to comply with the terms of the Settlement Order (the "Compliance Order"). Mr. O'Neill appealed the Compliance Order to this court in C.A. No. 02-479-SLR. Although various of the other appellants who joined with Mr. O'Neill in his appeal from the Settlement Order also appealed from the Compliance Order, they lack standing to do so because the Compliance Order was directed only to Mr. O'Neill. In any event, the Compliance Order appeal has been mooted by the resolution of the Settlement Order appeal.

# EXHIBIT

# M

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) |
| <u>et al.</u>, | ) Case Nos. 90-932 through |
| | ) 90-984-MFW |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| J. TRIGG ADAMS, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) C.A. No. 02-484-SLR |
| | ) |
| JAMES BALDRIDGE, WILLIAM | ) |
| MANN and LARRY DUNN, | ) |
| individually and as | ) |
| representatives of a class | ) |
| of persons similarly situated | ) |
| who are referred to as LPP | ) |
| CLAIMANTS, | ) |
| | ) |
| Appellees. | ) |

**MEMORANDUM ORDER**

At Wilmington this 31st day of March, 2003, having reviewed
appellees' motion to dismiss the above captioned appeal and the
papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 4) is granted, for the
reasons that follow:

1. **Standard of Review.** This court has jurisdiction to hear
an appeal from the bankruptcy court pursuant to 28 U.S.C. §
158(a). In undertaking a review of the issues on appeal, the
court applies a clearly erroneous standard to the bankruptcy
court's findings of fact and a plenary standard to that court's

legal conclusions.  See Am. Flint Glass Workers Union v. Anchor
Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  With mixed
questions of law and fact, the court must accept the bankruptcy
court's "finding of historical or narrative facts unless clearly
erroneous, but exercise[s] 'plenary review of the [bankruptcy]
court's choice and interpretation of legal precepts and its
application of those precepts to the historical facts.'"  Mellon
Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d
Cir. 1991)(citing Universal Minerals, Inc. v. C.A. Hughes & Co.,
669 F.2d 98, 101-02 (3d Cir. 1981)).  The district court's
appellate responsibilities are further informed by the directive
of the United States Court of Appeals for the Third Circuit,
which effectively reviews on a de novo basis bankruptcy court
opinions.  In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In
re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

    2.  **Background.**  The underlying dispute has a long and
convoluted procedural history.  On February 23, 1986, Eastern
Airline ("Eastern") and its pilots' union, the Air Lines Pilot
Association ("ALPA"), ratified a collective bargaining agreement.
On February 24, 1986, Texas Air Corporation, the parent of
Continental Airlines, Inc. ("Continental"), acquired Eastern.
ALPA asserted that the acquisition was a merger requiring
integration of the Eastern and Continental pilots' seniority
lists under Eastern's collective bargaining agreement.  When

2

Eastern and Continental refused to bargain with ALPA on the issue, ALPA initiated arbitration.

3.  In March 1989, Eastern filed for protection under chapter 11 of the Bankruptcy Code and asserted that the automatic stay precluded ALPA from proceeding with the arbitration.  After protracted litigation, the Court of Appeals for the Second Circuit held that the automatic stay did not preclude arbitration.  <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984 (2d Cir. 1990).  ALPA and Eastern thereafter proceeded with arbitration, during which ALPA sought prospective integration of the Eastern and Continental pilots' seniority lists and back pay until the integration was completed.

4.  Continental filed for protection under chapter 11 of the Bankruptcy Code in December 1990.  ALPA (and certain individual Eastern pilots) filed unliquidated proofs of claim in that proceeding.  Continental filed objections and sought a declaration that the claims were general unsecured prepetition dischargeable claims compensable by an award of monetary damages. ALPA disagreed and asserted that the pilots were entitled to specific performance of the collective bargaining agreement, namely, seniority integration.  In addition, ALPA asserted that only the arbitrator had jurisdiction to determine whether a merger had occurred as defined by the collective bargaining

3

agreement.[1]

    5.  The United States Court of Appeals for the Third Circuit
ultimately held "that any claim based on an award of seniority
integration arising out of the resolution of the [labor
arbitration] dispute will be treated as a claim in bankruptcy
giving rise to a right of payment. As such, the right to
seniority integration is satisfiable by the payment of money
damages." In re Continental Airlines, 125 F.3d 120, 136 (3d Cir.
1997). The Third Circuit prefaced its holding with the following
language:

>   We take care to note the boundaries of our
>   holding. It is not our purpose to suggest
>   the award the arbitrator should grant, if
>   an award is warranted upon disposition of
>   the [labor arbitration] dispute. Our holding
>   is limited to how the claims should be
>   treated in bankruptcy.

Id. at 136. In other words, the Third Circuit, in its 1997
decision, determined the proper forum (arbitration) for
resolution of the pilots' substantive rights (whether they have
seniority integration rights), while maintaining the bankruptcy
court's jurisdiction to determine the "manner in which the

---

[1]On October 12, 1999, James Baldridge, William Mann and
Larry Dunn, individually and as the representatives of a number
of former Eastern pilots (referred to as the "LPP Claimants"
since 1991), filed an adversary proceeding against Continental.
By order dated February 3, 2000 and amended July 10, 2001, the
bankruptcy court certified a non-opt out class that included
appellant (the "Baldridge LPP Class"). Appellant did not object
to entry of the class certification order nor did he seek an
appeal from that order.

[claims] in bankruptcy would be treated if a right to seniority integration is established." Id. at 131, n. 8.[2]

6. By order dated October 12, 2000, the bankruptcy court granted summary judgment to Continental, finding that, if the Eastern pilots established their right to seniority integration in arbitration, each of the pilots' claims would be treated as a general unsecured prepetition claim and that the value of each such claim for payment purposes would be limited to one year's wages pursuant to Rule 502(b)(7). (Bk. Case No. 90-932, D.I. 46)

7. Although appellant did not file an individual appeal from that order, an appeal from this order was filed by the "Baldridge LPP Class Action" plaintiffs.

8. On or about November 26, 2001, a settlement notice was sent to each member of the "Baldridge LPP Class," including appellant. (D.I. 1, attachment at Ex. A) After a hearing, the bankruptcy court entered an order on January 31, 2002 (the "Settlement Order") approving a settlement (the "Settlement Agreement") between the Baldridge LPP Class (appellees herein)

---

[2]Despite the Third Circuit's ruling, a group of dissatisfied Eastern pilots thereafter filed a lawsuit in the United States District Court for the District of New Jersey seeking enforcement of their collective bargaining rights outside the arbitration proceeding. That lawsuit was transferred to this court and thereafter dismissed. Eastern Pilots Merger Committee v. Continental Airlines, C.A. No. 99-795-SLR (D. Del. September 12, 2000), aff'd, 279 F.3d 226 (3d Cir. 2002), cert. denied, __ U.S. __, 123 S. Ct. 345 (2002).

and Continental, whereby:

      a.  The bankruptcy court dismissed "on the merits with prejudice. . . any and all claims, actions, requests for relief or causes of action alleged in the Baldrige class action complaint by plaintiffs and the members of the class as to all Defendants." (D.I. 1, attachment at Ex. A, ¶ 5)

      b.  The Class Representatives "shall be deemed to have released and forever discharged each and every Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Released Parties." (Id. at ¶ 6)

      c.  Class Counsel, on behalf of the Class Representatives and the Class, "shall file a dismissal with the clerk of the United States District Court for the District of Delaware of the Baldridge LPP Class Action plaintiffs' pending appeal of the October 12, 2000 Order and Opinion of [the bankruptcy court]. (Id. at ¶ 7)

      d.  Class counsel, on behalf of the Class Representatives and the Class, "shall withdraw its Demand for LPP Arbitration filed with the National Mediation Board in March 1998." (Id. at ¶ 8)

      e.  "[T]he Class Representatives and all of the Members of the Class and anyone claiming through any of them will be forever barred and enjoined from commencing, instituting or

6

prosecuting any action or other proceeding in any court of law or
equity, arbitration tribunal or administrative or other forum
directly, representatively or derivatively against any of the
Released Parties as to any of the Settled Claims." (<u>Id</u>. at ¶ 9)

      f.  As the court understands the terms of the
settlement, the Class members should receive under the settlement
"a claim value two to three and one-half times one year's wages.
. . ." (D.I. 29 at ¶ 3)

    9.  **Analysis of the merits.**  In his appeal, appellant
essentially argues that the Baldridge LPP Class does not have the
authority to enter into an agreement with Continental "that
overrides the September 29, 1997, Third Circuit Court of Appeals
decision." (D.I. 25, ¶ 15)  Appellant characterizes the
September 29, 1997 decision as holding "that the rights of
individual pilots to pursue their claims for seniority
integration would be an issue folding within to the exclusive
jurisdiction of an arbitrator selected in accordance of Section
13(a) of the Labor Protective Provisions." (D.I. 25, ¶ 13)

    10.  Appellant's reading of the Third Circuit's decision is
legally incorrect, as is abundantly clear from the procedural
history recited above.  The Third Circuit limited the scope of
the arbitrable question to be whether the Eastern pilots have
established seniority integration rights.  The Third Circuit
further determined that if those rights were established, they

would be satisfiable by the payment of money damages.  The
bankruptcy court limited the amount of money damages to one
year's wages.  The Settlement Agreement at issue increased the
maximum claim award by two- or three- fold.  Appellant did not
individually appeal from the class certification order or from
the summary judgment order of the bankruptcy court.  The
Settlement Agreement moots the arbitration proceeding by
recognizing the Eastern pilots' claims to seniority integration
and gives to members of the Baldridge LPP Class more value than
that provided for in the bankruptcy court's summary judgment
decision.

    11.  **Mootness**.  Not only is appellant's position untenable,
but the appeal is moot, given the withdrawal of the pending
appeals and the distribution of consideration to class members,
acts in furtherance of the settlement which cannot be undone.

    12.  **Conclusion**.  For the reasons stated above, the motion
to dismiss is granted; the January 31, 2002 Settlement Order of

8

the bankruptcy court is affirmed and the appeal dismissed.[3]


                                  _____Sue L. Robinson_____
                                  United States District Judge

_____

[3]To convolute the procedural history of this dispute even
further, the sole appellant to actually appear at the settlement
hearing in order to formally object to the terms of the
settlement was Ramon E. O'Neill.  Mr. O'Neill appealed the
Settlement Order to this court in C.A. No. 02-375-SLR.  A series
of "joinders" in that appeal were filed by numerous other
individuals.  On May 2, 2002, the bankruptcy judge entered an
order which, in effect, directed Mr. O'Neill (and only Mr.
O'Neill) to comply with the terms of the Settlement Order (the
"Compliance Order").  Mr. O'Neill appealed the Compliance Order
to this court in C.A. No. 02-479-SLR.  Although various of the
other appellants who joined with Mr. O'Neill in his appeal from
the Settlement Order also appealed from the Compliance Order,
they lack standing to do so because the Compliance Order was
directed only to Mr. O'Neill.  In any event, the Compliance Order
appeal has been mooted by the resolution of the Settlement Order
appeal.

# EXHIBIT

# N

**UNREPORTED- NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-2376

IN RE: CONTINENTAL AIRLINES INC. ET AL,

Debtor

J. TRIGG ADAMS

v.

JAMES BALDRIDGE; WILLIAM MANN; LARRY DUNN, individually
and as representatives of a class of persons similarly
situated who are referred to as LLP CLAIMANTS

UNITED STATES TRUSTEE

J. Trigg Adams,
Appellant

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civ. No. 02-CV-00484)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)

March 5, 2004

Before:   Sloviter, Nygaard, and Chertoff, Circuit Judges.

(Filed March 17, 2004 )

---

OPINION

---

PER CURIAM

J. Trigg Adams, a pilot formerly employed by Eastern Airlines, Inc., appeals from

an order of the United States District Court for the District of Delaware, affirming the

final judgment and order of dismissal of an adversary proceeding in the Continental

Airlines, Inc. bankruptcy.  We will affirm.

As we write for the parties, we need not set forth the complete procedural and

factual history of the case.  The history is set forth in detail in In re Continental Airlines,

125 F.3d 120, 124-28 (3d Cir. 1997) ("Continental I").  In that case, we held that the

question of whether there had been a "merger" between Continental and Eastern under

the terms of the collective bargaining agreement, and thus whether LPP Claimants[1] had

standing to maintain an individual claim for seniority integration was a matter for

arbitration, and that the District Court properly vacated an injunction against arbitration.

Continental I, 125 F.3d at 130, 137-38.  We also held that "any claim based on an award

---

[1] "'LPP Claimants' refers to a group of former Eastern pilots [including Adams]
whose claims in this appeal are based on certain 'labor protective provisions' (LPPs)
contained in the collective bargaining agreement." Continental I, 125 F.3d at 124 n.1.

2

of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment." Id. at 136.

Following Continental I, Continental took the position that any seniority integration right acknowledged in arbitration would be subject to the limitations of Bankruptcy Code Section 502(b)(7), 11 U.S.C. § 502(b)(7), and would thus be limited to one year's back pay based on Continental's pay structure as of January 1991. An attorney for the LPP claimants agreed to bring a declaratory judgment action in the Bankruptcy Court to determine whether § 502(b)(7) applied, and requested class certification for the action. On February 3, 2000, the Bankruptcy Court certified the class under Fed. R. Civ. P. Rule 23(b)(2), and it later determined that § 502(b)(7) applied. Based on that finding, the LPP claimants agreed to settle with Continental, with each class member to receive a prepetition general unsecured claim in the amount of $110,000.[2] Continental represented that this amount would be substantially more than the claimants would receive under § 502(b)(7)'s one-year cap.

In November of 2001, Adams filed an objection to a proposed amendment of the order granting class certification, and an objection to the plaintiffs' motion for preliminary approval of the proposed settlement. On January 31, 2002, the Bankruptcy Court held a hearing on the petition to approve the settlement. The Bankruptcy Court

---

[2] Although the Class initially appealed the declaratory judgment decision, following settlement, a stipulation for dismissal of the appeal was filed on February 19, 2002 and approved by the District Court on February 20, 2002.

3

approved the settlement, finding it to be "in all respects, fair, reasonable and adequate to the Class." Appellees' App. at 223. Without seeking a stay of the implementation of the settlement order, Adams appealed to the District Court.

After motions and briefs were filed in the District Court, the Court entered an order dated March 31, 2003, which affirmed the Bankruptcy Court's settlement order, found the Settlement Order appeal moot, and granted the appellees' motions to dismiss. This timely appeal followed.[3]

Adams' appeal is based on his contention that Continental perpetrated a fraud on the court by failing to disclose the "Ross arbitration," whereby former People Express pilots, some of whom were on Eastern's pilot seniority list, were integrated into Continental's work force, while all other Eastern pilots were precluded from a specific performance award. Adams argues that due to this new evidence, Continental I should be overturned. Adams also argues that his right to arbitration was not extinguished by the settlement. In the course of these arguments, Adams argues that he was not properly represented by class counsel.

Continental argues (and the class representative appellees make similar arguments) that Adams cannot argue that there is any basis for relief on appeal because he failed to appeal the Bankruptcy Court's order granting class certification, and he failed to appeal

---

[3] One day before Adams filed his Notice of Appeal, the District Court denied his request for rehearing en banc. Although Adams' Notice of Appeal does not mention this order, he does state his intent to appeal the order in his informal brief. We hold that the District Court did not abuse its discretion in denying the motion for rehearing.

4

the Bankruptcy Court's order finding that any claim would be capped by Bankruptcy Code § 502(b)(7). The appellees also agree that Adams' appeal is moot.

We turn first to the issue of mootness, because, if a case is constitutionally moot, we lack power to hear it. United Artists Theatre Co. v. Walton, 315 F.3d 217, 226 (3d Cir. 2003). A case is constitutionally moot only if the court cannot fashion any form of meaningful relief. In re Continental Airlines, Inc., 91 F.3d 553, 558 (3d Cir. 1996) (en banc), cert. denied, 519 U.S. 1057 (1997). We do not find the case to be constitutionally moot. If we were to find that the settlement in this case was unfair to the class, we cannot say that there would be no possible relief for the Appellant.

The District Court's holding that Adams' appeal was moot may refer to equitable mootness, a doctrine which "prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." Nordhoff Investments, Inc. v. Zenith Electronics Corp., 258 F.3d 180, 185 (3d Cir. 2001).[4] The equitable mootness inquiry "is a more limited

---

[4] To determine whether an appeal is equitably moot, the court examines five factors:

> (1) whether the reorganization plan has been substantially consummated,
> (2) whether a stay has been obtained,
> (3) whether the relief requested would affect the rights of the parties not before the court,
> (4) whether the relief requested would affect the success of the plan, and
> (5) the public policy of affording finality to bankruptcy judgments.

In re: Continental Airlines, Inc., 91 F.3d at 560.

5

inquiry into whether, though we have the power to hear a case, the equities weigh against upsetting a bankruptcy plan that has already been confirmed." United Artists, 315 F.3d at 226. Particularly significant here is the fact that Adams did not obtain a stay of the settlement confirmation. See In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir.1993) (party who appeals without protection of stay does so at his own risk). However, we decline to engage in a complete analysis of whether the appeal is equitably moot. Rather, we will, like the District Court, affirm the Settlement Order on the merits.

We review a district court's decision to approve a proposed settlement of a class action for an abuse of discretion. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). We likewise review a court's grant of class certification under an abuse of discretion standard. Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 165-66 (3d Cir. 2001). Appellees argue that Adams cannot challenge the class certification, as he did not file an appeal of the order certifying the class. However, we hold that to the extent Adams objected to the class certification in the bankruptcy court, he preserved his right to object to the certification on appeal. In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261-62 (10th Cir. 2004).

Adams' objection to the class certification was based on his contention that the class was underinclusive. However, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definitions to file a claim by April 3, 2002. Thus, his only objections to the class

6

certification were remedied by the Bankruptcy Court.

Adams' main argument on appeal is that this Court should overturn <u>Continental I</u> and the settlement agreement because Continental failed to disclose the Ross arbitration in its bankruptcy.[5] The Bankruptcy Court noted that the Ross arbitration decision dealt with former Peoples Express pilots; and, while they may have been Eastern pilots at some point, the award was based on the Peoples Express merger. Appellees' App. at 177. Adams has not represented that he was a former Peoples Express pilot. Thus, he is not entitled to the same treatment as those pilots.

Adams argues that the settlement is not fair, because it ignores his right to arbitration. Given our previous holding that any claim based on an award of seniority integration would be satisfied by a monetary claim in bankruptcy, the Bankruptcy Court's holding that any such claim would be limited to one-year's salary pursuant to § 502(b)(7),[6] and the fact that the settlement provided two to three and one-half times the one-year cap for every class member, we hold that the Bankruptcy Court did not abuse its discretion in finding that the settlement was fair.

Finally, Adams argues that his right to arbitration survives the settlement. We

---

[5] Continental declined to discuss this issue in its brief "because matters relating to the so-called 'Ross Arbitration' are not contained in the record on appeal . . . ." Brief at 14. We note that the Ross arbitration was discussed at length in the settlement fairness hearing, and thus find that it is the proper subject of appeal.

[6] As Appellees note, we cannot reach the merits of whether the Bankruptcy Court correctly found that § 502(b)(7) applied, as no party preserved a timely appeal to that final decision.

disagree. If Adams were to return to arbitration, the arbitrator might recognize his right to seniority integration under the LPPs. However, any amount awarded by the arbitrator would be subject to § 502(b)(7)'s cap, and would be less than he can recover under the settlement. Any relief awarded by the arbitrator would be meaningless; thus, Adams' right to arbitration has been mooted by the settlement.

For the foregoing reasons, we will affirm.

8

# EXHIBIT

# O

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) |
| <u>et al.</u>, | ) Case Nos. 90-932 through |
| | ) 90-984-MFW |
| Debtors. | ) |
| _____ | ) Jointly Administered |
| | ) |
| RAMON E. O'NEILL, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) C.A. No. 02-375-SLR |
| | ) C.A. No. 02-479-SLR |
| JAMES BALDRIDGE, WILLIAM | ) |
| MANN and LARRY DUNN, | ) |
| individually and as | ) |
| representatives of a class | ) |
| of persons similarly situated | ) |
| who are referred to as LPP | ) |
| CLAIMANTS, | ) |
| | ) |
| Appellees. | ) |

**MEMORANDUM ORDER**

At Wilmington this 31st day of March, 2003, having reviewed

appellees' motions to dismiss the above captioned appeals and the

papers submitted in connection therewith;

IT IS ORDERED that said motions (02-375/D.I. 27; 02-479/D.I.

6) are granted, for the reasons that follow:

1. **Standard of Review.**  This court has jurisdiction to hear

an appeal from the bankruptcy court pursuant to 28 U.S.C. §

158(a).  In undertaking a review of the issues on appeal, the

court applies a clearly erroneous standard to the bankruptcy

court's findings of fact and a plenary standard to that court's

legal conclusions.  See Am. Flint Glass Workers Union v. Anchor
Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  With mixed
questions of law and fact, the court must accept the bankruptcy
court's "finding of historical or narrative facts unless clearly
erroneous, but exercise[s] 'plenary review of the [bankruptcy]
court's choice and interpretation of legal precepts and its
application of those precepts to the historical facts.'"  Mellon
Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d
Cir. 1991)(citing Universal Minerals, Inc. v. C.A. Hughes & Co.,
669 F.2d 98, 101-02 (3d Cir. 1981)).  The district court's
appellate responsibilities are further informed by the directive
of the United States Court of Appeals for the Third Circuit,
which effectively reviews on a de novo basis bankruptcy court
opinions.  In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In
re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

   2.  **Background.**  The underlying dispute has a long and
convoluted procedural history.  On February 23, 1986, Eastern
Airline ("Eastern") and its pilots' union, the Air Lines Pilot
Association ("ALPA"), ratified a collective bargaining agreement.
On February 24, 1986, Texas Air Corporation, the parent of
Continental Airlines, Inc. ("Continental"), acquired Eastern.
ALPA asserted that the acquisition was a merger requiring
integration of the Eastern and Continental pilots' seniority
lists under Eastern's collective bargaining agreement.  When

2

Eastern and Continental refused to bargain with ALPA on the
issue, ALPA initiated arbitration.

3.    In March 1989, Eastern filed for protection under
chapter 11 of the Bankruptcy Code and asserted that the automatic
stay precluded ALPA from proceeding with the arbitration.    After
protracted litigation, the Court of Appeals for the Second
Circuit held that the automatic stay did not preclude
arbitration.    In re Ionosphere Clubs, Inc., 922 F.2d 984 (2d Cir.
1990).    ALPA and Eastern thereafter proceeded with arbitration,
during which ALPA sought prospective integration of the Eastern
and Continental pilots' seniority lists and back pay until the
integration was completed.

4.    Continental filed for protection under chapter 11 of the
Bankruptcy Code in December 1990.    ALPA (and certain individual
Eastern pilots) filed unliquidated proofs of claim in that
proceeding.    Continental filed objections and sought a
declaration that the claims were general unsecured prepetition
dischargeable claims compensable by an award of monetary damages.
ALPA disagreed and asserted that the pilots were entitled to
specific performance of the collective bargaining agreement,
namely, seniority integration.    In addition, ALPA asserted that
only the arbitrator had jurisdiction to determine whether a
merger had occurred as defined by the collective bargaining

3

agreement.[1]

5.   The United States Court of Appeals for the Third Circuit ultimately held "that any claim based on an award of seniority integration arising out of the resolution of the [labor arbitration] dispute will be treated as a claim in bankruptcy giving rise to a right of payment. As such, the right to seniority integration is satisfiable by the payment of money damages." In re Continental Airlines, 125 F.3d 120, 136 (3d Cir. 1997). The Third Circuit prefaced its holding with the following language:

> We take care to note the boundaries of our holding. It is not our purpose to suggest the award the arbitrator should grant, if an award is warranted upon disposition of the [labor arbitration] dispute. Our holding is limited to how the claims should be treated in bankruptcy.

Id. at 136. In other words, the Third Circuit, in its 1997 decision, determined the proper forum (arbitration) for resolution of the pilots' substantive rights (whether they have seniority integration rights), while maintaining the bankruptcy court's jurisdiction to determine the "manner in which the

---

[1]On October 12, 1999, James Baldridge, William Mann and Larry Dunn, individually and as the representatives of a number of former Eastern pilots (referred to as the "LPP Claimants" since 1991), filed an adversary proceeding against Continental. By order dated February 3, 2000 and amended July 10, 2001, the bankruptcy court certified a non-opt out class that included appellant (the "Baldridge LPP Class"). Appellant did not object to entry of the class certification order nor did he seek an appeal from that order.

[claims] in bankruptcy would be treated if a right to seniority integration is established." Id. at 131, n. 8.[2]

6.  By order dated October 12, 2000, the bankruptcy court granted summary judgment to Continental, finding that, if the Eastern pilots established their right to seniority integration in arbitration, each of the pilots' claims would be treated as a general unsecured prepetition claim and that the value of each such claim for payment purposes would be limited to one year's wages pursuant to Rule 502(b)(7).  (Bk. Case No. 90-932, D.I. 46)

7.  Although appellant did not file an individual appeal from that order, an appeal from this order was filed by the "Baldridge LPP Class Action" plaintiffs.

8.  On or about November 26, 2001, a settlement notice was sent to each member of the "Baldridge LPP Class," including appellant.  (D.I. 1, attachment at Ex. A)  After a hearing, the bankruptcy court entered an order on January 31, 2002 (the "Settlement Order") approving a settlement (the "Settlement Agreement") between the Baldridge LPP Class (appellees herein)

---

[2]Despite the Third Circuit's ruling, a group of dissatisfied Eastern pilots thereafter filed a lawsuit in the United States District Court for the District of New Jersey seeking enforcement of their collective bargaining rights outside the arbitration proceeding.  That lawsuit was transferred to this court and thereafter dismissed.  Eastern Pilots Merger Committee v. Continental Airlines, C.A. No. 99-795-SLR (D. Del. September 12, 2000), aff'd, 279 F.3d 226 (3d Cir. 2002), cert. denied, __ U.S. __, 123 S. Ct. 345 (2002).

5

and Continental, whereby:

a.   The bankruptcy court dismissed "on the merits with prejudice. . . . any and all claims, actions, requests for relief or causes of action alleged in the Baldrige class action complaint by plaintiffs and the members of the class as to all Defendants."  (D.I. 1, attachment at Ex. A, ¶ 5)

b.   The Class Representatives "shall be deemed to have released and forever discharged each and every Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Released Parties."  (Id. at ¶ 6)

c.   Class Counsel, on behalf of the Class Representatives and the Class, "shall file a dismissal with the clerk of the United States District Court for the District of Delaware of the Baldridge LPP Class Action plaintiffs' pending appeal of the October 12, 2000 Order and Opinion of [the bankruptcy court].  (Id. at ¶ 7)

d.   Class counsel, on behalf of the Class Representatives and the Class, "shall withdraw its Demand for LPP Arbitration filed with the National Mediation Board in March 1998."  (Id. at ¶ 8)

e.   "[T]he Class Representatives and all of the Members of the Class and anyone claiming through any of them will be forever barred and enjoined from commencing, instituting or

6

prosecuting any action or other proceeding in any court of law or equity, arbitration tribunal or administrative or other forum directly, representatively or derivatively against any of the Released Parties as to any of the Settled Claims." (<u>Id</u>. at ¶ 9)

   f.  As the court understands the terms of the settlement, the Class members should receive under the settlement "a claim value two to three and one-half times one year's wages. . . ." (D.I. 29 at ¶ 3)

  9.  **Analysis of the merits.**  In his appeal, appellant essentially argues that the Baldridge LPP Class does not have the authority to enter into an agreement with Continental "that overrides the September 29, 1997, Third Circuit Court of Appeals decision." (D.I. 25, ¶ 15)  Appellant characterizes the September 29, 1997 decision as holding "that the rights of individual pilots to pursue their claims for seniority integration would be an issue folding within to the exclusive jurisdiction of an arbitrator selected in accordance of Section 13(a) of the Labor Protective Provisions." (D.I. 25, ¶ 13)

  10.  Appellant's reading of the Third Circuit's decision is legally incorrect, as is abundantly clear from the procedural history recited above.  The Third Circuit limited the scope of the arbitrable question to be whether the Eastern pilots have established seniority integration rights.  The Third Circuit further determined that if those rights were established, they

<center>7</center>

would be satisfiable by the payment of money damages.  The
bankruptcy court limited the amount of money damages to one
year's wages.  The Settlement Agreement at issue increased the
maximum claim award by two- or three- fold.  Appellant did not
individually appeal from the class certification order or from
the summary judgment order of the bankruptcy court.  The
Settlement Agreement moots the arbitration proceeding by
recognizing the Eastern pilots' claims to seniority integration
and gives to members of the Baldridge LPP Class more value than
that provided for in the bankruptcy court's summary judgment
decision.

11.  **Mootness.**  Not only is appellant's position untenable,
but the appeal is moot, given the withdrawal of the pending
appeals and the distribution of consideration to class members,
acts in furtherance of the settlement which cannot be undone.

12.  **Conclusion.**  For the reasons stated above, the motions
to dismiss are granted; the January 31, 2002 Settlement Order

8

entered by the bankruptcy court is affirmed and the appeal
dismissed.[3]


                                   _____Sue L. Robinson_____
                                   United States District Judge


---

[3]To convolute the procedural history of this dispute even
further, the sole appellant to actually appear at the settlement
hearing in order to formally object to the terms of the
settlement was Ramon E. O'Neill.  Mr. O'Neill appealed the
Settlement Order to this court in C.A. No. 02-375-SLR.  A series
of "joinders" in that appeal were filed by numerous other
individuals.  On May 2, 2002, the bankruptcy judge entered an
order which, in effect, directed Mr. O'Neill (and only Mr.
O'Neill) to comply with the terms of the Settlement Order (the
"Compliance Order").  Mr. O'Neill appealed the Compliance Order
to this court in C.A. No. 02-479-SLR.  Although various of the
other appellants who joined with Mr. O'Neill in his appeal from
the Settlement Order also appealed from the Compliance Order,
they lack standing to do so because the Compliance Order was
directed only to Mr. O'Neill.  In any event, the Compliance Order
appeal has been mooted by the resolution of the Settlement Order
appeal.

# EXHIBIT

# P

**UNREPORTED- NOT PRECEDENTIAL**

FILED

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

78?? MAR 10  PM 1: 22

'.'. CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

NO. 03-2374 and 03-2375

IN RE: CONTINENTAL AIRLINES INC., ET AL,

Debtor

RAMON E. O'NEILL

v.

JAMES BALDRIDGE; WILLIAM MANN; LARRY DUNN, individually
and as representatives of a class of persons similarly
situated who are referred to as LLP CLAIMANTS

UNITED STATES TRUSTEE

Ramon E. O'Neill,

Appellant

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civ. Nos. 02-CV-00375 and 02-CV-00479)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)

March 5, 2004

Before:   Sloviter, Nygaard, and Chertoff, Circuit Judges.

(Filed March 9, 2004)

---

OPINION

---

PER CURIAM

Ramon O'Neill, a pilot formerly employed by Eastern Airlines, Inc., appeals from an order of the United States District Court for the District of Delaware, affirming the final judgment and order of dismissal of an adversary proceeding in the Continental Airlines, Inc. bankruptcy. We will affirm.

As we write for the parties, we need not set forth the complete procedural and factual history of the case. The history is set forth in detail in In re Continental Airlines, 125 F.3d 120, 124-28 (3d Cir. 1997) ("Continental I"). In that case, we held that the question of whether there had been a "merger" between Continental and Eastern under the terms of the collective bargaining agreement, and thus whether LPP Claimants[1] had standing to maintain an individual claim for seniority integration was a matter for arbitration, and that the District Court properly vacated an injunction against arbitration.

---

[1] "'LPP Claimants' refers to a group of former Eastern pilots [including O'Neill] whose claims in this appeal are based on certain 'labor protective provisions' (LPPs) contained in the collective bargaining agreement." Continental I, 125 F.3d at 124 n.1.

2

Continental I, 125 F.3d at 130, 137-38. We also held that "any claim based on an award of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment." Id. at 136.

Following Continental I, Continental took the position that any seniority integration right acknowledged in arbitration would be subject to the limitations of Bankruptcy Code Section 502(b)(7), 11 U.S.C. § 502(b)(7), and would thus be limited to one year's back pay based on Continental's pay structure as of January 1991. An attorney for the LPP claimants agreed to bring a declaratory judgment action in the Bankruptcy Court to determine whether § 502(b)(7) applied, and requested class certification for the action. The Bankruptcy Court certified the class under Fed. R. Civ. P. Rule 23(b)(2), and later determined that § 502(b)(7) applied. Based on that finding, the LPP claimants agreed to settle with Continental, with each class member to receive a prepetition general unsecured claim in the amount of $110,000.[2] Continental represented that this amount would be substantially more than the claimants would receive under § 502(b)(7)'s one-year cap.

On January 31, 2002, the Bankruptcy Court held a hearing on a petition to approve the settlement. O'Neill was the sole class member to appear at the hearing to object to the settlement terms. The Bankruptcy Court approved the settlement, finding it to be "in all

_____

[2] Although the Class initially appealed the declaratory judgment decision, following settlement, a stipulation for dismissal of the appeal was filed on February 19, 2002 and approved by the District Court on February 20, 2002.

3

respects, fair, reasonable and adequate to the Class." Appellees' App. at 223.  Without

seeking a stay of the implementation of the settlement order, O'Neill appealed to the

District Court.  The appeal was docketed in the District Court at 02-CV-00375 ("the

Settlement Order appeal").  On March 6, 2002, Continental filed a motion to compel

O'Neill to comply with the settlement order.  The Bankruptcy Court entered an order

granting the motion on May 2, 2002.  O'Neill's appeal from that order was docketed in

the District Court at 02-CV-00479 (the "Compliance Order appeal").

After motions and briefs were filed in the District Court, the Court entered an

order on April 1, 2003, captioned with both district court docket numbers, which affirmed

the Bankruptcy Court's settlement order, found the Settlement Order appeal moot, and

granted the appellees' motions to dismiss.  The Court also held that the Compliance Order

appeal was mooted by the resolution of the Settlement Order appeal.  This timely appeal

followed.[3]

O'Neill's appeal appears to raise three main points.  First, he argues that

Continental perpetrated a fraud on the court by failing to disclose the "Ross arbitration,"

whereby former People Express pilots, some of whom were on Eastern's pilot seniority

list, were integrated into Continental's work force, while all other Eastern pilots were

precluded from a specific performance award.  O'Neill appears to argue that due to this

---

[3] On the same day that O'Neill filed his Notice of Appeal, the District Court denied his
request for rehearing en banc.  Although O'Neill's Notice of Appeal does not mention
this order, to the extent that he intended to appeal that order, we hold that the District
Court did not abuse its discretion in denying the motion for rehearing.

4



new evidence, <u>Continental I</u> should be overturned. Second, O'Neill argues that the settlement was not fair, as the $110,000 does not cover his last year's compensation. Third, O'Neill argues that his right to arbitration was not extinguished by the settlement. In the course of these arguments, O'Neill seems to argue that he was not properly represented by class counsel.

Continental argues (and the class representative appellees make similar arguments) that O'Neill cannot argue that there is any basis for relief on appeal because he failed to appeal the Bankruptcy Court's order granting class certification, and he failed to appeal the Bankruptcy Court's order finding that any claim would be capped by Bankruptcy Code § 502(b)(7). The appellees also agree that O'Neill's appeal is moot.

We turn first to the issue of mootness, because, if a case is constitutionally moot, we lack power to hear it. <u>United Artists Theatre Co. v. Walton</u>, 315 F.3d 217, 226 (3d Cir. 2003). A case is constitutionally moot only if the court cannot fashion any form of meaningful relief. <u>In re Continental Airlines, Inc.</u>, 91 F.3d 553, 558 (3d Cir. 1996) (en banc), <u>cert. denied</u>, 519 U.S. 1057 (1997). We do not find the case to be constitutionally moot. If we were to find that the settlement in this case was unfair to the class, we cannot say that there would be no possible relief for the Appellant.

The District Court's holding that O'Neill's appeal was moot may refer to equitable mootness; a doctrine which "prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became

5



extremely difficult to retract." Nordhoff Investments, Inc. v. Zenith Electronics Corp., 258 F.3d 180, 185 (3d Cir. 2001).[4] The equitable mootness inquiry "is a more limited inquiry into whether, though we have the power to hear a case, the equities weigh against upsetting a bankruptcy plan that has already been confirmed." United Artists, 315 F.3d at 226. Particularly significant here is the fact that O'Neill did not obtain a stay of the settlement confirmation. See In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir.1993) (party who appeals without protection of stay does so at his own risk). However, we decline to engage in a complete analysis of whether the appeal is equitably moot. Rather, we will, like the District Court, affirm the Settlement Order on the merits.

We review a district court's decision to approve a proposed settlement of a class action for an abuse of discretion. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). We likewise review a court's grant of class certification under an abuse of discretion standard. Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 165-66 (3d Cir. 2001). Appellees argue that O'Neill cannot challenge the class certification, as he

---

[4] To determine whether an appeal is equitably moot, the court examines five factors:

    (1) whether the reorganization plan has been substantially consummated,
    (2) whether a stay has been obtained,
    (3) whether the relief requested would affect the rights of the parties not
    before the court,
    (4) whether the relief requested would affect the success of the plan, and
    (5) the public policy of affording finality to bankruptcy judgments.

In re: Continental Airlines, Inc., 91 F.3d at 560.

6



did not file an appeal of the order certifying the class. However, we hold that to the extent he objected to the class certification at the settlement hearing, he preserved his right to object to the certification on appeal. In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261-62 (10th Cir. 2004).

O'Neill did object to the class certification at the hearing, but he only objected to the extent that he felt the class was underinclusive, as it failed to include certain pilots, including those pilots who were parties to the Ross arbitration. This is related to O'Neill's first major point: that this Court should overturn Continental I and the settlement agreement because Continental failed to disclose the Ross arbitration in its bankruptcy.[5] The Bankruptcy Court noted that the Ross arbitration decision dealt with former Peoples Express pilots; and, while they may have been Eastern pilots at some point, the arbitration award was based on the Peoples Express merger. Appellees' App. at 177. O'Neill appears to argue that the former Peoples Express pilots should be members of the present class; and that if they were, he would be entitled to a specific performance award so that all class members would be treated equally. O'Neill has not represented that he was a former Peoples Express pilot. Thus, he is not entitled to the same treatment as those pilots. Further, his argument fails as this Court has already limited class members' relief to money damages. Continental I, 125 F.3d at 136.

---

[5] Continental declined to discuss this issue in its brief "because matters relating to the so-called 'Ross Arbitration' are not contained in the record on appeal . . . ." Brief at 14. We note that the Ross arbitration was discussed at length in the settlement fairness hearing, and thus find that it is the proper subject of appeal.

7



To the extent that O'Neill argued that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definitions to file a claim by April 3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy Court.

O'Neill's second argument is that the settlement is not fair. Given our previous holding that any claim based on an award of seniority integration would be satisfied by a monetary claim in bankruptcy, the Bankruptcy Court's holding that any such claim would be limited to one-year's salary pursuant to § 502(b)(7),[6] and the fact that the settlement provided two to three and one-half times the one-year cap for every class member, we hold that the Bankruptcy Court did not abuse its discretion in finding that the settlement was fair. O'Neill argues on appeal that the $110,000 settlement amount does not cover his last year's compensation. O'Neill argument appears to be based on his salary at Eastern, rather than what his salary would have been at Continental. As class counsel pointed out at the fairness hearing, even if an arbitrator found that O'Neill's seniority had been preserved through the LPPs, his position would have been subject to Continental's pay structure. Appellees' App. at 185. O'Neill conceded in the fairness hearing that the maximum Continental salary was $64,000. Appellees' App. at 187. Thus, the $110,000

---

[6] As Appellees note, we cannot reach the merits of whether the Bankruptcy Court correctly found that § 502(b)(7) applied, as no party preserved a timely appeal to that final decision.

8



exceeds any amount he could have recovered in arbitration, as the amount would be subject to the cap of § 502(b)(7).

Finally, O'Neill argues that his right to arbitration survives the settlement. We disagree. If O'Neill were to return to arbitration, the arbitrator might recognize his right to seniority integration under the LPPs. However, any amount awarded by the arbitrator would be subject to § 502(b)(7)'s cap and would be less than he can recover under the settlement. Any relief awarded by the arbitrator would be meaningless; thus, O'Neill's right to arbitration has been mooted by the settlement.

For the foregoing reasons, we will affirm.

9



# EXHIBIT

# Q

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Case No. 03-2374
Case No. 03-2375

RECEIVED JUN 0 4 2003

IN RE: CONTINENTAL AIRLINES INC., ET AL,

Debtor

---

| | |
|---|---|
| RAMON E. O'NEILL | }Chapter 11 |
| | } |
| Appellant | }Bankruptcy Case No. 90-932 |
| | ] through 90-984 WFW |
| | } |
| V. | } Jointly Administered |
| | } |
| | } |
| JAMES BALDRIDGE; WILLIAM MANN; | }C.A. No. 02-375 SLR |
| LARRY DUNN; individually and as representative of a | }C.A. No. 02-479 SLR |
| Class of persons similarly situated who are referred to as | } |
| LPP CLAIMANTS | } |
| | } |
| | } |
| Appellees. | } |

---

## MOTION OF PRODUTION OF DOCUMENTS FROM
## CONTINENTAL AIRLINES

### Background

1.    Continental has been accused of fraudulent conduct during the period of

February 24, 1986 to present.

2.    Continental has avoided compliance with 45 U. S. C. The Railway Labor Act

('RLA") and the unrejected Eastern Pilots Collective Bargaining Agreement

("CBA") utilizing the Bankruptcy Court proceedings and now this Settlement Agreement in dispute.

3.   On numerous occasions during the Continental bankruptcy proceedings the Bankruptcy Court was made aware of the fraudulent conduct of the debtor. The Bankruptcy Court has totally ignored the issue.

4.   During the Fairness Hearing for this disputed Settlement Agreement held on January 31, 2002, irrefutable evidence of Continental fraudulent behavior was introduced in the Bankruptcy Court proceedings. The evidence consist of an arbitration conducted during the time period of the current Continental bankruptcy proceedings. This arbitration is known as the Ross arbitration. This arbitration was concluded on August 13, 1991, nine months after Continental's bankruptcy filing of December 3, 1990.

5.   The Ross arbitration merged Eastern Air Lines Pilots on Eastern Air Lines Pilots Master Seniority list into Continental Airlines Master Seniority list awarding these selected Eastern pilots full specific performance as provided by the Labor Protective Provisions ('LPP") contain in the Eastern CBA.

6.   As stated on page 58 of the Ross arbitration **(EXHIBIT #1) "Because the CAL pilots hired after April 1987 were hired for the benefit of Eastern and not Continental, it would be unfair to place them ahead of the FMRs. Aside from the constructive notice these CAL new hires had in 1987, these pilots remain at Continental solely due to attrition and voluntary leaves"** Continental hired these pilots as possible replacement pilots in case of a strike at Eastern. On March 4, 1989, Continental as a condition of continued employment offered these pilots

jobs at Eastern. On March 6, 1989 the first group of replacement pilots were hired at Eastern and as a condition of employment at Eastern they had to resign to their seniority rights at Continental.

7.  As stated on page 64 of the Ross arbitration **(EXHIBIT #1)** " **In this regard , it would be particularly inequitable to elevate the CAL pilots hired after April 1987 as potential strike replacements for Eastern, as they were surplus to Continental's operational needs.**" Continental had secretly merged the Eastern replacement pilots in light of the pending Kasher arbitration between the Eastern pilots and Continental. Continental knowing that these Eastern pilots where at the bottom of Eastern pilots seniority list, Continental decide to protect these pilots and even awarded them full LPP protection as contain in the CBA until arbitrator Ross identified some of these replacement Eastern pilots.

8.  For example, Mr. Robert Benson shows as a new hire Eastern pilot on Eastern Master Seniority list on 03-06-89, seniority number 3698. **(EXHIBIT #2)** In order to protect Mr. Benson, Continental merged Mr. Benson with a date of hire of 04-24-81. With such a hired date Mr. Benson would be able to continue his career as a Captain at Continental. **(EXHIBIT #3)**

9.  The Ross arbitration not only merged Eastern pilots into Continental Airlines but also merged People Express, New York Air and Frontier Airlines pilots. The Ross arbitration also points out that the commonality of the pilot groups merged was that these pilots were not unionized.

10.  The Eastern pilots merged at Continental were secretly merged not complying with the RLA. Continental merged these Eastern pilots as payment for their strike

3

breaking activities at Eastern. Continental knew that these Eastern pilots will not pursue any union representation, but Continental still covered them under the Eastern CBA and the LPP rights contained within.

11.    The RLA at 45 U.S.C. 152 third and 152 fourth prohibits such conduct.
Continental obligations under the RLA was to participate in an arbitration which included all Eastern pilots and not a selected few Eastern pilots. Continental merged the selected few Eastern pilots and the afore mentioned pilot groups avoiding union representation.

12.    Continental behavior toward the Eastern pilots and union representation was first documented on a video tape of the Quarterly Pilot Meeting for Continental pilots held in Houston, Texas on December 2, 1986.

13.    Internal memos during the period of September 11, 1987 to May 26, 1993 also reflect this fraudulent behavior. **(EXHIBIT #4)**

**Petition**

14..    The Ross arbitration establishes irrefutable evidence of Continental's fraudulent behavior during the bankruptcy proceedings.

15.    Continental not only violated the RLA 45 U. S. C. at 151, 152 third and 152 fourth, but also lied to the Bankruptcy Court during the Confirmation Order.

16.    Continental deceive this Court during the period of November 1995 to Present. It led this Court to believe that the merging of Eastern pilots into Continental was not feasible. It led this Court to believe that the merging of Eastern pilots into Continental will create a moral dilemma and would be to costly. Continental

4

never informed this Court of the merging of the selected Eastern pilots and the moral dilemma at Continental in place as narrated by the Ross arbitration. Continental has manipulated the courts to cover their fraudulent acts.

17.   The following documents are being requested from Continental so it will complete the story of the Ross arbitration, a document already submitted and used as evidence by the Bankruptcy and District Court.

      a.   Video tape of the Quarterly Pilot Meeting held in Houston , Texas, for pilots of Continental Airlines on December 2, 1986.

      b.   Any notes, video tapes, memoranda, statements, transcripts, minutes which discuss ,refer or relate to the strategy of avoiding the merging of Eastern pilots to continental in order to prevent union representation of pilots at Continental.

      c.   Any notes, video tapes, memoranda, statements, transcripts, minutes which discuss, refer or relate to the merging of Eastern pilots to Continental as prescribed in the Ross arbitration. To include the names of the pilots, date of hire at Eastern Airlines, transfer dates to Continental, respective position at Eastern's seniority list and transfer position at Continental Seniority list,  last equipment and seat position i.e. DC-10, B-727, Capt. F/O flown at Eastern and merged equipment and seat position at Continental, Gross income from the date of transfer to now.

      d.   Transcripts of depositions or any discovery material furnished by Continental to Myles Tralins, class counsel.

e.  Transcripts of depositions were Myles Tralins deposed any former

or current Continental officer.

**Conclusion**

18.  The RLA establishes a "mandatory arbitral mechanism to handle disputes

"growing out of grievances or out of the interpretation or application of

agreements concerning rates of pay, rules or working conditions'" *Norris* 512

U.S. at 248 (citing 45 U.S.C. 153 First (i)).

19.  An uncontested arbitration was concluded on August 13, 1991. As an Eastern

pilot I belong to that arbitration. The underline transaction between Eastern and

Continental was the purchase of the entire airline. The RLA dictates that the

that the entire Eastern Master Pilots Seniority List should be use in case of an

arbitration that merges any Eastern pilot.

20.  This request is no new evidence, the documents requested will complement and

give this Court a better picture of the evidence already on file on this appeal.

Ramon E. O'Neill

Appellant, Pro se

6

# EXHIBIT

# R

## IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., et. al<br>    Debtors | ) Chapter 11<br>)<br>)<br>) Case No. 90-932 |
| **Brownie N Inman**<br>Identified but not notified member of the class<br>of LPP CLAIMANTS, | )<br>) Adversary No. 99-412 (MFW)<br>) |
| v. | ) re: Docket No. 102 |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | ) |
| and | ) |
| CONTINENTAL AIRLINES, INC.<br>Debtor | ) |

*[stamp: JUL 1 1 2006]*

## MOTION OF OBJECTION TO THE CLASS ACTION PLAINTIFFS STIPULATIONS FOR MOTION TO REOPEN

1.    I, Brownie Inman, request this case be reopened, but object

to the motion of the representatives of the class for the following two

reasons:

    A.    The representatives of the class have totally ignored the

composition of the class, members of Eastern's flight deck collective

bargaining unit listed on the November 1990 Eastern's master seniority list

and therefore were included in the master Proof of Claim filed by ALPA

7|11|06

440

filed on behalf of all the Eastern pilots. Exception is those pilots who settled under the ALPA/ Continental settlement or withdrew their claims referred to as the Addington group.

B.    The representatives of the class not only as representatives but also as Directors of Eastern Pilots for Fairness (EPFF), a Florida corporation, have not made any efforts to notify the members of this class listed in the settlement, including dues paying members of EPFF.

## BACKGROUND

1.    James Baldridge, Bill Mann, and Larry Dunn as representatives of Eastern Pilots for Fairness (EPFF) and as "Class Action Plaintiffs" have not contacted or distributed assets to over one half of the former Easter Airline pilots identified by them as Eastern employees named on the November 1990 Eastern Pilots Seniority list, after four and one half years after the January 31, 2002 Bankruptcy Court order.    The Class Action Plaintiffs have not acted in good faith to represent the "class" or the organization (EPFF). They were elected over 13 years ago to be officers of EPFF for a one year interval, only.  They did not conduct an election for their replacements but did nothing and continued to act as though they were elected officers of EPFF. They were not (in accordance with the EPFF by-laws).  They did raise approximately $2,000,000 ($5000. from each EPFF

2

member) that was used to fund their efforts. There was plenty of money to conduct the suit, yet in 2002 they represented themselves in this Court as having used their own money and, therefore, were awarded a very substantial sum by the Bankruptcy Judge for their efforts (notwithstanding that they had usurped the EPFF organization and had negotiated a settlement which the membership would never have approved, ie., mandatory "class" status with a no-opt-out provision.).  As usual, they continue to usurp EPFF by not calling for an election but most telling- they don't seem to know how to or care to contact all "class" members (some of which are EPFF members like myself) and arrange for distribution of assets in compliance with the January 31,2002 Bankruptcy Court order.  Their legal representative and each of them should no longer be allowed to access any funds, stock or actions which lead to a conclusion of this legal endeavor.

2    This Court has behaved in this case as very good citizens of the State of Delaware enforcing public policy to favor Corporations in that State. Unfortunately the Judges are Federal Judges and Federal Law should reign rather than the stated public policy of that particular State.   This court would not allow arbitration of a "minor" labor dispute as mandated by Congress (1936 Railroad Labor Act) and affirmed subsequently by the US Supreme Court.  When this Court was advised in open session, that

3

arbitration was mandatory, this Court totally ignored the opinion of the

Third Circuit Court of appeals *In re Continental Airlines, Inc*. 125 F.3d 120

(3rd Cir. 1997).

3.     The Court alternatively placed members of the pilot group,

involuntarily, into an illegal "no-opt class" and imposed a judicial settlement

with the proviso that members of the class could not "opt-out" (refuse her

settlement). Such a settlement was never the will of Congress, which had

mandated arbitration for this and most other labor disagreements. This was

shocking and most indicative of the huge bias of this Court toward a

corporation vs "any other party".


## CONCLUSION

As previously stipulated to this Court by Continental in the

AFFIDAVIT OF EDNA SMITH, docket #72 paragraph 3a (**Exhibit 1**)

> *"I and those under my direct supervision and control reviewed the*
> *Official Claim Register maintained in these bankruptcy cases and identified*
> *any proof of claim that may have been filed by a former employee of Eastern*
> *Airlines who claimed they were entitled to the benefits of the collective*
> *bargaining agreement between Eastern Airlines and the Air Line Pilots*
> *Association (the "Eastern CBA") in effect at the time that Eastern Airlines*
> *allegedly merged with Continental Airlines Holding, Inc. This resulted in an*
> *initial list of more than 5,000 claims"*

The 5000 pilot claims number is consistent with the 4,894 pilots name in the

4

November 1990 Eastern Pilot's seniority list. **(Exhibit 2)**

Continental was the first to suggest the settlement which was subsequently approved by the Bankruptcy Judge. Imposition of "class" status for all pilots with a mandatory no-opt-out clause was required by Continental for settlement of the case. Continental, now, in good faith, after insisting on the terms of the settlement is not in a position to resist actions to notify the "class" members of the settlement and to provide the assets this Bankruptcy Court has ordered to be distributed. Continental should contact all "class" members itself as well as provide appropriate Eastern pilot employee lists including first, middle, and last names, last known addresses, social security numbers, etc. for EPFF or assigned "class" representatives to insure a proper notification and delivery of assets. Continental, having insisted upon and agreeing to the "class" settlement has supposedly passed beyond the adversary role. Now is the time to get the word out and insure Continental's integrity is not impugned by resistance to the notification of all "class" members and the distribution of assets it had proposed as fully accepted previously in open court.

This Court has not enforced its own order. This case was closed until very recently without a proper distribution of assets even to **selectively identified (selectively identified by Continental and the "class claimants**

5

**rather than using an official 1990 Eastern Airlines Pilot Seniority List. Eastern never published an alphabetical order seniority list. Many Pilots are being left out by Continental and the class representatives using "selectively identified" criteria) .** Over one thousand members of the eighteen hundred members of the class have not been contacted by the "parties" the judge ordered to implement her order. Million of dollars belonging to the **selectively identified** members of the "class" have been placed in the hands of the "parties" ( Class Counsel, Baldridge, Mann and Dunn, and Continental), who are trying to keep the assets to themselves by dragging out or failing to notify and distribute, hoping that with time it will all go away and this Court will settle for the status quo. Most members of the "class" even today (four and one half years later) do not know of their entitlement under the forced settlement.

This court can rectify this situation immediately by insisting that some highly responsible party (obviously **not** Class Counsel, Baldridge, Mann or .Dunn) to insure timely distribution of the assets. I believe that if the one thousand "class" members owed $10000 each to the "parties" that notification and collection of that money would be accomplished in minimum time. Yet the money should be going to those "class" members but "parties" just can't seem to find them. Intelligent airline Captains

6

(Baldridge, Mann, and Dunn) and a giant technologically and financially

capable corporation, **custodian of the Eastern Pilots flight records**

(Continental Airlines) just can't seem to find their former friends and

employees. Clearly, neither party is trying to find them. No class member

is going to refuse to accept the payment. Not one. Not ever. **They must be**

**protected by this court and be notified immediately.** Continental must be

required to provide necessary personnel lists and personnel information to

allow tracing of any individuals of the "class" who have not been contacted.

Return receipts are required to demonstrate and document that a good faith

effort was made to contact "class" members. A complete 1990 Eastern

Airline Pilot seniority list. Including first, middle and last names, known

addresses, social security numbers, employee numbers etc would be

required to be forwarded to all parties involved in this hearing, including

myself. Continental will surely be required to transfer more assets as more

"class" member are identified, found and accept the settlement. A date

should be established, I suggest April 1, 2007, as the deadline for

completion of notification of all class claimants and disbursement of assets.

This can be done efficiently and quickly even though considerable work is

required. The presiding judge should be available to monitor a progress

report from a responsible individual, on a monthly basis to insure all

7

"parties" are cooperating and are proceeding with all due haste. Included with this motion is the a portion of the last official Eastern Pilots seniority of which excerpts were recognized by Mr. Myles Tralins on the January 31, 2002 hearing and accepted by this Court. **(Exhibit 3)**

Continental and Class Representative have purposely omitted over 1000 pilots names using their **selectively identified** list. Continental not only was able to dispose of its obligations utilizing the second amended reorganization plan but now, in collusion with class representatives, Continental is being reluctant to recognize and fund the mutually agreed upon settlement and composition of the certified class.

## PETITION

1.     WHEREFORE, the class action plaintiffs acting in collusion with Continental have deliberately excluded over 1000 pilots from this class action settlement.

2.     WHEREFORE, in the process of exclusion all parties have perjured themselves and filed perjured statements with this Court: **Docket #70 Exhibit B, C, and D, paragraph 8 K** *"participating in preparing for and attending National mediation Board proceedings"*. The preparation for an arbitration proceeding dictates that only official Eastern pilots seniority list could be presented to the arbitrator, therefore class representatives always

8

had the official Eastern pilots seniority list. Instead, in collusion with

Continental, the parties have hid the official Eastern pilot's seniority list

from this Court.

3.    WHEREFORE, this Court allowed other class members who met the

definitions to file a claim by April 3, 2002. Class counsel rejected many of

them with the excuse that they were not in the selected list of claimants and

Continental had not provided funds for their claim.

4.    WHEREFORE, Mr. Jamenson could be more precise in addressing

the mess created by Mr. Tralins brother-in-law, an investor manager with

Morgan Stanley, as to how my stock and/or other members stock was not

placed under each claimant's social security number instead of being

commingled in mass with no accountability.

5.    I petition this Court the following:

> A.    That this case be reopened to professionally execute the
> original settlement of the court but not under the auspices of the
> class representatives or their counsel.

> B.    That this Court compel both parties to bring forward all
> claimants names and fully fund the accounts.

> C.    That both parties are recognized for their lack of
> motivation in informing the class members of the settlement
> and lack of motivation to distribute settlement funds.  That
> both parties be compelled to provide all information requested
> by the responsible individual who may be appointed by this

9

Court to inform all members of the class and to distribute settlement funds.

D.    That Continental provide, as stipulated above, the names of the pilots who participated in the ALPA settlement and the Addington Group as referred to in Continental affidavit , **docket #72 paragraph 3 c and d**; and any other pilot or group of pilots who have settled with Continental, especially those who have not been identified previously. This is required documentation for this litigation to come to a successful conclusion. Request that this information be made available to all objectors (including myself).

E.    That Class representatives as Directors of EPFF and as stipulated in their affidavits, **Docket #70 Exhibit B, C, and D, paragraph 8 f,** *"fund raising"*, should provide the true cost of this litigation. The settlement agreement provides for reimbursement of all legal costs. We the members of EPFF, approximately 400, contributed an average of $5,200 each for this effort, approximately $2,000,000.00. Class counsel only submitted $95,000.00 in expenses to this Court. A full reimbursement should be ordered by this Court . These monies should be used to appropriately reimburse the individual members of EPFF, who have faithfully funded legal costs for many years.


*Brownie N Inman*

Brownie N Inman, *Pro Se*
EAL # 39753
Phone # 305-254-6648

**EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al.. | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. A-99-412 |
| CONTINENTAL AIRLINES HOLDINGS. | ) | Class Action |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | |
| INC.. | ) | |
| | ) | |
| Defendants. | ) | |

JUL 1 1 2005

## AFFIDAVIT OF EDNA SMITH

| | |
|---|---|
| COUNTY OF HARRIS | ) ss: |
| | ) |
| STATE OF TEXAS | ) |

Edna Smith, being duly sworn, deposes and says:

1.    I have been employed by Continental Airlines, Inc. ("Continental") since 1985

and I am currently a Litigation Analyst in the Continental legal department. I have been directly

involved in the administration of proofs of claims in the above-captioned bankruptcy proceeding

since Continental created the claims group in 1990. I am duly authorized to execute this affidavit and unless otherwise indicated, the facts and information set forth herein are based on my personal knowledge.

2.    I worked with Continental's in-house and outside counsel and counsel for the Plaintiffs to prepare Exhibit A to the proposed Amended Order Granting Class Certification, a copy of which is attached hereto. It is my belief and understanding that the attached Exhibit A is a complete and accurate list of all persons properly included as plaintiffs in the above-captioned class action adversary proceeding.

3.    The attached Exhibit A was compiled as follows:

(a)    I and those under my direct supervision and control reviewed the Official Claims Register maintained in these bankruptcy cases and identified any proof of claim that may have been filed by a former employee of Eastern Airlines who claimed they were entitled to the benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with Continental Airlines Holdings, Inc. This resulted in an initial list of more than 5,000 claims.

(b)    Each proof of claim was pulled and reviewed by me personally or those under my direct supervision and control to determine if the basis of the claim was for equitable relief or damages as a result of Continental's alleged violations of the labor protective provisions (the "LPP's") of the Eastern CBA. I deleted from the list those proofs of claim that did not meet the criteria set forth above.

2

(c)     I then reviewed the list of all those claimants who had settled and released their claims against the Debtors as a result of that certain settlement agreement between the Debtors and the Air Line Pilots Association (the "ALPA Settlement"). Each claimant that had accepted the ALPA Settlement was removed from the list.

(d)     I then reviewed a list prepared by Continental's outside counsel of all those claimants who had filed a notice withdrawing their proofs of claim in these proceedings. This group is referred to as the "Addington Group." Each claimant that had withdrawn his or her claim was removed from the list.

(e)     I was then supplied with a list prepared by class counsel to the Plaintiffs of those persons that he believed would be properly included in the class. I reconciled the two lists, doing further research into a claim or claimant where necessary and I did identify certain additional claimants that were properly included in the class. The result of these efforts, which took more than 80 hours, is the list attached hereto as Exhibit A.

4.     Based on the foregoing, I submit that the list attached hereto as Exhibit A is a complete and accurate list of all persons properly included as plaintiffs in the above-captioned class action adversary proceeding.

Dated: January 2, 2002
       Houston, Texas

_Edna Smith_
Edna Smith

CHERYL RUSSELL
Notary Public, State of Texas
My Commission Expires
October 21, 2004

Notary: _Cheryl Russell_

3

**EXHIBIT 2**





**EASTERN**

**FLIGHT OPERATIONS DIVISION**
Miami

September 18, 1989

**TO:** All Captains, First and Second Officers

**FROM:** G. A. Casey

**SUBJECT:** Section 28 Bid Awards Effective October 1, 1989
(After Review)

The Section 28 category position awards effective October 1, 1989 are shown on the attached pages. By-pass training awards and retirement credit awards have been indicated where applicable.

NOTE: Additional identification codes have been added as follows:

    Code T = UAC contract
    Code R = Surplus to category position
    Code 9 = Striker

All pilots who are transferring domiciles as a result of these awards are required to coordinate their transfer with their present Director and Chief Pilot. Those pilots who were awarded a Company-paid move will be notified by letter (reference Section 28-G-9). After receipt of such notice, make all arrangements for your paid move with Transportation Services, EAL extension 7652, MIA. Any unauthorized arrangements/contracts with moving companies will be the responsibility of the pilot concerned.

Pilots requiring training as a result of these awards will be scheduled and notified as their training dates are set.

It is recommended that you review the status of your Section 28-Q Bid on file in anticipation of future Section 28 Bids and/or Flow Bids.

G. A. Casey
Director
Crew Resources & Scheduling

attachments

09/13/89                PILOT LISTING BY SENIORITY NUMBER - REPORT 14                PAGE....1          MPS060R5

| S C | SNRTY NBR | EMPL NBR | LAST | NAME INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0001 | 71525 | PUSEY JR | S.A. | 04-16-51 | CP L11 MIA | 1 | | | | |
| | 0002 | 23793 | DUKE | S.D. | 10-05-53 | | 1 9 | | CP L11 MIA | R ' | |
| | 0003 | 72519 | RAY | D.H. | 01-03-55 | | 1 9 | | | | |
| | 0004 | 73450 | REUBERT | H.B. | 01-31-55 | ATL | | | ATL | | |
| | 0005 | 98697 | YANDELL JR | J.N. | 01-31-55 | CP L11 ATL | 1 | | CP L11 ATL | 1 | |
| | 0006 | 94868 | WETMORE | F.P. | 03-28-55 | MIA | | | MIA | | |
| | 0007 | 74019 | RIDLON | R.R. | 05-02-55 | ATL | | | ATL | | |
| | 0008 | 82387 | SMITH | J.N. | 05-02-55 | | 1 9 | | | | |
| | 0009 | 44610 | JOHNSON | R.C. | 04-28-55 | | 1 9 | | | | |
| | 0010 | 20241 | DARBY | G.M. | 04-30-55 | | 1 9 | | | | |
| | 0011 | 89476 | TILESTON | T.N. | 10-03-55 | | 1 9 | | | | |
| | 0012 | 93178 | MARREN | D.D. | 10-03-55 | ATL | 1 | | ATL | | |
| | 0013 | 22351 | DIETZ | C.F. | 10-24-55 | MIA | | | MIA | | |
| | 0014 | 90471 | TUCKER JR | H.C. | 10-24-55 | | 1 9 | | | | |
| | 0015 | 12075 | CALLAWAY | R.G. | 10-24-55 | BOS | | | BOS | | |
| | 0016 | 48431 | KITCHENS | R.M. | 10-24-55 | CP 300 ATL | 1 | CP L11 ATL-BPT | CP 300 ATL | | CP L11 ATL-BPT |
| | 0017 | 35333 | HACKLEY | T.J. | 10-24-55 | | 1 9 | | | | |
| | 0018 | 94942 | WHALEY | C.E. | 01-23-56 | | 1 9 | | | | |
| | 0019 | 35607 | HAIGLER | H.W. | 01-23-56 | CP 300 ATL | | | CP 300 ATL | | |
| | 0020 | 12301 | CAMPBELL | J.C. | 01-23-56 | | 1 9 | | | | |
| | 0021 | 28600 | FOSTER | J.H. | 01-23-56 | | 1 9 | | | | |
| | 0022 | 98111 | MORNHOOD | H.G. | 01-23-56 | | 1 9 | | | | |
| | 0023 | 41158 | HONEA JR | A.L. | 01-23-56 | | 1 9 | | | | |
| | 0024 | 57575 | MCCORT | R.H. | 01-23-56 | | 1 9 | | | | |
| | 0025 | 15047 | CLARK | D.E. | 03-05-56 | CP 300 ATL | 1 | CP L11 ATL-BPT | CP 300 ATL | | CP L11 ATL-BPT |
| | 0026 | 11152 | BURLACE JR | T.J. | 03-05-56 | | 1 9 | | CP L11 JFK | | |
| | 0027 | 66294 | OROURKE | C.F. | 03-26-56 | CP L11 JFK | | | CP L11 JFK | | CP D10 MIA-BPT |
| | 0028 | 99187 | ZACHARIAS | R.M. | 05-28-56 | ORD | | | ORD | | |
| | 0029 | 19037 | CROUCH | J.R. | 05-28-56 | | 1 9 | | | | |
| | 0030 | 90392 | TRUSLOW | S.A. | 06-18-56 | | 1 | | | | |
| | 0031 | 47752 | KIMBLE | R.L. | 06-18-56 | MIA | | | MIA | | |
| | 0032 | 45422 | JONES JR | H.T. | 07-23-56 | ATL | 1 | | ATL | | |
| | 0033 | 33056 | GORSE | A.H. | 07-23-56 | ATL | | | ATL | | |
| | 0034 | 05363 | BEITEL | R.R. | 08-13-56 | | 1 | | | | |
| | 0035 | 65263 | NOYES | J.D. | 08-13-56 | | 1 | | | | |
| | 0036 | 48650 | KIEGLE | R.P. | 08-13-56 | JFK | 1 | | JFK | | |
| | 0037 | 20567 | DAVIS | H.O. | 09-04-56 | | 1 9 | | | | |
| | 0038 | 76565 | RUSSELL | J.V. | 09-04-56 | CP L11 ATL | 1 | | CP L11 ATL | | |
| | 0039 | 91224 | VANDERMOLEN | H.A. | 09-04-56 | MIA | | | MIA | | |
| | 0040 | 41377 | HOPP | T.A. | 09-04-56 | | 1 9 | | | | |
| | 0041 | 60776 | MILLS | J.A. | 09-24-56 | DCA | | | DCA | | |
| * | 0042 | 95855 | WEAVER | H.W. | 09-24-56 | CP L11 ATL | 1 | | CP L11 ATL | | |
| | 0043 | 21679 | DELIERE | R.C. | 09-24-56 | | 1 9 | | CP L11 MIA | R ~ | |
| # | 0044 | 22562 | DION | R.P. | 10-15-56 | MIA | | | MIA | | |
| | 0045 | 40011 | HINTON | E.J. | 12-17-56 | CP L11 MIA | | | CP L11 MIA | ? | |
| * | 0046 | 96304 | WILLIAMS | J.D. | 12-17-56 | CP L11 MIA | 1 | | CP D10 MIA | | |
| | 0047 | 98900 | YONGE JR | L.W. | 12-17-56 | | 1 9 | | | | |
| | 0048 | 89314 | THURMAN | G.E. | 01-07-57 | MIA | | | MIA | | |
| | 0049 | 59920 | HESMER JR | F.H. | 01-07-57 | | 1 9 | | | | |
| | 0050 | 30994 | GAUSS | R.P. | 01-07-57 | | 1 9 | | | | |
| | 0051 | 10383 | BRUCE | E.H. | 01-07-57 | | 1 9 | | | | |
| | 0052 | 51353 | LAWSON | J.F. | 01-07-57 | MIA | | | MIA | | |
| | 0053 | 65900 | OLIVIERI | T.L. | 01-07-57 | JFK | 1 | | | | |
| | 0054 | 13038 | CARBOY | H.S. | 01-07-57 | | 1 9 | | | | |
| | 0055 | 18293 | COX | J.C. | 01-28-57 | | 1 9 | | | | |
| | 0056 | 91230 | VANVALKENBURGH | W. | 01-28-57 | MIA | | | MIA | | |
| | 0057 | 97209 | MINK | J.H. | 01-28-57 | | 1 | | | | |
| | 0058 | 88367 | THIEMAN | T.E. | 01-28-57 | JFK | | | JFK | | |
| | 0059 | 16666 | COLLINS | A.T. | 01-28-57 | MIA | | | MIA | | |
| | 0060 | 90285 | TRIPLETT | D.M. | 01-28-57 | | 1 9 | | | | |
| | 0061 | 22439 | DILLMAN | D.F. | 01-28-57 | | 1 9 | | | 1 9 | |
| | 0062 | 39786 | HILL | H.H. | 02-18-57 | MIA | | | MIA | | |
| | 0063 | 77426 | SANDERSON JR | J.H. | 02-18-57 | | 1 79 | | CP 727 ATL | R | |
| | 0064 | 00509 | AGNEW | R. | 02-18-57 | ATL | | | ATL | | |
| | 0065 | 84503 | STAMOS | R.A. | 03-11-57 | | 1 | | | | |
| | 0066 | 51515 | LAZOWSKI | E.J. | 03-11-57 | MIA | 1 | | MIA | | |
| | 0067 | 18131 | COVIN JR | J.O. | 03-11-57 | | 1 9 | | | | |

----- IDENT CODE -----
1 = CURTAILED                5 = 28-G-1B - UPGRADE            A = WAIT FOR CP-727        SUPERVISORY CODE
2 = DISPLACED                6 = 28-J                         B = WAIT FOR CP-DC9        * = 950 -
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C                      C = GAIN FURTHER EXPERIENCE   # = 950 - DOMICILE
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK      U = UNASSIGNED                        950 - TRAINING
                                                                                          a = SPECIAL

09/13/89                  PILOT LISTING BY SENIORITY NUMBER - REPORT 14                  PAGE....3          MPS06OR5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0135 | 61656 | MOONEY | R.O. | 11-27-58 | ORD | | | ORD | | |
| | 0136 | 98473 | HYATT | R.D. | 11-27-58 | | 1  9 | | | | |
| ə | 0137 | 04991 | BEACH | B.E. | 11-27-58 | CP L11 MIA | 1 | | CP D10 MIA | | |
| | 0138 | 18289 | COX | L.G. | 04-27-59 | | 1  9 | | | | |
| | 0139 | 31570 | GIBSON JR | P.B. | 04-27-59 | BOS | | | BOS | | |
| | 0140 | 25466 | EMBLETON | F. | 04-27-59 | | 1  9 | | | | |
| * | 0141 | 81094 | SILVIS | R.C. | 04-27-59 | CP L11 MIA | 1 | | CP L11 MIA | | |
| | 0142 | 21813 | DENT | A.P. | 04-27-59 | ATL | | | ATL | | |
| | 0143 | 22700 | DOANE JR | J.F. | 04-27-59 | | 1  9 | | | | |
| | 0144 | 95256 | WHITE | E.E. | 04-27-59 | | 1 | | | | |
| | 0145 | 04199 | BARUCH | J.S. | 04-27-59 | MIA | | | MIA | | |
| | 0146 | 33209 | GRAHAM | K.O. | 04-27-59 | | 1  9 | | | | |
| | 0147 | 66957 | PAREIRA JR | F. | 04-27-59 | | 1  9 | | | | |
| | 0148 | 00821 | ALEXANDER | A.D. | 05-18-59 | | 1  9 | | | | |
| | 0149 | 35902 | HALVERSON | G.C. | 05-18-59 | | 1  9 | | | | |
| | 0150 | 07414 | BOLLINGER JR | F.A. | 05-18-59 | CP 757 ATL | 1 | | CP 757 ATL | | |
| | 0151 | 22591 | DITTMAN | R.R. | 07-20-59 | MIA | 1 | | | | |
| | 0152 | 03637 | BALDWIN | D.R. | 07-20-59 | | 1  9 | | | | |
| | 0153 | 67446 | PASCUCCI | M.E. | 07-20-59 | | 1  9 | | | | |
| | 0154 | 74214 | RISLOVE | A.R. | 07-20-59 | | 1  9 | | | | |
| * | 0155 | 16828 | CONDER | W.E. | 07-20-59 | CP L11 ATL | 1 | | CP D10 MIA | | |
| | 0156 | 77390 | SANKEY | C.H. | 07-20-59 | | 1  9 | | | | |
| | 0157 | 73603 | RICHARDS | K.L. | 07-20-59 | CP L11 ATL | 1 | | CP L11 ATL | | |
| | 0158 | 74458 | ROBBINS | J.B. | 07-20-59 | ATL | 1 | | ATL | | |
| | 0159 | 32779 | GOLD | O.L. | 08-17-59 | | 1  9 | | | | |
| | 0160 | 41375 | HOPP | J.H. | 08-17-59 | JFK | | | JFK | | |
| | 0161 | 52622 | LINDLIEF | J.L. | 08-17-59 | | 1  9 | | | | |
| * | 0162 | 45450 | JONES | M.B. | 08-17-59 | CP L11 MIA | | | CP L11 MIA | | |
| | 0163 | 11977 | CAHILL JR | M.J. | 08-17-59 | | | | | | |
| | 0164 | 59778 | MERCER | M.B. | 08-17-59 | | 1  9 | | | | |
| | 0165 | 95878 | WILBUR JR | R.M. | 08-17-59 | | 1  9 | | | | |
| | 0166 | 11826 | BYRNE | D.A. | 08-17-59 | | 1  9 | | | | |
| | 0167 | 59240 | MCMURRAY JR | R.A. | 08-17-59 | JFK | | | JFK | | |
| | 0168 | 00722 | AKIN | R.C. | 08-17-59 | | 1 | | | | |
| | 0169 | 11509 | BUSSEY | W.C. | 08-17-59 | | 1  9 | | | CP 757 ATL | R | |
| | 0170 | 23003 | DONOHUE | R.A. | 08-17-59 | CP 300 MIA | 1 | | CP D10 MIA  1 | | |
| | 0171 | 53850 | LOY | C.E. | 09-14-59 | | 1  9 | | | | |
| | 0172 | 39790 | HILL III | R.J. | 09-14-59 | | 1  9 | | | | |
| | 0173 | 12862 | CARR | T.U. | 09-14-59 | | 1 | | | | |
| | 0174 | 66515 | ODENHALDT | G.P. | 09-14-59 | | 1  9 | | | | |
| | 0175 | 43677 | JAEGER JR | N.J. | 09-14-59 | | 1  9 | | | | |
| | 0176 | 79980 | SHAW JR | G.J. | 09-14-59 | BOS | | | BOS | | |
| | 0177 | 36308 | HANSEN | T.S. | 09-14-59 | JFK | | | JFK | | |
| | 0178 | 92393 | WALKER | J.R. | 09-14-59 | JFK | | | JFK | | |
| | 0179 | 16876 | CONWAY | J.R. | 09-14-59 | ATL | 1 | | ATL | | |
| | 0180 | 87133 | TADKEN | D.L. | 09-14-59 | CP L11 JFK | | | CP 300 JFK  2 | | |
| | 0181 | 89811 | TOMELDEN | A.P. | 09-14-59 | | 1  9 | | | | |
| | 0182 | 75459 | ROHRBORN | R.C. | 09-14-59 | | 1 79 | | | CP 727 JFK | | |
| | 0183 | 50628 | LANGRELL | D.D. | 09-14-59 | | 1  9 | | | | |
| | 0184 | 80322 | SHEPPARD JR | H.G. | 09-14-59 | | 1  9 | | | CP 300 ATL  R | | |
| | 0185 | 94767 | WESTERBERG | R.H. | 09-14-59 | | 1  9 | | | | |
| | 0186 | 35658 | HALL | E.E. | 10-19-59 | | 1  9 | | | | |
| | 0187 | 12057 | CALE | N. | 10-19-59 | | 1  9 | | | | |
| | 0188 | 40438 | HOEFER | J.S. | 10-19-59 | | 1  9 | | | | |
| | 0189 | 15872 | COATES | F.S. | 10-19-59 | MIA | | | MIA | | |
| | 0190 | 05367 | BELASTOCK | S.T. | 10-19-59 | JFK | | | JFK | | |
| | 0191 | 64920 | NOLTON | J.L. | 10-19-59 | | 1  9 | | | | |
| | 0192 | 41145 | HOMER | W.J. | 10-19-59 | MIA | 1 | | MIA | | |
| | 0193 | 50620 | LANGHAM | R.E. | 09-25-61 | JFK | | | JFK | | |
| ə | 0194 | 85156 | STEPHENS | B. | 10-09-61 | CP 300 MIA | | CP L11 MIA-BPT | CP 300 MIA | | CP L11 MIA-BPT |
| | 0195 | 62545 | MORSE | N.L. | 10-09-61 | | 1  9 | | | | |
| | 0196 | 42188 | HUEBEL | J.M. | 10-09-61 | | 1  9 | | | R | | |
| | 0197 | 33396 | GRAYBILL | J.L. | 10-09-61 | | 1  9 | | | | |
| | 0198 | 02539 | ARNER | B.J. | 10-09-61 | | 1  9 | | | | |
| | 0199 | 99628 | ZIPSE | R.L. | 10-09-61 | MIA | | | MIA | | |
| | 0200 | 33661 | GREENE | G.H. | 10-09-61 | | 1 79 | | | | |
| | 0201 | 40680 | HOLDCRAFT | C.T. | 10-09-61 | CP L11 MIA | | | CP L11 MIA  4 | | |

IDENT CODE
1 = CURTAILED                    5 = 28-G-1B - UPGRADE          A = WAIT FOR CP-727
2 = DISPLACED                    6 = 28-J                        B = WAIT FOR CP-DC9
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                     C = GAIN FURTHER EXPERIENCE
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK     U = UNASSIGNED

SUPERVISORY CODE
* = 950 - DOMICILE
* = 930 - TRAINING
ə = SPECIAL

09/13/89          PILOT LISTING BY SENIORITY NUMBER - REPORT 14                    PAGE....5          MPS06DR5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | NAME INIT | M E | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0269 | 69379 | PFAFMAN | J.E. | | 10-08-62 | | 1 9 | | | | |
| | 0270 | 23969 | DUNCAN JR | J.D. | | 10-08-62 | | 1 9 | | | | |
| | J271 | 07580 | BONNA | F. | | 10-15-62 | | 1 9 | | | | |
| | 0272 | 66681 | PAGE | P.W. | | 10-15-62 | JFK | | | JFK | | |
| | 0273 | 66044 | OMARA | R.C. | | 10-15-62 | | 1 9 | | | | |
| | 0274 | 27601 | FITZGERALD | J.E. | | 10-15-62 | BOS | | | BOS | | |
| | 0275 | 17392 | COOPER | T.L. | | 10-15-62 | CP 727 MIA | | | CP 727 MIA | | |
| | 0276 | 21754 | DEMING | M.A. | | 10-15-62 | | 1 9 | | CP 300 ATL | | R |
| | 0277 | 42891 | HUTCHINSON | P.L. | | 12-16-58 | | 1 9 | | | | |
| | 0278 | 45368 | JONES | S.N. | | 10-22-62 | | 1 9 | | | | |
| | 0279 | 42000 | HOYT | J.L. | | 10-22-62 | | 1 9 | | | | |
| | 0280 | 52109 | LEPPARD | D.L. | | 10-22-62 | | 1 9 | | | | |
| | 0281 | 22863 | DOLAN JR | E.T. | | 10-22-62 | | 1 9 | | | | |
| | 0282 | 64190 | NEVILLE | R.C. | | 01-21-63 | CP 727 MIA | 1 | CP L11 MIA-BPT | CP 727 MIA | | CP L11 MIA-BPT |
| | 0283 | 62981 | MULLINS | C.A. | | 01-21-63 | MIA | | | MIA | | |
| | 0284 | 27814 | FLICK | J.A. | | 01-21-63 | | 1 79 | | | | |
| ə | 0285 | 98961 | YOUNG JR | C.H. | | 01-21-63 | CP L11 MIA | | | CP L11 MIA | | |
| | 0286 | 54458 | MACKEIL | J.M. | | 01-21-63 | CP L11 JFK | 1 7 | | CP L11 JFK | | |
| | 0287 | 97473 | NOLBERT | J.P. | | 01-21-63 | | | | | | |
| | 0288 | 11092 | BURNS | M.J. | | 01-21-63 | ATL | | | ATL | | |
| | 0289 | 63646 | NADEAU | E.J. | | 01-21-63 | CP L11 ATL | 1 | | CP L11 ATL | | |
| | 0290 | 91741 | VETROVSKY | C.D. | | 01-21-63 | | 1 | | | | |
| | 0291 | 69595 | PICKER | D.K. | | 01-21-63 | | 1 9 | | | | |
| | 0292 | 76530 | RUSSELL JR | A. | | 01-21-63 | | 1 9 | | | | |
| | 0293 | 97605 | WOOD | R.D. | | 01-22-63 | | 1 9 | | | | |
| | 0294 | 55360 | MARCIANO | A.P. | | 02-04-63 | | 1 9 | | | | |
| | 0295 | 72925 | REED | A.D. | | 02-04-63 | | 1 9 | | | | |
| | 0296 | 00876 | ALEXIS | L.E. | | 02-04-63 | IAH | | | IAH | | |
| | 0297 | 68667 | PEREZ JR | E. | | 01-07-59 | JFK | | | JFK | | |
| ə | 0298 | 73666 | RICHARDSON | P.A. | | 02-04-63 | CP L11 MIA | | | CP L11 MIA | | |
| | 0299 | 07221 | BOETZ | E.F. | | 02-04-63 | | 1 9 | | | | |
| | 0300 | 26443 | FARINA | T.D. | | 02-04-63 | ATL | | | ATL | | |
| | 0301 | 46661 | KEITH | T.P. | | 02-04-63 | ATL | 1 | | | | |
| | 0302 | 34577 | GRISHAM | D.E. | | 02-04-63 | | 1 9 | | | | |
| | 0303 | 90296 | TRIVETT | R.H. | | 02-04-63 | JFK | | | JFK | | |
| | 0304 | 73135 | REINHARDT | G.A. | | 02-04-63 | | 1 | | | | |
| | 0305 | 38561 | HELMS | T.A. | | 02-04-63 | | 1 9 | | | | |
| * | 0306 | 20358 | DAVIDSON | D.C. | | 02-04-63 | CP L11 MIA | 1 | | CP L11 MIA | | |
| | 0307 | 08661 | BRANNAN JR | L.L. | | 02-04-63 | | 1 9 | | | | |
| | 0308 | 20009 | DANAGHER | N.B. | | 02-11-63 | | 1 9 | | | | |
| | 0309 | 48961 | KNOPP | S.M. | | 02-11-63 | | 1 9 | | | | |
| | 0310 | 58731 | MCKAY | J.D. | | 02-11-63 | | 1 9 | | | | |
| | 0311 | 75845 | ROSENTHAL | E.P. | | 02-11-63 | | 1 9 | | CP L11 MIA | 10 | |
| | 0312 | 15858 | CLUTE JR | E.J. | | 02-11-63 | MIA | | | MIA | | |
| | 0313 | 43869 | JANES JR | V.R. | | 02-11-63 | JFK | | | JFK | | |
| | 0314 | 35933 | HAMBLIN | L.H. | | 02-11-63 | | 1 9 | | CP L11 MIA | 11 R | |
| | 0315 | 27035 | FERTE | G. | | 02-11-63 | CP 727 DCA | | | CP 727 | | |
| | 0316 | 18995 | CROUCH | H.H. | | 02-11-63 | | 1 9 | | | | |
| | 0317 | 40730 | HOLLAND | E.N. | | 02-11-63 | | 1 9 | | | | |
| | 0318 | 82118 | SMITH | A.C. | | 02-11-63 | CP L11 MIA | 1 | | CP L11 MIA | 12 | |
| | 0319 | 07207 | BODAHL | R.O. | | 02-18-63 | | 1 9 | | | | |
| | 0320 | 84168 | SPIETH | J.L. | | 02-18-63 | | 1 9 | | | | |
| | 0321 | 32683 | GONZALEZ | S. | | 11-16-59 | | 1 | | | | |
| | 0322 | 53214 | LOMBARDO | J.C. | | 02-18-63 | JFK | | | JFK | | |
| | 0323 | 56220 | MASSIE | B.L. | | 02-18-63 | | 1 9 | | | | |
| | 0324 | 66260 | ORMS | E.B. | | 02-18-63 | ATL | | | ATL | | |
| | 0325 | 61433 | MOGUS | J.N. | | 02-18-63 | DCA | | | DCA | | |
| | 0326 | 49741 | KRESHOCK | S.A. | | 02-18-63 | JFK | | | JFK | | |
| | 0327 | 19695 | CHIAN | H.D. | | 02-18-63 | | 1 9 | | | | |
| | 0328 | 86571 | SULLIVAN | J.F. | | 02-18-63 | JFK | | | JFK | | |
| | 0329 | 44839 | KELLY | F.D. | | 02-18-63 | | 1 9 | | | | |
| | 0330 | 26763 | FEHLBERG | I.J. | | 02-18-63 | | 1 9 | | | | |
| | 0331 | 78061 | SCHIPPER | R.A. | | 02-18-63 | | 1 9 | | | | |
| | 0332 | 66183 | ORTIZ | B. | | 11-16-59 | MIA | | | MIA | | |
| | 0333 | 61471 | MOLL | R.K. | | 03-18-63 | CP L11 MIA | 1 | | CP L11 MIA | | |
| | 0334 | 82515 | SMITH | G.G. | | 03-18-63 | MIA | | | MIA | | |
| | 0335 | 32915 | GOODSTONE | L.H. | | 03-18-63 | | 1 9 | | | | |

---------------------------- IDENT CODE ----------------------

| | | SUPERVISORY CODE |
|---|---|---|
| 1 = CURTAILED | 5 = 28-G-1B - UPGRADE | A = WAIT FOR CP-727 | * = 950 - DOMICILE |
| 2 = DISPLACED | 6 = 28-J | B = WAIT FOR CP-DC9 | ≠ = 930 - TRAINING |
| 3 = 28-G-6A - 15 MONTH LOCK | 7 = 28-L-3C | C = GAIN FURTHER EXPERIENCE | ə = SPECIAL |
| 4 = 28-G-6B - 15 MONTH LOCK | 8 = 28-G-6A - 24 MONTH LOCK | U = UNASSIGNED | |

09/13/89          PILOT LISTING BY SENIORITY NUMBER - REPORT 14          PAGE....7          MPS060RS

| S C | SNRTY NBR | EMPL NBR | LAST | NAME INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0403 | 36627 | HARDY | J.D. | 08-26-63 | | 1 9 | | | | |
| | 0404 | 03509 | BAKUS | R.J. | 08-26-63 | MIA | | | MIA | | |
| | 0405 | 02977 | AVERA | J.R. | 08-26-63 | ATL | 1 | | ATL | | |
| | 0406 | 86801 | SWANSON | D.E. | 08-26-63 | ATL | 1 7 | | ATL | | |
| | 0407 | 62058 | MORGAN | F.G. | 08-26-63 | | 1 9 | | | | |
| | 0408 | 71339 | PUCKETT | H.E. | 08-26-63 | MIA | | | MIA | | |
| | 0409 | 22581 | DISTEL | R.G. | 08-26-63 | | 1 9 | | | | |
| | 0410 | 75759 | ROSALY | C. | 11-27-61 | | 1 9 | | CP 727 MIA | R | |
| | 0411 | 78036 | SCHEYER | F.D. | 08-26-63 | | 1 79 | | CP 727 ATL | | |
| | 0412 | 92317 | WAGNER | D.C. | 08-26-63 | | 1 9 | | | | |
| | 0413 | 73618 | RICHARDSON | S.H. | 08-26-63 | JFK | 1 7 | | JFK | | |
| | 0414 | 06786 | BLANCO | W.A. | 08-26-63 | JFK | | | JFK | | |
| | 0415 | 80990 | SIDLINGER | D.E. | 08-26-63 | | 1 9 | | | | |
| * | 0416 | 79873 | SHAHAN | J.H. | 09-09-63 | CP L11 ATL | 1 | | CP L11 ATL | | |
| | 0417 | 20447 | DAVIS JR | R.D. | 09-09-63 | JFK | | | JFK | | |
| | 0418 | 96223 | WILLIAMS | J.A. | 09-09-63 | ATL | | | ATL | | |
| | 0419 | 19752 | DABBS | J.S. | 09-09-63 | JFK | | | JFK | | |
| | 0420 | 05987 | BERMINGHAM | H.T. | 09-09-63 | | | | | | |
| | 0421 | 61250 | MITTELSTAEDT | G.J. | 09-09-63 | | 1 9 | | | | |
| | 0422 | 71727 | QUINN | P.G. | 09-09-63 | | 1 9 | | | | |
| | 0423 | 05170 | BECKETT | W.J. | 09-09-63 | MIA | | | MIA | | |
| | 0424 | 72376 | RASMUSSEN | D. | 09-09-63 | | 1 9 | | | | |
| | 0425 | 88001 | TEACHOUT | O.L. | 09-09-63 | MIA | 1 | | MIA | | |
| | 0426 | 78796 | SCHWERY | A.H. | 09-09-63 | | 1 9 | | | | |
| | 0427 | 14014 | CANTHORN | E.E. | 09-09-63 | ATL | | | ATL | | |
| | 0428 | 11767 | BUZINSKI | R.F. | 09-09-63 | | 1 9 | | | | |
| | 0429 | 17886 | CORTES | M.T. | 11-27-61 | | 1 9 | | | | |
| | 0430 | 06185 | BEYER | L.R. | 09-09-63 | | 1 9 | | | | |
| | 0431 | 15957 | COBLE | D.R. | 09-09-63 | | 1 9 | | CP L11 MIA | 13 | |
| | 0432 | 17820 | CORNAY | R.J. | 09-23-63 | MIA | | | MIA | | |
| | 0433 | 19769 | DAGOSTINE | M.J. | 09-23-63 | JFK | | | JFK | | |
| | 0434 | 19446 | CUNNINGHAM | C.E. | 09-23-63 | | 1 9 | | | | |
| | 0435 | 66764 | PALMER | J.A. | 09-23-63 | | 1 9 | | | | |
| | 0436 | 84133 | SPIEKER JR | S.G. | 09-23-63 | CP L11 MIA | 1 | | CP L11 MIA | | |
| | 0437 | 64890 | NOLIN | R.E. | 09-23-63 | | 1 9 | | | | |
| | 0438 | 19024 | CROSBY | K.B. | 09-23-63 | ATL | | | ATL | | |
| | 0439 | 50927 | LARSON | J.W. | 09-23-63 | | 1 9 | | | | |
| | 0440 | 01069 | ALLEY | F.H. | 09-23-63 | | 1 9 | | | | |
| | 0441 | 90272 | TRICE III | C.V. | 09-23-63 | CP L11 MIA | 1 | | CP 300 MIA | 6 | |
| * | 0442 | 27461 | FISHER III | J.F. | 09-23-63 | CP 757 ATL | | | CP 757 ATL | | |
| | 0443 | 86625 | SUMMERS JR | D.C. | 09-23-63 | | 1 9 | | | | |
| | 0444 | 68359 | PENN | H.E. | 10-07-63 | MIA | | | MIA | | |
| | 0445 | 94367 | WELCH | R.C. | 10-07-63 | | 1 9 | | | | |
| | 0446 | 01286 | BARRETO | M.A. | 11-27-61 | MIA | 1 | | MIA | | |
| | 0447 | 50181 | LACEY | T.M. | 10-07-63 | | 1 9 | | | | |
| | 0448 | 52225 | LEVEILLARD | M.M. | 10-07-63 | | 1 9 | | | | |
| | 0449 | 85919 | STODDARD | G.P. | 10-07-63 | | 1 9 | | CP 757 ATL | R | |
| | 0450 | 66405 | OSWALD | D.R. | 10-07-63 | | 1 9 | | CP 757 ATL | R | |
| | 0451 | 46475 | KEARNS | R.T. | 10-07-63 | JFK | | | JFK | | |
| | 0452 | 16897 | CONNELLY | P.A. | 10-07-63 | | 1 9 | | | | |
| | 0453 | 57971 | MCDONALD | K.M. | 10-07-63 | | 1 9 | | | | |
| | 0454 | 28677 | FOTHERGILL | T.A. | 10-07-63 | CP L11 ATL | | | CP L11 ATL | | |
| | 0455 | 40664 | HOLDER JR | J.B. | 10-07-63 | | 1 9 | | | | |
| | 0456 | 67910 | PEABODY | J.C. | 10-07-63 | | 9 | | | | |
| | 0457 | 96742 | MILLIS JR | B. | 10-07-63 | | 1 9 | | | | |
| | 0458 | 45815 | JORGENSEN | J.J. | 10-07-63 | | 1 9 | | | | |
| | 0459 | 96784 | MILMOTH | B.M. | 10-07-63 | | 1 79 | | | | |
| | 0460 | 89296 | THRELKELD | J.G. | 10-07-63 | | 1 9 | | | | |
| | 0461 | 88825 | THOMSON III | J.B. | 10-07-63 | | 1 9 | | | | |
| | 0462 | 96328 | WILLIAMS | H.O. | 10-07-63 | | 1 9 | | | | |
| | 0463 | 48414 | KITCHEL | C.L. | 10-21-63 | MIA | | | MIA | | |
| | 0464 | 66977 | PARK | L.L. | 10-21-63 | CP L11 MIA | | | CP L11 MIA | | |
| | 0465 | 70877 | PRESEAULT | J.P. | 10-21-63 | | 1 9 | | | | |
| | 0466 | 44502 | JOHNSON | G.M. | 10-21-63 | JFK | 1 | | JFK | | |
| | 0467 | 36303 | HANKINS | F.M. | 10-21-63 | | 1 9 | | | | |
| | 0468 | 62624 | MOSE | D.A. | 10-21-63 | | 1 9 | | | | |
| | 0469 | 04019 | BARKER | E.E. | 10-21-63 | JFK | | | JFK | | |

```
------- IDENT CODE -------
1 = CURTAILED                    5 = 28-G-3B - UPGRADE         A = WAIT FOR CP-727        SUPERVISORY CODE
2 = DISPLACED                    6 = 28-J                      B = WAIT FOR CP-DC9        * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                   C = GAIN FURTHER EXPERIENCE  * = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK   U = UNASSIGNED             @ = SPECIAL
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | NAME INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0537 | 50048 | KUNTZ | A.M. | 01-27-64 | | 1 9 | | | | |
| | 0538 | 78056 | SCHINELLER | M.T. | 01-27-64 | | 1 9 | | | | |
| | 0539 | 29475 | FRISTER | K.A. | 01-27-64 | | 1 9 | | | | |
| | 0540 | 33960 | GREENWAY | E.P. | 01-27-64 | | 1 9 | | | | |
| | 0541 | 59505 | MEAD | H. | 01-27-64 | MIA | | | MIA | | |
| | 0542 | 67287 | PARR | N.J. | 01-27-64 | | 1 9 | | CP 727 ATL | | R |
| | 0543 | 65340 | OBEREMPT | B.A. | 02-10-64 | JFK | | | JFK | | |
| | 0544 | 14107 | CHAKNIS | J.P. | 02-10-64 | | 1 9 | | | | |
| | 0545 | 55381 | MARSH JR | A.A. | 02-10-64 | | 1 9 | | | | |
| | 0546 | 24643 | EDDINS | S.L. | 02-10-64 | JFK | | | JFK | | |
| | 0547 | 14803 | CHOLLEY | D.P. | 02-10-64 | | 1 9 | | | | |
| | 0548 | 03153 | BACON | G.M. | 02-10-64 | | 1 9 | | | | |
| | 0549 | 12305 | CAMERON | W.H. | 02-10-64 | BOS | | | BOS | | |
| | 0550 | 85890 | STOECKER | M.D. | 02-10-64 | | 1 9 | | | | |
| | 0551 | 85307 | STETSON JR | J.F. | 02-10-64 | | 1 9 | | | | |
| | 0552 | 56652 | MAUER | D.L. | 02-10-64 | | 1 9 | | | | |
| | 0553 | 74096 | RIEMER | J.R. | 02-10-64 | | 1 9 | | | | |
| | 0554 | 07875 | BOSHELL | C.E. | 02-24-64 | | 9 | | | | |
| | 0555 | 93702 | WATTS | D.H. | 02-24-64 | | 1 9 | | | | |
| | 0556 | 26951 | FERGUSON | K.H. | 02-24-64 | | 1 9 | | | | |
| | 0557 | 77976 | SCHARNHORST | J.E. | 02-24-64 | | 1 9 | | | | |
| | 0558 | 57417 | MCCLURE | D.H. | 02-24-64 | | 9 | | | | |
| ə | 0559 | 85905 | STONE | E.E. | 02-24-64 | CP L11 MIA | | | CP L11 MIA | | |
| | 0560 | 18114 | COURTNEY | A.L. | 02-25-64 | | 1 9 | | | | |
| | 0561 | 84498 | STAMBAUGH | D.L. | 03-16-64 | ATL | 1 | | ATL | | |
| | 0562 | 20391 | DAVIS | C.B. | 03-16-64 | ORD | | | ORD | | |
| | 0563 | 12907 | CAREY | L.P. | 03-16-64 | | 1 9 | | | | |
| | 0564 | 70158 | POLGARDY | J.R. | 03-16-64 | JFK | 1 | | JFK | | |
| | 0565 | 82301 | SMITH | D.W. | 03-16-64 | | 1 9 | | | | |
| | 0566 | 63911 | NELSEN | R.J. | 03-16-64 | | 1 9 | | CP L11 MIA | | R |
| | 0567 | 55500 | MARSH | L.M. | 03-16-64 | ATL | | | ATL | | |
| | 0568 | 51954 | LEIBY | R.M. | 03-16-64 | | 1 9 | | | | |
| | 0569 | 86578 | SULLIVAN | R.F. | 03-16-64 | | 1 9 | | | | |
| | 0570 | 00167 | ACHILLE | J.M. | 03-16-64 | | 1 9 | | CP 757 ATL | | |
| | 0571 | 16272 | COLLIER | T.C. | 03-16-64 | | 1 9 | | | | |
| ə | 0572 | 17798 | CORREARD | R.B. | 03-16-64 | CP L11 MIA | | | CP L11 MIA | | |
| | 0573 | 25190 | ELLIOTT | A.M. | 03-16-64 | | | | CP L11 MIA | | |
| | 0574 | 12329 | CAMPBELL | W.R. | 08-09-65 | | 1 9 | | | | |
| | 0575 | 84803 | STAVELEY JR | G.C. | 08-09-65 | BOS | | | BOS | | |
| | 0576 | 84795 | STATON | D.F. | 08-09-65 | | 1 9 | | | | |
| | 0577 | 47605 | KIESZ | M.J. | 08-09-65 | MIA | | | MIA | | |
| | 0578 | 92067 | VOEPEL JR | N.C. | 08-09-65 | | 1 9 | | CP 757 ATL | | R |
| | 0579 | 23091 | DORMAN | J.C. | 08-09-65 | | 1 9 | | | | |
| | 0580 | 94397 | WELLS | M.K. | 08-09-65 | ATL | | | ATL | | |
| | 0581 | 41629 | HOSFORD | L.H. | 08-09-65 | | 1 9 | | | | |
| | 0582 | 75689 | ROOSEVELT | E.V. | 08-09-65 | | 1 9 | | | | |
| | 0583 | 21064 | DAMKINS | C.R. | 08-09-65 | | 1 9 | | | | |
| | 0584 | 71095 | PRITCHARD | P.C. | 08-09-65 | | 1 9 | | CP 757 JFK | | R |
| | 0585 | 89379 | TIBERG | R.E. | 08-09-65 | | 1 9 | | | | |
| | 0586 | 00867 | ALEXANDER JR | W.H. | 08-09-65 | | 1 9 | | CP DC9 ATL | | |
| | 0587 | 11096 | BURTON | T.A. | 08-09-65 | | 9 | | | | |
| | 0588 | 33385 | GRAY | T.H. | 08-10-65 | | 1 9 | | | | |
| | 0589 | 42910 | HUTCHESON JR | T.L. | 08-16-65 | ATL | | | ATL | | |
| | 0590 | 95093 | WHELAN | J.R. | 08-16-65 | | 1 9 | | | | |
| | 0591 | 06793 | BLANKENSHIP JR | O.T. | 08-16-65 | | 1 9 | | CP DC9 ATL | | |
| | 0592 | 12001 | CAIRNES | C.B. | 09-06-65 | ATL | | | ATL | | |
| | 0593 | 97543 | WOLTERS | K.V. | 09-06-65 | | 1 9 | | | | |
| | 0594 | 28931 | FRANK | T.H. | 09-06-65 | MIA | 1 | | MIA | | |
| | 0595 | 77317 | SANAK | H.A. | 09-06-65 | | 9 | | | | |
| | 0596 | 46709 | KELKER | F.J. | 09-06-65 | | 9 | | | | |
| | 0597 | 29757 | FULLERTON | J.A. | 09-06-65 | | 1 9 | | | | |
| | 0598 | 91271 | VANMINKLE | K.D. | 09-06-65 | | 9 | | | | |
| | 0599 | 85900 | STONE JR | R.G. | 09-06-65 | | 1 9 | | CP 300 JFK | | |
| | 0600 | 96677 | WILLIAMSON | K.H. | 09-06-65 | | 1 9 | | | | |
| | 0601 | 43085 | HYDE JR | J.A. | 09-13-65 | CP L11 ATL | 8 | | CP L11 ATL | | |
| | 0602 | 40795 | HOLTMAN | C.O. | 09-13-65 | JFK | | | JFK | | |
| | 0603 | 20065 | DANIEL | J.E. | 09-13-65 | | 9 | | | | |

```
----- IDENT CODE-----                                          SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-1B - UPGRADE      A = WAIT FOR CP-727      * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                    B = WAIT FOR CP-DC9      ‡ = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C               C = GAIN FURTHER EXPERIENCE  ə = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED
```

09/13/89                 PILOT LISTING BY SENIORITY NUMBER - REPORT 14                 PAGE...11          MPS06OR5

| S C | SNRTY NBR | EMPL NBR | LAST | INIT | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0671 | 33368 | GRAU | | F.L. | 11-15-65 | | 1 9 | | | | |
| | 0672 | 87568 | TAYLOR | | D.H. | 11-15-65 | | 1 9 | | | | |
| | 0673 | 65885 | OLIVER | | J.B. | 11-15-65 | | 1 9 | | | | |
| | 0674 | 86273 | SPRIGMAN | | A.E. | 11-15-65 | | 1 9 | | | | |
| | 0675 | 09076 | BRESLIN | | R.A. | 11-15-65 | | 1 9 | | | | |
| | 0676 | 91589 | VELAZQUEZ | | J. | 04-23-62 | | 1 9 | | CP DC9 ATL | | |
| | 0677 | 91859 | VINTHER | | L.N. | 11-15-65 | | 1 9 | | | | |
| | 0678 | 78271 | SCHMIDT | | P.D. | 11-19-65 | | 1 9 | | | | |
| | 0679 | 06768 | BLAIR | | D.E. | 11-22-65 | | 1 9 | | | | |
| | 0680 | 07583 | BONNER | | D.B. | 12-06-65 | | 1 9 | | | | |
| | 0681 | 96781 | WILLS | | D.H. | 12-06-65 | CP 727 ATL | | | CP 727 ATL | | |
| | 0682 | 84989 | STEIN | | G.H. | 12-06-65 | | 1 9 | | | | |
| | 0683 | 54979 | MALLARY | | L.P. | 12-06-65 | | 1 9 | | | | |
| | 0684 | 11079 | BURKE | | T.W. | 12-06-65 | | 9 | | CP 300 MIA | | R |
| | 0685 | 12759 | CARDWELL | | R.F. | 12-06-65 | | 1 9 | | | | |
| | 0686 | 60107 | MICHELI | | E.C. | 12-06-65 | | 1 9 | | | | |
| | 0687 | 94260 | HEISBROD | | M.E. | 12-06-65 | | 9 | | CP 300 MIA | | R |
| | 0688 | 66939 | PAPIN | | E.P. | 12-06-65 | JFK | | | JFK | | |
| | 0689 | 59765 | MERCER | | D.E. | 12-06-65 | | 9 | | CP 300 MIA | | R |
| | 0690 | 44551 | JOHNSON | | C.T. | 12-06-65 | | 1 9 | | CP 757 MIA | | R |
| | 0691 | 95172 | WHITAKER | | F.H. | 12-06-65 | | 1 9 | | | | |
| | 0692 | 27307 | FINLEY | | G.P. | 12-06-65 | | 1 9 | | | | |
| | 0693 | 87031 | SYKES | | R.E. | 12-06-65 | | 1 9 | | CP 300 JFK | | R |
| | 0694 | 92361 | MAKENSHAM | | J.A. | 12-06-65 | ATL | | | ATL | | |
| | 0695 | 62495 | MORROW | | B.N. | 12-06-65 | | 1 9 | | | | |
| | 0696 | 16829 | CONFALONE | | J.G. | 12-06-65 | CP 727 MIA | | | CP 727 MIA | | |
| | 0697 | 26627 | FAULKNER | | H.C. | 12-06-65 | | 9 | | | | |
| | 0698 | 29022 | FRASER | | R.R. | 12-13-65 | | 1 9 | | | | |
| | 0699 | 41461 | HORNER | | H.L. | 12-13-65 | | 1 9 | | | | |
| | 0700 | 05446 | BELKNAP | | C.C. | 12-13-65 | PHL | | | PHL | | |
| | 0701 | 86568 | SULLIVAN JR | | J.J. | 12-13-65 | MIA | | | MIA | | |
| | 0702 | 92716 | WALLACE | | G.B. | 12-13-65 | | 1 9 | | | | |
| | 0703 | 35150 | GURLEY | | L.E. | 12-13-65 | JFK | | | JFK | | |
| | 0704 | 84959 | STEECE | | R.B. | 12-13-65 | | 9 | | | | |
| | 0705 | 73356 | RENO JR | | A.J. | 12-13-65 | ATL 1 | | | ATL | | |
| | 0706 | 10933 | BULLOCK | | D.J. | 12-13-65 | | 1 9 | | | | |
| | 0707 | 95361 | WHITE | | W.A. | 12-13-65 | | 1 9 | | CP 757 ATL | | R |
| | 0708 | 90128 | TRAUGER | | H.R. | 12-13-65 | | 1 9 | | | | |
| | 0709 | 78468 | SCHORN | | P.C. | 12-13-65 | | 1 9 | | | | |
| | 0710 | 01080 | ALLISON | | A.B. | 12-13-65 | | 1 9 | | | | |
| | 0711 | 88461 | THOMAS | | C.S. | 12-13-65 | | 1 9 | | | | |
| | 0712 | 41356 | HOPKINS | | J.B. | 12-13-65 | | 1 9 | | | | |
| | 0713 | 86653 | SUNDBERG | | G.L. | 12-13-65 | | 1 9 | | | | |
| | 0714 | 62646 | MOSHER | | T.A. | 12-13-65 | | 9 | | | | |
| | 0715 | 09573 | BRITZIUS | | E.K. | 12-20-65 | | 1 9 | | CP DC9 ATL | | |
| | 0716 | 48337 | KIRKHAM | | D.E. | 01-10-66 | JFK | | | JFK | | |
| | 0717 | 14096 | CHAPPELL | | K.A. | 01-10-66 | | 1 9 | | | | |
| | 0718 | 21935 | DESKIN | | G.A. | 01-10-66 | | 1 9 | | | | |
| | 0719 | 40337 | HOCKENBROUGH | | R.H. | 01-10-66 | | 1 9 | | | | |
| | 0720 | 16125 | COKER JR | | J.R. | 01-10-66 | | 1 9 | | | | |
| | 0721 | 65010 | NORDHAUS | | R.L. | 01-10-66 | | 1 9 | | | | |
| | 0722 | 81613 | SIZEMORE | | S.E. | 01-10-66 | ATL 1 | | | ATL | | |
| | 0723 | 22999 | DONOVAN | | M.D. | 01-10-66 | | 1 9 | | | | |
| | 0724 | 54171 | LUTZ | | D.D. | 01-10-66 | PHL | | | PHL | | |
| | 0725 | 20604 | DAVISON | | J.L. | 01-10-66 | | 1 9 | | | | |
| | 0726 | 76555 | RUSSELL | | R.L. | 01-10-66 | | 1 9 | | | | |
| | 0727 | 44590 | JOHNSON | | M.A. | 01-10-66 | | 1 9 | | | | |
| | 0728 | 71711 | QUIGLEY | | R.E. | 01-11-66 | | 1 9 | | | | |
| | 0729 | 75131 | RODI | | R.A. | 01-11-66 | | 1 9 | | | | |
| | 0730 | 21088 | DAWSON | | P.L. | 02-07-66 | | 1 9 | | | | |
| | 0731 | 99615 | ZINN | | T.E. | 02-07-66 | | 9 | | | | |
| | 0732 | 96752 | WILLIS | | H.J. | 02-07-66 | | 9 | | | | |
| | 0733 | 51266 | LAVARELLO | | E.F. | 02-07-66 | CP L11 ATL 1 | | | CP L11 ATL | | |
| | 0734 | 95185 | WHITEAKER | | J.D. | 02-07-66 | | 1 9 | | CP 300 JFK | | R |
| | 0735 | 61165 | MITCHELL | | J.G. | 02-07-66 | | 1 9 | | | | |
| | 0736 | 26016 | EVANS JR | | F.H. | 02-07-66 | DCA | | | DCA | | |
| | 0737 | 26347 | FAIRCLOTH | | W.B. | 02-07-66 | | 1 9 | | | | |

- - - - - IDENT CODE - - - - -

| | | SUPERVISORY CODE |
|---|---|---|
| 1 = CURTAILED | 5 = 28-G-1B - UPGRADE | A = WAIT FOR CP-727 |
| 2 = DISPLACED | 6 = 28-J | B = WAIT FOR CP-DC9 |
| 3 = 28-G-6A - 15 MONTH LOCK | 7 = 28-L-3C | C = GAIN FURTHER EXPERIENCE |
| 4 = 28-G-6B - 15 MONTH LOCK | 8 = 28-G-6A - 24 MONTH LOCK | U = UNASSIGNED |

SUPERVISORY CODE
* = 950 - DOMICILE
# = 950 - TRAINING
9 = SPECIAL

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0805 | 49476 | KORMYLO | G.J. | 05-02-66 | | 1 9 | | | | |
| | 0806 | 09811 | BROPHY | R.T. | 05-02-66 | JFK | | | JFK | | |
| | 0807 | 59293 | MCNEILL III | J. | 05-02-66 | | 1 9 | | JFK | | |
| | 0808 | 66677 | PAGE | D.C. | 05-02-66 | | 1 9 | | | | |
| | 0809 | 32525 | GOACHEE JR | J.C. | 05-02-66 | | 1 9 | | CP 757 JFK | | R |
| | 0810 | 70894 | PRESCOTT | R.C. | 05-02-66 | | 1 79 | | | | |
| | 0811 | 92182 | VYFVINKEL | D. | 05-08-66 | | | | | | |
| | 0812 | 58762 | MCKENNA | C.E. | 05-09-66 | CP 300 JFK | 1 | CP L11 JFK-BPT | CP 300 MIA | 1 | |
| | 0813 | 33051 | GORDON | J.B. | 05-09-66 | | 1 9 | | | | |
| | 0814 | 54439 | MACHAUER | N.A. | 05-09-66 | | 1 9 | | | | |
| | 0815 | 90675 | TURNER | J.H. | 05-09-66 | BOS | | | BOS | | |
| | 0816 | 52077 | LEONARD | C.F. | 05-09-66 | | 1 79 | | | | |
| | 0817 | 33065 | GORRIE | G.W. | 05-09-66 | CP DC9 ATL | 1 | | CP DC9 ATL | | |
| | 0818 | 01551 | AMMONS | H.B. | 05-09-66 | | 1 9 | | | | |
| | 0819 | 38524 | HEITZMAN | R.J. | 05-09-66 | | 1 9 | | | | |
| | 0820 | 21513 | DEERING | O.R. | 05-09-66 | | 1 9 | | | | |
| | 0821 | 03924 | BARCANIC | T.J. | 05-09-66 | DCA | | | DCA | | |
| | 0822 | 97192 | WINTER | J.L. | 05-09-66 | | 1 9 | | | | |
| | 0823 | 45426 | JONES | G.E. | 05-09-66 | ATL | | | ATL | | |
| | 0824 | 24653 | EDELEN | E.J. | 05-09-66 | DCA | | | DCA | | |
| | 0825 | 58172 | MCEACHERN | R.J. | 05-09-66 | | 1 9 | | | | |
| | 0826 | 65006 | NORDIN | L.J. | 05-09-66 | JFK | 1 | | JFK | | |
| | 0827 | 88854 | THOMPSON | D.R. | 05-09-66 | | 1 9 | | | | |
| | 0828 | 61154 | MISSANELLI | J.E. | 05-31-66 | JFK | | | JFK | | |
| | 0829 | 20453 | DAVIS JR | C.S. | 05-31-66 | | 1 9 | | | | |
| | 0830 | 98691 | YANES VIDAL | M. | 05-31-66 | CP L11 JFK | 1 | | CP L11 JFK | | |
| | 0831 | 93931 | WEBB JR | R. | 05-31-66 | JFK | | | JFK | | |
| | 0832 | 18461 | CRAIG | R.L. | 05-31-66 | ATL | | | ATL | | |
| | 0833 | 19513 | CURTIS | J.C. | 05-31-66 | | 1 9 | | | | |
| | 0834 | 44697 | JOHNSON | W.R. | 05-31-66 | | 1 9 | | | | |
| | 0835 | 71209 | PROUTY | D.N. | 05-31-66 | BOS | | | BOS | | |
| | 0836 | 82148 | SMITH | D.R. | 05-31-66 | | 1 9 | | | | |
| | 0837 | 79213 | SEAMANS JR | R.T. | 05-31-66 | | 1 9 | | | | |
| | 0838 | 05889 | BERGER | H.T. | 05-31-66 | | 1 9 | | | | |
| | 0839 | 29458 | FRISON | W.R. | 05-31-66 | | 1 9 | | | | |
| | 0840 | 93159 | WARREN III | J.E. | 05-31-66 | | 1 9 | | | | |
| | 0841 | 59408 | MCRAE | J.D. | 05-31-66 | | 1 9 | | | | |
| | 0842 | 10415 | BRUNDAGE JR | G.H. | 05-31-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 0843 | 11217 | BURSON | R.F. | 06-06-66 | | 9 | | | | |
| | 0844 | 50637 | LANKFORD | H.A. | 06-06-66 | MIA | | | MIA | | |
| * | 0845 | 57267 | MCCARTHY JR | J.I. | 06-06-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 0846 | 60739 | MILLS | D.L. | 06-06-66 | | 1 9 | | | | |
| | 0847 | 31878 | GILLIAM | A.H. | 06-06-66 | JFK | | | JFK | | |
| | 0848 | 22752 | DODDS | J.I. | 06-06-66 | ATL | | | ATL | | |
| | 0849 | 35079 | GULBRANDSEN | G.E. | 06-06-66 | | 1 9 | | | | |
| | 0850 | 19794 | DAILEY JR | W.O. | 06-06-66 | | 1 9 | | | | |
| | 0851 | 62807 | MOUNT JR | C.K. | 06-06-66 | | 1 9 | | | | |
| | 0852 | 26455 | FARMER | A.J. | 06-06-66 | | 1 9 | | | | |
| | 0853 | 62607 | MOSELY | H.D. | 06-06-66 | | 1 9 | | | | |
| | 0854 | 20019 | DANGERFIELD | J.M. | 06-06-66 | | 1 9 | | | | |
| | 0855 | 98470 | HYATT JR | J.W. | 06-06-66 | | 1 9 | | | | |
| | 0856 | 30586 | GAREN | R.E. | 06-13-66 | | 1 9 | | | | |
| | 0857 | 97954 | WOODWARD | J.A. | 06-13-66 | JFK | 1 | | JFK | | |
| | 0858 | 42135 | HUDSON | A.P. | 06-13-66 | | 9 | | | | |
| | 0859 | 14717 | CHILTON | T.E. | 06-13-66 | | 9 | | | | |
| | 0860 | 01824 | ANGLIN | C.D. | 06-13-66 | | 9 | | CP 757 ATL | | R |
| | 0861 | 67861 | PAYNE JR. | D.P. | 06-13-66 | | 1 79 | | | | |
| | 0862 | 01835 | ANKROM JR. | R.B. | 06-13-66 | | 1 9 | | | | |
| | 0863 | 25055 | ELDRIDGE | T.M. | 06-13-66 | | 1 9 | | | | |
| | 0864 | 99184 | ZACCARIA | A.L. | 06-13-66 | | 1 79 | | | | |
| | 0865 | 16539 | COLLINS | R.L. | 06-13-66 | | 1 79 | | | | |
| | 0866 | 85705 | STIFFLER | R.A. | 06-13-66 | | 9 | | | | |
| | 0867 | 45316 | JONES | R.B. | 06-13-66 | | 1 9 | | | | |
| | 0868 | 88268 | THACKER | L.C. | 06-13-66 | | 1 9 | | | | |
| | 0869 | 16294 | COLLER JR. | H.A. | 06-13-66 | JFK | | | JFK | | |
| | 0870 | 46576 | KEELER JR | R.L. | 06-20-66 | CP 727 MIA | 1 | CP 300 MIA-BPT | CP 727 MIA | | CP 300 MIA-BPT |
| | 0871 | 73031 | REGAN | J.H. | 06-20-66 | ATL | | | ATL | | |

```
----------------- IDENT CODE -----------------
1 = CURTAILED                    5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727           SUPERVISORY CODE
2 = DISPLACED                    6 = 28-J                     B = WAIT FOR CP-DC9           * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                  C = GAIN FURTHER EXPERIENCE   ‡ = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED                ə = SPECIAL
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0939 | 96685 | WILLIAMSON | K.H. | 07-18-66 | | 1 9 | | | | |
| | 0940 | 97653 | WOOD | T.R. | 07-18-66 | CP 727 ATL | 1 7 | | CP 757 MIA | 8 | |
| | 0941 | 78592 | SCHUPPERT | L.A. | 07-18-66 | | 1 9 | | | | |
| | 0942 | 10751 | BULMIDAS | J.J. | 07-18-66 | | 1 9 | | | | |
| | 0943 | 75236 | ROESLER | R.M. | 07-18-66 | | 1 9 | | | | |
| | 0944 | 39081 | HERREN | R.S. | 07-18-66 | ATL | | | ATL | | |
| | 0945 | 98291 | WRIGHT | D.S. | 07-18-66 | | 1 9 | | CP 727 MIA | R | |
| | 0946 | 77937 | SCHAAR | D.C. | 07-18-66 | | 1 9 | | | | |
| | 0947 | 91758 | VICE | G.M. | 07-18-66 | | 1 9 | | | | |
| | 0948 | 86433 | STURGEON | S.J. | 07-18-66 | | 1 9 | | | | |
| | 0949 | 23101 | DORAN | B.R. | 07-18-66 | | 1 9 | | | | |
| | 0950 | 20587 | DAVIS | R.E. | 07-18-66 | MIA | | | MIA | | |
| | 0951 | 49119 | KOBLAS | J.J. | 07-18-66 | | 1 9 | | CP DC9 ATL | | |
| | 0952 | 68982 | PETERS | J.E. | 07-18-66 | | 1 9 | | | | |
| | 0953 | 31155 | GEIGER | H.G. | 07-25-66 | ATL | | | ATL | | |
| | 0954 | 77483 | SANDUSKY | J.R. | 07-25-66 | | 1 9 | | | | |
| | 0955 | 28912 | FRADENBURG | J.L. | 07-25-66 | | 9 | | | | |
| | 0956 | 43733 | JAMES | P.B. | 07-25-66 | | 1 9 | | | | |
| | 0957 | 03867 | BANKSTON | E.L. | 07-25-66 | | | | | | |
| | 0958 | 68962 | PETAGNA | D.S. | 07-25-66 | | 1 9 | | | | |
| | 0959 | 49424 | KOPP | W.A. | 07-25-66 | ATL | 1 | | ATL | | |
| | 0960 | 24095 | DUNN | T.P. | 07-25-66 | | 1 9 | | | | |
| | 0961 | 26333 | FAIRCHILD | R.R. | 08-01-66 | | 1 9 | | | | |
| | 0962 | 86501 | SUGGS | R.L. | 08-01-66 | ATL | | | ATL | | |
| | 0963 | 55890 | MARTIN | J.J. | 08-01-66 | | 1 9 | | | | |
| | 0964 | 50120 | KYLE | J.P. | 08-01-66 | | 1 9 | | | | |
| | 0965 | 09528 | BRODERICK | P.M. | 08-01-66 | | 1 9 | | | | |
| | 0966 | 54168 | LUTZ | J.C. | 08-01-66 | JFK | | | JFK | | |
| | 0967 | 62479 | MORRISON | F.B. | 08-01-66 | | 1 9 | | | | |
| | 0968 | 03603 | BALAUN | J.A. | 08-01-66 | | 1 9 | | | | |
| | 0969 | 65429 | OCONNOR | B.T. | 08-01-66 | | 1 9 | | | | |
| | 0970 | 70659 | POTTER | M.H. | 08-01-66 | | 1 9 | | CP 727 MIA | R | |
| | 0971 | 70019 | PLESSNER | J.B. | 08-01-66 | | 1 79 | | | | |
| | 0972 | 52639 | LINGNER | R.F. | 08-01-66 | | 1 | | CP 727 ATL | R | |
| ⓐ | 0973 | 54989 | MALCHOW | K.R. | 08-01-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 0974 | 86267 | STROMAN JR | H.T. | 08-01-66 | | 1 | | | | |
| | 0975 | 80290 | SHEPARD | R.B. | 08-08-66 | | 1 9 | | | | |
| | 0976 | 59095 | MCLEOD JR | R.A. | 08-08-66 | | 1 9 | | | | |
| | 0977 | 42114 | HUDDLESTON | N.M. | 08-08-66 | | 1 9 | | | | |
| | 0978 | 43253 | INGOGLIA | P.C. | 08-08-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 0979 | 52137 | LESESNE JR | W.E. | 08-08-66 | | 1 9 | | | | |
| | 0980 | 40176 | HISEL | L.H. | 08-08-66 | | 1 9 | | CP 727 ATL | | |
| | 0981 | 98717 | YARBROUGH | F.L. | 08-08-66 | | 1 9 | | | | |
| | 0982 | 27735 | FLEISCHMAN | J.C. | 08-08-66 | | 1 9 | | | | |
| | 0983 | 59088 | MCLENDON | G.A. | 08-08-66 | ATL | | | ATL | | |
| | 0984 | 20355 | DAVIDSON | J. | 08-08-66 | ATL | | | ATL | | |
| | 0985 | 52270 | LEWIS | G.M. | 08-08-66 | JFK | | | JFK | | |
| | 0986 | 07031 | BLOUNT III | G.A. | 08-08-66 | | 1 9 | | | | |
| | 0987 | 80885 | SHUDTZ | C.L. | 08-08-66 | | 1 9 | | | | |
| * | 0988 | 16997 | CONSER | R.W. | 08-15-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 0989 | 74791 | ROBERTSON JR | A.J. | 08-15-66 | | 1 9 | | | | |
| | 0990 | 86183 | STRIKER | R.C. | 08-15-66 | | 1 9 | | | | |
| | 0991 | 75083 | ROCHE JR | J.S. | 08-15-66 | | 1 9 | | | | |
| | 0992 | 71665 | QUAYLE | R.G. | 08-15-66 | JFK | | | JFK | | |
| | 0993 | 41777 | HOWARD | C.H. | 08-15-66 | ATL | | | ATL | | |
| | 0994 | 96735 | WILLINGHAM III | R.B. | 08-15-66 | CP DC9 ATL | 1 | | CP DC9 ATL | | |
| | 0995 | 79480 | SELF | G.H. | 08-15-66 | | 1 9 | | | | |
| | 0996 | 27607 | FITZGIBBON | J.A. | 08-15-66 | | 1 9 | | | | |
| | 0997 | 90261 | TRIGO | J.A. | 09-13-43 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 0998 | 84167 | SPITLER | C.A. | 08-15-66 | CP 300 ATL | 1 | | CP 300 ATL | | |
| | 0999 | 33265 | GRAY | H.P. | 08-15-66 | | 1 9 | | | | |
| | 1000 | 94760 | HESTON | P.D. | 08-15-66 | | 1 9 | | | | |
| | 1001 | 95841 | WIENBARG JR | F.H. | 08-22-66 | | 1 9 | | | R | |
| | 1002 | 18061 | COUBAN | R.S. | 08-22-66 | CP 727 DCA | 1 | | CP DC9 ATL | | |
| | 1003 | 57359 | MCCLELLAN | D.V. | 08-22-66 | MIA | | | CP 757 ATL MIA | | |
| ⓐ | 1004 | 91480 | VAUGHAN | H.J. | 08-22-66 | CP 727 MIA | | | CP 727 MIA | | |
| | 1005 | 78952 | SCOTT | J.J. | 08-29-66 | | 1 9 | | | | |

- - - - - - - - - - IDENT CODE - - - - - - - - - - - -

1 = CURTAILED                    5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727              SUPERVISORY CODE
2 = DISPLACED                    6 = 28-J                     B = WAIT FOR CP-DC9             * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                  U = GAIN FURTHER EXPERIENCE    # = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED                 ⓐ = SPECIAL

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1072 | 71229 | PRUD HOMME | M.K. | 10-03-66 | | 1 9 | | CP DC9 ATL | | |
| | 1073 | 05284 | BEER | W.G. | 10-03-66 | | 1 9 | | CP 757 ATL | 8 | |
| | 1074 | 73466 | REYNOLDS | D.D. | 10-03-66 | ATL | 1 | | ATL | | |
| | 1075 | 50242 | LAFOLLETTE | H.M. | 10-03-66 | JFK | | | JFK | | |
| | 1076 | 54012 | LUHRMAN | C.R. | 10-03-66 | | 1 9 | | | | |
| | 1077 | 79373 | SEGARS | D.J. | 10-03-66 | | 1 9 | | | | |
| # | 1078 | 21973 | DEVEREAUX | J.A. | 10-03-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 1079 | 63155 | MUNOZ JR | R.M. | 09-13-63 | | 1 9 | | | | |
| | 1080 | 38357 | HEDDON | C. | 10-03-66 | | 1 79 | | | | |
| | 1081 | 72881 | REED | M.D. | 10-03-66 | | 1 9 | | | | |
| | 1082 | 35873 | HALLING | G.L. | 10-03-66 | | 1 79 | | | | |
| | 1083 | 27221 | FILLER | R.E. | 10-10-66 | CP 727 MIA | 1 | | CP DC9 ATL | 6 | |
| | 1084 | 45432 | JONES | T.D. | 10-10-66 | MIA | | | MIA | | |
| | 1085 | 44699 | JOHNSON II | E.H. | 10-10-66 | | 1 9 | | | | |
| | 1086 | 30982 | GAUMNITZ | T.G. | 10-10-66 | | 1 9 | | | | |
| | 1087 | 31064 | GAYLER | A.N. | 10-10-66 | | 1 9 | | | | |
| | 1088 | 61681 | MOORE JR | R.E. | 10-10-66 | | 1 79 | | CP 727 JFK | | |
| | 1089 | 68393 | PENCE III | W.E. | 10-10-66 | JFK | | | JFK | | |
| | 1090 | 22542 | DINAN | F.E. | 10-10-66 | | 1 9 | | | | |
| | 1091 | 03268 | BAILEY | R.O. | 10-10-66 | | 1 9 | | | | |
| | 1092 | 63619 | MYERS | C.B. | 10-10-66 | | 1 9 | | | | |
| | 1093 | 12754 | CARE | J.O. | 10-10-66 | | 1 9 | | | | |
| | 1094 | 66316 | ORR III | A. | 10-10-66 | | 1 9 | | | | |
| | 1095 | 10959 | BUNDRANT | M.D. | 10-10-66 | | 9 | | | | |
| | 1096 | 50187 | GALLENTINE | W.J. | 10-10-66 | DCA | | | DCA | | |
| | 1097 | 73162 | REILLY | R.R. | 10-10-66 | | 9 | | | | |
| | 1098 | 24072 | DUNLAP | M.C. | 10-10-66 | | 9 | | CP 757 ATL | R | |
| | 1099 | 15061 | CLARK JR | R.F. | 10-10-66 | | 1 9 | | | | |
| | 1100 | 36083 | HANSEN | P.N. | 10-10-66 | | 1 9 | | CP 757 JFK | | |
| | 1101 | 12717 | CAPON | R.E. | 10-10-66 | | 1 9 | | CP 727 MIA | | |
| * | 1102 | 49459 | KORCZYNSKI | E.J. | 10-10-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 1103 | 25203 | ELLIOTT | P.D. | 10-17-66 | JFK | | | JFK | | |
| | 1104 | 31379 | GEORGI | E.H. | 10-17-66 | CP 727 MIA | 1 | CP 300 JFK-BPT | CP 727 MIA | | CP 300 JFK-BPT |
| | 1105 | 55809 | MARTIN | J.B. | 10-17-66 | | | | | | |
| | 1106 | 89477 | TILLES | J.M. | 10-17-66 | MIA | | | MIA | | |
| | 1107 | 43893 | JANSEN | C.H. | 10-17-66 | MIA | | | MIA | | |
| | 1108 | 47652 | KILIAN | C.J. | 10-17-66 | | 9 | | | | |
| | 1109 | 02548 | ARNOLD | E.C. | 10-17-66 | | 1 9 | | | | |
| | 1110 | 36055 | HAMNER | H.N. | 10-17-66 | | 1 9 | | | | |
| | 1111 | 52272 | LEWIS | K.E. | 10-17-66 | | 9 | | | | |
| | 1112 | 61701 | MOORE | A.L. | 10-17-66 | ATL | | | ATL | | |
| | 1113 | 37984 | HAYLES | J.E. | 10-17-66 | ATL | | | ATL | | |
| | 1114 | 22191 | DIBBLE | D.D. | 10-17-66 | | 1 9 | | | | |
| | 1115 | 88866 | THOMPSON | R.H. | 10-17-66 | | 1 9 | | | | |
| | 1116 | 47545 | KIBBE | J.H. | 10-17-66 | | 9 | | | | |
| | 1117 | 65028 | NORMAN | B.M. | 10-17-66 | ATL | | | ATL | | |
| | 1118 | 63801 | NEAL | J.S. | 10-17-66 | MIA | | | MIA | | |
| | 1119 | 30652 | GARRECHT | C.P. | 10-24-66 | | 1 9 | | CP DC9 ATL | | |
| | 1120 | 88814 | THOMPSON | J.L. | 10-24-66 | MIA | | | MIA | | |
| | 1121 | 10659 | BUCHANAN | T.E. | 10-24-66 | | 1 9 | | CP DC9 ATL | | |
| | 1122 | 70759 | POWELL | W.J. | 10-24-66 | | 1 79 | | | | |
| | 1123 | 07029 | BLOSSER | R.C. | 10-24-66 | DCA | | | DCA | | |
| | 1124 | 94226 | MEIDKNECHT III | F.A. | 10-24-66 | | 1 9 | | | | |
| | 1125 | 23565 | DREHES | B.R. | 10-24-66 | | 9 | | CP 727 ATL | R | |
| | 1126 | 71786 | RABIN | L.M. | 10-24-66 | | 1 9 | | | | |
| | 1127 | 77376 | SANDERS | H.L. | 10-24-66 | | 1 9 | | | | |
| | 1128 | 56692 | MAXWELL | C. | 10-24-66 | CP 300 MIA | 8 | | CP 300 MIA | | |
| | 1129 | 15049 | CLARK | R.G. | 10-24-66 | MIA | | | MIA | | |
| | 1130 | 71675 | QUEEN | J.C. | 10-24-66 | | 1 9 | | CP 757 MIA | 8 | |
| | 1131 | 06626 | BJORK | R.J. | 10-24-66 | CP 727 MIA | | | CP 727 MIA | | |
| | 1132 | 60013 | MEYER | J.H. | 10-24-66 | | 1 9 | | | | |
| | 1133 | 07892 | BOSTON | D.J. | 10-31-66 | DCA | | | DCA | | |
| | 1134 | 63614 | MYERS | T.C. | 10-31-66 | ORD | | | ORD | | |
| | 1135 | 56288 | MASON | P.A. | 10-31-66 | | 1 9 | | CP DC9 ATL | | |
| | 1136 | 36860 | HARRIS | J.P. | 10-31-66 | | 9 | | | | |
| | 1137 | 69556 | PIATT | G.D. | 10-31-66 | JFK | | | JFK | | |
| | 1138 | 60181 | MIKK | A. | 10-31-66 | | 9 | | | | |

- - - - - - - - - - - - - - IDENT CODE - - - - - - - - - - - - -
1 = CURTAILED                5 = 28-G-1B - UPGRADE           A = WAIT FOR CP-727
2 = DISPLACED                6 = 28-J                        B = WAIT FOR CP-DC9
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C                     C = GAIN FURTHER EXPERIENCE
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK     U = UNASSIGNED

SUPERVISORY CODE
* = 950 - DOMICILE
# = 950 - TRAINING
9 = SPECIAL

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1206 | 67911 | PEACON | R.C. | 11-28-66 | | 1 9 | | CP 727 MIA | R | |
| | 1207 | 22204 | DIBICCARI | D. | 11-28-66 | | 1 9 | | | | |
| | 1208 | 81364 | SIMMONS | S.C. | 11-28-66 | MIA 1 | | | MIA | | |
| | 1209 | 44583 | JOHNSON | L.L. | 11-28-66 | | 9 | | | | |
| | 1210 | 42582 | HUNT | H.L. | 11-28-66 | | 1 9 | | CP DC9 ATL | | |
| | 1211 | 88211 | TERRY | R.A. | 11-28-66 | | 1 9 | | | | |
| | 1212 | 68553 | PERFETTI | A. | 11-28-66 | | 1 9 | | | | |
| | 1213 | 52125 | LERNER | F.N. | 11-28-66 | | 1 9 | | | | |
| | 1214 | 76945 | RYDEEN | R.J. | 11-28-66 | BOS | | | BOS | | |
| | 1215 | 44695 | JOHNSON | H.M. | 11-28-66 | | 1 9 | | | | |
| | 1216 | 86830 | SMEEDLER | R.D. | 11-28-66 | ORD | | | ORD | | |
| | 1217 | 00272 | ADAMS JR | C.M. | 11-28-66 | | 9 | | CP 757 JFK | R | |
| | 1218 | 72151 | RANGE | J.L. | 11-28-66 | | 1 9 | | | | |
| | 1219 | 33713 | GREEN | J.L. | 11-28-66 | | 1 9 | | | | |
| | 1220 | 98529 | WYNKOOP II | E.M. | 11-28-66 | MIA | | | MIA | | |
| | 1221 | 04989 | BEACH JR | S.R. | 11-28-66 | | 1 9 | | CP 757 JFK | R | |
| | 1222 | 87279 | TAMS | J. | 11-28-66 | | 1 9 | | | | |
| | 1223 | 03619 | BALKCUM | B.O. | 12-05-66 | | 1 9 | | | | |
| | 1224 | 85679 | STICKNEY | R.M. | 12-05-66 | | 1 9 | | | | |
| | 1225 | 30285 | BALLOMAY | R.E. | 12-05-66 | | 1 9 | | | | |
| | 1226 | 06200 | BIALKO | P.J. | 12-05-66 | | 1 9 | | CP 727 JFK | R | |
| | 1227 | 82202 | SMITH | C.C. | 12-05-66 | | 1 9 | | | | |
| | 1228 | 06143 | BEVERIDGE | A.L. | 12-05-66 | ATL | | | ATL | | |
| | 1229 | 14695 | CHILDERS | C.R. | 12-05-66 | ATL | | | ATL | | |
| | 1230 | 16834 | CONDON | R.L. | 12-05-66 | | 1 9 | | | | |
| | 1231 | 78198 | SCHLICK | C.H. | 12-05-66 | | 1 9 | | | | |
| | 1232 | 54806 | MAGYAR | D.P. | 12-05-66 | ATL | | | ATL | | |
| | 1233 | 93576 | WATSON | J.G. | 12-05-66 | | 1 79 | | | | |
| | 1234 | 44669 | JOHNSON | R.D. | 12-05-66 | | 1 9 | | | | |
| | 1235 | 29445 | FRIDAY | J.L. | 12-05-66 | | 1 9 | | | | |
| | 1236 | 26785 | FELDMAN | A. | 12-05-66 | ATL | | | ATL | | |
| | 1237 | 95243 | WHITE | P.H. | 12-05-66 | | 1 9 | | | | |
| | 1238 | 86402 | STUKES | R.E. | 12-05-66 | | 1 9 | | | | |
| | 1239 | 38513 | HEISTER | R.L. | 12-05-66 | | 1 9 | | | | |
| | 1240 | 37023 | HARRISON | T. | 12-05-66 | | 1 9 | | | | |
| | 1241 | 74537 | ROBERTS | F.A. | 12-05-66 | MIA | | | MIA | | |
| | 1242 | 61419 | MOFFITT | R.E. | 12-12-66 | | 9 | | | | |
| | 1243 | 00831 | ALEHINE | H.M. | 12-12-66 | | 1 9 | | CP DC9 ATL | | |
| | 1244 | 71788 | RABUCZENSKI | T.A. | 12-12-66 | | 1 79 | | | | |
| | 1245 | 25790 | ERICKSON | R.M. | 12-12-66 | | 1 9 | | | | |
| | 1246 | 55068 | MANKIN | G.D. | 12-12-66 | | 1 9 | | | | |
| | 1247 | 56476 | MATTIS | G.K. | 12-12-66 | | 1 79 | | | | |
| ə | 1248 | 82213 | SMITH | D.L. | 12-12-66 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 1249 | 55415 | MARINO | E.H. | 12-12-66 | | 1 9 | | CP 727 MIA | R | |
| | 1250 | 88264 | TEW JR | B.D. | 12-12-66 | DCA | 1 | | DCA | | |
| | 1251 | 78975 | SCOTT | N.R. | 01-03-67 | JFK | | | JFK | | |
| | 1252 | 36856 | HARRIS | D.A. | 01-03-67 | | 1 9 | | CP 727 MIA | R | |
| | 1253 | 50541 | LANDIS | D.M. | 01-03-67 | | 1 9 | | | | |
| | 1254 | 91044 | VALLECILLO | L.M. | 09-16-63 | ATL | | | ATL | | |
| | 1255 | 20071 | DANIELS | L.A. | 01-03-67 | | 1 9 | | | | |
| | 1255A | 53115 | LOEB | G.K. | 01-03-67 | | | | | | |
| | 1256 | 69043 | PETERSON JR | H.H. | 01-03-67 | | 1 9 | | CP 727 MIA | R | |
| | 1257 | 21665 | DELLINGER | L.L. | 01-03-67 | | 1 9 | | | | |
| | 1258 | 91953 | VOLLE | C.E. | 01-03-67 | | 1 9 | | | | |
| | 1259 | 89376 | TIBBETTS | J.H. | 01-03-67 | | 1 9 | | | | |
| | 1260 | 69477 | PHILLIPS | H.C. | 01-03-67 | | 1 9 | | | | |
| | 1261 | 25197 | ELLIS | R.L. | 01-03-67 | | 1 9 | | | | |
| | 1262 | 84763 | STARKMAN | E.M. | 01-03-67 | | 1 9 | | | | |
| | 1263 | 90219 | TREMMEL | P.G. | 01-03-67 | | 1 9 | | | | |
| | 1264 | 54404 | LYTER JR | H.B. | 01-03-67 | | 1 9 | | | | |
| | 1265 | 32240 | GIROD | L.D. | 01-03-67 | | 1 9 | | | | |
| * | 1266 | 04027 | BARBER JR | F.M. | 01-03-67 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 1267 | 60486 | MILLER | S.D. | 01-03-67 | CP 300 MIA | 1 | | CP 300 MIA | | |
| | 1268 | 45451 | JONES | H.F. | 01-03-67 | | 1 9 | | | | |
| | 1269 | 54073 | LUNDBLAD | J.L. | 01-03-67 | | 9 | | | | |
| | 1270 | 72504 | RAHLS III | F.H. | 01-03-67 | | 1 9 | | | | |
| | 1271 | 24288 | DURIE | R.T. | 01-03-67 | JFK | | | JFK | | |

-------- IDENT CODE --------
1 = CURTAILED                 5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727        SUPERVISORY CODE
2 = DISPLACED                 6 = 28-J                     8 = WAIT FOR CP-DC9        * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C                  C = GAIN FURTHER EXPERIENCE   # = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED             ə = SPECIAL

09/13/89                    PILOT LISTING BY SENIORITY NUMBER - REPORT 14                    PAGE...21        MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | NAME INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1339 | 66775 | PALMER III | D.M. | 02-13-67 |  | 1 9 |  | CP 757 ATL | 8 |  |
|  | 1340 | 44681 | JOHNSON | R.S. | 02-13-67 |  | 1 79 |  | CP 727 ATL | R |  |
| * | 1341 | 36917 | HARTMAN | E.D. | 02-13-67 | CP 300 ATL | 1 |  | CP 300 ATL |  |  |
|  | 1342 | 44011 | JASKEWICZ JR | A.A. | 02-13-67 |  | 1 79 |  | CP 757 ATL | 8 |  |
|  | 1343 | 96777 | MILLS | R.D. | 02-13-67 |  |  |  |  |  |  |
|  | 1344 | 21236 | DE ARMON | J.A. | 02-20-67 |  | 9 |  |  |  |  |
|  | 1345 | 66507 | OMENS | F.G. | 02-20-67 | JFK | 1 |  | JFK |  |  |
|  | 1346 | 28003 | FLYNN | M.J. | 02-20-67 |  |  |  |  |  |  |
|  | 1347 | 32601 | GODWIN | J.L. | 02-20-67 | ATL |  |  | ATL |  |  |
|  | 1348 | 52283 | LEWIS | G.N. | 02-20-67 |  | 1 9 |  |  |  |  |
|  | 1349 | 04216 | BARTLETT | D.A. | 02-20-67 | MIA |  |  | MIA |  |  |
|  | 1350 | 72513 | RAY | C.G. | 02-20-67 |  | 1 9 |  |  |  |  |
|  | 1351 | 33014 | GORE | S.T. | 02-20-67 |  | 1 9 |  |  |  |  |
|  | 1352 | 32051 | GILSKY | E.C. | 02-20-67 |  | 1 9 |  |  |  |  |
|  | 1353 | 67443 | PASCHALL | T.M. | 02-20-67 | CP 300 ATL | 1 |  | CP 300 ATL |  |  |
|  | 1354 | 90286 | TRISTANI | J.P. | 02-20-67 |  | 1 9 |  | CP DC9 ATL |  |  |
|  | 1355 | 20597 | DAVIS | H.R. | 02-20-67 | ATL | 1 |  | ATL |  |  |
|  | 1356 | 49537 | KOTZIERS | M.J. | 02-20-67 | MIA | 1 |  | MIA |  |  |
|  | 1357 | 46477 | KEATING JR | H.J. | 02-20-67 |  | 1 9 |  | CP DC9 DCA | R |  |
|  | 1358 | 91847 | VILLERS | D.L. | 02-20-67 |  | 1 9 |  | CP 300 DCA 300 | R |  |
|  | 1359 | 24066 | DUNMIRE | N.E. | 02-20-67 |  | 1 9 |  | CP 757 MIA | 8 |  |
|  | 1360 | 59739 | MENTZER | D.M. | 02-20-67 |  | 1 9 |  |  |  |  |
|  | 1361 | 61129 | MISENCIK | P.R. | 02-20-67 |  | 1 9 |  | CP 727 DCA | R |  |
|  | 1362 | 69363 | PEMTHERS | J.T. | 02-20-67 |  | 1 9 |  |  |  |  |
|  | 1363 | 06459 | BISGNANO | C.R. | 02-20-67 | CP 727 JFK | 1 |  | CP 727 JFK |  |  |
|  | 1364 | 14541 | CHESTNUT | P.E. | 02-20-67 |  | 1 79 |  |  |  |  |
|  | 1365 | 39373 | HIATT JR | H.W. | 02-20-67 |  | 1 79 |  | CP DC9 ATL |  |  |
|  | 1366 | 06211 | BIBLE | J.J. | 02-20-67 |  | 1 9 |  |  |  |  |
|  | 1367 | 05429 | BELL | H.L. | 03-06-67 | ATL |  |  | ATL |  |  |
|  | 1368 | 05282 | BEELS | R.L. | 03-06-67 |  | 1 9 |  | CP 727 MIA | R |  |
|  | 1369 | 04639 | BASS | N.T. | 03-06-67 |  | 9 |  |  |  |  |
|  | 1370 | 83811 | SPAFFORD | J.B. | 03-06-67 |  | 1 9 |  |  |  |  |
|  | 1371 | 16769 | COMBS | C.E. | 03-06-67 | ATL |  |  | ATL |  |  |
|  | 1372 | 88284 | THARPE JR | J.A. | 03-06-67 | JFK |  |  | JFK |  |  |
|  | 1373 | 42001 | HOZIE | R.M. | 03-06-67 | MIA |  |  | MIA |  |  |
|  | 1374 | 53276 | LONG | P.A. | 03-06-67 | DCA |  |  | DCA |  |  |
|  | 1375 | 06487 | BISHOP | P.M. | 03-06-67 |  | 9 |  |  |  |  |
|  | 1376 | 64451 | NICCHIA | L.R. | 03-06-67 |  | 1 9 |  | CP 727 MIA | R |  |
|  | 1377 | 61162 | MITCHELL | H.F. | 03-06-67 | BOS |  |  | BOS |  |  |
|  | 1378 | 71869 | RAGAN | H.T. | 03-06-67 |  | 1 9 |  |  |  |  |
|  | 1379 | 14822 | CHRISTENSEN | H.M. | 03-06-67 |  | 1 79 |  |  |  |  |
|  | 1380 | 27754 | FLESHER | R.L. | 03-06-67 |  | 9 |  |  |  |  |
|  | 1381 | 04014 | BARKER | N.H. | 03-06-67 | CP DC9 ATL |  |  | CP DC9 ATL |  |  |
|  | 1382 | 82209 | SMITH | B.L. | 03-06-67 |  | 1 9 |  |  |  |  |
|  | 1383 | 73197 | REITAN SR | A.G. | 03-06-67 |  | 1 9 |  | CP DC9 ATL |  |  |
|  | 1384 | 37903 | HAWKINS | A.C. | 03-06-67 |  | 1 9 |  |  |  |  |
|  | 1385 | 40129 | HIPPS | H.D. | 03-06-67 |  | 1 9 |  | CP DC9 ATL |  |  |
|  | 1386 | 59237 | MCMULLEN | R.L. | 03-06-67 |  | 1 9 |  |  |  |  |
|  | 1387 | 99487 | ZIOBRO | T.J. | 03-06-67 |  | 1 9 |  | CP 727 JFK | R |  |
|  | 1388 | 18890 | CRITTENDEN | C.W. | 03-06-67 | MIA | 1 |  |  |  |  |
|  | 1389 | 18109 | COURTNEY | R.M. | 03-06-67 |  | 1 9 |  |  |  |  |
|  | 1390 | 88889 | THOMPSON II | J.H. | 03-13-67 | JFK |  |  | JFK |  |  |
|  | 1391 | 84159 | SPILLMAN | H.L. | 03-13-67 |  | 9 |  |  |  |  |
|  | 1392 | 36080 | HANLEY | R.G. | 03-13-67 |  | 1 9 |  |  |  |  |
|  | 1393 | 80586 | SHIELDS III | J.A. | 03-13-67 |  | 9 |  |  |  |  |
|  | 1394 | 11487 | BUSCH | K.M. | 03-13-67 | MIA |  |  | MIA |  |  |
|  | 1395 | 28047 | FOERSTERLING | F.J. | 03-13-67 | ATL |  |  | ATL |  |  |
|  | 1396 | 62955 | MULLENS | J.D. | 03-13-67 | ATL |  |  | ATL |  |  |
|  | 1397 | 73362 | RENO | R.M. | 03-13-67 | JFK |  |  | JFK |  |  |
|  | 1398 | 81607 | SIVERSON | H.N. | 03-13-67 |  | 1 79 |  |  |  |  |
|  | 1399 | 64203 | NEMBY | R.E. | 03-13-67 |  | 1 9 |  |  |  |  |
|  | 1400 | 54555 | MAC LENNAN | R.C. | 03-13-67 |  | 1 9 |  |  |  |  |
|  | 1401 | 94405 | WELLMAN | M.A. | 03-13-67 | CP 757 MIA | 1 |  | CP 757 MIA |  |  |
|  | 1402 | 08194 | BOWSER | A.L. | 03-20-67 |  | 1 9 |  | CP 727 JFK | R |  |
|  | 1403 | 25315 | ELLIS JR | J.R. | 03-20-67 |  | 1 9 |  | CP DC9 ATL |  |  |
|  | 1404 | 01640 | ANDERSON | J.P. | 03-20-67 |  | 1 9 |  |  |  |  |
|  | 1405 | 80529 | SHERWIN | R.S. | 03-20-67 |  | 1 9 |  |  |  |  |

```
- - - - - - - - IDENT CODE - - - - -                                              SUPERVISORY CODE
1 = CURTAILED                    5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727        * = 950 - DOMICILE
2 = DISPLACED                    6 = 28-J                     B = WAIT FOR CP-9          $ = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                  C = GAIN FURTHER EXPERIENCE   9 = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1473 | 32648 | GOEN | T.A. | 04-17-67 | IAH | | | IAH | | |
| | 1474 | 36712 | HARN | G.F. | 04-17-67 | | 1 9 | | | | |
| | 1475 | 78387 | SCHNEIDER | D.W. | 04-17-67 | | 1 79 | | | | |
| | 1476 | 73472 | REYNOLDS JR | R.H. | 05-08-67 | | 1 9 | | | | |
| | 1477 | 29657 | FUCHS | J.A. | 05-08-67 | ATL 1 | | | ATL | | |
| | 1478 | 43530 | JACKSON JR | F.H. | 05-08-67 | | 1 9 | | CP DC9 ATL | | |
| | 1479 | 69500 | PHILLIPS | J.L. | 05-08-67 | | 1 9 | | | | |
| | 1480 | 86855 | SWEENEY JR | J.J. | 05-08-67 | | 1 9 | | | | |
| | 1481 | 74101 | RIGG | R.L. | 05-08-67 | | 1 9 | | | | |
| | 1482 | 33051 | GORDON | D.G. | 05-08-67 | | 1 79 | | | | |
| | 1483 | 27400 | FISCHER JR | F.P. | 05-08-67 | | 9 | | | | |
| | 1484 | 16137 | COHN | A.S. | 05-08-67 | | 9 | | | | |
| | 1485 | 94721 | WESTBROOK | W.C. | 05-15-67 | | 9 | | | | |
| | 1486 | 93107 | WARD | J.E. | 05-15-67 | CP DC9 ATL 1 | | CP 300 ATL-BPT | CP DC9 ATL | | CP 300 ATL-BPT |
| | 1487 | 02905 | AURINGER | R.L. | 05-15-67 | CP 300 ATL 1 | | | CP 300 ATL | | |
| | 1488 | 36084 | HANLEY | D.R. | 05-15-67 | | 9 | | | | |
| | 1489 | 89389 | TICKLE | D.R. | 05-15-67 | | 1 9 | | | | |
| | 1490 | 08692 | BRADLEY | W.D. | 05-15-67 | | 9 | | | | |
| | 1491 | 52604 | LINDELL | R.W. | 05-15-67 | JFK | | | JFK | | |
| | 1492 | 63811 | NEARY | D.K. | 05-15-67 | JFK | | | JFK | | |
| | 1493 | 70047 | PLITT | C.H. | 05-15-67 | | 9 | | | | |
| ə | 1494 | 79968 | SHARPE | D.F. | 05-15-67 | CP 757 MIA 1 | | | CP 757 MIA | | |
| | 1495 | 32764 | GOLDEY | H.F. | 05-22-67 | ATL | | | ATL | | |
| | 1496 | 92862 | WALSH JR | L.J. | 05-22-67 | | 9 | | | | |
| * | 1497 | 11048 | BURKE | J.A. | 05-22-67 | MIA 1 | | | MIA | | |
| | 1498 | 05670 | BENNETT | W.D. | 05-22-67 | | 9 | | | | |
| | 1499 | 89704 | TOBY | K.R. | 05-22-67 | | 9 | | | | |
| | 1500 | 52337 | LEWIS JR | T.H. | 05-22-67 | CP 757 ATL | 8 | | CP 757 ATL | | |
| | 1501 | 76301 | ROYCE | W.C. | 05-22-67 | | 1 79 | | | | |
| | 1502 | 03051 | AYLSWORTH | W.E. | 05-22-67 | | 9 | | CP 727 MIA | R | |
| | 1503 | 43540 | JACKSON | J.L. | 05-22-67 | | 9 | | | | |
| | 1504 | 67926 | PEACON III | G.L. | 05-22-67 | | 9 | | | | |
| | 1505 | 36907 | HART | J.G. | 06-05-67 | | 9 | | | | |
| | 1506 | 52579 | LINK | L.A. | 06-05-67 | | 1 9 | | | | |
| | 1507 | 68213 | PEEK | J.H. | 06-05-67 | | 9 | | | | |
| | 1508 | 67009 | PARKER | L.F. | 06-05-67 | | 9 | | CP 727 MIA | | |
| | 1509 | 20077 | DANIELSON | S.A. | 06-05-67 | | 9 | | | | |
| | 1510 | 87484 | TATE | J.T. | 06-05-67 | | 1 9 | | | | |
| | 1511 | 42209 | HUFFERD | J.A. | 06-05-67 | | 1 79 | | | | |
| | 1512 | 29213 | FREED | P.P. | 06-05-67 | CP 727 JFK | | | CP 727 JFK | | |
| | 1513 | 04741 | BAUCH | J.H. | 06-05-67 | | 9 | | CP DC9 ATL | | |
| | 1514 | 03633 | BALDRIDGE JR | J.H. | 07-03-67 | | 1 9 | | CP DC9 ATL | | |
| | 1515 | 14846 | CHRISTOPHER | M.A. | 07-03-67 | | 1 9 | | CP 727 MIA | 8 | |
| | 1516 | 82486 | SMITH | R.L. | 07-03-67 | BOS | | | BOS | | |
| | 1517 | 36723 | HARPER | J.D. | 07-03-67 | | 9 | | | | |
| | 1518 | 55455 | MARKER | P.L. | 07-03-67 | | 1 9 | | | | |
| | 1519 | 46273 | KASHMANIAN | G. | 07-03-67 | JFK | | | JFK | | |
| | 1520 | 24448 | DYER | C.G. | 07-03-67 | BOS | | | BOS | | |
| | 1521 | 97105 | WIMPEE | V.R. | 07-03-67 | | 9 | | | | |
| | 1522 | 46355 | KAY | T.L. | 07-03-67 | | 1 9 | | CP 727 MIA | 8 | |
| | 1523 | 41222 | HOOTON | J.H. | 07-03-67 | | 9 | | CP DC9 ATL | | |
| | 1524 | 82337 | SMITH | W.S. | 07-03-67 | | 9 | | | | |
| | 1525 | 68541 | PERCIVAL | J.H. | 08-07-67 | | 9 | | | | |
| | 1526 | 63284 | MURPHY | T.B. | 08-07-67 | | 1 9 | | CP 757 MIA | 8 | |
| | 1527 | 86438 | STUTEVILLE | W.F. | 08-07-67 | | 9 | | CP 757 MIA | 8 | |
| | 1528 | 88369 | THEIS JR | A.E. | 08-07-67 | | 1 9 | | | | |
| | 1529 | 03813 | BANDY | L.L. | 08-07-67 | | 1 9 | | | | |
| | 1530 | 01841 | ANDREWS | R.E. | 08-07-67 | CP 757 ATL | 8 | | CP 757 ATL | | |
| | 1531 | 70712 | POWELL | E.T. | 08-07-67 | CP 757 MIA 1 | | | CP 757 MIA | | |
| | 1532 | 64791 | NIMS | R.E. | 08-07-67 | | 1 9 | | | | |
| | 1533 | 85682 | STIFEL III | A.C. | 08-07-67 | | 9 | | CP 757 MIA | 8 | |
| | 1534 | 59795 | MERCHANT | J.H. | 08-07-67 | ATL | | | ATL | | |
| | 1535 | 01644 | ANDERSON | N.A. | 08-07-67 | | 1 9 | | | | |
| | 1536 | 30657 | GARY | C.J. | 08-07-67 | | 9 | | CP DC9 ATL | | |
| | 1537 | 05243 | BEDNAREK | R.S. | 08-07-67 | | 1 9 | | | | |
| | 1538 | 66271 | ORLANDO | R.A. | 08-07-67 | | 9 | | CP 727 JFK | R | |
| | 1539 | 50519 | LANE JR | G.B. | 08-07-67 | | 1 9 | | CP 757 MIA | 8 | |

```
- - - - - - - - - - - - - - - - IDENT CODE - - - - - - - - - - - - -        SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727     * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                     B = WAIT FOR CP-DC9     # = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C                C = GAIN FURTHER EXPERIENCE  ə = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1607 | 50412 | LAMBERT JR | S.E. | 04-01-68 | | 9 | | | | |
| | 1608 | 25792 | ESPINOSA JR | R. | 05-01-64 | TXO | | | TXO | | |
| | 1609 | 58793 | MCKEOWN JR | T.M. | 04-01-68 | MIA | | | MIA | | |
| | 1610 | 69144 | PETRITES, JR | J.J. | 05-29-68 | | 9 | | | | |
| | 1611 | 91791 | VINCENT | B.B. | 05-29-68 | CP 757 ATL | 8 | | CP 757 ATL | | |
| | 1612 | 60946 | MINARDI | J.V. | 05-29-68 | CP 757 MIA | 1 7 | | CP 757 MIA | | |
| | 1613 | 90953 | ULERY | J.R. | 05-29-68 | ATL | | | ATL | | |
| | 1614 | 86581 | SULLIVAN, JR | J.E. | 05-29-68 | | 9 | | | | |
| | 1615 | 79767 | SEMELL, JR | H.J. | 05-29-68 | | 9 | | CP DC9 ATL | | |
| | 1616 | 79255 | SECOR | E.F. | 05-29-68 | | 9 | | CP DC9 ATL | | |
| | 1617 | 98737 | YARNELL | F.C. | 05-29-68 | JFK | 8 | | JFK | | |
| | 1618 | 19080 | CROW | K.P. | 05-29-68 | | 9 | | CP 757 ATL | 8 | |
| | 1619 | 55122 | MANN, JR | M.B. | 05-29-68 | | 1 79 | | CP 727 JFK | | R |
| | 1620 | 59004 | MCKNIGHT | J.A. | 06-05-68 | | 9 | | | | |
| | 1621 | 67272 | PARRAMORE | M.L. | 06-05-68 | CP 757 ATL | 8 | | CP 757 ATL | | |
| | 1622 | 64601 | NIXON | J.D. | 06-05-68 | | 1 79 | | CP 757 ATL | 8 | |
| | 1623 | 47795 | KINCAID | J.L. | 06-05-68 | MIA | | | MIA | | |
| | 1624 | 35582 | HAIGHT | R.A. | 06-05-68 | | 1 9 | | | | |
| | 1625 | 66378 | OSIK | R.J. | 06-05-68 | | 9 | | | | |
| | 1626 | 82565 | SMITH | D.M. | 06-05-68 | | 1 9 | | | | |
| | 1627 | 76001 | RUTLAND,III | T.C. | 06-05-68 | | 9 | | | | |
| | 1628 | 64531 | NICKERSON | C.A. | 06-05-68 | | 9 | | CP DC9 ATL | | |
| | 1629 | 72047 | RAMSAY | R.A. | 06-05-68 | | 9 | | | | |
| | 1630 | 22447 | DILLARD, JR | F.L. | 06-05-68 | | 9 | | | | |
| | 1631 | 22763 | DODD | D.R. | 06-05-68 | TXO | | | TXO | | |
| | 1632 | 50453 | LAMPKE | R.H. | 06-05-68 | | 1 79 | | CP 727 MIA | | |
| | 1633 | 06022 | BERRYMAN | L.M. | 06-05-68 | | 1 79 | | CP DC9 ATL | | |
| | 1634 | 19647 | CUSHING | B.F. | 06-05-68 | | 9 | | | | |
| | 1635 | 49960 | KUCKLICK | J.F. | 06-10-68 | | 1 79 | | | | |
| | 1636 | 34250 | GRIER | J.L. | 06-10-68 | | 1 79 | | | | |
| | 1637 | 10301 | BRUBECK,JR | H.C. | 06-10-68 | | | | | | |
| | 1638 | 16811 | CONE | J.E. | 06-10-68 | JFK | | | JFK | | |
| | 1639 | 62471 | MORRISON | E.H. | 06-10-68 | CP DC9 ATL | 2 | | CP 727 ATL | | |
| | 1640 | 24943 | EHLIES | T.D. | 06-10-68 | | 1 9 | | | | |
| | 1641 | 55103 | MALONE | S.J. | 06-10-68 | | 1 9 | | CP 727 MIA | 8 | |
| | 1642 | 34346 | GRIESMAN | S.W. | 06-17-68 | | 1 79 | | | | |
| | 1643 | 80354 | SHEPPARD | G.R. | 06-17-68 | | 1 79 | | | | |
| | 1644 | 44731 | JOHNSON | D.M. | 06-17-68 | MIA | | | MIA | | |
| | 1645 | 91733 | VILLANUEVA | R. | 05-01-64 | | 1 79 | | CP 727 ATL | | R |
| | 1646 | 33356 | GRAHAM | G.L. | 06-17-68 | MIA | | | MIA | | |
| | 1647 | 28903 | FRAIOLI | G. | 06-17-68 | CP 727 JFK | | | CP 727 JFK | | |
| | 1648 | 48294 | KIRBY | G.H. | 06-17-68 | | 9 | | | | |
| | 1649 | 34838 | GROVE | H.A. | 06-17-68 | MIA | | | MIA | | |
| | 1650 | 08009 | BOURQUE, JR | M.P. | 06-17-68 | | 9 | | | | |
| | 1651 | 31398 | GERAGHTY | J.D. | 06-17-68 | | 9 | | CP DC9 ATL | | |
| | 1652 | 62215 | MORREY | F.J. | 06-17-68 | | 9 | | CP DC9 ATL | | |
| | 1653 | 00440 | ADAMS JR | J.T. | 06-17-68 | | 1 79 | | | | |
| | 1654 | 55124 | MANNING | C.H. | 06-17-68 | | 9 | | | | |
| | 1655 | 18199 | COHEN | J.R. | 06-17-68 | | 1 79 | | CP 727 ATL | | R |
| | 1656 | 12346 | CAMPBELL JR | H.L. | 06-17-68 | | 9 | | | | |
| | 1657 | 89898 | TOPCZYNSKI | R.S. | 06-17-68 | | 1 79 | | | | |
| | 1658 | 44730 | JOHNSON | K. | 06-17-68 | CP 300 JFK | 1 7 | | CP 757 MIA | 1 | |
| | 1659 | 57241 | MCCANN | J.P. | 06-17-68 | | 9 | | | | |
| | 1660 | 66368 | OSBORNE | R.A. | 06-17-68 | | 9 | | | | |
| | 1661 | 14236 | CHAPMAN | R.E. | 07-01-68 | | 1 79 | | | | |
| | 1662 | 61802 | MOORE | R.H. | 07-01-68 | | 1 79 | | | | |
| | 1663 | 71364 | PUKNYS | R.J. | 07-01-68 | | 1 9 | | | | |
| | 1664 | 73796 | RIERA | R.A. | 05-01-64 | | 1 9 | | | | |
| | 1665 | 80186 | SHEFTALL,JR | D.M. | 07-01-68 | | 1 9 | | | | |
| | 1666 | 13640 | CASEY | A.B. | 07-01-68 | | 1 9 | | | | |
| | 1667 | 42324 | HUGHES | J. | 07-01-68 | | 1 9 | | | | |
| | 1668 | 64265 | NEWTON,JR | M.D. | 07-01-68 | | 9 | | | | |
| | 1669 | 00442 | ADAMS | R.G. | 07-01-68 | | 1 9 | | | | |
| | 1670 | 75642 | RONEMUS | J.W. | 07-01-68 | | 9 | | | | |
| | 1671 | 26633 | FAUBER | W.E. | 07-01-68 | MIA | | | MIA | | |
| | 1672 | 27155 | FICKLEN,III | J.D. | 07-01-68 | | 1 9 | | CP DC9 ATL | 8 | |
| | 1673 | 25544 | ENGELKE | H.L. | 07-01-68 | | 9 | | CP DC9 ATL | | |

- - - IDENT CODE - - -

| | | |
|---|---|---|
| 1 = CURTAILED | 5 = 2B-G-1B - UPGRADE | A = WAIT FOR CP-727 |
| 2 = DISPLACED | 6 = 2B-J | B = WAIT FOR CP-DC9 |
| 3 = 2B-G-6A - 15 MONTH LOCK | 7 = 2B-L-3C | C = GAIN FURTHER EXPERIENCE |
| 4 = 2B-G-6B - 15 MONTH LOCK | 8 = 2B-G-6A   24 MONTH LOCK | U = UNASSIGNED |

SUPERVISORY CODE
* = 950 - DOMICILE
‡ = 930 - TRAINING
ə = SPECIAL

09/13/89          PILOT LISTING BY SENIORITY NUMBER - REPORT 14          PAGE...27          MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1741 | 14874 | CHRISTY | R.W. | 08-12-68 | | 1 79 | | | | |
| | 1742 | 89881 | TORRES | C.T. | 12-20-64 | | 9 | | | | |
| | 1743 | 02247 | AQUILINO | D. | 08-26-68 | | 1 9 | | | | |
| | 1744 | 23804 | DUGGER | T.R. | 08-26-68 | | 9 | | | | |
| | 1745 | 96994 | WILSON | H.A. | 08-26-68 | CP 757 MIA | 8 | | CP 757 MIA | | |
| | 1746 | 67590 | PATTON JR | J.F. | 08-26-68 | | 9 | | | | |
| | 1747 | 52356 | LEWICKI | J.A. | 08-26-68 | | 1 9 | | CP DC9 ATL | | |
| | 1748 | 73420 | RESING | M.L. | 08-26-68 | | 1 9 | | | | |
| | 1749 | 57581 | MCCORMICK | J.M. | 08-26-68 | | 9 | | | | |
| | 1750 | 30382 | GAMBLE | T.J. | 08-26-68 | | 1 79 | | | | |
| | 1751 | 58635 | MC HENRY | J.R. | 08-26-68 | | 1 9 | | | | |
| | 1752 | 71573 | PUZIO | J.E. | 08-26-68 | | 1 79 | | | | |
| | 1753 | 89875 | TOOLE | O.A. | 08-26-68 | | 9 | | | | |
| | 1754 | 39981 | HINMAN | R.J. | 08-26-68 | MIA | | | MIA | | |
| | 1755 | 21516 | DEETON | J.L. | 08-26-68 | | 9 | | | | |
| | 1756 | 23726 | DUCKWORTH | T.O. | 08-26-68 | | 9 | | CP DC9 ATL | | |
| | 1757 | 62144 | MORGAN | K.S. | 09-09-68 | CP 757 MIA | 1 | | CP 757 MIA | | |
| | 1758 | 89714 | TODD JR | M.D. | 09-09-68 | | 9 | | | | |
| | 1759 | 00448 | ADAMS | J.L. | 09-09-68 | | 9 | | | | |
| | 1760 | 01290 | BELAVAL | E.J. | 12-20-64 | | 1 9 | | | | |
| | 1761 | 91785 | VIETMEYER | P.H. | 09-09-68 | | 1 9 | | CP DC9 ATL | | |
| | 1762 | 67472 | PASCHALL | R.L. | 09-09-68 | | 9 | | CP DC9 ATL | | |
| | 1763 | 48840 | KNEPPER | J.B. | 09-09-68 | | 1 9 | | | | |
| | 1764 | 88903 | THOMPSON | W.L. | 09-09-68 | | 9 | | | | |
| | 1765 | 86803 | SWAIN | J.W. | 09-09-68 | | 9 | | | | |
| | 1766 | 46904 | KEMNA | D.A. | 09-09-68 | | 9 | | | | |
| | 1767 | 49500 | KOSAK | G.F. | 09-09-68 | | 9 | | | | |
| | 1768 | 89717 | TODESCA JR | C.J. | 09-09-68 | | 1 9 | | | | |
| | 1769 | 28564 | FOSTER | R.W. | 09-09-68 | | 1 79 | | CP DC9 ATL | 8 | |
| | 1770 | 53442 | LOSEE | J.D. | 09-09-68 | | 9 | | CP DC9 ATL | | |
| | 1771 | 70313 | POMPONIO JR | J.C. | 09-09-68 | FO L11 MIA | 1 | | CP 727 MIA | 8 | |
| | 1772 | 66454 | OUZTS JR | J.E. | 09-09-68 | | 9 | | CP DC9 ATL | | |
| | 1773 | 18054 | COTTON | T.A. | 09-09-68 | | 9 | | | | |
| | 1774 | 81403 | SIMPSON | L.R. | 09-09-68 | | 9 | | | | |
| | 1775 | 00836 | ALEXANDER | F.J. | 09-16-68 | ATL | | | ATL | | |
| | 1776 | 77449 | SANDERS | J.M. | 09-23-68 | | 9 | | | | |
| | 1777 | 33122 | GOTTA | J.B. | 09-23-68 | | 1 9 | | | | |
| | 1778 | 05700 | BENNETT | C.M. | 09-23-68 | | 1 9 | | | | |
| | 1779 | 57051 | MC ATEE | J.L. | 09-23-68 | | 9 | | | | |
| | 1780 | 51936 | LEHMANN | L.G. | 09-23-68 | | 9 | | | | |
| | 1781 | 47293 | KERNS | R.L. | 09-23-68 | JFK | 1 | | JFK | | |
| | 1782 | 72830 | REECE | H.B. | 09-23-68 | CP 757 ATL | 8 | | CP 757 ATL | | |
| | 1783 | 65342 | OBERLANDER | D.W. | 09-23-68 | | 1 9 | | FO 300 ATL | | |
| | 1784 | 27519 | FISK | E.G. | 09-23-68 | | 9 | | | | |
| | 1785 | 96391 | WILLIAMS | J.E. | 09-23-68 | | 9 | | | | |
| | 1786 | 19502 | CURRAN | T.R. | 09-23-68 | | 9 | | | | |
| | 1787 | 22266 | DICKMAN | G.A. | 09-23-68 | | 1 9 | | | | |
| | 1788 | 96388 | WILLIAMS | J.C. | 09-23-68 | | 9 | | CP DC9 ATL | 8 | |
| | 1789 | 48760 | KLUTHE | D.B. | 09-23-68 | | 9 | | CP DC9 ATL | | |
| | 1790 | 18200 | COWART | J.A. | 09-23-68 | CP 757 ATL | 8 | | CP DC9 ATL | | |
| | 1791 | 49819 | KRITCHER | L.N. | 10-07-68 | | 1 9 | | CP 757 ATL | | |
| | 1792 | 94294 | WEIS | D.G. | 10-07-68 | | 9 | | CP 727 ATL | | |
| | 1793 | 75769 | RICHEY | G.G. | 10-07-68 | DCA | | | DCA | | |
| | 1794 | 22060 | DEWSNUP | P.M. | 10-07-68 | CP DC9 ATL | | | CP 727 ATL | 8 | |
| | 1795 | 60516 | MILLER | B.T. | 10-07-68 | | 1 79 | | | | |
| | 1796 | 06913 | BLEAKLEY | R.A. | 10-07-68 | | 1 9 | | | | |
| | 1797 | 75811 | ROGERS | T.E. | 10-07-68 | | 1 9 | | | | |
| | 1798 | 92500 | WALKER | T.W. | 10-07-68 | | 9 | | CP DC9 ATL | | |
| | 1799 | 91782 | VIOLETT | R.S. | 10-07-68 | MIA | | | MIA | | |
| | 1800 | 75957 | ROSS | B.J. | 10-07-68 | | 9 | | CP DC9 ATL | | |
| | 1801 | 90777 | THITCHELL | L.L. | 10-07-68 | | 1 9 | | | | |
| | 1802 | 50314 | LAIRD | R.M. | 10-07-68 | | 9 | | | | |
| | 1803 | 11951 | CAFARELLI | W.M. | 10-07-68 | JFK | | | JFK | | |
| | 1804 | 48285 | KIRACOFE | R.L. | 10-07-68 | | 1 9 | | | | |
| | 1805 | 21974 | DEMBY | W.P. | 10-07-68 | | 9 | | | | |
| | 1806 | 49651 | KRAMER | S. | 10-07-68 | MIA | | | MIA | | |
| | 1807 | 32111 | GIMSON | F.A. | 10-07-68 | | 9 | | | | |

------ IDENT CODE ------
1 = CURTAILED                          5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727        SUPERVISORY CODE
2 = DISPLACED                          6 = 28-J                     B = WAIT FOR CP-DC9        W = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK            7 = 28-L-3C                  C = GAIN FURTHER EXPERIENCE  # = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK            8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED             a = SPECIAL

```
09/13/89            PILOT LISTING BY SENIORITY NUMBER - REPORT 14            PAGE...29        MPS060R5
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1875 | 22067 | DELARIA | D.J. | 09-14-70 | CP 727 DCA | 1 | | CP 727 DCA | | |
| | 1876 | 55284 | MARCINEK | J.V. | 09-14-70 | | 1 9 | | CP 727 ATB | 8 | |
| | 1877 | 55212 | MAHANEY, JR | C.L. | 09-14-70 | MIA | | | CP 727 ATB | 8 | |
| | 1878 | 77504 | SANDERS | R.J. | 09-14-70 | | 1 9 | | MIA | | |
| | 1879 | 64014 | NELSON | T.W. | 09-14-70 | | 1 9 | | | | |
| | 1880 | 56180 | MARXMILLER | H.G. | 09-14-70 | | 1 9 | | | | |
| | 1881 | 62696 | MOSS, JR | G.M. | 09-14-70 | | 1 9 | | | | |
| | 1882 | 11336 | BURNS | R.D. | 09-14-70 | | 1 9 | | | | |
| | 1883 | 78414 | SCHNEIDER | P.J. | 09-14-70 | | 1 9 | | | | |
| | 1884 | 49810 | KRIEPS | R.N. | 09-14-70 | | 1 9 | | | | |
| | 1885 | 67324 | PARSONS | D.H. | 09-14-70 | | 1 9 | | CP DC9 ATL | 8 | |
| | 1886 | 93084 | MARFIELD | S.B. | 09-14-70 | | 1 9 | | | | |
| | 1887 | 51743 | LEE | A.R. | 09-14-70 | | 1 9 | | | | |
| | 1888 | 93820 | WEAVER | G.C. | 09-14-70 | | 1 9 | | | | |
| | 1889 | 54463 | MAC DOWELL | D.M. | 09-14-70 | | 1 9 | | | | |
| | 1890 | 97010 | WILSON | K.T. | 09-14-70 | | 1 9 | | | | |
| | 1891 | 91008 | UNGER | R.L. | 09-14-70 | | 1 9 | | | | |
| | 1892 | 86814 | SWANSON | D.B. | 09-14-70 | | 1 9 | | CP 727 ATB | 8 | |
| | 1893 | 59285 | MC NEAR | G.F. | 09-14-70 | | 1 9 | | | | |
| | 1894 | 16395 | COLLINS | N.L. | 09-14-70 | | 1 9 | | | | |
| | 1895 | 61226 | MITCHELL | T.L. | 09-14-70 | | 1 9 | | | | |
| | 1896 | 50465 | LANCASTER, JR | C.A. | 09-14-70 | | 1 9 | | | | |
| | 1897 | 10587 | BRYANT | J.A. | 09-21-70 | | 1 9 | | | | |
| | 1898 | 60236 | MILIO | V.E. | 09-21-70 | MIA | 1 5 | | MIA | | |
| | 1899 | 85117 | STEPAN | D.J. | 09-21-70 | | 1 9 | | | | |
| | 1900 | 78093 | SCHIROS | F. | 09-21-70 | JFK | | | JFK | | |
| | 1901 | 34845 | GROSENHEIDER | L.D. | 09-21-70 | | 1 9 | | | | |
| | 1902 | 28447 | FORREST, JR. | J.E. | 09-21-70 | | 1 9 | | CP 727 ATB | 8 | |
| | 1903 | 26383 | FAGAN | T.E. | 09-21-70 | | 1 9 | | | | |
| | 1904 | 86323 | STRONG | D.B. | 09-21-70 | | 1 9 | | | | |
| | 1905 | 51715 | LEDGER | W.F. | 09-21-70 | | 1 9 | | | | |
| | 1906 | 23697 | DUBLIN | R.S. | 09-21-70 | BOS | | | BOS | | |
| | 1907 | 53437 | LORANGER | R.H. | 09-21-70 | | 1 79 | | | | |
| | 1908 | 14429 | CHEADLE | J.H. | 09-21-70 | | 1 9 | | | | |
| | 1909 | 92135 | VOUDY | J.E. | 10-05-70 | | 1 9 | | CP DC9 ATL | 8 | |
| | 1910 | 86662 | SUTPHIN | S.D. | 10-05-70 | MIA | | | MIA | | |
| | 1911 | 73583 | RENJART | H.P. | 10-05-70 | | 1 9 | | | | |
| | 1912 | 65534 | ODOM | G.B. | 10-05-70 | | 1 9 | | FO 300 JFK | | |
| | 1913 | 91328 | VANDETTE JR | M.A. | 10-05-70 | | 1 9 | | | | |
| | 1914 | 11330 | BURKE | J.P. | 10-05-70 | CP 757 ATL | 1 | | CP 757 ATL | | |
| | 1915 | 06438 | BIRKE | T.S. | 10-05-70 | | 1 9 | | | | |
| | 1916 | 94432 | WELLS | D.A. | 10-05-70 | | 1 9 | | | | |
| | 1917 | 39297 | HESSLER JR | R.R. | 10-05-70 | | 1 9 | | CP DC9 ATL | 8 | |
| | 1918 | 63425 | MURRAY | T.O. | 10-05-70 | JFK | | | JFK | | |
| | 1919 | 88594 | THOMAS | F.E. | 10-05-70 | | 1 9 | | | | |
| | 1920 | 24113 | DUNN | L.J. | 10-05-70 | | 1 9 | | FO L11 MIA | R | |
| | 1921 | 81142 | SIMMONDS | R.H. | 10-05-70 | | 1 9 | | | | |
| | 1922 | 20115 | DANSKIN | K.M. | 10-05-70 | | 1 79 | | FO L11 JFK | 8 | |
| | 1923 | 76499 | RUPERT II | J.F. | 10-05-70 | | 1 9 | | FO 727 MIA | | |
| | 1924 | 39403 | HICKMAN JR | E.H. | 10-05-70 | | 1 9 | | | | |
| | 1925 | 76610 | RUSSELL | J.A. | 10-05-70 | | 1 9 | | | | |
| | 1926 | 15962 | CLEVELAND | R.G. | 10-05-70 | | 1 9 | | | | |
| | 1927 | 39116 | HERNANDEZ | G.E. | 10-19-70 | MIA | | | MIA | | |
| | 1928 | 70105 | POE | A.K. | 10-19-70 | | 1 9 | | | | |
| | 1929 | 93217 | MARZOCHA | D.C. | 10-19-70 | | 1 9 | | | | |
| | 1930 | 75820 | ROSENTHAL | E.J. | 10-19-70 | | 1 9 | | | | |
| | 1931 | 75334 | ROGERS | D.M. | 10-19-70 | | 1 9 | | | | |
| | 1932 | 79778 | SEXTON | J.R. | 10-19-70 | | 1 9 | | | | |
| | 1933 | 31822 | GILBERT | L.A. | 10-19-70 | | 1 9 | | | | |
| | 1934 | 80766 | SHORTAL | D.L. | 10-19-70 | | 1 9 | | | | |
| | 1935 | 59176 | MCMILLEN | M.F. | 10-19-70 | | 1 9 | | | | |
| | 1936 | 20643 | DAVISON | M.I. | 10-19-70 | | 1 9 | | | | |
| | 1937 | 60557 | MILLER | J.A. | 10-19-70 | | 1 9 | | FO 300 MIA | R | |
| | 1938 | 50045 | KURZ | E.S. | 10-19-70 | | 1 79 | | CP DC9 ATL | 8 | |
| | 1939 | 62699 | MOSS | R. | 10-19-70 | | 1 79 | | | | |
| | 1940 | 84545 | STANFIELD | C.R. | 10-19-70 | | 1 9 | | | | |
| | 1941 | 46621 | HUGGINS JR. | C.T. | 10-19-70 | JFK | 1 | | JFK | | |

```
- - - - - - - - - - - - - IDENT CODE - - - - -
1 = CURTAILED                    5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727          SUPERVISORY CODE
2 = DISPLACED                    6 = 28-J                     B = WAIT FOR CP-DC9          * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                  C = GAIN FURTHER EXPERIENCE  # = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED               @ = SPECIAL
```

```
09/13/89              PILOT LISTING BY SENIORITY NUMBER - REPORT 14              PAGE...31      MPS060R5
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | H E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2009 | 25060 | EKISS | C.M. | 01-04-71 | IAH | | | IAH | | |
| | 2010 | 95641 | WHITNEY | J.C. | 01-04-71 | | 1 9 | | | | |
| | 2011 | 76422 | RUBY | D.F. | 01-04-71 | | 1 9 | | | | |
| | 2012 | 31631 | GIBSON | H.L. | 01-04-71 | | 1 9 | | | | |
| | 2013 | 40403 | HODGSON JR | N.C. | 01-04-71 | | 1 9 | | | | |
| | 2014 | 63001 | MUMAW | J.J. | 01-04-71 | | 1 9 | | | | |
| | 2015 | 19470 | CUNNINGHAM | L. | 01-04-71 | | 1 9 | | | | |
| | 2016 | 50960 | LARSON | A.C. | 01-04-71 | | 1 79 | | | | |
| | 2017 | 33447 | GRAHAM | G.M. | 01-04-71 | | 1 9 | | | | |
| | 2018 | 30201 | GALANTE | D. | 01-04-71 | | 1 9 | | | | |
| | 2019 | 21470 | DEL PIZZO JR | C.M. | 01-04-71 | | 9 | | | | |
| | 2020 | 39667 | HIGH JR | J.R. | 01-04-71 | | 1 79 | | | | |
| | 2021 | 22073 | DETMILER | T.L. | 01-18-71 | ATL | | | ATL | | |
| | 2022 | 15502 | CLEMENTS JR | F.P. | 01-18-71 | | 1 79 | | FO L11 JFK | 8 | |
| | 2023 | 92980 | MALTER JR | R.M. | 01-18-71 | | 1 9 | | | | |
| | 2024 | 18150 | COULTER | G.H. | 01-18-71 | | 1 9 | | | | |
| | 2025 | 54268 | LYNCH III | P.M. | 01-18-71 | | 1 9 | | | | |
| | 2026 | 69711 | PIETRO | R.L. | 01-18-71 | ATL | | | ATL | | |
| | 2027 | 89210 | THORNE | J.R. | 01-18-71 | | 1 9 | | | | |
| | 2028 | 51213 | LAURIA | L.J. | 01-18-71 | | 1 9 | | CP 727 MIA | 8 | |
| | 2029 | 42551 | HUNTER | D.R. | 01-18-71 | | 1 9 | | | | |
| | 2030 | 95804 | WIKE JR | D.N. | 01-18-71 | | 1 79 | | | | |
| | 2031 | 67245 | PARKINSON | R.E. | 01-18-71 | | 1 9 | | CP 727 MIA | 8 | |
| | 2032 | 04775 | BAUGH | H.L. | 01-18-71 | | 1 9 | | | | |
| | 2033 | 39578 | HIERRO | H.L. | 01-18-71 | | 1 9 | | | | |
| | 2034 | 16394 | COLE | R.M. | 01-18-71 | | | | | | |
| | 2035 | 06042 | BERMAN | W.L. | 01-18-71 | | 9 | | | | |
| | 2036 | 76761 | RUST | R.H. | 01-25-71 | | 1 79 | | | | |
| | 2037 | 79804 | SEYMOUR | J.C. | 01-25-71 | | 1 9 | | | | |
| | 2038 | 67389 | PARRY | R.A. | 01-25-71 | | 1 9 | | | | |
| | 2039 | 47025 | KENNEDY | A.F. | 01-25-71 | | 9 | | | | |
| | 2040 | 19473 | CUNNINGHAM | L.J. | 01-25-71 | | 1 79 | | | | |
| | 2041 | 06165 | BEVER | M.R. | 01-25-71 | | 1 79 | | | | |
| | 2042 | 90712 | TURBERVILLE | W.R. | 01-25-71 | | 1 9 | | | | |
| | 2043 | 58489 | MCGONAGLE | J.D. | 01-25-71 | MIA | 1 | | MIA | | |
| | 2044 | 24102 | DUNLAP | R.S. | 01-25-71 | | 9 | | | | |
| | 2045 | 53541 | LOVE | F.M. | 01-25-71 | | 1 9 | | | | |
| | 2046 | 70540 | PORTER | J.C. | 01-25-71 | | 9 | | | | |
| | 2047 | 66244 | ORR JR | E.A. | 01-25-71 | | 1 9 | | | | |
| | 2048 | 69545 | PHINNEY | R.A. | 01-25-71 | | 1 9 | | CP 727 MIA | 8 | |
| | 2049 | 70539 | PORTER | D.R. | 01-25-71 | | 9 | | | | |
| | 2050 | 67497 | PASTERIS | J.D. | 01-25-71 | | 1 9 | | | | |
| | 2051 | 80105 | SHEA JR | J.M. | 02-15-71 | CP 757 MIA | 8 | | CP 757 MIA | | |
| | 2052 | 03598 | BALDWIN | L.S. | 02-15-71 | | 1 79 | | | | |
| | 2053 | 29922 | FUNKE | V.R. | 02-15-71 | | 1 9 | | | | |
| | 2054 | 86507 | SUE | J.E. | 02-15-71 | | 9 | | | | |
| | 2055 | 12652 | CARACCIOLO | R.P. | 02-15-71 | OCA | | | OCA | | |
| | 2056 | 05503 | BELL | D.R. | 02-15-71 | | 1 9 | | | | |
| | 2057 | 22004 | DENICOLA JR | V.J. | 02-15-71 | | 1 9 | | | | |
| | 2058 | 28172 | FONTANA | F.J. | 02-15-71 | | 1 9 | | | | |
| | 2059 | 26554 | FAHN | C.L. | 02-15-71 | | 1 9 | | | | |
| | 2060 | 43422 | IVERSON JR | R.H. | 02-15-71 | | 1 9 | | | | |
| | 2061 | 38609 | HELTERBRAN | G.A. | 02-15-71 | | 1 9 | | | | |
| | 2062 | 39850 | HILLIARD | H.F. | 03-06-72 | | 1 9 | | | | |
| | 2063 | 72065 | RAMOS | L.D. | 12-20-64 | ATL | 1 | | ATL | | |
| | 2064 | 91443 | VARRIANO | P.G. | 03-06-72 | | 1 9 | | | | |
| | 2065 | 82659 | SMITH | R.E. | 03-06-72 | | 1 9 | | | | |
| | 2066 | 96658 | WILLIAMS | L.D. | 03-06-72 | | 1 9 | | | | |
| | 2067 | 04312 | BAQUE III | F. | 03-06-72 | | 1 9 | | FO 300 MIA | R | |
| | 2068 | 92336 | MAID | D.P. | 03-06-72 | | 1 9 | | | | |
| | 2069 | 32640 | GOLDEN | R.T. | 03-06-72 | | 1 9 | | | | |
| | 2070 | 30092 | GAFFNEY | W.T. | 04-06-72 | | 1 9 | | | | |
| | 2071 | 41870 | HOWELL | J.D. | 04-06-72 | | 9 | | | | |
| | 2072 | 72370 | ROSKENS | T.L. | 04-06-72 | | 9 | | | | |
| | 2073 | 78177 | SCHANZLIN | D.N. | 04-06-72 | | 1 9 | | | | |
| | 2074 | 43258 | INGLE, JR | E.C. | 04-06-72 | ATL | | | ATL | | |
| | 2075 | 85467 | STENARD | D.E. | 04-06-72 | | 9 | | FO L11 MIA | R | |

```
------------------------ IDENT CODE ------------------------              SUPERVISORY CODE
1 = CURTAILED                    5 = 28-G-1B - UPGRADE       A = WAIT FOR CP-727          * = 950 - DOMICILE
2 = DISPLACED                    6 = 28-J                    B = WAIT FOR CP-DC9          # = 950 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                 C = GAIN FURTHER EXPERIENCE  @ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK U = UNASSIGNED
```

```
09/13/89              PILOT LISTING BY SENIORITY NUMBER - REPORT 14              PAGE...33        MPS060R5
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2143 | 97302 | WIRTH | R.G. | 07-24-72 | JFK | | | JFK | | |
| | 2144 | 15119 | CLEMENT | T.E. | 07-24-72 | | 1 9 | | | | |
| | 2145 | 55223 | MANOR | S.R. | 07-24-72 | | 1 79 | | | | |
| | 2146 | 75345 | RODRIGUEZ | J. | 07-19-65 | | 1 9 | | | | |
| | 2147 | 23142 | DORSEY | F.A. | 07-24-72 | | 1 9 | | | | |
| | 2148 | 24220 | DUPLISSEY | G.R. | 07-24-72 | | 1 9 | | | | |
| | 2149 | 17860 | CORBETT | E.M. | 07-24-72 | | 1 9 | | | | |
| | 2150 | 89018 | SPETH | M.L. | 07-24-72 | | 1 9 | | | | |
| | 2151 | 48660 | PERKINS, III | D.R. | 07-24-72 | | 1 9 | | | | |
| | 2152 | 30068 | GADD, JR | R.T. | 07-24-72 | | 1 9 | | | | |
| | 2153 | 91351 | VAN HOOSEAR | L.L. | 07-31-72 | CP 727 ATL | 1 | | CP 727 ATL | | |
| | 2154 | 77750 | SAMDON | M.J. | 07-31-72 | | 1 79 | | | | |
| | 2155 | 21094 | DAMSON | C.N. | 07-31-72 | | 1 9 | | | | |
| | 2156 | 33453 | GOODLAD | J.H. | 07-31-72 | | 1 9 | | | | |
| | 2157 | 29551 | FREY | S.L. | 07-31-72 | | 1 9 | | | | |
| | 2158 | 37836 | HAUPT | M.T. | 07-31-72 | | 1 9 | | | | |
| | 2159 | 01262 | ANDERSEN | R.N. | 07-31-72 | BOS | | | BOS | | |
| | 2160 | 80778 | SHOUN | J.W. | 07-31-72 | | 1 9 | | | | |
| | 2161 | 31085 | GAZDA | R.S. | 07-31-72 | | 1 79 | | FO 727 JFK | | |
| | 2162 | 62762 | MOYLAN | D.E. | 07-31-72 | | 1 9 | | | | |
| | 2163 | 95396 | WHITE | R.L. | 07-31-72 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2164 | 90720 | TURNIPSEED | J.D. | 07-31-72 | CP 727 MIA | 8 | | CP 727 MIA | | |
| | 2165 | 59891 | MENDEZ | E. | 07-19-65 | | | | FO 757 MIA | 8 | |
| | 2166 | 42216 | HUEY | J.S. | 07-31-72 | | 1 9 | | | | |
| | 2167 | 71183 | PROCTOR JR | R.R. | 07-31-72 | CP 727 ATL | 1 | | CP 727 ATL | | |
| | 2168 | 12147 | CALDWELL | Q.M. | 07-31-72 | | 1 9 | | | | |
| | 2169 | 20655 | DAVIS | J.H. | 07-31-72 | | 1 9 | | | | |
| | 2170 | 61250 | MITCHELL | D.S. | 07-31-72 | | 1 9 | | FO 727 MIA | | |
| | 2171 | 43277 | INGRAHAM | C.A. | 08-07-72 | | 1 9 | | | | |
| | 2172 | 13758 | CASSIDY | B.B. | 08-07-72 | | 1 9 | | | | |
| | 2173 | 33474 | GRAY II | J.E. | 08-07-72 | | 1 9 | | | | |
| | 2174 | 72478 | RAULINS | J.M. | 08-07-72 | | 1 9 | | | | |
| | 2175 | 27416 | FISCHLEY | J.H. | 08-07-72 | | 1 9 | | | | |
| | 2176 | 50609 | LANDES | C.H. | 08-07-72 | | 1 9 | | | | |
| | 2177 | 06187 | BEATTIE | D.G. | 08-07-72 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2178 | 28557 | FOSTER | B.J. | 08-07-72 | | 1 9 | | | | |
| | 2179 | 66006 | OLSON | K.D. | 08-07-72 | | 1 79 | | | | |
| | 2180 | 81410 | SIMS | A.P. | 08-07-72 | | 1 79 | | | | |
| | 2181 | 11373 | BUCHANAN | H.J. | 08-07-72 | | 1 9 | | | | |
| | 2182 | 78439 | SCHOGGEN | B.G. | 08-07-72 | | 1 9 | | | | |
| | 2183 | 91332 | VAN HOY | L.N. | 08-07-72 | | 1 9 | | | | |
| | 2184 | 72386 | RAST | T.G. | 08-07-72 | | 1 9 | | | | |
| | 2185 | 85212 | STEPHENS | R.B. | 08-07-72 | | 1 9 | | | | |
| | 2186 | 11360 | BURNS | D.R. | 08-07-72 | | 1 9 | | | | |
| | 2187 | 46467 | KEARNEY | S.G. | 08-07-72 | | 1 9 | | | | |
| | 2188 | 54512 | MAC CARTEY | H.G. | 08-07-72 | | 1 9 | | | | |
| | 2189 | 15480 | CLEM | C.L. | 08-07-72 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2190 | 32301 | GLASS III | B.E. | 08-07-72 | | 1 9 | | | | |
| | 2191 | 06597 | BISHOPP, JR | F.T. | 08-07-72 | | 1 9 | | | | |
| | 2192 | 26550 | FARRELL | R.L. | 10-09-72 | | 1 79 | | CP DC9 ATL | 8 | |
| | 2193 | 64715 | NIEMANN | H.L. | 10-09-72 | | 1 9 | | | | |
| | 2194 | 06592 | BILLISON | T.J. | 10-09-72 | | 1 9 | | | | |
| | 2195 | 47096 | KENT | J.H. | 10-09-72 | | 1 9 | | | | |
| | 2196 | 79005 | SCOTT | M.R. | 10-09-72 | | 1 9 | | | | |
| | 2197 | 85802 | SOUDERS | J.E. | 10-09-72 | | 1 9 | | | | |
| | 2198 | 79709 | SETTLES | B.H. | 10-09-72 | | 1 9 | | | | |
| | 2199 | 84398 | STAIR | D.L. | 10-09-72 | | 1 9 | | | | |
| | 2200 | 28448 | FORREST | D.W. | 10-09-72 | CP 727 ATL | 1 7 | | CP 727 ATL | | |
| | 2201 | 91052 | URSO | M.T. | 10-09-72 | | 1 9 | | | | |
| | 2202 | 33462 | GRASSIA | J. | 10-09-72 | CP 727 MIA | 1 | | CP 727 MIA | | |
| | 2203 | 17974 | COTTER | S.B. | 10-09-72 | | 1 79 | | CP DC9 ATL | 8 | |
| | 2204 | 16051 | COFFEY | B.E. | 10-09-72 | | 1 9 | | | | |
| | 2205 | 14754 | CHIRINO | R.E. | 10-09-72 | | 1 9 | | FO D10 MIA | 8 | |
| | 2206 | 78100 | SCHEULE | R.H. | 10-09-72 | | 1 9 | | | | |
| | 2207 | 35752 | HALL | L.B. | 10-09-72 | | 1 9 | | | | |
| | 2208 | 73384 | RENZI | A.J. | 10-16-72 | | 1 9 | | | | |
| | 2209 | 59939 | HERLY | H.M. | 07-19-65 | | 1 9 | | | | |

```
- - - - - - - - - - - - - - - IDENT CODE- - - - - - - - - - - - - - -        SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-18 - UPGRADE        A = WAIT FOR CP-727       * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                     B = WAIT FOR CP-DC9       # = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C                C = GAIN FURTHER EXPERIENCE  ∂ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED
```

| S C | SNRTY NBR | EMPL NBR | N A M E LAST | INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2277 | 83248 | SMITH | C.E. | 01-29-73 | | | | CP DC9 ATL | 8 | |
| | 2278 | 58819 | MCTIGHE | D.M. | 01-29-73 | | 1 9 | | | | |
| | 2279 | 06932 | BROOCKE | W.N. | 01-29-73 | | 1 9 | | | | |
| | 2280 | 06444 | BALUKONIS | V.J. | 01-29-73 | | 1 79 | | | | |
| | 2281 | 35604 | HAHN | B.L. | 01-29-73 | | 1 9 | | | | |
| | 2282 | 41402 | HOFFMANN | D.S. | 01-29-73 | | 1 9 | | | | |
| | 2283 | 79262 | SEARLS | R.R. | 01-29-73 | | 1 9 | | | | |
| | 2284 | 06892 | BERNIE 111 | T.S. | 01-29-73 | | 1 79 | | | | |
| | 2285 | 54420 | MACDONALD | G.H. | 02-12-73 | MIA | | | MIA | | |
| | 2286 | 53854 | LOY | D.A. | 02-12-73 | | 1 9 | | | | |
| | 2287 | 16049 | COGAN | C.C. | 02-12-73 | | 1 9 | | | | |
| | 2288 | 77060 | SABO | W.J. | 02-12-73 | | 1 9 | | | | |
| | 2289 | 72954 | REEVES | J.L. | 02-12-73 | | 1 9 | | | | |
| | 2290 | 76140 | ROME | S.D. | 02-12-73 | | 1 9 | | | | |
| | 2291 | 51255 | LAVERNE | J.L. | 02-12-73 | | 1 9 | | | | |
| | 2292 | 68642 | PERO | K.F. | 02-12-73 | | 1 9 | | | | |
| | 2293 | 87720 | TAYLOR 111 | T.L. | 02-12-73 | | 9 | | CP DC9 ATL | 8 | |
| | 2294 | 37144 | HARBOTTLE | J.C. | 02-12-73 | | 1 79 | | | | |
| | 2295 | 42095 | HURLEY | R.L. | 02-12-73 | | 1 9 | | | | |
| | 2296 | 90724 | TURMAN | J.B. | 02-12-73 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2297 | 11720 | BUTLER | D.S. | 02-12-73 | | 1 9 | | | | |
| | 2298 | 06928 | BELMAN | L.J. | 02-12-73 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2299 | 94654 | WERNER | R.C. | 02-12-73 | | 1 9 | | | | |
| | 2300 | 36119 | HANSFORD | R. | 02-12-73 | | 1 79 | | | | |
| | 2301 | 49408 | KOPP | G.L. | 02-19-73 | | 1 9 | | | | |
| | 2302 | 33478 | GOULDING | H.H. | 02-19-73 | | 1 9 | | | | |
| | 2303 | 06890 | BERGHANE | D.A. | 02-19-73 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2304 | 40123 | HIPPS | L.J. | 02-19-73 | | 1 79 | | | | |
| | 2305 | 25477 | EMERY | J.C. | 02-19-73 | | 1 79 | | CP DC9 ATL | 8 | |
| | 2306 | 06869 | BATTON | C.L. | 02-23-73 | | 9 | | | | |
| | 2307 | 72570 | RAY | R.L. | 02-23-73 | | 1 9 | | | | |
| | 2308 | 65966 | OLMSTED | F.S. | 02-23-73 | | 1 9 | | | | |
| | 2309 | 56318 | MATTHEWS | P.M. | 05-22-67 | | 1 9 | | CP 727 ATL | 8 | |
| | 2310 | 78372 | SCHNEPEL | E.D. | 02-23-73 | | 1 9 | | | | |
| | 2311 | 31380 | GEORGE | W.B. | 02-23-73 | | 1 9 | | | | |
| | 2312 | 93630 | WATT | A.K. | 02-26-73 | | 1 79 | | | | |
| | 2313 | 95743 | WILLIS | H.P. | 02-26-73 | | 1 9 | | | | |
| | 2314 | 00108 | ASHCRAFT | B.L. | 02-26-73 | | 1 9 | | | | |
| | 2315 | 15993 | COCUZZO | D.J. | 02-26-73 | | 1 9 | | FO 727 JFK | | |
| | 2316 | 95744 | WILSON | W.R. | 02-26-73 | | 1 9 | | | | |
| | 2317 | 86711 | SUTTON | D.F. | 02-26-73 | | 1 9 | | | | |
| | 2318 | 57519 | MCCONNELL | V.I. | 02-26-73 | | 1 9 | | CP DC9 ATL | 58 | |
| | 2319 | 41872 | HOWE | C.L. | 02-26-73 | | 1 79 | | | | |
| | 2320 | 70679 | POE JR | T.H. | 02-26-73 | | 1 9 | | | | |
| | 2321 | 64561 | NICHOLSON | W.T. | 02-26-73 | CP 757 JFK | 8 | | CP 757 JFK | | |
| | 2322 | 19859 | DALTON | F.E. | 02-26-73 | | 1 9 | | | | |
| | 2323 | 62570 | MORTENSEN | J.D. | 02-26-73 | | 1 9 | | | | |
| | 2324 | 65972 | OLSEN | G.K. | 02-26-73 | | 1 9 | | | | |
| | 2325 | 66563 | OVERHOLSER | M.H. | 02-26-73 | | 1 9 | | | | |
| | 2326 | 00107 | ANZALONE | T.A. | 02-26-73 | | 1 9 | | | | |
| | 2327 | 65843 | OLDFIELD | D.A. | 02-26-73 | | 1 9 | | | | |
| | 2328 | 84725 | STARZYK | E.S. | 02-26-73 | | 1 9 | | | | |
| | 2329 | 63161 | MUNOZ | D.A. | 05-22-67 | | 9 | | | | |
| | 2330 | 32009 | GILMORE | S.M. | 02-26-73 | | 1 79 | | | | |
| | 2331 | 56316 | MASON JR | J.A. | 02-26-73 | | 9 | | | | |
| | 2332 | 15891 | COAR JR | R.G. | 02-26-73 | ATL | | | ATL | | |
| | 2333 | 61844 | MOORE | R.E. | 02-26-73 | | 9 | | CP 727 ATL | 8 | |
| | 2334 | 07026 | BAILEY JR | C.D. | 02-26-73 | | 1 9 | | | | |
| | 2335 | 07132 | BERTIAUX JR | K.W. | 02-26-73 | | 1 9 | | | | |
| | 2336 | 70841 | PREIS | M.J. | 02-26-73 | | 9 | | | | |
| | 2337 | 44830 | JOHNSON | L.J. | 02-26-73 | | 1 9 | | | | |
| | 2338 | 45822 | JORDAN | A.A. | 02-26-73 | | 1 9 | | | | |
| | 2339 | 39624 | HIGGINS | R.F. | 02-26-73 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2340 | 37146 | HARVEY | J.A. | 03-02-73 | | 1 9 | | | | |
| | 2341 | 30702 | GANSE | T.L. | 03-02-73 | | 1 9 | | | | |
| | 2342 | 66547 | OSTROZNY | N.J. | 03-12-73 | | 9 | | | | |
| | 2343 | 31896 | GILES JR | J.T. | 03-12-73 | | 1 9 | | CP DC9 ATL | 8 | |

```
- - - - - IDENT CODE- - - - -                                           SUPERVISORY CODE
1 = CURTAILED          5 = 28-G-1B - UPGRADE    A = WAIT FOR CP-727       * = 950 - DOMICILE
2 = DISPLACED          6 = 28-J                 B = WAIT FOR CP-DC9       @ = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C        C = GAIN FURTHER EXPERIENCE   @ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK   U = UNASSIGNED
```

Case 1:06-cv-00568-SLR    Document 8-12    Filed 09/29/2006    Page 42 of 46

| S C | SNRTY NBR | EMPL NBR | LAST | INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2411 | 15832 | COANE | C.M. | 04-09-73 | | 1 8 | | | | |
| | 2412 | 84182 | SPITLER | D.H. | 04-13-73 | MIA | | | MIA | | |
| | 2413 | 81532 | SISCA | R.R. | 04-13-73 | | 1 9 | | | | |
| | 2414 | 07842 | BARRIOS | J.V. | 04-13-73 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2415 | 93027 | HARE JR | C.M. | 04-13-73 | | 9 | | | | |
| | 2416 | 53142 | LOFTUS | T.P. | 04-13-73 | | 1 9 | | | | |
| | 2417 | 35763 | HALL | E.M. | 04-19-73 | | 1 9 | | | | |
| | 2418 | 49853 | KRUGER | J.R. | 04-19-73 | | 9 | | | | |
| | 2419 | 07848 | BOK | F.C. | 04-19-73 | | 1 9 | | | | |
| * | 2420 | 41749 | HOWARD | J.M. | 04-19-73 | CP 727 ATL | 1 | | | | |
| | 2421 | 38453 | HEINRICH | A.P. | 04-19-73 | | 1 9 | | CP 727 ATL | | |
| | 2422 | 70216 | POELLET | H.F. | 04-27-73 | | 1 9 | | | | |
| | 2423 | 33450 | GRAFF | J.K. | 04-27-73 | | 1 9 | | | | |
| | 2424 | 61486 | MOLINARO | J.M. | 04-27-73 | | 1 9 | | | | |
| | 2425 | 97771 | WOODHAM | J.H. | 04-27-73 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 2426 | 61961 | MORA | C.A. | 04-30-73 | | 1 9 | | CP 727 ATL | 8 | |
| | 2427 | 16017 | COLLIER | W.R. | 07-10-67 | | 9 | | CP 727 JFK | 8 | |
| | 2428 | 61847 | MOORE | L.G. | 04-30-73 | | 1 | | | | |
| | 2429 | 60933 | MINEHAN | M.J. | 04-30-73 | | 9 | | | | |
| | 2430 | 53445 | LOSSMANN | W.H. | 04-30-73 | CP 727 MIA | 8 | | CP 727 MIA | | |
| | 2431 | 07844 | BOONE | D.W. | 04-30-73 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2432 | 24937 | EGLAND | D.L. | 04-30-73 | MIA | | | MIA | | |
| | 2433 | 24727 | EBELING JR | D.E. | 04-30-73 | | 9 | | | | |
| | 2434 | 26671 | FAY | T.L. | 04-30-73 | CP 757 JFK | 8 | | CP 757 JFK | | |
| | 2435 | 23041 | DONOVAN | S.R. | 04-30-73 | | 1 9 | | | | |
| ə | 2436 | 56449 | MATT JR | H.A. | 04-30-73 | CP 727 MIA | 8 | | CP 727 MIA | | |
| | 2437 | 44029 | JAYE | M.D. | 04-30-73 | MIA | | | MIA | | |
| | 2438 | 97877 | WOOLLEY | R.E. | 04-30-73 | | 9 | | | | |
| | 2439 | 40163 | HISEY | J.H. | 04-30-73 | ATL | 1 | | ATL | | |
| | 2440 | 34757 | GROSKOPF | J.H. | 04-30-73 | | 9 | | | | |
| | 2441 | 29700 | FUHRMAN | R.G. | 04-30-73 | | 1 9 | | | | |
| | 2442 | 27437 | FISCHER | G.E. | 04-30-73 | | 9 | | | | |
| | 2443 | 07786 | BISSINGER JR | H.R. | 04-30-73 | | 9 | | | | |
| | 2444 | 19671 | CUTRER | J.P. | 04-30-73 | | 9 | | CP DC9 ATL | 8 | |
| | 2445 | 29965 | FURLONG | J.P. | 05-01-73 | | 9 | | | | |
| | 2446 | 22114 | DENTON | M.R. | 05-14-73 | | 1 79 | | | | |
| | 2447 | 36356 | HANSEN | G.K. | 05-14-73 | | 1 9 | | | | |
| | 2448 | 13966 | CHAMPAGNE | C.M. | 05-14-73 | | 1 79 | | FO 727 JFK | | |
| | 2449 | 20650 | DAVIDSON | N.F. | 05-14-73 | | 1 79 | | CP DC9 ATL | 8 | |
| | 2450 | 19993 | DANAHY | J.M. | 05-14-73 | | 1 9 | | | | |
| | 2451 | 82662 | SMITH | J.G. | 05-14-73 | | 1 79 | | | | |
| | 2452 | 57143 | MCCARTHY | J.A. | 05-14-73 | | 1 9 | | CP 727 ATL | 8 | |
| | 2453 | 96659 | WILLIAMS | D.E. | 05-14-73 | | 9 | | | | |
| | 2454 | 23006 | DONAHUE | W.S. | 05-14-73 | | 1 9 | | | | |
| | 2455 | 74781 | ROBERTS III | A.J. | 05-14-73 | | 1 9 | | | | |
| | 2456 | 71205 | PROSSER JR | W.H. | 05-14-73 | | 1 9 | | | | |
| | 2457 | 30383 | GAMBARDELLA JR | A.M. | 05-14-73 | | 1 9 | | | | |
| | 2458 | 26811 | FELIU | J.E. | 05-14-73 | | 1 9 | | FO 727 MIA | | |
| | 2459 | 61493 | MONNAR | E. | 05-14-73 | MIA | | | MIA | | |
| | 2460 | 50460 | LANDA | G. | 05-14-73 | MIA | 1 | | CP 727 MIA | | |
| | 2461 | 08218 | BARRETT | B.J. | 05-14-73 | MIA | | | MIA | | |
| | 2462 | 78098 | SCHERTZ | J.H. | 08-13-73 | JFK | 1 5 | | JFK | | |
| | 2463 | 01284 | AYRES | G.C. | 08-13-73 | | 9 | | | | |
| | 2464 | 10749 | BUCHANAN | H.E. | 08-13-73 | | 1 79 | | | | |
| | 2465 | 82663 | SMITH | C.L. | 08-13-73 | | 1 9 | | FO L11 JFK | 8 | |
| | 2466 | 08894 | BERGSTROM | S.Y. | 08-13-73 | | 1 9 | | | 1 9 | |
| | 2467 | 52200 | LEVY | M.A. | 08-13-73 | | 1 9 | | | | |
| | 2468 | 31415 | GERNDT | G.L. | 08-13-73 | | 1 9 | | | | |
| | 2469 | 97845 | WOODRUFF | B.H. | 08-13-73 | | 1 9 | | | | |
| | 2470 | 72200 | RAMSHUR | J.C. | 08-13-73 | | 1 9 | | | | |
| | 2471 | 34981 | GRUTERS | G.D. | 08-13-73 | | 1 79 | | | | |
| | 2472 | 40628 | HOLBERT | S.E. | 08-13-73 | | 1 9 | | | | |
| | 2473 | 08902 | BOESZ | D.L. | 08-13-73 | | 1 9 | | | | |
| | 2474 | 33466 | GRAHAM | M.A. | 08-13-73 | | 1 9 | | | | |
| | 2475 | 34848 | GROTE | B.L. | 08-13-73 | | 1 9 | | | | |
| | 2476 | 10750 | BUEHLER | P.A. | 08-13-73 | | 1 9 | | | | |
| | 2477 | 13760 | CARESS | M.I. | 08-13-73 | | 1 9 | | | | |

- - - - IDENT CODE - - - -

| | | | |
|---|---|---|---|
| 1 = CURTAILED | 5 = 28-G-1B - UPGRADE | A = WAIT FOR CP-727 | |
| 2 = DISPLACED | 6 = 28-J | B = WAIT FOR CP-DC9 | |
| 3 = 28-G-6A - 15 MONTH LOCK | 7 = 28-L-3C | C = GAIN FURTHER EXPERIENCE | |
| 4 = 28-G-6B - 15 MONTH LOCK | 8 = 28-G-6A - 24 MONTH LOCK | U = UNASSIGNED | |

SUPERVISORY CODE
* = 950 - DOMICILE
# = 950 - TRAINING
ə = SPECIAL

09/13/89    PILOT LISTING BY SENIORITY NUMBER - REPORT 14    PAGE...39    MPS06OR5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2545 | 48375 | KIRMIS | D.C. | 11-20-78 | | 1 9 | | | | |
| | 2546 | 53402 | LORBER | A.E. | 11-20-78 | | 1 9 | | | | |
| | 2547 | 91729 | VICIAN | D.J. | 11-20-78 | | 9 | | | | |
| | 2548 | 01238 | ANDERSON | M.D. | 11-20-78 | | 9 | | | | |
| | 2549 | 07849 | BOSCH | S.J. | 11-20-78 | JFK | 85 | | JFK | | |
| | 2550 | 00845 | ALEXANDER | F.M. | 11-21-78 | | 1 9 | | | | |
| | 2551 | 06950 | BLESSING | P.E. | 12-04-78 | | 1 9 | | | | |
| | 2552 | 28043 | FONG | G.W. | 12-04-78 | FO L11 MIA | 1 | | FO L11 MIA | | |
| | 2553 | 19074 | CROWTHER | D.A. | 12-04-78 | | 1 9 | | | | |
| | 2554 | 92395 | WALKER | P.H. | 12-04-78 | | 1 9 | | | | |
| | 2555 | 59175 | MCMILLEN | B.D. | 12-04-78 | | 1 9 | | | | |
| | 2556 | 09285 | BRIGHT | J.N. | 12-04-78 | | 1 79 | | | | |
| | 2557 | 37702 | HARTWICK | M.L. | 12-04-78 | | 1 9 | | | | |
| | 2558 | 95271 | WHITE | M.A. | 12-04-78 | | 1 9 | | | | |
| | 2559 | 52246 | LEVY | D.D. | 12-04-78 | CP 757 JFK | 8 | | CP 757 JFK | | |
| | 2560 | 85566 | STEWART | J.T. | 12-04-78 | | 9 | | | | |
| | 2561 | 08119 | BOWER | H.S. | 12-04-78 | | 1 9 | | | | |
| | 2562 | 90957 | UHLAND | D.C. | 12-04-78 | | 1 9 | | | | |
| | 2563 | 54927 | MALARZ | R.C. | 12-04-78 | | 9 | | | | |
| | 2564 | 16822 | CONDON JR | G.W. | 12-18-78 | | 1 79 | | | | |
| | 2565 | 18008 | COSTON | C.L. | 12-18-78 | | 9 | | | | |
| | 2566 | 41698 | HOUSE | R.G. | 12-18-78 | | 1 9 | | | | |
| | 2567 | 42783 | HURON | R.C. | 12-18-78 | | 9 | | | | |
| | 2568 | 59229 | MCMULLAN | B.D. | 12-18-78 | | 1 9 | | CP 727 ATL | 8 | |
| | 2569 | 21965 | DESORMEY | L.H. | 12-18-78 | | 1 9 | | | | |
| | 2570 | 71807 | RADCLIFF | C.T. | 12-18-78 | | 9 | | | | |
| | 2571 | 49317 | KOLL | R.L. | 12-18-78 | CP DC9 ATL | 1 | | CP DC9 ATL | | |
| | 2572 | 52680 | LIONETTI | G.D. | 12-18-78 | | 1 9 | | | | |
| | 2573 | 67615 | PAYNE | J.S. | 12-18-78 | | 1 9 | | | | |
| | 2574 | 51191 | LAUER | R.C. | 12-18-78 | | 1 9 | | | | |
| | 2575 | 40928 | HOLZ | L.N. | 12-18-78 | | 1 9 | | | | |
| | 2576 | 75976 | ROTH | R.L. | 12-18-78 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2577 | 61498 | MONBECK | J.H. | 12-19-78 | | 1 9 | | | | |
| | 2578 | 40804 | HOLLAND | M.P. | 01-04-79 | | 1 9 | | | | |
| | 2579 | 10984 | BURDICK | E.M. | 01-04-79 | | 1 9 | | | | |
| | 2580 | 94263 | WEISS | E.M. | 01-04-79 | | 1 9 | | | | |
| | 2581 | 68960 | PETERSON | M.E. | 01-04-79 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2582 | 15268 | CLARK III | M.T. | 01-04-79 | | 1 9 | | | | |
| | 2583 | 40645 | HOLBERG | C.L. | 01-04-79 | | 1 9 | | | | |
| | 2584 | 23147 | DORTICOS | R.H. | 01-04-79 | | 1 9 | | | | |
| | 2585 | 38020 | HAYNES | T.J. | 01-04-79 | | 1 79 | | | | |
| | 2586 | 86196 | STRAUSS | S.F. | 01-04-79 | | 1 9 | | | | |
| | 2587 | 80502 | SHERMAN | C.M. | 01-04-79 | | 1 9 | | | | |
| | 2588 | 01694 | ANDERSON | J.W. | 01-18-79 | | 9 | | | | |
| | 2589 | 80334 | SHEPARD | G.C. | 01-18-79 | | 1 9 | | | | |
| | 2590 | 42138 | HUDSON | G.E. | 01-18-79 | | 1 9 | | | | |
| | 2591 | 65682 | OGDEN | T.H. | 01-18-79 | | 1 9 | | | | |
| | 2592 | 03215 | BADER | H.G. | 01-18-79 | | 9 | | | | |
| | 2593 | 57294 | MCCARTY | G.L. | 01-18-79 | | 1 9 | | | | |
| | 2594 | 17699 | CORBETT JR | C.E. | 01-18-79 | | 1 9 | | | | |
| | 2595 | 50586 | LANGEL | W.A. | 01-18-79 | | 1 9 | | | | |
| | 2596 | 15240 | CLARK | F.W. | 01-18-79 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2597 | 85067 | STENGEL | S.N. | 01-18-79 | | 9 | | CP DC9 ATL | 8 | |
| | 2598 | 38814 | HENRY | T.C. | 01-18-79 | | 1 9 | | | | |
| | 2599 | 27233 | FINCH | R.A. | 01-31-79 | | 9 | | | | |
| | 2600 | 54274 | LYNSKEY | P.C. | 01-31-79 | | 1 79 | | ATL | 8 | |
| | 2601 | 03210 | BADOUD | M.W. | 01-31-79 | | 1 9 | | | | |
| | 2602 | 65833 | OLAUGHLIN | T.J. | 01-31-79 | | 1 9 | | | | |
| | 2603 | 38497 | HEINS | P.S. | 01-31-79 | | 9 | | | | |
| | 2604 | 76907 | RYAN | Y.R. | 01-31-79 | | 9 | | | | |
| | 2605 | 02797 | ATKINS | H.B. | 01-31-79 | | 1 9 | | | | |
| | 2606 | 25952 | EVANS | D.L. | 01-31-79 | | 9 | | | | |
| | 2607 | 03370 | BAILEY JR | H.B. | 01-31-79 | | 1 9 | | | | |
| | 2608 | 57173 | MCCAFFERTY | E.S. | 01-31-79 | | 1 9 | | | | |
| | 2609 | 01123 | ALLISON | T.J. | 01-31-79 | | 1 9 | | | | |
| | 2610 | 58749 | MCKEEVER | D.V. | 01-31-79 | | 1 9 | | | | |
| | 2611 | 93607 | WATSON | M.O. | 01-31-79 | CP DC9 ATL | 1 | | CP DC9 ATL | | |

- - - - - - - - - - - - IDENT CODE - - - - - - - - - - - -

| | | |
|---|---|---|
| 1 = CURTAILED | 5 = 28-G-1B - UPGRADE | A = WAIT FOR CP-727 |
| 2 = DISPLACED | 6 = 28-J | B = WAIT FOR CP-DC9 |
| 3 = 28-G-6A - 15 MONTH LOCK | 7 = 28-L-3C | C = GAIN FURTHER EXPERIENCE |
| 4 = 28-G-6B - 15 MONTH LOCK | 8 = 28-G-6A - 24 MONTH LOCK | U = UNASSIGNED |

SUPERVISORY CODE
* = 950 - DOMICILE
# = 930 - TRAINING
a = SPECIAL

09/13/89        PILOT LISTING BY SENIORITY NUMBER - REPORT 14        PAGE...41        MPS06OR5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | NAME INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2679 | 95374 | WHITEHEAD | P.M. | 07-25-79 | | 9 | | | | |
| | 2680 | 52348 | LEWIS | R.C. | 07-25-79 | | 1 9 | | | | |
| | 2681 | 78802 | SCHWARTZ | J.G. | 07-25-79 | | 1 9 | | | | |
| | 2682 | 64895 | NOLAN JR | J.E. | 07-25-79 | JFK | | | JFK | | |
| | 2683 | 79523 | SELTENRIGHT | R. | 07-25-79 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2684 | 12041 | CALDWELL JR | D.E. | 07-25-79 | | 1 9 | | | | |
| | 2685 | 92199 | MADDELL | R.K. | 07-25-79 | | 1 9 | | | | |
| | 2686 | 26891 | FENNELL | G.M. | 07-25-79 | | 1 9 | | | | |
| | 2687 | 36505 | HARBAGE | J.C. | 07-25-79 | | 1 9 | | | | |
| | 2688 | 56642 | MAULDIN | M.S. | 07-25-79 | | 1 9 | | | | |
| | 2689 | 83796 | SPARGER | R.K. | 07-25-79 | | 1 9 | | | | |
| | 2690 | 94453 | WELLS | L.C. | 07-25-79 | | 9 | | CP DC9 ATL | 8 | |
| | 2691 | 66437 | OUELLETTE | R.M. | 07-25-79 | | 1 9 | | | | |
| | 2692 | 12372 | CAMP JR | J.A. | 08-22-79 | | 1 9 | | | | |
| | 2693 | 57126 | MCBARNETTE | C.H. | 08-22-79 | | 1 9 | | | | |
| | 2694 | 50305 | LAINE | J.R. | 08-22-79 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2695 | 15310 | CLAUSSEN | D.M. | 08-22-79 | | 1 9 | | | | |
| | 2696 | 34328 | GRIFFIN | J.S. | 08-22-79 | | 1 9 | | | | |
| | 2697 | 61421 | MOFFIT | M.L. | 08-22-79 | | 1 79 | | | | |
| | 2698 | 83844 | SPANNAGEL JR | D.J. | 08-22-79 | | 1 9 | | | | |
| | 2699 | 36266 | HANSEL | S.E. | 08-22-79 | | 1 9 | | | | |
| | 2700 | 90979 | UMBEL JR | R.P. | 08-22-79 | | 1 9 | | | | |
| | 2701 | 55192 | MANLEY | P.R. | 08-22-79 | | 1 9 | | | | |
| | 2702 | 05108 | BECK | M.P. | 08-22-79 | | 1 9 | | | | |
| | 2703 | 15025 | CLARK JR | J.M. | 08-22-79 | | 9 | | | | |
| | 2704 | 97535 | MITCHER III | M.C. | 08-22-79 | | 1 9 | | | | |
| | 2705 | 23132 | DORNAN | J.D. | 09-05-79 | | 1 9 | | | | |
| | 2706 | 86760 | SMAH | S.R. | 09-05-79 | | 1 9 | | | | |
| | 2707 | 73174 | REINHARD | L.D. | 09-05-79 | | 1 9 | | | | |
| | 2708 | 43137 | ICKES II | C.V. | 09-05-79 | | 1 79 | | | | |
| | 2709 | 70926 | PREWITT | R.K. | 09-05-79 | ATL | | | ATL | | |
| | 2710 | 86243 | STRINGER | J.M. | 09-05-79 | | 1 9 | | | | |
| | 2711 | 22725 | DOCTORCHIK | S. | 09-05-79 | | 1 9 | | | | |
| | 2712 | 94395 | WELLS | G.M. | 09-05-79 | CP 727 ATL | 1 | | FO 300 ATL | 68 | |
| | 2713 | 63416 | MURRAY | J.P. | 09-05-79 | | 1 9 | | | | |
| | 2714 | 66155 | OPITZ | M.R. | 09-05-79 | | 1 9 | | | 1 9 | |
| | 2715 | 86858 | SWENSON | C.A. | 09-05-79 | | 1 9 | | | | |
| | 2716 | 23004 | DONOHUE | T.H. | 09-05-79 | | 1 9 | | | | |
| | 2717 | 36672 | HARKINS | S.R. | 09-05-79 | | 1 9 | | | | |
| | 2718 | 38650 | HENDERSON | M.D. | 09-05-79 | | 9 | | | | |
| | 2719 | 70484 | POQUETTE | D.C. | 09-05-79 | | 1 9 | | | | |
| | 2720 | 10808 | BUDDENHAGEN | W.H. | 10-03-79 | | 1 79 | | | | |
| | 2721 | 23261 | DOUGHERTY JR | R.A. | 10-03-79 | | 1 9 | | CP DC9 ATL | 8 | |
| | 2722 | 54804 | MAGGIO | M.R. | 10-03-79 | | 1 9 | | | | |
| | 2723 | 08205 | BOHMAN | R.T. | 10-03-79 | TXO | | | TXO | | |
| | 2724 | 57103 | MCBRIDE | F.X. | 10-03-79 | | 1 9 | | | | |
| Q | 2725 | 79975 | SHAVER | C.R. | 10-03-79 | CP 757 JFK | 8 | | CP 757 JFK | | |
| | 2726 | 91060 | URBANOWICZ | G.M. | 10-03-79 | JFK | | | JFK | | |
| | 2727 | 60399 | MILLER | R.C. | 10-03-79 | | 1 9 | | | | |
| | 2728 | 88900 | THOMPSON | T.M. | 11-12-79 | | 1 9 | | | | |
| | 2729 | 58777 | MCKENNAN | D.J. | 11-12-79 | | 1 9 | | FO 757 MIA | 8 | |
| | 2730 | 21736 | DEMAND | D.B. | 11-12-79 | | 1 9 | | | | |
| | 2731 | 05734 | BENNETT | M. | 11-12-79 | | 1 9 | | | | |
| | 2732 | 27254 | FINLEY | G.L. | 11-12-79 | | 1 9 | | | | |
| | 2733 | 60786 | MILLS | G.M. | 11-12-79 | | 9 | | | | |
| | 2734 | 92307 | WAGNER | R. | 11-12-79 | | 1 9 | | | | |
| | 2735 | 32502 | GLASS | C.R. | 11-12-79 | | 1 9 | | | | |
| | 2736 | 18462 | CRAIG | D.A. | 12-03-79 | | 1 9 | | | | |
| | 2737 | 62752 | MOULTON | J.W. | 12-03-79 | | 1 9 | | | | |
| | 2738 | 89708 | TODD | M.R. | 12-03-79 | | 1 9 | | | | |
| | 2739 | 88563 | THOMAS | F.C. | 12-03-79 | | 1 9 | | | | |
| | 2740 | 62061 | MORELAND III | J.A. | 12-03-79 | | 9 | | | | |
| | 2741 | 08197 | BOHMAN | P.J. | 12-03-79 | | 1 9 | | | | |
| | 2742 | 59420 | MCRORIE III | A.F. | 12-03-79 | | 1 9 | | | | |
| | 2743 | 01180 | AMOS | J.D. | 12-03-79 | | 1 9 | | | | |
| | 2744 | 85958 | STOCK | R.L. | 12-03-79 | | 9 | | | | |
| | 2745 | 42798 | HURT III | L.C. | 12-17-79 | | 1 9 | | | | |

- - - - - - - - - - IDENT CODE - - - - - - - - -
| | | |
|---|---|---|
| 1 = CURTAILED | 5 = 28-G-1B - UPGRADE | A = WAIT FOR CP-727 |
| 2 = DISPLACED | 6 = 28-J | B = WAIT FOR CP-DC9 |
| 3 = 28-G-6A - 15 MONTH LOCK | 7 = 28-L-3C | C = GAIN FURTHER EXPERIENCE |
| 4 = 28-G-6B - 15 MONTH LOCK | 8 = 28-L-3C - 24 MONTH LOCK | U = UNASSIGNED |

SUPERVISORY CODE
* = 950 - DOMICILE
** = 930 - TRAINING
Q = SPECIAL

| S C | SNRTY NBR | EMPL NBR | NAME LAST | INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2813 | 92397 | WALBORN | J.D. | 10-09-80 | | 9 | | | | |
| | 2814 | 09049 | BATHURST | M.A. | 10-16-80 | | 1 9 | | | | |
| | 2815 | 44715 | JOHNSON | M.L. | 10-16-80 | | 9 | | | | |
| | 2816 | 86100 | STRAESSLE | G.C. | 10-16-80 | | 9 | | CP DC9 ATL | 8 | |
| | 2817 | 14125 | CHAILLE | B.F. | 10-16-80 | | 1 79 | | CP DC9 ATL | 8 | |
| | 2818 | 89512 | TIMMERMAN JR | C.E. | 10-16-80 | | 9 | | | | |
| | 2819 | 11346 | BURTON | M.F. | 10-16-80 | | 9 | | | | |
| | 2820 | 27944 | FLOWERS | W.A. | 10-16-80 | | 9 | | | | |
| | 2821 | 72723 | REDDICK | C.H. | 10-23-80 | | 1 9 | | | | |
| | 2822 | 08001 | BOURGEOIS | C.H. | 10-23-80 | | 9 | | | | |
| | 2823 | 83653 | SOMMER JR | V.H. | 10-23-80 | | 1 9 | | | | |
| | 2824 | 75940 | ROSSER | J.R. | 10-23-80 | | 9 | | | | |
| | 2825 | 03491 | BAKER III | W.L. | 10-23-80 | MIA | | | MIA | | |
| | 2826 | 05708 | BENDER | T.H. | 10-23-80 | | 9 | | | | |
| | 2827 | 00235 | ADAMS JR | A.B. | 10-23-80 | | 1 9 | | | | |
| | 2828 | 81309 | SIMMONDS | J.R. | 10-23-80 | | 9 | | | | |
| | 2829 | 59566 | MEDER | R.E. | 10-23-80 | | 9 | | | | |
| | 2830 | 04785 | BAUMAN | R.F. | 10-27-80 | CP DC9 ATL | 1 | | CP 727 ATL | 8 | |
| | 2831 | 80634 | SHIBAN | V.J. | 10-27-80 | DCA | | | DCA | | |
| | 2832 | 16977 | CONNOLLY | J.M. | 10-27-80 | | 1 9 | | | | |
| | 2833 | 30055 | GABLER | B.D. | 10-27-80 | | 1 9 | | | | |
| | 2834 | 73080 | REICHERT | V.P. | 10-27-80 | | 9 | | CP DC9 ATL | 58 | |
| | 2835 | 37707 | HARVEY | G.M. | 10-27-80 | JFK | | | JFK | | |
| | 2836 | 85380 | STEVENS | R.L. | 10-27-80 | | 9 | | CP DC9 ATL | 8 | |
| | 2837 | 29203 | FREDERICKA | G.N. | 10-27-80 | | 1 9 | | | | |
| | 2838 | 77723 | SAXSMA | J.K. | 10-27-80 | | 1 9 | | | | |
| | 2839 | 67242 | PARKINSON | R.C. | 10-27-80 | | 1 9 | | | | |
| | 2840 | 48404 | KISER | R.R. | 10-27-80 | | 9 | | | | |
| | 2841 | 63749 | NAUMANN | J.W. | 10-27-80 | | 1 9 | | | | |
| | 2842 | 73482 | REYNOLDS | H. | 10-27-80 | | 9 | | | | |
| | 2843 | 34764 | GROFF | W.V. | 10-27-80 | | 9 | | | | |
| | 2844 | 83648 | SOMER | J.J. | 11-03-80 | | 9 | | | | |
| | 2845 | 44692 | JOHNSON | G.M. | 11-03-80 | | 1 9 | | | | |
| | 2846 | 33041 | GORDON | T.T. | 11-03-80 | | 9 | | | | |
| | 2847 | 67992 | PEBLER | J.C. | 11-03-80 | | 1 9 | | | | |
| | 2848 | 73571 | RHEA | L.J. | 11-03-80 | | 9 | | | | |
| | 2849 | 41743 | HOVDEN | R.R. | 11-03-80 | | 9 | | | | |
| | 2850 | 67603 | PATRICK | D.W. | 11-03-80 | | 1 9 | | CP 727 ATL | 8 | |
| | 2851 | 75881 | ROSSER | J.P. | 11-03-80 | | 1 9 | | | | |
| | 2852 | 10058 | BRUMMETT | J.D. | 11-13-80 | | 1 9 | | | | |
| | 2853 | 87674 | TAYLOR JR | H.A. | 11-13-80 | | 9 | | | | |
| | 2854 | 59856 | MERRILL | T.L. | 11-13-80 | | 9 | | | | |
| | 2855 | 05740 | BENTLEY | R.P. | 11-13-80 | | 1 9 | | | | |
| | 2856 | 01729 | ANDERSON | G.C. | 11-13-80 | | 1 79 | | | | |
| | 2857 | 73477 | REVELL | D.B. | 11-13-80 | | 9 | | | | |
| | 2858 | 41486 | HOUSER | E.D. | 01-12-81 | | 9 | | | | |
| | 2859 | 91336 | VANKIRK | M.R. | 01-12-81 | | 1 9 | | | | |
| | 2860 | 80894 | SHULER | B.K. | 01-12-81 | | 9 | | | | |
| | 2861 | 59589 | MEACHEM | F.S. | 01-12-81 | | 1 9 | | | | |
| | 2862 | 95642 | WHITESIDE | J.M. | 01-26-81 | | 1 9 | | | | |
| | 2863 | 05249 | BATTAGLIOLA | J.H. | 01-26-81 | | 1 9 | | | | |
| | 2864 | 18312 | COX | R.E. | 01-26-81 | | 1 79 | | | | |
| | 2865 | 11660 | NASH | F.L. | 08-21-84 | | 1 9 | | | | |
| | 2866 | 10832 | BUSWELL | U.F. | 08-21-84 | | 1 9 | | | | |
| | 2867 | 56267 | MASSEY | R.A. | 08-21-84 | | 9 | | | | |
| | 2868 | 96922 | MILSON | K.A. | 08-21-84 | | 9 | | | | |
| | 2869 | 42606 | HUNTER JR | R.G. | 08-21-84 | | 1 79 | | | | |
| | 2870 | 25539 | ENGELHARD | H.G. | 08-21-84 | | 9 | | | | |
| | 2871 | 50502 | LANE | D.N. | 08-21-84 | | 9 | | | | |
| | 2872 | 21818 | DEMIK | R.J. | 08-21-84 | | 9 | | CP 727 ATL | 8 | |
| | 2873 | 68412 | PENROD | M.R. | 09-04-84 | | 9 | | | | |
| | 2874 | 78704 | SCHULTZ | R.G. | 09-04-84 | | 1 9 | | | | |
| | 2875 | 13182 | CARRELLE | N.M. | 09-04-84 | MIA | | | MIA | | |
| | 2876 | 43403 | JACKSON | L.C. | 09-04-84 | | 1 9 | | | | |
| | 2877 | 04048 | BARNETT | P.D. | 09-04-84 | | 9 | | | | |
| | 2878 | 22762 | DODSON | R.G. | 09-04-84 | | 9 | | | | |
| | 2879 | 44202 | JENNINGS | R.H. | 09-04-84 | | 1 9 | | | | |

---

| IDENT CODE | | SUPERVISORY CODE |
|---|---|---|
| 1 = CURTAILED | 5 = 28-G-1B - UPGRADE | A = WAIT FOR CP-727 | * = 950 - DOMICILE |
| 2 = DISPLACED | 6 = 28-J | B = WAIT FOR CP-DC9 | ≭ = 950 - TRAINING |
| 3 = 28-G-6A - 15 MONTH LOCK | 7 = 28-L-3C | C = GAIN FURTHER EXPERIENCE | 9 = SPECIAL |
| 4 = 28-G-6B - 15 MONTH LOCK | 8 = 28-G-6A - 24 MONTH LOCK | U = UNASSIGNED | |

09/13/89                    PILOT LISTING BY SENIORITY NUMBER - REPORT 14                    PAGE...45          MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M INIT | E | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2947 | 59588 | MEEBOER | K.R. | | 12-05-84 | | 1 | 9 | | | |
| | 2948 | 27427 | FISHER | N.M. | | 12-10-84 | | | 9 | | | |
| | 2949 | 21403 | DEICHMAN | H.G. | | 12-10-84 | | 1 | 9 | | | |
| | 2950 | 24503 | EBERHARDT | D.E. | | 12-10-84 | | | 9 | | | |
| | 2951 | 39166 | HERON | P.J. | | 12-10-84 | ATL | | | ATL | | |
| | 2952 | 37994 | HAYES | S.A. | | 12-10-84 | | 1 | 9 | | | |
| | 2953 | 92832 | HALLS | R.K. | | 12-10-84 | | | 9 | | | |
| | 2954 | 52416 | LIBERA | D.C. | | 12-11-84 | | 1 | 9 | | | |
| | 2955 | 95609 | WHITTON | J.F. | | 12-15-84 | | 1 | 9 | | | |
| | 2956 | 11326 | BURNETT | H.R. | | 12-15-84 | CP 727 ATL | 1 | | ATL | | |
| | 2957 | 13426 | CAVANAUGH | T.J. | | 12-15-84 | | 1 | 9 | | | |
| | 2958 | 67851 | PAUTKE | T.N. | | 12-15-84 | MIA | | | MIA | | |
| | 2959 | 68790 | PERRY | M.E. | | 12-15-84 | | 1 | 9 | | | |
| | 2960 | 90499 | TUCKER | J.E. | | 12-15-84 | | 1 | 9 | | | |
| | 2961 | 35485 | HAGER | S.H. | | 12-15-84 | | 1 | 9 | | | |
| | 2962 | 54768 | MAGON | M.J. | | 12-15-84 | | 1 | 9 | | | |
| | 2963 | 16431 | COLUCCI | T.J. | | 12-15-84 | | 1 | 9 | | | |
| | 2964 | 46176 | KANE | S.G. | | 12-15-84 | | 1 | 9 | | | |
| | 2965 | 54766 | MAGATHAN III | H.C. | | 01-07-85 | | 1 | 9 | | | |
| | 2966 | 57777 | MCCUSKER | R.J. | | 01-07-85 | | | 9 | | | |
| | 2967 | 44709 | JOHNSON | B.C. | | 01-07-85 | | | 9 | | | |
| | 2968 | 55863 | MARTIN | L.S. | | 01-07-85 | CP 727 MIA | 1 | | CP 727 MIA | | |
| | 2969 | 34994 | GUDDAT | S.A. | | 01-07-85 | | | 9 | | | |
| | 2970 | 78807 | SCHMARTZ | J. | | 01-07-85 | | | 9 | | | |
| | 2971 | 98999 | YOUNG | M.A. | | 01-07-85 | | 1 | 9 | FO 727 ATL | 8C | |
| | 2972 | 59174 | MCMILLEN | N.F. | | 01-07-85 | | | 9 | | | |
| | 2973 | 35728 | HALL | V.W. | | 01-07-85 | | | 9 | CP DC9 ATL | 8 | |
| | 2974 | 49799 | KRIEGSIES | D.G. | | 01-07-85 | | 1 | 9 | | | |
| | 2975 | 62825 | MUELLER | R.W. | | 01-07-85 | | | 9 | | | |
| | 2976 | 66463 | OWEN | F.M. | | 01-07-85 | | | 9 | | | |
| | 2977 | 23920 | DUNCAN | M.S. | | 01-07-85 | | | 9 | | | |
| | 2978 | 61842 | MOORE | S.L. | | 01-14-85 | | | 9 | | | |
| | 2979 | 85603 | STEWART | T. | | 01-14-85 | | | 9 | | | |
| | 2980 | 05411 | DELANE | D.L. | | 01-14-85 | | | 9 | | | |
| | 2981 | 05761 | BENGFORT | M.R. | | 01-14-85 | | | 9 | | | |
| | 2982 | 77575 | SAPOL | A.J. | | 01-14-85 | | | 9 | | | |
| | 2983 | 51675 | LECHTRECKER | J.D. | | 01-14-85 | | | 9 | | | |
| | 2984 | 65990 | OLSON | S.A. | | 01-14-85 | | | 9 | | | |
| | 2985 | 67790 | PAVEY | D.C. | | 01-14-85 | | 1 | 9 | | | |
| | 2986 | 28150 | FOX | K.J. | | 01-14-85 | | 1 | 9 | | | |
| | 2987 | 00467 | ADDIS | J.R. | | 01-14-85 | | | 9 | | | |
| | 2988 | 27479 | FISKE | J.L. | | 01-14-85 | | 1 | 79 | | | |
| | 2989 | 81140 | SIMONE | M.A. | | 01-14-85 | | 1 | 9 | | | |
| | 2990 | 64053 | NEMYO | J.N. | | 01-14-85 | | | 9 | | | |
| | 2991 | 98937 | YOUNG | S.T. | | 01-31-85 | | | 9 | | | |
| | 2992 | 02957 | AUTEN | D.M. | | 01-31-85 | | | 9 | | | |
| | 2993 | 52613 | LINDEN JR | D.E. | | 01-31-85 | | | 9 | | | |
| | 2994 | 94028 | WEBSTER | D.R. | | 01-31-85 | | 1 | | | | |
| | 2995 | 00924 | ALEXANDER | G.H. | | 01-31-85 | | | 9 | | | |
| | 2996 | 43640 | JACKSON | L.D. | | 01-31-85 | | | 9 | | | |
| | 2997 | 66039 | OLSON | S.B. | | 01-31-85 | | 1 | 9 | | | |
| | 2998 | 23965 | DUNCAN | P.L. | | 01-31-85 | | | 9 | | | |
| | 2999 | 08778 | BRANHAM | M.T. | | 01-31-85 | | 1 | 9 | | | |
| | 3000 | 16393 | COLE | S.E. | | 01-31-85 | | 1 | 9 | | | |
| | 3001 | 13562 | CARTIER | D.C. | | 01-31-85 | | 1 | 9 | | | |
| | 3002 | 31059 | GAUTHIER | H.O. | | 01-31-85 | | 1 | 9 | | | |
| | 3003 | 01747 | ANDERSON | H.R. | | 01-31-85 | | | 9 | | | |
| | 3004 | 78004 | SCHELLER | E.G. | | 01-31-85 | | | 9 | | | |
| | 3005 | 80640 | SHIPNER | R.N. | | 01-31-85 | | | 9 | | | |
| | 3006 | 05172 | BECKHAM | D.H. | | 02-07-85 | | 1 | 9 | | | |
| | 3007 | 69875 | PITSKO JR | D.A. | | 02-07-85 | | | 9 | | | |
| | 3008 | 05305 | BEETZ | J.R. | | 02-07-85 | | 1 | 79 | | | |
| | 3009 | 08667 | BRADLEY | J.K. | | 02-07-85 | | | 9 | | | |
| | 3010 | 54864 | MAIURI | M.T. | | 02-07-85 | | | 9 | | | |
| | 3011 | 54914 | MAKARA | S.J. | | 02-07-85 | | | 9 | | | |
| | 3012 | 50874 | LARKE | N.L. | | 02-07-85 | | | 9 | | | |
| | 3013 | 88382 | THIBAULT | M.J. | | 02-07-85 | | | 9 | | | |

```
- - - - - - - - - - - - - - - - - IDENT CODE - - - - - - - - - - - - - -              SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727        * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                     B = WAIT FOR DC-9          # = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C               C = GAIN FURTHER EXPERIENCE   9 = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK   U = UNASSIGNED
```

09/13/89        PILOT LISTING BY SENIORITY NUMBER - REPORT 14              PAGE...47        MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3081 | 21913 | DESANTIS | M.J. | 04-11-85 | | 1 9 | | | | |
| | 3082 | 21836 | DEPAOLIS | J.A. | 04-11-85 | | 9 | | | | |
| | 3083 | 09728 | REXON | W.E. | 04-11-85 | | 9 | | | | |
| | 3084 | 42285 | HUGHES | M.R. | 04-18-85 | | 1 79 | | | | |
| | 3085 | 78022 | SCHENCK | N.H. | 04-18-85 | | 1 9 | | | | |
| | 3086 | 13961 | CAVANAUGH | W.N. | 04-18-85 | | 1 9 | | | | |
| | 3087 | 16273 | COLLIGNON | C.L. | 04-18-85 | | 9 | | | | |
| | 3088 | 69771 | PINKUL | M.L. | 04-18-85 | | 1 79 | | | | |
| | 3089 | 24124 | DUNN | R.A. | 04-18-85 | | 9 | | | | |
| | 3090 | 22250 | DICKINSON JR | S.A. | 04-18-85 | | 9 | | CP DC9 ATL | 8 | |
| | 3091 | 96150 | WILLIAMS | J.B. | 04-18-85 | | 1 9 | | | | |
| | 3092 | 47354 | KERMIEN | P.M. | 04-18-85 | | 9 | | | | |
| | 3093 | 83242 | SMITH | C.E. | 05-07-85 | | 9 | | | | |
| | 3094 | 21821 | DEES | F.A. | 05-07-85 | | 9 | | | | |
| | 3095 | 57028 | MCCALL | R.S. | 05-07-85 | | 9 | | FO 757 MIA | 8 | |
| | 3096 | 47927 | KING III | H.W. | 05-07-85 | | 1 9 | | | | |
| | 3097 | 16072 | COE | G.B. | 05-07-85 | | 1 9 | | | | |
| | 3098 | 60459 | MILLER | D.A. | 05-07-85 | | 9 | | | | |
| | 3099 | 78467 | SCHONE | D.D. | 05-07-85 | | 9 | | | | |
| | 3100 | 12958 | CARROLL | S.M. | 05-07-85 | | 9 | | | | |
| | 3101 | 08808 | BRATTLOF | R.H. | 05-07-85 | | 9 | | | | |
| | 3102 | 05498 | BELVEDERE | J.A. | 05-07-85 | | 1 9 | | | | |
| | 3103 | 11187 | BURKE | T.E. | 05-07-85 | | 9 | | FO 727 JFK | | |
| | 3104 | 36700 | HARMAN | T.G. | 05-14-85 | | 1 9 | | | | |
| | 3105 | 36068 | HANLE | R.M. | 05-14-85 | | 1 9 | | | | |
| | 3106 | 29461 | FRISTER | G.B. | 05-14-85 | | 1 9 | | | | |
| | 3107 | 01751 | ANDERSON | R.D. | 05-14-85 | | 1 9 | | | | |
| | 3108 | 94356 | JOCZ | M.R. | 05-14-85 | | 1 9 | | | | |
| | 3109 | 68663 | PERALTA | V.E. | 05-14-85 | | 9 | | | | |
| | 3110 | 69724 | PINNER | V.D. | 05-14-85 | | 9 | | | | |
| | 3111 | 91286 | VANDERKAMP JR | J.E. | 05-14-85 | MIA | 9 | | | | |
| | 3112 | 18974 | CROWTHER | B.E. | 05-14-85 | | 9 | | CP DC9 ATL | 8 | |
| | 3113 | 47018 | KEYS | D.A. | 05-14-85 | | 1 9 | | | | |
| | 3114 | 51964 | LEINDERS | M.T. | 05-14-85 | | 1 79 | | | | |
| | 3115 | 01852 | ANGELO | M. | 05-14-85 | | 1 9 | | | | |
| | 3116 | 51303 | LAWHORNE | D.A. | 05-14-85 | | 1 9 | | | | |
| | 3117 | 53554 | LOPES | M.J. | 05-15-85 | | 1 79 | | | | |
| | 3118 | 82645 | SMITH | G.D. | 05-21-85 | | 1 9 | | | | |
| | 3119 | 16763 | COMPTON | J.P. | 05-21-85 | | 9 | | CP DC9 ATL | 8 | |
| | 3120 | 53492 | LOUGHREY | H.P. | 05-21-85 | | 9 | | | | |
| | 3121 | 40910 | HOEFT | G.C. | 05-21-85 | | 1 79 | | | | |
| | 3122 | 24775 | EDLEY | J.H. | 05-21-85 | | 9 | | | | |
| | 3123 | 66404 | OTTO | R.P. | 05-21-85 | | 9 | | | | |
| | 3124 | 66058 | ONEILL | R.E. | 05-21-85 | | 1 9 | | | | |
| | 3125 | 29638 | FRYE | J.A. | 05-21-85 | JFK | 9 | | JFK | | |
| | 3126 | 19960 | DAVIS | B.S. | 05-21-85 | | 9 | | | | |
| | 3127 | 90519 | TURNER | B.L. | 05-21-85 | | 1 79 | | | | |
| | 3128 | 43309 | INGHRAM | D.R. | 05-21-85 | | 1 9 | | | | |
| | 3129 | 55205 | MANN | D.H. | 05-21-85 | | 9 | | | | |
| | 3130 | 38379 | HEAD | T.C. | 05-21-85 | | 9 | | | | |
| | 3131 | 83946 | SPENCER | R.L. | 05-21-85 | | 1 9 | | | | |
| | 3132 | 46617 | KELLER | R.C. | 05-21-85 | | 1 9 | | | | |
| | 3133 | 90126 | TRACY | T.E. | 05-21-85 | | 1 9 | | | | |
| | 3134 | 16639 | COLLIER | D.J. | 06-04-85 | | 1 79 | | | | |
| | 3135 | 94390 | WELLMAN | J.E. | 06-04-85 | | 1 9 | | | | |
| | 3136 | 48924 | KNOBLAUCH | K.A. | 06-04-85 | | 1 9 | | | | |
| | 3137 | 38686 | HENDERSON JR | R.T. | 06-04-85 | | 1 9 | | | | |
| | 3138 | 77475 | SANTIAGO | S. | 06-04-85 | | 1 9 | | | | |
| | 3139 | 17012 | CONSTANTINE | H.A. | 06-04-85 | | 1 79 | | | | |
| | 3140 | 01688 | ANDREWS | S.C. | 06-04-85 | | 1 79 | | | | |
| | 3141 | 11965 | CAGLIA | K.M. | 06-04-85 | | 1 9 | | | | |
| | 3142 | 92987 | WALTON | F.L. | 06-11-85 | | 1 9 | | | | |
| | 3143 | 36131 | HANSON | D.A. | 06-11-85 | | 1 9 | | | | |
| | 3144 | 61400 | MOINE | F.C. | 06-11-85 | | 9 | | | | |
| | 3145 | 81436 | SINCLAIR | W.D. | 06-11-85 | | 1 9 | | | | |
| | 3146 | 42110 | HUDGENS | R.K. | 06-11-85 | | 1 9 | | | | |
| | 3147 | 78673 | SCHULZ | C.S. | 06-11-85 | | 1 | | | | |

```
- - - - - - - - IDENT CODE - - - -
1 = CURTAILED          5 = 28-G-1B - UPGRADE        A = WAIT FOR CP-727        SUPERVISORY CODE
2 = DISPLACED          6 = 28-J                     B = WAIT FOR CP-DC9        * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C           C = GAIN FURTHER EXPERIENCE   # = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK   U = UNASSIGNED     @ = SPECIAL
```

09/13/89                        PILOT LISTING BY SENIORITY NUMBER - REPORT 14                    PAGE...49        MPS060R5

| S C | SNRTY NBR | EMPL NBR | LAST | NAME INIT | M E | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3215 | 33483 | GRAY | S.J. | | 10-08-85 | | 9 | | | | |
| | 3216 | 91675 | VIDE | L.A. | | 10-15-85 | | 9 | | | | |
| | 3217 | 68395 | PENCEK | B.D. | | 10-15-85 | | 1 9 | | | | |
| | 3218 | 39156 | HERRINGTON | M.C. | | 10-15-85 | | 9 | | CP 727 ATL  8 | | |
| | 3219 | 03030 | AUSTGEN | A.L. | | 10-15-85 | | 1 9 | | | | |
| | 3220 | 90909 | TYSON | P.L. | | 10-15-85 | | 1 9 | | | | |
| | 3221 | 84730 | STAHL | J.R. | | 10-15-85 | | 1 9 | | | | |
| | 3222 | 91322 | VANECEK | F.J. | | 10-29-85 | | 9 | | | | |
| | 3223 | 42192 | HUDSPETH JR | J.M. | | 10-29-85 | | 1 9 | | | | |
| | 3224 | 92645 | WALTHER | F.O. | | 10-29-85 | | 1 79 | | CP DC9 ATL  8 | | |
| | 3225 | 12139 | CALHOUN | C.M. | | 11-05-85 | | 1 9 | | | | |
| | 3226 | 91370 | VANDAM | K.L. | | 11-05-85 | | 9 | | | | |
| | 3227 | 24412 | DWAN | B.C. | | 11-05-85 | | 1 9 | | | | |
| | 3228 | 05111 | BECK | S.P. | | 11-05-85 | | 1 9 | | | | |
| | 3229 | 95403 | WHITESIDE | B.H. | | 11-05-85 | | 1 9 | | | | |
| | 3230 | 65254 | NUSSBAUM | M.D. | | 11-05-85 | | 1 79 | | | | |
| | 3231 | 43250 | INGEBRETSEN | R. | | 11-05-85 | | 1 9 | | FO L11 ATL  8 | | |
| | 3232 | 95861 | WHITHAM | H.S. | | 11-05-85 | | 1 79 | | | | |
| | 3233 | 77456 | SANDIDGE | N.M. | | 11-05-85 | | 1 9 | | | | |
| | 3234 | 01756 | ANDERSON | D.S. | | 11-05-85 | | 1 9 | | | | |
| | 3235 | 46976 | KENNEDY | C.J. | | 11-12-85 | | 1 9 | | | | |
| | 3236 | 27771 | FLETCHER | R.A. | | 11-12-85 | | 1 9 | | | | |
| | 3237 | 03399 | BAKER | R.J. | | 11-26-85 | | 1 9 | | | | |
| | 3238 | 40162 | HIRSCH    JR | J.F. | | 11-26-85 | | 1 9 | | | | |
| | 3239 | 60205 | MILBANK | D.B. | | 11-26-85 | | 1 9 | | | | |
| | 3240 | 18030 | COTTRELL | A.L. | | 11-26-85 | | 1 9 | | | | |
| | 3241 | 06592 | BJELLOS | D.M. | | 11-26-85 | CP 727 MIA | 1 | | CP 727 MIA | | |
| | 3242 | 18037 | COTTOM    JR | R.H. | | 11-26-85 | | 1 9 | | | | |
| | 3243 | 88536 | THOMAS | R.H. | | 11-26-85 | | 1 9 | | | | |
| | 3244 | 93864 | WEAVER | S.D. | | 12-03-85 | | 1 9 | | | | |
| | 3245 | 37751 | HASTINGS | G.A. | | 12-03-85 | | 1 9 | | | | |
| | 3246 | 21367 | DELLINGER | IIIH.F. | | 12-03-85 | | 1 9 | | | | |
| | 3247 | 33775 | GREENE | T.R. | | 12-03-85 | | 1 9 | | | | |
| | 3248 | 16817 | CONDON | E.J. | | 12-03-85 | | 1 9 | | | | |
| | 3249 | 18048 | COULTER | R.H. | | 12-03-85 | | 1 9 | | | | |
| | 3250 | 04059 | BARKSDALE | J.D. | | 12-03-85 | | 1 9 | | | | |
| | 3251 | 97672 | WOODS | M.C. | | 12-03-85 | | 1 9 | | | | |
| | 3252 | 51138 | LATHAM | R.C. | | 12-03-85 | | 1 79 | | | | |
| | 3253 | 76411 | RUESCHENBERG | T.J. | | 01-07-86 | | 1 9 | | | | |
| | 3254 | 36035 | HAMILTON | G.G. | | 01-07-86 | | 1 9 | | | | |
| | 3255 | 60238 | MILKE | R.A. | | 01-07-86 | | 1 79 | | | | |
| | 3256 | 84160 | SPILLMAN | K.T. | | 01-07-86 | | 1 9 | | CP DC9 ATL  8 | | |
| | 3257 | 95335 | WHITE | L.P. | | 01-07-86 | | 9 | | | | |
| | 3258 | 29088 | FRATT | J.R. | | 01-07-86 | | 1 9 | | | | |
| | 3259 | 63628 | HYERSCOUGH | R.D. | | 01-07-86 | | 9 | | SO 300 ATL | | |
| | 3260 | 16264 | COLLI | G.F. | | 01-07-86 | | 1 9 | | | | |
| | 3261 | 35619 | HAIRE    JR | H.J. | | 01-07-86 | | 9 | | | | |
| | 3262 | 49210 | KOENIG | K.S. | | 01-07-86 | | 1 79 | | | | |
| | 3263 | 94652 | MERCINSKI | M.J. | | 01-07-86 | | 1 9 | | | | |
| | 3264 | 16349 | COLLINS | H.M. | | 01-07-86 | | 1 9 | | | | |
| | 3265 | 01717 | ANDERSON | J.D. | | 01-07-86 | | 1 9 | | | | |
| | 3266 | 97614 | YONGE | R.R. | | 01-14-86 | | 1 9 | | | | |
| | 3267 | 68415 | PENNER | B.L. | | 01-21-86 | | 9 | | | | |
| | 3268 | 17031 | CORY | S.H. | | 01-21-86 | | 1 79 | | | | |
| | 3269 | 11540 | BUSHY | W.F. | | 01-21-86 | | 1 9 | | | | |
| | 3270 | 06343 | BILINSKI JR | E.A. | | 01-21-86 | | 1 9 | | | | |
| | 3271 | 10957 | BUONADONNA | J.V. | | 01-21-86 | | 1 9 | | | | |
| | 3272 | 88516 | THOMAS | W.L. | | 01-21-86 | | 1 9 | | | | |
| | 3273 | 08649 | BRADLEY | C.A. | | 01-21-86 | | 1 9 | | | | |
| | 3274 | 74812 | ROBERTSON | T.N. | | 01-21-86 | | 1 9 | | | | |
| | 3275 | 25121 | ELLASON | D.T. | | 01-21-86 | CP 727 ATL  8 | | | CP 727 ATL | | |
| | 3276 | 17458 | COSTELLO | D.J. | | 01-21-86 | | 1 9 | | | | |
| | 3277 | 20684 | DAYON | R.J. | | 01-21-86 | | 1 9 | | | | |
| | 3278 | 14387 | CHATTERTON | R.B. | | 01-21-86 | | 9 | | | | |
| | 3279 | 14365 | CHASE II | R.R. | | 01-21-86 | | 1 9 | | | | |
| | 3280 | 25530 | ENGLE | M.J. | | 01-21-86 | | 1 9 | | | | |
| | 3281 | 67507 | PATEL | R.P. | | 02-04-86 | | 1 9 | | | | |

```
- - - - - - - IDENT CODE - - - - -                                    SUPERVISORY CODE
1 = CURTAILED            5 = 28-G-1B - UPGRADE    A = WAIT FOR CP-727        H = 950 - DOMICILE
2 = DISPLACED            6 = 28-J                 B = WAIT FOR CP-DC9        B = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C          C = GAIN FURTHER EXPERIENCE    9 = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED
```

09/13/89              PILOT LISTING BY SENIORITY NUMBER - REPORT 14              PAGE...51        MPS06OR5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3349 | 76539 | RUCKS | J.P. | 05-05-86 | | 1 9 | | | | |
| | 3350 | 96661 | WILLIAMS JR | H.D. | 05-05-86 | | 1 9 | | | | |
| | 3351 | 78000 | SCHIELE | C.J. | 05-05-86 | | 1 9 | | | | |
| | 3352 | 55065 | MANN | D.B. | 05-05-86 | | 1 9 | | | | |
| | 3353 | 59422 | MCTERNAN | J.M. | 05-05-86 | | 1 9 | | | | |
| | 3354 | 74960 | ROBINSON | S.D. | 05-05-86 | | 1 9 | | | | |
| | 3355 | 37729 | HAAS | J.M. | 05-05-86 | | 1 9 | | | | |
| | 3356 | 25741 | ERDAL | E. | 05-05-86 | | 1 79 | | | | |
| | 3357 | 27997 | FLYNN | R.K. | 05-15-86 | | 1 9 | | SO 727 MIA | | R |
| | 3358 | 45182 | JOHNSTON | A.W. | 05-15-86 | | 1 9 | | | | |
| | 3359 | 09351 | BRISCOE | O. | 05-15-86 | | 9 | | | | |
| | 3360 | 16263 | COLE | Q. | 05-15-86 | | 1 9 | | | | |
| | 3361 | 69919 | PITTMAN | R.L. | 05-15-86 | | 1 9 | | | | |
| | 3362 | 63894 | NELSON | D.F. | 05-15-86 | | 1 79 | | | | |
| | 3363 | 60391 | MILLER | D.E. | 05-15-86 | | 1 9 | | | | |
| | 3364 | 91911 | VOGEL | T.J. | 05-15-86 | | 1 9 | | | | |
| | 3365 | 31416 | GERDES | T.M. | 05-15-86 | | 1 9 | | | | |
| | 3366 | 81175 | SIMMONS | M.L. | 05-29-86 | DCA | | | DCA | | |
| | 3367 | 47334 | KERR | M.G. | 05-29-86 | | 1 9 | | | | |
| | 3368 | 98126 | KINATE | M.J. | 05-29-86 | | 1 9 | | | | |
| | 3369 | 17459 | CORSELLO | R.S. | 05-29-86 | | 1 9 | | | | |
| | 3370 | 12566 | CANN | N.S. | 05-29-86 | | 1 79 | | | | |
| | 3371 | 84583 | STANTON | J.R. | 05-29-86 | | 9 | | | | |
| | 3372 | 93055 | WARD | R.C. | 05-29-86 | | 1 9 | | | | |
| | 3373 | 19026 | CROSBY | D.L. | 06-26-86 | | 1 9 | | | | |
| | 3374 | 44582 | JOHNSON | J.K. | 06-26-86 | | 1 9 | | | | |
| | 3375 | 59277 | MCNAMARA | T.J. | 06-26-86 | | 9 | | | | |
| | 3376 | 21347 | DEHART JR | P.E. | 06-26-86 | | 1 9 | | | | |
| | 3377 | 12264 | CAMPANELLA | B.F. | 06-26-86 | | 1 9 | | | | |
| | 3378 | 09395 | BRISLAWN | P.M. | 06-26-86 | | 1 9 | | | | |
| | 3379 | 74992 | ROBSON | E.L. | 06-26-86 | | 1 9 | | | | |
| | 3380 | 68807 | PERRY JR | R.L. | 06-26-86 | | 1 9 | | | | |
| | 3381 | 40576 | HOGAN | B.R. | 06-26-86 | | 9 | | | | |
| | 3382 | 17174 | COOK | D.J. | 06-26-86 | | 9 | | | | |
| | 3383 | 48555 | KLEINBERG JR | K.M. | 06-26-86 | | 1 9 | | | | |
| | 3384 | 68599 | MANRIQUE | M.P. | 07-31-86 | | 1 9 | | | | |
| | 3385 | 10342 | BRUCE | G.L. | 07-31-86 | | 9 | | | | |
| | 3386 | 95392 | WHITE | L.P. | 07-31-86 | | 1 79 | | | | |
| | 3387 | 54063 | LUNDEEN | M.A. | 07-31-86 | | 1 9 | | | | |
| | 3388 | 78400 | SCHOCH | S.C. | 07-31-86 | | 1 9 | | | | |
| | 3389 | 38750 | HENDRICKSON | M.K. | 07-31-86 | | 1 79 | | | | |
| | 3390 | 94264 | WEISINGER | J.F. | 07-31-86 | | 1 9 | | | | |
| | 3391 | 52986 | LLOYD-JONES | M.E. | 07-31-86 | ATL | 85 | | ATL | | |
| | 3392 | 12930 | CARNEY | H.F. | 07-31-86 | | 1 79 | | | | |
| | 3393 | 18035 | COVERS | G.E. | 07-31-86 | | 1 9 | | | | |
| | 3394 | 91440 | VAUGHAN | S.D. | 07-31-86 | | 1 9 | | | | |
| | 3395 | 55581 | MARSH | R.W. | 08-14-86 | | 9 | | CP DC9 ATL | 8 | |
| | 3396 | 32599 | GOERS | G.L. | 08-14-86 | | 1 9 | | | | |
| | 3397 | 56492 | MATTOX | D.E. | 08-14-86 | | 1 9 | | | | |
| | 3398 | 56892 | KELTON | P.M. | 08-14-86 | | 1 9 | | | | |
| | 3399 | 63149 | MUROSKI | M.A. | 10-09-86 | | 1 9 | | | | |
| | 3400 | 22279 | DICHIARA | J.V. | 10-09-86 | | 9 | | | | |
| | 3401 | 22637 | DISILVESTRO | A.R. | 10-09-86 | | 1 9 | | | | |
| | 3402 | 22007 | DERVAS | P. | 10-09-86 | | 1 9 | | | | |
| | 3403 | 72948 | REES | C.T. | 10-09-86 | | 9 | | | | |
| | 3404 | 27435 | FISHER | P.R. | 11-06-86 | | 9 | | | | |
| | 3405 | 77025 | SADR | S.A. | 08-31-87 | | 1 9 | | CP DC9 ATL | 8 | |
| | 3406 | 68088 | SABLESAK | H.J. | 08-31-87 | CP 727 MIA | 1 | | CP 727 MIA | | |
| | 3407 | 65244 | NOWLIN | M.B. | 08-31-87 | | 1 9 | | | | |
| | 3408 | 34972 | GRUBBS | T.M. | 08-31-87 | | 1 9 | | | | |
| | 3409 | 33785 | GRESSLER | S.J. | 08-31-87 | | | | | | |
| | 3410 | 29447 | FRYE | T.P. | 08-31-87 | CP 727 JFK | 1 | | CP 727 JFK | | |
| | 3411 | 01876 | ANDERSON | S.H. | 09-14-87 | | 9 | | | | |
| | 3412 | 66192 | ORTMAN | T.R. | 09-14-87 | | 1 9 | | | | |
| | 3413 | 67923 | PEARSON | A.R. | 09-14-87 | | 1 9 | | | | |
| | 3414 | 57514 | MACOMBER | B.R. | 09-14-87 | | 1 79 | | | | |
| | 3415 | 85018 | STEIN | D.M. | 09-14-87 | | 1 9 | | | | |

```
- - - - - - - - - - - - - - - IDENT CODE - - - - - - - -                    SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-1B - UPGRADE       A = WAIT FOR CP-727      * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                    B = WAIT FOR CP-930      # = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C               C = GAIN FURTHER EXPERIENCE  @ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED
```

09/13/89                 PILOT LISTING BY SENIORITY NUMBER - REPORT 14                 PAGE...53          MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | N A M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3483 | 76587 | RUSH | E.M. | 11-27-87 | | 1 9 | | | | |
| | 3484 | 80490 | SCHERFF | J.E. | 11-27-87 | | 9 | | | | |
| | 3485 | 37127 | HARVEY | D.M. | 11-27-87 | ATL | 1 | | ATL | | |
| | 3486 | 29609 | FRUCHTER | G.J. | 11-27-87 | | 1 9 | | | | |
| | 3487 | 39437 | HIDLAY | D.T. | 11-27-87 | | 1 9 | | | | |
| | 3488 | 54715 | MAIER | J.P. | 11-27-87 | | 1 9 | | | | |
| | 3489 | 16630 | COLN | B.K. | 12-11-87 | | 9 | | | | |
| | 3490 | 33946 | GRIGORIAN | R. | 12-11-87 | | 9 | | | | |
| | 3491 | 54621 | MACHA | M.O. | 12-11-87 | | 1 9 | | | | |
| | 3492 | 19222 | CULBERTSON | D.L. | 12-11-87 | | 1 9 | | | | |
| | 3493 | 74906 | ROBINSON | L.L. | 12-11-87 | | 1 9 | | | | |
| | 3494 | 42836 | HUSTON | H.W. | 12-11-87 | | 1 9 | | | | |
| | 3495 | 09327 | BRODZINSKI | G.M. | 12-11-87 | | 9 | | | | |
| | 3496 | 43323 | IRELAND | C.P. | 12-11-87 | | 1 9 | | | | |
| | 3497 | 10378 | BRUCCOLERI | M.V. | 12-11-87 | | 1 79 | | | | |
| | 3498 | 50430 | LAMBERT | L.J. | 12-11-87 | | 1 9 | | | | |
| | 3499 | 48497 | KLASSEN | R.W. | 12-11-87 | | 1 9 | | | | |
| | 3500 | 31346 | GESICKI | M.W. | 12-11-87 | | 1 9 | | | | |
| | 3501 | 99324 | ZIEGLER | W.W. | 12-11-87 | | 1 9 | | | | |
| | 3502 | 40764 | HOLCOMB | M.S. | 12-11-87 | | 1 9 | | | | |
| | 3503 | 66513 | OWEN | J.D. | 12-11-87 | | 1 9 | | | | |
| | 3504 | 41580 | DOGLIONE | F.H. | 12-21-87 | | 1 9 | | | | |
| | 3505 | 92234 | WADDELL | C.R. | 01-01-88 | | 9 | | | | |
| | 3506 | 12999 | CARLSON | L.L. | 01-01-88 | | 9 | | | | |
| | 3507 | 52148 | LEO | D.R. | 01-01-88 | | 1 9 | | | | |
| | 3508 | 38821 | HENDERSON | R.M. | 01-01-88 | | 9 | | | | |
| | 3509 | 94426 | WELLER | G.L. | 01-01-88 | | 9 | | | | |
| | 3510 | 56078 | MARTIN | F.N. | 01-01-88 | | 9 | | | | |
| | 3511 | 23030 | DEPALMA | T.V. | 01-01-88 | | 1 9 | | | | |
| | 3512 | 01906 | AMBROSE | T.S. | 01-01-88 | | 9 | | | | |
| | 3513 | 04716 | BATSON | W.E. | 01-01-88 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3514 | 68294 | PELL | T.A. | 01-01-88 | | 9 | | | | |
| | 3515 | 92078 | VOREL | J.A. | 01-01-88 | | 1 9 | | | | |
| | 3516 | 57771 | MCCLELLAND | R.S. | 01-01-88 | | 9 | | | | |
| | 3517 | 96361 | WILLIAMS | M.A. | 01-01-88 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3518 | 36762 | HARPER | F.P. | 01-01-88 | | 1 9 | | | | |
| | 3519 | 22780 | DEEGAN | P.V. | 01-01-88 | | 9 | | | | |
| | 3520 | 60067 | MEYERSOHN | M.E. | 01-01-88 | | 1 9 | | | | |
| | 3521 | 32327 | GLAZE | M.S. | 01-01-88 | | 9 | | | | |
| | 3522 | 35036 | GUEITS | J.E. | 01-01-88 | | 9 | | | | |
| | 3523 | 92058 | VINSON | B.K. | 01-01-88 | | 9 | | | | |
| | 3524 | 46321 | KATZ | B.S. | 01-01-88 | | 9 | | | | |
| | 3525 | 01373 | ALSTON | S.G. | 01-01-88 | | 1 79 | | | | |
| | 3526 | 45754 | JORSEY | A. | 01-01-88 | CP 727 DCA | 1 | | CP 727 DCA | | |
| | 3527 | 60525 | MILLER | R.N. | 01-01-88 | | 1 9 | | | | |
| | 3528 | 50660 | LANGER | L.E. | 01-01-88 | | 1 9 | | | | |
| | 3529 | 09208 | BRILL | W.J. | 01-01-88 | | 1 9 | | | | |
| | 3530 | 83514 | SOWELL | H.L. | 01-01-88 | | 1 9 | | | | |
| | 3531 | 31066 | GAY | J.P. | 01-07-88 | | 1 9 | | | | |
| | 3532 | 64871 | NOE | J.S. | 01-07-88 | | 1 9 | | | | |
| | 3533 | 00483 | ADRIAN | E.D. | 01-07-88 | | 9 | | | | |
| | 3534 | 80925 | SCHUMANN | R.L. | 01-07-88 | | 9 | | | | |
| | 3535 | 62482 | MORRISON | M.W. | 01-07-88 | | 1 79 | | | | |
| | 3536 | 76956 | RYDER | R.B. | 01-07-88 | | 9 | | | | |
| | 3537 | 41741 | HUTTO | J.A. | 01-07-88 | | 1 9 | | | | |
| | 3538 | 92032 | VERCHUK | C.A. | 01-07-88 | | 1 9 | | | | |
| | 3539 | 47641 | KECKLEY | B.J. | 01-07-88 | | 1 79 | | | | |
| | 3540 | 43531 | JACKSON | J.C. | 01-07-88 | | 1 9 | | | | |
| | 3541 | 63264 | MURPHY | T.W. | 01-07-88 | | 1 79 | | | | |
| | 3542 | 97479 | WOLBERT | J.C. | 01-07-88 | | 1 79 | | | | |
| | 3543 | 27490 | FISHER | J.F. | 01-07-88 | CP DC9 ATL | 1 7 | | CP DC9 ATL | | |
| | 3544 | 47385 | THACKER | T.C. | 01-07-88 | | 1 79 | | | | |
| | 3545 | 12201 | CAMACHO | M.O. | 01-14-88 | | 1 9 | | | | |
| | 3546 | 13936 | CAUFMAN | J.L. | 01-14-88 | | 9 | | | | |
| | 3547 | 89167 | THOMPSON | C.H. | 01-14-88 | | 1 9 | | | | |
| | 3548 | 85177 | STEPHENS | J.L. | 01-14-88 | | 1 9 | | | | |
| | 3549 | 04608 | BASCO | J.F. | 01-14-88 | CP 727 ATL | 8 | | CP 727 ATL | | |

---

IDENT CODE
1 = CURTAILED                        5 = 28-G-18 - UPGRADE          A = WAIT FOR CP-727
2 = DISPLACED                        6 = 28-J                       B = WAIT FOR CP-DC9
3 = 28-G-6A - 15 MONTH LOCK          7 = 28-L-3C                    C = GAIN FURTHER EXPERIENCE
4 = 28-G-6B - 15 MONTH LOCK          8 = 28-G-6A - 24 MONTH LOCK    U = UNASSIGNED

SUPERVISORY CODE
* = 950 - DOMICILE
# = 930 - TRAINING
a = 920 - SPECIAL

09/13/89                    PILOT LISTING BY SENIORITY NUMBER - REPORT 14                    PAGE...55        MPS06OR5

| S C | SNRTY NBR | EMPL NBR | LAST | NAME INIT | M E | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3617 | 52457 | LICHTY | G.K. | | 03-10-88 | | 9 | | | | |
| | 3618 | 36385 | HANSEN | E.G. | | 03-10-88 | | 9 | | | | |
| | 3619 | 14252 | CHANNEL | D.E. | | 03-10-88 | | 9 | | | | |
| | 3620 | 20342 | DAUM | J.A. | | 03-10-88 | | 9 | | | | |
| | 3621 | 13627 | CASH | R.C. | | 03-10-88 | | 1 79 | | | | |
| | 3622 | 54565 | MCCORY | C.W. | | 03-10-88 | | 9 | | | | |
| | 3623 | 02046 | APT | C.A. | | 03-10-88 | | 9 | | | | |
| | 3624 | 16129 | COLIA | K.B. | | 03-10-88 | | 1 79 | | | | |
| | 3625 | 56079 | MARZAN | H.E. | | 03-10-88 | | 9 | | | | |
| | 3626 | 72564 | RAYMOND | S.A. | | 03-10-88 | | 1  9 | | | | |
| | 3627 | 87705 | TAYLOR | M.L. | | 03-10-88 | | 1  9 | | | | |
| | 3628 | 17253 | COOPER | J.R. | | 03-10-88 | | 9 | | | | |
| | 3629 | 82527 | SMITH | J.D. | | 03-10-88 | | 9 | | | | |
| | 3630 | 78811 | SCHWARTZ | R.D. | | 03-10-88 | | 1  9 | | | | |
| | 3631 | 59933 | MESMER | P.A. | | 03-10-88 | | 1  9 | | | | |
| | 3632 | 46129 | KALBAUGH | K.L. | | 03-10-88 | | 1  9 | | | | |
| | 3633 | 61357 | MOGENSEN | N.S. | | 03-10-88 | | 9 | | | | |
| | 3634 | 66990 | PARELLA | R.A. | | 03-10-88 | | 9 | | | | |
| | 3635 | 44665 | JOHNSEN | V.L. | | 03-10-88 | | 9 | | | | |
| | 3636 | 08869 | HARTMAN | J.T. | | 03-17-88 | | 9 | | FO 727 ATL | 8C | |
| | 3637 | 06887 | BLASBERG | D.A. | | 03-17-88 | | 9 | | | | |
| | 3638 | 45903 | JOULHAN | T.H. | | 03-17-88 | | 9 | | | | |
| | 3639 | 43515 | JACKSON | J.A. | | 03-17-88 | | 9 | | | | |
| | 3640 | 69522 | PHILLIPS | R.A. | | 03-17-88 | | 9 | | SO 727 DCA | | |
| | 3641 | 65493 | OCHINKO | L.P. | | 03-17-88 | | 1 79 | | | | |
| | 3642 | 23027 | DEMPSTER | A. | | 03-17-88 | | 9 | | | | |
| | 3643 | 39340 | HETTINGER | J.A. | | 03-17-88 | | 9 | | | | |
| | 3644 | 25982 | EVANS | V.L. | | 03-17-88 | | 1 79 | | | | |
| | 3645 | 76786 | RUTAN | R.H. | | 03-17-88 | | 9 | | | | |
| | 3646 | 58787 | MCKEON | A.T. | | 03-17-88 | | 9 | | | | |
| | 3647 | 19678 | CUMMINS | G.J. | | 03-17-88 | | 1 79 | | | | |
| | 3648 | 37771 | HATHAWAY | D.C. | | 03-17-88 | | 1 79 | | | | |
| | 3649 | 31157 | GEIST | W.D. | | 03-17-88 | | 9 | | | | |
| | 3650 | 85780 | STODDART | F.G. | | 03-17-88 | | 9 | | | | |
| | 3651 | 68596 | PENNYPACKER | D.A. | | 03-17-88 | | 9 | | | | |
| | 3652 | 84547 | STANBACK | B.Y. | | 03-17-88 | | 9 | | | | |
| | 3653 | 26021 | EVANS | R.H. | | 03-24-88 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3654 | 84579 | STANDISH | R.W. | | 03-24-88 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3655 | 22964 | DOLBEC | S.L. | | 03-24-88 | | 9 | | | | |
| | 3656 | 59173 | MCMILLAN | D.H. | | 03-24-88 | | 1 79 | | | | |
| | 3657 | 99330 | ZELINKA | F.L. | | 03-24-88 | | 9 | | | | |
| | 3658 | 74620 | ROBERTS | K.G. | | 03-24-88 | | | | | | |
| | 3659 | 55171 | MANNING | C.J. | | 03-24-88 | | 9 | | | | |
| | 3660 | 52394 | LEVECQUE | P.P. | | 03-24-88 | | 1 79 | | | | |
| | 3661 | 37663 | HASSAN | H.I. | | 03-24-88 | | 9 | | | | |
| | 3662 | 20637 | DAVIS | R.J. | | 03-24-88 | | 1 79 | | | | |
| | 3663 | 62757 | MOULTRIE | J.L. | | 03-24-88 | | | | | | |
| | 3664 | 78206 | SCIALFA | S. | | 03-24-88 | | 9 | | | | |
| | 3665 | 73951 | YOUNG | J.E. | | 03-31-88 | | 9 | | | | |
| | 3666 | 07994 | BONACCI | N.J. | | 03-31-88 | | 9 | | | | |
| | 3667 | 27321 | FIEDLER | C.M. | | 03-31-88 | | 9 | | | | |
| | 3668 | 15937 | COBB | D.H. | | 03-31-88 | | 9 | | | | |
| | 3669 | 01942 | ANDERSON | D.D. | | 03-31-88 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3670 | 30771 | GARRETSON | R.G. | | 03-31-88 | | 1 79 | | | | |
| | 3671 | 50433 | LANDMAN | D.H. | | 03-31-88 | | 9 | | | | |
| | 3672 | 55189 | MANN | C.E. | | 03-31-88 | | 9 | | | | |
| | 3673 | 05771 | BENZOOR | A.E. | | 03-31-88 | | 9 | | | | |
| | 3674 | 55164 | MALINKO | G.P. | | 03-31-88 | | 9 | | | | |
| | 3675 | 13636 | CASEY | M.L. | | 03-31-88 | | 1 79 | | | | |
| | 3676 | 54573 | MACE | F.C. | | 03-31-88 | | 9 | | | | |
| | 3677 | 68953 | PERRITT | A.H. | | 03-31-88 | | 9 | | | | |
| | 3678 | 35757 | HALL | L.M. | | 03-31-88 | | 9 | | | | |
| | 3679 | 03424 | BAKER | J.A. | | 03-31-88 | | 1 79 | | | | |
| | 3680 | 62933 | MUHLI | S.H. | | 03-31-88 | | 1 79 | | | | |
| | 3681 | 90473 | TUCKER | D.R. | | 03-31-88 | | 1 79 | | | | |
| | 3682 | 78097 | SCHELDE | B.L. | | 03-31-88 | | 1 79 | | | | |
| | 3683 | 75944 | ROSSI | J.J. | | 03-31-88 | | 1 79 | | | | |

```
- - - - - - - - - - - - - - IDENT CODE - - - - - - - - - -            SUPERVISORY CODE
1 = CURTAILED          5 = 28-G-1B - UPGRADE          A = WAIT FOR CP-727        * = 950 - OO  MICILE
2 = DISPLACED          6 = 28-J                       B = WAIT FOR CP-DC9        ≠ = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C             C = GAIN FURTHER EXPERIENCE   ⊕ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK   U = UNASSIGNED
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | N A M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3751 | 20193 | LEMBO | G. | 04-03-89 | FO 727 MIA | | | FO 727 MIA | | |
| | 3752 | 20196 | SIMMONS | G.M. | 04-03-89 | FO L11 MIA | | | FO L11 MIA | | |
| | 3753 | 20776 | ERICKSON | J.A. | 04-03-89 | FO 727 MIA | | | FO 727 JFK | | |
| | 3754 | 20714 | DUBEAU | K.W. | 04-03-89 | SO L11 MIA | | | SO L11 MIA | | |
| | 3755 | 20712 | BROWNIE | M.S. | 04-03-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3756 | 20197 | LOVE | S.W. | 04-03-89 | | | | | | |
| | 3757 | 20718 | BROWN | K.M. | 04-03-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3758 | 20195 | SALVATI | P.P. | 04-03-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3759 | 20715 | GURTNER | N.J. | 04-03-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3760 | 20189 | ALLAN | G.A. | 04-03-89 | | | | | | |
| | 3761 | 59207 | KHAN | N. | 04-03-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3762 | 20778 | RAMELLI | T.G. | 04-03-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3763 | 20194 | ROSS | C.G. | 04-03-89 | SO L11 MIA | | | SO L11 MIA | | |
| | 3764 | 56769 | MAYNARD | C.G. | 04-04-89 | FO 300 MIA | 8 | | FO 300 MIA | | |
| | 3765 | 77749 | SANICKI | R.S. | 04-04-89 | FO 757 MIA | | | | | |
| | 3766 | 76009 | BROOKS | D.L. | 04-04-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3767 | 59202 | HENDERSON | M.D. | 04-06-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3768 | 59204 | BELTRAN | J.E. | 04-08-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3769 | 17992 | COSTANTINI | J.J. | 04-17-89 | SO 727 JFK | | | SO 727 JFK | | |
| | 3770 | 63598 | MYAL | W.J. | 04-17-89 | SO 727 DCA | | | SO 727 DCA | | |
| | 3771 | 77682 | SAUNDERS III | M.E. | 04-17-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3772 | 76951 | RYBA | F.M. | 04-17-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3773 | 15881 | BUCHANAN | E.J. | 04-17-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3774 | 49068 | GILLIAM | J.C. | 04-17-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3775 | 66267 | ORLOB | H.J. | 04-17-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3776 | 76656 | LAMAUTE | L.L. | 04-17-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3777 | 43851 | LANTZ | K.M. | 04-17-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3778 | 86259 | BOWEN | P.K. | 04-17-89 | FO 727 MIA | | | FD 727 MIA | | |
| | 3779 | 72125 | RAD | N.M. | 04-17-89 | SO L11 MIA | | | SO L11 MIA | | |
| | 3780 | 29627 | BORGEN | I.A. | 04-17-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3781 | 29624 | ANDERSON | N.F. | 04-17-89 | FO 300 ATL | | | FO 300 ATL | | |
| | 3782 | 26262 | SMITH | R.D. | 04-17-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3783 | 29621 | KIMMEL | K.D. | 04-17-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3784 | 23607 | HICKS | J.H. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3785 | 21004 | FORD | B.C. | 04-17-89 | FO L11 JFK | | | FO L11 JFK | | |
| | 3786 | 26259 | RUSSELL | J.A. | 04-17-89 | FO 757 MIA | | | FO 757 MIA | | |
| | 3787 | 23619 | MCLAUGHLIN | J. | 04-17-89 | FO 727 JFK | | | FO 727 JFK | | |
| | 3788 | 29618 | WITT | D.C. | 04-17-89 | FO L11 MIA | | | | | |
| | 3789 | 20970 | CANADAY | D.F. | 04-17-89 | SO 300 JFK | | | | | |
| | 3790 | 29616 | WELLER | L.E. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | 1 | |
| | 3791 | 25091 | PEERY | T.H. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3792 | 25095 | SHORE | G.E. | 04-17-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3793 | 26264 | STEPHAN | J.N. | 04-17-89 | | | | | | |
| | 3794 | 20971 | CHAMBERLIN | L.M. | 04-17-89 | | | | | | |
| | 3795 | 20997 | COX | G.R. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3796 | 29628 | KORBY | J.M. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3797 | 29620 | VOGT | T.C. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3798 | 21001 | DREHS | R.A. | 04-17-89 | SO L11 ATL | | | SO L11 ATL | | |
| | 3799 | 23603 | HALL | J.A. | 04-17-89 | FO 300 ATL | | | FO 300 ATL | | |
| | 3600 | 23609 | JENSEN | L.K. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3801 | 20964 | DUNTON | J.M. | 04-17-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3802 | 20998 | DAWSON | H.R. | 04-17-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3803 | 25088 | MULLINS | E.R. | 04-17-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3804 | 25089 | KNIGHT | R.D. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3805 | 26261 | SIEGEL | W.A. | 04-17-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 3806 | 26263 | SMITH | R.F. | 04-17-89 | FO 727 MIA | | | FO 727 MIA | | |
| | 3807 | 64137 | ALEXANDER | T.E. | 04-17-89 | SO 727 ATL | | | | | |
| | 3808 | 20972 | CHILOS | R.W. | 04-17-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3809 | 29607 | THOMPSON | J.T. | 04-17-89 | FO L11 ATL | | | FO L11 ATL | | |
| | 3810 | 20781 | AMEND JR | F.R. | 04-17-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3811 | 21010 | GREEN | G.S. | 04-17-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3812 | 29615 | WARREN | G.G. | 04-17-89 | | | | | | |
| | 3813 | 20999 | DAY | D.A. | 04-17-89 | FO 300 ATL | | | FO 300 ATL | | |
| | 3814 | 20969 | CAISON | S.E. | 04-17-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 3815 | 23606 | HENNE | C.M. | 04-17-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 3816 | 49527 | KOTSCHACK | O. | 04-17-89 | SO 300 ATL | | | | | |
| | 3817 | 21006 | FRATER | K.X. | 04-17-89 | SO 727 MIA | | | SO 727 MIA | | |

```
- - - - - - - - - - - - - - IDENT CODE - - - -                                        SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-18 - UPGRADE      A = WAIT FOR CP-727              * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                   B = WAIT FOR CP-DC9             $ = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK  7 = 28-L-3C              C = GAIN FURTHER EXPERIENCE     @ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK  8 = 28-G-6A - 24 MONTH LOCK  U = UNASSIGNED
```

```
09/13/89          PILOT LISTING BY SENIORITY NUMBER - REPORT 14          PAGE...59      MPS060R5
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3885 | 30894 | GERSCH | B.L. | 04-24-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 3886 | 32421 | MCMANUS | E.J. | 04-24-89 | FO 300 ATL | | | FO 300 ATL | | |
| | 3887 | 64110 | ZAMARY | K.J. | 04-24-89 | SO 300 MIA | | | SO 300 MIA | | |
| | 3888 | 23613 | DASTRANJ | M.S. | 04-24-89 | FO 727 DCA | | | FO 727 DCA | | |
| | 3889 | 57505 | SIMPSON | R.R. | 04-24-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3890 | 31862 | LAZZARI | J.A. | 04-24-89 | SO 727 JFK | | | | | |
| | 3891 | 64123 | MCRAE | C.M. | 04-24-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3892 | 21002 | BORMANN | D.J. | 04-24-89 | SO 300 MIA | | | SO 300 MIA | | |
| | 3893 | 20962 | AGUIAR | J.J. | 04-24-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3894 | 98889 | YOE | R.B. | 05-01-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3895 | 67626 | ARGUEZ | R.A. | 05-01-89 | SO 727 MIA | | | SO 727 MIA | | |
| | 3897 | 68207 | MCKESSON | B.C. | 05-01-89 | CP DC9 ATL | 8T | | | T | |
| | 3898 | 68195 | HILYARD | D.C. | 05-01-89 | CP 300 MIA | 8T | | CP 300 MIA | | |
| | 3899 | 69189 | CHANCEY | J.H. | 05-01-89 | CP DC9 ATL | 8T | | CP DC9 ATL | | |
| | 3900 | 64822 | MEGGS | H.G. | 05-01-89 | SO 727 ATL | T | | SO 727 ATL | | |
| | 3901 | 18129 | COVAULT | L.E. | 05-01-89 | CP 300 ATL | T | | CP 300 ATL | | |
| | 3902 | 68196 | MOKRY | F.B. | 05-01-89 | FO 757 ATL | | | FO 757 ATL | | |
| | 3904 | 69184 | DECKER JR | G.E. | 05-01-89 | FO 757 MIA | | | FO 757 MIA | | |
| | 3905 | 85949 | STONE | N. | 05-01-89 | SO 727 ATL | T | | | | |
| | 3906 | 68208 | MAYER | R.E. | 05-01-89 | FO 300 MIA | T | | FO 300 ATL | 1 T | |
| | 3907 | 68193 | HULSE | D.D. | 05-01-89 | FO DC9 ATL | | | | | |
| | 3908 | 68212 | FOLEY | M.T. | 05-01-89 | SO 727 MIA | T | | SO 727 MIA | | |
| | 3909 | 65182 | FRENCH | G.B. | 05-01-89 | CP L11 MIA | 8T | | CP L11 MIA | | |
| | 3910 | 65184 | THRUSTON | E.F. | 05-01-89 | FO L11 MIA | | | FO L11 MIA | | |
| | 3911 | 69185 | CLARK | E.T. | 05-01-89 | SO 300 ATL | | | SO 300 ATL | | |
| | 3912 | 69186 | CATCHINGS | D.S. | 05-01-89 | FO 757 ATL | | | FO 757 ATL | | |
| | 3913 | 68205 | HANNON | H.N. | 05-01-89 | FO 727 ATL | | | FO 727 MIA | | |
| | 3915 | 68190 | KRANKER | P.L. | 05-01-89 | FO 757 ATL | | | FO 757 ATL | | |
| | 3916 | 65185 | BECKER | D.A. | 05-01-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 3917 | 99000 | YOUNG | I.F. | 05-01-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 3918 | 65707 | MCCLANNAHAN | R.M. | 05-01-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3919 | 65708 | WHISENANT | M.K. | 05-01-89 | SO 300 ATL | | | SO 300 ATL | | |
| | 3920 | 64825 | BIENIEK | C.R. | 05-01-89 | FO 757 ATL | | | FO 757 ATL | | |
| | 3921 | 64824 | GARCIA-VERGARA | H. | 05-01-89 | FO L11 MIA | | | FO L11 MIA | | |
| | 3922 | 69190 | BIGGS | C.G. | 05-01-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 3923 | 69236 | BAUMAN | R.L. | 05-01-89 | FO 727 MIA | | | | | |
| | 3924 | 68211 | MADDOX | W.N. | 05-01-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3925 | 69235 | BEATY | G.L. | 05-01-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3926 | 68192 | JONES | G.E. | 05-01-89 | | | | | | |
| | 3927 | 64821 | SILVA | I.J. | 05-01-89 | CP 727 ATL | 8T | | CP 727 MIA | T | |
| | 3928 | 65180 | WILLIAMS | J.R. | 05-01-89 | FO 300 MIA | | | FO 300 ATL | 1 | |
| | 3929 | 64823 | NICODEMUS | I.F. | 05-01-89 | FO 757 ATL | | | FO 757 ATL | | |
| | 3930 | 65703 | PATEL | A.M. | 05-01-89 | FO 727 ATL | | | | | |
| | 3931 | 65189 | PROENZA | J. | 05-01-89 | SO 727 ATL | | | SO 727 MIA | | |
| | 3932 | 69188 | BURTON | K.H. | 05-01-89 | SO 300 ATL | | | SO 300 ATL | | |
| | 3933 | 65705 | NELSON | D.C. | 05-01-89 | SO 300 ATL | | | SO 300 ATL | | |
| | 3934 | 65183 | VANBEUREN | M. | 05-01-89 | SO 727 ATL | | | | | |
| | 3935 | 64818 | LEONHARDT | S.J. | 05-01-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 3936 | 65784 | MAURER | T.A. | 05-01-89 | FO 727 ATL | | | FO DC9 ATL | | |
| | 3937 | 65188 | RACHIS | G.F. | 05-01-89 | FO 727 DCA | | | FO 727 DCA | | |
| | 3938 | 68206 | HAMILTON | R.L. | 05-01-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 3939 | 65786 | LAUZON | L.R. | 05-01-89 | SO 727 ATL | | | SO 727 MIA | | |
| | 3940 | 68209 | BOHANNON | D.H. | 05-01-89 | SO 300 ATL | | | SO 300 ATL | | |
| | 3941 | 65706 | SILVER | J.R. | 05-01-89 | FO 727 JFK | | | FO 727 MIA | | |
| | 3942 | 65704 | HENNESSEE | T.A. | 05-01-89 | SO 300 ATL | | | SO 300 ATL | | |
| | 3943 | 68194 | SIMMS | T.L. | 05-01-89 | SO 727 ATL | T | | SO 727 MIA | | |
| | 3944 | 65186 | WHALEY | G.E. | 05-01-89 | SO L11 ATL | | | SO L11 ATL | | |
| | 3945 | 68210 | FORD | A.R. | 05-01-89 | FO L11 ATL | | | FO L11 ATL | | |
| | 3966 | 68191 | KHORSHIDCHEHR | J.B. | 05-01-89 | FO 300 ATL | | | FO 300 ATL | | |
| | 3947 | 65187 | REAM | T.A. | 05-01-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 3948 | 65787 | HOOD | G.S. | 05-01-89 | SO 727 ATL | T | | SO 727 ATL | | |
| | 3949 | 65790 | KUBECK | C.C. | 05-01-89 | FO 300 ATL | | | FO 300 ATL | | |
| | 3950 | 65788 | LASALLE | J.C. | 05-01-89 | SO 300 ATL | | | SO 300 ATL | | |
| | 3951 | 65702 | PHINNEY | J.H. | 05-01-89 | SO 727 MIA | | | SO 300 ATL | | |
| | 3952 | 69183 | CONTI | R.G. | 05-01-89 | FO 300 MIA | | | SO 300 MIA | | |
| | 3953 | 41545 | GRIFFIN | R.B. | 05-02-89 | FO 300 MIA | 8 | | FO 300 MIA | | |
| | 3954 | 34320 | GRINER | K.F. | 05-08-89 | SO 727 ATL | | | SO 727 ATL | | |

```
----------------------------- IDENT CODE ------------------------
1 = CURTAILED                 5 = 28-G-1B - UPGRADE          A = WAIT FOR CP-727        SUPERVISORY CODE
2 = DISPLACED                 6 = 28-J                       B = WAIT FOR CP-727        * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C                    C = GAIN FURTHER EXPERIENCE   # = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK    U = UNASSIGNED             @ = SPECIAL
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | NAME INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4026 | 83269 | STRAUSS JR. | R.J. | 05-15-89 | CP DC9 ATL | 8 | | | | |
| | 4027 | 81995 | MORANT | P.J. | 05-15-89 | CP 727 ATL | 8 | | FO DC9 ATL | | |
| | 4028 | 83389 | BOISVERT | D.H. | 05-15-89 | CP 727 ATL | 8 | | CP 727 ATL | | |
| | 4029 | 81994 | MIR | R.C. | 05-15-89 | CP DC9 | | | | | |
| | 4030 | 83463 | COTTLE | C.R. | 05-15-89 | FO 727 ATL | | | | | |
| | 4031 | 80348 | WARREN | J.M. | 05-15-89 | CP 727 ATL | T | | | | |
| | 4032 | 83466 | FERNANDES | F.C. | 05-15-89 | CP 727 ATL | | | | T | |
| | 4033 | 86137 | LIEN | L.J. | 05-15-89 | FO DC9 ATL | | | FO DC9 ATL | T | |
| | 4034 | 84252 | WILSON | W.F. | 05-15-89 | CP 727 ATL | T | | | | |
| | 4035 | 84257 | HUGGINS | C.E. | 05-15-89 | CP L11 MIA | | | | | |
| | 4036 | 83347 | PTASCHEK | E.D. | 05-15-89 | CP L11 MIA | T | | CP L11 MIA | | |
| | 4037 | 81990 | MARDIS | K.B. | 05-15-89 | CP DC9 | | | | | |
| | 4038 | 86726 | CASE | R.E. | 05-15-89 | SO 727 | | | | | |
| | 4039 | 81897 | LEBOUTILLIER | D. | 05-15-89 | SO 727 ATL | | | | | |
| | 4040 | 83341 | NAYPAVER | S.A. | 05-15-89 | FO 727 ATL | | | | | |
| | 4041 | 83387 | ALLISON | D.H. | 05-15-89 | CP 727 ATL | | | SO 727 ATL | | |
| | 4042 | 86138 | MCCABE | L.T. | 05-15-89 | SO 727 ATL | | | CP DC9 ATL | | |
| | 4043 | 83388 | BIRCHNOOD | E.S. | 05-15-89 | FO 727 ATL | | | SO 727 ATL | | |
| | 4044 | 83391 | BRUDER | J.A. | 05-15-89 | FO DC9 ATL | | | CP 727 ATL | | |
| | 4045 | 83265 | RUSAK | E.J. | 05-15-89 | SO 727 ATL | | | | | |
| | 4046 | 71307 | ABER | L.A. | 05-15-89 | FO 727 ATL | | | SO 727 MIA | | |
| | 4047 | 84251 | MIGHT | T.R. | 05-15-89 | SO 727 ATL | | | FO 727 ATL | | |
| | 4048 | 81992 | MARTINEZ | G.J. | 05-15-89 | FO L11 ATL | | | | | |
| | 4049 | 83266 | ROSE | H.H. | 05-15-89 | CP 727 ATL | | | FO L11 ATL | | |
| | 4050 | 81896 | LARSON JR. | J.R. | 05-15-89 | CP 727 ATL | | | CP 727 ATL | | |
| | 4051 | 86728 | O'CONNELL | P.P. | 05-15-89 | FO 300 MIA | | | FO 300 MIA | 1 | |
| | 4052 | 86143 | NORMAN | J.S. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4053 | 86727 | DELORENZO | P.A. | 05-15-89 | SO 727 | | | | | |
| | 4054 | 83471 | HAUTH | D.A. | 05-15-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 4055 | 83394 | CASANOVA | J.E. | 05-15-89 | FO 727 ATL | | | FO 727 MIA | | |
| | 4057 | 86141 | HIRSCH | H.J. | 05-15-89 | CP DC9 ATL | | | | | |
| | 4058 | 83342 | NEAL | H.G. | 05-15-89 | FO L11 ATL | | | CP DC9 ATL | | |
| | 4059 | 83469 | GODWIN | L.S. | 05-15-89 | SO 727 ATL | | | FO L11 ATL | | |
| | 4060 | 86724 | LANDRY | L.R. | 05-15-89 | FO 727 ATL | | | | | |
| | 4061 | 83470 | HALL | J.C. | 05-15-89 | FO L11 ATL | | | FO 727 ATL | | |
| | 4062 | 83395 | CERRI | M. | 05-15-89 | FO L11 ATL | | | FO L11 ATL | | |
| | 4063 | 83349 | RAJU | K.V. | 05-15-89 | FO 757 ATL | | | FO 757 ATL | | |
| | 4064 | 81989 | LUSTRE | T. | 05-15-89 | SO 727 ATL | | | FO 757 ATL | | |
| | 4064A | 86142 | FOX | J.C. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4065 | 83396 | COCKRELL | G.A. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4066 | 81894 | KARMEL | M. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4067 | 81991 | MARINAN | J.S. | 05-15-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4068 | 81891 | HUDDLESTON | J.D. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4069 | 83386 | SHERRY | E.E. | 05-15-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4070 | 83467 | FORSBERG | S.A. | 05-15-89 | SO 727 ATL | | | FO DC9 ATL | | |
| | 4072 | 83468 | GARDNER | D.E. | 05-15-89 | FO 727 ATL | | | SO 727 MIA | | |
| | 4073 | 83343 | OKSNEVAD | G.O. | 05-15-89 | SO 727 ATL | | | FO 727 MIA | | |
| | 4074 | 81892 | KAHLA | I.R. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4075 | 83268 | SOLBERG | S.D. | 05-15-89 | FO DC9 | | | | | |
| | 4076 | 84259 | PETRUTSAS | L.S. | 05-15-89 | FO DC9 ATL | | | | | |
| | 4077 | 81898 | LEMAR | R.B. | 05-15-89 | SO 727 ATL | | | | | |
| | 4078 | 64119 | ANDERSON | R.H. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4079 | 83270 | TABARES | F.G. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4080 | 86117 | HASSETT | P.R. | 05-15-89 | SO 727 ATL | | | SO 727 MIA | | |
| | 4081 | 83390 | BOOHER | M.A. | 05-15-89 | FO DC9 ATL | | | SO D10 MIA | 8 | |
| | 4082 | 83344 | ORTEGA | C.A. | 05-15-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4083 | 83345 | PALMER | B.D. | 05-15-89 | FO 757 MIA | | | FO 300 MIA | | |
| | 4084 | 83267 | SCHRAG | J.A. | 05-15-89 | FO L11 ATL | | | FO 757 ATL | | |
| | 4085 | 84254 | PETERSON | M.J. | 05-15-89 | FO DC9 ATL | | | FO L11 ATL | | |
| | 4086 | 86723 | BREDTHAUER | D. | 05-15-89 | SO 727 ATL | | | | | |
| | 4087 | 80342 | CARLSON | D.E. | 05-15-89 | FO 727 ATL | | | SO 727 ATL | | |
| | 4088 | 86139 | WOOD | D.R. | 05-15-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 4089 | 83393 | BURRELL | P.A. | 05-15-89 | SO 727 ATL | | | SO 727 ATL | | |
| | 4090 | 87388 | PETERS | W.C. | 05-15-89 | CP 727 ATL | | | SO 727 ATL | | |
| | 4091 | 99636 | LOPEZ | J.V. | 05-22-89 | CP 727 ATL | | | CP 727 ATL | | |
| | 4092 | 87160 | KNECHT | M.J. | 05-22-89 | CP DC9 ATL | | | FO 727 MIA | | |
| | 4093 | 83464 | BOH | R.L. | 05-22-89 | CP L11 MIA | | | CP DC9 ATL | | |

---

- - - - - - - - - - IDENT CODE - - - - - - - - - - - -
1 = CURTAILED
2 = DISPLACED
3 = 28-G-6B - 15 MONTH LOCK
4 = 28-G-6B - 15 MONTH LOCK

5 = 28-G-1B - UPGRADE
6 = 28-J
7 = 28-L-3C
8 = 28-G-6A - 24 MONTH LOCK

A = WAIT FOR CP-727
B = WAIT FOR CP-DC9
C = GAIN FURTHER EXPERIENCE
U = UNASSIGNED

SUPERVISORY CODE
* = 950 - DOMICILE
‡ = 930 - TRAINING
@ = SPECIAL

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOH-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4162 | 99467 | RUTHERFORD | D.M. | 05-29-89 | CP DC9 ATL | | | CP DC9 ATL | | |
| | 4163 | 99587 | JONES | H.M. | 05-29-89 | SO 727 DCA | | | SO 727 DCA | | |
| | 4164 | 87500 | BRYANT | P.T. | 05-29-89 | CP DC9 | | | | | |
| | 4165 | 99618 | MCGOWAN | R.N. | 05-29-89 | CP 727 DCA | | | CP 727 ATL | | |
| | 4166 | 99472 | STARK | D.W. | 05-29-89 | CP 727 DCA | | | CP 727 DCA | | |
| | 4167 | 99584 | JOHNSON | R.V. | 05-29-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4168 | 99586 | JOHNSON | W.G. | 05-29-89 | CP 727 JFK | | | CP 727 JFK | | |
| | 4169 | 88108 | CASTILLO | J.G. | 05-29-89 | FO 757 ATL | | | FO 757 ATL | | |
| | 4170 | 99582 | HATFIELD | E.M. | 05-29-89 | CP DC9 ATL | | | | | |
| | 4171 | 98484 | WOODS | R.O. | 05-29-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 4172 | 99620 | MOODY | M.E. | 05-29-89 | CP 727 DCA | | | | | |
| | 4173 | 98482 | WHITTEMORE | J.W. | 05-29-89 | SO 727 | | | | | |
| | 4174 | 99463 | ROARK | J.P. | 05-29-89 | FO 727 ATL | | | SO 727 ATL | | |
| | 4175 | 98489 | HERRSCRAFT | R.J. | 05-29-89 | CP 727 DCA | | | FO 727 ATL | | |
| | 4176 | 88103 | BURT | P.B. | 05-29-89 | SO 727 ATL | | | CP 727 DCA | | |
| | 4177 | 98483 | WINTER | P. | 05-29-89 | CP 727 JFK | | | SO 727 ATL | | |
| | 4178 | 98494 | ZAHNLE | O.G. | 05-29-89 | CP DC9 ATL | | | | | |
| | 4179 | 98486 | YOUNGBERG | J.B. | 05-29-89 | FO 727 ATL | | | CP DC9 ATL | | |
| | 4180 | 98493 | WANGCHAROEN | C.M. | 05-29-89 | SO 727 ATL | | | FO 727 MIA | | |
| | 4181 | 85348 | BOWDEN | T.A. | 05-29-89 | FO DC9 ATL | | | SO 727 ATL | | |
| | 4182 | 99589 | LAMECKER | D.R. | 05-29-89 | CP 727 DCA | | | FO DC9 ATL | | |
| | 4183 | 99474 | TROUT | J.P. | 05-29-89 | FO 757 ATL | | | CP 727 DCA | | |
| | 4184 | 99605 | ECKHART | H.S. | 05-29-89 | CP DC9 ATL | | | FO 757 ATL | | |
| | 4185 | 99600 | CLEMMONS | T.E. | 05-29-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4186 | 81900 | BACHRACH | M.S. | 05-29-89 | SO 727 DCA | | | FO DC9 ATL | | |
| | 4187 | 99465 | RUSMAN | K.S. | 05-29-89 | FO 727 JFK | | | SO 727 MIA | | |
| | 4188 | 98481 | WALDREN | T.M. | 05-29-89 | SO L11 ATL | | | FO 727 MIA | | |
| | 4189 | 99629 | BRIGGS | P.R. | 05-29-89 | CP 727 JFK | | | SO L11 ATL | | |
| | 4190 | 99631 | HANNON | J.M. | 05-29-89 | CP 727 DCA | | | CP 727 JFK | | |
| | 4191 | 98487 | ZAAROUR | A.T. | 05-29-89 | SO 727 DCA | | | CP 727 ATL | | |
| | 4192 | 84255 | BASINSKI | M.J. | 05-29-89 | SO 727 DCA | | | SO 727 DCA | | |
| | 4193 | 99475 | VERMILION | R.D. | 05-29-89 | | | | SO 727 MIA | | |
| | 4194 | 80349 | ALLEN | S.D. | 05-29-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 4195 | 99630 | CONWAY | J.M. | 05-29-89 | FO 727 ATL | | | SO 727 MIA | | |
| | 4196 | 99639 | CHRISTOPHER | A.S. | 05-29-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 4197 | 98492 | SWARTZEAGER | P.G. | 05-29-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4198 | 99580 | FITZGERALD | S.L. | 05-29-89 | SO L11 ATL | | | SO L11 ATL | | |
| | 4199 | 98485 | MORMUTH | T.F. | 05-29-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 4200 | 99594 | ALAVA | V.P. | 06-05-89 | CP DC9 ATL | | | | | |
| | 4201 | 89780 | DENNISON | R.R. | 06-05-89 | CP DC9 ATL | T | | | | |
| | 4202 | 97118 | HOLLARN | T.J. | 06-05-89 | FO DC9 ATL | T | | CP DC9 ATL | | |
| | 4203 | 95719 | KELLY | D.J. | 06-05-89 | CP DC9 ATL | | | | | |
| | 4204 | 97109 | DEPHILLIPS | F.M. | 06-05-89 | FO DC9 ATL | | | | | |
| | 4205 | 99468 | CASIMIR | C.R. | 06-05-89 | FO L11 ATL | | | FO DC9 ATL | | |
| | 4206 | 93898 | BRIER | J.A. | 06-05-89 | FO DC9 ATL | | | | | |
| | 4207 | 87391 | AKAM | G.L. | 06-05-89 | FO 727 DCA | | | FO 727 DCA | | |
| | 4208 | 99470 | CHIPRANY | T.A. | 06-05-89 | CP 727 DCA | | | CP 727 DCA | | |
| | 4209 | 97120 | JACKSON | B.D. | 06-05-89 | CP 727 JFK | | | CP 727 JFK | | |
| | 4210 | 99621 | BRAUN | R.H. | 06-05-89 | CP 727 DCA | | | CP 727 DCA | | |
| | 4211 | 93731 | PEREIRA | C.J. | 06-05-89 | CP 727 | | | | | |
| | 4212 | 93896 | MOHLHUETER | J.A. | 06-05-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4213 | 99635 | AMADOR | R.T. | 06-05-89 | FO DC9 ATL | | | | | |
| | 4214 | 86729 | BALDWIN | R.L. | 06-05-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4215 | 99473 | CLAPP | K.M. | 06-05-89 | SO L11 ATL | | | SO L11 ATL | | |
| | 4216 | 95726 | MCLAUGHLIN | R.I. | 06-05-89 | FO DC9 ATL | | | | | |
| | 4217 | 95723 | KRISSMAN | R.R. | 06-05-89 | FO 727 DCA | | | | | |
| | 4218 | 93736 | RHODES | J.L. | 06-05-89 | FO L11 ATL | | | FO L11 ATL | | |
| | 4219 | 93733 | PRADA | L.H. | 06-05-89 | SO 727 DCA | | | SO 727 MIA | | |
| | 4220 | 93732 | PHILLIPS | G.H. | 06-05-89 | CP 727 JFK | | | CP 727 JFK | | |
| | 4221 | 95724 | KUNKEL | D.J. | 06-05-89 | FO L11 JFK | | | FO L11 JFK | | |
| | 4222 | 89785 | OBRIEN | D.B. | 06-05-89 | FO L11 JFK | | | FO L11 JFK | | |
| | 4223 | 89782 | GIOLITO | M.B. | 06-05-89 | SO L11 ATL | | | SO L11 ATL | | |
| | 4224 | 87393 | COOPER | W.N. | 06-05-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4225 | 93899 | CALLAHAN | R.E. | 06-05-89 | CP 727 DCA | | | FO DC9 ATL | | |
| | 4227 | 38875 | MAURO | A.F. | 06-05-89 | FO 727 JFK | | | FO 727 JFK | | |
| | 4228 | 89784 | LAING | R.C. | 06-05-89 | SO 727 DCA | | | SO 727 DCA | | |
| | 4229 | 89781 | DUMLER | M.A. | 06-05-89 | SO L11 ATL | | | SO L11 ATL | | |

- - - - - - - - - - - - - - - - IDENT CODE- - - - - - - - - - - - - - - - -

1 = CURTAILED       5 = 28-G-1B - UPGRADE    A = WAIT FOR CP-727       SUPERVISORY CODE
2 = DISPLACED       6 = 28-J       B = WAIT FOR CP-DC9       * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK    7 = 28-L-3C       C = GAIN FURTHER EXPERIENCE    ¥ = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK    8 = 28-G-6A - 24 MONTH LOCK    U = UNASSIGNED       ∋ = SPECIAL

09/13/89                    PILOT LISTING BY SENIORITY NUMBER - REPORT 14                    PAGE...65        MPS060RS

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4297 | 72307 | PETERS | L.M. | 06-12-89 | SO 727 JFK | | | SO 727 MIA | | |
| | 4298 | 88934 | MARTIN | J.A. | 06-12-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4299 | 95725 | DENISON | R.D. | 06-12-89 | FO DC9 ATL | | | FO DC9 ATL | | |
| | 4300 | 93893 | JAMESON | D.L. | 06-12-89 | SO L11 JFK | | | SO L11 ATL | | |
| | 4301 | 46541 | ROBINSON | R.D. | 06-12-89 | SO 727 JFK | | | SO 727 JFK | | |
| | 4302 | 97111 | FAIRWEATHER | H. | 06-12-89 | SO 727 JFK | | | SO 727 JFK | | |
| | 4303 | 79764 | MISSICK | T.R. | 06-12-89 | SO 727 JFK | | | SO 727 JFK | | |
| | 4304 | 46481 | HEATHERFORD | H.S. | 06-12-89 | CP 727 JFK | | | FO 727 JFK | | |
| | 4305 | 95717 | CLENDENEN | W.M. | 06-12-89 | SO 727 JFK | | | SO 727 ATL | | |
| | 4306 | 72310 | REAVIS | C.L. | 06-12-89 | CP DC9 ATL | | | | | |
| | 4307 | 46539 | GOVATOS | J.D. | 06-12-89 | SO 727 JFK | | | SO 727 ATL | | |
| | 4308 | 46536 | MOKTADIER | J.A. | 06-12-89 | SO 727 JFK | | | SO 727 MIA | | |
| | 4309 | 79747 | OGILVIE | T.L. | 06-12-89 | SO 727 JFK | | | SO 727 ATL | | |
| | 4310 | 72308 | RAMAPRAKASH | T.S. | 06-12-89 | SO 727 JFK | | | SO 727 MIA | | |
| | 4311 | 84253 | YEATER | D.A. | 06-16-89 | CP 727 JFK | | | CP 727 JFK | | |
| | 4312 | 65785 | NIREN | J.C. | 06-16-89 | CP 727 JFK | | | CP 727 ATL | | T |
| | 4313 | 69243 | PEYMANI | G.S. | 06-16-89 | CP 727 | | | | | |
| | 4314 | 64820 | LANCIA | A. | 06-16-89 | SO 727 JFK | | | SO 727 JFK | | |
| | 4315 | 79732 | GRANT | G. | 06-16-89 | SO 727 JFK | | | SO 727 JFK | | |
| | 4316 | 71548 | WITTFOTH | J.S. | 06-16-89 | CP DC9 ATL | 8 | | CP DC9 ATL | | |
| | 4317 | 64819 | AMERICA | H.L. | 06-16-89 | CP 727 JFK | | | | | |
| | 4318 | 99598 | SOFFERIN | J.L. | 06-16-89 | FO 727 ATL | | | FO 727 ATL | | |
| | 4319 | 97117 | HARRISON | J.D. | 06-16-89 | FO L11 ATL | | | FO L11 ATL | | |
| | 4320 | 81893 | KALAJI | F. | 06-16-89 | FO 727 DCA | | | FO 727 ATL | | |
| | 4321 | 43028 | WEBB | M.M. | 06-19-89 | | | | SO 727 ATL | | |
| | 4322 | 44058 | HOLLEY | J.A. | 06-19-89 | | | | FO 727 ATL | | |
| | 4323 | 45058 | SPENCER | J.F. | 06-19-89 | | | | FO 727 ATL | | |
| | 4324 | 45055 | SHOEMAKER | P.E. | 06-19-89 | | | | FO 727 ATL | | |
| | 4325 | 79746 | COLLINS | W.D. | 06-19-89 | | | | | | |
| | 4326 | 46489 | KAY | W.D. | 06-19-89 | | | | FO 727 ATL | | |
| | 4327 | 45051 | SCHNURR | J.C. | 06-19-89 | | | | FO 727 ATL | | |
| | 4328 | 43930 | WHITE | A.L. | 06-19-89 | | | | SO 727 ATL | | |
| | 4329 | 88930 | LYTLE | R.A. | 06-19-89 | | | | FO 727 DCA | | |
| | 4330 | 46482 | GMYREK | E.M. | 06-19-89 | | | | FO 757 ATL | | |
| | 4331 | 45060 | TESSENYI | T.B. | 06-19-89 | | | | FO DC9 ATL | | |
| | 4332 | 45069 | SASS | R.A. | 06-19-89 | | | | FO 727 ATL | | |
| | 4333 | 45057 | SNELLGROVE | R.T. | 06-19-89 | | | | FO 727 ATL | | |
| | 4334 | 45883 | MOORE | H.H. | 06-19-89 | | | | FO 727 ATL | | |
| | 4335 | 43932 | WOOD | B.L. | 06-19-89 | | | | SO 727 ATL | | |
| | 4336 | 44039 | ELMORE | A.R. | 06-19-89 | | | | FO 727 ATL | | |
| | 4337 | 43922 | THOMPSON | R.L. | 06-19-89 | | | | FO DC9 ATL | | |
| | 4338 | 45876 | KELONE | D.P. | 06-19-89 | | | | FO DC9 ATL | | |
| | 4339 | 46488 | KARNOFSKY | K.M. | 06-19-89 | | | | SO 727 ATL | | |
| | 4340 | 93735 | BUMPS | W.R. | 06-19-89 | | | | FO 727 ATL | | |
| | 4341 | 45882 | MELLA | S.J. | 06-19-89 | | | | FO 727 ATL | | |
| | 4342 | 99581 | GIBSON | P.J. | 06-19-89 | | | | FO 727 ATL | | |
| | 4343 | 45885 | NAMETH | K.M. | 06-19-89 | | | | FO 757 ATL | | |
| | 4344 | 95727 | GRULLON | E.E. | 06-19-89 | | | | FO 727 MIA | | |
| | 4345 | 45046 | PASCHKE | J.H. | 06-19-89 | | | | SO 727 ATL | | |
| | 4346 | 45056 | SHUEY | B.E. | 06-19-89 | | | | FO 727 ATL | | |
| | 4347 | 79745 | CLARK | H.C. | 06-19-89 | | | | FO 727 MIA | | |
| | 4348 | 44036 | CHARNNES | J.E. | 06-19-89 | | | | SO 727 JFK | | |
| | 4349 | 45880 | LOGAN | D.R. | 06-19-89 | | | | FO 727 ATL | | |
| | 4350 | 44035 | WINKLER | F.K. | 06-19-89 | | | | SO 727 MIA | | |
| | 4351 | 93729 | COLTON | C.S. | 06-19-89 | | | | SO 727 MIA | | |
| | 4352 | 46537 | PARKS | T.L. | 06-19-89 | | | | FO 727 ATL | | |
| | 4353 | 43929 | WEBER | W.J. | 06-19-89 | | | | FO 727 ATL | | |
| | 4354 | 45052 | SCOTT | E.A. | 06-19-89 | | | | FO 727 MIA | | |
| | 4355 | 72309 | DEVISSER | A.T. | 06-19-89 | | | | | | |
| | 4356 | 95718 | DEWITT | H.G. | 06-19-89 | | | | SO 727 ATL | | |
| | 4357 | 99585 | BRADLEY | R. | 06-19-89 | | | | FO DC9 ATL | | |
| | 4358 | 46545 | FRIED | S.I. | 06-19-89 | | | | SO 727 JFK | | |
| | 4359 | 93734 | PRICE | D.K. | 06-19-89 | | | | SO 727 ATL | | |
| | 4360 | 93892 | CASHATT | R.E. | 06-19-89 | | | | SO 727 ATL | | |
| | 4361 | 43931 | WISE | B.O. | 06-19-89 | | | | SO 727 MIA | | |
| | 4362 | 80347 | ADAMS | K.J. | 06-19-89 | | | | FO 727 ATL | | |
| | 4363 | 43924 | TUCKER | J.A. | 06-19-89 | | | | SO 727 ATL | | |

```
- - - - - - - - - - - - - IDENT CODE - - - - - - - - - - - - - - - -                    SUPERVISORY CODE
1 = CURTAILED                    5 = 28-G-1B - UPGRADE          A = WAIT FOR CP-727       * = 950 - DOMICILE
2 = DISPLACED                    6 = 28-J                       B = WAIT FOR CP-DC9       ‡ = 950 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK      7 = 28-L-3C                    C = GAIN FURTHER EXPERIENCE    ⊘ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK      8 = 28-G-6A - 24 MONTH LOCK    U = UNASSIGNED
```

09/13/89            PILOT LISTING BY SENIORITY NUMBER - REPORT 14                    PAGE...67       MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4431 | 41615 | REED | D.H. | 06-26-89 | | | | FO DC9 ATL | | |
| | 4432 | 43464 | HOVERKAMP | G.V. | 06-26-89 | | | | SO 727 MIA | | |
| | 4433 | 41128 | WAGGONER | A.H. | 06-26-89 | | | | SO 727 MIA | | |
| | 4434 | 41127 | VIDRINE | R.P. | 06-26-89 | | | | SO 727 ATL | | |
| | 4435 | 40118 | WILLIAMS | A.L. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4436 | 41614 | COBB | K.D. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4437 | 15651 | ROBERTS | J.R. | 07-03-89 | | | | FO 727 ATL | | |
| | 4438 | 46934 | HALL | C.N. | 07-03-89 | | | | FO 727 ATL | | |
| | 4439 | 95124 | GALLOWAY | F.D. | 07-03-89 | | | | | | |
| | 4440 | 00676 | PROBST | L.J. | 07-03-89 | | | | FO 727 ATL | | |
| | 4441 | 43462 | GUNDLACH | R.M. | 07-03-89 | | | | FO 727 ATL | | |
| | 4442 | 48059 | STANFORD | H.K. | 07-03-89 | | | | SO 727 ATL | | |
| | 4443 | 40122 | DENIKE | J.J. | 07-03-89 | | | | FO 727 JFK | | |
| | 4444 | 15662 | HENDERSON | G.Y. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4445 | 15649 | RICKS | R.R. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4446 | 00672 | PAUL | B.N. | 07-03-89 | | | | | | |
| | 4447 | 46930 | VINCENT | C.E. | 07-03-89 | | | | FO 757 ATL | | |
| | 4448 | 00665 | MCGONIGLE | P.M. | 07-03-89 | | | | FO 727 ATL | | |
| | 4449 | 15650 | RIGGS | N.A. | 07-03-89 | | | | FO 727 ATL | | |
| | 4450 | 34550 | GILMORE | J.C. | 07-03-89 | | | | FO 727 ATL | | |
| | 4451 | 34542 | EALY | R.L. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4452 | 15663 | HENDERSON | J.K. | 07-03-89 | | | | FO 727 ATL | | |
| | 4453 | 15653 | SHELLENBERG | M.S. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4454 | 41618 | CORBIN | D.N. | 07-03-89 | | | | FO 727 DCA | | |
| | 4455 | 41125 | THOMAS | M.R. | 07-03-89 | | | | SO 727 MIA | | |
| | 4456 | 34547 | GAGUIN | J.F. | 07-03-89 | | | | FO 727 DCA | | |
| | 4457 | 95125 | HABY | C.M. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4458 | 00664 | LEARY | J.H. | 07-03-89 | | | | FO 727 JFK | | |
| | 4459 | 40120 | DAVIS | S.A. | 07-03-89 | | | | FO 757 ATL | | |
| | 4460 | 34543 | ELFORD | J.P. | 07-03-89 | | | | FO 727 ATL | | |
| | 4461 | 34551 | GRIBAS | K.C. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4462 | 34598 | GIBBY | B.D. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4463 | 00667 | MORRIS | R.C. | 07-03-89 | | | | FO 727 ATL | | |
| | 4464 | 15660 | HAHN | T.M. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4465 | 34549 | GILLES | M.P. | 07-03-89 | | | | SO 727 ATL | | |
| | 4466 | 00668 | OEHL | R.A. | 07-03-89 | | | | FO 727 ATL | | |
| | 4467 | 46929 | RASMUSSEN | L.L. | 07-03-89 | | | | | | |
| | 4468 | 95123 | CREEEL | R.L. | 07-03-89 | | | | FO 757 MIA | | |
| | 4469 | 95117 | STROUP | R.L. | 07-03-89 | | | | FO 727 ATL | | |
| | 4470 | 46933 | HILL | B.R. | 07-03-89 | | | | FO 727 ATL | | |
| | 4471 | 00673 | PEREZ | L.M. | 07-03-89 | | | | SO 727 MIA | | |
| | 4472 | 41619 | ROGERS | C.D. | 07-03-89 | | | | FO 727 ATL | | |
| | 4473 | 46928 | LANDAN | C.D. | 07-03-89 | | | | SO 727 JFK | | |
| | 4474 | 15666 | SPARROW | L.K. | 07-03-89 | | | | SO 727 ATL | | |
| | 4475 | 15667 | KAMIKAWARA | M.J. | 07-03-89 | | | | SO 727 JFK | | |
| | 4476 | 15654 | SKIRKO | J. | 07-03-89 | | | | FO 727 ATL | | |
| | 4477 | 41611 | CALANTROPIO | M. | 07-03-89 | | | | SO 727 JFK | | |
| | 4478 | 34545 | FARBOLIN | G.J. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4479 | 00671 | PATROS | G. | 07-03-89 | | | | FO 727 ATL | | |
| | 4480 | 34546 | FICAJ | A.B. | 07-03-89 | | | | FO 727 ATL | | |
| | 4481 | 15664 | HENRIKSEN | M.D. | 07-03-89 | | | | SO 727 ATL | | |
| | 4482 | 43456 | GARBERG | P.J. | 07-03-89 | | | | FO DC9 ATL | | |
| | 4483 | 00666 | MORGAN | D.P. | 07-03-89 | | | | FO 727 ATL | | |
| | 4484 | 95120 | ALFORD | J.H. | 07-10-89 | | | | | T | |
| | 4485 | 41609 | BOSCHERT | E.J. | 07-10-89 | | | | FO 727 ATL | | |
| | 4486 | 43409 | REILLY | E.L. | 07-10-89 | | | | FO 727 ATL | | |
| | 4487 | 95116 | MCGEE | J.A. | 07-10-89 | | | | SO 727 MIA | | |
| | 4488 | 41236 | STANTON | J.R. | 07-10-89 | | | | | T | |
| | 4489 | 46680 | MOTLEY | A.A. | 07-10-89 | | | | FO DC9 ATL | | |
| | 4490 | 00663 | KEAHEY | J.R. | 07-10-89 | | | | FO DC9 ATL | | |
| | 4491 | 41610 | KEETH | D.H. | 07-10-89 | | | | SO 727 ATL | | |
| | 4492 | 00675 | LYNCH | J.R. | 07-10-89 | | | | SO 727 ATL | | |
| | 4493 | 41891 | BURKE | E. | 07-10-89 | | | | FO DC9 ATL | | |
| | 4494 | 41238 | JACKSON | A.C. | 07-10-89 | | | | | | |
| | 4495 | 41235 | GUNDLACH | P.S. | 07-10-89 | | | | | | |
| | 4496 | 15665 | DUREPO | G.A. | 07-10-89 | | | | FO DC9 ATL | | |
| | 4497 | 46931 | HALLS | D.H. | 07-10-89 | | | | FO DC9 ATL | | |

```
- - - - - - - - - - - - IDENT CODE - - - - - - - -                    SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-1B - UPGRADE      A = WAIT FOR CP-727        * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                   B = WAIT FOR CP-DC9        # = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C             C = GAIN FURTHER EXPERIENCE   @ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK   U = UNASSIGNED
```

09/15/89          PILOT LISTING BY SENIORITY NUMBER - REPORT 14          PAGE...69          MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4565 | 17556 | ZULASKI | M.J. | 07-17-89 | | | | FO 727 ATL | | |
| | 4566 | 17557 | BROWN | R.B. | 07-17-89 | | | | SO 727 MIA | | |
| | 4567 | 17257 | WATTERS | K.K. | 07-17-89 | | | | SO 727 ATL | | |
| | 4568 | 17194 | QUIGLEY | P.D. | 07-17-89 | | | | FO 727 JFK | | |
| | 4569 | 17163 | NAGLE | J.R. | 07-17-89 | | | | FO 727 ATL | | |
| | 4570 | 37720 | FINK | G.L. | 07-17-89 | | | | SO 727 ATL | | |
| | 4571 | 37463 | GENTRY | R.C. | 07-17-89 | | | | FO 727 ATL | | |
| | 4572 | 37467 | GUSTAVSON | M.L. | 07-17-89 | | | | FO 727 MIA | | |
| | 4573 | 37249 | HILLIS | E.A. | 07-17-89 | | | | FO 727 ATL | | |
| | 4574 | 41975 | CHORNOCK | B.M. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4575 | 17523 | LATHAM | E.D. | 07-17-89 | | | | SO 727 ATL | | |
| | 4576 | 37469 | HASTINGS | D.S. | 07-17-89 | | | | SO 727 ATL | | |
| | 4577 | 17164 | OLIEMAN | J. | 07-17-89 | | | | FO 727 ATL | | |
| | 4578 | 17162 | MOSELEY | B.L. | 07-17-89 | | | | FO 727 ATL | | |
| | 4579 | 17221 | SORENSEN | J.T. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4580 | 17220 | SMITH | G.L. | 07-17-89 | | | | FO L11 ATL | | |
| | 4581 | 17170 | POERSCHKE | J.R. | 07-17-89 | | | | FO 727 MIA | | |
| | 4582 | 17597 | BIRMINGHAM | J.D. | 07-17-89 | | | | SO 727 MIA | | |
| | 4583 | 17161 | MILLWARD | D.R. | 07-17-89 | | | | | | |
| | 4584 | 17260 | ALEXANDER | M.M. | 07-17-89 | | | | SO 727 ATL | | |
| | 4585 | 17522 | LANE | R.O. | 07-17-89 | | | | FO 757 ATL | | |
| | 4586 | 17535 | TAYLOR | M.J. | 07-17-89 | | | | SO 727 ATL | | |
| | 4587 | 37468 | HAMMOND | S.J. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4588 | 17536 | THETFORD | H.R. | 07-17-89 | | | | SO 727 ATL | | |
| | 4589 | 17471 | HOWARD | P. | 07-17-89 | | | | SO 727 JFK | | |
| | 4590 | 17558 | DULANY | R.O. | 07-17-89 | | | | | | |
| | 4591 | 17609 | URCINOLE | J. | 07-17-89 | | | | | | |
| | 4592 | 36520 | LONDERMILK | A.M. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4593 | 17525 | MILLER | T.O. | 07-17-89 | | | | SO 727 DCA | | |
| | 4594 | 37721 | FUGEDY | J.J. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4595 | 17521 | JACOBS | D. | 07-17-89 | | | | SO L11 ATL | | |
| | 4596 | 43465 | BAHR | D.J. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4597 | 37466 | GRENIE | A.A. | 07-17-89 | | | | FO 727 ATL | | |
| | 4598 | 37252 | KALANTSRI | F. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4599 | 37719 | FETTERHOFF | R.K. | 07-17-89 | | | | SO 727 ATL | | |
| | 4600 | 00669 | KLOTZ | K.T. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4601 | 37715 | DONNELSON | R.D. | 07-17-89 | | | | FO 727 MIA | | |
| | 4602 | 46487 | BARNES | G.R. | 07-17-89 | | | | SO 727 ATL | | |
| | 4603 | 17226 | VASENDEN | A.V. | 07-17-89 | | | | SO 727 ATL | | |
| | 4604 | 17256 | MARDE | Y.C. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4605 | 17473 | HYDE | M. | 07-17-89 | | | | SO 727 MIA | | |
| | 4606 | 17197 | RITCHIE | C.W. | 07-17-89 | | | | SO 727 ATL | | |
| | 4607 | 17527 | NEWSOM | D. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4608 | 17463 | GOUGE | P.B. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4609 | 17555 | WEITZEL | L.D. | 07-17-89 | | | | SO 727 ATL | | |
| | 4610 | 41979 | TIDWELL | J.L. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4611 | 37250 | JATTANSINGH | M. | 07-17-89 | | | | SO 727 ATL | | |
| | 4612 | 17402 | BUTTARS | M.L. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4613 | 15666 | BLELLOCH | D.J. | 07-17-89 | | | | SO 727 ATL | | |
| | 4614 | 17225 | THOMAS | S. | 07-17-89 | | | | FO L11 ATL | | |
| | 4615 | 36369 | DAVIDSON | K.B. | 07-17-89 | | | | SO 727 ATL | | |
| | 4616 | 17169 | OLSON | S.M. | 07-17-89 | | | | FO 727 ATL | | |
| | 4617 | 17528 | SALIBA | B.N. | 07-17-89 | | | | SO 727 ATL | | |
| | 4618 | 17610 | DAVIDSON | D. | 07-17-89 | | | | SO 727 DCA | | |
| | 4619 | 36350 | MATHEYS | B.C. | 07-17-89 | | | | | | |
| | 4620 | 17607 | JOHNSTON | P.R. | 07-17-89 | | | | | | |
| | 4621 | 43463 | ALLEN | R.J. | 07-17-89 | | | | FO DC9 ATL | | |
| | 4622 | 07270 | HOWARD | C. | 07-24-89 | | | | FO 727 ATL | | |
| | 4623 | 51564 | NORIS | R. | 07-24-89 | | | | SO 727 ATL | | |
| | 4624 | 72446 | PRESCOTT | L.L. | 07-24-89 | | | | FO DC9 ATL | | |
| | 4625 | 51466 | SMITH | T. | 07-24-89 | | | | FO 757 ATL | | |
| | 4626 | 72448 | ROBERTSON | J.N. | 07-24-89 | | | | FO 727 MIA | | |
| | 4627 | 73067 | TAYLOR | D.A. | 07-24-89 | | | | FO DC9 ATL | | |
| | 4628 | 17405 | AUTRY | J.S. | 07-24-89 | | | | SO 727 DCA | | |
| | 4629 | 74466 | ROHRER | M. | 07-24-89 | | | | FO 727 ATL | | |
| | 4630 | 72181 | OCONNELL | J.M. | 07-24-89 | | | | SO L11 ATL | | |
| | 4631 | 17613 | JACKSON | M.T. | 07-24-89 | | | | FO 757 ATL | | |
| | | | | | | | | | FO 727 ATL | | |

- - - - - - - - - - IDENT CODE - - - - - - - - -

1 = CURTAILED
2 = DISPLACED
3 = 28-G-6A - 15 MONTH LOCK
4 = 28-G-6B - 15 MONTH LOCK

5 = 28-G-1B - UPGRADE
6 = 28-J
7 = 28-L-3C
8 = 28-G-6A - 24 MONTH LOCK

A = WAIT FOR CP-727
B = WAIT FOR CP-DC9
C = GAIN FURTHER EXPERIENCE
U = UNASSIGNED

SUPERVISORY CODE
* = 950 - DOMICILE
# = 930 - TRAINING
a = SPECIAL

09/15/89          PILOT LISTING BY SENIORITY NUMBER - REPORT 14          PAGE...71          MPS060R5

| S C | SNRTY NBR | EMPL NBR | NAME LAST | M E INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4699 | 70655 | PURPURA | K.E. | 07-24-89 | | | | | | |
| | 4700 | 71177 | HARTLEY | J.D. | 07-24-89 | | | | FO 727 ATL | | |
| | 4701 | 71100 | DAILI | N. | 07-24-89 | | | | SO L11 MIA | | |
| | 4702 | 71105 | GILL | K.W. | 07-24-89 | | | | SO 727 MIA | | |
| | 4703 | 73068 | WARREN | R.R. | 07-24-89 | | | | SO 727 ATL | | |
| | 4704 | 73296 | ELLIOTT | R. | 07-24-89 | | | | FO 727 ATL | | |
| | 4705 | 74463 | MONTFORT | M. | 07-24-89 | | | | SO 727 MIA | | |
| | 4706 | 71174 | HAMPEL | M.L. | 07-24-89 | | | | | | |
| | 4707 | 71175 | HANEY | F.C. | 07-24-89 | | | | SO L11 MIA | | |
| | 4708 | 71101 | DAVISON | D.J. | 07-24-89 | | | | SO 727 MIA | | |
| | 4709 | 17222 | CANFIELD II | T.H. | 07-24-89 | | | | FO DC9 MIA | | |
| | 4710 | 72606 | YOUNGS | D.B. | 07-24-89 | | | | SO 727 MIA | | |
| | 4711 | 72489 | TIPPETT | K.T. | 07-24-89 | | | | SO 727 ATL | | |
| | 4712 | 17212 | BURNS | D.A. | 07-24-89 | | | | FO DC9 ATL | | |
| | 4713 | 72729 | ZINGER | P.H. | 07-24-89 | | | | FO DC9 ATL | | |
| | 4714 | 15668 | BORTH | J.E. | 07-24-89 | | | | SO 727 MIA | | |
| | 4715 | 72180 | NEUMANN | P.G. | 07-24-89 | | | | SO L11 MIA | | |
| | 4716 | 72527 | SHAFFER | S. | 07-24-89 | | | | FO DC9 ATL | | |
| | 4717 | 72488 | TIAINEN | J.J. | 07-24-89 | | | | SO 727 MIA | | |
| | 4718 | 71171 | GOLDMAN | D.M. | 07-24-89 | | | | FO DC9 ATL | | |
| | 4719 | 72447 | PRIJZ | F.P. | 07-24-89 | | | | FO 727 JFK | | |
| | 4720 | 73295 | CHAMPION | J. | 07-24-89 | | | | FO 727 ATL | | |
| | 4721 | 72179 | MURPHY | R.J. | 07-24-89 | | | | SO 727 MIA | | |
| | 4722 | 51562 | TRIMMEL | H. | 07-24-89 | | | | FO 727 ATL | | |
| | 4723 | 71176 | HANSEN | L.B. | 07-24-89 | | | | SO 727 MIA | | |
| | 4724 | 71538 | BARR | D.J. | 07-24-89 | | | | SO 727 MIA | | |
| | 4725 | 51468 | STEWART | B.M. | 07-24-89 | | | | FO 727 MIA | | |
| | 4726 | 73367 | HOFFMAN | G. | 07-24-89 | | | | SO 727 MIA | | |
| | 4727 | 72525 | ROCCHETTI | E.G. | 07-24-89 | | | | SO 727 JFK | | |
| | 4728 | 72182 | PATIN | O.A. | 07-24-89 | | | | SO 727 MIA | | |
| | 4729 | 48023 | LOFTUS | T.P. | 07-31-89 | | | | SO 727 MIA | | |
| | 4730 | 79900 | MACRAE-HALL | J.M. | 07-31-89 | | | | FO L11 ATL | | |
| | 4731 | 58990 | FRYE | J.H. | 07-31-89 | | | | FO 727 MIA | | |
| | 4732 | 79559 | HUNTER | R.E. | 07-31-89 | | | | FO L11 ATL | | |
| | 4733 | 79113 | CROCKER | C.E. | 07-31-89 | | | | FO DC9 ATL | | |
| | 4734 | 78817 | JOHNSON | J.A. | 07-31-89 | | | | SO L11 MIA | | |
| | 4735 | 56349 | ADAMS | A.M. | 07-31-89 | | | | FO 727 JFK | | |
| | 4736 | 70099 | WALDER | G.W. | 07-31-89 | | | | FD L11 ATL | | |
| | 4737 | 70045 | WRIGHT | E.L. | 07-31-89 | | | | FO 727 MIA | | |
| | 4738 | 72906 | HARRIS | R.J. | 07-31-89 | | | | SO L11 MIA | | |
| | 4739 | 79722 | GRIMM | L. | 07-31-89 | | | | SO L11 JFK | | |
| | 4740 | 67743 | LEABO | W.I. | 07-31-89 | | | | SO 727 DCA | | |
| | 4741 | 71537 | CARTER | B.R. | 07-31-89 | | | | FO 757 JFK | | |
| | 4742 | 79110 | BAY | P.E. | 07-31-89 | | | | FO L11 ATL | | |
| | 4743 | 79527 | SULLIVAN | E. | 07-31-89 | | | | FO L11 ATL | | |
| | 4744 | 79898 | CIEPLIK | T.K. | 07-31-89 | | | | SO 727 DCA | | |
| | 4745 | 79714 | HOUSTON | J.L. | 07-31-89 | | | | SO 727 DCA | | |
| | 4746 | 79560 | BELL | L. | 07-31-89 | | | | FO L11 ATL | | |
| | 4747 | 70908 | INGBER | A.L. | 07-31-89 | | | | FO 757 MIA | | |
| | 4748 | 70653 | BENNETT | B.L. | 07-31-89 | | | | FO 727 DCA | | |
| | 4749 | 79228 | MCCLELLAND | T.W. | 07-31-89 | | | | FO 727 MIA | | |
| | 4750 | 70096 | SULLIVAN | J.E. | 07-31-89 | | | | SO 727 DCA | | |
| | 4751 | 79719 | KING | S. | 07-31-89 | | | | SO 727 DCA | | |
| | 4752 | 70909 | ACCARDO | P.A. | 07-31-89 | | | | FO 727 MIA | | |
| | 4753 | 70075 | REYNOLDS | J.L. | 07-31-89 | | | | FO 727 MIA | | |
| | 4754 | 59249 | HADLOCK | J.L. | 07-31-89 | | | | | | |
| | 4755 | 58992 | HACKNEY | S.A. | 28-G-18 07-31-89 | | | | SO 727 DCA | | |
| | 4756 | 72173 | KING | W.E. | 07-31-89 | | | | SO 727 DCA | | |
| | 4757 | 79902 | NILES | A. | 07-31-89 | | | | FO DC9 ATL | | |
| | 4758 | 67880 | MOORE | J.C. | 07-31-89 | | | | FO 727 MIA | | |
| | 4759 | 17218 | ALLEN | G.M. | 07-31-89 | | | | FO 727 MIA | | |
| | 4760 | 67746 | LUZHAK | L.J. | 07-31-89 | | | | SO 727 JFK | | |
| | 4761 | 59250 | HARBOUR | J.H. | 07-31-89 | | | | SO 727 DCA | | |
| | 4762 | 37716 | ADAMS | J.V. | 07-31-89 | | | | SO 727 JFK | | |
| | 4763 | 70043 | WHEELER | D.F. | 07-31-89 | | | | FO 727 MIA | | |
| | 4764 | 79563 | BAZAR | W. | 07-31-89 | | | | FO 727 DCA | | |
| | 4765 | 67888 | NUNEZ | J.R. | 07-31-89 | | | | FO L11 ATL | | |

```
- - - - - - - IDENT CODE - - - - - -
1 = CURTAILED            5 = 28-G-18 - UPGRADE      A = WAIT FOR CP-727        SUPERVISORY CODE
2 = DISPLACED            6 = 28-J                   B = WAIT FOR CP-DC9        * = 950 - DOMICILE
3 = 28-G-6A - 15 MONTH LOCK   7 = 28-L-3C            C = GAIN FURTHER EXPERIENCE   # = 930 - TRAINING
4 = 28-G-6B - 15 MONTH LOCK   8 = 28-G-6A - 24 MONTH LOCK   U = UNASSIGNED        9 = SPECIAL
```

| S C | SNRTY NBR | EMPL NBR | NAME LAST | NAME INIT | SRTY DATE | AUG 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP | OCT 01,89 CATEG.-DOM | ID 1234 | RET/BPT CATEG.-DOM-TYP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4832A | 51726 | CLARK | J. | 08-07-89 | | | | FO 727 JFK | | |
| | 4833 | 50284 | ONEILL | C.B. | 08-07-89 | | | | FO 727 DCA | | |
| | 4834 | 52619 | MAXWELL | A.R. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4836 | 67742 | BROWN | E.H. | 08-07-89 | | | | FO 757 JFK | | |
| | 4837 | 52508 | SANSONE | J.D. | 08-07-89 | | | | SO 727 JFK | | |
| | 4838 | 51584 | ELKINS | J.R. | 08-07-89 | | | | FO L11 JFK | | |
| | 4839 | 56823 | BAXTER | G.W. | 08-07-89 | | | | FO 727 JFK | | |
| | 4840 | 70086 | CRAFTON | M.L. | 08-07-89 | | | | FO 727 JFK | | |
| | 4841 | 80477 | MICK | C.E. | 08-07-89 | | | | FO 727 JFK | | |
| | 4842 | 80141 | HURD | J.M. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4843 | 80433 | KOZIOL | R.L. | 08-07-89 | | | | SO 727 JFK | | |
| | 4844 | 67879 | BROWNE | A. | 08-07-89 | | | | SO 727 JFK | | |
| | 4845 | 51729 | OATFIELD | J.P. | 08-07-89 | | | | FO 727 JFK | | |
| | 4846 | 51495 | THOMPSON | R.L. | 08-07-89 | | | | SO 727 JFK | | |
| | 4847 | 51927 | WALDRON | J.E. | 08-07-89 | | | | | | |
| | 4848 | 58269 | OXENHAM | J. | 08-07-89 | | | | FO L11 JFK | | |
| | 4849 | 51551 | BURCH | H.R. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4850 | 51691 | MOORE | R.T. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4851 | 70046 | DOERR | R. | 08-07-89 | | | | SO 727 MIA | T | |
| | 4852 | 80476 | MCCLENDON | P.H. | 08-07-89 | | | | FO 727 JFK | | |
| | 4853 | 51700 | MULLAHEY | M. | 08-07-89 | | | | SO 727 JFK | | |
| | 4854 | 80431 | JOHNSON | E.E. | 08-07-89 | | | | FO 727 JFK | | |
| | 4855 | 71535 | ARONOFF | M. | 08-07-89 | | | | FO L11 JFK | | |
| | 4856 | 51662 | GRAHAM | D.E. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4857 | 51898 | STEVENS | B. | 08-07-89 | | | | FO 727 JFK | | |
| | 4859 | 52210 | WILLIAMS | D. | 08-07-89 | | | | FO 757 JFK | | |
| | 4860 | 51541 | ZOGLEMAN | M.W. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4861 | 51897 | SMITH | L. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4862 | 56825 | DOROUGH | T.A. | 08-07-89 | | | | FO 727 JFK | | |
| | 4863 | 67889 | CLARY | B.K. | 08-07-89 | | | | SO 727 JFK | | |
| | 4864 | 51493 | STANSBURY | T.M. | 08-07-89 | | | | FO 727 JFK | | |
| | 4865 | 52484 | NADOLNY | J.E. | 08-07-89 | | | | FO 727 JFK | | |
| | 4866 | 52770 | LARSEN | J.R. | 08-07-89 | | | | | | |
| | 4867 | 51713 | LANDRUM | M.A. | 08-07-89 | | | | FO 727 JFK | | |
| | 4868 | 51510 | VAZQUEZ | D. | 08-07-89 | | | | FO 727 JFK | | |
| | 4869 | 51725 | OYLER | J.B. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4870 | 51464 | PATTON | D.S. | 08-07-89 | | | | SO 727 JFK | | |
| | 4871 | 58270 | RAHNER | J.E. | 08-07-89 | | | | FO 727 JFK | | |
| | 4872 | 51548 | AGOSTINO | R.M. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4873 | 51514 | WADE | D.A. | 08-07-89 | | | | SO 727 JFK | | |
| | 4874 | 51891 | SEFTON | R.L. | 08-07-89 | | | | SO L11 JFK | | |
| | 4875 | 52621 | GUTIERREZ | H. | 08-07-89 | | | | FO 727 JFK | | |
| | 4876 | 80473 | LAWSON | J.H. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4877 | 51923 | URBASZEWSKI | K.L. | 08-07-89 | | | | FO 727 JFK | | |
| | 4878 | 51948 | CHANDLER | J.M. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4879 | 51536 | WARNOCK | J.C. | 08-07-89 | | | | FO 727 JFK | | |
| | 4880 | 70095 | CURRENT | M.E. | 08-07-89 | | | | | | |
| | 4881 | 70072 | DALRYMPLE | D.P. | 08-07-89 | | | | SO 727 JFK | | |
| | 4882 | 51690 | MAY | M.H. | 08-07-89 | | | | FO 727 JFK | | |
| | 4883 | 51494 | TEVIS | T.J. | 08-07-89 | | | | FO 757 JFK | | |
| | 4884 | 58989 | BLANKESHIP | J.D. | 08-07-89 | | | | FO 727 JFK | | |
| | 4885 | 56826 | DUFF | H.L. | 08-07-89 | | | | FO 727 JFK | | |
| | 4886 | 72887 | ABBOTT | G.V. | 08-07-89 | | | | | | |
| | 4887 | 51587 | ENGGREN | D. | 08-07-89 | | | | FO 727 JFK | | |
| | 4888 | 52771 | NAVICKAS | J. | 08-07-89 | | | | FO 757 JFK | | |
| | 4889 | 51491 | SOGN | H.H. | 08-07-89 | | | | FO 727 JFK | | |
| | 4890 | 72919 | ASHBROOK | L.J. | 08-07-89 | | | | FO 727 JFK | | |
| | 4891 | 51915 | TELLECHEA | C.M. | 08-07-89 | | | | FO L11 JFK | | |
| | 4892 | 52620 | GEORGAKOPOULOS | I.C. | 08-07-89 | | | | FO 727 JFK | | |
| | 4893 | 52594 | BALL | G. | 08-07-89 | | | | SO 727 JFK | | |
| | 4894 | 80474 | MARYANNAKIS | A. | 08-07-89 | | | | FO 727 JFK | | |
| | 4895 | 51497 | TOMLINSON | H.H. | 08-07-89 | | | | FO DC9 ATL | | |
| | 4896 | 51604 | FARMER | M. | 08-07-89 | | | | SO 727 JFK | | |
| | 4897 | 51486 | ROBINSON | D.B. | 08-07-89 | | | | SO 727 JFK | | |
| | 4898 | 51723 | NIVEN | R. | 08-07-89 | | | | FO 727 JFK | | |
| | 4899 | 50286 | OOHMEN | N. | 08-07-89 | | | | SO 727 JFK | | |
| | 4900 | 52507 | ZOLCZYNSKI | M.A. | 08-07-89 | | | | FO 727 JFK | | |

```
- - - - - - - - - - - IDENT CODE - - - - - - -                                   SUPERVISORY CODE
1 = CURTAILED              5 = 28-G-1B - UPGRADE      A = WAIT FOR CP-727          * = 950 - DOMICILE
2 = DISPLACED              6 = 28-J                   B = WAIT FOR CP-DC9          # = 930 - TRAINING
3 = 28-G-6A - 15 MONTH LOCK    7 = 28-L-3C            C = GAIN FURTHER EXPERIENCE  @ = SPECIAL
4 = 28-G-6B - 15 MONTH LOCK    8 = 28-G-6A - 24 MONTH LOCK    U = UNASSIGNED
```

# EXHIBIT 3

## PILOTS ON THE 1990 EASTERN SENIORITY LIST PURPOSELY EXCLUDED BY CLASS REPRESENTATIVES AND CONTINENTAL FROM THE JANUARY 31, 2002 SETTLEMENT AGREEMENT.

JUL 1 1 2006

| | Name: | Employee Number: |
|---|---|---|
| 1 | Laberge R.M. | 50158 |
| 2 | Morton C.V. | 62554 |
| 3 | Wade P.E. | 92224 |
| 4 | Guma J. | 82708 |
| 5 | Richart H.M. | 38908 |
| 6 | Phillips T.E. | 38909 |
| 7 | Houck D.R. | 48630 |
| 8 | Whitten J.L. | 98035 |
| 9 | Kouwenhoven H.J. | 40574 |
| 10 | Keane M.D. | 76018 |
| 11 | Fischer D.R. | 24175 |
| 12 | Benson R.B. | 77810 |
| 13 | Olmeda E.J. | 58797 |
| 14 | Mize L.E. | 58049 |
| 15 | Campbell J.G. | 57284 |
| 16 | Sellers P.A. | 58809 |
| 17 | Meccia T.N. | 58048 |
| 18 | Gross G.T. | 57292 |
| 19 | Cockey R.M. | 57286 |
| 20 | Guy G. | 57293 |
| 21 | Nichols C.R. | 58796 |
| 22 | Robbins D.D. | 58807 |
| 23 | Martin G.A. | 58046 |
| 24 | Oliver V.J. | 65883 |
| 25 | Smith E. | 58811 |
| 26 | Leissle J.J. | 58043 |
| 27 | Eckert C.R. | 57289 |
| 28 | Leonard R.C. | 58045 |
| 29 | Lemoi W.T. | 58044 |
| 30 | Morana A.D. | 58050 |
| 31 | Sepehrizadeh G.R. | 58810 |
| 32 | Pazmino E.R. | 58798 |
| 33 | Fontana D.J. | 57291 |
| 34 | Imam N. | 58042 |
| 35 | Baker D.R. | 58813 |
| 36 | Cook R.E. | 57287 |
| 37 | Correa L.C. | 57288 |
| 38 | Clemans M.C. | 57285 |
| 39 | Powell D.B. | 58805 |
| 40 | Falcon R.A. | 57290 |
| 41 | Wills C.H. | 58812 |
| 42 | Bartlett L.B. | 04313 |
| 43 | Morris K.D. | 60030 |
| 44 | Creppel J.J. | 20188 |
| 45 | Secker Jr. W.S | 20199 |
| 46 | Kitchens R.E. | 20711 |

| 48 | Akkarach P. | 20775 |
| 49 | Latorre J.G. | 20779 |
| 50 | Johnson B.W. | 20774 |
| 51 | Lane B.N. | 20716 |
| 52 | Meyers J.W. | 20190 |
| 53 | Stillings C.E. | 20198 |
| 54 | Pastrana L. | 59208 |
| 55 | Vandyck W.G. | 20777 |
| 56 | Babayan M.G. | 20717 |
| 57 | Cullingford  G.T. | 20191 |
| 58 | Lembo G. | 20193 |
| 59 | Erickson J.A. | 20776 |
| 60 | Dubeau K.W. | 20714 |
| 61 | Brown K.M. | 20718 |
| 62 | Salvati P.P. | 20195 |
| 63 | Gurtner N.J. | 20715 |
| 64 | Allan G.A. | 20189 |
| 65 | Ramelli T.G. | 20778 |
| 66 | Ross C.G. | 20194 |
| 67 | Maynard C.G. | 56769 |
| 68 | Sawacki R.S. | 77749 |
| 69 | Brooks D.L. | 76009 |
| 70 | Henderson M.D. | 59202 |
| 71 | Costantini J.J. | 17992 |
| 72 | Myal W.J. | 63598 |
| 73 | Saunders III W.E. | 77682 |
| 74 | Ryba F.W. | 76951 |
| 75 | Gilliam J.C. | 49068 |
| 76 | Orlob W.J. | 66267 |
| 77 | Bowen P.K. | 86359 |
| 78 | Rao N.M. | 72125 |
| 79 | Borgen I.A. | 29627 |
| 80 | Anderson N.F. | 29624 |
| 81 | Smith R.D. | 26262 |
| 82 | Kimmel K.D. | 29621 |
| 83 | Hicks J.H. | 23607 |
| 84 | Ford B.C. | 21004 |
| 85 | Russell  J.A. | 26259 |
| 86 | McLaughlin J. | 23619 |
| 87 | Witt D.C. | 29618 |
| 88 | Canaday D.F. | 20970 |
| 89 | Weller L.E. | 29616 |
| 90 | Stephen J.N. | 26264 |
| 91 | Chamberlin L.M. | 20971 |
| 92 | Cox G.R. | 20997 |
| 93 | Korby J.M. | 29628 |
| 94 | Vogt T.C. | 29620 |
| 95 | Drews R.A. | 21001 |
| 96 | Hall J.A. | 23603 |
| 97 | Jensen L.K. | 23609 |
| 98 | Dunton J.M. | 20964 |
| 99 | Dawson W.R. | 20998 |

| | | |
|---|---|---|
| 100 | Mullins E.R. | 25088 |
| 101 | Knight R.D. | 25089 |
| 102 | Siegel W.A. | 26261 |
| 103 | Smith R.E. | 26263 |
| 104 | Alexander T.E. | 64137 |
| 105 | Childs R.W. | 20972 |
| 106 | Thompson J.T. | 29607 |
| 107 | Amend Jr F.R. | 20781 |
| 108 | Warren G.G. | 29615 |
| 109 | Day D.A. | 20999 |
| 110 | Caison S.E. | 20969 |
| 111 | Henne C.M. | 23606 |
| 112 | Kotschack O. | 49527 |
| 113 | Stewart M.M. | 29605 |
| 114 | Brittain D.P. | 20966 |
| 115 | Miston P.W. | 29626 |
| 116 | Goebel R.W. | 21009 |
| 117 | Forman J.D. | 21005 |
| 118 | Hightower J.M. | 23608 |
| 119 | Kramer M. | 23612 |
| 120 | Keenan J.E. | 23610 |
| 121 | Marcomichalis N.M. | 23617 |
| 122 | Beacher M.M. | 20963 |
| 123 | Mudge R.M. | 25087 |
| 124 | Bhim-Rao J. | 20965 |
| 125 | Olsen J.W. | 25090 |
| 126 | Stewart C.T. | 26265 |
| 127 | Taylor C.A. | 29606 |
| 128 | Millican C.J. | 25086 |
| 129 | Rodriguez A.L. | 25094 |
| 130 | Vanbaalen P.H. | 29608 |
| 131 | Kalaitzidis K. | 29625 |
| 132 | Rheintgen J.J. | 25093 |
| 133 | Liddle J.R. | 64133 |
| 134 | Morris C.E. | 62262 |
| 135 | Link R.L. | 31865 |
| 136 | Edwards H.R. | 26260 |
| 137 | Davis L.L. | 23615 |
| 138 | Schrenkel Jr. | 32428 |
| 139 | Castrillo A. | 64128 |
| 140 | Waggoner W.D. | 57511 |
| 141 | Limor N.H. | 31848 |
| 142 | Fowler G.J. | 29629 |
| 143 | D'Ambrosio J.A. | 64130 |
| 144 | Ray T.D. | 64135 |
| 145 | Frazee A.R. | 64131 |
| 146 | Logan Jr J.L. | 31866 |
| 147 | Insua E.J. | 30900 |
| 148 | Huddleston D.W. | 30896 |
| 149 | Stiles J.D. | 57510 |
| 150 | Horne W.F. | 64132 |
| 151 | Huffman R.L. | 30897 |

| 152 | Sigler G.B. | 57504 |
| 153 | Maldonado L.M. | 31868 |
| 154 | Lapointe J.G. | 30909 |
| 155 | Hunt L.E. | 30899 |
| 156 | Smith D.E. | 57507 |
| 157 | Cauble R.L. | 64129 |
| 158 | Lindner A. | 31864 |
| 159 | Howe J.B. | 64826 |
| 160 | Stanton J. | 64122 |
| 161 | Killingsworth M.J. | 30906 |
| 162 | Burns C.E. | 21003 |
| 163 | McKenzie S.W. | 32420 |
| 164 | Good G.D. | 30895 |
| 165 | Gorman S.D. | 64116 |
| 166 | Khoshlafz A.K. | 30905 |
| 167 | Reeves M.A. | 32425 |
| 168 | Weber M.E. | 64136 |
| 169 | Bastian A.L. | 20973 |
| 170 | Wittmer M.E. | 64108 |
| 171 | Hughes J.L. | 30898 |
| 172 | Garcia C. | 30893 |
| 173 | McCarthy J.F. | 64124 |
| 174 | Gabbard C.C. | 30892 |
| 175 | Stephens G.W. | 57509 |
| 176 | Gersch B.L. | 30894 |
| 177 | McManus E.J. | 32421 |
| 178 | Zemary K.J. | 64110 |
| 179 | Dastranj M.S. | 23613 |
| 180 | Simpson R.R. | 57505 |
| 181 | Lazzari J.A. | 31862 |
| 182 | McRae C.M. | 64123 |
| 183 | Bormann D.J. | 21002 |
| 184 | Aguiar J.J. | 20962 |
| 185 | Yoe R.B. | 98889 |
| 186 | Arguez R.A. | 67626 |
| 187 | McKesson B.C. | 68207 |
| 188 | Hilyard D.C. | 68195 |
| 189 | Chancey J.W. | 69189 |
| 190 | Meggs H.G. | 64822 |
| 191 | Covault L.E. | 18129 |
| 192 | Mokry F.B. | 68196 |
| 193 | Decker Jr G.E. | 69184 |
| 194 | Stone N. | 85949 |
| 195 | Mayer R.E. | 68208 |
| 196 | Hulse D.D. | 68193 |
| 197 | Foley W.T. | 68212 |
| 198 | French G.B. | 65182 |
| 199 | Thruston E.F. | 65184 |
| 200 | Clark E.T. | 69185 |
| 201 | Catchings D.S. | 69186 |
| 202 | Hannon H.N. | 68205 |
| 203 | Kranker P.L. | 68190 |

| | | |
|---|---|---|
| 204 | Becker D.A. | 65185 |
| 205 | Young I.F. | 99000 |
| 206 | Whisenant M.K. | 65708 |
| 207 | Bieniek C.R. | 64825 |
| 208 | Bauman R.L. | 69236 |
| 209 | Maddox W.N. | 68211 |
| 210 | Jones G.E. | 68192 |
| 211 | Silva I.J. | 64821 |
| 212 | Williams J.R. | 65180 |
| 213 | Nicodemus I.F. | 64823 |
| 214 | Patel A.M. | 65703 |
| 215 | Proenza J. | 65189 |
| 216 | Burton K.H. | 69188 |
| 217 | Nelson D.C. | 65705 |
| 218 | Vanbeuren M. | 65183 |
| 219 | Maurer T.A. | 65784 |
| 220 | Rachis G.F. | 65188 |
| 221 | Hamilton R.L. | 68206 |
| 222 | Lauzon L.R. | 65786 |
| 223 | Bohannon D.W. | 68209 |
| 224 | Silver J.R. | 65706 |
| 225 | Hennessee T.A. | 65704 |
| 226 | Simms T.L. | 68194 |
| 227 | Whaley G.E. | 65186 |
| 228 | Ford A.R. | 68210 |
| 229 | Khorshidchehr J.B. | 68191 |
| 230 | Ream T.A. | 65187 |
| 231 | Wood G.S. | 65787 |
| 232 | Kubeck C.C. | 65790 |
| 233 | Lasalle J.C. | 65788 |
| 234 | Phinney J.H. | 65702 |
| 235 | Griffin R.B. | 41545 |
| 236 | Griner K.F. | 34320 |
| 237 | Murphy R.J. | 79507 |
| 238 | Brown R.L. | 09888 |
| 239 | Mosher III R.R. | 79734 |
| 240 | West D.F. | 80341 |
| 241 | Livingston T.A. | 79728 |
| 242 | Brooke M.L. | 71311 |
| 243 | Ranson W.M. | 69244 |
| 244 | Hillis R.W. | 79506 |
| 245 | Treadwell III W.T. | 71310 |
| 246 | Ball F.W. | 79511 |
| 247 | Rohaley J.E. | 79730 |
| 248 | Suriano P. | 79727 |
| 249 | Meyer F.L. | 69239 |
| 250 | Grafstrom B.G. | 64106 |
| 251 | Winterrath J.R. | 69352 |
| 252 | Carrington P.E. | 29619 |
| 253 | Rutherford Jr W. | 79733 |
| 254 | Quinn F.J. | 79513 |
| 255 | Theis R.L. | 69347 |

| | | |
|---|---|---|
| 256 | Restivo J.D. | 69343 |
| 257 | Laham W.J. | 71312 |
| 258 | Connor E.H. | 30907 |
| 259 | Diachuk W.O. | 71544 |
| 260 | Shoulars R.W. | 69345 |
| 261 | Shahid F. | 69354 |
| 262 | Gatherum S.D. | 57508 |
| 263 | Neely M.K. | 69241 |
| 264 | Foraker T.W. | 69353 |
| 265 | Keleher S.P. | 64125 |
| 266 | House R.L. | 71308 |
| 267 | Escobar A. | 79729 |
| 268 | Durand III W.H. | 32424 |
| 269 | Gerant J.G. | 57512 |
| 270 | Darmish A.M. | 71305 |
| 271 | English G.M. | 79731 |
| 272 | Cottrell A.W. | 30910 |
| 273 | Sitta D.C. | 79514 |
| 274 | Bouche A.M. | 26258 |
| 275 | Eberhart M.M. | 32426 |
| 276 | Marsio W.J. | 69237 |
| 277 | Rabasa M. | 79510 |
| 278 | Dantonio J.J. | 71303 |
| 279 | Blau R.B. | 23605 |
| 280 | Aronoff M.B. | 21000 |
| 281 | Stradthagenic F.X. | 71304 |
| 282 | Woronoff L.S. | 71306 |
| 283 | Theofilatos S. | 69348 |
| 284 | Anderson B.J. | 20968 |
| 285 | Converse W.C. | 30908 |
| 286 | Manion C.M. | 69187 |
| 287 | Willingham W.B. | 69351 |
| 288 | Boykin F.W. | 71540 |
| 289 | Angel W.H. | 20974 |
| 290 | Love G.R. | 10182 |
| 291 | Ragozzino G. | 84260 |
| 292 | Strauss Jr. R.J. | 83269 |
| 293 | Morant P.J. | 81995 |
| 294 | Boisvert D.H. | 83389 |
| 295 | Mir R.C. | 81994 |
| 296 | Cottle C.R. | 83463 |
| 297 | Warren J.M. | 80348 |
| 298 | Fernandes F.C. | 83466 |
| 299 | Lien L.J. | 86137 |
| 300 | Wilson W.F. | 84252 |
| 301 | Huggins C.E. | 84257 |
| 302 | Ptaschek E.D. | 83347 |
| 303 | Mardis K.B. | 81990 |
| 304 | Case R.E. | 86726 |
| 305 | Leboutilliern D. | 81897 |
| 306 | Naypaver S.A. | 83341 |
| 307 | Allison D.H. | 83387 |

| | | |
|---|---|---|
| 308 | Birchwood E.S. | 83388 |
| 309 | Bruder J.A. | 83391 |
| 310 | Rusak E.J. | 83265 |
| 311 | Wight T.R. | 84251 |
| 312 | Martinez G.J. | 81992 |
| 313 | Rose H.H. | 83264 |
| 314 | Larson Jr. J.R. | 81896 |
| 315 | O'Connell P.P. | 86725 |
| 316 | Delorenzo P.A. | 86727 |
| 317 | Casanova J.E. | 83394 |
| 318 | Hirsch W.J. | 86141 |
| 319 | Neal W.G. | 83342 |
| 320 | Godwin L.S. | 83469 |
| 321 | Landry L.R. | 86724 |
| 322 | Hall J.C. | 83470 |
| 323 | Cerri M. | 83395 |
| 324 | Lustre T. | 81989 |
| 325 | Fox J.C. | 86142 |
| 326 | Cockrell G.A. | 83396 |
| 327 | Karmel M. | 81894 |
| 328 | Marinan J.S. | 81991 |
| 329 | Sherry E. E. | 83386 |
| 330 | Oksnevad | 83343 |
| 331 | Kahla I. R. | 81892 |
| 332 | Solberg S.O. | 83268 |
| 333 | Petrutsas L.S. | 84259 |
| 334 | Lemar R.B. | 81898 |
| 335 | Anderson R.W. | 64119 |
| 336 | Tabares F.G. | 83270 |
| 337 | Booher M.A. | 83390 |
| 338 | Ortega C. A. | 83344 |
| 339 | Palmer B.D. | 83345 |
| 340 | Peterson M.J. | 84254 |
| 341 | Carlson D.E. | 80342 |
| 342 | Wood D.R. | 86139 |
| 343 | Burrell P.A. | 83393 |
| 344 | Peters W.C. | 87388 |
| 345 | Lopez J.V. | 99636 |
| 346 | Knecht  M.J. | 87160 |
| 347 | Bow | 83464 |
| 348 | Czepiel K.J. | 81899 |
| 349 | Lane A.Q. | 99634 |
| 350 | Roney D.G. | 75639 |
| 351 | Smith N.R. | 87498 |
| 352 | Gerace J.A. | 80343 |
| 353 | Phillips H. W. | 99638 |
| 354 | Smith R.J. | 87499 |
| 355 | McDowell J.D. | 87164 |
| 356 | Weiksner R.J. | 88107 |
| 357 | Saleeby K.G. | 87392 |
| 358 | Eckley  J.A. | 99597 |
| 359 | Fatolahi A. | 84258 |

| | | |
|---|---|---|
| 360 | Gormley B.J. | 83266 |
| 361 | Thomas  F | 88451 |
| 362 | Sheldon R.M. | 87394 |
| 363 | Brown R.O. | 80346 |
| 364 | Nicholas M.V. | 87166 |
| 365 | Mahan R.G. | 87162 |
| 366 | Morgan J.C. | 99637 |
| 367 | Calgagno M.F | 64107 |
| 368 | Florence W.A. | 83346 |
| 369 | Berwald | 29630 |
| 370 | Mason R. | 87163 |
| 371 | Shair N. | 99592 |
| 372 | Correa D. | 81895 |
| 373 | Woulas V. | 99579 |
| 374 | Obrien | 87387 |
| 375 | Kotler G. | 87161 |
| 376 | Hendrickson R.A. | 99632 |
| 377 | Sword G.E. | 87502 |
| 378 | Belna R.T. | 87158 |
| 379 | Samilion D.L. | 99642 |
| 380 | Hall, O.L. | 71302 |
| 381 | Sooknanan P. | 99593 |
| 382 | Vonkrebs D.M. | 88104 |
| 383 | Albright   R.J. | 88109 |
| 384 | Sylvia J.H. | 87503 |
| 385 | Taylor J.R. | 87504 |
| 386 | Elmdanat R. | 81993 |
| 387 | Holub L.L. | 87159 |
| 388 | Darling P. | 87390 |
| 389 | Cloutier | 99601 |
| 390 | McDonald R. | 97107 |
| 391 | Hem N.H. | 98490 |
| 392 | Ireland R. | 98491 |
| 393 | Povilus W.R. | 99462 |
| 394 | Clubb R. | 98488 |
| 395 | Sparks R.T. | 99471 |
| 396 | Loudermilk J.A. | 99590 |
| 397 | Mahdavi M. | 99617 |
| 398 | Edling L.K. | 24731 |
| 399 | Metzger R.D. | 87165 |
| 400 | Cullimore M.D. | 99602 |
| 401 | Church D.E. | 99599 |
| 402 | Sanforo D.L. | 99469 |
| 403 | Cantrell W.L. | 88105 |
| 404 | Ruff D.H. | 99640 |
| 405 | Johnson E.E. | 99583 |
| 406 | Orwig J.F. | 99624 |
| 407 | Roedenbeck E.A. | 99464 |
| 408 | Rutherford D. W. | 99467 |
| 409 | Jonas H. W. | 99587 |
| 410 | Bryant P. T. | 87500 |
| 411 | McGowan  R. W. | 99618 |

| | | |
|---|---|---|
| 412 | Stark D. W. | 99472 |
| 413 | Johnson R. V. | 99584 |
| 414 | Johnson W. G. | 99586 |
| 415 | Castillo J. G. | 88108 |
| 416 | Hatfield E. W. | 99582 |
| 417 | Woods R. O. | 99484 |
| 418 | Moody W. E. | 99620 |
| 419 | Whittemore J. W. | 98482 |
| 420 | Roark J. P. | 99463 |
| 421 | Herrscraft R. J. | 98489 |
| 422 | Burt P. B. | 88103 |
| 423 | Winter P. | 98483 |
| 424 | Zahnle O. G. | 98494 |
| 425 | Youngberg J. B. | 98496 |
| 426 | Wangcharoen C. M. | 98493 |
| 427 | Bowden T. A. | 83348 |
| 428 | Trout J. P. | 99474 |
| 429 | Eckhart H. S. | 99605 |
| 430 | Clemmons T. E. | 99600 |
| 431 | Bachrach M. S. | 81900 |
| 432 | Rusman K. S. | 99465 |
| 433 | Waldren T. M. | 98481 |
| 434 | Briggs P. R. | 99629 |
| 435 | Hannon J. H. | 99631 |
| 436 | Zzaarour A. T. | 99487 |
| 437 | Basinski M. J. | 84255 |
| 438 | Vermilion R. D. | 99475 |
| 439 | Allen S. D. | 80349 |
| 440 | Conway J. M. | 99630 |
| 441 | Swartzfaager P. G. | 98492 |
| 442 | Fitzgerald S. L. | 99580 |
| 443 | Wormuth T. F. | 98485 |
| 444 | Alava V. P. | 99594 |
| 445 | Dennisonn R. R. | 89780 |
| 446 | Hollaaarn T. J. | 97118 |
| 447 | Kelly D. J. | 95719 |
| 448 | Dephillips F. M. | 97109 |
| 449 | Casimir C. R. | 99468 |
| 450 | Brier J.A. | 93898 |
| 451 | Akam G. L. | 87391 |
| 452 | Chiprany T. A. | 99470 |
| 453 | Jackson B. D. | 97120 |
| 454 | Braun R. H. | 99621 |
| 455 | Pereira C. J. | 93731 |
| 456 | Wohlhueter J. A. | 93896 |
| 457 | Amador R. T. | 99633 |
| 458 | Baldwin R. L. | 86729 |
| 459 | Clapp K. M. | 99473 |
| 460 | McLaughlin R. I. | 95726 |
| 461 | Krissman R. R. | 95723 |
| 462 | Rhodes J. L. | 93736 |
| 463 | Prada L. H. | 93733 |

| | | |
|---|---|---|
| 464 | Phillips G. W. | 93732 |
| 465 | Kunkel D. J. | 95724 |
| 466 | Obrien D. B. | 89785 |
| 467 | Giolito W. B. | 89782 |
| 468 | Cooper W. W. | 87393 |
| 469 | Callahan R. E. | 93899 |
| 470 | Dumler M. A. | 89781 |
| 471 | Rojas O. A. | 93742 |
| 472 | Jones S. D. | 97122 |
| 473 | Hanebutt B. J. | 97116 |
| 474 | Fuller F. J. | 97113 |
| 475 | Kraskowski D. | 89783 |
| 476 | Saba M. M. | 93886 |
| 477 | Delia A. | 97115 |
| 478 | Siniscalchi M. A. | 93889 |
| 479 | Almeda E. J. | 86730 |
| 480 | Tyree W. M. | 93895 |
| 481 | Godfrey J. D. | 97114 |
| 482 | Krielon W. A. | 95722 |
| 483 | Roberts R. | 93740 |
| 484 | Rodriguez V. J. | 93741 |
| 485 | Spurlock J. D. | 93738 |
| 486 | Andraos J. C. | 99603 |
| 487 | Peeples R. M. | 93730 |
| 488 | Roberts G. W. | 96540 |
| 489 | Rogers W. F. | 96542 |
| 490 | Forgey R. C. | 87505 |
| 491 | Bell T. A. | 87497 |
| 492 | Helsel R. W. | 93888 |
| 493 | Lee J. M. | 88926 |
| 494 | Lincourt R. P. | 88928 |
| 495 | Kelleher Z. J. | 46535 |
| 496 | Leclair E. J. | 88925 |
| 497 | Lamoreaux C. R. | 89788 |
| 498 | Schmidt D. J. | 46479 |
| 499 | Grayeli F. B. | 93887 |
| 500 | Gibson G. W. | 46485 |
| 501 | Fox E. C. | 46538 |
| 502 | Humphreys F. J. | 93891 |
| 503 | Olson G. E. | 97948 |
| 504 | Hancock L. E. | 97119 |
| 505 | Kalisky P. J. | 93894 |
| 506 | Finley J. A. | 99641 |
| 507 | Kurowski L. | 48484 |
| 508 | Knox M. F. | 89787 |
| 509 | Rojas A. J. | 46543 |
| 510 | Burnside H. S. | 97108 |
| 511 | Rosario J. M. | 46544 |
| 512 | Burggraf D. K. | 99623 |
| 513 | Perez L. A. | 72306 |
| 514 | Frazier D.R. | 93726 |
| 515 | Rivera G. M. | 03737 |

| | | |
|---|---|---|
| 516 | Cowell H. R. | 95721 |
| 517 | Bockstein S. H. | 76486 |
| 518 | Restuccia P. W. | 72311 |
| 519 | Kingston K. S. | 89786 |
| 520 | Manners D. A. | 88932 |
| 521 | Breakfield J. R. | 80345 |
| 522 | France J. A. | 99604 |
| 523 | Durika J. P. | 97121 |
| 524 | Smail K. F. | 46480 |
| 525 | Gravo R. D. | 93739 |
| 526 | Langille B. C. | 89789 |
| 527 | Martin J. A. | 88934 |
| 528 | Denison R. D. | 95725 |
| 529 | Jameson D. L. | 93893 |
| 530 | Robinson R. D. | 46541 |
| 531 | Fairweather H. | 97111 |
| 532 | Missick T. R. | 79744 |
| 533 | Weatherford M. S. | 46481 |
| 534 | Clendenen W. M. | 95717 |
| 535 | Reavis C. L. | 72310 |
| 536 | Wiren J. C. | 65785 |
| 537 | Peymani G. S. | 69243 |
| 538 | Lancia A. | 64820 |
| 539 | Grant G. | 79732 |
| 540 | Wittfoth J. s. | 71548 |
| 541 | America W. L. | 64819 |
| 542 | Harrison J. D. | 97117 |
| 543 | Kalaji F. | 81893 |
| 544 | Webb M. M. | 43028 |
| 545 | Holley J. A. | 44038 |
| 546 | Spencer J. F. | 45085 |
| 547 | Shoemaker P. E. | 45055 |
| 548 | Collins W. D. | 79746 |
| 549 | Kay W. D. | 46489 |
| 550 | Schnurr J. C. | 45051 |
| 551 | White A. L. | 43930 |
| 552 | Gmyrek E. W. | 46482 |
| 553 | Tessenye T. B. | 45060 |
| 554 | Sass R. A. | 45049 |
| 555 | Snellgrove R. T. | 45057 |
| 556 | Moore W. H. | 45883 |
| 557 | Wood B. L. | 43932 |
| 558 | Elmore A. R. | 44039 |
| 559 | Kelone D. P. | 45876 |
| 560 | Karnofsky K. M. | 46488 |
| 561 | Bumps W. R. | 93735 |
| 562 | Mella S. J. | 45882 |
| 563 | Gibson P. J. | 99581 |
| 564 | Nameth K. M. | 45885 |
| 565 | Grullon E. E. | 95727 |
| 566 | Shuey B. E. | 45056 |
| 567 | Logan D. R. | 45880 |

| 568 | Winkler F. K. | 44035 |
| 569 | Colton C. S. | 93729 |
| 570 | Parks T. L. | 46537 |
| 571 | Weber W. J. | 43929 |
| 572 | Scott E. A. | 45052 |
| 573 | Devisser A. T. | 72309 |
| 574 | Dewitt W. G. | 95718 |
| 575 | Fried S. I. | 46545 |
| 576 | Price D. K. | 93734 |
| 577 | Cashatt R. E. | 93892 |
| 578 | Wise B. O. | 43931 |
| 579 | Tucker J. A. | 43924 |
| 580 | Webb B. R. | 43927 |
| 581 | Chubashvili D. M. | 88931 |
| 582 | Laskey C. A. | 45879 |
| 583 | Yerkes B. W. | 43933 |
| 584 | Ruiz L. A. | 45048 |
| 585 | Auzine S. M.. | 44037 |
| 586 | Reichard M. D. | 45047 |
| 587 | Tomaszewski J. | 43923 |
| 588 | Galloway D. D. | 99476 |
| 589 | Mayer A. A. | 42475 |
| 590 | Glodowski B. E. | 43458 |
| 591 | Asefi A. S. | 99466 |
| 592 | Soootherland G. R. | 41123 |
| 593 | Shalongo D. W. | 41620 |
| 594 | Klay J. M. | 42472 |
| 595 | French J. L. | 44046 |
| 596 | Betz  H. R. | 45878 |
| 597 | Brown A. H. | 45881 |
| 598 | Dion J. F. | 44044 |
| 599 | Stockton R. L. | 41124 |
| 600 | Defroster G. A. | 44043 |
| 601 | Crow R. D. | 72305 |
| 602 | Mulder M. K. | 41608 |
| 603 | Fulton R. G. | 43455 |
| 604 | Rickard D. W. | 41616 |
| 605 | Carcas C. M. | 97110 |
| 606 | Guffin J. F. | 43461 |
| 607 | Cunningham K. R. | 43925 |
| 608 | Slayton R. S. | 41122 |
| 609 | Davis H. C. | 44042 |
| 610 | Poole M. W. | 40115 |
| 611 | Liddell J. L. | 42474 |
| 612 | Barton T. W. | 88927 |
| 613 | Khan Z. | 40112 |
| 614 | McFarland S. L. | 42477 |
| 615 | Moffitt C. S. | 41607 |
| 616 | Bottoms W. C. | 40111 |
| 617 | Tripp D. | 40119 |
| 618 | Pruitt W. H. | 40116 |
| 619 | Mays R. L. | 40114 |

| | | |
|---|---|---|
| 620 | Lawrence S. E. | 42473 |
| 621 | Hussain G. | 43466 |
| 622 | Owen J. L. | 41612 |
| 623 | Ciommo W. J. | 45054 |
| 624 | Rivera S. M. | 41617 |
| 625 | Slaton C. s. | 41121 |
| 626 | Johnson C. R. | 42470 |
| 627 | Azad R. M. | 40110 |
| 628 | Caylor R. M. | 95720 |
| 629 | Weaver k. E. | 41129 |
| 630 | Espinosa C. M. | 44045 |
| 631 | Grau K. J. | 43459 |
| 632 | Shephard J. M. | 41120 |
| 633 | Bernet A. L. | 45877 |
| 634 | McConnell T. R. | 42476 |
| 635 | Reed D.M. | 41615 |
| 636 | Hovercamp G.V. | 43464 |
| 637 | Waggoner A.M. | 41128 |
| 638 | Vidrine R.P. | 41127 |
| 639 | Williams A. L. | 40118 |
| 640 | Cobb K. D. | 41614 |
| 641 | Roberts J. R. | 15651 |
| 642 | Hall C. N. | 46934 |
| 643 | Galloway F. D. | 95124 |
| 644 | Probst L. J. | 00676 |
| 645 | Gundlach R. M. | 43462 |
| 646 | Standford H.K. | 45059 |
| 647 | Denike J.J. | 40122 |
| 648 | Henderson G. T. | 15662 |
| 649 | Ricks R. R. | 15649 |
| 650 | Paul B. W. | 00672 |
| 651 | Vincent C. E. | 46934 |
| 652 | McGonigle P. W. | 00665 |
| 653 | Riggs N. A. | 15650 |
| 654 | Gilmore J. C. | 34550 |
| 655 | Henderson J. K. | 15663 |
| 656 | Shellenberg W. S. | 15653 |
| 657 | Corbin D. W. | 41618 |
| 658 | Thomas M. R. | 41125 |
| 659 | Gaquin J. F. | 34547 |
| 660 | Haby C. M. | 95125 |
| 661 | Leary J. W. | 00664 |
| 662 | Davis S. A. | 40120 |
| 663 | Elford J. P. | 34543 |
| 664 | Gibby B. D. | 34548 |
| 665 | Morris R. C. | 00667 |
| 666 | Hahn T. M. | 15660 |
| 667 | Gilles M. P. | 34549 |
| 668 | Oehl R. A. | 00668 |
| 669 | Rasmussen L. L. | 46929 |
| 670 | Creel R. L. | 95123 |
| 671 | Stroup R. L. | 95117 |

| | | |
|---|---|---|
| 672 | Hill B. R. | 46933 |
| 673 | Perez L. M. | 00673 |
| 674 | Rogers C. D. | 41619 |
| 675 | Landan C. D. | 46918 |
| 676 | Sparrow L. K. | 15655 |
| 677 | Kamimawara M. J. | 15667 |
| 678 | Skirko J. | 15654 |
| 679 | Calantropio M. | 41611 |
| 680 | Farbolin G. J. | 34545 |
| 681 | Patros G. | 00671 |
| 682 | Ficaj A. B. | 34546 |
| 683 | Hendriksen M. D. | 15664 |
| 684 | Garberg P. J. | 43456 |
| 685 | Alford J. W. | 95120 |
| 686 | Boschert E. J. | 41609 |
| 687 | Reilly E. L. | 43409 |
| 688 | McGee J. A. | 95116 |
| 689 | Stanton J. R. | 41236 |
| 690 | Motley A. A. | 46680 |
| 691 | Keahey J. R. | 00663 |
| 692 | Keeth D. M. | 41610 |
| 693 | Lynch J. R. | 00675 |
| 694 | Burke E. | 41891 |
| 695 | Jackson A. C. | 41238 |
| 696 | Gundlach P. S. | 41235 |
| 697 | Durepo G. A. | 15665 |
| 698 | Halls D. H. | 46931 |
| 699 | Diz D. D. | 41237 |
| 700 | Rollins L. R. | 43410 |
| 701 | Todd K. D. | 41980 |
| 702 | Phillips T. R. | 41893 |
| 703 | Cook M. F. | 40109 |
| 704 | Pipstick J. P. | 46685 |
| 705 | Freund R. | 41240 |
| 706 | Martin C. B. | 15652 |
| 707 | Credno F. | 41239 |
| 708 | Peyou A. M. | 38365 |
| 709 | Pederson R. A. | 46682 |
| 710 | Thurman L. A. | 41978 |
| 711 | Bentley W. C. | 38364 |
| 712 | Price S. W. | 41896 |
| 713 | Runyan M. D. | 41894 |
| 714 | Deschler H. P. | 34544 |
| 715 | Estes G. L. | 41895 |
| 716 | Miller T. D. | 95119 |
| 717 | Baker M. J. | 93727 |
| 718 | Briceno A. S. | 95121 |
| 719 | Phillips T. E. | 46684 |
| 720 | Hameed K. | 41898 |
| 721 | Donges L. D. | 15661 |
| 722 | McKenny D. F. | 95118 |
| 723 | Phalen C. W. | 38366 |

| 724 | Andrus K. L. | 44040 |
| 725 | Wills J. M. | 41982 |
| 726 | Farnsworth M. | 41892 |
| 727 | Jones B. W. | 15671 |
| 728 | Graff R. S. | 37465 |
| 729 | Hablig H. W. | 17465 |
| 730 | Redding C. J. | 17195 |
| 731 | Jones W. G. | 37251 |
| 732 | Jenks J. O. | 17606 |
| 733 | Carns R. G. | 17403 |
| 734 | Comeau A. R. | 38367 |
| 735 | Caldwell G. T. | 46681 |
| 736 | Koontz W. P. | 36518 |
| 737 | Speisman J. | 17533 |
| 738 | Aldrich W. H. | 43928 |
| 739 | Blanchard A. J. | 40121 |
| 740 | Morrison J. H. | 17526 |
| 741 | Gamel L. L. | 17442 |
| 742 | Beavers J. L. | 40108 |
| 743 | Ferreira G. M. | 37718 |
| 744 | Carr R. E. | 43408 |
| 745 | Harvey T. R. | 17467 |
| 746 | Cabrera F. E. | 00670 |
| 747 | Courtright D. B. | 38368 |
| 748 | Garrison R. C. | 17462 |
| 749 | Berke R. A. | 17390 |
| 750 | Stone J. F. | 17534 |
| 751 | Kataria D. M. | 36516 |
| 752 | Leslie J. W. | 17524 |
| 753 | Sester R. L. | 17529 |
| 754 | Portwood R. L. | 17193 |
| 755 | Zulaske M. J. | 17556 |
| 756 | Brown R. B. | 17557 |
| 757 | Watters K. K. | 17257 |
| 758 | Quigly P. D. | 17194 |
| 759 | Nagle J. R. | 17163 |
| 760 | Fink G. L. | 37720 |
| 761 | Gentry R. C. | 37463 |
| 762 | Gustavson M. L. | 37467 |
| 763 | Hillis E. A. | 37249 |
| 764 | Chornock B. M. | 41975 |
| 765 | Lathan E. D. | 17523 |
| 766 | Hastings D. S. | 37469 |
| 767 | Olieman J. | 17164 |
| 768 | Mosely B. L. | 17162 |
| 769 | Sorenson J. T. | 17221 |
| 770 | Smith G. L. | 17220 |
| 771 | Poerschke J. R. | 17170 |
| 772 | Birmingham J. D. | 17397 |
| 773 | Millward D. R. | 17161 |
| 774 | Alexander M. W. | 17260 |
| 775 | Lane R. O. | 17522 |

| | | |
|---|---|---|
| 776 | Taylor M. J. | 17535 |
| 777 | Hammond S. J. | 37468 |
| 778 | Thetford W. R. | 17536 |
| 779 | Howard P. | 17471 |
| 780 | Dulany R. O. | 17558 |
| 781 | Urcinole J. | 17609 |
| 782 | Lowdermilk A. M. | 36520 |
| 783 | Jacobs D. | 17521 |
| 784 | Bahr D. J. | 43465 |
| 785 | Fetterhoff R. K. | 37719 |
| 786 | Klotz K. T. | 00669 |
| 787 | Donnelson R. D. | 37715 |
| 788 | Barnes G. R. | 46487 |
| 789 | Vasenden A. V. | 17226 |
| 790 | Warde Y. C. | 17256 |
| 791 | Hyde M. | 17473 |
| 792 | Ritchie C. W. | 17197 |
| 793 | Newsom D. | 17527 |
| 794 | Gouge P. B. | 17463 |
| 795 | Weitzel L. D. | 17555 |
| 796 | Tidwell J. L. | 41979 |
| 797 | Jattansingh M. | 37250 |
| 798 | Buttars M. L. | 17402 |
| 799 | Blelloch D. J. | 15666 |
| 800 | Thomas S. | 17225 |
| 801 | Davidson K. B. | 36369 |
| 802 | Olson S. M. | 17169 |
| 803 | Saliba B. N. | 17528 |
| 804 | Davidson D. | 17610 |
| 805 | Matheys B. C. | 36350 |
| 806 | Johnston P.R. | 17607 |
| 807 | Allen R. J. | 43463 |
| 808 | Howard C. | 07270 |
| 809 | Noris R. | 51564 |
| 810 | Prescott L. L. | 72446 |
| 811 | Smith T. | 51466 |
| 812 | Robertson J. M. | 72448 |
| 813 | Taylor D. A. | 73067 |
| 814 | Autry J. S. | 17405 |
| 815 | Rohrer W. | 74466 |
| 816 | Jackson W. T. | 17613 |
| 817 | Merson J. R. | 72918 |
| 818 | Williams I. D. | 72602 |
| 819 | Hughes Jr    E. T. | 42320 |
| 820 | Stoddard S. G. | 72487 |
| 821 | Kammer F. B. | 73369 |
| 822 | Saggau R. J. | 72526 |
| 823 | Carreras C. J. | 17223 |
| 824 | Kennerly P. D. | 71272 |
| 825 | Robinson W. J. | 51565 |
| 826 | Holland D. V. | 71534 |
| 827 | Robinson A. W. | 72449 |

| 828 | Griffith R. G. | 71172 |
| 829 | Heidami M. | 73366 |
| 830 | Smith G. M. | 73066 |
| 831 | Yates J. | 72605 |
| 832 | Fiscus M. | 51946 |
| 833 | Blight G. L. | 37253 |
| 834 | Hudson R. E. | 17611 |
| 835 | Ruby J. B. | 72733 |
| 836 | Castromover Jr.  J. F. | 17608 |
| 837 | Cowart D. A. | 51563 |
| 838 | Mansfield R. C. | 74467 |
| 839 | Huffman  W. S. | 17612 |
| 840 | Riordan R. C. | 72886 |
| 841 | Duncan D. W. | 72183 |
| 842 | Anglemyer R. M. | 15670 |
| 843 | Vergason D. | 51945 |
| 844 | Dominguez R. E. | 71104 |
| 845 | Posti Jr.  P. J. | 72445 |
| 846 | Campbell C. C. | 72171 |
| 847 | Haloszka D. | 73289 |
| 848 | Hottenstein D. N. | 71536 |
| 849 | Glosson D. P. | 71106 |
| 850 | Howe K. A. | 17472 |
| 851 | Buehler L. J. | 36519 |
| 852 | Dilorenzo R. G. | 71103 |
| 853 | Ring R. B. | 72732 |
| 854 | Jones L. W. | 70654 |
| 855 | Merrick C. L. | 72178 |
| 856 | Akbayar B. | 17259 |
| 857 | Despradel L. E. | 71102 |
| 858 | Emad M. I. | 17410 |
| 859 | Baker M. G. | 37717 |
| 860 | Kastanes G. A. | 36515 |
| 861 | Lougheed R. J. | 72888 |
| 862 | McNeil W. R. | 72175 |
| 863 | Benecke K. | 73070 |
| 864 | Widener S. D. | 72601 |
| 865 | Alsbury D. E. | 73069 |
| 866 | Hilgendorf R. E. | 71533 |
| 867 | Shoemaker W. R. | 72528 |
| 868 | Hazen J. E. | 71178 |
| 869 | Kruayai D. | 73893 |
| 870 | Bratrud E. K. | 15669 |
| 871 | Wingate Jr.  F. M. | 70656 |
| 872 | McGurr P. | 73895 |
| 873 | Scarbrough R. G. | 72921 |
| 874 | Mathews E. | 73894 |
| 875 | Powell R. R. | 72920 |
| 876 | Hammon T. A. | 71173 |
| 877 | Anderson C. P. | 44041 |
| 878 | Purpura K. E. | 70655 |
| 879 | Daili N. | 71100 |

| 880 | Gill K. W. | 71105 |
| 881 | Warren R. R. | 73068 |
| 882 | Elliot R. | 73296 |
| 883 | Montfort M. | 74463 |
| 884 | Hampel M. L. | 71174 |
| 885 | Canfield II  T. H. | 17222 |
| 886 | Youngs D. B. | 72606 |
| 887 | Tippett K. T. | 72489 |
| 888 | Zinger P. H. | 72729 |
| 889 | Borth J. E. | 15668 |
| 890 | Shaffer S. | 72527 |
| 891 | Tiainen J. J. | 72488 |
| 892 | Goldman D. M. | 71171 |
| 893 | Prijz F. P. | 72447 |
| 894 | Champion J. | 73295 |
| 895 | Murphy R. J. | 72179 |
| 896 | Trimmel H. | 51562 |
| 897 | Hansen L. B. | 71176 |
| 898 | Barr D. J. | 71538 |
| 899 | Stewart B. M. | 51468 |
| 900 | Hoffman G. | 73367 |
| 901 | Rocchetti E. G. | 72525 |
| 902 | Patin O. A. | 72182 |
| 903 | Loftus T. P. | 48023 |
| 904 | Macrae-Hall J. M. | 79900 |
| 905 | Frye J. H. | 58990 |
| 906 | Hunter R. E. | 79559 |
| 907 | Crocker C. E. | 79113 |
| 908 | Johnson J. A. | 78817 |
| 909 | Adams A. M. | 36349 |
| 910 | Walder G. W. | 70099 |
| 911 | Wright E. L. | 70045 |
| 912 | Grimm L. | 79722 |
| 913 | Leabo W. I. | 67433 |
| 914 | Bay P. E. | 79110 |
| 915 | Sullivan E. | 79527 |
| 916 | Cieplik T. K. | 79898 |
| 917 | Houston J. L. | 79714 |
| 918 | Ingber A. L. | 70908 |
| 919 | Bennett B. L. | 70653 |
| 920 | McClelland T. W. | 79228 |
| 921 | Sullivan J. E. | 70096 |
| 922 | King S. | 79719 |
| 923 | Accardo P. A. | 70909 |
| 924 | Reynolds J. L. | 70075 |
| 925 | Hadlock J. L. | 59249 |
| 926 | Hackney S. A. | 58992 |
| 927 | King W. E. | 72173 |
| 928 | Niles A. | 79902 |
| 929 | Moore J. C. | 67880 |
| 930 | Allen G. M. | 17218 |
| 931 | Luzhak  L. J. | 67746 |

| 932 | Harbour J. W. | 59250 |
| 933 | Adams J. V. | 37716 |
| 934 | Wheeler D. F. | 70043 |
| 935 | Bazar W. | 79563 |
| 936 | Nunez J. R. | 67888 |
| 937 | Brown R. L. | 79226 |
| 938 | Harmon P. F. | 79721 |
| 939 | Bagley G. D. | 72731 |
| 940 | Morgan D. G. | 67881 |
| 941 | cartwright G. A. | 73368 |
| 942 | Johnson P. L. | 78818 |
| 943 | Buttram P. | 78819 |
| 944 | Medlock J. P. | 67877 |
| 945 | Coppinger T. | 79561 |
| 946 | Prather J. R. | 70073 |
| 947 | Tarte L. L. | 70097 |
| 948 | Allen S. | 79562 |
| 949 | Lindsey L. | 79720 |
| 950 | Davis A. | 79524 |
| 951 | Swartz J. | 79901 |
| 952 | Jakovsevic D. | 79713 |
| 953 | Coe G. | 79526 |
| 954 | Diener R. A. | 56824 |
| 955 | Owens T. W. | 70071 |
| 956 | Kozack G. W. | 67739 |
| 957 | Braun R. L. | 78820 |
| 958 | Calhoun L. | 79724 |
| 959 | Francis P. | 79710 |
| 960 | Robertson P. B. | 70083 |
| 961 | Teague R. | 79723 |
| 962 | Pourbayat S. | 74464 |
| 963 | Basile R. | 80137 |
| 964 | Watson W. E. | 70100 |
| 965 | Allen D. | 79711 |
| 966 | Iqbal S. | 72885 |
| 967 | Reslan G. M. | 70074 |
| 968 | Hopp D. E. | 60462 |
| 969 | Moyer T. | 79529 |
| 970 | Moyer T. R. | 67878 |
| 971 | Brayton S. R. | 79525 |
| 972 | Weber D. B. | 70041 |
| 973 | Kennedy C. L. | 67738 |
| 974 | Giannone S. C. | 79528 |
| 975 | Turner W. S. | 70098 |
| 976 | Chittick M. L. | 52593 |
| 977 | Amini M. | 41981 |
| 978 | Lembessis T. | 67745 |
| 979 | Rinsma E. J. | 74465 |
| 980 | Kenning D. G. | 79225 |
| 981 | Manduley L. | 67747 |
| 982 | Cyphers M. J. | 56822 |
| 983 | Morgan B. | 79718 |

| | | |
|---|---|---|
| 984 | Roberts J. G. | 70076 |
| 985 | Zamora I. | 70905 |
| 986 | Richey J. | 79227 |
| 987 | Lathan W. C. | 67741 |
| 988 | Rudder B. L. | 70084 |
| 989 | Wood C. L. | 70044 |
| 990 | Dennis F. | 21825 |
| 991 | Kelly A. J. | 51666 |
| 992 | Clark J. | 51726 |
| 993 | Oneill C. B. | 50284 |
| 994 | Maxwell A. R. | 52619 |
| 995 | Brown E. H. | 67742 |
| 996 | Sansone J. D. | 52508 |
| 997 | Elkins J. R. | 51584 |
| 998 | Baxter G. W. | 56823 |
| 999 | Crafton M. L. | 70086 |
| 1000 | Mick C. E. | 80477 |
| 1001 | Hurd J. W. | 80141 |
| 1002 | Browne A. | 67879 |
| 1003 | Oatfield J. P. | 51729 |
| 1004 | Thompson R. L. | 51495 |
| 1005 | Waldron J. E. | 51927 |
| 1006 | Oxenham J. | 58269 |
| 1007 | Burch H. R. | 51551 |
| 1008 | Moore R. T. | 51691 |
| 1009 | Doerr R. | 70046 |
| 1010 | McClendon P. H. | 80476 |
| 1011 | Mullahey M. | 51700 |
| 1012 | Johnson E. E. | 80431 |
| 1013 | Aronoff M. | 71535 |
| 1014 | Graham D. E. | 51662 |
| 1015 | Stevens B. | 51898 |
| 1016 | Williams D | 52210 |
| 1017 | Zogleman M. W. | 51541 |
| 1018 | Smith L. | 51897 |
| 1019 | Dorough T. A. | 56825 |
| 1020 | Stansbury T. W. | 51493 |
| 1021 | Nadolny J. E. | 52484 |
| 1022 | Larsen J. R. | 52770 |
| 1023 | Landrun W. A. | 51713 |
| 1024 | Vazquez D. | 51510 |
| 1025 | Oyler J. B. | 51725 |
| 1026 | Patton D. S. | 51464 |
| 1027 | Rahner J. E. | 58270 |
| 1028 | Agostino R. W. | 51548 |
| 1029 | Wade D. A. | 51514 |
| 1030 | Sefton R. L. | 51891 |
| 1031 | Gutierrez H. | 52621 |
| 1032 | Lawson J. H. | 80473 |
| 1033 | Urbaszewski K. L. | 51923 |
| 1034 | Chandler K. L. | 51948 |
| 1035 | Warnock J. C. | 51536 |

| | | |
|---|---|---|
| 1036 | Current M. E. | 70095 |
| 1037 | Dalrymple D. P. | 70072 |
| 1038 | May W. H. | 51690 |
| 1039 | Tevis T. J. | 51494 |
| 1040 | Blankeship J. D. | 58989 |
| 1041 | Duff M. L. | 56826 |
| 1042 | Abbott G. V. | 72887 |
| 1043 | Enggren D. | 51587 |
| 1044 | Navickas J. | 52771 |
| 1045 | Sogn H. M. | 51491 |
| 1046 | Ashbrook L. J. | 72919 |
| 1047 | Tellechea C. M. | 51915 |
| 1048 | Georgakopoulos I. C. | 52620 |
| 1049 | Ball G. | 52594 |
| 1050 | Maryannakis A | 80474 |
| 1051 | Tomlinson W. W. | 51497 |
| 1052 | Farmer M. | 51604 |
| 1053 | Robinson D. B. | 51486 |
| 1054 | Niven R. | 51723 |
| 1055 | Oomen N. | 50286 |
| 1056 | Zolczynski M. A. | 52507 |
| 1057 | Cole M. W. | 51580 |
| 1058 | McGuire M. | 51714 |
| 1059 | Weathers L. W. | 51538 |

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) |
| | ) |
| _____ | ) Case No. 90-932 |
| | ) |
| BROWNIE N. INMAN | ) |
| Unidentified member of the class | ) Adversary No. 99-412 (MFW) |
| of LPP CLAIMANTS, | ) |
| | ) |
| | ) |
| v. | ) re: Docket No. 102 |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN. | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| Debtor | ) |
| | ) |
| _____ | ) |

## MOTION TO COMPEL AND COMPLIANCE WITH JANUARY 31, 2002 ORDER .

1.    I, Brownie N. Inman, was a pilot for Eastern Airlines (Eastern) from March 17, 1989 to January 19, 1991. I was on the Eastern Master Seniority List on **November 1990,** the date used for the settlement agreement.

2.    I was an Eastern Airlines pilot represented by the Airline Pilots Association (ALPA). ALPA was the sole bargaining agent of the Eastern pilots as prescribed under the agency shop provisions of the collective bargaining agreement between Eastern and ALPA.

3.    I was identified as a beneficiary of the settlement agreement on January 31, 2002. The January 31, 2002 list does not resemble in any way the **November 1990** Eastern seniority list. The list brought forward on the

January 31, 2002 order fails to list approximately 1300 pilots' names, all of which meet the requirement of the settlement. I believe the exclusion of these 1300 pilots to be deliberately fraudulent. (Attachment A)

4.    I was a member in good standing in Eastern Pilots for Fairness (EPFF), a Florida Non - Profit Corporation founded by the Eastern pilots with the sole purpose of raising funds for litigation with the purpose to protect our rights such as this one. Named class members James Baldridge, William Mann and Larry Dunn are officers of the corporation. I contributed over $6,200 to the cause and I understand the settlement included a reimbursement for our legal expenses, plus the stock shares listed in the settlement agreement.

5.    I was recently made aware, that a final "settlement" was reached, and I downloaded the settlement from the internet. At no time in the past, did I receive a copy of this settlement with its respective claim form, or was made aware that such forms were sent. James Baldridge, Bill Mann and Larry Dunn had no trouble notifying me to provide funds for their efforts. They should have notified me of this settlement.

6.    I understand attorneys for Continental and LPP Claimants agreed that this Court order of January 31, 2002 should be complied with, although Mr. Jamenson (Class counsel) is balking that he needs another order of compliance to distribute the original awards.

## PETITION

1.      As an identified member of the class, entitled to benefits of the settlement agreement, I ask this honorable Court to compel the compliance of the January 31, 2002 order and instruct the responsible parties to issue to me the following :

A. The (issuance of the) Continental shares to which I am entitled. Said shares are currently being held in escrow at Morgan Stanley under the full control of the class representatives and their attorney Mr. Bruce Jamenson;

B. The small amount of cash as mandated in the settlement agreement;

C. The pro rated refund of the dues I paid into the EPFF account for the sole purpose of funding this litigation to which I am entitled to recover as a portion of the legal expenses, as mandated in the settlement agreement.

2.      That the parties produce the entire Eastern Master Seniority List of **November 1990,** which is the list the settlement, refers to, so that all 1300 deliberately overlooked pilots can receive their settlements.

3.      That the parties produce in its entirety the list of Eastern pilots who participated in the ALPA/ Continental Settlement, as docketed in this Court and referred to in the agreement to which I am a party.

4.      That the parties produce in it's entirety the list of Eastern pilots who participated in the EPMC withdrawal of the bankruptcy claims as docketed in this Court and referred to in the agreement to which I am a party.

5.      To present to this honorable Court a true compilation of all the Eastern pilots that are covered by the settlement agreement to which I am a party.

6.      It is a simple and attainable solution to:

A. Produce the Eastern Master Seniority List of **November 1990,**

1. Minus the pilots who participated in the ALPA/ Continental Settlement;

2. Minus the pilots who participated in the EPMC withdrawal of the bankruptcy claims;

3. Minus pilots who are identified in the agreement to which I am a member.

7.    After the above mentioned process is concluded, this honorable Court should compel both parties to comply with the January 31, 2002 order to aggressively make funds readily and immediately available to the beneficiaries of the agreement.

Brownie N. Inman, *Pro Se*
EAL # 37953
Cell # 305-801-5227

# EXHIBIT

# S

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

2006 JUL 11  AM 10: 37

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>)<br>) Case No. 90-932 |
| Ramon E. O'Neill<br>Identified of the class<br>of LPP CLAIMANTS, | )<br>)<br>) Adversary No. 99-412 (MFW)<br>)<br>) |
| v. | ) re: Docket No. 102<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | )<br>)<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC.<br>Debtor | )<br>)<br>)<br>) |

## MOTION TO COMPEL COMPLIANCE WITH JANUARY 31, 2002 ORDER AND MOTION FOR ORDER REOPENING ADVERSARY PROCEEDING

1.    I, Ramon E. ONeill, was a pilot for Eastern Airlines (Eastern) from

May 25, 1984 to January 19, 1991. I was on the Eastern Master Seniority

List on **November 1990,** the date used for the settlement agreement.

2.    I was an Eastern Airlines pilot represented by the Airline Pilots

Association (ALPA). ALPA was the sole bargaining agent of the Eastern

pilots as prescribed under the collective bargaining agreement between

Eastern and ALPA.

438

7/11/06

3.    I was identified as a claimant of the settlement agreement on January

31, 2002.

5.    I appeared at the fairness hearing on January 31, 2002, the date the

"final settlement" was imposed.

6.    I appealed the settlement with an unsuccessful conclusion terminating

at the Supreme Court level on March 09, 2004.

7.    I contacted  Mr. Myles Tralins (deceased class counsel) shortly after

the denial of writ certiorari in regards to my submission of my proof of

claim. Enclosed is a copy of my proof of claim dated April 01, 2004.

8.    Mr. Myles Tralins informed me that I had to have submitted my proof

of claim by April 3, 2002, in order to be eligible to my entitlement, and

because I had elected  to appeal the January 31, 2002 order and therefore I

had run out of time.  I reminded Mr. Tralins of my rights to an appeal.

9.    I have spoken on several occasions with  both parties, Mr. Joe Barry

for Continental, and Mr. Bruce Jameson for the class and EPFF in regards to

the entitlement stock. Both parties stated they have no issue complying with

this court order dated Jan 31, 2002.

10.    During the appeal process I contacted Ms. Aletha S. Connors, the

financial advisor at Morgan Stanley supposedly in charge of the entitlement

stock, and she informed me that no stock or monies were **ever** deposited

under my name or social security number. I reconfirmed this information by trying the automated number at Morgan Stanley and inputting my social security number.

11.    Ms. Connors also informed me that the stock and monies were being handle by Mr. Tralins brother-in -law and it was a total mess.

12.    In later conversations with Mr. Bruce Jameson, current class counsel, Mr. Jameson confirmed the chaos at Morgan Stanley.

13.    Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such cases was closed to administer assets, to accord relief to the debtor, or for other cause."

14.    Rule 5010 of the Federal Rules of Bankruptcy Procedure additionally provides, in pertinent part, that [a] case may be reopened on the motion of the debtor or other party in interest pursuant to 350 of the Bankruptcy Code."

## PETITION

1.    As an identified member of the class, entitled to benefits of the settlement agreement, I ask this honorable Court to compel the compliance of the January 31, 2002 order and instruct the responsible parties to issue to me the following :

A. The (issuance of the) Continental shares to which I am entitled.

Said shares are currently being held in escrow at Morgan Stanley.

B. The small amount of cash ($83.14) as mandated in the settlement

agreement.

C. The pro rated refund of the dues I paid into the EPFF account for

the sole purpose of funding this litigation to which I am entitled to recover

as a portion of the legal expenses, as mandated in the settlement agreement.

Ramon ceulin
Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, FL. 33183
Cell # (786) 252-0175

4

**Must be Postmarked
No Later Than
April 3, 2002**

EAL LPP Class Action Settlement
The Garden City Group, Inc.
Claims Administrator
105 Maxess Road
Melville, NY 11747
1-800-327-3664
WWW.EALLPPCLASSACTION.COM

**CNT**



## PROOF OF CLAIM AND RELEASE

Claim Number:     1000606

RAMON E ONEILL
7424 SW 129TH CT
MIAMI, FL 33183

IF THIS AREA IS INCORRECT,
◄— PLEASE COMPLETE
"CORRECTIONS ONLY" BOX
TO THE RIGHT.     — ►

**CORRECTIONS OR ADDITIONAL INFORMATION**
Write any name, address and/or SSN/TIN corrections below.
If necessary OR if there is no preprinted data in the box,
please provide your name and address here.

_____

_____

_____

_____

Please fill in SSN/TIN if box is blank:

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

Please fill in Eastern Employee Number if box is blank:

66058

## IMPORTANT NOTICE - PLEASE READ CAREFULLY

This Proof of Claim pertains to claims which you have as a Class Member arising out of claims filed in Continental Airline's bankruptcy proceedings, *In Re Continental Airlines, Inc.*, Case Nos. 90-932 - 984 (Bankr. D. Del.) (the "Continental Bankruptcy Proceedings"), for enforcement of the labor protective provisions of the Eastern Airlines/Air Line Pilots Association collective bargaining agreement against Continental.

If you fail to file your Proof of Claim and Release form by April 3, 2002, your claim will be subject to rejection and you will be precluded from receiving any benefits under the Settlement of this case, the *Baldridge LPP Class* action, if it is approved by the Court.

### Instructions

In order for you to receive any benefits under the Settlement which is pending approval by the Court in this case, you must fill out, sign and date this Proof of Claim and Release form on the reverse side in Section II entitled *Declaration of Claimant to Participate in Benefits Under Settlement*, and mail it first class mail, postage prepaid, on or before April 3, 2002 to:

EAL LPP Class Action Settlement
The Garden City Group, Inc.
Claims Administrator
105 Maxess Road
Melville, NY 11747

IF YOU HAVE ANY QUESTIONS REGARDING THIS FORM, CALL THE CLAIMS ADMINISTRATOR AT 1-800-327-3664 AND WE WILL BE GLAD TO ASSIST YOU. DO NOT CALL THE COURT.

### PLEASE SEE REVERSE SIDE FOR SECTION II

# EXHIBIT

# T

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | )  Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) |
| | ) |
| _____ | )  Case No. 90-932 |
| | ) |
| J. TRIGG ADAMS | ) |
| identified but not compensated | ) |
| member of the class | )  Adversary No. 99-412 (MFW) |
| of LPP CLAIMANTS, | ) |
| | ) |
| | ) |
| v. | )  re: Docket No. 102 |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN. | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| Debtor | ) |
| | ) |
| | ) |
| _____ | ) |

## MOTION TO COMPEL AND COMPLIANCE WITH JANUARY 31, 2002
## <u>ORDER</u>.

1.    I, J. Trigg Adams, was a pilot for Eastern Airlines (Eastern) from June 17, 1968 to January 19, 1991. I was on the Eastern Master Seniority List on **November 1990,** the date used for the settlement agreement.

2.    I was an Eastern Airlines pilot represented by the Airline Pilots Association (ALPA). ALPA was the sole bargaining agent of the Eastern pilots as prescribed under the agency shop provisions of the collective bargaining agreement between Eastern and ALPA.

3.    I was identified as a beneficiary of the settlement agreement on January 31, 2002. The January 31, 2002 list does not resemble in any way

443

the **November 1990** Eastern seniority list. The list brought forward on the January 31, 2002 order fails to list many pilots' names, all of which meet the requirement of the settlement.

4.    I was engaged in the process at the time that this Court ordered the Settlement, as an independent, *pro se* litigant.  I objected to the idea of the Settlement verbally and in my briefs, but the Class counsel prevailed. And the settlement was ordered.  Although my name was on the list that the Class counsel proffered, I and others in the case objected that,

1) the list was grossly deficient in that

A) neither the Class counsel nor Continental entered the 1990 Eastern Pilots Master Seniority List into the court record, although Continental certainly had access to it, as it's parent company owned controlling interest in Eastern Airlines, and

B) it was short over one thousand names when one takes off the numbers from the groups that had settled previously or opted out of the bankruptcy proceedings, and

C)  Class counsel was negligent in performing due diligence in notifying pilots of the Settlement.  They simply put one notice only in USA Today, did nothing else, and the Court accepted that low standard of performance.  Every pilot in the United States is on several government databases as to his/her license and medical certificates, which they are required by law to keep updated, and which can be accessed by the public.  Class counsel made no effort to do so, and this Court accepted that low standard, despite my objections as to the several deficiencies.

5.    Not only did I object to the order because it was based on insufficient data and misstatements of fact by both the Class' and Continental's representatives, but also mainly because it bypassed Railway Labor Act laws which are not subject to any other courts in the land, but which were being ignored and sidetracked in this bankruptcy proceeding.  Because of that, I declined to participate in the Settlement in order to preserve my status as I appealed, which I did all the way to the Supreme Court, which declined to hear the case. ( Denied March 21, 2005, Case 04-934), almost a

year after Class Counsel's death. Despite the failure of the appeal no one has made arrangements for my forthcoming settlement award, as is their duty under the order. The appeal opinion stated that the settlement order "remedied" my objection to the class certification. But I have had no "remedy", since I have not been paid the settlement, nor have any other pilots who failed to be properly notified, nor even listed on the documents upon which the Court based the settlement agreement.

6.     The failure of the Class to carry out the settlement order renders it null and void, in which event my only remedy is to arbitrate the composition of the list in it's proper venue, under the Railway Labor Act.

## PETITION

Therefore, I am back to petition this Court at this re-opening of the Continental bankruptcy to enforce its order that I and every other Eastern pilot finally be paid the settlement, not letting the Class counsel give any excuse for finding them, nor their heirs, since quite a few have died awaiting some justice from this venue.

However, I also petition this Court that, to right some of the wrongs committed under its supervision, it properly must:

1. Recognize that a fraud has been committed in court, which must perforce negate the factual, legal basis upon which the order was made, making it null and void.

2. Therefore, rehear the arguments regarding the legitimacy of the settlement.


_____ , Pro Se

EAL # _____

Phone # 305-665-8904

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) |
| | ) |
| | ) Case No. 90-932 |
| | ) |
| J. TRIGG ADAMS | ) |
| Unidentified member of the class | ) Adversary No. 99-412 (MFW) |
| of LPP CLAIMANTS, | ) |
| | ) |
| | ) |
| v. | ) re: Docket No. 102 |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN, | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| Debtor | ) |
| | ) |

## CERTIFICATE OF SERVICE

I, _J. TRIGG ADAMS_ certify that I am not less than 18 years of age, and that service of **the Motion to Compel Compliance with January 31, 2002 Order,** was made on _____ upon the attached service list by first class mail, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

7-17-06

Name

Counsel for Continental Airlines:

Robert Brady, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801


Counsel for LPP Claimants:
Bruce Jameson, Esq.
1310 King Street
Wilmington, DE 19801


Hon. Mary F. Walrath
United States Bankruptcy Court
District of Delaware
824 Market Street  3rd floor
Wilmington, DE 19801

# EXHIBIT

# U

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| Continental Airlines, Inc., | . | |
| et al., | . | |
| | . | Bankruptcy #90-932 (MFW |
| Debtor(s). | . | through  #90-984 (MFW) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | | |
|---|---|---|
| James Baldridge, William | . | |
| Mann and Larry Dunn, | . | |
| individually and as | . | |
| representative of a class of | . | |
| persons similarly situated | . | |
| who are referred to as the | . | |
| LPP Claimants, | . | |
| | . | |
| Plaintiff(s), | . | |
| | . | |
| vs. | . | |
| | . | |
| Continental Airlines | . | |
| Holdings, Inc., Continental | . | |
| Airlines, Inc. and System | . | |
| One Holdings, Inc., | . | |
| | . | |
| Defendant(s). | . | Adversary  #99-412 (MFW) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Wilmington, DE
July 21, 2006
11:00 a.m.

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Plaintiff(s):          Bruce E. Jameson, Esq.
                               Prickett Jones & Elliott, P.A.
                               1310 King Street
                               Wilmington, DE 19899

2

```
For The Defendant(s):          Joseph Barry, Esq.
                               Young Conaway Stargatt
                               & Taylor, LLP
                               The Brandywine Bldg.
                               1000 West St.-17th Fl.
                               Wilmington, DE 19801

                               Kenneth J. Enos, Esq.
                               Young Conaway Stargatt
                               & Taylor, LLP
                               The Brandywine Bldg.
                               1000 West St.-17th Fl.
                               Wilmington, DE 19801

Audio Operator:                Brandon J. McCarthy

Transcribing Firm:             Writer's Cramp, Inc.
                               6 Norton Rd.
                               Monmouth Jct., NJ 08852
                               732-329-0191
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

3

THE CLERK:  All rise.  You may be seated.

THE COURT:  Good afternoon.

MR. JAMESON:  Good afternoon, Your Honor, Bruce
Jameson of Prickett Jones on behalf of the LPP Class
Plaintiffs.  Your Honor, we're here this afternoon on our
Motion to Reopen this adversary proceeding, which was a Class
Action that was settled.  The settlement was approved by the
Court.  And just briefly, Your Honor, what brings us here is
two years ago, Miles Tralens, who had been lead counsel in this
case, was killed in an automobile accident.  Since that time,
my office really has taken over as the lead position in the
case.  We have obtained the files, or the vast majority of
files from Mr. Tralens' office.  We've been working to
basically wind up the final settlement.  In the settlement,
there have been two distributions made to class members over
time.  There is a remaining fund which we would like to make a
final application to get Court approval to distribute out all
that money.  And basically the application would consist of an
application for fees and expenses in connection with the
administration of the settlement up until now, which is
contemplated by the agreement.  But more importantly --

THE COURT:  Well, does the settlement require that I
approve the final distribution?

4

MR. JAMESON:  I believe it does, Your Honor.  The
specific provision of the Settlement Agreement says that the
settlement consideration, if any, which is not distributed as a
result of a failure of anybody to timely submit claims, will be
applied to the payment of such additional Court approved
settlement administration costs, fees or expenses which may be
incurred during the administration of the settlement, with any
remaining balance to revert to the Continental Estate.  That is
paragraph 3.01(d) of the Settlement Agreement.  So that's one
aspect of it, Your Honor.  I believe that as I read the
Settlement Agreement, yes, Court approval is required.  But
more importantly --

THE COURT:  Or they don't get paid unless there's
Court approval.  It doesn't mean that --

MR. JAMESON:  That -- yeah, correct.  That's the other
aspect.  But more importantly, Your Honor, particularly from my
point of view, we have been contacted now by several people,
some of whom have filed applications with the Court -- at least
one gentleman named Mr. Duckworth has contacted me directly,
but has not made a filing with the Court -- all of whom now
seek their distributions from the settlement.  And various of
the people give various reasons why they did not get
distributions before.  Some of them, as is pointed out in
Continental's response, are people who claim that they didn't

5

get notice of the settlement, even though they filed appeals from the Court Order that approved the settlement. Others claim that they simply never got notice. In Mr. Duckworth's case, he advises me that he's been out of the country for the past nine years. Various reasons are set forth.

Your Honor, I did not feel that I could, under the Settlement Agreement, make the decision as to whether or not it's appropriate to pay these people. The Settlement Agreement obviously contemplates that you had to file a timely proof -- or not a proof of claim, but rather a timely claim form and meet various other criteria to be entitled to the settlement. Your Honor, that is the real reason that I bring this to the Court, is because I would like final Court approval and guidance on how to deal with those people. From our perspective, that is the Class Plaintiffs, I don't anticipate that we will take an affirmative position, unless we determine, for example in the case of one of the people, that they are not a member of the Class at all. Mr. Broderick who filed things, it appears to us he's not a member of the Class, because he simply didn't meet the criteria to begin with. As to the others who filed appeals and/or simply claim that they did not get notice, I would like to lay out in our application for the Court exactly the facts we have about those people. And we are happy to do whatever the Court tells us to do with respect to

6

those people.

So that is why we come here today seeking to reopen the
case.  My hope is that I would be in a position to file the
final application that I talked about, in mid-August basically,
and then we can proceed on whatever schedule suits the Court.

THE COURT:  All right.  Anybody else wish to be heard
on the motion?

MR. ADAMS:  Captain Adams, yes, Ma'am, I do.

THE COURT:  All right, Captain Adams, what's your
position on the motion?

MR. ADAMS:  Just preliminarily I'd like to hear what
some of the other Claimants have to say.  But Mr. Jameson's
statements are somewhat disingenuous.  He claims to have
notified all of the eligible Claimants on the remaining Eastern
Seniority List.  And they certainly have not done so.  They did
notify me, but I was in the appeals process at the time.  And
some of the people who were in the appeals process, as I
understand it, were never notified, even though they should
have been under the terms of the settlement.

THE COURT:  Well, you can't -- if you got notice, you
can't be heard to argue notice was not given.

MR. ADAMS:  No, Ma'am, that's not what I'm arguing.
I'm arguing that they did not adhere to the process as set out
in the Settlement Order.

7

THE COURT:  Well, they did as to you.  You got notice.

MR. ADAMS:  I got notice.

THE COURT:  All right.

MR. ADAMS:  Like I said, I was in the appeals process at the time.  Had I signed the agreement at the moment, it would have mooted my appeals process, so I could not do so. But nowhere in Your Honor's Order did I ever see any words to the effect that if my appeal as unsuccessful to the District and Appellate Court, that that made me ineligible for the payout.

THE COURT:  Well, you did know that you had to file a claim by a set time.

MR. ADAMS:  Yes, Ma'am.  But as I said, I was in the appeals process during the time that that set time had expired --

THE COURT:  But --

MR. ADAMS:  -- which I think was reset to August of '02.

THE COURT:  Well --

MR. ADAMS:  I was told my appeal didn't get heard and finally judged on until -- I'm trying to remember the Appellate Court's appeal decision date.  It was in '03 some time.

THE COURT:  Well, that was a decision you made.  You could have --

8

MR. ADAMS:  Yes, Ma'am, it was, but --

THE COURT:  You could not --

MR. ADAMS:  -- your Order --

THE COURT:  -- have it both ways.

MR. ADAMS:  -- did not say that because I was in an appeal process, and if I lost the appeal, that I had no rights under the settlement.

THE COURT:  It did say if you did not file a claim, you lost all rights.

MR. ADAMS:  Yes, Ma'am.  But had I --

THE COURT:  Okay.

MR. ADAMS:  -- filed that claim, in the wording of the claim form they sent me, it say that I hereby renounce all further claims -- let's see -- all further claims against the Estate of Continental.  And I couldn't do that, because I was in the appeals process.  That would have mooted my appeal.

THE COURT:  All right.  But that was a decision you made.  So there's no reason to change the settlement.  That was the terms of the settlement.  Either you filed your claim or your pursued the appeal.  And you made your choice.

MR. ADAMS:  Okay.  Then was it Your Honor's intent that anybody who objected to this was then forever barred from a claim?  I was only appealing Your Honor's Settlement Order.

THE COURT:  Whoever did not file a claim, was

9

precluded from participating.  Yes.

    MR. ADAMS:  So in other words, you were pre-punishing
those who objected to the terms of the Settlement Order before
the issue was finally resolved.

    THE COURT:  Yes, because I determined that it was a
settlement.  If you wanted to participate in the settlement,
you would get your distribution.  If you did not agree to
participate in the settlement, by not filing your claim and by
appealing, you don't get your distribution.  Yes, that was the
effect of the Order.

    MR. ADAMS:  Okay.  I will accept Your Honor's ruling
on that, and interpretation of that.  But, again, my objection
in this hearing is not simply to the -- to my money.  My
objection here is that under the terms of your Settlement
Order, these gentlemen have violated it, chapter and verse, all
up and down the line.  They have not followed Your Honor's
Order.

    THE COURT:  Well, I don't have any evidence of that.
    MR. ADAMS:  You don't?  May I offer some?
    THE COURT:  Well, what evidence would you offer?
    MR. ADAMS:  Okay.  In the record, the Class counsel
submitted an alphabetized list of the people that they said
were eligible, that their records show a constant reference
throughout this proceeding to the November 1990 Eastern Master

10

Pilot Seniority List.  And, which is always issued in a

Seniority Order format.  The one they submitted was in

alphabetical format, and it was not inclusive.  Mr. O'Neill

submitted the proper list in March of 2002.  And as I

understand from conversations with Mr. Inman, he has the proper

list in his current filing, which is in your Court record

today.

THE COURT:  Captain Adams, didn't I decide the issue

as to who would get notice and who was eligible, in my decision

which has now been affirmed?

MR. ADAMS:  The affirmation said that your

Confirmation Order was sufficient -- how shall I say this --

sufficient protection is how I remember the words.  But your

Confirmation Order has not been carried out.  If I may

continue?

THE COURT:  Well, what evidence do you have that those

on the list referenced in the Settlement Approval Order did not

get notice?

MR. ADAMS:  Did Your Honor not hear and hear both

Continental and the Class counsel saying that the Eastern Pilot

1990 Master Seniority List was the governing list from which

they were to work?

THE COURT:  I ruled -- and I believe it was Exhibit A

-- I ruled that the names on Exhibit A were the relevant Class.

Was it not Exhibit A, to be --

MR. BARRY:  Your Honor, I'll do you one better
actually.  The -- I think Mr. Adams is referring to the exhibit
to the final judgment and Order.  The parties and Your Honor
may recall that after that Order was entered, there was
subsequent litigation over the Class membership issue.  In
particularly, the LPP Class filed a motion to include the
additional members to be included in the Class.  And in their
motion, as we set forth in our response to the instant motion,
they set forth the painstaking procedure that they went
through, including starting with the very list that Mr. Adams
is referring to today.  So, again, and as we say in our papers,
and I think as Your Honor has recognized, this issue has been
fully and finally litigated to its completion.  And the Circuit
noted that, as Your Honor stated, in its decision on both Mr.
O'Neill's appeal and Mr. Adams' appeal, when it said this issue
has fully and finally been resolved.

So, you know, our response essentially to Mr. Jameson's
motion -- and we don't generally object to reopening just the
adversary proceeding for the discreet and limited purposes that
he sets forth in his motion.  However, we are loathe to
relitigate this Class membership issue, having fully been
litigated four years ago.  And we do note that Mr. Adams and
essentially every other person that's filed a pleading in the

12

case in the last two weeks was named as a Class member, and simply didn't file the claim form as required.

MR. ADAMS:  Mr. -- this is Mr. Adams again.  You note in your reply -- Continental does -- that they're puzzled as to who Mr. Ruski is.  Now, Captain Ruski was hired on September the 13th, 1965.  His seniority number is number 609.  You find him a mystery.  But he is an Eastern Pilot, just like myself. He is clearly listed on the Master Seniority List.  And as such, would be automatically included in the Class.  He's most certainly one of over the 1,000 that the Class counsel couldn't be bothered to list, much less find and notify.  Yet, in May of '02, they put the affidavits and documents, dockets 70 and 72, that the list was true and accurate in the first submission. In other words, you're saying they said that the list A was true and accurate, and they put affidavits and went through all the process they said they did, to make that list true and accurate.  And I'm telling you that the list is not true and accurate, that the Court records have the Master Seniority List, that the list A was not complete, and they knew it not to be complete.  And now they turn up wondering who Captain Ruski was.  And that constitutes --

THE COURT:  Well --

MR. ADAMS:  -- a lie and a fraud in this proceeding.

THE COURT:  Well, this has already been litigated.

13

The list has been approved for many years now.  You had your
chance, and others objected.  I heard the evidence and decided
the list.

          MR. ADAMS:  So in other words, Your Honor is saying
that knowing that the list was fraudulent and incomplete --

          THE COURT:  Not knowing --

          MR. ADAMS:  -- the Appellate Court said --

          THE COURT:  Captain Adams --

          MR. ADAMS:  -- knowing that --

          THE COURT:  Captain Adams, please, please don't
interrupt.

          MR. ADAMS:  Okay.

          THE COURT:  Captain Adams, no one knows the list was
incomplete.  There was a Court decision that the list was
complete.  And that decision has been affirmed.  That's a
finding.  The list was complete.  You cannot relitigate that
issue.

          MR. NEUMANN:  Pete Neumann.  May I say a few words,
Ma'am?

          THE COURT:  Yes.

          MR. NEUMANN:  I, in my case, just speaking of my
experience, I never received a claim form.  I did move twice,
but all within a five mile radius, and I was in the phone book.
 I also went to Larry Dunn several times at work, who never

14

mentioned to me, "Hey, by the way, this was settled. You might want to send in a claim form." So there was never any attempt to locate these guys. I would think Mr. Tralens, if he would have done this properly, they should have sent the claim forms out certified mail or return receipt requested so there's proof of some kind of delivery. But the U.S. Mail is not a perfect service, and I have mail mixed up all the time, including the last time today, or things are not delivered. I also recently located a friend of mine, a gentleman in the Air Force, a fellow officer, named Ron Butz, who did recently get a form in California. He signed it and mailed it back. And that's the last time he ever heard from EPFF. He never got his stock. He never got the money. Nothing. And he did mail it back.

Now, if some of these people have a question as far as locating them, my daughter, who's 13 1/2 years old, in the past two months has access to a computer, and there is a website, a Government database. And she located two of your eight fellow Eastern pilots that counsel said couldn't be located in the past. And they're out there. There's a data website of only pilots. So people can be located. It's just the effort was never made. And in my case, I never received a claim form.

THE COURT: Well, but you had notice of this. You objected to the settlement, didn't you?

MR. NEUMANN: After the fact, I -- as I moved -- I

15

happened to talk to Mr. O'Neill after the deadline.  So I did
appeal, because I had no other choice.  I did not receive a
claim form, and I had no other recourse.  I couldn't mail back
something I didn't receive.  But I finally called Mr. Jameson,
I think it was back in March.  And I mentioned this to him.  He
said, "Oh, I have no problem with you receiving your stock.
Yes, you were one of the initial people in the group.  But call
the Continental attorney, Mr. Barry.  I called Mr. Barry.  He
said he'd get back to me, which he did.  He said, "Yes, we see
you as part of the group.  I have no problem with you receiving
your stock.  Go back to Mr. Jameson."  So they're pointing the
finger at each other, saying neither one of them can do
anything.  Yet, I was one of the members who just never
received the paperwork to mail back.  Both of them agreed I
should get my stock.  They both told me verbally on the phone
they have no problem with my receiving it.  But now they're
saying they have a mess deciding who should get what.

     And there's not enough funds also.  Your Honor, the Order
that you signed, January 31st, '02, gave us certain stock plus
a small cash amount.  And if you take that cash amount, that
was $81 per person, times let's say 400 people at EPFF, that
came to an X amount.  Well, as of right now, according to the
filing, there's only $519 left in the account.  Even if you
wanted to pay everyone, the money's not there.  And I don't

16

know as far as the 71,861 shares of stock, if that's enough to cover everyone that they quoted.  Now, my opinion is somebody's trying to basically not let the word out, disclose complete and full.  And people are never gonna get their stock.  And a few individuals are going to keep it.  And we're basically gonna be defrauded out of the small settlements we got, for the loss of a career.

THE COURT:  Well, Mr. Neumann, I can't consider what you're telling me other people did.  If they didn't file a motion here, I don't have any proof that they did or did not get this.

MR. NEUMANN:  Well, you know that Gerald Butz told me he mailed it back, and never received anything.

THE COURT:  Mr. Neumann, that's hearsay.  If you were on the stand to testify, you could not testify to what somebody else told you.

MR. NEUMANN:  Okay.  I'm just letting you know that the U.S. Mail is not a perfect service.  I never got my claim form, so I could never mail it back.

THE COURT:  Mr. Jameson?

MR. JAMESON:  Your Honor, just to address these accusations about lack of notice, part of what I contemplated in dong the final application, I mean we already went through with the Court what we did to provide notice in prior motions.

17

I intended to recount that and advise that we did, in fact --
you know, went through various steps to make sure we supplied
notice, to try to find addresses for people where we got things
returned, and so on, all of which I will lay out in the final
application, if the Court permits me to file it.  But any
suggestion that we have either tried not to provide notice, I
assure you is absolutely incorrect.  And I can make the record
on that in connection with the final application.

          MR. NEUMANN:  Well, we all had phone numbers, so they
could have called my number.  My cell number has never changed.

          MR. ADAMS:  This is Captain Adams again.  Mr. Jameson,
as you know, I was objecting to your list from the very front.
 And in the Court record are my objections that your list,
Exhibit A, was incomplete at the time.  And yet you say, and
provide all kinds of numbers that you say there should have
been about 2,000 remaining pilots in that group.  I recall that
your Exhibit A list was already less than 1,000.  And then
later on, when we objected and you added another 256 names,
that right there put the lie to your earlier statement that the
list was complete and true, and you had done due diligence.
The record shows that you did not do due diligence, that the
entire 1990 November Eastern Pilot Master Seniority List from
which you were to have operated was available to you.  You
never objected that you couldn't find it or nobody would give

18

it to you.

THE COURT:  Captain Adams --

MR. ADAMS:  -- and you said that you got all these numbers off that list.

THE COURT:  Captain Adams --

MR. ADAMS:  And yet your Exhibit A starts out being deficient, which is proved by the May action of adding 256 names.

THE COURT:  Captain Adams --

MR. ADAMS:  And even still --

THE COURT:  Captain Adams, please --

MR. ADAMS:  Yes, Ma'am.

THE COURT:  Please.  You're relitigating issues that have already been decided.

MR. ADAMS:  Well then, Your Honor, do you mean that our in the record statement that there were over 1,000 pilots missing, it is your intention that you did not care that there were over 1,000 pilots missing?

THE COURT:  I don't believe it.  I've already decided that issue.  And I decided --

MR. ADAMS:  Ma'am, I don't believe that you've ever heard any argument as to how the list was incorrect.

THE COURT:  Captain Adams, I decided the list was correct, after hearing all of the arguments that were made.

19

MR. ADAMS:  Then what remedy do I have when I say that the list was fraudulent?

THE COURT:  You have no remedy.  You have lost.  You have lost that issue.  I'm not inclined to reopen this case. I'm not going to relitigate any issue.  I think the Settlement Agreement deals with what happens.  And I'm not inclined to grant any additional relief.

MR. ADAMS:  So you're basically saying that your ruling is that they lied and they got away with it.  Is that my understanding of it, Ma'am?

THE COURT:  No.  I'm ruling that they did not lie.  I found what they presented was accurate.  The Court above me found it was accurate.  That's the truth.  And any --

MR. ADAMS:  I understand that.  But the Appellate Court did not rule on the accuracy of the list.  That was not the issue.  It was the issue of the legitimacy of not following at all the Railway Labor Act, and going to an arbitrator to know that the list was well and truly accurate under the Railway Labor Act under which it was constituted.  That was the issue before the Appellate Court.  And that was the issue that I pled to the District and Appellate Court.  I did not plead how you arrived at the numbers of pilots on his Exhibit A.

THE COURT:  If you did not plead it, you cannot now. You have to raise all your arguments at once.  If you don't

raise them, you lose them.

MR. ADAMS:  Well, that puts me, an unsophisticated litigant, at the mercy of those who want to twist the Court. And I don't know if I have a remedy to that or not.  I will have to see.  Thank you very much, Your Honor.  I appreciate it.

THE COURT:  All I'm saying is I'm not inclined to grant the motion and relitigate anything.  I'm sorry.  There's another --

MR. ADAMS:  Well, I understand --

THE COURT:  -- gentleman here.

MR. ADAMS:  -- Your Honor's reluctance to do so, because this has become more and more and more complex. However, there was before you a grief on my part that it was not accurate.  And also a grievance that, in fact, the whole process was wrong.  And 'though I agreed that the process was wrong, I was handed a decision by the Appellate Court that said, "Well, a Settlement Agreement is relief enough."  And that the Settlement Agreement and the accuracy of this has never been actually determined by yourself nor a Higher Court.

THE COURT:  That's not true.  When I approved the settlement, I approved the list.  So it has been litigated and decided.  I'm sorry, there's another gentleman in the Court. Do you want to be heard?

21

MR. INMAN:  Yes, Ma'am.

THE COURT:  Step forward and talk into the microphone, please.

MR. INMAN:  I'm Brownie Inman.  I'm a member of the Class too.

THE COURT:  And your name again?

MR. INMAN:  Brownie Inman.

THE COURT:  Okay.

MR. INMAN:  And I have -- it's right in the record that there's 2,000 that could have been available.  But I -- it's in the record.  We can go right to it right now and end this myth just quickly.  Edna Smith admits in her deposition 5,000.  She said she started working.  She eliminated the 2,700 of the Continental Airlines and Eastern settlements, and the 300 of the -- what was it -- the -- pardon me.

THE COURT:  The Alpha?

MR. INMAN:  Addington Group.

THE COURT:  Addington Group.

MR. INMAN:  That's 3,000 people.  She started with 5, ended up with 3.  I mean she started with 5, eliminated 3. That's 2,000 people.  It's right in the record, right here, Your Honor.  We can -- in the document -- in the Court records. I'm not -- I can do it very easily.  However, even if I do do it, it doesn't matter, because you approved the -- if you'll

remember the settlement, you approved Appendix A. That was the
list you started with. Appendix A was specific names. I think
about 560 people. And you had to be on Appendix A. And there
was no option of expanding Appendix A. It was never in your
Order to expand Appendix A. You said that they had to be on
Appendix A, with no mechanisms to expand Appendix A. So you
defined the Class as 560 people. And anybody that's not on it
is entitled to their appeal rights to arbitration.

    THE COURT: Okay. And that's what you're stuck with.

    MR. INMAN: Okay. Excuse me.

    THE COURT: All right?

    MR. NEUMANN: Excuse me, Ma'am, may I ask a question?

    THE COURT: Who is speaking?

    MR. NEUMANN: Pete Neumann.

    THE COURT: Yes?

    MR. NEUMANN: What do individuals, such as myself, who
never received notification or a settlement form, or Mr. Butz,
who did receive it and mailed it back, and he never received
his stuff, or where Mr. Jameson agreed and verified me as being
entitled to a settlement, what do I do at this point? They
both told me they had no problem with me receiving the award.
Mr. Jameson told me I have to reopen this case. I said, "Well,
why could you just not fund or transfer the money to an
account?" He directed me to open the case. He said, "There's

nothing I can do for you unless you open the case."  I had full

guidance.  And in Mr. Butz's case, he followed the Court.  He

mailed his claim form in.  And that's the last he ever heard.

MR. JAMESON:  Your Honor, can I just briefly address

with respect to Mr. Neumann, he had it wrong at first, and he

didn't get it right again.  What I told him was because he did

not timely submit a claim form, I had no authority to make a

settlement payment to him under the terms of the Settlement

Agreement and the Court's Order, so that the only way that

could happen is if he got approval from the Court.  That is

true.  As to Mr. Butz, and I believe I have this correct, I

believe he contacted me after Mr. Neumann talked with him, and

told me that he had finally submitted a claim form, but just

never received the payments.  I asked him to send -- and he

said he had proof of the mailing and receipt by the claims

agent and so on.  I said, "Send me the documentation to verify

that you, in fact, sent it in.  If it's good documentation and

it establishes, in fact, that you did submit it before the

deadline, then we would issue to him the payment.  I've never

received that information from him since that conversation.

So, you know, I asked him for verification of that fact.  He

said he had it and would send it to me, but he has not done so,

so far.

MR. BARRY:  And, Your Honor, one more point.  Let's

24

not forget that Mr. Neumann is also one of the parties who objected to the settlement in the first instance, and appealed the Settlement Order in the second. So Mr. Neumann should have -- for him to say he didn't know that he had to file a claim, or he wasn't aware of the deadline or of his rights, I think might be stretching it a bit. I mean he objected to the very Order that he's saying he didn't understand his rights under. So --

MR. NEUMANN: What I was objecting to more than anything, this was initially a binding Class Action without any kind of a vote or membership vote. This was turned into a Class Action with a no opt-out clause, at a full settlement. That was my objection more than anything. How could somebody turn this into a Class Action, not even ask you if you want to participate, make --

THE COURT: That's a --

MR. NEUMANN: -- make a --

THE COURT: Mr. Neumann --

MR. NEUMANN: -- settlement on your behalf, and then not even notify you?

THE COURT: Mr. Neumann --

MR. NEUMANN: That's my objection.

THE COURT: Mr. Neumann, that is not the issue. The issue is did you have sufficient notice that there was a

25

deadline to file a claim.

MR. NEUMANN:  No, Ma'am.  I never received it.  I had no communication at my phone number or --

THE COURT:  You had the settlement.

MR. NEUMANN:  -- the post office --

THE COURT:  You had the Settlement Agreement to which you objected.

MR. NEUMANN:  I downloaded it off the internet about two months ago.  That's correct.  And I read the whole thing for the first time.

THE COURT:  No.  At the time you filed an appeal, you knew the terms of the settlement to which you were objecting.

MR. NEUMANN:  When I spoke, after the deadline passed, and I think whatever month it was we had to mail them back in -- I spoke with Mr. O'Neill about two months later when it was when he told me this was being appealed.  I said, "Just add me to it then.  I have no choice.  Add me to whatever appeal you're doing."  I personally did not do anything.  I did not mail any forms in until I spoke with Mr. O'Neill, after the deadline.  That was the first time I heard about a date by which we had to mail it in.

MR. ADAMS:  Your Honor, Mr. Adams.  I believe that --

THE COURT:  Wait a minute.  Captain Adams, wait.  Mr. Neumann, did you object to the settlement?

MR. NEUMANN:  I objected after the deadline passed, when I did not receive any claim forms.  I was told that was my only recourse.

THE COURT:  Mr. Burton -- Mr. -- sorry.

MR. BARRY:  I won't tell him you said that.

THE COURT:  All right.

(Laughter)

MR. BARRY:  Your Honor, this is Mr. Neumann's objection to the settlement.  It's date stamped January 17th, '02, about 10 days before the hearing to consider the settlement.  So to the extent Your Honor wants, I can hand this up for your consideration.  But he clearly knew of the deadline well before the settlement was even approved.  And the fact that he appealed it, again indicates that he knew of its approval and knew of its contents.  So --

THE COURT:  Yeah.  I think to the extent that you had notice of the settlement motion and notice of approval of it, which is evidenced by both your objection and appeal, you had notice of the deadline to file a claim.

MR. NEUMANN:  I spoke with Mr. O'Neill when he made me aware of this, and I said, "Do whatever needs to be done. Whatever you're pitching in to do," because I didn't have a claim form.  So I was kind of riding on the coattails saying, "Whatever you guys are doing as a group, I'll be made a part of

it."  But I never received a form to mail back.

THE COURT:  Well, you're bound by what you did or failed to do.  I can't grant you relief.

MR. ADAMS:  All right, Your Honor, Captain --

MR. NEUMANN:  What happens to those shares that have already been funded, that Mr. Jameson said he was holding, but he doesn't know how to release them?

THE COURT:  Well, the Settlement Agreement tells him where to put them.

MR. NEUMANN:  I mean I'm willing to give him my address, my Social Security number, whatever he needs.  But he's told me he cannot give me those shares without your guidance, Your Honor.

THE COURT:  Well, I'm denying your requested relief. I'm not going to grant you the option --

MR. NEUMANN:  You're not gonna grant what?  The shares that have been put in the account?

THE COURT:  I'm not going to let you reopen the case so you can file a late claim.  I think you had notice, and the time is passed.

MR. NEUMANN:  So what does happen to the shares, those 340 shares?

THE COURT:  Read the Settlement Agreement.  Captain Adams?

MR. ADAMS:  Yes, Your Honor.  I believe that the machinery that you set in motion, required Mr. Jameson and Mr. Tralens, I guess at the time, to send a notice and a claim form to each of those people on the Exhibit A list.  And Mr. Neumann is saying that he never received one of those notices, as have several people that I have spoken to, who were on the A list. Now, I received mine, and I didn't sign it because I was objecting to it.  But I have talked to several pilots who have said, "I never -- my name was on the list, but I never received the claim form."

MR. NEUMANN:  People do move and relocate.  That's one problem.

THE COURT:  Well, the evidence I have before me is that it was sent to them.  I don't have any evidence that they didn't receive it.  To the extent Mr. Neumann is seeking to testify that he did not receive it, I'm denying his relief, because he had actual notice of the Settlement Agreement and the time to file a claim.  And the fact that he did not get a form, does not relieve him of his obligation to take some action to file before the deadline, if he wanted to participate.

MR. ADAMS:  Your Honor, Captain Adams.

THE COURT:  Yes?

MR. ADAMS:  Your Honor, you arrogated to yourself the

role of arbitrator in this, and you set in motion machinery to
carry out your orders.  And although I don't think that was the
proper way to do it, I accept that Your Honor has -- seems to
have the power to do it.  However, the machinery that you set
in motion did not work.  In fact, it worked to subvert your
purposes.  And as a result, several people, such as Mr.
Neumann, were awaiting forms from Mr. Tralens, the Class
counsel, with which to file their claims.  They never got those
forms, or they were not processed properly.  And you are saying
that the negative proof, that you have no proof that it wasn't
done right, is proof that everything has been satisfied by the
machinery.  And I submit that that is not a proper proof.
That, in fact, there has to be some show by Mr. Tralens or the
Class counsel remaining, that they did, in fact, mail those.
They've had no proofs of mailing that I've ever heard them
submit to the Court, or any other thing that they claim to have
done, but that the evidence shows that they did not, in fact,
do.  And although Mr. Neumann may have been appealing and knew
generally that he had a settlement coming due to him, he
properly waited for the forms being sent out, which were never
sent.  And I don't think that their assertion that, "Oh, yeah,
we sent them all," is good enough.  I think the Court should
ask for a higher standard of proof, because the prior standards
of proof, which is attested to by numerous objections

30

throughout this process, is that they never rose to that
standard in any way, shape or form.

THE COURT:  I don't know what proof you're attesting
to, Captain Adams, that they never did perform.

MR. ADAMS:  Well, Your Honor, the one --

THE COURT:  In the absence -- you're not here to
testify.  I don't have evidence presented by all of these
people you say didn't get notice.  There is a way to prove a
case.  And the burden of proof is on those asserting they did
not get their claims.

MR. ADAMS:  So there's no burden of proof on the Class
counsel to say that, "I did send these forms."

MR. BARRY:  Your Honor --

MR. ADAMS:  Is that what you're saying, Ma'am?

THE COURT:  No.  I'm saying they already did that.
And if you disagree with that, you have to come forward with
real evidence, not just, "So and so told me he didn't get it."

MR. BARRY:  And the only first-hand evidence Mr. Adams
has, Your Honor, is that he received his claim form.  The only
party he has standing to raise this issue is for himself.  And
he has admitted on the record here today that he received his
claim form, and that he chose not to fill it out and file it.
So, Your Honor, we would respectfully request that you deny all
of the pending motions to reopen the case, subject to Mr.

31

Jameson's -- it sounds like you've already ruled with respect to his, and all the motions to compel compliance with the Order.

THE COURT: I'm inclined to do so. Mr. Inman, do you have anything further?

MR. INMAN: Yes, Ma'am. I have Mr. Neumann's daughter's list. This girl sat down for maybe three weeks, and wrote 205 names of people that were on the -- missing people, I call it. They aren't really on the -- these people that are identified on the A list. Of course, the A list is the only thing that counts anyway. That's all that counts. It doesn't matter. You know, we could find, you know, Mr. Tralens could have advertised in the newspaper and found out that Joe Schmoe was really on the list, and everything was rosy posy because he was on the Eastern 1990 list. He doesn't have any claims. He hasn't opted out. And he would go over and ask the lady, Edna, who's testified to this thing, says, "Is Edna on the list?" And she'd say, "No, she's not on the list." Even though --

THE COURT: See again, this is something that was litigated four years ago. How many years ago was the Order entered?

MR. BARRY: January 31st, '02, Your Honor.

MR. INMAN: Well, they've also had --

MR. BARRY: Over four years ago this was litigated.

MR. INMAN:  Ma'am, I'm not speaking for myself.  We can find those people.  We can get you addresses for these people that -- there's 76,000 shares here.  I'll give mine away.

THE COURT:  It's too late.  It's too late.

MR. INMAN:  Is it too late to appeal?

THE COURT:  You can appeal my Order now, but I'm denying a motion to reopen the case, because all these issues of who should or should not have been on the list, were already decided.

MR. NEUMANN:  Your Honor, Pete Neumann.

THE COURT:  Yes.

MR. NEUMANN:  When I spoke with both attorneys, Mr. Barry and Mr. Jameson, in my personal case, they both verified who I was, that I was entitled to the shares.  They were all looking for your guidance what to do with it.  They thought I was part of this from the beginning, but they were just looking what to do with all these shares.  They told me they had no idea what to do with it.  They didn't have any guidance.  That's why they asked me to file a motion with the Court.

THE COURT:  All right.

MR. NEUMANN:  I just called them up and I said, "Can you please finally release the shares that were put aside four years ago?"  They both took a week to verify who I was.  They

33

both agreed to my background, that they knew I was part of
EPFF. All I'm asking for is what was already funded.

THE COURT: Well, I understand, but I'm going to deny
the relief you're requesting, Mr. Neumann.

MR. NEUMANN: So what happens to the shares that
Continental put in its escrow account?

THE COURT: I believe under the Settlement Agreement
they go back to Continental. Am I correct?

MR. NEUMANN: And Mr. Barry says, "We don't want the
stock back." I asked him that question. He said, "We funded
it. It's between you and Mr. Jameson."

MR. JAMESON: Your Honor --

MR. NEUMANN: When I called Mr. Jameson, he said, "I
have such a mess in paperwork, I have no idea what to do right
now. I need Court guidance."

MR. JAMESON: Your Honor, just to be correct, they
actually go back to the Continental Estate --

THE COURT: Okay.

MR. JAMESON: -- not to Continental itself.

THE COURT: I'm sorry.

MR. INMAN: May I ask a question? Were you intending
to have a Class Action that would identify people who had not
opted out that were on the 1990 Seniority List?

THE COURT: I'm not gonna relitigate what the

34

settlement dealt with.  The list was prepared and approved.  It
was amended and approved.  That's the list.

MR. INMAN:  I agree.  But we could have written this
Order just as easy to say let's publish the A list and pay
these people some money.  So if you didn't want to provide a
Class Action for people who had not opted out, I'll take it
that you didn't really want to do that.  Thank you.

THE COURT:  Listen.  The pilots have litigated this
for years and years and years.  And the Court is well aware
that they would file documents and not file documents based on
what they perceived was their rights.  If they did not file a
claim, the Court presumes they did not want to be part of the
settlement, and did not want to receive these shares, because
they felt they had other rights that they could pursue on
appeal.  So I recognize that certain pilots did not want to
participate.

MR. NEUMANN:  Your Honor, why was this not sent
certified mail or return receipt so there's some kind of
documentation this was mailed?

THE COURT:  I'm not answering any questions.  I've
made my ruling.  I'm not inclined to grant any relief on any of
the motions.  The case has been decided, and the parties are
stuck with what was decided four years ago.

MR. NEUMANN:  So these shares will never be

35

distributed to whom they were intended to be distributed to.

THE COURT:  The Settlement Agreement will be complied with.  All right, we'll stand adjourned.

MR. JAMESON:  Your Honor, should we submit an Order with respect to all of the pending motions, or will Your Honor just simply rely on the oral ruling today?

THE COURT:  I'd like a Form of Order.

MR. JAMESON:  Very well.  Thank you very much, Your Honor.

THE COURT:  Thank you.

(Court adjourned)


CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          _____
Signature of Transcriber                      Date

# EXHIBIT

# V

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| *et al.*, | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | **Hearing Date:  July 21, 2006 at 4:00 p.m.** |
| INC., | ) | |
| | ) | **Ref. Docket Nos. 427-436, 438-440, 443-445 & 448** |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## ORDER DENYING MOTIONS:  DOCKET NOS:  427-436, 438-440, 443-445 & 448

The Court having considered the motions identified on Exhibit A annexed hereto

(collectively, the "Motions") [Docket Nos. 427-436, 438-440, 443-445 & 448] and the arguments

made therein; and upon consideration of the arguments made on the record of the hearing held in this

adversary proceeding on July 21, 2006; and the Court having made oral rulings on the record at such

hearing, all of which are incorporated herein; and no other or further notice being necessary or

required; and after due deliberation and sufficient cause appearing therefor, it is

451

ORDERED, that the Motions, and each of them, are hereby denied.

Dated: Wilmington, Delaware
        July 24, 2006

_____
Mary F. Walrath
Chief United States Bankruptcy Judge

DB01:2133187.2

045085.1007

## EXHIBIT A

| Filing Date | Docket No. | Docket Text |
|---|---|---|
| 07/20/2006 | 448 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Luis A. Baldoni |
| 07/18/2006 | 445 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Francis C. Armstrong |
| 07/18/2006 | 444 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Rafael Villanueva |
| 07/18/2006 | 443 | Motion to Compel and Compliance with January 31, 2002 Order Filed by J. Trigg Adams |
| 07/12/2006 | 439 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Richard Alan Osborne |
| 07/11/2006 | 440 | Motion to Reopen Adversary Proceeding but Object to the class Action Plaintiffs' Stipulations for Motion to Reopen Filed by Brownie N. Inman |
| 07/11/2006 | 438 | Motion to Compel Compliance with January 31, 2002 Order and Motion for Order Reopening Adversary Proceeding Filed by Ramon E. O'Neill |
| 07/11/2006 | 436 | Motion to Reopen Adversary Proceeding for Limited Purpose of enabling Compliance with this Court January 31, 2002 Order and Objections to the Stipulations for the Motion to Reopen by Class Representatives Because again Class Representative are not telling the Truth in Regards to the Composition of The Class Members Filed by Pete G. Neumann |
| 06/20/2006 | 435 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Patrick M. Broderick |
| 06/19/2006 | 434 | Motion to Reopen Adversary Proceeding. Filed by JAMES BALDRIDGE, LARRY DUNN, LPP CLAIMANTS, WILLIAM MANN |
| 06/15/2006 | 433 | Motion to Compel and Compliance with January 31, 2002 Order Filed by James M. Reifke |
| 06/13/2006 | 432 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Brownie |

|  |  | N. Inman |
|---|---|---|
| 06/13/2006 | <u>431</u> | Motion to Compel and Compliance with January 31, 2002 Order Filed by Joseph F. Kucklick |
| 06/12/2006 | <u>430</u> | Motion to Compel and Compliance with January 31, 2002 Order Filed by David A. Burns |
| 06/09/2006 | <u>429</u> | Motion to Compel and Compliance with January 31, 2002 Order Filed by Michael D. Donovan |
| 06/08/2006 | <u>428</u> | Motion to Reopen Adversary Proceeding and Chapter 11 Cases for the Limited Purpose of Enabling Compliance with this Court January 31, 2002 Order Filed by Peter G. Neumann |
| 05/31/2006 | <u>427</u> | Motion to Compel and Compliance with January 31, 2002 Order Filed by Peter G. Neumann |

# EXHIBIT

# W

## IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>) |
| _____ | ) Case No. 90-932<br>) |
| Ramon E. O'Neill<br>Identified member of the class<br>of LPP CLAIMANTS, | ) Adversary No. 99-412 (MFW)<br>)<br>)<br>) re: Docket No. 438 |
| v. | ) re: Docket No. 451<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | )<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC.<br>Debtor | )<br>)<br>) |
| _____ | ) |

## NOTICE OF APPEAL

I, Ramon E. O'Neill, a plaintiff appeals under 28 USC (a) from the ORDER
DENYING MOTIONS: 427-436, 438-440,443-445 &448 entered in this
adversary proceeding on the 24 day of July, 2006.

If the circuit has no bankruptcy appellate panel, I request the appeal to be
forwarded to the federal district court judge in the district in which this
bankruptcy court is located.

July 29, 2006
*Ramon E. O'Neill*
Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866



IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>) |
| _____ | ) Case No. 90-932<br>) |
| Ramon E. O'Neill<br>Identified of the class<br>of LPP CLAIMANTS | )<br>) Adversary No. 99-412 (MFW)<br>)<br>) |
| v. | )<br>) re: Docket No. 438<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | ) re: Docket No. 451<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC.<br>Debtor | )<br>)<br>) |
| _____ | ) |

# CERTIFICATE OF SERVICE

I, Ramon E. O'Neill, certify that I am not less than 18 years of age, and that service of the NOTICE OF APPEAL was made on July 29, 2006, upon the attached service list by first class mail, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

*Ramon e o'chin*

Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, FL. 33183
Cell # (786) 252-0175
Home (305) 386-4866

Councel for Continental Airlines:
Robert Brady, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801
(302) 571-6600

Counsel for LPP Claimants:
Bruce Jamenson, Esq.
Prickett, Jones & Elliot, P.A.
1310 King Street
Wilmington, DE 19899
(302) 888-6582

United States Bankruptcy Court
District of Delaware
824 North Market Street 3rd floor
Wilmington, DE 19801- 3024
(302) 252-2900

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>) |
| | )<br>) Case No. 90-932 |
| Ramon E. O'Neill<br>Identified member of the class<br>of LPP CLAIMANTS, | )<br>)<br>) Adversary No. 99-412 (MFW)<br>)<br>) re: Docket No. 453 |
| v. | )<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | )<br>)<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC.<br>Debtor | )<br>)<br>)<br>) |

## DESIGNATION OF DOCUMENTS

I, Ramon E. O'Neill, in accordance with Bankruptcy Rule 8006 petition this

Court, the debtor and the class representatives the following records to be

produced and forwarded for this appeal.

1.     Notification to this Court by the debtor of the existence during these

bankruptcy proceedings of the Continental/People Express arbitration.

2.     Motions to this Court by the debtor, under section 11 USC § 362

(Automatic Stay) permitting the debtor to continue the Continental/People Express arbitration.

3.    Orders rendered by this Court, under section 11 USC § 362 (Automatic Stay) permitting the debtor to continue the Continental/People Express arbitration.

4.    Motions to this Court by the debtor requesting relief under the First and/or second reorganization plan of the Continental/People Express arbitration award.

5.    Orders rendered by this Court granting relief under the first and/or second reorganization plan of the Continental/People Express arbitration award.

6.    Ms. Edna Smith affidavit, docket # 72, in this adversary proceeding 99-412.

7.    The debtor to submit the list of the 5000 pilot's names who filed timely claims as referred to in Ms. Edna Smith's affidavit, paragraph 3(a).

8.    The debtor to submit the "ALPA Settlement" pilot's names as referred to on Ms. Brenda Smith affidavit, paragraph 3(c).

9.    This court's order granting the "ALPA Settlement".

2

10. The debtor to submit the "Addington Group" pilot's names as referred to in Ms. Edna Smith affidavit, paragraph 3(d).

11. This court's order granting the "Addington Group" withdrawal of their proof of claims.

12. The debtor to submit the Eastern pilot's names as referred to on the transcript held on January 31, 2002 (Fairness hearing), merged into Continental seniority list under the settlement mention by debtor during the hearing.

13. The debtor to submit the motions requesting relief from the reorganization plan for the approval of the settlement by this court to merge Eastern pilots into Continental seniority list, not listed under the "ALPA Settlement" and/or the "Addington Group".

14. The order of this court granting relief from the reorganization plan for the approval of the settlement permitting the merger of Eastern pilots into Continental seniority list, not listed under the "ALPA Settlement" and/or the "Addington Group".

15. The names of the Eastern pilots merged into Continental seniority list, not listed under the "ALPA Settlement" and/or the "Addington Group".

16. The debtor, as owner of Eastern since February 1986, and designated record keeper of all Eastern pilots records, to submit all Eastern pilots

3

seniority lists since the acquisition of Eastern (February 1986) till date of

shutdown (January 1991).

17.    JAMES BALDRIDGE, WILLIAM MANN and LARRY DUNN class

Representatives' affidavits, docket # 70-2 through 70-5 in this adversary

proceedings 99-412.

18.    JAMES BALDRIDGE, WILLIAM MANN and LARRY DUNN class

representatives consistent with the following statements in their affidavits

page 4 and 5:

*b. "identifying and maintaining, on a current basis, data regarding the
identification and location of persons who have become Class Members;"*

*k. "participating in preparing for and attending National Mediation Board
proceedings"*

to submit the official November 1990 Eastern Master Seniority list and all

Eastern Master Seniority lists obtained for the purpose of preparing for the

arbitration.

19.    JAMES BALDRIDGE, WILLIAM MANN and LARRY DUNN as class

representatives and directors of Eastern Pilots for Fairness to submit all

letters regarding fund raising for the litigations involving Continental and

the pending arbitration.

20.    JAMES BALDRIDGE, WILLIAM MANN and LARRY DUNN as class

representatives and directors of Eastern Pilots for Fairness to submit all the

4

financing involved for this litigation including contracts with attorneys,
accountants, pilots names, data upkeep and any other contracts with
individuals or entities that were retained or contracted related to this
arbitration litigation and this adversary proceeding.

21.    A clarification statement from this court regarding the rights of the
Eastern pilots not listed on Exhibit A and/or B of the settlement agreement.
Specifically I'm referring to page 20 and 21 of July 21, 2006 hearing.

MR. INMAN: Brownie Inman.

THE COURT: Okay.

MR. INMAN: And I have -- it's right in the record that there's 2,000 that could have been
available. But I -- it's in the record. We can go right to it right now and end this myth just quickly. Edna
Smith admits in her deposition 5,000. She said she started working. She eliminated the 2,700 of the
Continental Airlines and Eastern settlements, and the 300 of the -- what was it -- the -- pardon me.

THE COURT: The Alpha?

MR. INMAN: Addington Group.

THE COURT: Addington Group.

MR. INMAN: That's 3,000 people. She started with 5, ended up with 3. I mean she
started with 5, eliminated 3. That's 2,000 people. It's right in the record, right here, Your Honor. We can -
- in the document -- in the Court records. I'm not -- I can do it very easily. However, even if I do do it, it
doesn't matter, because you approved the -- if you'll remember the settlement, you approved Appendix A.
That was the list you started with. Appendix A was specific names. I think about 560 people. And you
had to be on Appendix A. And there was no option of expanding Appendix A. It was never in your Order
to expand Appendix A. You said that they had to be on Appendix A, with no mechanisms to expand

5

Appendix A. So you defined the Class as 560 people. And anybody that's not on it is entitled to their appeal rights to arbitration.

THE COURT: Okay. And that's what you're stuck with.

MR. INMAN: Okay. Excuse me.

22.    Motion requesting the addition of newly identify class members dated May 17, 2002.

23.    Order granting the addition of newly identify class members.

24.    A clarification statement from this court regarding the willingness of the court to re-litigate Exhibit A of the settlement agreement after the claims due date of April 02, 2002.

25.    A clarification statement from this court regarding the willingness of the court to re-litigate Exhibit A and add Exhibit B on May 17, 2002.

26.    A clarification statement from this court regarding the certification of the class composition and its relation to the settlement.

Please forward all these records to the District Court.

I reserve the right to expand upon this request as seen fit and as requested by the District Court.

August 27, 2006

*Ramon E. O'Neill*
Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866

6

# EXHIBIT

# X

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>) |
| _____ | ) Case No. 90-932<br>) |
| J. Trigg Adams<br>Identified member of the class<br>of LPP CLAIMANTS, | )<br>)<br>) Adversary No. 99-412 (MFW)<br>) |
| | ) re: Docket No. 443<br>) |
| v. | ) re: Docket No. 451<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | )<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC.<br>Debtor | )<br>)<br>)<br>) |
| _____ | ) |

NOTICE OF APPEAL

I, J. Trigg Adams, a plaintiff, appeal under 28 USC (a) from the ORDER
DENYING MOTIONS: 427-436, 438-440, 443-445 &448 entered in this
adversary proceeding on the 24 day of July, 2006.

If the circuit has no bankruptcy appellate panel, I request the appeal to be
forwarded to the federal district court judge in the district in which this
bankruptcy court is located.

July 31, 2006

J. Trigg Adams, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 665-8904

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>) |
| _____ | ) Case No. 90-932<br>) |
| J. Trigg Adams<br>Identified of the class<br>of LPP CLAIMANTS | )<br>)<br>) Adversary No. 99-412 (MFW)<br>)<br>)<br>) |
| v. | ) re: Docket No. 443<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | ) re: Docket No. 451<br>)<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC.<br>Debtor | )<br>)<br>) |
| _____ | ) |

# CERTIFICATE OF SERVICE

I, J. Trigg Adams, certify that I am not less than 18 years of age, and that service of the NOTICE OF APPEAL was made on July 31, 2006, upon the attached service list by first class mail, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

J. Trigg Adams, *Pro Se*
3824 park Ave.
Miami, FL. 33133
Phone (305) 665-8904

Councel for Continental Airlines:
Robert Brady, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801
(302) 571-6600

Counsel for LPP Claimants:
Bruce Jamenson, Esq.
Prickett, Jones & Elliot, P.A.
1310 King Street
Wilmington, DE 19899
(302) 888-6532

United States Bankruptcy Court
District of Delaware
824 North Market Street 3rd floor
Wilmington, DE 19801- 3024
(302) 252-2900



IN THE UNITED STATES BANKRUPTCY COURT F I L E D
DISTRICT OF DELAWARE

2006 SEP -8  AM 10: 51

| | |
|---|---|
| In re | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) U.S. BANKRUPTCY COURT, |
| | ) DISTRICT OF DELAWARE |
| _____ | ) Case No. 90-932 |
| | ) |
| J. Trigg Adams | ) |
| Identified member of the class | ) Adversary No. 99-412 (MFW) |
| of LPP CLAIMANTS, | ) |
| | ) re: Docket No. 456 |
| | ) |
| v. | ) |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN. | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| Debtor | ) |
| | ) |
| _____ | ) |

## DESIGNATION OF DOCUMENTS

I, J. Trigg Adams, in accordance with Bankruptcy Rule 8006 petition this

Court, the debtor and the class representatives the following records to be

produced and forwarded for this appeal:


1. **Stipulation And Order On Motion To Intervene**, adversary Proceeding A-99-412
of February 3, 2000.

2. **Objection To The Proposed Amendment To February 3, 2001 Order Granting
Class Certification**, adversary proceeding A-99-412 of November 3, 2001.

3. **ADDENDUM TO MEMORANDUM BRIEF ON MOTION FOR FINAL
SUMMARY JUDGEMENT**, adversary proceeding A-99-412, August, 2000.

3.    **ADDENDUM TO MEMORANDUM BRIEF ON MOTION FOR FINAL SUMMARY JUDGEMENT**, adversary proceeding A-99-412, August, 2000.

4.  List of LPP Claimants to which Continental Airlines attested in this Court it had mailed copies of its SECOND REORGANIZATION PLAN.

5.  Clarification by the judge as to why she made the statement in the Motion To Reopen hearing on July 21, 2006, "Captain Adams, I decided the list was correct, after hearing all the arguments that were made", over the objections in the record at the original Settlement Hearing and in the Motion To Reopen Hearing, that the lists submitted were fraudulently deficient, without any evidentiary argument of their inaccuracy at either time.

6.  Clarification by the judge as to why any and all objections throughout all these proceedings as to the inaccurate and fraudulent nature of the submissions of the Class Counsel have been pointedly ignored instead of being investigated when brought up.


September 5, 2006

J. Trigg Adams, *pro se*
3824 Park Ave.
Miami, FL 33133
305-665-8904

# EXHIBIT

# Y

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>) |
| | ) Case No. 90-932<br>) |
| Brownie N Inman<br>Identified member of the class<br>of LPP CLAIMANTS, | )<br>) Adversary No. 99-412 (MFW)<br>)<br>) re: Docket No. 432<br>) |
| v. | ) re: Docket No. 451 |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | )<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC,<br>Debtor | )<br>)<br>)<br>) |

**NOTICE OF APPEAL**

I, Brownie N. Inman , a plaintiff appeals under 28 USC (a) from the ORDER DENYING MOTIONS: 427-436, 438-440,443-445 &448 entered in this adversary proceeding on the 24 day of July, 2006.

If the circuit has no bankruptcy appellate panel, I request the appeal to be forwarded to the federal district court judge in the district in which this bankruptcy court is located.

July 29, 2006

Brownie N Inman, *Pro Se*
18905 SW 128 Ct.
Miami, Fl. 33177
(305) 2546648

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

2006 SEP -6   AM 10: 53

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>)<br>) Case No. 90-932<br>) |
| Brownie N Inman<br>Identified member of the class<br>of LPP CLAIMANTS, | ) Adversary No. 99-412 (MFW)<br>)<br>) re: Docket No. 454<br>) |
| v. | ) Appeal No. 90-00932<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS,<br><br>and<br><br>CONTINENTAL AIRLINES, INC.<br>Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DESIGNATION OF DOCUMENTS

I, Brownie N Inman, in accordance with Bankruptcy Rule 8006 petition this

Court, the debtor and the class representatives the following records to be

produced and forwarded for this appeal.

1.     Request Continental produce the Ms. Edna Smith affidavit, docket #

72, in the adversary proceeding 99-412, page 2, para 3 (a) testifies of 5000

proofs of LPP claims.  Please forward those 5000 names, alphabetically or in

seniority order.  Furthermore, in the same affidavit Edna Smith testifies that

she makes a list to be used to reconcile with Class Counsel's submissions. Please produce the list she used.

2.   Adversary Proceeding A-99-412, Page 4, requires eligible pilots to be "members of Eastern's flight deck collective bargaining unit". Request Continental provide the names of those pilots who were members of the flight deck collective bargaining unit who were active at the date of shutdown.

3.   Adversary Proceeding No A-99-412, Page 5, para 6, Class Counsel discovered 248 persons not previously identified. Class Representatives should produce any documentation to substantiate this claim. Additionally, the B list (those 248) should be produced by Class Representatives, as well as documentation as to those who were actually contacted and who actually received the settlement, by name, if any.

4.   Adversary Proceeding No 99-412, page 4, para 3. Class Representatives should provide the Motion to Clarify and all supporting documentation which led to "newhire" pilots being eliminated from the Class Settlement. "Proofs of Claim filed by ALPA for enforcement of LPPs against CAL excluded the "newhire" pilots etc etc" Continental should provide an example of those "Proofs of Claim".

5.   The Class was certified on Feb 3, 2000. Seventeen months later the

2

Court Granted the Class Settlement by requiring LPP Claimants be on the
Nov 1990 Alphabetical Seniority List. Adversary Proceeding A-99-412,
page 4, para 4 keeps referring to a Seniority List that has never existed, ie.,
the Nov 1990 Alphabetical List. Request Continental legal, Class Counsel,
and Class Representatives provide any documentation why they have
continued to pretend there is such a list when one has never existed, and
why, as officers of the court, they induced a trusting Bankruptcy Judge,
relying on their integrity to sign a ridiculous settlement order (using that
fantasy list) that had no basis in objective reality.

6. Adversary Proceeding A-99-412 page 6, first sentence, "the entire Nov
1990 Seniority List consisting of 3,387 persons". Class Representatives
should provide that list.

7. Numerous "newhires" such as Brownie Inman, Peter Neumann, and
Terry Philips received a settlement offering while simultaneously the entire
subset of "newhires" was deleted as per Adversary Proceeding No A-99-
412. Class Counsel and Class Representatives should provide
documentation why this was possible.

8 In October 1998 Class Counsel and Class Representatives negotiated an
agreement with Continental which allowed them to litigate on behalf of all
LPP Claimants etc etc. Class Representatives should provide any

3

documentation to this agreement and if a Class Action was also agreed to at that time.

9   Class Representatives should provide any documentation that they communicated to the Court that they had access to approximately two million dollars provided by the members of Eastern Pilots for Fairness, which was used to pay their expenses and the legal costs of the Class Counsel.

Sept 2, 2006

Brownie N Inman, *Pro Se*
18905 SW 128 Ct
Miami Fl 33177
3052546648
3058015227

4

# EXHIBIT

# Z

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., et. al | ) |
| | ) |
| Debtor | ) |
| _____ | ) Case No. 90-932 & 90-933 (MFW) |
| | ) |
| **Ramon E. O'Neill** | ) Civil Action No. 06-568 (SLR) |
| | ) |
| Appellant | ) |
| v. | ) |
| | ) |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN. | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| | ) |
| Appellees, | ) |
| | ) |
| _____ | ) |

# MOTION OF OBJECTION FOR AN ORDER EXCUSING THE PARTIES FROM THE MEDIATION REQUIREMENT OF THIS COURT'S JULY 23, 2004 STANDING ORDER

1.     I, Ramon E. O'Neill, object to  the MOTION FOR AN

ORDER EXCUSING THE PARTIES FROM THE MEDIATION

REQUIREMENT OF THIS COURT'S JULY 23, 2004 STANDING

ORDER for the following reasons:

    A.     This Court's  July 23, 2004 order,  demands mandatory

mediation procedures shall apply to all appeals to this Court from the Bankruptcy Court.

B.    Contrary to Continental's representation, I am not re-litigating this case. This Court and the Appellate Court upheld the January 31, 2002 Final Order and Judgement issued by the Bankruptcy Court. I and others petition the Bankruptcy Court to reopen the case (No. 99-412) and compel compliance by both parties with the January 31, 2002 Final Order and Judgement.

C.    The Bankruptcy Court, Continental, and the Class Representatives are totally ignoring that all 5000 Eastern Pilots had filed a timely proof of claim in the bankruptcy proceedings. This is reflected in Continental's  affidavit dated January 10, 2002, Docket No. 72, James Baldridge, *et al* ., v. Continental Airlines Holdings, Inc., *et al.* , <u>Adv. Proc. No. 99-412.</u> (Exhibit 1)

> (a)    I and those under my direct supervision and control reviewed the Official Claims Register maintained in these bankruptcy cases and identified any proof of claim that may have been filed by a former employee of Eastern Airlines who claimed they were entitled to the benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with Continental Airlines Holdings, Inc. This resulted in an initial list of more than 5,000 claims.

D.    The Bankruptcy Court, Continental, and the Class

Representatives are totally ignoring the Appellate Court's opinion

(Exhibit 7)which states:

*"To the extent O'Neill argues that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definitions to file a claim by April 3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy Court."*

The Appellate Court opinion recognizes the composition of the class

presented on January 31, 2002 Final Order and Judgment as described in the

class certification. The Appellate Court also recognized that in a Railway

Labor Act arbitration all pilots will be merged, therefore in lieu of an

arbitration award **all the pilots** are subject to the settlement agreement.

No jobs at Continental, just stock and monies.

What the Appellate Court as well as this Court did not know was that

as my appeal was progressing the class was being fraudulently redefined so

the new definition enabled the Class Representatives and Continental to

cover up their lies.

This Appeal is about how Class Representatives and Continental have

made every effort to defraud the class, it is not about the composition of the

class. This appeal deals with the following:

<u>1.    18 U.S.C. § 152</u>.

**§ 152. Concealment of assets; false oaths and claims; bribery**

**(2)** knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

**(3)** knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11

**(8)** after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor; or

**(9)** after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor,
shall be fined under this title, imprisoned not more than 5 years, or both.


## 2.    18 U.S.C. § 157.

### § 157. Bankruptcy fraud

A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
**(1)** files a petition under title 11;
**(2)** files a document in a proceeding under title 11; or
**(3)** makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
shall be fined under this title, imprisoned not more than 5 years, or both.

E.    This is a case of ethics, judicial integrity and truth. The so call

November 1990 Alphabetical Seniority List submitted by Continental and

Class Representatives to the Bankruptcy Court is fraudulent.

The unrejected Eastern Airlines Collectively Bargained Agreement section 20- Pilots'System Seniority List reads as follows: (See Exhibit 2)

**A.** *Eastern shall periodically compile a list of names of all pilots, whether active or inactive, arranged in order of their seniority number as outlined in Paragraph B below. Such list shall be known as the Pilots' System Seniority List.*

**B.** *The Pilots' System Seniority List shall consist of the seniority number, name and seniority date of all pilots, arranged in the same order as provided in the Agreement respecting merger of Pilots' Seniority List of Colonial Airlines, Inc., and Eastern Air Lines, Inc., signed on the 10th day of March 1956, and as it has been further arranged by the addition of pilots thereto as a result of the Eastern and Mackey merger and the Caribbean Atlantic Airlines, Inc., (Caribair) acquisition, and the Pilots' System Seniority List shall also consist of the seniority number, name and seniority date of all pilots employed or added to the list on or after the 10th of March 1956, arranged in order of their seniority date or numbers in accordance with the provisions of Section 18 of this Agreement.*

In simple words the so called November 1990 Alphabetical Seniority List submitted by Continental and Class Representatives never existed. The so called November 1990 Alphabetical Seniority List never followed the guidelines set forth in the unrejected Eastern Air Lines collectively bargained agreement as described above.  That is the reason why both parties kept amending the list, redefining and modifying the composition of the class as seen fit during my the appeals.

**In this country this is called fraudulent documents, intentionally produced to defraud others, punishable as a crime.**

F.     This Court should also be aware of that very first section of the unrejected Eastern Airlines Collectively Bargained Agreement states:

## SECTION 1-RECOGNITION AND SCOPE

*A.     The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) employed by Eastern have designated the Association to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions <u>covering all pilots in the employ of Eastern</u> in accordance with the provisions of the Railway Labor Act, as amended.* (See Exhibit 2).

In simple words the collective bargaining unit represented all pilots, therefore; they are **<u>members of Eastern's flight deck collective bargaining unit.</u>**

G.     Continental and Class Representatives have had a copy of the unrejected Eastern Airlines Collectively Bargained Agreement since February 23 1986, all parties are fully aware of the obligations contained within the collective bargained agreement.

H.     Continental, and the Class Representatives participated in Bankruptcy Court proceedings commencing on April 25, 2002 , with a final order granting the motion to add newly identified former EAL pilots as members of the class and as well as deleting other pilots by redefining the composition of the class. The Bankruptcy Court ruled on June 14, 2002.

The mechanism by which eligible pilots could have exercised their claim had been shutdown from the very beginning of the settlement agreement dispute when Continental and Class Representatives omitted their names and refused to fund their claims. Continental and Class Representatives when forced by our appeals addressed the omitted pilots names covered up their lies, and redefined the class to be pilots in the March 03, 1989 Eastern Pilots Seniority List **members of Eastern's flight deck collective bargaining unit** instead of the November 1990 Eastern Pilots Seniority List as defined in the class certification and settlement agreement.

This is reflected in Class Representatives' motion adding newly identified former EAL pilots as members of the class is dated April 25, 2002, Docket No. 169. Continental's objection to Class Representatives' motion is dated June 7, 2002, Docket No. 257. Class Representatives' reply to Continental's objection is dated June 12, 2002, Docket No. 290. The Bankruptcy Court order granting the motion to add names to the class dated June 14, 2002, Docket No. 291. James Baldridge, *et al* ., v. Continental Airlines Holdings, Inc., *et al.* , <u>Adv. Proc. No. 99-412</u>. (Exhibit 3, 4, 5 & 6)

I.    Class Representatives' reply dated June 12, 2002, Docket No. 290, (Exhibit 5) and the Bankruptcy Court order granting the motion to

add names to the class dated June 14, 2002, Docket No. 291 (Exhibit 6) excluded the same pilots which the Appellate Court in its March 5, 2005 opinion (Exhibit 7) stated had the right to participate in the settlement agreement. The Appellate Court is in agreement that all pilots are covered by a Collective Bargaining Agreement are part of the collective bargaining unit.

J.     Continental relies on the following paragraph from the March 5, 2005 Appellate Court's opinion, (Exhibit 7) page 8 paragraph 1.

*"To the extent O'Neill argues that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definitions to file a claim by April 3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy Court."*

It is clear that the Appellate Court recognized the deleted pilots as part of the class and these deleted pilots should have been allowed to participate on the settlement agreement. Neither Class Representatives nor Class Counsel made any attempts to obtain funding for these deleted pilots after these pilots had been reinstated by the Appellate Court opinion of March 5, 2005. But that is not surprising considering the Class Representatives and Class Counsel deleted the pilots. Class Representatives and Class Counsel had perjured themselves on behalf of Continental and participated in these pilots' deletion process from the very begining.

K.    Realizing this is an observant Court, I fully expect this Court to carefully reflect and analyze the evidence submitted as exhibits. This observant Court will notice that all evidence submitted, with the exception of Exhibit 2 are Bankruptcy Court dockets filed either by Continental or Class Representatives. All the documents with the exception of Court orders, opinions and Exhibit 2 are fraudulent.

The least fraudulent of all documents is Edna Smith (Continental's affidavit) dated January 10, 2002, Docket No. 72. Mrs. Smith tells the truth concerning the amount of claimants which coincides with the total numbers of pilots employed at Eastern on November 1990 , besides this statement, the statement regarding her employer and her job description, the rest of the document is fraudulent. All other documents presented in the exhibits continues the perjury with a clear intent to defraud the Class members.

L.    Fraudulent documents have been submitted by Continental and Class Representatives through the settlement agreement process and litigation. This Court as well as other Courts, has made rulings based on Continental and Class Representatives fraudulent documents. Commencing, as previously demonstrated, with the November 1990 Alphabetical Seniority List which was part of Docket No.57, Stipulation and Agreement of

Compromise and Settlement, Exhibit B-1, dated October 16, 2001

(Exhibit 8) and culminating with Docket No. 290, Reply to Defendants'

Objection to Motion of Class Action Plaintiffs for Finding that Newly

Identified Former EAL Pilots are members of the Class. Dated, June 12,

2002, (Exhibit 5).

M.    The truth is that the Continental affidavit acknowledges the

5000 claims which coincide with the Eastern pilots employed on November

1990, Continental's affidavit dated January 10, 2002, Docket No. 72,

paragraph 3(a).

(a)    I and those under my direct supervision and control reviewed the Official

Claims Register maintained in these bankruptcy cases and identified any proof of claim that may

have been filed by a former employee of Eastern Airlines who claimed they were entitled to the

benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots

Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with

Continental Airlines Holdings, Inc. This resulted in an initial list of more than 5,000 claims.

N.    The truth is that if some of us had not appealed the January

31, 2002 Bankruptcy Court order, the Class Representatives and Continental

would have never brought forward some of the intentionally deleted pilot

names. But then again, Class Representatives and Continental lied when

they limited the class **members of Eastern's flight deck collective**

**bargaining unit,** this is not the definition on the class certification or the

settlement agreement. Ironically the Eastern Collective Bargained

Agreement stipulates *__covering all pilots in the employ of Eastern in__*

*__accordance with the provisions of the Railway Labor Act__*. In simple words

ALPA the collective bargaining unit represented all Eastern pilots, therefore

all Eastern pilots were __members of Eastern's flight deck collective__

__bargaining unit.__

Class Representatives' reply to Continental's objection is dated

June 12, 2002, Docket No. 290 (Exhibit 5) redefines the class to conform

Continentals' fraudulent endevors.

### 4. The Class Definition Expressly Includes Persons Whose Claims Were Filed by ALPA

CAL contends that the substance of the Plaintiffs' Motion to Clarify was "whether former EAL pilots covered under the ALPA proof of claim should be part of the class." This is simply not true.

The Motion for Clarification was brought because the class Action Plaintiffs contended that ALPA's proof of claim covered all Eastern pilots, regardless of whether or not they were members of the Union, and that the same thus applied to the new hires. CAL disagreed. After carefully reviewing ALPA's proof of claim with CAL's attorneys, the Plaintiffs agreed that because the proof of claim was expressly limited to ALPA members, that it would only be effective for ALPA members and that it would not apply to new hires. Consistent with this agreement, CAL and the Plaintiffs stipulated before the Court for the entry of its July 10, 2001 Order Granting Class Action Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List and that they be "*members of Eastern's flight deck collective bargaining unit*" rather than simply former EAL flight deck employees "who claim they are entitled to the benefits of the collective bargaining agreement (the "CBA") between Eastern Airlines and the Air Line Pilots Association." This clarification comported with the parties' agreement that in order to participate in the Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims or have claims filed for them would be excluded from the class as they were not part of the EAL pilots who were members of ALPA and they did not individually file timely claims for enforcement of the LPPs in these proceedings. The corollary to this is that this Court's July 10, 2001 Order expressly includes the newly identified class members listed on Exhibit B as every one of them were ALPA members on the active seniority list

Adversary Proceeding
No. A-99-412
Class Action

as of the stipulated date of merger who neither accepted the ALPA/CAL settlement or

withdrew their claim in bankruptcy[3].  Accordingly, the persons identified on Exhibit B are

class members entitled to participate in the settlement.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to

find that the newly identified former EAL pilots identified on Exhibit B are members of

the class; to enter an order requiring CAL to fund the settlement for the new class

members forthwith; to enter an order providing for a 60 day extension of time from the

date of the hearing to provide notice to the newly identified former EAL pilots; and for

approval of the form of notice appended to the Motion.

Dated: June 12,2002

TRALINS AND ASSOCIATES
Attorneys for Class Plaintiffs
2930 One Biscayne Tower
2 S. Biscayne Blvd., Suite 2930
Miami, FL 33131
Telephone: 305-374-330

By:  Myles J. Tralins by Bred (James)
Myles J. Tralins
Florida Bar No. 139543

-and-

---

[3]    A substantial majority of the 400 persons in the Addington group who
withdrew their claims pursuant to their stipulation with CAL and this Court's Order
allowing them to do so, withdrew claims filed for them by ALPA, not claims they filed on
their own. If CAL's position here is accepted, they had no claims to withdraw as they
were "lost" when ALPA settled and withdrew its claim.

O.    The truth is that Continental has spent millions of dollars

avoiding any proceedings, which will expose them in discovery, ie.

arbitration . Continental has avoided the Eastern arbitration since 1986.

Continental used the bankruptcy proceedings in order to avoid arbitration and lost. Then they found three corruptible former Eastern pilots, the Class Representatives and a now deceased corruptible attorney to keep them away from arbitration.

P.    This Court and the Appellate Court both reaffirmed the settlement agreement award was fair in lieu of an arbitration award. Merger arbitration under the Railway Labor Act dictates that all pilots are included in the process. Continental has never asked in the Re-organizational Plan for relief from the Bankruptcy Court from the obligations it has to those pilots it has so deceitfully deleted from the settlement agreement. The Appellate Court has recognized all pilots that fit the following definition under the settlement agreement stipulation submitted by Class Representative dated October 16, 2001, Docket No. 57, Exhibit B-1. (Exhibit 8)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | } | |
| | } | Case No. 90-932 |
| CONTINENTAL AIRLINES, INC., et. al., | } | Chapter 11 |
| | } | |
| Debtors | } | |
| ──────────────────── | } | |
| | } | |
| JAMES BALDRIDGE, WILLIAM MANN, | } | |
| and LARRY DUNN, individually, and | } | |
| as representatives of a class of persons | } | |
| similarly situated who are referred to as | } | |
| the LPP CLAIMANTS, | } | |
| | } | |
| Plaintiffs, | } | Adversary Proceeding |
| v. | } | No. A-99-412 |
| | } | Class Action |
| CONTINENTAL AIRLINES HOLDINGS, | } | |
| INC., CONTINENTAL AIRLINES, | } | |
| INC. and SYSTEM ONE HOLDINGS, INC. | } | |
| | } | |
| Defendants. | } | |
| ──────────────────── | } | |

**NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF CLASS
ACTION AND PROPOSED SETTLEMENT AND SETTLEMENT HEARING**

**TO ALL PERSONS WHO:**

**(1)  ARE EASTERN AIRLINES FORMER FLIGHT DECK EMPLOYEES**

**IDENTIFIED ON EASTERN AIRLINES' NOVEMBER 1990**

**ALPHABETICAL SENIORITY LIST;**


**(2)  WHO CLAIM THEY ARE ENTITLED TO THE BENEFITS OF THE**

**COLLECTIVE BARGAINING AGREEMENT BETWEEN EASTERN**

AIRLINES AND THE AIR LINE PILOTS ASSOCIATION IN EFFECT AT
THE TIME THAT EASTERN AIRLINES ALLEGEDLY MERGED WITH
CONTINENTAL AIRLINES HOLDINGS, INC.;

(3)  WHO FILED A TIMELY CLAIM IN THE ABOVE-ENTITLED
REORGANIZATION OF CONTINENTAL AIRLINES, INC., CASE NO.
90-932 FOR ENFORCEMENT OF THE LABOR PROTECTION
PRIVILEGES EMBODIED IN THE EASTERN AIRLINES COLLECTIVE
BARGAINING AGREEMENT EITHER INDIVIDUALLY OR AS A
MEMBER OF THE AIR LINE PILOTS ASSOCIATION OR AS A NAMED
LABOR PROTECTIVE PROVISION CLAIMANT REPRESENTED BY
CLASS COUNSEL IN THE REORGANIZATION AND WHO ARE
IDENTIFIED ON EXHIBIT A ATTACHED TO THIS NOTICE;

*EXCEPT* (1) THOSE PERSONS WHO SETTLED, WAIVED OR RELINQUISHED HIS
OR HER LPP CLAIM WITH CONTINENTAL AND (2) THOSE PERSONS WHO
MOVED TO INTERVENE IN THIS CASE, PURSUANT TO THE "MOTION TO
INTERVENE IN ADVERSARY PROCEEDING" FILED NOVEMBER 11, 1999 WHO
FILED A NOTICE OF WITHDRAWAL OF HIS OR HER PROOF OF CLAIM IN THIS
REORGANIZATION WITH THE CLERK OF THE BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE ON OR BEFORE APRIL 15, 2000.

-2-

## CONCLUSION

The irrefutable evidence demonstrates the clear intent to defraud the select members of the Class. I expect this Court to act accordingly. Continental and Class Representatives violated the confidence of the Courts, they clearly violated **18 U.S.C. § 152 and § 157.**

## PETITION

A.    This Court's July 23, 2004 order, demanding mandatory mediation procedures which applies to all appeals to this Court from the Bankruptcy Court be conducted.

B.    That  Class Representatives, Baldridge, Mann and Dunn be compelled to participate in the mediation process because they engaged in the preparation for arbitration, certification of the class, negotiation of the settlement agreement, deletion of members of the class and failed to comply with the settlement agreement stipulations of notification to pilots added to the settlement agreement, specially when they were compensated above the regular award for this endeavor.

C.    That Class Representative Counsel be excused from the mediation process because he and his firm are not  receiving compensation therefore he has no incentive to represent the class properly.

Respectfully submitted,

Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866

## CERTIFICATE OF SERVICE

I, Joseph M. Barry, Esquire, hereby certify that I am not less than 18 years of age and that on September 29, 2006, I caused a copy of the foregoing document to be served on the following parties by Federal Express or Hand Delivery, as indicated:

### VIA FEDERAL EXPRESS

Mr. Brownie N. Inman, pro se
18905 SW 128 Ct.
Miami, FL 33177

Mr. Ramon E. O'Neill, pro se
7424 SW 129 Ct.
Miami, FL 33183

Mr. J. Trigg Adams, pro se
3824 Park Avenue
Miami, FL 33133

### VIA HAND DELIVERY

Bruce E. Jameson, Esquire
Prickett Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Counsel for James Baldridge, *et al.*

Joseph M. Barry (Delaware Bar No. 4221)

Dated: September 29, 2006