## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., et. al | ) Chapter 11<br>)<br>) |
| Debtor | )<br>)<br>) Case No. 90-932 & 90-933 (MFW) |
| **Ramon E. O'Neill** | )<br>) Civil Action No. 06-568 (SLR)<br>) |
| Appellant<br>       v. | )<br>)<br>) |
| JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS, | )<br>)<br>) |
| and | )<br>) |
| CONTINENTAL AIRLINES, INC. | )<br>) |
| Appellees, | )<br>)<br>) |

SEP 20 2006

## MOTION OF OBJECTION FOR AN ORDER EXCUSING THE PARTIES FROM THE MEDIATION REQUIREMENT OF THIS COURT'S JULY 23, 2004 STANDING ORDER

1.     I, Ramon E. O'Neill, object to  the MOTION FOR AN

ORDER EXCUSING THE PARTIES FROM THE MEDIATION

REQUIREMENT OF THIS COURT'S JULY 23, 2004 STANDING

ORDER for the following reasons:

       A.     This Court's  July 23, 2004 order,  demands mandatory

mediation procedures shall apply to all appeals to this Court from the Bankruptcy Court.

B.    Contrary to Continental's representation, I am not re-litigating this case. This Court and the Appellate Court upheld the January 31, 2002 Final Order and Judgement issued by the Bankruptcy Court. I and others petition the Bankruptcy Court to reopen the case (No. 99-412) and compel compliance by both parties with the January 31, 2002 Final Order and Judgement.

C.    The Bankruptcy Court, Continental, and the Class Representatives are totally ignoring that all 5000 Eastern Pilots had filed a timely proof of claim in the bankruptcy proceedings. This is reflected in Continental's affidavit dated January 10, 2002, Docket No. 72, James Baldridge, *et al* ., v. Continental Airlines Holdings, Inc., *et al.* , Adv. Proc. No. 99-412. (Exhibit 1)

(a)    I and those under my direct supervision and control reviewed the Official Claims Register maintained in these bankruptcy cases and identified any proof of claim that may have been filed by a former employee of Eastern Airlines who claimed they were entitled to the benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with Continental Airlines Holdings, Inc. This resulted in an initial list of more than 5,000 claims.

D.    The Bankruptcy Court, Continental, and the Class

Representatives are totally ignoring the Appellate Court's opinion

(Exhibit 7)which states:

*"To the extent O'Neill argues that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definitions to file a claim by April 3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy Court."*

The Appellate Court opinion recognizes the composition of the class presented on January 31, 2002 Final Order and Judgment as described in the class certification. The Appellate Court also recognized that in a Railway Labor Act arbitration all pilots will be merged, therefore in lieu of an arbitration award **all the pilots** are subject to the settlement agreement. No jobs at Continental, just stock and monies.

What the Appellate Court as well as this Court did not know was that as my appeal was progressing the class was being fraudulently redefined so the new definition enabled the Class Representatives and Continental to cover up their lies.

This Appeal is about how Class Representatives and Continental have made every effort to defraud the class, it is  not about the composition of the class. This appeal deals with the following:

### 1.    18 U.S.C. § 152.

**§ 152. Concealment of assets; false oaths and claims; bribery**

**(2)** knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

**(3)** knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11

**(8)** after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor; or

**(9)** after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor,
shall be fined under this title, imprisoned not more than 5 years, or both.


## 2.    18 U.S.C. § 157.

### § 157. Bankruptcy fraud

A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
**(1)** files a petition under title 11;
**(2)** files a document in a proceeding under title 11; or
**(3)** makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
shall be fined under this title, imprisoned not more than 5 years, or both.


E.    This is a case of ethics, judicial integrity and truth. The so call

November 1990 Alphabetical Seniority List submitted by Continental and

Class Representatives to the Bankruptcy Court is fraudulent.

The unrejected Eastern Airlines Collectively Bargained Agreement

section 20- Pilots'System Seniority List reads as follows: (See Exhibit 2)

**A.    *Eastern shall periodically compile a list of names of all pilots,
whether active or inactive, arranged in order of their seniority number as
outlined in Paragraph B below. Such list shall be known as the Pilots'
System Seniority List.***

**B.    *The Pilots' System Seniority List shall consist of the seniority
number, name and seniority date of all pilots, arranged in the same order
as provided in the Agreement respecting merger of Pilots' Seniority List of
Colonial Airlines, Inc., and Eastern Air Lines, Inc., signed on the 10th day
of March 1956, and as it has been further arranged by the addition of
pilots thereto as a result of the Eastern and Mackey merger and the
Caribbean Atlantic Airlines, Inc., (Caribair) acquisition, and the Pilots'
System Seniority List shall also consist of the seniority number, name and
seniority date of all pilots employed or added to the list on or after the 10th
of March 1956, arranged in order of their seniority date or numbers in
accordance with the provisions of Section 18 of this Agreement.***

In simple words the so called November 1990 Alphabetical Seniority

List submitted by Continental and Class Representatives never existed. The

so called November 1990 Alphabetical Seniority List never followed the

guidelines set forth in the unrejected Eastern Air Lines collectively

bargained agreement as described above.  That is the reason why both

parties kept amending the list, redefining and modifying the composition of

the class as seen fit during my the appeals.

**<u>In this country this is called fraudulent documents, intentionally
produced to defraud others, punishable as a crime.</u>**

F.     This Court should also be aware of that very first section of the

unrejected Eastern Airlines Collectively Bargained Agreement states:

### *SECTION 1-RECOGNITION AND SCOPE*

*A.     The Air Line Pilots Association, International, has furnished
to Eastern proof (including National Mediation Board Certification, Case
No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined)
employed by Eastern have designated the Association to represent them
and in their behalf negotiate and conclude an Agreement with Eastern as
to rates of pay, rules and working conditions <u>covering all pilots in the
employ of Eastern</u> in accordance with the provisions of the Railway Labor
Act, as amended.* (See Exhibit 2).

In simple words the collective bargaining unit represented all pilots,

therefore; they are **<u>members of Eastern's flight deck collective bargaining</u>**

**<u>unit.</u>**

G.     Continental and Class Representatives have had a copy of the

unrejected Eastern Airlines Collectively Bargained Agreement since

February 23 1986, all parties are fully aware of the obligations contained

within the collective bargained agreement.

H.     Continental, and the Class Representatives participated in

Bankruptcy Court proceedings commencing on April 25, 2002 , with a final

order granting the motion to add newly identified former EAL pilots as

members of the class and as well as deleting other pilots by redefining the

composition of the class. The Bankruptcy Court ruled on June 14, 2002.

The mechanism by which eligible pilots could have exercised their claim had been shutdown from the very beginning of the settlement agreement dispute when Continental and Class Representatives omitted their names and refused to fund their claims. Continental and Class Representatives when forced by our appeals addressed the omitted pilots names covered up their lies, and redefined the class to be pilots in the March 03, 1989 Eastern Pilots Seniority List **members of Eastern's flight deck collective bargaining unit** instead of the November 1990 Eastern Pilots Seniority List as defined in the class certification and settlement agreement.

This is reflected in Class Representatives' motion adding newly identified former EAL pilots as members of the class is dated April 25, 2002, Docket No. 169. Continental's objection to Class Representatives' motion is dated June 7, 2002, Docket No. 257. Class Representatives' reply to Continental's objection is dated June 12, 2002, Docket No. 290. The Bankruptcy Court order granting the motion to add names to the class dated June 14, 2002, Docket No. 291. James Baldridge, *et al* ., v. Continental Airlines Holdings, Inc., *et al.* , Adv. Proc. No. 99-412. (Exhibit 3, 4, 5 & 6)

I.    Class Representatives' reply dated June 12, 2002, Docket No. 290, (Exhibit 5) and the Bankruptcy Court order granting the motion to

add names to the class dated June 14, 2002, Docket No. 291 (Exhibit 6)

excluded the same pilots which the Appellate Court in its March 5, 2005

opinion (Exhibit 7) stated had the right to participate in the settlement

agreement. The Appellate Court is in agreement that all pilots are covered

by a Collective Bargaining Agreement are part of the collective bargaining

unit.

J.      Continental relies on the following paragraph from the

March 5, 2005 Appellate Court's opinion, (Exhibit 7) page 8 paragraph 1.

*"To the extent O'Neill argues that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definitions to file a claim by April 3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy Court."*

It is clear that the Appellate Court recognized the deleted pilots as part

of the class and these deleted pilots should have been allowed to participate

on the settlement agreement. Neither Class Representatives nor Class

Counsel made any attempts to obtain funding for these deleted pilots after

these pilots had been reinstated by the Appellate Court opinion of March 5,

2005. But that is not surprising considering the Class Representatives and

Class Counsel deleted the pilots. Class Representatives and Class Counsel

had perjured themselves on behalf of Continental and participated in these

pilots' deletion process from the very begining.

K.     Realizing this is an observant Court, I fully expect this Court to carefully reflect and analyze the evidence submitted as exhibits. This observant Court will notice that all evidence submitted, with the exception of Exhibit 2 are Bankruptcy Court dockets filed either by Continental or Class Representatives. All the documents with the exception of Court orders, opinions and Exhibit 2 are fraudulent.

The least fraudulent of all documents is Edna Smith (Continental's affidavit) dated January 10, 2002, Docket No. 72. Mrs. Smith tells the truth concerning the amount of claimants which coincides with the total numbers of pilots employed at Eastern on  November 1990 , besides this statement, the statement regarding her employer and her job description, the rest of the document is fraudulent. All other documents presented in the exhibits continues the perjury with a clear intent to defraud the Class members.

L.     Fraudulent documents have been submitted by Continental and Class Representatives through the settlement agreement process and litigation. This Court as well as other Courts, has made rulings based on Continental and Class Representatives fraudulent documents. Commencing, as previously demonstrated, with the November 1990 Alphabetical Seniority List which was part of Docket No.57, Stipulation and Agreement of

Compromise and Settlement, Exhibit B-1, dated October 16, 2001

(Exhibit 8) and culminating with Docket No. 290, Reply to Defendants'

Objection to Motion of Class Action Plaintiffs for Finding that Newly

Identified Former EAL Pilots are members of the Class. Dated, June 12,

2002, (Exhibit 5).

     M.     The truth is that the Continental affidavit acknowledges the

5000 claims which coincide with the Eastern pilots employed  on November

1990, Continental's  affidavit dated January 10, 2002, Docket No. 72,

paragraph 3(a).

          (a)     I and those under my direct supervision and control reviewed the Official
Claims Register maintained in these bankruptcy cases and identified any proof of claim that may
have been filed by a former employee of Eastern Airlines who claimed they were entitled to the
benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots
Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with
Continental Airlines Holdings. Inc.  This resulted in an initial list of more than 5.000 claims.

     N.     The truth is that if some of us had not appealed the January

31, 2002 Bankruptcy Court order, the Class Representatives and Continental

would have never brought forward some of the intentionally deleted pilot

names. But then again, Class Representatives and Continental lied when

they limited the class **members of Eastern's flight deck collective**

**bargaining unit,** this is not the definition on the class certification or the

settlement agreement. Ironically the Eastern Collective Bargained

Agreement stipulates ***covering all pilots in the employ of Eastern in***

***accordance with the provisions of the Railway Labor Act.*** In simple words

ALPA the collective bargaining unit represented all Eastern pilots, therefore

all Eastern pilots were **members of Eastern's flight deck collective**

**bargaining unit.**

Class Representatives' reply to Continental's objection is dated

June 12, 2002, Docket No. 290 (Exhibit 5) redefines the class to conform

Continentals' fraudulent endevors.

### 4. The Class Definition Expressly Includes Persons Whose Claims Were Filed by ALPA

CAL contends that the substance of the Plaintiffs' Motion to Clarify was "whether

former EAL pilots covered under the ALPA proof of claim should be part of the class."

This is simply not true.

        The Motion for Clarification was brought because the class Action Plaintiffs
contended that ALPA's proof of claim covered all Eastern pilots, regardless of whether
or not they were members of the Union, and that the same thus applied to the new
hires. CAL disagreed. After carefully reviewing ALPA's proof of claim with CAL's
attorneys, the Plaintiffs agreed that because the proof of claim was expressly limited to
ALPA members, that it would only be effective for ALPA members and that it would not
apply to new hires.   Consistent with this agreement, CAL and the Plaintiffs stipulated
before the Court for the entry of its July 10, 2001 Order Granting Class Action Plaintiffs'
Motion to Clarify Method of Identifying Class Members by including the requirement that
eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List and
that they be "*members of Eastern's flight deck collective bargaining unit*" rather than
simply former EAL flight deck employees "who claim they are entitled to the benefits of
the collective bargaining agreement (the "CBA") between Eastern Airlines and the Air
Line Pilots Association." This clarification comported with the parties' agreement that in
order to participate in the Class, pilots had to be active with EAL as of the stipulated
date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims
or have claims filed for them would be excluded from the class as they were not part of
the EAL pilots who were members of ALPA and they did not individually file timely
claims for enforcement of the LPPs in these proceedings.   The corollary to this is that
this Court's July 10, 2001 Order expressly includes the newly identified class members
listed on Exhibit B as every one of them were ALPA members on the active seniority list

                                                    12

Adversary Proceeding
No. A-99-412
Class Action

as of the stipulated date of merger who neither accepted the ALPA/CAL settlement or

withdrew their claim in bankruptcy[3]. Accordingly, the persons identified on Exhibit B are

class members entitled to participate in the settlement.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to

find that the newly identified former EAL pilots identified on Exhibit B are members of

the class; to enter an order requiring CAL to fund the settlement for the new class

members forthwith; to enter an order providing for a 60 day extension of time from the

date of the hearing to provide notice to the newly identified former EAL pilots; and for

approval of the form of notice appended to the Motion.

Dated: June 12, 2002

> TRALINS AND ASSOCIATES
> Attorneys for Class Plaintiffs
> 2930 One Biscayne Tower
> 2 S. Biscayne Blvd., Suite 2930
> Miami, FL 33131
> Telephone: 305-374-330
>
> By: _Myles J. Tralins by Bret James_
>     Myles J. Tralins
>     Florida Bar No. 139543
>
>        -and-

---

[3]    A substantial majority of the 400 persons in the Addington group who withdrew their claims pursuant to their stipulation with CAL and this Court's Order allowing them to do so, withdrew claims filed for them by ALPA, not claims they filed on their own. If CAL's position here is accepted, they had no claims to withdraw as they were "lost" when ALPA settled and withdrew its claim.

O.    The truth is that Continental has spent millions of dollars

avoiding any proceedings, which will expose them in discovery, ie.

arbitration . Continental has avoided the Eastern arbitration since 1986.

Continental used the bankruptcy proceedings in order to avoid arbitration and lost. Then they found three corruptible former Eastern pilots, the Class Representatives and a now deceased corruptible attorney to keep them away from arbitration.

P.    This Court and the Appellate Court both reaffirmed the settlement agreement award was fair in lieu of an arbitration award. Merger arbitration under the Railway Labor Act dictates that all pilots are included in the process. Continental has never asked in the Re-organizational Plan for relief from the Bankruptcy Court from the obligations it has to those pilots it has so deceitfully deleted from the settlement agreement. The Appellate Court has recognized all pilots that fit the following definition under the settlement agreement stipulation submitted by Class Representative dated October 16, 2001, Docket No. 57, Exhibit B-1. (Exhibit 8)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                          }
                                                }        Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,            }          Chapter 11
                                                }
              Debtors                           }
                                                }
_____                 }
                                                }
JAMES BALDRIDGE, WILLIAM MANN,                  }
and LARRY DUNN, individually, and               }
as representatives of a class of persons        }
similarly situated who are referred to as       }
the LPP CLAIMANTS,                              }
                                                }
              Plaintiffs,                       }        Adversary Proceeding
v.                                              }          No. A-99-412
                                                }          Class Action
CONTINENTAL AIRLINES HOLDINGS,                  }
INC., CONTINENTAL AIRLINES,                     }
INC. and SYSTEM ONE HOLDINGS, INC.              }
                                                }
              Defendants.                       }
_____                 }

**NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF CLASS
ACTION AND PROPOSED SETTLEMENT AND SETTLEMENT HEARING**

**TO ALL PERSONS WHO:**

    **(1)  ARE EASTERN AIRLINES FORMER FLIGHT DECK EMPLOYEES**

    **IDENTIFIED ON EASTERN AIRLINES' NOVEMBER 1990**

    **ALPHABETICAL SENIORITY LIST;**

    **(2)  WHO CLAIM THEY ARE ENTITLED TO THE BENEFITS OF THE**

    **COLLECTIVE BARGAINING AGREEMENT BETWEEN EASTERN**

AIRLINES AND THE AIR LINE PILOTS ASSOCIATION IN EFFECT AT
THE TIME THAT EASTERN AIRLINES ALLEGEDLY MERGED WITH
CONTINENTAL AIRLINES HOLDINGS, INC.;

(3) WHO FILED A TIMELY CLAIM IN THE ABOVE-ENTITLED
REORGANIZATION OF CONTINENTAL AIRLINES, INC., CASE NO.
90-932 FOR ENFORCEMENT OF THE LABOR PROTECTION
PRIVILEGES EMBODIED IN THE EASTERN AIRLINES COLLECTIVE
BARGAINING AGREEMENT EITHER INDIVIDUALLY OR AS A
MEMBER OF THE AIR LINE PILOTS ASSOCIATION OR AS A NAMED
LABOR PROTECTIVE PROVISION CLAIMANT REPRESENTED BY
CLASS COUNSEL IN THE REORGANIZATION AND WHO ARE
IDENTIFIED ON EXHIBIT A ATTACHED TO THIS NOTICE;

*EXCEPT* (1) THOSE PERSONS WHO SETTLED, WAIVED OR RELINQUISHED HIS
OR HER LPP CLAIM WITH CONTINENTAL AND (2) THOSE PERSONS WHO
MOVED TO INTERVENE IN THIS CASE, PURSUANT TO THE "MOTION TO
INTERVENE IN ADVERSARY PROCEEDING" FILED NOVEMBER 11, 1999 WHO
FILED A NOTICE OF WITHDRAWAL OF HIS OR HER PROOF OF CLAIM IN THIS
REORGANIZATION WITH THE CLERK OF THE BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE ON OR BEFORE APRIL 15, 2000.

-2-

## CONCLUSION

The irrefutable evidence demonstrates the clear intent to defraud the select members of the Class. I expect this Court to act accordingly. Continental and Class Representatives violated the confidence of the Courts, they clearly violated **18 U.S.C. § 152 and § 157.**

## PETITION

A.     This Court's July 23, 2004 order, demanding mandatory mediation procedures which applies to all appeals to this Court from the Bankruptcy Court be conducted.

B.     That  Class Representatives, Baldridge, Mann and Dunn be compelled to participate in the mediation process because they engaged in the preparation for arbitration, certification of the class, negotiation of the settlement agreement, deletion of members of the class and failed to comply with the settlement agreement stipulations of notification to pilots added to the settlement agreement, specially when they were compensated above the regular award for this endeavor.

C.     That Class Representative Counsel be excused from the mediation process because he and his firm are not  receiving compensation therefore he has no incentive to represent the class properly.

17

Respectfully submitted,

Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| CONTINENTAL AIRLINES, INC., ) | Case Nos. 90-932 (MFW) |
| et al.. ) | through 90-984 (MFW) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | |
| JAMES BALDRIDGE, WILLIAM ) | |
| MANN and LARRY DUNN, individually ) | |
| and as representatives of a class of persons ) | |
| similarly situated who are referred to as ) | |
| the LPP CLAIMANTS. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary Proceeding |
| ) | No. A-99-412 |
| CONTINENTAL AIRLINES HOLDINGS, ) | Class Action |
| INC., CONTINENTAL AIRLINES, ) | |
| INC. and SYSTEM ONE HOLDINGS. ) | |
| INC.. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **AFFIDAVIT OF EDNA SMITH**

COUNTY OF HARRIS   ) ss:
                    )
STATE OF TEXAS       )

Edna Smith, being duly sworn, deposes and says:

1.    I have been employed by Continental Airlines, Inc. ("Continental") since 1985

and I am currently a Litigation Analyst in the Continental legal department. I have been directly

involved in the administration of proofs of claims in the above-captioned bankruptcy proceeding

since Continental created the claims group in 1990. I am duly authorized to execute this affidavit and unless otherwise indicated, the facts and information set forth herein are based on my personal knowledge.

2.    I worked with Continental's in-house and outside counsel and counsel for the Plaintiffs to prepare Exhibit A to the proposed Amended Order Granting Class Certification, a copy of which is attached hereto. It is my belief and understanding that the attached Exhibit A is a complete and accurate list of all persons properly included as plaintiffs in the above-captioned class action adversary proceeding.

3.    The attached Exhibit A was compiled as follows:

(a)    I and those under my direct supervision and control reviewed the Official Claims Register maintained in these bankruptcy cases and identified any proof of claim that may have been filed by a former employee of Eastern Airlines who claimed they were entitled to the benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with Continental Airlines Holdings, Inc. This resulted in an initial list of more than 5,000 claims.

(b)    Each proof of claim was pulled and reviewed by me personally or those under my direct supervision and control to determine if the basis of the claim was for equitable relief or damages as a result of Continental's alleged violations of the labor protective provisions (the "LPP's") of the Eastern CBA. I deleted from the list those proofs of claim that did not meet the criteria set forth above.

2

(c)    I then reviewed the list of all those claimants who had settled and released their claims against the Debtors as a result of that certain settlement agreement between the Debtors and the Air Line Pilots Association (the "ALPA Settlement"). Each claimant that had accepted the ALPA Settlement was removed from the list.

(d)    I then reviewed a list prepared by Continental's outside counsel of all those claimants who had filed a notice withdrawing their proofs of claim in these proceedings. This group is referred to as the "Addington Group." Each claimant that had withdrawn his or her claim was removed from the list.

(e)    I was then supplied with a list prepared by class counsel to the Plaintiffs of those persons that he believed would be properly included in the class. I reconciled the two lists, doing further research into a claim or claimant where necessary and I did identify certain additional claimants that were properly included in the class. The result of these efforts, which took more than 80 hours, is the list attached hereto as Exhibit A.

4.    Based on the foregoing, I submit that the list attached hereto as Exhibit A is a complete and accurate list of all persons properly included as plaintiffs in the above-captioned class action adversary proceeding.

Dated: January 2, 2002
Houston, Texas

_Edna Smith_
Edna Smith

CHERYL RUSSELL
Notary Public, State of Texas
My Commission Expires
October 21, 2004

Notary: _Cheryl Russell_

3

WP3:715726.1

45085.1005

AGREEMENT
between
EASTERN AIR LINES, INC.
and
THE AIR LINE PILOTS
in the service of
EASTERN AIR LINES, INC.
as represented by
THE AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL

This Agreement is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between EASTERN AIR LINES, INCORPORATED, here-inafter referred to as "Eastern" and the Air Line Pilots in the service of EASTERN AIR LINES, INCORPORATED, as repre-sented by the AIR LINE PILOTS ASSOCIATION, INTER-NATIONAL, hereinafter known as the "Association".

It is hereby mutually agreed:

## SECTION 1 - RECOGNITION AND SCOPE

A.    The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) employed by Eastern have designated the Association to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions covering all pilots in the employ of Eastern in accordance with the provisions of the Railway Labor Act, as amended.

B.    It is agreed that all present or future flying, including flight training (except for initial factory-conducted training in newly purchased equipment), revenue flying, ferry flights, charters and wet-leases performed in or for the service of Eastern Air Lines, Inc., shall be performed by pilots whose names appear on the then-current Eastern Air Lines' System Seniority List.

C.    It is agreed that Eastern shall not establish a parent or holding Company, division or wholly-owned sub-sidiary to perform flying operations outside the scope of this Agreement.

- 1 -

## SECTION 19 – SENIORITY DATE

pilot who retires because of disability shall be reinstated to
service without loss of seniority if, within eight (8) years
after the occurrence of the disability, he obtains a first-class
medical certificate, passes an Eastern physical examination
(not to exceed FAA standards), and qualifies or requalifies,
on aircraft commensurate with his seniority and stated
preference in accordance with the provisions of Section 28 of
this Agreement.

## SECTION 20 – PILOTS' SYSTEM SENIORITY LIST

A.    Eastern shall periodically compile a list of names
of all pilots, whether active or inactive, arranged in order of
their seniority number as outlined in Paragraph B below.
Such list shall be known as the Pilots' System Seniority List.

B.    The Pilots' System Seniority List shall consist of
the seniority number, name and seniority date of all pilots,
arranged in the same order as provided in the Agreement
respecting merger of Pilots' Seniority List of Colonial Air-
lines, Inc., and Eastern Air Lines, Inc., signed on the 10th day
of March 1956, and as it has been further arranged by the
addition of pilots thereto as a result of the Eastern and
Mackey merger and the Caribbean Atlantic Airlines, Inc.,
(Caribair) acquisition, and the Pilots' System Seniority List
shall also consist of the seniority number, name and seniority
date of all pilots employed or added to the list on or after the
10th of March 1956, arranged in order of their seniority date
or numbers in accordance with the provisions of Section 18 of
this Agreement.

## SECTION 21 – PROTEST ON SENIORITY LIST

A.    Eastern shall update and post a revised Pilots'
System Seniority List which shall contain, in their proper
order, names of all pilots then entitled to seniority and which
shall be furnished for informational purposes to each pilot by
means of the Annual Section 28 Award.  Pilots shall have
thirty (30) days after the posting of such lists in which to
protest to Eastern any omission or incorrect posting affecting
their seniority in any such revised list, but such protest shall
be strictly confined to errors or changes occurring subsequent
to the posting of the prior Pilots' System Seniority List.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: } | |
| } | Case No. 90-932 |
| CONTINENTAL AIRLINES, INC., et. al., } | Chapter 11 |
| } | |
| Debtors } | |
| _____ } | |
| } | |
| JAMES BALDRIDGE, WILLIAM MANN, } | Adversary Proceeding |
| and LARRY DUNN, individually, and } | No. A-99-412 |
| as representatives of a class of persons } | Class Action |
| similarly situated who are referred to as } | |
| the LPP CLAIMANTS, } | |
| } | |
| Plaintiffs, } | **Objections Due: 5/10/02** |
| v. } | |
| } | **Hearing Date: 5/17/02 @ 1:00 P.M.** |
| CONTINENTAL AIRLINES HOLDINGS, } | |
| INC., CONTINENTAL AIRLINES, } | |
| INC. and SYSTEM ONE HOLDINGS, INC.} | |
| } | |
| Defendants. } | |
| _____ } | |

**MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING THAT NEWLY
IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS,
FOR ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT
FOR THE NEW CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

The LPP Class Action Plaintiffs respectfully request the Court to issue an order

finding that 256 newly identified former Eastern Airlines (EAL) pilots listed on Exhibit A

appended hereto are members of the Class certified herein (the "New Members"). The

New Members are covered under the defined class in this matter because they (1) were

Adversary Proceeding
No. A-99-412
Class Action

members of EAL's flight deck collective bargaining unit who are identified on Eastern

Airlines' November 1990 seniority list; (2) did not settle, waive or relinquish their LPP

claims with Continental; and (3) did not withdraw their proofs of claim on or before April

15, 2000 as part of the group that moved to intervene herein as members of the Class.

Continental disputes that the New Members satisfy the requirements for inclusion in the

Class.    The disagreement between Continental and the Class Action Plaintiffs is as

follows: The Class Action Plaintiffs contend that the New Members are members of the

Class because they were included in the Proof of Claim filed by ALPA and never settled

or otherwise withdrew that claim.  Continental contends that the New Members are not

members of the Class because they did not file individual proofs of claims.

The Class Action Plaintiffs also request that the Court direct Continental to fund

the settlement for the New Members forthwith and to grant a sixty (60) day extension

from the current bar date of June 3, 2002 until August 2, 2002, for the filing of Proofs of

Claim by the New Members in order to provide Class Counsel with sufficient time to

serve Notice on said persons of their right to participate in the Class Settlement. In

support of this Motion, the Class Action Plaintiffs' state:

1.    On February 3, 2000, this Court entered its Order Granting Class

Certification. The class was certified as follows:

> All Eastern Airlines former flight deck employees who claim
> they are entitled to the benefits of the collective bargaining
> agreement (the "CBA") between Eastern Airlines and the Air
> Line Pilots Association in effect at the time that Eastern Airlines
> allegedly merged with Continental Airlines Holdings, Inc. who

2

Adversary Proceeding
No. A-99-412
Class Action

filed a timely claim in the above-entitled reorganization of
Continental Airlines, Inc., Case No. 90-932 (the "Reorganization")
for enforcement of the labor protective privileges embodied in
the CBA (hereafter "the Class Members"), *except* (1) those persons
who settled, waived or relinquished his or her LPP claim with
Continental and (2) those persons who moved to intervene herein,
pursuant to the "Motion to Intervene In Adversary Proceedings"
filed November 11, 1999 and who file a notice of withdrawal of
his or her Proof of Claim in this Reorganization with the Clerk
of the Bankruptcy Court for the district of Delaware on or before
April 15, 2000.

Docket Nos. 26 and 27, Opinion and Order Granting Class Certification dated February

3, 2000.

2.    The LPP Class Action Plaintiffs subsequently moved for the entry of an

order clarifying the method of identifying class members because of problems the

parties were having in deciding whether certain persons were members of the Class.

Docket No. 52; LPP Class Action Plaintiffs' Motion to Clarify Method of Identifying Class

Members)  The problems concerned the interpretation and application of the phrase

"*who filed a timely claim*" in the class definition and, more specifically,  whether "new

hires" employed by Eastern after ALPA pilots went on strike on March 4, 1989, are part

of the Plaintiff Class.   The LPP Plaintiffs contended that all EAL flight deck crew

members are entitled to participate in the Class, including the "new hires" because they

were entitled to the benefits of the ALPA/EAL collective bargaining agreement.  CAL

contended that only those pilots who filed claims in bankruptcy are entitled to

participate.

3

Adversary Proceeding
No. A-99-412
Class Action

3.    After the Motion to Clarify was filed, the LPP Class Action Plaintiffs and CAL

agreed that because the clear language of the Proofs of Claim filed by ALPA for

enforcement of the EAL LPPs against CAL excluded the "new hires" and was limited to

persons who were EAL ALPA members pre-strike (before March 4, 1989), any new hire

who did not file a Proof of Claim or have a Proof of Claim filed for him or her by the

undersigned would fall outside the class definition and he or she would not be eligible to

participate in the class settlement.  The parties also agreed that in order to ensure that

the participants in the Class were active employees of EAL as of its January 19, 1991

shutdown,  an eligible pilot had to be listed on EAL's November 1990 Alphabetical

Seniority List.

4.    On July 10, 2001, the Court entered its Order Granting Class Action

Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the

requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical

Seniority List.  The Court also required the eligible pilots to be "members of Eastern's

flight deck collective bargaining unit" rather than simply former EAL flight deck

employees "who claim they are entitled to the benefits of the collective bargaining

agreement (the "CBA") between Eastern Airlines and the Air Line Pilots Association."

This clarification comported with the parties' agreement that in order to participate in the

Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's

shutdown date), and that "new hires" who did not file claims or have claims filed for

them would be excluded from the class as they were not part of the EAL pilots who

4

Adversary Proceeding
No. A-99-412
Class Action

were members of ALPA and they did not individually file timely claims for enforcement

of the LPPs in these proceedings.   (Docket No. 56; Order Granting Motion to Clarify

Method of Identifying Class Members)

     5.    As a result of the foregoing, the parties mutually identified 583 LPP Class

Action Plaintiffs.  The Court, recognizing that there may be additional persons covered

by the class definition, expressly stated at the preliminary settlement hearing conducted

on November 16, 2001, the fairness hearing conducted on January 31, 2002, and the

hearing on the O'Neill post trial motions conducted on April 2, 2002, that it would not

limit the list of class members to the 583 persons identified by the parties but would

leave the door open for persons who claimed they met the class definition to be

included in the Class.  In doing so, the Court expressly stated that if the parties could

not agree as to whether certain persons are or are not members of the Class, that the

Court would resolve the issue — hence, this Motion.

     6.    Throughout these proceedings, Class Counsel has been working diligently

to ensure that all persons who meet the class definition are identified and provided with

notice of the settlement.  As a result of the O'Neill appeal and the receipt of joinders in

that appeal from persons not previously identified as class members who appear to

qualify, as well as advice from CAL received in early April 2002 that it had discovered

248 persons who were previously not identified as class members but who might be

members of the class, the undersigned decided to redo the data research conducted

last year and shared with CAL.  Accordingly, the undersigned retained a new data

5

Adversary Proceeding
No. A-99-412
Class Action

processing firm to input the entire November 1990 EAL Alphabetical Seniority List

consisting of 3,387 persons into a databank, including each pilot's seniority number and

date of hire (the "Master List"). The data processors then inputted the agreed list of 583

LPP Claimants and deleted them from the Master List. The data processors then

inputted all of the EAL pilot names and employee numbers identified on the list of

persons who elected to participate in the 1994 ALPA/CAL Settlement which was

prepared by Continental and provided to the undersigned (the "Takers List") and deleted

those persons from the Master List[1]. The data processors then worked directly from the

Bankruptcy Court docket sheets to identify, input and delete the 321 Addington/EPMC

pilots who withdrew their claims against CAL from the Master List. The data processors

then deleted from the list all of the remaining "new hires" by deleting all pilots with a

seniority date on or after March 3, 1989. The resulting Preliminary List of additional

LPP Plaintiffs consisted of 533 pilots.

7.    The next step was to verify how many of the 533 pilots on the Preliminary

List filed timely claims in the CAL bankruptcy.    On March 24, 1994, ALPA and

Continental entered into a Claims Settlement Agreement for purposes of settling the

EAL LPP claims ALPA filed against CAL on behalf of its pre-strike members[2]. (A copy

---

[1]      1,396 of the 2,577 pilots identified by Continental as "Takers" are listed on
the November 1990 EAL Alphabetical Seniority List

[2]      Paragraph 2 of the Claims Settlement Agreement defined "Eligible
Pilots" as "all pilots who were in the active service of Eastern Airlines, Inc. through
March 3, 1989, as reflected on the attached Preliminary List

6

Adversary Proceeding
No. A-99-412
Class Action

of the Claims Settlement Agreement [Docket No. 5119 in Jointly Ad. No. 90-932]  is

appended as Exhibit B).  CAL agreed in the Claims Settlement Agreement that

approximately 3500 EAL pilots covered by ALPA's Proofs of Claim[3] and identified on a

list[4] attached to the Claims Settlement Agreement were entitled to participate in the

Settlement.  As CAL unequivocally agreed that the EAL pilots on the "Eligible Pilots" list

were entitled to participate in the 1994 ALPA/CAL Claims Settlement Agreement as a

result being included in ALPA Proofs of Claim, there can be no dispute that their claims

were timely filed by ALPA.  Accordingly, in order to ensure that every new member was

recognized by CAL to have filed a timely claim in these bankruptcy proceedings, the

data processing firm was instructed to compare the "Eligible Pilots" list appended to the

1994 ALPA/CAL Claims Settlement Agreement against the Preliminary List and to

delete the names of all EAL pilots from the Preliminary List which are not on the 1994

---

[3]        Appended as Composite Exhibit 2 to the Settlement Agreement are
ALPA's Proofs of Claims as the "'authorized representative" and the "exclusive
collective bargaining representative" of certain specified pilots (those who were pre-
strike).   The Proofs of Claim were filed with respect to enforcement of the EAL LPPs
against CAL and expressly included the National Mediation Board proceedings which
this Court initially enjoined, to wit: *"In the Matter of an Application of the Air Line Pilots
Association for an Arbitration Under the Labor Protective Provisions Involving Eastern
Airlines, Inc."*

[4]        The list was subject to verification and supplementation by ALPA prior to
the Bankruptcy Court hearing on the approval of this Settlement Agreement.  A review
of the docket sheet in 90-932 from the time the motion to approve the settlement was
filed until the entry of the order approving does not reflect the filing of a supplemental or
corrected list.  The undersigned requested CAL's attorney to confirm that no such
supplemental or corrective list was filed or, if there was one, to provide it but has not
received a repose to the request.

7

Adversary Proceeding
No. A-99-412
Class Action

ALPA/CAL Claims Settlement "Eligible Pilots" list.   The result is the List of 256

Additional LPP Class Action Plaintiffs appended hereto as Exhibit A, all of whom were

recognized by CAL as having filed timely claims, through ALPA's Proofs of Claim, in

these bankruptcy proceedings.

      8.    Notwithstanding the fact that each of the 256 additional persons identified

on attached Exhibit 1 meets all of the class definition criteria as well as the fact that

CAL agreed that all 256 persons were "Eligible Pilots" as a result of ALPA's filing of

Proofs of Claim on their behalf, CAL now states it will not agree to the inclusion of the

256 New Members because ALPA withdrew its claims as part of the settlement and the

256 pilots did not file individual claims in the bankruptcy.

      9.    CAL's position is untenable. The ALPA/CAL Claims Settlement Agreement

was an opt out agreement. If Eligible Pilots elected not to participate in the Settlement

Agreement, they retained the right to pursue their LPP Claims. That is the law of this

case as determined by this Court. In approving the effect of the ALPA/CAL Claims

Settlement Agreement on those who elected not to participate, this Court expressly

ruled on July 19, 1994, in its Order Approving Continental-ALPA Claims Settlement

Agreement, at paragraph 4 that:

> **Those who objected had the clear recourse of refusing
> to participate in the Settlement  and <u>retaining their Claims.</u>**

(Emphasis supplied; a copy of the order, Docket No. 6016 in Jointly Ad. No. 90-932 is

8

Adversary Proceeding
No. A-99-412
Class Action

attached as Exhibit C.)    Indeed, if that were not the case, this action could not have

been brought. Moreover, a number of the 583 LPP Class Action Plaintiffs CAL has

agreed to are persons whose claims were filed by ALPA who did not accept the

ALPA/CAL settlement.

10.    In addition to being inconsistent, CAL's position is not logical or a fair

expression of the spirit and intent of the ALPA/CAL Claims Settlement Agreement.

CAL contends that when ALPA withdrew its claims as a result of the settlement, that

every pilot who had not filed an individual claim and who did not "elect" to participate in

the ALPA/CAL Claims Settlement was left with no claim at all.  CAL's new interpretation

of the ALPA/CAL Claims Settlement Agreement, made in order to defeat the claims of

the newly discovered Class Action Plaintiffs here, was not disclosed in the Claims

Settlement Agreement and is contrary to this Court's express ruling discussed above.

In addition, it would have been impossible for any EAL pilot who wished to opt out of

the Claims Settlement Agreement to timely file a claim on his own because the bar date

for the filing of claims had long since passed and there was no provision in the Claims

Settlement Agreement to reopen the time for filing claims.

11.    CAL also asserts that the release language in the ALPA/CAL Claims

Settlement Agreement bars the claims of these New Members.    It does not.    The

release language at paragraph 8(A) of the Settlement Agreement is between the CAL

entities and ALPA with the exception of **"individual pilot defendants who do not

elect to participate in this Settlement Agreement."**    In addition, the release

9

Adversary Proceeding
No. A-99-412
Class Action

language at Paragraph 8(B) of the ALPA/CAL Claims Settlement Agreement states that
**"The above release and waiver of all claims arising heretofore shall have no effect**
**at all on (1) any claims or rights of any pilot who has filed a claim for such in the**
**Delaware bankruptcy proceedings and does not participate in this Settlement**
**Agreement..."** Those claims, as have been shown, were filed for the newly discovered
256 pilots by ALPA.

12.    Finally, there are approximately 3500 "Eligible Pilots" identified on the list
appended to the ALPA/CAL Claims Settlement Agreement. As this Court noted in its
July 19, 1994 Order Approving Continental-ALPA Claims Settlement Agreement at
paragraph 4, approximately one third of the pilots elected not to participate in the
Settlement. Clearly, Continental has known since 1994 that it had approximately 1167
timely filed LPP claims to resolve. During the 8 year period since the ALPA/CAL Claims
Settlement Agreement was approved, the total number of LPP claims has diminished
by close to 30% to the 839 persons who meet this Court's criteria to participate in the
LPP Class Action. Accordingly, it is respectfully requested that this Court find that the
256 New Members identified on Exhibit A are Class Members entitled to participate in
the Class Settlement and direct Continental to fund the settlement for the 256 New
Members forthwith.

13.    In addition, Class Counsel respectfully requests a sixty (60) day extension
from the current bar date of June 3, 2002 until August 2, 2002, for the filing of Proofs of
Claim by the 256 newly discovered Class Members in order to provide Class Counsel

10

Adversary Proceeding
No. A-99-412
Class Action

with sufficient time to serve Notice on said persons of their right to participate in the

Class Settlement in the form attached as Exhibit D.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to

find that the newly identified former EAL pilots identified on Exhibit 1 are members of

the class; to enter an order requiring CAL to fund the settlement for the new class

members and for a 60 day extension of time to provide notice and for approval of the

form of notice appended to this Motion.

Dated: April 25, 2002

                              TRALINS AND ASSOCIATES
                              Attorneys for Class Plaintiffs
                              2930 One Biscayne Tower
                              2 S. Biscayne Blvd., Suite 2930
                              Miami, FL 33131
                              Telephone: 305-374-330

                              By: Myles J. Tralins by Bruce E. Jameson
                                  Myles J. Tralins
                                  Florida Bar No. 139543

                                       -and-

                              PRICKETT, JONES & ELLIOTT
                              1310 King Street
                              Wilmington, DE 19801
                              Tel: (302) 888-6500

                              By: Bruce E. Jameson
                                  BRUCE E. JAMESON
                                  Delaware Bar No. 2931

11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al., | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | re: Docket No. 169 |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OBJECTION TO MOTION FOR FINDING
THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE
MEMBERS OF THE CLASS, FOR ENTRY OF ORDER
REQUIRING CAL TO FUND SETTLEMENT FOR NEW
CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

The above-captioned defendants ("Continental") hereby object to the Motion of

the LPP Class Action Plaintiffs (the "Motion") for (i) a finding that 226[1] "newly identified"

former Eastern Airlines ("EAL") pilots listed on Exhibit A to the Motion are members of the

---

[1] The Motion seeks to include 256 people in the class. Continental has located individual proofs of claim
filed by approximately 30 of these people and, therefore, has no objection to their inclusion.

WP3:7739632                                                                45085.1005

class certified herein (the "Proposed New Members") and (ii) certain related relief, and in support respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The so-called "New Members" that are the subject of the Plaintiffs' Motion are neither "newly identified" nor are they properly members of the certified class. Plaintiffs' counsel has previously raised the issue of whether to include in the class certain non-settling former EAL pilots that were allegedly covered under a proof of claim filed by the Air Line Pilots Association ("ALPA"), but who did not file individual proofs of claim, and it was rejected by Continental. The basis for Continental's position is that when ALPA released and withdrew its proof of claim as part of its settlement with Continental, each ALPA member was advised in writing that if they opted-out of the settlement and failed to individually file a proof of claim, they would be barred from seeking any individual LPP relief against Continental, absent a court order. Since that time (April 1994), none of the Proposed New Members have sought relief to file an individual proof of claim or participated in these bankruptcy proceedings in any way. Accordingly, the Proposed New Members do not meet the requirements for class membership and are not entitled to participate in the class action settlement.

## BACKGROUND

2.      On February 3, 2000, this Court entered its Opinion On Motion For Class Certification, and a copy of which is attached hereto as Exhibit A (the "Class Certification Opinion"). In its Class Certification Opinion, the Court found that the class consists of "all Eastern Airlines flight deck employees (a) who are entitled to the benefits of the collective bargaining agreement (the "CBA") between Eastern Airlines and Air Lines Pilots Association in

2

effect at the time that Eastern Airlines allegedly merged with Continental; (b) who filed a timely claim in these proceedings for enforcement of the labor protection privileges ("LPPs") embodied in the CBA; and (c) who did not settle, waive or relinquish his or her LPP claim with Continental." Class Certification Opinion at p. 2.

3.    The Plaintiffs subsequently filed a motion for an order clarifying the method of identifying class members (the "Motion To Clarify") after a dispute arose between the parties over the interpretation of the phrase *"who filed a timely claim"* in the class definition. In their Motion to Clarify, Plaintiffs specifically raised the issue of whether former EAL pilots covered under the ALPA proof of claim should be part of the class. After significant discussion, the parties agreed not only on a modified class definition as set forth in the Court's July 10, 2001 Order Granting Class Action Plaintiffs' Motion To Clarify Method Of Identifying Class Members (the "Class Clarification Order"), a copy of which is attached as Exhibit B, but ultimately on a list of eligible class members which was subsequently filed with the Court. The list was *critical* to Continental because the parties were working towards a settlement of the class action. Since there were limited reserves available from which to pay creditors, Continental did not believe that it or its creditors (including the Post-Effective Date Committee) could form a reasoned judgment about the propriety of any settlement until all interested parties understood the total size of the class.

4.    As a result of this process, the parties mutually identified 583 LPP Class Action Plaintiffs and a final settlement was reached awarding each of those claimants an allowed general unsecured Class 13 claim of $110,000. At the preliminary settlement hearing conducted on November 16, 2001, the Court requested that both the Plaintiffs and Continental submit

3

affidavits describing how the list of class members was created.  A copy of the Mr. Tralins'
Affidavit for Plaintiffs is attached hereto as Exhibit C and Ms. Smith's Affidavit for Continental
is attached hereto as Exhibit D.  While both affidavits very clearly indicate that all ALPA
members who accepted the ALPA settlement were deleted from the list, neither affidavit includes
in the class those ALPA members who opted-out of the settlement, but did not timely file an
individual proof of claim.

        5.      Indeed, Mr. Tralins' Affidavit, which confirms that he cross-checked the
list against "Eastern Airlines pre-IAM strike seniority list" and "Eastern's November 1990
seniority list", expressly provides that he believes the list (which does not include the Proposed
New Members) is **"a complete and accurate list of all eligible members of the class in this
proceeding."**  Tralins' Affidavit at p. 3 (emphasis supplied).  While it is true that both Plaintiffs
and Continental have since determined that certain additions and deletions to the list are
warranted[2], it is not likely that Plaintiffs completely "missed" 226 people.  Moreover, the Smith
Affidavit states that the list was derived from the official claims register in these cases
identifying individual LPP claims.  Smith Affidavit, p.2, ¶ 3(a).

        6.      Notwithstanding the foregoing, and after the class action settlement was
approved by the Court and fully-funded by Continental, Plaintiffs bring their Motion to add the
Proposed New Members utilizing a procedure in the settlement order that was intended for use
by individuals who believed they should be included in the class (not the Plaintiffs who had
already verified the accuracy of the class list).

---

[2]     Since the list was created, Continental has discovered approximately 90 people that properly filed
individual LPP claims and, therefore, should be included in the class.  Continental is waiting for Plaintiffs to confirm
that the inclusion of these people in the class is acceptable.  As stated earlier, approximately 30 of the people on
Continentals' list are also on Plaintiffs' list attached to the Motion.

4

                                                       

7.      Plaintiffs raise two arguments as to why the Proposed New Members should be part of the class: (i) since Continental agreed that these former EAL pilots were eligible to participate in the ALPA settlement as a result of being covered by the ALPA proof of claim, Continental cannot now argue that their "claims" were not timely filed, and (ii) the Court's order approving the ALPA settlement provided that those who opted-out of the settlement could continue to pursue their LPP claims against Continental. As set forth below, neither argument is valid and therefore the Motion must be denied.

## OBJECTION

8.      It is undisputed that as part of its settlement with Continental, ALPA waived, released, withdrew and dismissed all of its claims against Continental. ALPA Settlement , pp. 9-10, §§ 8 and 9.[3] The question then is what happened to those eligible ALPA members who opted-out of the settlement. The release provisions of the settlement agreement are quite clear: ALPA's release "shall have no effect at all on (1) any claims or rights of **any pilot who has filed a claim for such in the Delaware Bankruptcy Proceedings** and does not participate in this Settlement Agreement... ".   ALPA Settlement at p. 9, § 8(B) (emphasis supplied).   ALPA's release and withdrawal of its proof of claim, however, most definitely impacted those pilots that had not filed an **individual** proof of claim in the bankruptcy case and the effect on "nonparticipating pilots" was made very clear to the ALPA members while they considered the settlement.

---

[3]   A copy of the ALPA settlement is attached as Exhibit B to Plaintiffs' Motion .

5

9.      On April 12, 1994, ALPA sent a letter to its members advising them of the

terms of the settlement with Continental. A copy of the letter is attached hereto as Exhibit E. In

addition to urging its members to accept the settlement, ALPA made the following points:

> Under the settlement agreement, ALPA and Continental (and its corporate
> affiliates) agree to waive all claims that they currently maintain or may maintain
> against each other. (p.4)

> In addition, the Association agrees that it will provide no support or assistance,
> direct or indirect, to any former Eastern pilot who seeks to pursue claims against
> Continental. (p.4)

> If you decline to participate (and if the settlement becomes effective), you are free
> to litigate an LPP claim against Continental on your own or through your personal
> representative provided that you had filed a timely individual LPP claim against
> Continental in the Continental bankruptcy proceeding. (p. 5)

> Pilots who failed to file such individual claims are likely barred from seeking any
> individual LPP relief against Continental absent a court order. (p. 5)

Thus, Plaintiffs' assertions in their Motion that Continental's position that ALPA members who

did not accept the settlement and did not timely file an individual proof of claim would not be

entitled to participate in distributions under the plan is (i) "inconsistent", (ii) "new", (iii) "not

logical or a fair expression of the spirit and intent of [ALPA Settlement]" and (iv) "made to

defeat the claims of the newly discovered Class Action Plaintiffs" are just plain wrong.

Continental's position was fully disclosed to ALPA members and without objection from ALPA.

Most importantly, however, is that none of the Proposed New Members have ever filed or

attempted to file an individual proof of claim and/or participate in these bankruptcy proceedings

since opting-out of the settlement.

10.      Moreover, Judge Balick's order approving the ALPA settlement is not

inconsistent with Continental's position. Those ALPA members who chose not to participate in

6

the ALPA settlement and who timely filed individual proofs of claim did retain their LPP claims

and Continental settled those claims as part of this class action adversary proceeding. ALPA

appropriately warned its members who had not filed individual proofs of claim that if they did

not accept the ALPA Settlement they would be barred from recovering on their LPP Claims.

There is nothing in the Court's order that authorizes the opt-out pilots to individually pursue the

proof of claim filed and withdrawn by ALPA.    Indeed, in response to the objections filed to the

settlement, Judge Balick specifically found that "[t]he Court does not have authority to re-make

the settlement upon a plan suggested by objecting pilots." Order at p. 2.

11.    Finally, with respect to the related relief requested by the Motion, since the

Proposed New Members are not properly part of the class, there is no reason to extend the

deadline by which they must accept the class action settlement[4]. Continental has and will agree

to a limited extension of the bar date for those people that the parties have mutually agreed are

properly part of the class so that proper notice is given and those claimants have sufficient time

to review and complete the necessary paperwork.

## CONCLUSION

12.    The Continental Bankruptcy has been pending since December 3, 1990

(almost 12 years). Both before and since confirming its chapter 11 plan and going effective in

April 1993, Continental has worked diligently to resolve the more than 40,000 proofs of claim

---

[4]    The parties previously agreed that the June 3, 2002 bar date would be extended until June 30, 2002 only
with respect to the 256 people identified in Plaintiffs' motion and the approximately 90 additional people identified
by Continental. The bar date has already expired with respect to all others.

7

filed against the various debtors. The vast majority of allowed creditors received their initial

distribution under the plan in late 1993 and have been waiting since then for a determination of

whether there will be a final distribution and, if so, in what amount. It would be patently unfair

to the allowed creditors of Continental who have waited a very long time for the claims

resolution process to conclude to grant these Proposed New Members each an $110,000 claim in

this bankruptcy proceeding when they have taken no steps whatsoever to pursue an individual

LPP claim against Continental. Even now, it is not the individuals requesting class membership,

but Plaintiffs' counsel. These former EAL pilots were clearly advised of the result if they did not

accept the ALPA settlement and by opting-out and not seeking leave to file an individual claim,

they effectively relinquished any claim against the Debtors. It would be unfair for Plaintiffs or

this Court to grant them a windfall.

WHEREFORE, Continental respectfully requests that this Court deny the Motion

and grant Continental such other and further relief as may be necessary.

Dated: June 7, 2002
Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Robert S. Brady (No. 2847)
1000 West Street
The Brandywine Building, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorney for Continental

8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re: }
}
CONTINENTAL AIRLINES, INC., et. al., }
}
Debtors }
}
_____ }
}
JAMES BALDRIDGE, WILLIAM MANN, }
and LARRY DUNN, individually, and }
as representatives of a class of persons }
similarly situated who are referred to as }
the LPP CLAIMANTS, }
}
Plaintiffs, }
v. }
}
CONTINENTAL AIRLINES HOLDINGS, }
INC., CONTINENTAL AIRLINES, }
INC. and SYSTEM ONE HOLDINGS, INC.}
}
Defendants. }
_____ }

Case No. 90-932
Chapter 11

Adversary Proceeding
No. A-99-412
Class Action

Objections Due:

Hearing Date:

**REPLY TO DEFENDANTS' OBJECTION TO MOTION OF CLASS
ACTION PLAINTIFFS FOR FINDING THAT NEWLY IDENTIFIED
FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT
FOR THE NEW CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME
TO PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

### *Preliminary Statement*

In its Objection, Continental advises that it has discovered approximately 90

people who should be included in the class.  In reconciling Continental's list with the list

appended to Plaintiffs' subject Motion,  the parties have agreed that the 40 persons

Adversary Proceeding
No. A-99-412
Class Action

identified on Exhibit A (subject to CAL's final verification) are members of the class[1]. At

issue is the status of the 228 persons identified on Exhibit B who Plaintiffs maintain

meet all criteria necessary for inclusion in the class and participation in the settlement.

### *Continental's Objection*

Continental contends that in order to participate in the class settlement, the LPP

Claimants identified on Exhibit B were required to file individual LPP bankruptcy claims

and that the LPP claims filed by ALPA on behalf of all of its members are ineffective to

protect their rights. CAL does not dispute the fact that it previously agreed in the

ALPA/CAL settlement that every one of the newly discovered LPP Claimants was an

"Eligible Pilot" entitled to participate in that settlement and that, but for the fact that they

did not individually file a claim in bankruptcy, every one of the newly discovered LPP

Claimants meet all of the class definition criteria established by this Court. As will be

shown, CAL's position is inconsistent with its prior representations to this Court, is

contrary to the law of this case, and is not equitable.

### 1. **CAL's Position is Inconsistent with its Prior Representations to this Court**

CAL's position is in direct opposition to the legal argument that it successfully

asserted in its December 22, 1992 *Partial Objection to Allowance of Claims Based*

*Upon Certain Alleged Labor Protective Provisions Involving the Air Line Pilots*

---

[1]    When the list Continental provided to Plaintiffs was cross-checked against
the data base, it showed that it included persons who accepted the ALPA/AL settlement
or withdrew their claims. Those persons have been deleted.

2

Adversary Proceeding
No. A-99-412
Class Action

*Association International and Eastern Air Lines Inc.* (Exhibit C) wherein it requested and

obtained the ruling of this Court that because ALPA filed LPP claims in these

proceedings as the collective bargaining representative for the Eastern pilots, "a ruling

declaring the LPP Claims to be general unsecured prepetition claims will be binding on

all of the LPP Claimants."

On February 11, 1993, this Court entered its Order on CAL's Partial Objection

(Exhibit D)  holding, as CAL requested and represented, that "its ruling as to ALPA's

LPP Claim is binding on both the 600 LPP Claimants represented by [sic: undersigned]

counsel and the other LPP Claimants."  As a matter of law, as well as fundamental

fairness, if the bankruptcy claim which ALPA filed on behalf of all of its members was

sufficient to bind all of its members to a ruling as to the status of their individual LPP

claims which determined the nature and scope of the recovery available to each of

them individually, then, too, ALPA's LPP bankruptcy claim preserved the individual LPP

claims of those persons who retained their claims and opted not to participate in the

ALPA/CAL settlement. Accordingly, CAL's current position, which is completely

inconsistent from the position which it took to obtain relief from this Court which limited

its liability on each individual pilot's LPP claim, must be rejected under the doctrine of

judicial estoppel. *See: In re Continental Airlines*, 125 F.3d 120, 138 (3rd Cir. 1997) citing

to *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1050 (3rd Cir. 1993).

3

Adversary Proceeding
No. A-99-412
Class Action

## 2. This Court Has Ordered that LPP Claimants Who Opted Not to Participate in the ALPA/CAL Settlement Retained Their LPP Claims.

ALPA and CAL reached their settlement, subject to Court approval, in early

1994. CAL asserts that because ALPA advised its members when it settled by

correspondence dated April 12, 1994 that "*absent a court order*," "if they opted-out of

the settlement and failed to individually file a proof of claim, they *would be* barred from

seeking any individual LPP relief against Continental." First, ALPA never made the

unequivocal statement that the individual claims would be barred. ALPA's letter does

contain the caveat that the claims *might be* barred if individual claims were not filed,

with no further explanation. ALPA made this statement because it wanted to persuade

as many persons as it could to accept the settlement since the settlement provided that

"Continental retains the option of terminating the settlement in its entirety if fewer than

80% of eligible pilots opt to participate in the settlement." It was thus in ALPA (and

CAL's) best interests to convince as many of approximately 3500 persons identified on

the "Eligible Pilots" list appended to the ALPA/CAL settlement agreement to participate

in the settlement and the caveat contained in the letter was ALPA and CAL's attempt to

do just that.

More importantly, a court order *was* entered well after the April 12, 1994 letter

was sent out which preserved the individual LPP Claimants' rights to refuse to

participate in the ALPA/CAL settlement and retain their claims. The objections of over

4

Adversary Proceeding
No. A-99-412
Class Action

a thousand of the "Eligible Pilots" to the ALPA/CAL settlement were timely filed and

considered by this Court. After conducting a hearing on the motions of ALPA and CAL

to approve the settlement, and considering the objections, this Court approved the

ALPA/CAL Claims Settlement Agreement by Order rendered July 19, 1994, expressly

ruling with respect to "approximately one third" of the LPP Claimants who objected to

the settlement that they **"had the clear recourse of refusing to participate in the**

**Settlement and retaining their Claims."** (Exhibit E) This Court's July 19, 1994 Order

is absolutely clear. CAL's assertion that the Order does not mean what it says because

it did not expressly authorize opt-out pilots to individually pursue the proof of claim filed

on their behalf by ALPA is entirely inconsistent with the clear intent and purpose of the

Order and, indeed, requests this Court to "re-interpret" its 8 year old Order so that it

operates to deprive the LPP Claimants of the claims which the Order directly states

they retained. Given this Court's unambiguous ruling that all opt out LPP Claimants

retained their claims, it is both implicit in the order and axiomatic that by doing so they

had the right to pursue the claims. To that end, CAL unsuccessfully attempted to

convince the District Court and then Third Circuit that the LPP Claimants' appeals

should be dismissed on the theory that only ALPA, as the collective bargaining

representative, had the right to take an appeal. A cogent analysis of this issue, which

is the law of the case, was provided by District Judge Joseph J. Longobardi in his

5

Adversary Proceeding
No. A-99-412
Class Action

November 25, 1995 Memorandum Opinion denying CAL's motion to dismiss:

> The bankruptcy court stated in its Order of July 19, 1994,
> that "approximately two-thirds of the pilots have elected
> to participate in the Settlement, so that the Settlement
> disposes of the greatest bulk of the claims, and greatly
> reduces the costs of litigation." Furthermore, the court
> held, "Those who objected [to the settlement] had the
> clear recourse of refusing to participate in the Settlement
> and retaining their claims. Approximately a third of the
> Pilots did so." On August 15, 1994, Continental notified
> the Court, and by carbon copy the LPP Claimants, that it
> intended to file a motion to dismiss the appeal of the LPP
> Claimants on the ground that ALPA's settlement of the
> underlying claims was binding upon them. For the first
> time, the LPP Claimants had reason to believe that their
> LPP Claims had been settled despite their non-participation
> in the Settlement Agreement.

(Exhibit F; Opinion at p. 9; record citations omitted.)

> The issue raised in the Second Motion to Dismiss as Moot
> is whether the Settlement Agreement signed by ALPA moots
> the LPP dispute, thereby mooting the appeal of both ALPA
> and the LPP Claimants. **Continental argues that it has settled
> with the only party capable of asserting the right to seniority
> list integration, so the LPP dispute is now moot.** While the
> parties dispute whether ALPA represents the LPP Claimants,
> representation is irrelevant.
>
> [fn]: **If ALPA was not the collective bargaining representative
> of the LPP Claimants, then it could not settle the claims of the
> LPP Claimants. If ALPA was the collective bargaining
> representative of the LPP Claimants, the language of the**

6

Adversary Proceeding
No. A-99-412
Class Action

**Settlement Agreement makes clear that ALPA did not settle those claims[2].**

The issue is whether individual pilots can assert a right to seniority list integration under the collective bargaining agreement, and, if so, whether the Settlement Agreement disposes of those rights.

The Reply Brief of Continental demonstrates that the Settlement Agreement had no effect at all on the rights of the LPP Claimants:

> **The settlement was plainly intended to leave individual pilots in the same position they were prior to the settlement — no better, no worse.**

The language of the Settlement Agreement, and the briefs of the other parties, support this statement. Thus, Continental cannot seriously claim that the settlement mooted the appeals. Rather, Continental asserts that the seniority integration rights were group rights that could only be asserted by ALPA, and the individual LPP Claimants never had standing to bring the LPP Claims.

[fn]: Continental does not claim that the LPP Claimants have no standing on appeal. **Because the February 1993 Order specifically bound the LPP Claimants, they have standing to appeal that order.**

(Opinion at 22 - 23; emphasis supplied in bold; record citation omitted)

---

[2]     CAL also asserts that ALPA's release bars the claims of these New Members.  It does not.     The release language is between CAL and ALPA ; it excepts **"individual pilot defendants who do not elect to participate in this Settlement Agreement"** and it provides that it **"shall have no effect at all on (1) any claims or rights of any pilot who has filed a claim for such in the Delaware bankruptcy proceedings and does not participate in this Settlement Agreement..."** Those claims, as have been shown, were filed for the newly discovered pilots by ALPA.

Adversary Proceeding
No. A-99-412
Class Action

Thus, the law of this case firmly establishes that:

1. The LPP claims of those LPP Claimants who elected not to accept the ALPA/CAL settlement survived the settlement.

2. By its own admission, CAL affirmatively acknowledged that the ALPA/CAL settlement was not intended to take away the individual pilots' LPP claims which existed prior to the settlement by virtue of ALPA's having filed the claim on their behalf — **"The settlement was plainly intended to leave individual pilots in the same position they were prior to the settlement — no better, no worse."**

3. The LPP Claimants who rejected the ALPA/CAL settlement had standing to appeal which was not mooted by ALPA's withdrawal of its claim. And if they had standing to appeal, they also had standing to pursue the claims which this Court ruled they had retained.

The District Court's opinion also supports our prior argument that CAL is judicially estopped from asserting the inconsistent position that a pre-condition to the claims of the newly discovered LPP Claimants is the requirement that they had to file individual proofs of claim and could not rely on the claim filed for them by ALPA.

Next, CAL's position that if an LPP Claimant opted out of the ALPA/CAL settlement, he or she was required to file a proof of claim is disingenuous. None of the opt-out LPP Claimants *could have* filed an individual proof of claim after learning of the

8

Adversary Proceeding
No. A-99-412
Class Action

ALPA/CAL settlement — as the court docket shows, the bar date for such claims was
September 27, 1991, over 2 ½ years prior to the settlement. CAL's argument that this
Court should accept the proposition that it was appropriate to advise the Eligible Pilots
they had a right to opt out of the settlement and retain their claims when, in fact, opting
out would have left them with no claim whatsoever must be rejected.

Finally, the vast majority of the class members who have already settled never
filed individual bankruptcy claims.  Rather, as CAL well knows, they terminated ALPA's
representation of their interests and retained undersigned counsel to assume their
representation on ALPA's proof of claim.  The newly discovered LPP Class Action
Plaintiffs thus stand in no different shoes from over 400 of the LPP Class Action
Plaintiffs who are members of the class and accordingly, are entitled to participate in
the class settlement.

### 3.  CAL Misstates the Date of Settlement and Ignores its Agreement to Include All Former EAL Pilots with Unresolved LPP Claims in the Class

CAL misstates the timing of the class action settlement in order to claim that a
precondition to its agreement to value the claims at $110,000 each was to limit the
class to 583 persons.  CAL's assertion that it did not agree to the settlement valuation
of $110,000 per claim until it "understood the total size of the class" as a result of the
parties' mutually identifying" 583 class members sometime between July and
November, 2001 is simply untrue.

9

Adversary Proceeding
No. A-99-412
Class Action

The settlement valuation per claim of $110,000 was agreed to in writing on September 20, 1999, two years prior to the time CAL now argues it was agreed to.

Furthermore, the September 20, 1999 settlement letter agreement, which was attached to the Class Action Complaint filed October 12, 1999 as Exhibit A (appended here as Exhibit G) makes no mention whatsoever as to the size of the class or the class definition, both of which were subsequently litigated and ruled upon by this Court. The letter agreement does, however, provide, that "each former Eastern pilot with an unresolved LPP claim" would be entitled to participate in the settlement.

CAL does not dispute — because it cannot dispute — the fact that each and every one of the LPP Claimants identified on Exhibit B were recognized by it to be "Eligible Pilots" for purposes of the ALPA/CAL settlement. Indeed, CAL directly corresponded with each one of them, sending them settlement documents which they rejected. CAL has known since 1994 that each of the persons on Exhibit B has an unresolved LPP claim; it has known the exact number of Eligible Pilots who rejected the ALPA/CAL settlement since 1994 and it has in its possession the names and addresses of the 1150 or so Eligible Pilots who rejected the ALPA/CAL settlement and retained their claims. Despite having that knowledge, CAL never disclosed the existence of said persons to the Plaintiffs, who only recently, through the procedures described in our motion, discovered them.

10

Adversary Proceeding
No. A-99-412
Class Action

As CAL has known "from the git go" exactly how many Eligible Pilots did not
participate in the ALPA/CAL settlement, as well as who they are, CAL is less than
candid with the Court when it suggests that it only recently agreed to the settlement
based upon a class consisting of less than half the persons who CAL agreed were
entitled to participate in the ALPA settlement but chose not to. Had CAL been candid at
the outset, this motion, and all of the work necessary to independently identify the
Eligible Pilots listed on Exhibit B, would not have been required. And even with the
inclusion of the newly discovered class members in this settlement, the total number of
participants is still approximately 40% less than the total number of Eligible Pilots CAL
agreed to settle with because of the close to 400 persons who withdrew their claims as
a result of this action. Accordingly, as the persons identified on Exhibit B meet all of
the class criteria and because they were known by CAL to have unresolved LPP claims
as of the September 20, 1999 settlement agreement, they are entitled to participate in
the class settlement.

## 4. The Class Definition Expressly Includes Persons Whose Claims Were Filed by ALPA

CAL contends that the substance of the Plaintiffs' Motion to Clarify was "whether
former EAL pilots covered under the ALPA proof of claim should be part of the class."
This is simply not true.

11

Adversary Proceeding
No. A-99-412
Class Action

The Motion for Clarification was brought because the class Action Plaintiffs

contended that ALPA's proof of claim covered all Eastern pilots, regardless of whether

or not they were members of the Union, and that the same thus applied to the new

hires. CAL disagreed. After carefully reviewing ALPA's proof of claim with CAL's

attorneys, the Plaintiffs agreed that because the proof of claim was expressly limited to

ALPA members, that it would only be effective for ALPA members and that it would not

apply to new hires. Consistent with this agreement, CAL and the Plaintiffs stipulated

before the Court for the entry of its July 10, 2001 Order Granting Class Action Plaintiffs'

Motion to Clarify Method of Identifying Class Members by including the requirement that

eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List and

that they be "*members of Eastern's flight deck collective bargaining unit*" rather than

simply former EAL flight deck employees "who claim they are entitled to the benefits of

the collective bargaining agreement (the "CBA") between Eastern Airlines and the Air

Line Pilots Association." This clarification comported with the parties' agreement that in

order to participate in the Class, pilots had to be active with EAL as of the stipulated

date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims

or have claims filed for them would be excluded from the class as they were not part of

the EAL pilots who were members of ALPA and they did not individually file timely

claims for enforcement of the LPPs in these proceedings. The corollary to this is that

this Court's July 10, 2001 Order expressly includes the newly identified class members

listed on Exhibit B as every one of them were ALPA members on the active seniority list

12

Adversary Proceeding
No. A-99-412
Class Action

as of the stipulated date of merger who neither accepted the ALPA/CAL settlement or

withdrew their claim in bankruptcy³. Accordingly, the persons identified on Exhibit B are

class members entitled to participate in the settlement.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to

find that the newly identified former EAL pilots identified on Exhibit B are members of

the class; to enter an order requiring CAL to fund the settlement for the new class

members forthwith; to enter an order providing for a 60 day extension of time from the

date of the hearing to provide notice to the newly identified former EAL pilots; and for

approval of the form of notice appended to the Motion.

Dated: June 12,2002

> TRALINS AND ASSOCIATES
> Attorneys for Class Plaintiffs
> 2930 One Biscayne Tower
> 2 S. Biscayne Blvd., Suite 2930
> Miami, FL 33131
> Telephone: 305-374-330
>
> By: **Myles J. Tralins**
> Myles J. Tralins
> Florida Bar No. 139543
>
> -and-

---

³       A substantial majority of the 400 persons in the Addington group who withdrew their claims pursuant to their stipulation with CAL and this Court's Order allowing them to do so, withdrew claims filed for them by ALPA, not claims they filed on their own. If CAL's position here is accepted, they had no claims to withdraw as they were "lost" when ALPA settled and withdrew its claim.

13

Adversary Proceeding
No. A-99-412
Class Action

PRICKETT, JONES & ELLIOTT
1310 King Street
Wilmington, DE 19801
Tel: (302) 888-6500

By: _____
    BRUCE E. JAMESON
    Delaware Bar No. 2931

14

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In Re:
CONTINENTAL AIRLINES, INC., et. al.

               Debtors,

Case No. 90-932
Chapter 11

JAMES BALDRIDGE, et. al.

               Plaintiffs,

v.

CONTINENTAL AIRLINES HOLDINGS, INC.,
et. al.

               Defendants

Adversary Proceeding
No. A-99-412
CLASS ACTION

      The Court having considered Plaintiff's Motion for Finding that Newly Identified Former EAL Pilots Are members of the Class, for Entry of Order Requiring CAL to Fund Settlement for New Class Members, for 90 Day Extension of Time to Provide Notice and for Approval of Form of Notice (the "Motion"), and for good cause shown,

      IT IS HEREBY ORDER THAT:

1.     The Motion is granted.

2.     All persons identified on Exhibits A and B to the Plaintiff's Reply in support of its Motion are found to meet the criteria for inclusion in the Class and to be members of the plaintiff class certified in this action (the "New Class Members");

3.    Counsel to the Plaintiff Class shall cause the Claims Administrator to mail a
copy of the Notice substantially in the form attached to the Motion as Exhibit D to
all New Class Members on or before June 21, 2002.

4.    The deadline for the New Class Members to file a Proof of Claim and Release
to participate in the settlement shall be _____September 19___, 2002.

5.    Defendant shall forthwith fund the settlement as to the New Class Members
as previously provided for under the terms of the Final Judgment and Order and
Settlement Agreement.


Dated:  June 14 , 2002


_____
United States Bankruptcy Court Judge

**UNREPORTED- NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-2374 and 03-2375

IN RE: CONTINENTAL AIRLINES INC., ET AL,

Debtor

RAMON E. O'NEILL

v.

JAMES BALDRIDGE; WILLIAM MANN; LARRY DUNN, individually
and as representatives of a class of persons similarly
situated who are referred to as LLP CLAIMANTS

UNITED STATES TRUSTEE

Ramon E. O'Neill,

Appellant

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civ. Nos. 02-CV-00375 and 02-CV-00479)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)

March 5, 2004

Before:    Sloviter, Nygaard, and Chertoff, Circuit Judges.

(Filed March 9, 2004 )

_____

OPINION

_____

PER CURIAM

Ramon O'Neill, a pilot formerly employed by Eastern Airlines, Inc., appeals from
an order of the United States District Court for the District of Delaware, affirming the
final judgment and order of dismissal of an adversary proceeding in the Continental
Airlines, Inc. bankruptcy. We will affirm.

As we write for the parties, we need not set forth the complete procedural and
factual history of the case. The history is set forth in detail in In re Continental Airlines,
125 F.3d 120, 124-28 (3d Cir. 1997) ("Continental I"). In that case, we held that the
question of whether there had been a "merger" between Continental and Eastern under
the terms of the collective bargaining agreement, and thus whether LPP Claimants[1] had
standing to maintain an individual claim for seniority integration was a matter for
arbitration, and that the District Court properly vacated an injunction against arbitration.

---

[1] "'LPP Claimants' refers to a group of former Eastern pilots [including O'Neill]
whose claims in this appeal are based on certain 'labor protective provisions' (LPPs)
contained in the collective bargaining agreement." Continental I, 125 F.3d at 124 n.1.

2

Continental I, 125 F.3d at 130, 137-38. We also held that "any claim based on an award
of seniority integration arising out of the resolution of the LPP dispute will be treated as a
claim in bankruptcy giving rise to a right of payment." Id. at 136.

Following Continental I, Continental took the position that any seniority
integration right acknowledged in arbitration would be subject to the limitations of
Bankruptcy Code Section 502(b)(7), 11 U.S.C. § 502(b)(7), and would thus be limited to
one year's back pay based on Continental's pay structure as of January 1991. An attorney
for the LPP claimants agreed to bring a declaratory judgment action in the Bankruptcy
Court to determine whether § 502(b)(7) applied, and requested class certification for the
action. The Bankruptcy Court certified the class under Fed. R. Civ. P. Rule 23(b)(2), and
later determined that § 502(b)(7) applied. Based on that finding, the LPP claimants
agreed to settle with Continental, with each class member to receive a prepetition general
unsecured claim in the amount of $110,000.[2] Continental represented that this amount
would be substantially more than the claimants would receive under § 502(b)(7)'s one-
year cap.

On January 31, 2002, the Bankruptcy Court held a hearing on a petition to approve
the settlement. O'Neill was the sole class member to appear at the hearing to object to the
settlement terms. The Bankruptcy Court approved the settlement, finding it to be "in all

---

[2] Although the Class initially appealed the declaratory judgment decision, following
settlement, a stipulation for dismissal of the appeal was filed on February 19, 2002 and
approved by the District Court on February 20, 2002.

3

respects, fair, reasonable and adequate to the Class." Appellees' App. at 223. Without

seeking a stay of the implementation of the settlement order, O'Neill appealed to the

District Court. The appeal was docketed in the District Court at 02-CV-00375 ("the

Settlement Order appeal"). On March 6, 2002, Continental filed a motion to compel

O'Neill to comply with the settlement order. The Bankruptcy Court entered an order

granting the motion on May 2, 2002. O'Neill's appeal from that order was docketed in

the District Court at 02-CV-00479 (the "Compliance Order appeal").

After motions and briefs were filed in the District Court, the Court entered an

order on April 1, 2003, captioned with both district court docket numbers, which affirmed

the Bankruptcy Court's settlement order, found the Settlement Order appeal moot, and

granted the appellees' motions to dismiss. The Court also held that the Compliance Order

appeal was mooted by the resolution of the Settlement Order appeal. This timely appeal

followed.[3]

O'Neill's appeal appears to raise three main points. First, he argues that

Continental perpetrated a fraud on the court by failing to disclose the "Ross arbitration,"

whereby former People Express pilots, some of whom were on Eastern's pilot seniority

list, were integrated into Continental's work force, while all other Eastern pilots were

precluded from a specific performance award. O'Neill appears to argue that due to this

---

[3] On the same day that O'Neill filed his Notice of Appeal, the District Court denied his request for rehearing en banc. Although O'Neill's Notice of Appeal does not mention this order, to the extent that he intended to appeal that order, we hold that the District Court did not abuse its discretion in denying the motion for rehearing.

4

new evidence, <u>Continental I</u> should be overturned. Second, O'Neill argues that the

settlement was not fair, as the $110,000 does not cover his last year's compensation.

Third, O'Neill argues that his right to arbitration was not extinguished by the settlement.

In the course of these arguments, O'Neill seems to argue that he was not properly

represented by class counsel.

Continental argues (and the class representative appellees make similar arguments)

that O'Neill cannot argue that there is any basis for relief on appeal because he failed to

appeal the Bankruptcy Court's order granting class certification, and he failed to appeal

the Bankruptcy Court's order finding that any claim would be capped by Bankruptcy

Code § 502(b)(7). The appellees also agree that O'Neill's appeal is moot.

We turn first to the issue of mootness, because, if a case is constitutionally moot,

we lack power to hear it. <u>United Artists Theatre Co. v. Walton</u>, 315 F.3d 217, 226 (3d

Cir. 2003). A case is constitutionally moot only if the court cannot fashion any form of

meaningful relief. <u>In re Continental Airlines, Inc.</u>, 91 F.3d 553, 558 (3d Cir. 1996) (en

banc), <u>cert. denied,</u> 519 U.S. 1057 (1997). We do not find the case to be constitutionally

moot. If we were to find that the settlement in this case was unfair to the class, we cannot

say that there would be no possible relief for the Appellant.

The District Court's holding that O'Neill's appeal was moot may refer to equitable

mootness; a doctrine which "prevents a court from unscrambling complex bankruptcy

reorganizations when the appealing party should have acted before the plan became

5

extremely difficult to retract." Nordhoff Investments, Inc. v. Zenith Electronics Corp.,
258 F.3d 180, 185 (3d Cir. 2001).[4]  The equitable mootness inquiry "is a more limited
inquiry into whether, though we have the power to hear a case, the equities weigh against
upsetting a bankruptcy plan that has already been confirmed." United Artists, 315 F.3d at
226. Particularly significant here is the fact that O'Neill did not obtain a stay of the
settlement confirmation. See In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir. 1993)
(party who appeals without protection of stay does so at his own risk). However, we
decline to engage in a complete analysis of whether the appeal is equitably moot. Rather,
we will, like the District Court, affirm the Settlement Order on the merits.

        We review a district court's decision to approve a proposed settlement of a class
action for an abuse of discretion. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). We
likewise review a court's grant of class certification under an abuse of discretion
standard. Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 165-66 (3d
Cir. 2001). Appellees argue that O'Neill cannot challenge the class certification, as he

---

[4] To determine whether an appeal is equitably moot, the court examines five factors:

  (1) whether the reorganization plan has been substantially consummated,
  (2) whether a stay has been obtained,
  (3) whether the relief requested would affect the rights of the parties not
  before the court,
  (4) whether the relief requested would affect the success of the plan, and
  (5) the public policy of affording finality to bankruptcy judgments.

In re: Continental Airlines, Inc., 91 F.3d at 560.

6

did not file an appeal of the order certifying the class. However, we hold that to the extent he objected to the class certification at the settlement hearing, he preserved his right to object to the certification on appeal. In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261-62 (10th Cir. 2004).

O'Neill did object to the class certification at the hearing, but he only objected to the extent that he felt the class was underinclusive, as it failed to include certain pilots, including those pilots who were parties to the Ross arbitration. This is related to O'Neill's first major point: that this Court should overturn Continental I and the settlement agreement because Continental failed to disclose the Ross arbitration in its bankruptcy.[5] The Bankruptcy Court noted that the Ross arbitration decision dealt with former Peoples Express pilots; and, while they may have been Eastern pilots at some point, the arbitration award was based on the Peoples Express merger. Appellees' App. at 177. O'Neill appears to argue that the former Peoples Express pilots should be members of the present class; and that if they were, he would be entitled to a specific performance award so that all class members would be treated equally. O'Neill has not represented that he was a former Peoples Express pilot. Thus, he is not entitled to the same treatment as those pilots. Further, his argument fails as this Court has already limited class members' relief to money damages. Continental I, 125 F.3d at 136.

---

[5] Continental declined to discuss this issue in its brief "because matters relating to the so-called 'Ross Arbitration' are not contained in the record on appeal . . . ." Brief at 14. We note that the Ross arbitration was discussed at length in the settlement fairness hearing, and thus find that it is the proper subject of appeal.

7

To the extent that O'Neill argued that other pilots were missing from the class list,

the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a

clause which allowed other class members who met the definitions to file a claim by April

3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy

Court.

O'Neill's second argument is that the settlement is not fair. Given our previous

holding that any claim based on an award of seniority integration would be satisfied by a

monetary claim in bankruptcy, the Bankruptcy Court's holding that any such claim would

be limited to one-year's salary pursuant to § 502(b)(7),[6] and the fact that the settlement

provided two to three and one-half times the one-year cap for every class member, we

hold that the Bankruptcy Court did not abuse its discretion in finding that the settlement

was fair. O'Neill argues on appeal that the $110,000 settlement amount does not cover

his last year's compensation. O'Neill argument appears to be based on his salary at

Eastern, rather than what his salary would have been at Continental. As class counsel

pointed out at the fairness hearing, even if an arbitrator found that O'Neill's seniority had

been preserved through the LPPs, his position would have been subject to Continental's

pay structure. Appellees' App. at 185. O'Neill conceded in the fairness hearing that the

maximum Continental salary was $64,000. Appellees' App. at 187. Thus, the $110,000

---

[6] As Appellees note, we cannot reach the merits of whether the Bankruptcy Court
correctly found that § 502(b)(7) applied, as no party preserved a timely appeal to that final
decision.

8

exceeds any amount he could have recovered in arbitration, as the amount would be subject to the cap of § 502(b)(7).

Finally, O'Neill argues that his right to arbitration survives the settlement. We disagree. If O'Neill were to return to arbitration, the arbitrator might recognize his right to seniority integration under the LPPs. However, any amount awarded by the arbitrator would be subject to § 502(b)(7)'s cap and would be less than he can recover under the settlement. Any relief awarded by the arbitrator would be meaningless; thus, O'Neill's right to arbitration has been mooted by the settlement.

For the foregoing reasons, we will affirm.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
                                          x
In Re:                                    :
                                          :                    Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,      :                       Chapter 11
                                          :
                      Debtors             :
                                          x
                                          :
JAMES BALDRIDGE, WILLIAM MANN,            :
and LARRY DUNN, individually, and         :
as representatives of a class of persons  :
similarly situated who are referred to as :
the LPP CLAIMANTS,                        :
                                          :
                      Plaintiffs,         :               Adversary Proceeding
v.                                        :                   No. A-99-412
                                          :                     Class Action
CONTINENTAL AIRLINES HOLDINGS, INC.,      :
CONTINENTAL AIRLINES, INC.,               :
and SYSTEM ONE HOLDINGS, INC.,            :
                                          :
                      Defendants.         :
                                          x
```

### NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND SETTLEMENT HEARING

TO ALL PERSONS WHO:

  (1)  ARE EASTERN AIRLINES FORMER FLIGHT DECK EMPLOYEES IDENTIFIED ON EASTERN AIRLINES' NOVEMBER 1990 ALPHABETICAL SENIORITY LIST;

  (2)  WHO CLAIM THEY ARE ENTITLED TO THE BENEFITS OF THE COLLECTIVE BARGAINING AGREEMENT BETWEEN EASTERN AIRLINES AND THE AIR LINE PILOTS ASSOCIATION IN EFFECT AT THE TIME THAT EASTERN AIRLINES ALLEGEDLY MERGED WITH CONTINENTAL AIRLINES HOLDINGS, INC.;

  (3)  WHO FILED A TIMELY CLAIM IN THE ABOVE-ENTITLED REORGANIZATION OF CONTINENTAL AIRLINES, INC., CASE NO. 90-932 FOR ENFORCEMENT OF THE LABOR PROTECTION PRIVILEGES EMBODIED IN THE EASTERN AIRLINES COLLECTIVE BARGAINING AGREEMENT EITHER INDIVIDUALLY OR AS A MEMBER OF THE AIR LINE PILOTS ASSOCIATION OR AS A NAMED LABOR PROTECTIVE PROVISION CLAIMANT REPRESENTED BY CLASS COUNSEL IN THE REORGANIZATION AND WHO ARE IDENTIFIED ON EXHIBIT A ATTACHED TO THIS NOTICE;

EXCEPT (1) THOSE PERSONS WHO SETTLED, WAIVED OR RELINQUISHED HIS OR HER LPP CLAIM WITH CONTINENTAL AND (2) THOSE PERSONS WHO MOVED TO INTERVENE IN THIS CASE, PURSUANT TO THE "MOTION TO INTERVENE IN ADVERSARY PROCEEDING" FILED NOVEMBER 11, 1999 WHO FILED A NOTICE OF WITHDRAWAL OF HIS OR HER PROOF OF CLAIM IN THIS REORGANIZATION WITH THE CLERK OF THE BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE ON OR BEFORE APRIL 15, 2000.

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  THE CONTINENTAL DEFENDANTS HAVE AGREED TO A SETTLEMENT OF THIS LITIGATION WHICH PROVIDES FOR FINANCIAL BENEFITS TO THE MEMBERS OF THE CLASS IF THE SETTLEMENT IS APPROVED BY THE COURT.

IMPORTANT:   IN ORDER FOR YOU TO PARTICIPATE IN THIS SETTLEMENT AND RECEIVE YOUR SHARE OF THE SETTLEMENT BENEFITS, YOU MUST COMPLETE AND RETURN THE ATTACHED PROOF OF CLAIM AND WAIVER AND RELEASE BY NO LATER THAN APRIL 3, 2002.

        THE PURPOSE OF THIS NOTICE IS TO ADVISE YOU OF THE PROPOSED SETTLEMENT OF THIS CLASS ACTION, COUNSEL'S FEE APPLICATION, THE APPLICATION FOR COMPENSATION AWARDS BY THE CLASS REPRESENTATIVES AND YOUR RIGHTS WITH RESPECT TO THESE MATTERS.  THIS NOTICE IS NOT AN EXPRESSION OF OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY ANY PARTY IN THIS ACTION.

        THE PROPOSED SETTLEMENT CONSISTS OF ALLOWED PRE-PETITION GENERAL UNSECURED CLAIMS IN THE CONTINENTAL BANKRUPTCY WITH EACH ELIGIBLE CLAIMANT RECEIVING AN ALLOWED PRE-PETITION GENERAL UNSECURED CLAIM IN THE AMOUNT OF ONE HUNDRED TEN THOUSAND ($110,000.00) DOLLARS RESULTING IN THE DISTRIBUTION OF GROSS SETTLEMENT CONSIDERATION FROM THE CONTINENTAL BANKRUPTCY ESTATE FOR EACH CLASS MEMBER OF 340 SHARES OF CONTINENTAL AIRLINES CLASS B COMMON STOCK AND $83.14 IN CASH MINUS COURT APPROVED FEES, COSTS AND EXPENSES.
        IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT BENEFITS.
        YOU MUST FILE A PROOF OF CLAIM BY APRIL 3, 2002 IN ACCORDANCE WITH PARAGRAPH 15 BELOW TO RECEIVE ANY SHARE OF THE SETTLEMENT BENEFITS TO WHICH YOU MAY BE ENTITLED.
        IF, AFTER READING THIS NOTICE, YOU HAVE QUESTIONS CONCERNING THE SETTLEMENT, THE SETTLEMENT FAIRNESS HEARING OR ANY OF THE INFORMATION CONTAINED IN THIS NOTICE, YOU MAY CALL OR WRITE TO THE CLAIMS ADMINISTRATOR AT:

**EAL LPP Class Action Settlement**
**The Garden City Group, Inc.**
**Claims Administrator**
**105 Maxess Road**
**Melville, NY  11747**
**1-800-327-3664**
**WWW.EALLPPCLASSACTION.COM**

NOT WRITE TO OR TELEPHONE THE COURT.

        You are not entitled to share in the Settlement if you have already settled your labor protective provision (LPP) claim against the Defendants and signed a release or if you withdrew your Proof of Claim in the Continental bankruptcy proceedings.

## TABLE OF CONTENTS

|  |  | PAGE NO. |
|---|---|---|
| I. | SUMMARY OF THE LITIGATION | 2 |
| II. | CONTINENTAL'S DENIAL OF LIABILITY | 2 |
| III. | DISCOVERY/FACTUAL INVESTIGATION | 2 |
|  | SUMMARY OF THE PROPOSED SETTLEMENT | 3 |
|  | SUBMISSION OF PROOFS OF CLAIM | 3 |
| VI. | RECOMMENDATION OF COUNSEL | 3 |
| VII. | APPLICATION FOR ATTORNEYS' FEES, COSTS, | 3 |
|  | DISBURSEMENTS AND COMPENSATION AWARD |  |
|  | TO PLAINTIFFS |  |
| VIII. | RIGHT TO OBJECT | 4 |
| IX. | SETTLEMENT FAIRNESS HEARING | 4 |
| X. | SCOPE OF THIS NOTICE AND FURTHER INFORMATION | 4 |

## I.  SUMMARY OF THE LITIGATION

1.    The *Baldridge* litigation is a class action lawsuit filed in October 1999 as an adversary proceeding in the United States Bankruptcy Court for the District of Delaware in the Continental Airlines bankruptcy proceedings (*In re Continental Airlines*, Case No. 90-932) by James Baldridge, William Mann and Larry Dunn. The defendants in the bankruptcy proceedings are Continental Airlines Holdings, Inc., Continental Airlines, Inc. and System One Holdings, Inc.

The litigation was instituted pursuant to a settlement agreement reached between the Continental defendants and the Class Representatives after almost nine years of arbitration, litigation and appellate proceedings in order to obtain a binding determination on a class-wide basis of the measure of damages applicable to the labor protective provision claims filed on behalf of or by Eastern Airlines flight deck employees in the Continental Airlines bankruptcy proceedings.

2.    Plaintiffs contended that as a result of prior litigation and appeals which established that Continental has the right to substitute the equitable remedy of monetary damages as a general prepetition unsecured claim in bankruptcy to satisfy the labor protective provisions' right to seniority integration if a merger between Eastern Airlines and Continental occurred (*In Re Continental Airlines*, 125 F.3d 120, (3rd Cir. 1997) *cert. denied* 118 S. Ct. 1049, 140 L. Ed. 2d 113 (1998)), that the value of the Eastern flight deck crew members LPP claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date.

3.    In response to the lawsuit, Continental denied that the value of the LPP claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern flight deck employee's normal retirement date and affirmatively asserted that the LPP claims are limited to one year's back pay pursuant to 11 U.S.C. §502(b)(7) (the Bankruptcy Code).

4.    The Court has certified this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

5.    The Court has ruled on the merits of Plaintiffs' claim, declaring that the LPP claims are limited by 11 U.S.C. §502(b)(7).

6.    A notice of appeal of the Court's ruling was timely filed with the United States District Court for the District of Delaware. The briefing schedule has been continued pending approval of the Settlement.

## II.  CONTINENTAL'S DENIAL OF LIABILITY

7.    The Continental defendants deny, and continue to deny, that Texas Air's acquisition of Eastern Airlines resulted in a merger between Continental ... Eastern. The Continental defendants have denied, and continue to deny, that any Eastern flight deck crew member has a right to seek seniority integration and/or compensation from Continental because no such merger occurred. The Continental defendants have denied, and continue to deny, that even if a merger did occur, that plaintiffs are entitled to value their compensation claims from the date of the alleged merger until each plaintiffs' normal date of retirement. The Continental defendants maintain that the determination of the Bankruptcy Court limiting the value of the claims to one year's back pay pursuant to 11 U.S.C. §502(b)(7) (the Bankruptcy Code) will be affirmed on appeal. The Continental defendants entered into the Settlement solely to avoid the substantial continuing expense, burden, inconvenience, distraction and risk of continued litigation, and to put to rest the claims raised or which could have been raised, in the litigation.

## III.  DISCOVERY/FACTUAL INVESTIGATION

8.    Class Counsel has, since 1991, conducted extensive factual investigation of the claims asserted in the Litigation. During the eight and one half years preceding the filing of this litigation, Class Counsel reviewed and conducted an in-depth analysis of approximately one million pages of documents including hundreds of thousands of pages of business records, court documents, public filings and discovery materials on the issues raised by this litigation. This review and analysis included extensive materials regarding the acquisition of Eastern Airlines by Texas Air Corporation; the Securities and Exchange Commission filings of Eastern, Continental and Texas Air; filings and administrative actions by the United States Department of Transportation regarding Eastern, Continental and Texas Air; filings and administrative actions by the Federal Aviation Administration regarding Eastern, Continental and Texas Air; the bankruptcy court proceedings of Eastern Airlines filed as *In re Ionosphere Club* in the Bankruptcy Court for the Southern District of New York, including various adversary proceedings concerning the disposition of Eastern's assets; appeals regarding Eastern's obligation to arbitrate the LPP issues; the proceedings brought by the Eastern Estate against Continental regarding the transfer of assets from Eastern to Continental; administrative proceedings regarding the alleged "single-carrier" status of Eastern and Continental; the bankruptcy court proceedings of Continental Airlines in the United States Bankruptcy Court for Delaware and various appeals taken therefrom; the business records of Eastern Airlines regarding the transfer of assets to Continental; documentation and materials obtained through discovery, including depositions and interrogatories, in the National Mediation Board proceedings and in related litigation regarding the alleged merger of Eastern and Continental under the LPPs; System Board of Adjustment proceedings regarding the purpose and intent of the Alleghany-Mohawk provisions of the Eastern pilots' collective bargaining agreement which provides for seniority integration in the event of a merger; and materials, documents, transcripts, audio and video tapes and recordings, and detailed employment and financial information provided by hundreds of members of the class. Utilizing this extensive factual investigation, Class Counsel analyzed the theories of liability on which the Litigation and the underlying arbitration are based, as well as the Defendants' defenses to the claims that have been asserted in the same. The discovery and factual investigation conducted by the Class Counsel provided Class Counsel with a thorough familiarity of the liability and damages aspects of the claims asserted in the Litigation and underlying arbitration and assisted Class Counsel in evaluating the fairness and adequacy of the Settlement.

## IV.  SUMMARY OF THE PROPOSED SETTLEMENT

9.    Prior to the institution of this action, Class Counsel of the Bankruptcy Court's 1993 Orders enjoining the National Mediation Board arbitration from proceeding as to Continental and judicially estopping Continental from litigating whether or not it was bound by the Eastern collective bargaining agreement if it was determined that a merger occurred. The Third Circuit also affirmed the decision of the Bankruptcy Court determining that the equitable remedy of seniority integration constituted a claim within the meaning of the Bankruptcy Code which was convertible to money damages as a general, dischargeable, unsecured claim entitled to no administrative priority. After the United States Supreme Court declined to review the Third Circuit's decision, Class Counsel initiated arbitration proceedings against Continental on the merger issue with the National ... Board. Recognizing that even if the National Mediation Board ruled that a merger occurred triggering the LPPs against Continental and that said ... was sustained on appeal, Continental would exercise its judicially mandated right to convert the equitable remedy into general, dischargeable, unsecured claims in bankruptcy, and a second round of protracted litigation and appeals would ensue regarding the valuation of the LPP claims in bankruptcy, Class Counsel engaged in negotiations with Continental leading to the Settlement now before the Court for approval. The Settlement required Class Counsel to bring an action behalf of all eligible EAL pilots to obtain a final declaratory ruling on a class-wide basis as to whether the value of the Eastern flight deck crew members' LPP

claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date, as the LPP Claimants contended, or whether the LPP claims, as Continental maintained, are limited to one year's back pay pursuant to 11 U.S.C. §502(b)(7) of the Bankruptcy Code.

10.    In consideration for proceeding with and obtaining a determination of this issue, Continental agreed to value each eligible Eastern pilot's claim at _____ Hundred Ten Thousand ($110,000.00) Dollars, even if the Court ruled that Continental's position was correct and the claims limited to one year's back pay. Continental also agreed that if the Court determined that the value of the Eastern flight deck crew members' LPP claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date, the Class would be entitled to proceed with the National Mediation Board arbitration in order to determine whether or not a merger occurred in lieu of the Settlement.

The Court ruled on the merits of Plaintiffs' claim, declaring that the LPP Claims are limited to one year by 11 U.S.C. §502(b)(7).  The $110,000.00 valuation for each member of the Class' LPP claim is substantially greater than the allowed claim would otherwise be if, after arbitration and litigation, it was determined that a merger occurred.

11.    The Settlement Agreement thus provides that if the Settlement is approved by the Court, the Class shall receive the following Gross Settlement Consideration:

Each Eligible Claimant shall receive an allowed pre-petition general unsecured claim in the amount of One Hundred Ten ($110,000.00) Thousand Dollars and each such allowed claim will be funded with 340 shares Continental Airlines Class B Common Stock and $63.14 in cash.

12.    If the Court grants Final Approval of the proposed Settlement of the Litigation, and enters judgment thereon, the Gross Settlement Consideration shall be reduced by the settlement costs, attorneys' fees, reimbursement of expenses and class representative compensation approved by the Court (see Section VII, paragraphs 17 and 18 below). The remaining Net Cash Settlement Amount will thereafter be distributed to the members of the Class pursuant to the Settlement Agreement which has been submitted to the Class Counsel for the approval of the Court.

13.    **The Release of Settled Claims.** The claims that are being released (the "Settled Claims") are any and all claims and causes of action, for any form of relief, that have been or could have been asserted by the Class, or any individual Class member against the Released Parties, including without limitation any claim, arising out of or relating to the allegations which were or could have been made in the Litigation. Approval of the Settlement will release and discharge the Settled Claims against the bankruptcy estate of Continental Airlines, Inc. and its affiliated debtors, Continental Airlines Holdings, Inc., Continental Airlines, Inc., the reorganized entity and its affiliates), System One Holdings, Inc., Express-Jet Airlines, Inc. a/k/a Continental Express, Continental Micronesia, Inc., its subsidiaries and affiliates, and its and their directors and officers, stockholders, employees, attorneys, agents, and representatives (the "Released Parties") and the Settlement will result in the dismissal of all such actions or claims. A full description of the Settled Claims, the release and discharge, and the bar on commencing any action or other proceeding is set forth in the Settlement Agreement, which is available on the website established for this Class Action Settlement at WWW.EALLPPCLASSACTION.COM or from Class Counsel or at the Court.

14.    Termination Provisions.  If the Court does not approve the proposed Settlement or it is terminated by the Parties in accordance with its terms, the rights and duties of the Parties will continue as if no Settlement Agreement has been reached and members of the Class will have no rights in or to the proposed Gross Settlement Consideration.

## V. SUBMISSION OF PROOFS OF CLAIM

15.    In order for you to share in the Net Cash Settlement Amount:
(i)    You must submit a properly executed Proof of Claim (a copy of which accompanies this Notice) and mail it to:

**EAL LPP Class Action Settlement**
**The Garden City Group, Inc.**
**Class Administrator**
**105 Maxess Road**
**Melville, NY 11747**

no later than April 3, 2002. Each Proof of Claim shall be deemed filed when postmarked (if properly addressed and mailed by first class mail, postage prepaid). Any Proof of Claim submitted in any other manner shall be deemed to have been filed when it is actually received at the above address.
(ii) Your Proof of Claim must satisfy the following conditions:
(a) It must be properly filled out, signed under penalty of perjury, and filed in a timely manner in accordance with the provisions of the preceding paragraph;
(b) It must be complete and contain no material deletions or modifications of any of the text (except for your corrections, if any, to your name, address and other personal data).

## VI. RECOMMENDATION OF COUNSEL

16.    Class Counsel recommends the Settlement as fair, reasonable, and adequate based on the comprehensive factual investigation and legal analysis which was conducted.  Class Counsel weighed the benefit of the Gross Settlement Consideration against the risks of continued litigation. The risks considered included: an assessment of Defendants' asserted defenses, including sharply disputed issues of fact; the probability of reversing the decision of the Bankruptcy Court's decision applying 11 U.S.C. §502(b)(7) to the LPP claims; the time involved in additional appeals of the Bankruptcy Court decision, the certainty in predicting the outcome of an arbitration on the issue of the alleged merger between Eastern and Continental, the probabilities of success; the uncertainty with respect to the outcome of any such arbitration; the limitation on damages available from such arbitration if the Bankruptcy Court's decision is sustained; the potential for the diminishment of the fund available for payment of the claims in the Continental bankruptcy; and the risks and delay of an appeal by the Parties not prevailing at the arbitration.

## VII. APPLICATION FOR ATTORNEYS' FEES, COSTS, DISBURSEMENTS AND COMPENSATION AWARDS TO CLASS

17.    If this Settlement is approved by the Court, Class Counsel will request the Court to award attorneys' fees of Thirty Percent (30%) of the Gross Settlement Consideration. Class Counsel will also seek reimbursement of litigation expenses which are estimated not to exceed $160,000.00. To the extent approved by the Court, the distributions to Class Members will be reduced by such attorneys' fees, costs, and expenses, as well as Settlement Administration Costs. Settlement Administration Costs are all Court-approved reasonable costs and expenses incurred in connection with the preparation, printing, mailing and publication of the Class Settlement Notice and Summary Notice, the administration of the Proofs of Claim filed by members of the Class and the distribution of the Gross Settlement Consideration. Members of the Class are not otherwise responsible for attorneys' fees, costs, and expenses. Class Counsel have reimbursed Eastern Pilots for Fairness, Inc. ("Corporation"), a not-for-profit corporation which has provided economic support for this litigation since 1991, whereby Class Counsel will reimburse the Corporation and its members in good standing (who are also Class Members) from their attorneys' fees awarded by Class Counsel a portion of the monies they have advanced so that all Class Members will been on a pro rata basis the attorneys' fees and expenses for the costs advanced. One half of the Class. The sole basis for this partial reimbursement is to ensure that those Class Members who have already advanced monies on behalf of the class do not bear an unduly disproportionate amount of the costs and attorneys' fees.

18.    Class Counsel intends to apply to the Court for the payment of a compensation award of 1,700 shares of Continental Airlines stock for each of three named Class Representative Plaintiffs, James Baldridge, William Mann, and Larry Dunn for the ten years of significant time, labor and effort expended by them in this matter. To the extent approved by the Court, the compensation awards will be paid from the Gross Settlement Consideration and the distribution to Class Members will be reduced on a pro rata basis by such compensation awards. In addition to actively participating in the Litigation and in all administrative and judicial proceedings since 1991 which led up to and were necessary for the Litigation, the three Class Representatives were in constant contact with members of

e Class and with Class Counsel, coordinating fund raising, assisting in document production, interfacing with communications with class members and providing upport services for all legal proceedings.

## VIII.  RIGHT TO OBJECT

19.    The Settlement Agreement will not become effective until it is approved by the Court as fair, reasonable, and adequate and Final Judgment is dismissing the claims of the Plaintiff and the Class with prejudice. Any member of the Class, either in person or through counsel, may appear at the ment Hearing scheduled for January 31, 2002, and be heard on whether (i) the proposed Settlement of the Litigation should be approved as fair, reasonable, nd adequate; and (ii) there should be an award of attorneys' fees, costs, and expenses, including compensation awards to the Class Representatives.  No ember of the Class shall be heard or entitled to contest the approval of the Settlement terms and conditions, of the awards, fees, costs, and disbursements quested, unless on or before January 18, 2002, that person has filed said objections in writing and copies of any supporting papers and briefs with the Clerk of e Court for the United States Bankruptcy Court for the District of Delaware.  Copies of the objections filed must also show proof of service upon each of the llowing:

Myles J. Tralins
Tralins And Associates
One Biscayne Tower
2 S. Biscayne Blvd., #2930
Miami, FL  33131
Attorney for the Class

Robert Brady
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Attorney for Defendants

y member of the Class who has not made his, her, or its objection in the manner provided shall be deemed to have waived such objection and shall forever be eclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed Settlement.  IF YOU APPROVE OF OR DO NOT OPPOSE E SETTLEMENT, OR THE APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS, EXPENSES AND COMPENSATION  AWARDS, U DO NOT NEED TO APPEAR AT THE HEARING.

## IX.  SETTLEMENT FAIRNESS HEARING

20.    The Court will conduct a Settlement Fairness Hearing on January 31, 2002, commencing at 2:00 p.m. at the United States Courthouse, 844 g Street, Wilmington, Delaware 19801 in Courtroom 1 for the following purposes: (1) to determine whether the Class Representatives and Class Counsel quately have represented the interests of the Class to satisfy the requirement of due process; (2) to consider whether the terms and conditions of the tlement Agreement are fair, reasonable, and adequate for the settlement of all claims asserted by the Class against the Defendants now pending in this Court ler the above caption; (3) to determine whether the Amended Order granting class certification previously filed by the parties should be entered (4) to consider ither judgment should be entered releasing the claims in the Complaint; (5) to consider whether judgment should be entered dismissing the Complaint on the its and with prejudice in favor of the Defendants as against all persons or entities who are members of the previously certified Class certified for purposes of Settlement, and who have not been excluded therefrom; and (6) to consider whether and in what amount to award Class Counsel fees and reimbursement of ation expenses; and (7) to consider whether and in what amount to award compensation awards to the Class Representatives.

21.    The Court has reserved the right to approve the Settlement with or without modification and with or without further notice of any kind.  The Court further reserved the right to enter the Order and Final Judgment dismissing the Complaint on the merits and with prejudice as against the Plaintiff and all Class nbers, regardless of whether it has approved the attorneys' fees and expenses.  The Court has also reserved the right to adjourn the Settlement Fairness ring without further notice.

## X.  SCOPE OF THIS NOTICE AND FURTHER INFORMATION

22.    THIS NOTICE CONTAINS ONLY A SUMMARY OF THE LITIGATION AND THE PROPOSED SETTLEMENT.  FOR MORE COMPLETE RMATION CONCERNING THESE MATTERS, YOU MAY INSPECT THE PLEADINGS, SETTLEMENT AGREEMENT, AND OTHER PAPERS ON FILE IN LITIGATION DURING NORMAL BUSINESS HOURS AT THE OFFICE OF THE CLERK, UNITED STATES DISTRICT BANKRUPTCY COURT FOR THE RICT OF DELAWARE, UNITED STATES COURTHOUSE, 844 KING STREET, WILMINGTON, DELAWARE 19801.

23.    You may telephone or write to the Claims Administrator for additional information or for copies of the Settlement Agreement at:

EAL LPP Class Action Settlement
The Garden City Group, Inc.
Claims Administrator
105 Maxess Road
Melville, NY  11747
1-800-327-3664
WWW.EALLPPCLASSACTION.COM

OT WRITE TO OR TELEPHONE THE COURT FOR INFORMATION.

l: November 21, 2001

BY ORDER OF THE COURT
Clerk of the Court
United States District Court
for the District of Delaware

# EXHIBIT A

Abbott, Robert D.
Aber, L.A.
Abrams, Billy L.
Adams, Jr., J.T.
Adams, Keith J.
Alexander, Harold
Alford, Wayne L.
Alvarez, Jr. Jose A.
Anderson, Ronald R.
Andrews, Jr. George M.
Angeletti, Thomas J.
Armstrong, III F.C.
Arnott, Brian G.
Atteberry, William M.
Ayer, K.H.
Baalen, P.
Baldoni, L.A.
Baldridge, James H.
Balukonis, V.J.
Baque, III Frank
Barge, Patrick S.
Barnes, H. Bryant
Barnes, William H.
Barrero, Frank
Bartlett, David R.
Bauch, James H.
Beard, Ronald E.
Beattie, Donald G.
Bealy, Gregory L.
Behr, Peter J.
Bell, D.A.
Bell, L.
Beltran, J.E
Berghane, D. A.
Bergstein, D.S.
Berry, A.L.
Berwick, T.N.
Beveridge, A.L.
Bialko, Peter J.
Biggs, Clifford G.
Bisgnano, Charles
Bjelkevig, Richy A.
Blackburn James R.
Blair, T.D.
Blankenship, Jr. O.T.
Blix, Victor E. III
Boja, Robert N.
Bonna, F.
Boswell, L.L.
Brablec, Douglas D.
Bradley, W.D.
Bradley, R.
Brandt, William, M.
Braynon, Oscar J.
Bredthauer, Dirk
Bromschwig, Kurl F.
Brown, Walter R.
Browning, David L.
Bryant, Charles C.
Buchanan, E.J.
Bundrant, William D
Bunn, Larry D.
Buntin, Edward S.
Burke, R.T.
Burke, John A.
Burkhart, Ronnie L.
Burns, David A.
Butler, David S.
Butts, Ronald G.
Carl, George L.
Carlson, Bruce E.
Carter, Bruce, R.
Carter, D.L.
Case, Douglas W.

Chaile, Bruce
Champage, Carl M.
Chapo, James E.
Chames, Jonathan
Cheek, Raymond T.
Chirino, Rafael E.
Christopher, Anthony S.
Cirrotti, Dennis J.
Clark, Ronald D.
Clark, D.E.
Clark, Wesley C.
Clary, B.K.
Clary, M.R.
Cocuzzo, D.J.
Cohn, Alan S.
Cole, John D.
Cole, William F.
Colli, G.F.
Collier, W.R.
Commander, Jr. John B.
Compton, John P.
Connell, E.W.
Connolly, James M.
Conti, R.G.
Cook, Carl D.
Cook, Kenneth E.
Cooper, T.L.
Cornay, Ray
Cowen, John B.
Craig, Robert L.
Crane, W.E.
Craus, C.M.
Crawford, D.B.
Crow, Kenneth P.
Crush, James M.
Curran, T.R.
Daniel, Jr., James W.
Davidson, William F.
Davis, Charles B.
Davis, Gerald O.
Davison, David J.
Davoust,W.P.
De Phillips, Floyd M.
Deeton, James L.
Delaria, David J.
Deming, Maurice A.
Devereaux, John A.
Devton, John R.
Dickinson, Randall L.
Dickman, George A.
Dixon Carroll
Dobson, Gordon W.
Doctorchik, Scott
Dodson, Bonnie U.
Dodson, Theodore E.
Doglione, Frank
Donovan, M.D.
Donovan, M.F.
Dorticos, Raul H.
Dublin, Robert S.
Duckworth, Thomas O.
Dugger, T.R.
Dundas, Charles P.
Dunn, L.J.
Dunn, R.A.
Durante, J.P.
Durkin, G.P.
Dyer, Charles G.
Dylong, J.
Ealy, R.L.
Eastman, J.D.
Edwards, K.A.
Egut, Ronald S.
Eldridge, Dorothy J.
Elmdanat, R.

Emery, James C,
Engelke, Marc J.
Engelke, Warren L.
Erickson, Alan W.
Evans, R.H.
Fahn, C.L.
Fant, Jr. Glenn E.
Farenga, J.H.
Farnsworth, Earnest L.
Farnsworth, K.L.
Farrell, Richard L.
Faulkner, H.C.
Feliu, John E.
Finch, R.A.
Fisher, III Joel F.
Fong, G.W.
Foresto, J.M.
Forsberg, Scott
Foster, Hubert E.
Foster, Robert W.
Fowells, James E.
Francis, R.H.
Frank, William
Frater, K.X.
Frazier, Bennie W.
Freytes, Luis R.
Friedrichs, Howard W.
Fritch, Donald A.
Frost, Wayne B.
Fryling, Albert A.
Fugedy, J.J.
Gaedtke, Michael L.
Garcia-Vergara, H.
Gardner, David E.
Gary, Carrol J.
Garza, E.
George, Henry R.
Geraghty, James D.
Gibson, Randall
Gordon, D.G.
Gorman, Barry William
Govatos, John D.
Grafton, Jr. J.R.
Grau, F.L.
Green, Grant S.
Green, G.A.
Greene, David L.
Greksa, G.J.
Grenie, A.A.
Gribas, Kenneth
Griffin, Donny E.
Griffith, Bobbie
Griggs, R.P.
Groff, W.V.
Grubbs, R.E.
Gruetzner, Allen
Grzegorzak, S.K.
Gunn, George H.
Gurl, John T.
Gurley, Louis E.
Hall, B.W.
Hall, Howard W.
Halloran, D.
Hamilton, Walcott B.
Haney, Fred C.
Hansen, P.W.
Hanshaw, R.G.
Ham, George F.
Harrell, Bruce
Harris, R.J.
Hartley, J.D.
Hassett, P.R.
Hastings, Gregory A.
Hauth, David A.
Hawkins, Thomas R.

Hiatt, Jr. H.W.
Higgins, R.F.
Hill, W.B.
Hinsdale, James P.
Hipps, William D.
Hodgers, Benjamin
Hooton, J.W.
Houston, Charles M.
Howard, C.A.
Howard, Charles B.
Howard, James W.
Huddleston, J.D.
Huges Jr., James R.
Hunter, Richard I.
Hurley, Jay
Hutchin, Robert A.
Hutson, R.T.
Ingram, Capt. Culpepper F.
Inman, Brownie N.
Iranipour, F.
Babbitt, Randolph J.
Jacobowitz, L.
Jansen, C.W.
Jaye, Mamadou D.
Johansen, William H.
Johnson, R.A.
Johnson, C.T.
Johnson, G.M.
Johnson, Richard A.
Johnson, R. A.
Johnson, Robert E.
Jones, John L.
Jordan, W.O.
Kalantsri, F.
Kane, S.G.
Keeler, R.L.
Kennedy, M.J.
Khan, N.
Kimble, R. L.
Kingwell, R.A.
Kluthe, D.B.
Koziol, R. L.
Kritcher, Lawrence N.
Krueger, Fred W.
Kucklick, Joe
Kurtz, Hugo E.
Laine, J. R.
Laing, R. C.
Larnaute, L .L.
Lambie, J. M.
Lamecker, D. R.
Landa, George
Landry, Jr. Donald J.
Lane, F. W.
Lane, Jr. Gordon B.
Lane, Malcolm V.
Langer, Lawrence E.
Lantz, K. M.
Latham, Richard C.
Lavarello, E. F.
Lawrence, Charles W.
Lea, Robert G.
Lee, J. R.
Lee, Allan R.
Lehman, L.G.
Leonhardt, Stephen J.
Levy, Simon
Lewandowski, R.A.
Lewicki, John A.
Lewis, Gary M.
Liebing, Kurt M..
Lindell R.W.
Lindner, A.
Link, C.R.
Linn, D. N.

# EXHIBIT A

Lorenzo, Gustavo A.
Love, F.W.
Lyter, Jr. Henry B.
Lytle, Richard A.
Maarouf, D. H.
Manduley, Leonard
Malone, Steven J.
Mann, William B. Jr.
Manning, Bob S.
Marciano, Anthony P.
Marcinek, Jerry V.
Marino, Edward H.
Martinez-Alegri, J.
Marsh, A.A.
Mason, Hugh C.
Mathisen, N.A.
Matthews, Patrick M.
Maugeri, Peter J.
Mauro, A.F.
McCabe, Larry G.
McCann, Joseph P.
McCartney, Kenneth L.
McClannahan, Richard W.
McCracke, Keith K.
McDonald, T.L.
McHenry, J.R.
McKenna, C.E
McKenna, William D.
McKennan, D.J.
McKeon, A. T.
McLean, D. W.
McMahon, Michael S.
McQuigg, A.R.
McRae, James D.
Means, James A.
Menchini, R.L.
Mendez, E.
Merly, Hector M.
Mesmer, Frederick H.
Michael, Donald K.
Milanette, R. T.
Miller, Daniel P.
Miller, Frank P.
Miller III, W.B.
Miller, James A.
Miller, Robert L.
Miller, Thomas O.
Minardi, Jame V.
Misencik, Paul R.
Miskotten, Edward
Mitchell, D.S.
Mittelstaedt, George J.
Moffitt, R.E.
Moktadier, John
Montgomery, D. J.
Mooney, R. O.
Moore, Donald B.
Moore, Jr., R.E.
Morgan D. P.
Morrey, Frank J.
Morrison, Edward H
Morrison, David L.
Mortensen, Kim T.
Moslener, C. F.
Munger, Steven S.
Munsterman, R.A.
Murphy, Paul R.
Murray, H. M.
Murray, Thomas O.
Musick, Jr., Charles R.
Myers, III, Wilson D.
Nagy, S.L.
Nall, Jr. Robert L.
Nelsen, R .J.
Nelson, Douglas C.

Ness, R.A.
Neumann, P.G.
Nicchia, Leonard R.
Nicholson, William T.
Norman, II J. S.
O'Connell, John M.
Ogden, Thomas H.
Ogilvie, Thurston
Oneill, Ramon E.
ORourke, M.J.
Ortiz, Boris
Osborne, Richard A.
Osman, Dale E.
Ouzts, Jr., J. F.
Palermo, F.G.
Palmer, Douglas M.
Pappas, T
Pareira, Fred
Parkinson, Richard E.
Parr, William J.
Paschke, J.M.
Patel, P. Raman
Pauley, Leon Trenton
Peacock, Donald J.
Peacon, Robert C.
Peery, T.H.
Pell, Thomas A.
Pennie, J. R.
Penrod, Gary B.
Perez, Jr. Efrain
Perkins, D. Grier
Perry Jr A.G.
Peters, L. W.
Petko, J. G.
Pettit, B.D.
Phillips, R. A.
Phillips, Henry C.
Phillips, Terry E.
Pinkerton, K. R.
Pipkin, R. P.
Poirer, Noel A.
Potter, Martin
Preis, M.J.
Priest, Peter D.
Priest, Paul B.
Putonen, Leonard R.
Raju, K.V.
Ramaprakash, T. S.
Rawlings, Jr. Walter E.
Rawls III, F. H.
Ray, C. G.
Redd, W. J.
Reeh, Charles D.
Regan, J. H.
Reik, K. M.
Reinholtz, R. E.
Reitan, A. G.
Reno, Richard W.
Reynolds, D. D.
Richards, K. L.
Roberts, Reginald
Roberts, R. E.
Robertson, James L.
Robinson, Kenneth D.
Rodriguez, F. A.
Rogers, D. J.
Rosenthal, Eugene P.
Rosman, Ken
Ross, Thomas D.
Rosser, John P.
Rupert II, John F.
Ryan, Edward J.
Santiago, Stanley
Sauer, D. P.
Saunders, Daniel S.

Schanzlin, D. N.
Schedel, J.R.
Schrag, James A.
Schriner, Jr. D. O.
Schroll, Jr. John E.
Schultheis, D. H..
Secor, E. F.
Self, G.W.
Sessums, Stephen E.
Sewell, Jr. H. J.
Sheehan, F. J.
Shepard, Gary C.
Shore, G.E.
Shoun, J. W.
Shriver, Larry L.
Simmons, Gary
Sirmans, J. W.
Sizemore, Samuel E.
Smith, Andrew C.
Smith, Charles E.
Smith, David W.
Smith, Jack G.
Smith, Jr. S. D.
Smith, Robert Leo
Smith, Carl C.
Sofferin, Jeffrey
Sorenson, John P.
Spieker, Jr. Samuel G.
Spillman, Harry L.
Spitler, Douglas H.
Sposito, James
Stanton, Donald H
Starzyk, E. S.
Steward, Donald E.
Stewart, Wayne M.
Stifel, Arthur C.
Stokes, Clifford J.
Stone, Alan C.
Stone, Cary A.
Stone, Edward E.
Stow, Calvin E.
Strader, Sr. James R.
Stradley, K. W.
Straessle, Gregory C.
Strong, D. B.
Strus, M. W.
Sullivan, E. M.
Sullivan, Ennis C.
Sullivan, John L.
Sullivan, Robert F.
Syman, John E.
Taliaferro, Jr. C.E.
Talton, W.G.
Tate, Joe F.
Taylor, Dean H.
Taylor, J. M.
Taylor, Jr. Glyn M.
Taylor, Jr. Henry A.
Taylor, Michael J.
Taylor, Robert A.
Terrence, J. Fitzgerald
Tew, Jr. B. D.
Theakston, Peter A.
Thompson, Jerry L.
Thompson, R. L.
Thomson, III John B.
Thornton, Kenneth
Threlkeld, J. G.
Tippett, Jeannette S.
Tipton, Larry K.
Tomelden, Arthur P.
Toole, Oliver A.
Torres, C. T.
Towney, Jr. James R.
Trauger, H. R.

Treadwell, J. P.
Triplett, David M..
Trivett, Roscoe H.
Tucker, Joe R.
Tucker, D.
Tucker, T.T.
Tumlin, William H.
Turner, J. R.
Unger, R. A.
Urso, Michael T.
Vanek, A. G.
Vara, R.W.
Vaughan, Michael J.
Vesty, Charles H.
Villanueva, R.
Villers, David L.
Vohra, P. P.
Vonkleeck, John S.
Voudy, John E.
Wagner, Ronald
Walby, Thomas F.
Walker, T. W.
Walther, F. O.
Walton, M.R.
Waterstreet, Mark A.
Watson, M.D.
Watt, A. K.
Weaver, Linda B.
Webb, Jr. Rufus
Weir, James R.
Weisbruch, J. E.
Welfer, Jr. A. E.
Wengert, R. D.
West, Peter
Westby, Dorothy C.
Westphall, Robert C.
Wheeler, James R.
Whitaker, R.B.
White, Robert L.
Whitford, James E.
Whitley, Donald D.
Whitney, Richard A..
Wilkie, James R.
Williams, J. C.
Willis, H. P.
Wilson, James S.
Wingate, Wesley A.
Wood, T. R.
Wood, Steven C.
Wright, Dean S.
Yates, G. W.
Yeater, Don
Young, Thomas J.
Zeng, Robert E.
Ziobro, Thomas J.
Zito, Joseph

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., et. al | ) |
| | ) |
| Debtor | ) |
| | ) Case No. 90-932 & 90-933 (MFW) |
| | ) |
| **Ramon E. O'Neill** | ) Civil Action No. 06-568 (SLR) |
| | ) |
| Appellant | ) |
| v. | ) |
| | ) |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN. | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| | ) |
| Appellees, | ) |
| | ) |

# CERTIFICATE OF SERVICE

I, Ramon E. O'Neill, certify that I am not less than 18 years of age, and that service of the **MOTION OF OBJECTION FOR AN ORDER EXCUSING THE PARTIES FROM THE MEDIATION REQUIREMENT OF THIS COURT'S JULY 23, 2004 STANDING ORDER** was made on September 29, 2006, upon the attached service list by first class mail, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

Ramon E. O'Neill , *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
Phone # (305) 386-4866

Counsel for Continental Airlines:
Robert Brady, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801
(302) 571-6600


Counsel for LPP Claimants:
Bruce Jameson, Esq.
Prickett, Jones & Elliott
1310 King Street
Wilmington, DE 19801
(302) 888-6532


United States District Court
for the District of Delaware
J. Caleb Boggs Federal Bldg
844 North King Street
Wilmington, DE 19801-3519
(302) 573-6170