## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., et. al | ) |
| | ) |
| Debtor | ) |
| | ) Case No. 90-932 & 90-933 (MFW) |
| | ) |
| **Ramon E. O'Neill** | ) Civil Action No. 06-568 (SLR) |
| | ) |
| Appellant | ) |
| v. | ) |
| | ) |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN. | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| | ) |
| Appellees, | ) |
| | ) |
| | ) |

FILED

OCT 1 0 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

RESPONSE OF APPELLANT  RAMON E ONEILL TO THE MOTION OF
APPELLEE CONTINENTAL AIRLINES, INC. FOR AN ORDER (I) DISMISSING
APPEAL, (II) AWARDING DAMAGES PURSUANT TO F.R.A.P. AND
BANRUPTCY RULE 8020, AND (III) ENJOINING APPELLANTS

## PRELIMINARY STATEMENT

This is not a frivolous appeal. As this Court reads this document it

will learn about the intentional acts committed by Continental, Class

Counsel and Class Representatives before and after the January 31, 2002

Bankruptcy Court Order. I and others petition the Bankruptcy Court
to uphold the January 31, 2002 order, the same Bankruptcy Court Order this
Court as well as the Appellate Court upheld. (Exhibit A)

If the actions committed by Continental, Class Counsel and Class
Representatives are subjected to penalties dictated by law, it will be up to the
Courts to decide. There is room for reconciliation but it can only be
achieved under the strict guidance of the Courts. That is the reason I'm in
favor of mediation, the record clearly shows that I have always been in favor
of a third party involvement, that's the reason I fought so hard for
arbitration. Continental will fight real hard to avoid a third party opinion,
more specific discovery, Continental have been doing so since 1986, let's
not be fooled.

## ARGUMENT

The doctrine of this case is established by *Airline Pilots Ass'n (ALPA)
v. Continental Airlines,* 125 F. #d 120, 128 (3d Cir. 1997), known as
*Continental I.*

This Court as well as the Appellate Court knows this doctrine because
it was this Court that reversed the Bankruptcy Court and delineated the
following doctrine:

2

    a.    Continental has a continuing obligation to the Eastern pilots
that was not extinguished by the purchasing and merging of the Eastern
assets by Continental.

    b.    Continental has a continuing obligation to the Eastern pilots
that was not extinguished by the bankruptcies of Eastern and/or Continental
because in either bankruptcy a lack of 1113 procedures kept the Eastern
Collective Bargaining Agreement (CBA) intact.

    c.    Any settlement agreement reached after the assumption of the
obligations does not affect the obligations Continental have towards the
Eastern pilots as prescribed under the CBA

    This Court, the Honorable Sue L. Robinson presiding, *In Re: Trans

World Airlines v Elizabeth A. M. Robinson*, Civil No. 04-cv-00234(SLR)

upholds the very same doctrine mentioned above. The Appeals Court

reaffirms on May 10, 2006, Case No. 05-2260 (Exhibit B). Ironically the

only case cited through out the whole nine page (9) opinion rendered by the

Appellate Court is *Continental I*. Let it be noted that Continental and Class

Counsel represented both sides of the litigation which led to *Continental I,* it

is hard for either party to claim ignorance.

    This Court being as observant as it is, it will notice that the title of

*Continental I* is *Airline Pilots Ass'n v. Continental Airlines,* not Baldridge

LPP Claimants v. Continental Airlines.  The *Airline Pilots Ass'n* (ALPA) by

principle of law has to represent the entire the Eastern pilots without any

segregation based on  date of hire or collective bargaining representative

3

membership. In *Continental I* page 1 the only time there is a mention of different pilot groups within the whole Eastern pilots seniority list is as follows:

*"The bankruptcy court determined that the claims could be satisfied by monetary awards in lieu of specific performance and enjoined scheduled arbitration proceedings to enforce the seniority rights under the collective bargaining agreement. The district court affirmed the bankruptcy court's determination relating to the claims, but vacated the injunction. Two groups of former Eastern pilots, the LPP Claimants and the Group of 31, both of which are no longer represented by ALPA, appealed to this court.[1]*

*1. "LPP Claimants' refers to a group of former Eastern Pilots whose claims in this appeal are based on certain "labor protective provisions" (LPPs) contained in the collective bargaining agreement. The "Group of 31" is a group of former Eastern pilots, who originally were part of the "LPP Claimants" group and who have retained separate counsel for purposes of this appeal. See discussion infra Part I.D. While both groups claims were filed in bankruptcy court by ALPA on their behalf,"*

The Appellate Court in the above footnote points out that *both groups claims were filed in bankruptcy court by ALPA on their behalf.* Within all three groups addressed in the above footnote, Eastern Pilots, Group of 31 and LPP Claimants; non ALPA members are included. The Air Line Pilots Association, Inc. (ALPA) is defined in *Continental I* as the collective bargaining agent. The Appellate Court footnote (above) also clarifies that ALPA filed an umbrella proof of claim in the Bankruptcy Court which covers all Eastern pilots.

In the Eastern Airlines Collective Bargaining Agreement (CBA) SECTION 1-RECOGNITION AND SCOPE the following is stated: (Exhibit C)

## *SECTION 1-RECOGNITION AND SCOPE*

*A.    The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) employed by Eastern have designated the Association to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions covering all pilots in the employ of Eastern in accordance with the provisions of the Railway Labor Act, as amended. (Emphasis added by Appellant)*

The Employer ( *Eastern)* recognizes the Union *the Association, ALPA* as the

exclusive bargaining representative for the collective bargaining unit consisting of

the following position classifications (*covering all pilots in the employ of Eastern, the*

*collective bargaining unit). (Emphasis added by Appellant)*

The Supreme Court, the National Labor Relations Board and the

National Mediation Board have adopted the following definitions and

doctrines throughout the years.

a.    A bargaining agent is certified by the National Labor Relations Board (NLRB) as the exclusive representative of a certain type of employee.

b.    . The term "representative" means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them. **45 U.S.C. 151 Sixth**

c.    Bargaining Unit is a group of employees certified by the National Labor Relations Board to be able to be included in a union or Bargaining Agent.

d.    A union that possesses the sole authority to act on behalf of all the employees of a particular type in a company.  Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interest of all members without hostility or discrimination toward any, to exercise its

discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Steel v. Louisville & N. R. Co.*, **323 U.S. 192** and Tunstall v. *Brotherhood of Locomotive Firemen.*, **323 U.S. 210**.

NOTE:    Membership in the Bargaining Unit does not mean

membership in ALPA as Class Counsel and Continental seem to think, see

below : **(Exhibit Reply)**

*"that "new hires" who did not file claims or have claims filed for them would be excluded from the class as they were not part of the EAL pilots who were members of ALPA and they did not individually file timely claims for enforcement of the LPPs in these proceedings*

The new hires or old hires cannot be eliminated from the Class or

Settlement agreement, because they were not ALPA members.

The Bankruptcy Court, this Court and the Appellate Court transferred

all the doctrines and obligations contained in the CBA to Class Counsel and

Class Representatives, when it upheld the Class Certification.

Continental is also well aware of all the above definitions, doctrines,

obligations and its applicability to them, Class Counsel and Class

Representatives.

Being so aware of the definitions, doctrines and obligations;

Continental, Class Counsel and Class Representatives embarked on a

journey to change the interpretation of the definition of the certified class

both after the class was certified in February 3, 2000 and after the January

31, 2002 order was rendered to intentionally eliminate members of the

6

certified class from receiving the agreed settlement.

On January 31, 2002 at the signing of the order the definition of the composition of the class was "*who are Eastern Airlines former flight deck employees*" as the order refers to the Stipulation Agreement. dated October 16, 2001. The same definition is at the beginning of the documents titled "*NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND SETTLEMENT HEARING* " *which* were mailed to me shortly before the fairness hearing. Docket 71- 2 dated 01/04/2002. (Exhibit D)

After the January 31, 2002 order, (post-Baldridge litigation) Continental, Class Counsel and Class Representatives bring to the attention of the Bankruptcy Court that the definition of "*members of Eastern's flightdeck collective bargaining unit*" which was stipulated as a Bankruptcy Court requirement in the *Order Granting Class Action Plaintiffs' Motion to Clarify Method of Identifying Class Members,* Docket 56 dated July 10, 2001. Both definitions apply to **all Eastern pilots** as dictated by doctrines and definitions previously stated. **Neither terms (above) refer to membership in ALPA as Class Counsel and Continental seem to think**. **(Emphasis added)**

Continental, Class Counsel and Class Representatives use the new

7

definition to openly discriminate and fraudulently oppress many Eastern pilots; in the majority, those Eastern pilots who were hired after March 4, 1989 (New Hires).

## HISTORY

### *PRE –BALDRIDGE SETTLEMENT AGREEMENT ORDER*

1.    There were five affidavits filed in support of the Settlement Agreement approved by the Bankruptcy Court order of January 31, 2002. One (1) affidavit from Continental, Ms. Edna Smith, Docket No. 72 (Exhibit E); one (1) from Class Counsel (Myles Tralins, Docket No. 69-C, (Exhibit F); and one (1) from each Class Representative Docket No. 70-2, 70-4 and 70-5, (Exhibit G); all of which are false statements. The Bankruptcy Court, this Court and others relied on the accuracy of these affidavits to issue orders and opinions

2.    All five affidavits filed in support of the Settlement Agreement will prove to be fraudulent in the Post- Baldrige Settlement Litigation ( Post Litigation). The only participants in the Post Litigation were Continental, Class Counsel and Class Representatives. In simple words; the accuracy of the pilots' name listed as "Exhibit A" attached to Continental affidavit, the settlement stipulation and settlement order prove to be false.

3.    **18 U.S.C. § 152 and § 157** specifically addresses that thou shall not

commit knowingly and intentionally the following offenses:

### 1.    18 U.S.C. § 152.

**§ 152. Concealment of assets; false oaths and claims; bribery**

**(2)** knowingly and fraudulently makes a false oath or account in or in
relation to any case under title 11;

**(3)** knowingly and fraudulently makes a false declaration, certificate,
verification, or statement under penalty of perjury as permitted under section
1746 of title 28, in or in relation to any case under title 11

**(8)** after the filing of a case under title 11 or in contemplation thereof,
knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes
a false entry in any recorded information (including books, documents,
records, and papers) relating to the property or financial affairs of a debtor;
or

**(9)** after the filing of a case under title 11, knowingly and fraudulently
withholds from a custodian, trustee, marshal, or other officer of the court or
a United States Trustee entitled to its possession, any recorded information
(including books, documents, records, and papers) relating to the property or
financial affairs of a debtor,
shall be fined under this title, imprisoned not more than 5 years, or both.

### 2.    18 U.S.C. § 157.

**§ 157. Bankruptcy fraud**

A person who, having devised or intending to devise a scheme or artifice to
defraud and for the purpose of executing or concealing such a scheme or
artifice or attempting to do so—
**(1)** files a petition under title 11;
**(2)** files a document in a proceeding under title 11; or
**(3)** makes a false or fraudulent representation, claim, or promise concerning
or in relation to a proceeding under title 11, at any time before or after the

filing of the petition, or in relation to a proceeding falsely asserted to be
pending under such title,
shall be fined under this title, imprisoned not more than 5 years, or both.

4.      There is a big difference between thou shall not commit an offense

and committing an offense and let see if we get caught. Continental and

Class Counsel as legal professionals definitely know the difference and its

consequences..

*POST –BALDRIDGE SETTLEMENT AGREEMENT ORDER*

5.      On April 25, 2002 Class Counsel and Class Representatives filed the

following titled motion, Docket 169 4/25/2002; (Exhibit I)

**MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING THAT NEWLY
IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT FOR
THE CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO PROVIDE
NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

6.      The contents of the above mention motion vindicated what I and other

pilots have been warning the Courts to look for.  Class Counsel,

Class Representatives and Continental had been intentionally omitting pilots

names with the full intent to defraud the members of the Class.  The five

affidavits filed in support of the Settlement Agreement are proven to be

fraudulent in this document.

7.      In page 3 paragraph numbered 2 of this motion Class Counsel and

Class representatives state:

10

*The LPP Plaintiffs contended that all EAL flight deck crew members are entitled to participate in the Class, including the "new hires" because they were entitled to the benefits of the ALPA/EAL collective bargaining agreement. CAL contended that only those pilots who filed claims in bankruptcy are entitled to participate.*

8.    Class Counsel and Class representatives knew very well

that **all** Eastern pilots were covered by the Eastern collective bargaining

agreement.

9.    In page 4 paragraph numbered 3 of this motion, Class Counsel and

Class representative's state:

*"After the Motion to Clarify was filed, the LPP Class Action Plaintiffs and CAL agreed that because the clear language of the Proofs of Claim filed by ALPA for enforcement of the EAL LPPs against CAL excluded the "new hires" and was limited to persons who were EAL ALPA members pre-strike(before March 4, 1989), any new hire who did not file a Proof of Claim or have a Proof of Claim filed for him or her by the undersigned would fall outside the class definition and he or she would not be eligible to participate in the class settlement."*

10.    **Not true,** .  The clear language on the ALPA Proof of Claim

filed never excludes the new hires. To the contrary; ALPA makes it very

clear that it represented all pilots as of the filing of Continental bankruptcy

petition on December 3, 1990. J. Randolph  Babbitt as President of ALPA

filed the *et al.* proof of claim on behalf of ALPA and all the Eastern pilots

stating as follows: (Exhibit H)

11

*"Claimant makes this proof of claim on behalf of ALPA and the individual pilots for sum due and owing to ALPA and said pilots represented by ALPA, as of the filing of the petition in bankruptcy on December 3, 1990."*

ALPA proof of claim in 3(c) specifies that:

*" In The Matter of an Application of the Air Line Pilots Association International for an Arbitration Under the Labor Protective Provisions Involving Eastern Airlines, Inc. Richard Kasher, Arb. , Arbitration proceedings brought by Air Line Pilots Association for specific performance  and damages against Continental Holdings and Continental Airlines, et al. resulting from labor protective provisions for pilots of Eastern Air Lines, Inc. "*

ALPA's  proof of claim was filed on behalf of all Eastern pilots, there is no such segregation of new hires or non ALPA members mentioned on it.

11.     In page 4 paragraph numbered 4 of this motion which I will divide in two parts for the purpose of simplicity Class Counsel and Class representative's state:

*On July 10, 2001, the Court entered its Order Granting Class Action Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List. The Court also required the eligible pilots to be "members of Eastern's flight deck collective bargaining unit"  rather than simply former EAL flight deck employees "who claim they are entitled to the benefits of the collective bargaining agreement (the CBA) between Eastern Airlines and the Air Line Pilots Association"*

This statement was intentionally construed by Class Counsel and Class representatives as ALPA being the collective bargaining unit and membership is required in ALPA in order to benefit from the collective

bargaining agreement.

**Not true**: The collective bargaining unit is not the legal term for ALPA. The collective bargaining unit is the legal term for all pilots. ALPA was the sole **collective bargaining agent** which represents **all Eastern pilots who happen to be the collective bargaining unit.**

The philosophy by Class Counsel and Class Representatives is contradictory to the inclusion of all non ALPA members in the ALPA/ Continental agreement of 1994. The ALPA/ Continental agreement included many non ALPA members including Class Representatives; Baldridge, Mann and Dunn.

The language contained in the Eastern collective bargaining agreement states:

### SECTION 1-RECOGNITION AND SCOPE

*A.      The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) employed by Eastern have designated the Association to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions <u>covering all pilots in the employ of Eastern</u> in accordance with the provisions of the Railway Labor Act, as amended.*

Members or non members; all Eastern pilots were subjected to the same rates of pay, rules and working conditions as dictated in the Eastern

collective bargaining agreement. I have never seen different rates of pay,

rules and working conditions set forth for members vs non members within

the Eastern collective bargaining agreement or any other Railway Labor Act

collective bargaining agreement. It is the nature of the Railway Labor Act, it

cannot exist, a collective bargaining agreement cannot discriminate .

12.    In second part of this paragraph Class Counsel and Class

representative's states:

*"This clarification comported with the parties' agreement that in order to participate in the Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims or have claims filed for them would be excluded from the class as they were not part of the EAL pilots who were members of ALPA and they did not individually file timely claims for enforcement of the LPPs in these proceedings. (Docket No. 56; Order Granting Motion to Clarify Method of Identifying Class Members)"*

This part of the paragraph is very confusing. It is stipulating that

even though non ALPA members like Baldridge, Mann and Dunn wil be

beneficiaries of the settlement agreement for the mere reason that they were

active with EAL as of the stipulated date of merger (i.e.: EAL's shutdown

date), the "New Hires" are not even when the"New Hires" were also active

at EAL as of the stipulated date of merger, (i.e.: EAL's shutdown date).

Class Counsel and Class Representatives' position is more puzzling

that as a non ALPA member and/or new hire not having the benefits of the

LPPs contained in the Eastern collective bargaining agreement, not having a claim, that these same non ALPA members and/or new hire were allowed to individually file timely claims or have timely claims filed for them. This would constitute a presentation of a fraudulent claim, punishable by fines not more than $5000 or imprisonment not more than five years or both under

## Title 18 U.S.C. § 152 (4).

*(4) knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney*

13.    In page 5 paragraph numbered 5 and 6 brings out a very interesting view, that as result of my *(O"Neill)* and other pilots' appeals; Continental, Class Counsel and Class representatives were forced to start telling the truth in regards to the composition of the class, but not the complete truth. The filing of this motion and the acceptance of pilots names missing in the class make all five affidavits mentioned at the beginning of this document fraudulent documents, both parties lied.

14.    Paragraph 5 and 6 of this motion (referred above) reads as follows:

"*5.    As a result of the foregoing, the parties mutually identified 583 LPP Class Action Plaintiffs. The Court, recognizing that there may be additional persons covered by the class definition, expressly stated at the preliminary settlement hearing conducted on November 16, 2001, the fairness hearing conducted on January 31, 2002, and the hearing on the O'Neill post trial motions conducted on April 2, 2002,*

*that it would not limit the list of class members to the 583 persons identified by the parties but would leave the door open for persons who claimed they met the class definition to be included in the Class. In doing so, the Court expressly stated that if the parties could not agree as to whether certain persons are or are not members of the Class, that the Court would resolve the issue – hence, this Motion."*

*6.      Throughout these proceedings, Class Counsel has been working diligently to ensure that all persons who meet the class definition are identified and provided with notice of the settlement. As a result of the O'Neill appeal and the receipt of joinders in that appeal from persons not previously identified as class members who appear to qualify, as well as advice from CAL received early April 2002 that it had discovered 248 persons who were previously not identified as class members but who might be members of the class, the undersigned decided to redo the data research conducted last year and shared with CAL. Accordingly, the undersigned retained a new data processing firm to input the entire November 1990 EAL Alphabetical Seniority List consisting of 3,387 persons into a databank, including each pilot's seniority number and date of hire (the "Master List"). The data processors then inputted the agreed list of 583 LPP Claimants and deleted them from the Master List. The data processors then inputted all of the EAL pilot names and employee numbers identified on the list of persons who elected to participate in the 1994 ALPA/CAL Settlement which was prepared by Continental and provided to the undersigned (the "Takers List") and deleted those persons from the Master List[1]. The data processors then worked directly from the Bankruptcy Court docket sheets to identify, input and delete the 321 Addington/EPMC pilots who withdrew their claims against CAL from the Master List. The data processors then deleted from the list all of the remaining "new hires" by deleting all pilots with a seniority date on or after March 3, 1989. The resulting Preliminary List of additional LPP Plaintiffs consisted of 533 pilots. (Emphasis added by appellant)*

[1]   **1,396 of the 2,577 pilots identified by Continental as "Takers" are listed on the November 1990 EAL Alphabetical Seniority List**

As observant as this Court is, by Class Counsel and Class

Representatives own admittance. *" The data processors then deleted from the list*

*all of the remaining "new hires" by deleting all pilots with a seniority date on or after*

*March 3, 1989"*

15.    The mechanism to exclude the new hires and other pilots had been

put in place during pre- Baldridge litigation. This motion asking the

Bankruptcy Court to perpetuate the deletion of eligible pilots from the

settlement agreement proves that all parties have lied during pre and then

post Baldridge litigation.

16.    Contrary to the Appellate Court decision in *O'Neill v. In re*

*Continental Airlines, Inc.* **No. 03-2374 and 03-2375** stating:

*"To the extent O'Neill argues that other pilots were missing from the class
list, the settlement, as approved by the Bankruptcy Court on January 31,
2002, included a clause which allowed other class members who met the
definitions to file a claim by April 3, 2002. Thus, this objection to the class
certification was remedied by the Bankruptcy Court."* (Exhibit H)

Class Counsel and Class Representatives never had the intention to

properly represent the "New Hire" pilots and other purposely deleted pilots.

In collusion with Continental, a blocking mechanism was put in place during

pre- Baldridge litigation.  If the pilot's name was not in the "Exhibit A" list,

even if he or she met the definition of the class he or she would not be

compensated. Many, many pilots called Class representatives and Class

Counsel on the issue of the settlement award and their entitlement, just to be

ignored and humiliated.

17.    On June 7, 2002, Continental filed the objection to the previously

discussed motion. The objection is titled as follows:  Docket 257 dated

6/7/2002, (Exhibit J)

**DEFEDANTS OBJECTION TO MOTION FOR FINDING THAT NEWLY
IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT FOR
THE CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO PROVIDE
<u>NOTICE AND FOR APPROVAL OF FORM OF NOTICE</u>**

18.    In this objection the credibility of Class Counsel is challenged by

Continental, page 4 paragraph numbered 5.  Continental insinuates that

Class Counsel after cross checking seniority lists made an inaccurate

statement to the Bankruptcy Court missing 226 omitted pilots.

> 5.    Indeed, Mr. Tralins' Affidavit, which confirms that he cross-checked the
> list against "Eastern Airlines pre-IAM strike seniority list" and "Eastern's November 1990
> seniority list", expressly provides that he believes the list (which does not include the Proposed
> New Members) is **"a complete and accurate list of all eligible members of the class in this
> proceeding."**  Tralins' Affidavit at p. 3 (emphasis supplied).  While it is true that both Plaintiffs
> and Continental have since determined that certain additions and deletions to the list are
> warranted[2], it is not likely that Plaintiffs completely "missed" 226 people.  Moreover, the Smith
> Affidavit states that the list was derived from the official claims register in these cases
> identifying individual LPP claims.  Smith Affidavit, p.2, ¶ 3(a).

19.    The footnote on the same page also verifies Continental's inaccuracies

in their affidavit submitted to the Bankruptcy Court and a clear intent to

defraud the class.

> ²     Since the list was created, Continental has discovered approximately 90 people that properly filed individual LPP claims and, therefore, should be included in the class. Continental is waiting for Plaintiffs to confirm that the inclusion of these people in the class is acceptable. As stated earlier, approximately 30 of the people on Continentals' list are also on Plaintiffs' list attached to the Motion.

The list Continental refers to in the footnote above was submitted by

Ms. Edna Smith,  Continental affidavit (Exhibit E). In her affidavit

Ms. Smith claims she verified the accuracy of the names. This list is

referred to as "Exhibit A" in her affidavit signed January 2, 2002; and

docketed on January 10, 2002. If I and others would have not brought up the

issue of under inclusiveness of the class, it is clear that Continental was

going to keep acting in bad faith and would not have revealed the names of

those pilots it had fraudulently omitted .

20.     Continentals' position on the motion I'm presently objecting to, are

(a) that I'm re-litigating the case and (b) that I should be responsible for

attorneys fees. **Why didn't Continental in their objection raise the same**

**issues of re-litigation and attorneys fees with Class Counsel when**

**Continental knew that the April 02, 2002 bar date had passed and the**

**Settlement Agreement was consummated ?** (Emphasis added)

21.     **If Continental and Class Counsel have accused each other of their**

<u>**negligent inaccuracies (under inclusiveness), why should this appellant**</u>

<u>**be prevented from doing the same in the Bankruptcy Court or**</u>

<u>**any other Court?**</u>   **(Emphasis added )** I question if Continental and Class

Counsel were just posturing before the Bankruptcy Court ?

22.    On June 12, 2002, Class Counsel and Class Representatives filed their

reply to Continentals objection to the previously discussed . The reply is

titled as follows:  Docket 290, dated 6/12/2002(Exhibit K)

**REPLY TO DEFENDANTS' OBJECTION TO MOTION OF CLASS
ACTION PLAINTIFFS FOR FINDING THAT NEWLY IDENTIFIED
FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE
SETTLEMENT FOR THE NEW CLASS MEMBERS, FOR 90 DAY
EXTENSION OF TIMETO PROVIDE NOTICE AND FOR
<u>APPROVAL OF FORM OF NOTICE</u>**

23.    Starting on page 2 of this reply Class Counsel and Class

Representatives point out the following:

*"1. <u>CAL's Position is Inconsistent with its Prior Representations to this Court</u>*
*CAL's position is in direct opposition to the legal argument that it successfully
asserted in its December 22, 1992 Partial Objection to Allowance of Claims Based
Upon Certain Alleged Labor Protection Provisions Involving the Air Line Pilots
Association International and Eastern Air Lines Inc. (Exhibit C) wherein it requested
and obtained the ruling of this Court that because ALPA filed LPP claims in these
proceedings as the collective bargaining representative for the Eastern pilots, "a ruling
declaring the LPP Claims to be general unsecured prepetition claims will be binding
on all of the LPP Claimants"*

By Class Counsel and Class Representatives own admittance *"ALPA filed LPP claims in these proceedings as the collective bargaining representative for the Eastern pilots,* "a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants"*

ALPA is the collective bargaining representative for the Eastern

pilots.  All LPP Claimants is the same as all Eastern pilots.

24.    The December 22, 1992, *Partial Objection to Allowance of Claims*

*Based Upon Certain Alleged Labor Protection Provisions Involving the Air*

*Line Pilots Association International and Eastern Air Lines Inc.* [Docket

290-C, dated 6/12/2002(Exhibit L)] which Class Counsel and Class

Representatives refer to as "*(Exhibit C")* above  is attached:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re                                  )
CONTINENTAL AIRLINES, INC.,            )    Chapter 11
et al.,                                )    Consolidated Case Nos.
                                       )    90-932 through 90-984
        Debtors.                       )

DEBTORS' PARTIAL OBJECTION TO ALLOWANCE OF CLAIMS
BASED ON CERTAIN ALLEGED LABOR PROTECTIVE PROVISIONS
INVOLVING THE AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL AND EASTERN AIR LINES, INC.
AND NOTICE OF HEARING

To all parties served with this Partial Objection:

Continental Airlines, Inc. and Continental Airlines Holdings, Inc., Debtors, make this partial objection to that portion of all claims filed against Debtors that seeks administrative expense status or prospective relief, including specific performance, based on claims for relief that the Air Line Pilots Association, International ("ALPA") has asserted under the labor protective provisions ("LPPs") of a collective bargaining agreement executed by ALPA and Eastern Air Lines, Inc. ("Eastern") on February 23, 1986 (the "LPP Claims").1/

Debtors' partial objection to the LPP Claims is based on the following grounds:

1.  The collective bargaining agreement out of which the claims arose was executed and expired prepetition;

2.  The events that are alleged to have given rise to obligations on Debtors' part under the LPPs all occurred prepetition;

3.  Even if such obligations arose, they can be satisfied through an alternative right to payment cognizable as a general unsecured claim;

4.  The LPP Claims are not based on any post-petition services performed for Debtors.

Debtors have previously filed a partial objection against ALPA insofar as it has asserted the same claim on behalf of the Eastern pilots, and on December 18, 1992 filed a motion with the Bankruptcy Court for the District of Delaware in Adversary Proceeding No. 91-153 seeking partial summary judgment on their partial objection to ALPA's claim.

---

1/  ALPA has asserted the LPP Claims in an arbitration styled In The Matter Of An Application Of The Air Line Pilots Association, International For An Arbitration Under The Labor Protective Provisions Involving Eastern Air Lines, Inc., Kasher, Arb.

Debtors' motion for partial summary judgment is set for hearing on February 4, 1993.  If Debtors' motion is granted, the LPP Claims will be determined to be, at best, dischargeable, general unsecured prepetition claims within the meaning of Bankruptcy Code Section 101(5), 11 U.S.C. § 101(5).  Because ALPA is the collective bargaining representative for the Eastern pilots, and because the LPP Claimants are relying on an arbitration proceeding initiated by ALPA on their behalf to establish their rights under the LPPs, a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants.  Any LPP Claimant who does not concede that such relief would be binding as to his or her individual claim should file a written response to this Partial Objection as provided in the attached Notice of Partial Objection.  In support of this Partial Objection, Debtors incorporate by reference their Motion For Partial Summary Judgment On Their Partial Objection To Claims Based On Certain Alleged Labor Protective Provisions Involving The Air Line Pilots Association, International and Eastern Air Lines, Inc., filed with the Bankruptcy Court on December 18, 1992 in Adversary Proceeding No. 91-153.  Any LPP Claimant wishing to obtain a copy of that Motion should contact the undersigned counsel for Debtors.

The filing of this partial objection does not waive any other objection(s) that Debtors will file, or have filed, as to the LPP Claims or any other claim.

WHEREFORE, Debtors pray that the LPP Claims be disallowed to the extent such claims seek relief other than as dischargeable, general unsecured prepetition claims.

Respectfully submitted,

YOUNG, CONAWAY, STARGATT & TAYLOR
Rodney Square North
Eleventh Floor
Wilmington, DE 19899
(302) 571-6600

By: _Laura Davis Jones_

Laura Davis Jones

Attorneys for Debtors and
Debtors in Possession

Dated: December 22, 1992


Continentals position in the above objection is that <u>ALPA is the</u>

<u>collective bargaining representative for the Eastern pilots; that ALPA had</u>

<u>filed an umbrella claim covering all Eastern pilots, that the LPP claims are</u>

<u>based on a pending arbitration which includes all Eastern pilots, a ruling</u>

<u>declaring the LPP claims to be general unsecure prepetition claims will be</u>

<u>binding on all the LPP claimants. There is no mention of ALPA</u>

<u>membership requirement.</u>

25.    Starting on page 8 and continuing on page 9 of this reply submitted by

Class Counsel and Class Representatives reiterate the position that all

Eastern pilots were covered by ALPA's umbrella proof of claim.

*"Next, CAL's position that if an LPP Claimant opted out of the ALPA/CAL settlement, he or she was required to file a proof of claim is disingenuous. None of the opt-out LPP Claimants <u>could have</u> filed an individual proof of claim after learning of the*

23

*ALPA/CAL settlement – as the court docket shows, the bar date for such claims was September 27, 1991, over 2 ½ years prior to the settlement. CAL's argument that this Court should accept the proposition that it was appropriate to advise the Eligible Pilots they had a right to opt out of the settlement and retain their claims when, in fact, opting out would have left them with no claim whatsoever must be rejected"*

26    If Continental's position was that if omitted pilots who were not members of ALPA, were going to be treated differently than the rest of the Eastern pilots, even when all pilots were cover by the same CBA; then Continental was under the obligation to notify the omitted pilots of their intentions and advise each individual omitted pilot of their right to file an individual claim  by the bar date of September 27, 1991. Continental did not.

27.    If the Bankruptcy Court had a different interpretation of which pilots (members or non members of ALPA) were covered  under the ALPA's umbrella proof of claim, then the Bankruptcy Court should have had stipulated so in the ALPA/CAL settlement order, and set a new bar date with proper notification to the LPP claimants affected. Absent of the Bankruptcy Court order, the Bankruptcy Court confirms that it treated the Eastern pilots as a whole, covered by ALPA's umbrella proof of claim .

28.    Continental did not have a problem subjecting the omitted pilots to the compensation, work rules, and conditions dictated in the Eastern CBA. Now with the help of Class Counsel and Class Representatives they are

being denied of the LPP claims, a claim that arise from the LPPs contained

in the same CBA.

29.     Starting on page 11 the Class Counsel and Class Representatives in

collusion with Continental take the following position:

*"4. The Class Definition Expressly Includes Persons Whose Claims Were
     Filed by ALPA*

       *CAL contends that the substance of the Plaintiffs' Motion to Clarify was
"whether former EAL pilots covered under the ALPA proof of claim should be part of
the class." This is simply not true.*
       *The Motion for Clarification was brought because the class Action Plaintiffs
contended that ALPA's proof of claim covered all Eastern pilots, regardless of whether
or not they were members of the Union, and that the same thus applied to the new
hires. CAL disagreed. After carefully reviewing ALPA's proof of claim with CAL's
attorneys, the Plaintiffs agreed that because the proof of claim was expressly limited to
ALPA members, that it would only be effective for ALPA members and that it would
not apply to new hires. Consistent with this agreement, CAL and the Plaintiffs
stipulated before the Court for the entry of its July 10, 2001 Order Granting Class
Action Plaintiffs' Motion to Clarify Method of Identifying Class Members by including
the requirement that eligible pilots had to be listed on EAL's November 1990
Alphabetical Seniority List and that they be "members of Eastern's flight deck
collective bargaining unit" rather than simply former EAL flight deck employees "who
claim they are entitled to the benefits of the collective bargaining agreement (the
"CBA") between Eastern Airlines and the Air Line Pilots Association." This
clarification comported with the parties' agreement that in order to participate in the
Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's
shutdown date), and that "new hires" who did not file claims or have claims filed for
them would be excluded from the class as they were not part of the EAL pilots who
were members of ALPA and they did not individually file timely claims for enforcement
of the LPPs in these proceedings.*

30.     Continental and Class Counsel knowing the law, specifically the

law of this case proceeded to intentionally establish several mechanisms by

which the eligible pilots,  LPP claimants as recognized by every Court,

would not be participant of the settlement agreement.

31.    On June 14, 2002 the Bankruptcy Court grants the motion to the

plaintiffs titled *MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING THAT*

*NEWLY IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR*

*ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT FOR THE*

*CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO PROVIDE NOTICE AND*

*FOR APPROVAL OF FORM OF NOTICE,*  ; Docket 29  06/14/2002; (Exhibit M)

By granting the motion, the Bankruptcy Court set the precedent of

reopening the case past the bar date of April 02, 2002 and establishing a new

bar date for participants either previously identified "Exhibit A"  and newly

identified "Exhibit B". The Bankruptcy Court allowed the parties involved

to challenge and change the interpretation of the definition of the

composition of the class.

32.    Non of the "Exhibit A" claimants were ever notified of the new bar

date, including myself.

33.    The Bankruptcy Court also set a precedent to add purposely omitted

pilots to the settlement.

34.    Continental complies with the January 31, 2002 and June 14, 2002

26

order and pays the shares and monies to Class Counsel.

## OUTSIDE LITIGATION AND THE COURTS

35.    The shares instead of being deposited under each beneficiary name
and social security number in an account at Morgan Stanley, Class Counsel
hands over all the stock to his brother-in-law so his brother- in- law could
generate more business. Class Counsel brother- in- law is an account
representative at Morgan Stanley. Class Counsel had full control of the
shares, brother-in-law makes a mess that took substitute counsel over a year
to unscramble the mess.

36.    As time progress many pilots tried to obtained their award, some even
wrote directly to the Bankruptcy Court so their award could be disbursed to
them.

37.    Class Representatives also directors of a Florida corporation name
Eastern Pilots for Fairness (EPFF) (Exhibit N) to the best of my
knowledge, and I stand to be corrected, never sent a letter to their
constituent, including myself, regarding the two Bankruptcy orders and its
bar dates.  Class Representatives never had a problem sending letters to the
EPFF constituents when funds were being raised for the purpose of covering

legal expenses regarding the LPP litigation.

38.    Due to my involvement in the LPP litigation many pilots contacted me through time including before the April 2, 2002 bar dates and ask me what should they do in order to obtained their award. I instructed them to contact Class Counsel and/or Class Representatives.

39.    I personally contacted Class Counsel, William Mann and Larry Dunn regarding (a) pilots which had not received their proof of claims (b) pilots which fall within the class definition as stated on the January 31, 2002 Bankruptcy Court order and were not included in the "Exhibit A" settlement.

40.    Class Counsel on various occasions took the position that if any pilot had objected and/or appealed the settlement or bankruptcy order, such pilot would not be allowed to participate on the settlement. Class Counsel also took the position that if any pilot's name was not in the original "Exhibit A", that specific pilot was not entitled to the settlement agreement. Class Counsel reasoning was that he had made an agreement with Continental on the names on the list and Continental would be reluctant to add any names.

41.    Class Counsel tried to reach an agreement with me, in exchange of my withdrawal of the previous appeal. Class Counsel led me to believe that

because he had control of all the shares, once the bar dates were over those remaining shares will be equally distributed within the participants of the settlement, and I would get 1000 shares more than everyone else. With this reasoning it is obvious that Class Counsel was not aggressively pursuing those pilots that were unable to be contacted for various reason, i.e. Tom Duckworth. Mr. Duckworth, as many Eastern pilots did in order to survive, got a job outside of the United States making it harder to get hold of him and/or them. Mr. Duckworth, is on record with a motion to re-open.

42.    It is so important that Class Representatives are brought into the mediation process and/or appeal so they will not be blamed of any wrong doing committed by Class Counsel. I'm a true believer that the record should be set straight.

43.    I also contacted Continental Counsel on various occasions regarding the lack of issuance of the settlement awards to the pilots. Continental explain their obligation under the settlement and their compliance, Continental had provided the funds to Class Counsel.

## CONCLUSION

ALPA, in its capacity as collective bargaining representative for all former Eastern pilots, had the authority to settle the lawsuits and grievances

covered by the ALPA/CAL settlement because ALPA was a party to the claim which derive from a grievance contained in the CBA which covered all Eastern pilots equally. The ALPA proof of Claim clearly addresses all Eastern pilots without discriminating based on their membership in ALPA. Every litigation that ALPA commenced or was involved in defending the LPPs clearly addressed all Eastern pilots.

Unions maintain the authority as exclusive collective bargaining representative to litigate and settle union litigation against employers who have filed for protection under the Bankruptcy Code, subject to the union's duty of fair representation. See *Wien Air Alaska , Inc. v. Bachner*, 865F.2d 1106 (9th Cir. 1989). ALPA did maintain the authority to settled on behalf of all the Eastern pilots in the ALPA/CAL agreement and chose not to, leaving the pilots that did not responded to the agreement and pilots covered under the exclusivity of the umbrella claim to pursue their claims. ALPA was the sole creditor as it is permitted by Bankruptcy Code to represent the Eastern pilots, there could only be one recognized claim in the Bankruptcy Court on behalf of all Eastern pilots' LPPs, when ALPA remove the umbrella claim there was no form that any Eastern pilot could have filed an individual claim, the bar date was past by over two years.

If Continental would had been able to dismissed the LPP claim,

Continental would have included the omitted pilots in the dismissal.

If Class Counsel and Class Representative would had commenced the arbitration, Class Counsel and Class Representative would have had to certify the whole seniority list which included the omitted pilots.

Continental, Class Counsel and Class Representatives knew very well that they were lying when they submitted the five affidavits, the same affidavits use by the Bankruptcy Court in approving the settlement agreement. The law is very specific, thou shall not commit perjury.

The omitted pilots still preserve their right to arbitrate as describe in *Continental I.* If and when the omitted pilots file for arbitration, Continental will bring them back into the Bankruptcy Court and fight against their right to arbitrate. Continental will use this class certification and settlement agreement to prevent the omitted pilots from invoking their arbitration, its Continental *modus operandi.* They tried to eliminate the remaining Eastern pilots after the ALPA/CAL settlement and the courts including this Court denied Continental motions.

Continental did not have a problem subjecting the omitted pilots, to the compensation, work rules, and conditions dictated in the Eastern CBA, but now with the help of Class Counsel and Class Representatives they are being denied of the LPP claims, a claim that arise from the LPPs contained

in the same CBA they were subjected to.

As observant as this Court is, I am certain that it will observe that 87% of the documents submitted as exhibits attach to this document were generated by Continental, Class Counsel and Class Representatives.

I also assure this Court and Continental that no attorney is involve in this appeal, my only legal expenses I have incurred during all the litigation have been photocopies, travel, lodging, flight pay loss, filing fees, court cost and the access to pacer.

I will like to point out to Continental and this Court that Exhibit K enclosed in their appendix of the motion I am presently objecting to, is the wrong document, it makes it harder to follow the reasoning of their motion when it refers to the wrong document.


Respectfully Submitted,

Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866

Ex. A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                            }
                                                  }        Case No. 90-932
CONTINENTAL AIRLINES, INC., et.                   }        Chapter 11
al.,                                              }
                                                  }
          Debtors                                 }
                                                  }
JAMES BALDRIDGE, WILLIAM                          }
MANN, and LARRY DUNN,                             }
individually, and                                 }
as representatives or a class of                  }
persons similarly situated who are                }
referred to as the LPP CLAIMANTS,                 }
                                                  }
          Plaintiffs,                             }        Adversary Proceeding
                                                  }          No. A-99-412
v.                                                }        Class Action
                                                  }
CONTINENTAL AIRLINES                              }
HOLDINGS, INC., CONTINENTAL                       }
AIRLINES,                                         }
INC. and SYSTEM ONE HOLDINGS,                     }
INC.                                              }
                                                  }
          Defendants.                             }
                                                  }


## FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter having come before this Court on Motion for Approval of a

Settlement in this class action, and the Court, having considered all papers filed in

connection with said motion, good cause appearing therefor, it is,

ORDERED, ADJUDGED AND DECREED THAT:

102

October 16, 2001, and finds that the Settlement of the claims of the Plaintiffs and the Class embodied therein is, in all respects, fair, reasonable and adequate to the Class. The terms and phrases used in this judgment shall have the same definition and meaning as in the Settlement Agreement.

5. The Court hereby dismisses on the merits with prejudice and without costs or attorneys' fees except as provided for in the Settlement Agreement, any and all claims, actions, requests for relief or causes of action alleged in the Baldridge class action complaint by Plaintiffs and the members of the Class as to all Defendants.

6. Upon the Effective Date, the Class Representatives and the Class, on behalf of themselves, the Persons they represent, their heirs, predecessors, successors and assigns, or any Person claiming or purporting to claim through any of the foregoing, for good and sufficient consideration, the adequacy of which is hereby acknowledged, shall be deemed to have released and forever discharged each and every Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Released Parties.

7. Upon the Effective Date, Class Counsel, on behalf of the Class Representatives and the Class, shall file a dismissal with the clerk of the United States District Court for the District of Delaware of the Baldridge LPP Class Action plaintiffs' pending appeal of the October 12, 2000 Order and Opinion of this Court.

3

Settlement Consideration which shall be paid to Class Counsel upon the Effective Date.

12.    This Court has reviewed the application of Class Representatives James Baldridge, William Mann and Larry Dunn for a compensation award and hereby awards each, for the  services each performed as Class Representatives in this litigation,  ___1,700___  shares of Continental Airlines common stock to be distributed from the Gross Settlement Consideration  upon the Effective Date.

13.    This Court has reviewed the application of Class Counsel for reimbursement of expenses advanced by Eastern Pilots for Fairness, Inc. and hereby awards Eastern Pilots for Fairness, Inc. $_95,530.14_ to be paid from the Gross Settlement Consideration upon the Effective Date.

14.    This Court has reviewed the application  of Class Counsel  for the payment of claims administration and publication expenses of the Claims Administrator and hereby awards The Garden City Group, Inc.  claims administration expenses not to exceed $_49,140.48_to be paid from the Gross Settlement  Consideration upon the Effective Date.

15.    If this Final Judgment is reversed, vacated, or modified, this Final Judgment (except for this Paragraph and paragraph 10 hereof) shall be rendered null and void and vacated *nunc pro tunc*, the Settlement shall be deemed terminated pursuant to the terms of the Settlement Agreement and the Parties shall be deemed to have reverted to their respective status and position as provided in Article VIII of the Settlement Agreement.

5

**EXHIBIT A**

**BALDRIDGE LPP CLASS ACTION CLAIMANTS**

1.    Abbott, Robert D.

2.    Aber, L.A.

3.    Abrams, Billy L.

4.    Adams, Jr., J.T.

5.    Adams, Keith J.

6.    Alexander, Harold

7.    Alford, Wayne L.

8.    Alvarez, Jr. Jose A.

9.    Anderson, Ronald R.

10.   Andrews, Jr. George M.

11.   Angeletti, Thomas J.

12.   Armstrong, III F.C.

13.   Arnott, Brian G.

14.   Atteberry, William M.

15.   Ayer, K.H.

16.   Baalen, P.

17.   Babbitt, J. Randolph

18.   Baldoni, L.A.

19.   Baldridge, James H.

20.   Balukonis, V.J.

21.   Baque, III Frank

45. Blair, T.D.

46. Blankenship, Jr. O.T.

47. Blix, Victor E. III

48. Boja, Robert N.

49. Bonna, F.

50. Boswell, L.L.

51. Brablec, Douglas D.

52. Bradley, W.D.

53. Bradley, R.

54. Brandt, William, M.

55. Braynon, Oscar J.

56. Bredthauer, Dirk

57. Bromschwig, Kurt F.

58. Brown, Walter R.

59. Browning, David L.

60. Bryant, Charles C.

61. Buchanan, E.J.

62. Bundrant, William D

63. Bunn, Larry D.

64. Buntin, Edward S.

65. Burke, R.T.

66. Burke, John A.

67. Burkhart, Ronnie L.

91.    Cole, John D.

92.    Cole, William F.

93.    Colli, G.F.

94.    Collier, W.R.

95.    Commander, Jr. John B.

96.    Compton, John P.

97.    Connell, E.W.

98.    Connolly, James M.

99.    Conti, R.G.

100.   Cook, Carl D.

101.   Cook, Kenneth E.

102.   Cooper, T.L.

103.   Cornay, Ray

104.   Cowen, John B.

105.   Craig, Robert L.

106.   Crane, W.E.

107.   Craus, C.M.

108.   Crawford, D.B.

109.   Crow, Kenneth P.

110.   Crush, James M.

111.   Curran, T.R.

112.   Daniel, Jr., James W.

113.   Davidson, William F.

137.   Dugger, T.R.

138.   Dundas, Charles P.

139.   Dunn, L.J.

140.   Dunn, R.A.

141.   Durante, J.P.

142.   Durkin, G.P.

143.   Dyer, Charles G.

144.   Dylong, J.

145.   Ealy, R.L.

146.   Eastman, J.D.

147.   Edwards, K.A.

148.   Egut, Ronald S.

149.   Eldridge, Dorothy J.

150.   Elmdanat, R.

151.   Emery, James C,

152.   Engelke, Marc J.

153.   Engelke, Warren L.

154.   Erickson, Alan W.

155.   Evans, R.H.

156.   Fahn, C.L.

157.   Fant, Jr. Glenn E.

158.   Farenga, J.H.

159.   Farnsworth, Earnest L.

183.  Garcia-Vergara, H.

184.  Gardner, David E.

185.  Gary, Carrol J.

186.  Garza, E.

187.  George, Henry R.

188.  Geraghty, James D.

189.  Gibson, Randall

190.  Gordon, D.G.

191.  Gorman, Barry William

192.  Govatos, John D.

193.  Grafton, Jr. J.R.

194.  Grau, F.L.

195.  Green, Grant S.

196.  Green, G.A.

197.  Greene, David L.

198.  Greksa, G.J.

199.  Grenie, A.A.

200.  Gribas, Kenneth

201.  Griffin, Donny E.

202.  Griffith, Bobbie

203.  Griggs, R.P.

204.  Groff, W.V.

205.  Grubbs, R.E.

229.    Hinsdale, James P.

230.    Hipps, William D.

231.    Hodgers, Benjamin

232.    Hooton, J.W.

233.    Houston, Charles M.

234.    Howard, C.A.

235.    Howard, Charles B.

236.    Howard, James W.

237.    Huddleston, J.D.

238.    Huges Jr., James R.

239.    Hunter, Richard I.

240.    Hurley, Jay

241.    Hutchin, Robert A.

242.    Hutson, R.T.

243.    Ingle, W. D.

244.    Ingram, Capt. Culpepper F.

245.    Inman, Brownie N.

246.    Iranipour, F.

247.    Jacobowitz, L.

248.    Jansen, C.W.

249.    Jaye, Mamadou D.

250.    Johansen, William H.

251.    Johnson, R.A.

275.  Lamaute, L .L.

276.  Lambie, J. M.

277.  Lamecker, D. R.

278.  Landa, George

279.  Landry, Jr. Donald J.

280.  Lane, F. W.

281.  Lane, Jr. Gordon B.

282.  Lane, Malcolm V.

283.  Langer, Lawrence E.

284.  Lantz, K. M.

285.  Latham, Richard C.

286.  Lavarello, E. F.

287.  Lawrence, Charles W.

288.  Lea, Robert G.

289.  Lee, J. R.

290.  Lee, Allan R.

291.  Lehman, L.G.

292.  Leonhardt, Stephen J.

293.  Levy, Simon

294.  Lewandowski, R.A.

295.  Lewicki, John A.

296.  Lewis, Gary M.

297.  Liebing, Kurt M..

321.   Mauro, A.F.

322.   McCabe, Larry G.

323.   McCann, Joseph P.

324.   McCartney, Kenneth L.

325.   McClannahan, Richard W.

326.   McCracke, Keith K.

327.   McDonald, T.L.

328.   McHenry, J.R.

329.   McKenna, C.E

330.   McKenna, William D.

331.   McKennan, D.J.

332.   McKeon, A. T.

333.   McLean, D. W.

334.   McMahon, Michael S.

335.   McQuigg, A.R.

336.   McRae, James D.

337.   Means, James A.

338.   Menchini, R.L.

339.   Mendez, E.

340.   Merly, Hector M.

341.   Mesmer, Frederick H.

342.   Michael, Donald K.

343.   Milanette, R. T.

367. Munger, Steven S.

368. Munsterman, R.A.

369. Murphy, Paul R.

370. Murray, H. M.

371. Murray, Thomas O.

372. Musick, Jr., Charles R.

373. Myers, III, Wilson D.

374. Nagy, S.L.

375. Nall, Jr. Robert L.

376. Nelsen, R.J.

377. Nelson, Douglas C.

378. Ness, R.A.

379. Neumann, P.G.

380. Nicchia, Leonard R.

381. Nicholson, William T.

382. Norman, II J. S.

383. O'Connell, John M.

384. Ogden, Thomas H.

385. Ogilvie, Thurston

386. Oneill, Ramon E.

387. ORourke, M.J.

388. Ortiz, Boris

389. Osborne, Richard A.

413.   Phillips, R. A.

414.   Phillips, Henry C.

415.   Phillips, Terry E.

416.   Pinkerton, K. R.

417.   Pipkin, R. P.

418.   Poirer, Noel A.

419.   Potter, Martin

420.   Preis, M.J.

421.   Priest, Peter D.

422.   Priest, Paul B.

423.    Putonen, Leonard R.

424.   Raju, K.V.

425.   Ramaprakash, T. S.

426.   Rawlings, Jr. Walter E.

427.   Rawls III, F. H.

428.   Ray, C. G.

429.   Redd, W. J.

430.   Reeh, Charles D.

431.   Regan, J. H.

432.   Reik, K. M.

433.   Reinholtz, R. E.

434.   Reitan, A. G.

435.   Reno, Richard W.

459.   Schultheis, D. H..

460.   Secor, E. F.

461.   Self, G.W.

462.   Sessums, Stephen E.

463.   Sewell, Jr. H. J.

464.   Sheehan, F. J.

465.   Shepard, Gary C.

466.   Shore, G.E.

467.   Shoun, J. W.

468.   Shriver, Larry L.

469.   Simmons, Gary

470.   Sirmans, J. W.

471.   Sizemore, Samuel E.

472.   Smith, Andrew C.

473.   Smith, Charles E.

474.   Smith, David W.

475.   Smith, Jack G.

476.   Smith, Jr. S. D.

477.   Smith, Robert Leo

478.   Smith, Carl C.

479.   Sofferin, Jeffrey

480.   Sorenson, John P.

481.   Spieker, Jr. Samuel G.

505.    Taliaferro, Jr. C.E.

506.    Talton, W.G.

507.    Tate, Joe F.

508.    Taylor, Dean H.

509.    Taylor, J. M.

510.    Taylor, Jr. Glyn M.

511.    Taylor, Jr. Henry A.

512.    Taylor,  Michael J.

513.    Taylor, Robert A.

514.    Terrence, J. Fitzgerald

515.    Tew, Jr. B. D.

516.    Theakston, Peter A.

517.    Thompson, Jerry L.

518.    Thompson, R. L.

519.    Thompson, Steve C.

520.    Thomson, III John B.

521.    Thornton, Kenneth

522.    Threlkeld, J. G.

523.    Tippett, Jeannette S.

524.    Tipton, Larry K.

525.    Tomelden, Arthur P.

526.    Toole, Oliver A.

527.    Torres, C. T.

551.   Walby, Thomas F.

552.   Walker, T. W.

553.   Walther, F. O.

554.   Walton, M.R.

555.   Waterstreet, Mark A.

556.   Watson, M.D.

557.   Watt, A. K.

558.   Weaver, Linda B.

559.   Webb, Jr. Rufus

560.   Weir, James R.

561.   Weisbruch, J. E.

562.   Weller, Jr. A. E.

563.   Wengert, R. D.

564.   West, Peter

565.   Westby, Dorothy C.

566.   Westphall, Robert C.

567.   Whitaker, R.B.

568.   White, Robert L.

569.   Whitford, James E.

570.   Whitley, Donald D.

571.   Whitney, Richard A..

572.   Wilkie, James R.

573.   Wilson, James S.

Ex. B

NOT PRECEDENTIAL

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

No. 05-2260

IN RE: TRANS WORLD AIRLINES, INC.,
Debtor

AMERICAN AIRLINES, INC.,
Appellant

v.

ELIZABETH A.M. ROBINSON

MARK S. KENNEY,
Trustee

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 04-cv-00234)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2006

Before: RENDELL, SMITH and ALDISERT, Circuit Judges.

(Filed May 10, 2006)

OPINION OF THE COURT

RENDELL, *Circuit Judge.*

This appeal arises out of the chapter 11 bankruptcy of debtors Trans World

Airlines, Inc. and certain of its affiliated entities (collectively, "TWA"). The appellant is American Airlines, Inc. ("American"), the purchaser of substantially all of TWA's assets. On March 24, 2003, Elizabeth Robinson filed a motion in the Bankruptcy Court seeking to compel American to pay her certain benefits under the Federal Longshoremen's and Harbor Workers' Act (the "Longshoremen's Act"). Robinson argued that American assumed this obligation under the terms of the Asset Purchase Agreement ("APA") in which it purchased substantially all of the assets of TWA.

On February 27, 2004, the Bankruptcy Court entered an order granting certain relief requested by Robinson. The Bankruptcy Court ordered American to make workers' compensation payments to Robinson in the amount of $1,866.32 per month, commencing April 9, 2001. The District Court affirmed the Bankruptcy Court's order. American argues that the Bankruptcy Court and District Court were incorrect in their conclusion that American had assumed any liability to pay Robinson pursuant to the APA. We will affirm the order of the District Court.[1]

---

[1] The Bankruptcy Court had jurisdiction to review Robinson's motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. The District Court had jurisdiction pursuant to 28 U.S.C. § 158. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 158 and 1291. We have plenary review of the District Court's determination, exercising the same review of the Bankruptcy Court's decision as that exercised by the District Court. *Airline Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 128 (3d Cir. 1997). We review the Bankruptcy Court's findings of fact only for clear error and its legal determinations *de novo. Id.*

2

I.

Robinson is a former flight attendant of TWA who sustained a work-related injury during a flight between Paris and New York on January 31, 1984. She was permanently disabled. Shortly thereafter, she began receiving benefits in accordance with a collective bargaining agreement between TWA and the Independent Federation of Flight Attendants (the "IFFA"), dated April 12, 1983 (the "CBA"). Article 20(D)(2) of the CBA provided that "[t]he Company will provide benefits for the Flight Attendants in International Operations in accordance with either the Workers' Compensation laws of the State of New York or the Federal Longshoremen's Act, whichever provides the higher benefits." App. 220. At the time of Robinson's injury, the Longshoremen's Act provided higher benefits than those provided under New York state law. Accordingly, TWA became obligated to and provided benefits to Robinson in accordance with the union contract at the higher Longshoremen's Act level.

On August 13, 1992, TWA and the IFFA entered into an amended collective bargaining agreement (the "Amended CBA"). Though American has been unable to produce the actual Amended CBA, American now asserts that the Amended CBA "clarified" that permanently disabled employees were not entitled to Longshoremen's Act benefits. Regardless of this purported intended meaning of the Amended CBA, TWA continued paying Robinson's Longshoremen's Act benefits.

On January 9, 2001, TWA and American entered into the APA, whereby

3

American agreed to purchase substantially all of TWA's assets, subject to an auction and

sale pursuant to section 363 of the Bankruptcy Code.  Under the APA, American agreed

to assume "[a]ll workers' compensation obligations for all employees of TWA and the

other Sellers as of the Closing Date calculated in accordance with methods, principles,

practices and policies employed in the preparation and presentation of the September

Balance Sheet and with generally accepted accounting principles consistently applied."

App. 242-243.  The next day, on January 10, 2001, TWA filed voluntary petitions for

relief under chapter 11.  On March 12, 2001, the Bankruptcy Court entered an order

approving the sale of substantially all of TWA's assets to American in accordance with

the terms of the APA.  At about this time, TWA ceased paying Longshoremen's Act

benefits to Robinson.  However, TWA's insurance carrier continued to pay her New

York State workers' compensation benefits.

    In December 2002, TWA and Robinson entered into a settlement agreement,

whereby TWA paid her $25,000 for settlement of the five proofs of claims she had filed

against TWA in the bankruptcy proceeding.  However, American was not a party to this

post-APA settlement agreement.  On March 24, 2003, Robinson filed a motion with the

Bankruptcy Court seeking to compel American to pay her the benefits she believed she

was entitled to under the Longshoremen's Act.  The Bankruptcy Court reviewed

evidence and took testimony.  On February 27, 2004, the Bankruptcy Court entered an

order granting the relief requested in Robinson's motion.  The Court ordered American

4

to make workers' compensation payments to Robinson in the amount of $1,866.32 per month, retroactive to April 9, 2001. All accrued but as yet unpaid monthly payments were to be calculated with interest from the dates of accrual at the rate established by 28 U.S.C. § 1961. The Bankruptcy Court also issued a letter opinion setting forth its reasoning: first, TWA had a continuing obligation to Robinson that was not extinguished by the Amended CBA; second, American assumed the ongoing obligation to Robinson by virtue of the terms of the APA; and, third, Robinson's settlement with TWA did not affect American's obligation to her. American appealed the order of the Bankruptcy Court to the District Court. On March 28, 2005, the District Court entered an order affirming the Bankruptcy Court's order.

## II.

American now advances three arguments on appeal. First, American argues that TWA had no obligation to provide Robinson with Longshoremen's Act benefits after the effective date of the Amended CBA (August 13, 1992), which American argues eliminated TWA's obligation to provide Longshoremen's Act benefits to permanently disabled employees. Second, American argues in the alternative, even if TWA did have an obligation to provide Robinson with Longshoremen's Act benefits under the Amended CBA, American did not assume that liability, and, even if it did assume that liability, the total amount of such obligation was no more than $446.30, the pro-rata amount of TWA's Longshoremen's Act obligation to Robinson as of the closing date of

5

the sale to American. Third, American argues that, as a successor of TWA, it was

released of any obligation to Robinson by the December 2002 settlement agreement

between TWA and Robinson. As discussed below, we find these arguments

unpersuasive.

A.

The pivotal issues are, first, whether, at the time of the APA, TWA had an

obligation to pay Robinson, and, second, what "obligation" was assumed by American by

virtue of the APA. American argues that TWA no longer had an obligation to pay

Robinson's Longshoremen's Act benefits under the Amended CBA. We find this

unconvincing. First, we note that this does not appear to have been TWA's

interpretation of the Amended CBA. TWA continued to pay Robinson Longshoremen's

Act benefits for more than eight years after the effective date of the Amended CBA and

until its bankruptcy and sale of substantially all assets to American. Second, the

Amended CBA specifically states that TWA "agrees that it will not challenge nor attempt

to reduce any permanent disability benefits, mistakenly awarded prior to the effective

date of the new Agreement and computed using the Federal Longshoremen's and Harbor

Worker's Act...." App. 820 (emphasis omitted). Thus, even if we accept American's

argument that the Amended CBA was designed to "clarify" that permanently disabled

employees are not entitled to Longshoremen's Act benefits, the Amended CBA was

clearly intended only to forestall claims by future disabled employees and not to apply

6

retroactively to those employees already receiving benefits. Therefore, we do not believe that the Bankruptcy Court erred in its conclusion with respect to the effect of the Amended CBA. American's argument is belied both by the extrinsic evidence of TWA's continued payments to Robinson and the plain language of the Amended CBA.

American next argues that the Bankruptcy Court erred in finding that American had assumed any of TWA's obligation to Robinson under the APA. American also argues that, if we find that it is obligated to Robinson under the APA, we should find that it is only obligated to pay Robinson for $446.30, which American argues is the pro-rata amount of TWA's Longshoremen's Act obligation to Robinson as of the APA's closing date. We find these arguments equally unpersuasive.

When American purchased substantially all of TWA's assets, it agreed to assume "[a]ll workers' compensation obligations for all employees of TWA and the other Sellers as of the Closing Date calculated in accordance with methods, principles, practices and policies employed in the preparation and presentation of the September Balance Sheet and with generally accepted accounting principles consistently applied." App. 243. The Bankruptcy Court found that the obligation assumed by American pursuant to the APA was based upon the calculation of worker's compensation obligations as then set forth in TWA's records. Further, it found that TWA's own accounting reflected its continued obligation to pay Robinson $1,866.32 per month. The Bankruptcy Court concluded that the term "all worker's compensation obligations" included TWA's obligations to pay

7

Robinson at the higher Longshoreman's Act rate. We will not disturb the Bankruptcy Court's interpretation of the APA.

B.

Finally, we find no error in the Bankruptcy Court's conclusion that Robinson's December 2002 settlement with TWA did not extinguish American's obligation to pay benefits to Robinson. As the Bankruptcy Court observed, American's assumption of TWA's obligation to Robinson occurred on April 9, 2001 when the APA became effective. Because Robinson's settlement with TWA was executed after American had already assumed the obligation, the settlement agreement did not encompass American's separate obligation to Robinson. Moreover, as the Bankruptcy Court noted, the settlement agreement released the "Debtors" and the "Estate"; it did not release successor entities such as American. Further, the release provision specifically provides that "nothing herein shall be construed or operate in any way to alter or release ... American Airlines, Inc. ("American") from any alleged liability they may have to Robinson." App. 354. Thus, the release specifically carved out any claim Robinson might have against American. In addition, as the Bankruptcy Court observed, American was not a party to the settlement agreement and does not appear to have even been aware of the agreement until after it was executed. The Bankruptcy Court found that it was "quite apparent from the settlement agreement that TWA thought Ms. Robinson had a continuing right to assert a claim against American." We find no error in the Bankruptcy Court's analysis or

8

conclusion in this regard.

## III.

For the foregoing reasons, we will affirm the order of the District Court affirming the order of the Bankruptcy Court.

Ex. C

AGREEMENT
between
EASTERN AIR LINES, INC.
and
THE AIR LINE PILOTS
in the service of
EASTERN AIR LINES, INC.
as represented by
THE AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL

This Agreement is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between EASTERN AIR LINES, INCORPORATED, hereinafter referred to as "Eastern" and the Air Line Pilots in the service of EASTERN AIR LINES, INCORPORATED, as represented by the AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, hereinafter known as the "Association".

It is hereby mutually agreed:

## SECTION 1 - RECOGNITION AND SCOPE

A.    The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) employed by Eastern have designated the Association to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions covering all pilots in the employ of Eastern in accordance with the provisions of the Railway Labor Act, as amended.

B.    It is agreed that all present or future flying, including flight training (except for initial factory-conducted training in newly purchased equipment), revenue flying, ferry flights, charters and wet-leases performed in or for the service of Eastern Air Lines, Inc., shall be performed by pilots whose names appear on the then-current Eastern Air Lines' System Seniority List.

C.    It is agreed that Eastern shall not establish a parent or holding Company, division or wholly-owned subsidiary to perform flying operations outside the scope of this Agreement.

– 1 –

Ex. D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
                                                    x
In Re:                                              :
                                                    :       Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,                :       Chapter 11
                                                    :
                        Debtors                     :
                                                    x
                                                    :
JAMES BALDRIDGE, WILLIAM MANN,                      :
and LARRY DUNN, individually, and                   :
as representatives of a class of persons            :
similarly situated who are referred to as           :
the LPP CLAIMANTS,                                  :
                                                    :
                        Plaintiffs,                 :       Adversary Proceeding
v.                                                  :       No. A-99-412
                                                    :       Class Action
CONTINENTAL AIRLINES HOLDINGS, INC.,                :
CONTINENTAL AIRLINES, INC.,                         :
and SYSTEM ONE HOLDINGS, INC.,                      :
                                                    :
                        Defendants.                 :
                                                    x
```

NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND SETTLEMENT HEARING

TO ALL PERSONS WHO:

(1) ARE EASTERN AIRLINES FORMER FLIGHT DECK EMPLOYEES IDENTIFIED ON EASTERN AIRLINES' NOVEMBER 1990 ALPHABETICAL SENIORITY LIST;

(2) WHO CLAIM THEY ARE ENTITLED TO THE BENEFITS OF THE COLLECTIVE BARGAINING AGREEMENT BETWEEN EASTERN AIRLINES AND THE AIR LINE PILOTS ASSOCIATION IN EFFECT AT THE TIME THAT EASTERN AIRLINES ALLEGEDLY MERGED WITH CONTINENTAL AIRLINES HOLDINGS, INC.;

(3) WHO FILED A TIMELY CLAIM IN THE ABOVE-ENTITLED REORGANIZATION OF CONTINENTAL AIRLINES, INC., CASE NO. 90-932 FOR ENFORCEMENT OF THE LABOR PROTECTION PRIVILEGES EMBODIED IN THE EASTERN AIRLINES COLLECTIVE BARGAINING AGREEMENT EITHER INDIVIDUALLY OR AS A MEMBER OF THE AIR LINE PILOTS ASSOCIATION OR AS A NAMED LABOR PROTECTIVE PROVISION CLAIMANT REPRESENTED BY CLASS COUNSEL IN THE REORGANIZATION AND WHO ARE IDENTIFIED ON EXHIBIT A ATTACHED TO THIS NOTICE;

*EXCEPT* (1) THOSE PERSONS WHO SETTLED, WAIVED OR RELINQUISHED HIS OR HER LPP CLAIM WITH CONTINENTAL AND (2) THOSE PERSONS WHO MOVED TO INTERVENE IN THIS CASE, PURSUANT TO THE "MOTION TO INTERVENE IN ADVERSARY PROCEEDING" FILED NOVEMBER 11, 1999 WHO FILED A NOTICE OF WITHDRAWAL OF HIS OR HER PROOF OF CLAIM IN THIS REORGANIZATION WITH THE CLERK OF THE BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE ON OR BEFORE APRIL 15, 2000.

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THE CONTINENTAL DEFENDANTS HAVE AGREED TO A SETTLEMENT OF THIS LITIGATION WHICH PROVIDES FOR FINANCIAL BENEFITS TO THE MEMBERS OF THE CLASS IF THE SETTLEMENT IS APPROVED BY THE COURT.

IMPORTANT:    IN ORDER FOR YOU TO PARTICIPATE IN THIS SETTLEMENT AND RECEIVE YOUR SHARE OF THE SETTLEMENT BENEFITS, YOU MUST COMPLETE AND RETURN THE ATTACHED PROOF OF CLAIM AND WAIVER AND RELEASE BY NO LATER THAN APRIL 3, 2002.

THE PURPOSE OF THIS NOTICE IS TO ADVISE YOU OF THE PROPOSED SETTLEMENT OF THIS CLASS ACTION, COUNSEL'S FEE APPLICATION, THE APPLICATION FOR COMPENSATION AWARDS BY THE CLASS REPRESENTATIVES AND YOUR RIGHTS WITH RESPECT TO THESE MATTERS. THIS NOTICE IS NOT AN EXPRESSION OF OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY ANY PARTY IN THIS ACTION.

THE PROPOSED SETTLEMENT CONSISTS OF ALLOWED PRE-PETITION GENERAL UNSECURED CLAIMS IN THE CONTINENTAL BANKRUPTCY WITH EACH ELIGIBLE CLAIMANT RECEIVING AN ALLOWED PRE-PETITION GENERAL UNSECURED CLAIM IN THE AMOUNT OF ONE HUNDRED TEN THOUSAND ($110,000.00) DOLLARS RESULTING IN THE DISTRIBUTION OF GROSS SETTLEMENT CONSIDERATION FROM THE CONTINENTAL BANKRUPTCY ESTATE FOR EACH CLASS MEMBER OF 340 SHARES OF CONTINENTAL AIRLINES CLASS B COMMON STOCK AND $83.14 IN CASH MINUS COURT APPROVED FEES, COSTS AND EXPENSES.
IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT BENEFITS.
YOU MUST FILE A PROOF OF CLAIM BY APRIL 3, 2002 IN ACCORDANCE WITH PARAGRAPH 15 BELOW TO RECEIVE ANY SHARE OF THE SETTLEMENT BENEFITS TO WHICH YOU MAY BE ENTITLED.
IF, AFTER READING THIS NOTICE, YOU HAVE QUESTIONS CONCERNING THE SETTLEMENT, THE SETTLEMENT FAIRNESS HEARING OR ANY OF THE INFORMATION CONTAINED IN THIS NOTICE, YOU MAY CALL OR WRITE TO THE CLAIMS ADMINISTRATOR AT:

EAL LPP Class Action Settlement
The Garden City Group, Inc.
Claims Administrator
105 Maxess Road
Melville, NY 11747
1-800-327-3664
WWW.EALLPPCLASSACTION.COM

DO NOT WRITE TO OR TELEPHONE THE COURT.

You are not entitled to share in the Settlement if you have already settled your labor protective provision (LPP) claim against the Defendants and signed a release or if you withdrew your Proof of Claim in the Continental bankruptcy proceedings.

claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date, as the LPP Claimants contended, or whether the LPP claims, as Continental maintained, are limited to one year's back pay pursuant to 11 U.S.C. §502(b)(7) of the Bankruptcy Code.

      10.    In consideration for proceeding with and obtaining a determination of this issue, Continental agreed to value each eligible Eastern pilot's claim at One Hundred Ten Thousand ($110,000.00) Dollars, even if the Court ruled that Continental's position was correct and the claims limited to one year's back pay. Continental also agreed that if the Court determined that the value of the Eastern flight deck crew members' LPP claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date, the Class would be entitled to proceed with the National Mediation Board arbitration in order to determine whether or not a merger occurred in lieu of the Settlement.
The Court ruled on the merits of Plaintiffs' claim, declaring that the LPP Claims are limited to one year by 11 U.S.C. §502(b)(7). The $110,000.00 valuation for each member of the Class' LPP claim is substantially greater than the allowed claim would otherwise be if, after arbitration and litigation, it was determined that a merger occurred.

      11.    The Settlement Agreement thus provides that if the Settlement is approved by the Court, the Class shall receive the following Gross Settlement Consideration:

          Each Eligible Claimant shall receive an allowed pre-petition general unsecured claim in the amount of One Hundred Ten ($110,000.00) Thousand Dollars and each such allowed claim will be funded with 340 shares Continental Airlines Class B Common Stock and $83.14 in cash.

      12.    If the Court grants Final Approval of the proposed Settlement of the Litigation, and enters judgment thereon, the Gross Settlement Consideration shall be reduced by the settlement costs, attorneys' fees, reimbursement of expenses and class representative compensation approved by the Court (see Section VII, paragraphs 17 and 18 below). The remaining Net Cash Settlement Amount will thereafter be distributed to the members of the Class pursuant to the Settlement Agreement which has been submitted by Class Counsel for the approval of the Court.

      13.    **The Release of Settled Claims**. The claims that are being released (the "Settled Claims") are any and all claims and causes of action, for any form of relief, that have been or could have been asserted by the Class, or any individual Class member against the Released Parties, including without limitation any claim; arising out of or relating to the allegations which were or could have been made in the Litigation. Approval of the Settlement will release and discharge the Settled Claims against the bankruptcy estate of Continental Airlines, Inc. and its affiliated debtors, Continental Airlines Holdings, Inc., Continental Airlines, Inc. (the reorganized entity and its affiliates), System One Holdings, Inc., ExpressJet Airlines, Inc. a/k/a Continental Express, Continental Micronesia, Inc., its subsidiaries and affiliates, and its and their directors and officers, stockholders, employees, attorneys, agents, and representatives (the "Released Parties") and the Settlement will result in the dismissal of all such actions or claims. A full description of the Settled Claims, the release and discharge, and the bar on commencing any action or other proceeding is set forth in the Settlement Agreement, which is available on the website established for this Class Action Settlement at WWW.EALLPPCLASSACTION.COM or from Class Counsel or at the Court.

      14.    **Termination Provisions**. If the Court does not approve the proposed Settlement or it is terminated by the Parties in accordance with its terms, the rights and duties of the Parties will continue as if no Settlement Agreement has been reached and members of the Class will have no rights in or to the proposed Gross Settlement Consideration.

## V. SUBMISSION OF PROOFS OF CLAIMS

      15.    In order for you to share in the Net Cash Settlement Amount:
      (i)    You must submit a properly executed Proof of Claim (a copy of which accompanies this Notice) and mail it to:

              **EAL LPP Class Action Settlement**
              **The Garden City Group, Inc.**
              **Claims Administrator**
              **105 Maxess Road**
              **Melville, NY  11747**

no later than April 3, 2002. Each Proof of Claim shall be deemed filed when postmarked (if properly addressed and mailed by first class mail, postage prepaid). Any Proof of Claim submitted in any other manner shall be deemed to have been filed when it is actually received at the above address.
      (ii) Your Proof of Claim must satisfy the following conditions:
          (a) It must be properly filled out, signed under penalty of perjury, and filed in a timely manner in accordance with the provisions of the preceding paragraph;
          (b) It must be complete and contain no material deletions or modifications of any of the text (except for your corrections, if any, to your name, address, and other personal data).

## VI. RECOMMENDATION OF COUNSEL

      16.    Class Counsel recommends the Settlement as fair, reasonable, and adequate based on the comprehensive factual investigation and legal analysis which was conducted. Class Counsel weighed the benefit of the Gross Settlement Consideration against the risks of continued litigation. The risks considered included: an assessment of Defendants' asserted defenses, including sharply disputed issues of fact; the probability of reversing the decision of the Bankruptcy Court's decision applying 11 U.S.C. §502(b)(7) to the LPP claims; the time involved in additional appeals of the Bankruptcy Court decision; the uncertainty in predicting the outcome of an arbitration on the issue of the alleged merger between Eastern and Continental; the probabilities of additional appeals with respect to the outcome of any such arbitration; the limitation on damages available from such arbitration if the Bankruptcy Court's decision is sustained; the potential for the diminishment of the fund available for payment of the claims in the Continental bankruptcy; and the risks and delay of an appeal by the Parties not prevailing at the arbitration.

## VII. APPLICATION FOR ATTORNEYS' FEES, COSTS, DISBURSEMENTS AND COMPENSATION AWARD TO PLAINTIFFS

      17.    If this Settlement is approved by the Court, Class Counsel will request the Court to award attorneys' fees of Thirty Percent (30%) of the Gross Settlement Consideration. Class Counsel will also seek reimbursement of litigation expenses which are estimated not to exceed $100,000.00. To the extent approved by the Court, the distributions to Class Members will be reduced by such attorneys' fees, costs, and expenses, as well as Settlement Administration costs. Settlement Administration Costs are all Court-approved reasonable costs and expenses incurred in connection with the preparation, printing, mailing and/or publication of the Class Settlement Notice and Summary Notice, the administration of the Proofs of Claim filed by members of the Class and the distribution of the Gross Settlement Consideration. Members of the Class are not otherwise responsible for attorneys' fees, costs, and expenses. Class Counsel has an agreement with Eastern Pilots for Fairness, Inc. ("Corporation"), a not-for -profit corporation which has provided economic support from this litigation since 1991, whereby Class Counsel will reimburse the Corporation and its members in good standing (who are also Class Members) from the attorneys' fees awarded to Class Counsel a portion of the monies they have advanced so that all Class Members will bear on a pro rata basis the attorneys' fees and expenses for the result achieved on behalf of the Class. The sole basis for this partial reimbursement is to ensure that those Class Members who have already advanced monies on behalf of the Class do not bear an unduly disproportionate amount of the costs and attorneys' fees.

      18.    Class Counsel intends to apply to the Court for the payment of a compensation award of 1,700 shares of Continental Airlines stock for each of the three named Class Representative Plaintiffs, James Baldridge, William Mann, and Larry Dunn for the ten years of significant time, labor and effort expended by them in this matter. To the extent approved by the Court, the compensation awards will be paid from the Gross Settlement Consideration and the distribution to Class Members will be reduced on a pro rata basis by such compensation awards. In addition to actively participating in the Litigation and in all administrative and judicial proceedings since 1991 which led up to and were necessary for the Litigation, the three Class Representatives were in constant contact with members of

# EXHIBIT A

Abbott, Robert D.
Aber, L.A.
Abrams, Billy L.
Adams, Jr., J.T.
Adams, Keith J.
Alexander, Harold
Alford, Wayne L.
Alvarez, Jr. Jose A.
Anderson, Ronald R.
Andrews, Jr. George M.
Angeletti, Thomas J.
Armstrong, III F.C.
Arnott, Brian G.
Atteberry, William M.
Ayer, K.H.
Baalen, P.
Babbitt, Randolph J.
Baldoni, L.A.
Baldridge, James H.
Balukonis, V.J.
Baque, III Frank
Barge, Patrick S.
Barnes, H. Bryant
Barnes, William H.
Barrero, Frank
Bartlett, David R.
Bauch, James H.
Beard, Ronald E.
Beattie, Donald G.
Beaty, Gregory L.
Behr, Peter J.
Bell, D.A.
Bell, L.
Beltran, J.E
Berghane, D. A.
Bergstein, D.S.
Berry, A.L.
Berwick, T.N.
Beveridge, A.L.
Bialko, Peter J.
Biggs, Clifford G.
Bisgnano, Charles
Bjelkevig, Richy A.
Blackburn James R.
Blair, T.D.
Blankenship, Jr. O.T.
Blix, Victor E. III
Boja, Robert N.
Bonna, F.
Boswell, L.L.
Brablec, Douglas D.
Bradley, W.D.
Bradley, R.
Brandt, William, M.
Braynon, Oscar J.
Bredthauer, Dirk
Bromschwig, Kurt F.
Brown, Walter R.
Browning, David L.
Bryant, Charles C.
Buchanan, E.J.
Bundrant, William D
Bunn, Larry D.
Bunlin, Edward S.
Burke, R.T.
Burke, John A.
Burkhart, Ronnie L.
Burns, David A.
Butler, David S.
Butts, Ronald G.
Carl, George L.
Carlson, Bruce E.
Carter, Bruce, R.
Carter, D.L.

Case, Douglas W.
Chaile, Bruce
Champage, Carl M.
Chapo, James E.
Charnes, Jonathan
Cheek, Raymond T.
Chirino, Rafael E.
Christopher, Anthony S.
Cirrotti, Dennis J.
Clark, Ronald D.
Clark, D.E.
Clark, W.C.
Clark, Wesley C.
Clary, B.K.
Clary, M.R.
Cocuzzo, D.J.
Cohn, Alan S.
Cole, John D.
Cole, William F.
Colli, G.F.
Collier, W.R.
Commander, Jr. John B.
Compton, John P.
Connell, E.W.
Connolly, James M.
Conti, R.G.
Cook, Carl D.
Cook, Kenneth E.
Cooper, T.L.
Cornay, Ray
Cowen, John B.
Craig, Robert L.
Crane, W.E.
Craus, C.M.
Crawford, D.B.
Crow, Kenneth P.
Crush, James M.
Curran, T.R.
Daniel, Jr., James W.
Davidson, William F.
Davis, Charles B.
Davis, Gerald O.
Davison, David J.
Davoust,W.P.
De Phillips, Floyd M.
Deeton, James L.
Delaria, David J.
Deming, Maurice A.
Devereaux, John A.
Devlon, John R.
Dickinson, Randall L.
Dickman, George A.
Dixon, C.W.
Dixon Carroll
Dobson, Gordon W.
Doctorchik, Scott
Dodson, Bonnie U.
Dodson, Theodore E.
Doglione, Frank
Donovan, M.D.
Donovan, M.F.
Dorticos, Raul H.
Dublin, Robert S.
Duckworth, Thomas O.
Dugger, T.R.
Dundas, Charles P.
Dunn, L.J.
Dunn, R.A.
Durante, J.P.
Durkin, G.P.
Dyer, Charles G.
Dylong, J.
Ealy, R.L.
Eastman, J.D.
Edwards, K.A.

Egut, Ronald S.
Eldridge, Dorothy J.
Elmdanat, R.
Emery, James C.
Engelke, Marc J.
Engelke, Warren L.
Erickson, Alan W.
Evans, R.H.
Fahn, C.L.
Fant, Jr. Glenn E.
Farenga, J.H.
Farnsworth, Earnest L.
Farnsworth, K.L.
Farrell, Richard L.
Faulkner, H.C.
Feliu, John E.
Finch, R.A.
Fisher, III Joel F.
Fong, G.W.
Foresto, J.M.
Forsberg, Scott
Foster, Hubert E.
Foster, Robert W.
Fowells, James E.
Francis, R.H.
Frank, William
Frater, K.X.
Frazier, Bennie W.
Freytes, Luis R.
Friedrichs, Howard W.
Fritch, Donald A.
Frost, Wayne B.
Fryling, Albert A.
Fugedy, J.J.
Gaedtke, M.L.
Gaedtke, Michael L.
Garcia-Vergara, H.
Gardner, David E.
Gary, Carrol J.
Garza, E.
George, Henry R.
Geraghty, James D.
Gibson, Randall
Gordon, D.G.
Gorman, Barry William
Govatos, John D.
Grafton, Jr. J.R.
Grau, F.L.
Green, Grant S.
Green, G.A.
Greene, David L.
Greksa, G.J.
Grenie, A.A.
Gribas, Kenneth
Griffin, Donny E.
Griffith, Bobbie
Griggs, R.P.
Groff, W.V.
Grubbs, R.E.
Gruetzner, Allen
Grzegorzak, S.K.
Gunn, George H.
Gurl, John T.
Gurley, Louis E.
Hall, B.W.
Hall, Howard W.
Halloran, D.
Hamilton, Walcott B.
Haney, Fred C.
Hansen, P.W.
Hanshaw, R.G.
Harn, George F.
Harrell, Bruce
Harris, R.J.
Hartley, J.D.

Hassett, P.R.
Hastings, Gregory A.
Hauth, David A.
Hawkins, Thomas R.
Hiatt, Jr. H.W.
Higgins, R.F.
Hill, W.B.
Hinsdale, James P.
Hipps, William D.
Hodgers, Benjamin
Hooton, J.W.
Houston, Charles M.
Howard, C.A.
Howard, Charles B.
Howard, James W.
Huddleston, J.D.
Huges Jr., James R.
Hunter, Richard I.
Hurley, Jay
Hutchin, Robert A.
Hutson, R.T.
Ingram, Capt. Culpepper F.
Inman, Brownie N.
Iranipour, F.
Jacobowitz, L.
Jansen, C.W.
Jaye, Mamadou D.
Johansen, William H.
Johnson, R.A.
Johnson, C.T.
Johnson, G.M.
Johnson, Richard A.
Johnson, R. A.
Johnson, Robert E.
Jones, John L.
Jordan, W.O.
Kalantsri, F.
Kane, S.G.
Keeler, R.L.
Kennedy, M.J.
Khan, N.
Kimble, R. L.
Kingwell, R.A.
Kluthe, D.B.
Koziol, R. L.
Kritcher, Lawrence N.
Krueger, Fred W.
Kucklick, Joe
Kurtz, Hugo E.
Laine, J. R.
Laing, R. C.
Lamaute, L .L.
Lambie, J. M.
Lamecker, D. R.
Landa, George
Landry, Jr. Donald J.
Lane, F. W.
Lane, Jr. Gordon B.
Lane, Malcolm V.
Langer, Lawrence E.
Lantz, K. M.
Latham, Richard C.
Lavarello, E. F.
Lawrence, Charles W.
Lea, Robert G.
Lee, J. R.
Lee, Allan R.
Lehman, L.G.
Leonhardt, Stephen J.
Levy, Simon
Lewandowski, R.A.
Lewicki, John A.
Lewis, Gary M.
Liebing, Kurt M..
Lindell R.W.

5

**Must be Postmarked**
**No Later Than**
**April 3, 2002**

**EAL LPP Class Action Settlement**
**The Garden City Group, Inc.**
**Claims Administrator**
**105 Maxess Road**
**Melville, NY 11747**
**1-800-327-3664**
**WWW.EALLPPCLASSACTION.COM**

**CNT**



## PROOF OF CLAIM AND RELEASE

Claim Number:

**CORRECTIONS OR ADDITIONAL INFORMATION**
Write any name, address and/or SSN/TIN corrections below
if necessary **OR** if there is no preprinted data to the left,
please provide your name and address here:

IF THIS AREA IS INCORRECT,
◄— PLEASE COMPLETE
"CORRECTIONS ONLY" BOX
TO THE RIGHT.    ——►

**Please fill in SSN/TIN if box is blank:**

**Please fill in Eastern Employee Number if box is blank:**

---

### IMPORTANT NOTICE - PLEASE READ CAREFULLY

This Proof of Claim pertains to claims which you have as a Class Member arising out of claims filed in Continental Airline's bankruptcy proceedings, *In Re Continental Airlines, Inc.*, Case Nos. 90-932 - 984 (Bankr. D. Del.) (the "Continental Bankruptcy Proceedings"), for enforcement of the labor protective provisions of the Eastern Airlines/Air Line Pilots Association collective bargaining agreement against Continental.

If you fail to file your Proof of Claim and Release form by **April 3, 2002**, your claim will be subject to rejection and you will be precluded from receiving any benefits under the Settlement of this case, the *Baldridge* LPP Class action, if it is approved by the Court.

#### Instructions

In order for you to receive any benefits under the Settlement which is pending approval by the Court in this case, you must fill out, sign and date this Proof of Claim and Release form on the reverse side in Section II entitled *Declaration of Claimant to Participate in Benefits Under Settlement*, and mail it first class mail, postage prepaid, on or before **April 3, 2002** to:

**EAL LPP Class Action Settlement**
**The Garden City Group, Inc.**
**Claims Administrator**
**105 Maxess Road**
**Melville, NY 11747**

IF YOU HAVE ANY QUESTIONS REGARDING THIS FORM, CALL THE CLAIMS ADMINISTRATOR AT 1-800-327-3664 AND WE WILL BE GLAD TO ASSIST YOU. DO NOT CALL THE COURT.

### PLEASE SEE REVERSE SIDE FOR SECTION II

Ex. E.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al.. | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. A-99-412 |
| CONTINENTAL AIRLINES HOLDINGS, | ) | Class Action |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS. | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF EDNA SMITH

COUNTY OF HARRIS    ) ss:
                    )
STATE OF TEXAS      )

Edna Smith, being duly sworn, deposes and says:

1.    I have been employed by Continental Airlines, Inc. ("Continental") since 1985

and I am currently a Litigation Analyst in the Continental legal department. I have been directly

involved in the administration of proofs of claims in the above-captioned bankruptcy proceeding

since Continental created the claims group in 1990. I am duly authorized to execute this affidavit and unless otherwise indicated. the facts and information set forth herein are based on my personal knowledge.

      2.     I worked with Continental's in-house and outside counsel and counsel for the Plaintiffs to prepare Exhibit A to the proposed Amended Order Granting Class Certification, a copy of which is attached hereto. It is my belief and understanding that the attached Exhibit A is a complete and accurate list of all persons properly included as plaintiffs in the above-captioned class action adversary proceeding.

      3.     The attached Exhibit A was compiled as follows:

      (a)     I and those under my direct supervision and control reviewed the Official Claims Register maintained in these bankruptcy cases and identified any proof of claim that may have been filed by a former employee of Eastern Airlines who claimed they were entitled to the benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with Continental Airlines Holdings, Inc. This resulted in an initial list of more than 5,000 claims.

      (b)     Each proof of claim was pulled and reviewed by me personally or those under my direct supervision and control to determine if the basis of the claim was for equitable relief or damages as a result of Continental's alleged violations of the labor protective provisions (the "LPP's") of the Eastern CBA. I deleted from the list those proofs of claim that did not meet the criteria set forth above.

2

(c)    I then reviewed the list of all those claimants who had settled and released

their claims against the Debtors as a result of that certain settlement agreement between the

Debtors and the Air Line Pilots Association (the "ALPA Settlement"). Each claimant that had

accepted the ALPA Settlement was removed from the list.

(d)    I then reviewed a list prepared by Continental's outside counsel of all those

claimants who had filed a notice withdrawing their proofs of claim in these proceedings. This

group is referred to as the "Addington Group." Each claimant that had withdrawn his or her

claim was removed from the list.

(e)    I was then supplied with a list prepared by class counsel to the Plaintiffs of

those persons that he believed would be properly included in the class. I reconciled the two lists,

doing further research into a claim or claimant where necessary and I did identify certain

additional claimants that were properly included in the class. The result of these efforts, which

took more than 80 hours, is the list attached hereto as Exhibit A.

4.    Based on the foregoing, I submit that the list attached hereto as Exhibit A is a

complete and accurate list of all persons properly included as plaintiffs in the above-captioned

class action adversary proceeding.

Dated: January 2, 2002
       Houston, Texas

                                    _Edna Smith_
                                    Edna Smith

CHERYL RUSSELL
Notary Public, State of Texas
My Commission Expires
October 21, 2004

Notary: _Cheryl Russell_

3

WP3:715726.1                                              45085.1005

Ex. F

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>CONTINENTAL AIRLINES, INC., et. al.,<br><br>Debtors<br><br>JAMES BALDRIDGE, WILLIAM MANN, and LARRY DUNN, individually, and as representatives of a class of persons similarly situated who are referred to as the LPP CLAIMANTS,<br><br>Plaintiffs,<br>v.<br><br>CONTINENTAL AIRLINES HOLDINGS, INC., CONTINENTAL AIRLINES, INC. and SYSTEM ONE HOLDINGS, INC.<br><br>Defendants. | Case No. 90-932<br>Chapter 11<br><br><br><br><br>Adversary Proceeding<br>No. A-99-412<br>Class Action |

## AFFIDAVIT OF MYLES J. TRALINS

STATE OF FLORIDA    )
                    ) ss.
COUNTY OF MIAMI-DADE )

Before me personally appeared MYLES J. TRALINS, who, being duly sworn, deposes and says:

1.    As Plaintiffs' Class Counsel, I have been directly involved in and have personal knowledge of the procedures described herein which were utilized to identify and verify the members of the class who are listed on Exhibit A attached hereto. (Exhibit A is also appended to the proposed Amended Order Granting Class Certification.)

Docket No 69

2.    Exhibit A was prepared as a result of my work with Class Representatives James Baldridge, William Mann, and Larry Dunn; Patricia Bloom, Ph.D., a consultant retained by plaintiffs to maintain a database regarding members of the class; Edna Smith, an employee of Continental Airlines; and with Continental's attorneys.

3.    Exhibit A was prepared as follows:

(a)    I have maintained a list of persons for whom I filed LPP claims in the *Continental Bankruptcy* proceedings. Persons who elected to accept the Air Line Pilots Association LPP settlement with Continental and advised me or the Class Representatives of the same were deleted from the list. Persons who withdrew their claims as a result of their participation with the Addington group were also deleted. I compared my list of class members after the deletions to the list which Continental prepared to confirm its accuracy. I also received confirmation from counsel for the Addington Group that all persons who had withdrawn their claims were deleted from the list.

(b)    In addition, I obtained from Eastern Airlines, pursuant to a Confidentiality Agreement, the social security numbers of all persons on Eastern's last seniority list who had not settled or withdrawn their claims. I provided the names, social security numbers and Eastern Airlines employee numbers to Choicepoint, a computer data research organization which we hired, in order to verify or obtain current addresses of the class members so that they could be personally served with notice.

(c)    After receiving and reviewing the addresses obtained by Choicepoint's research, I provided the resulting list of class members to the Class Representatives and to our consultant for review. During this review, the Class Representatives and I personally contacted those individuals whose status was in question in order to verify whether or not they are class

members. I also cross-checked the names on the list against Eastern Airlines pre-IAM strike

seniority list and Eastern's November 1990 seniority list.   The finalized list was provided to

Continental's counsel with the request that Continental review same for accuracy and

completeness.

        (d)    During the final review, we agreed with Continental to add one name

which had been missed by Continental to the list and we deleted four names which were

duplicate entries.

    4.    It is my belief that Exhibit A is a complete and accurate list of all eligible members

of the class in this proceeding.

    FURTHER AFFIANT SAYETH NAUGHT.

MYLES J. TRALINS

    **BEFORE ME,** the undersigned authority, personally appeared MYLES J. TRALINS,
who being by me first duly sworn, deposes and says that he executed the foregoing Affidavit
based upon his own personal knowledge and that the statements contained therein are true and
correct.

    SWORN AND SUBSCRIBED before me, this _26th_ day of December, 2001.

Arlene D. Smith-Junco

NOTARY PUBLIC, State of Florida

My Commission Expires:



ARLENE D. SMITH-JUNCO
MY COMMISSION # CC 719309
EXPIRES: February 23, 2002
Bonded Thru Notary Public Underwriters

Ex. G

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In Re:                                          }
                                                }          Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,            }          Chapter 11
                                                }
            Debtors                             }
_____        }
                                                }
JAMES BALDRIDGE, WILLIAM MANN,                  }
and LARRY DUNN, individually, and               }
as representatives of ag class of persons       }
similarly situated who are referred to as       }
the LPP CLAIMANTS,                              }
                                                }
                Plaintiffs,                     }          Adversary Proceeding
v.                                              }          No. A-99-412
                                                }          Class Action
CONTINENTAL AIRLINES HOLDINGS,                  }
INC., CONTINENTAL AIRLINES,                     }
INC. and SYSTEM ONE HOLDINGS, INC.              }
                                                }
            Defendants.                         }
_____        }

## AFFIDAVIT OF CLASS REPRESENTATIVE JAMES BALDRIDGE
## IN SUPPORT OF REQUEST FOR COMPENSATION AWARD

I HEREBY DECLARE UNDER PENALTY OF PERJURY:

1.    My name is James Baldridge. I reside at 402 Stratfield Drive, Lutz, Florida. I am a

      Named Plaintiff and Class Representative in this case.

2.    I was first employed with Eastern Airlines as a pilot on July 3, 1967 remained with the

      Company as a Captain until its shutdown on January 18, 1991.

3.    In early 1991, after Eastern's shutdown, Larry Dunn, William Mann and I recognized that

      unless we undertook to protect our LPP rights with Continental Airlines, no one would do

      it for us. With Eastern out of business, our union, the Air Line Pilots Association, had

Adversary Proceeding
No. A-99-412
Class Action

little incentive to actively fight for EAL pilots' interests by enforcing its seniority

integration policy and the LPPs against Continental. First of all, the union was trying to

become the collective bargaining representative at Continental and was telling CAL pilots

that there would be no EAL pilots at Continental. Second, the union had stood by and

done virtually nothing while EAL transferred assets which carried jobs without the jobs to

other air carriers.

4.      Larry, Bill and I began contacting other Eastern pilots to see if there would be enough

support to enable us to seek enforcement of our LPPs and to take other action to protect

rights arising out of our jobs at Eastern. Based on the affirmative responses we received,

even though we were unemployed, we put in our own funds to properly organize. We

began by looking for legal counsel with the reputation, skill, ability and knowledge to

take on our cause. We interviewed law firms in New York, Atlanta and Miami,

ultimately deciding to retain Myles J. Tralins as our counsel. We provided Mr. Tralins

with substantial documentation regarding our circumstances which he reviewed and

analyzed with us. We worked with Mr. Tralins in forging a plan of action, including

enforcement actions for our LPPs against Continental. We organized a telephone chain to

contact as many Eastern pilots as we could to invite them to an initial organizational

meeting at a hall we had rented for that purpose. We introduced Mr. Tralins at that

meeting, which packed the hall to capacity, and he discussed our rights and remedies with

-2-

Adversary Proceeding
No. A-99-412
Class Action

the group and answered questions. As a result of that initial meeting, 673 Eastern pilots
agreed to participate with us and give us their support.

5.    Throughout the entire second half of 1991, Larry, Bill and I, who were still unemployed,
spent most of our time organizing the group and gathering information and materials for
Mr. Tralins. With Mr. Tralins' legal assistance, we formed Eastern Pilots for Fairness,
Inc. (EPFF), a Florida not for profit corporation, and, since inception, have served as its
principal officers, members of its Board of Directors and Executive Committee.

6.    Since 1991, Larry, Bill and I have been responsible for all of the support for the matters
leading to this class action and all of the operations of EPFF including the collection,
accounting and expenditure of funds and the coordination and provision of support for
Mr. Tralins' actions on our behalf.

7.    One of the first matters we turned our attention and efforts to was the protection of our
LPP claims against Continental. We did not believe, for the reasons stated above, that
our union would provide us with proper representation so we prepared and disseminated,
with the help of other members of our group, individual LPP proofs of claim for Eastern
pilots to file in the Continental bankruptcy proceeding. We provided hands-on
instruction and help to Eastern pilots on how to fill out and file the claims and we had
them sign powers of attorney, substituting Mr. Tralins as the attorney of record in the
CAL bankruptcy for the union. As a result of our efforts, approximately two thirds of the
LPP Class Action plaintiffs have claims in the pending settlement and a substantial

-3-

Adversary Proceeding
No. A-99-412
Class Action

number of those claims would not have been recognized by Continental but for our

efforts.

8.  In addition to the foregoing, for almost 11 years, Larry, Bill and I have each spent

thousands of hours of time in:

    a.  accumulating and providing Mr. Tralins with thousands of pages of

       documents and materials regarding his representation of our interests;

    b.  identifying and maintaining, on a current basis, data regarding the

       identification and location of persons who have become Class Members;

    c.  providing, on an on-going basis, written communications with our

       membership regarding the status of the legal proceedings brought on our

       behalf by Mr. Tralins including the preparation of hundreds of newsletters

       which we wrote, prepared, published and mailed;

    d.  engaging in daily telephone communications with our members who call;

    e.  serving as an interface for Mr. Tralins by responding to thousands of

       inquiries over the years which he received;

    f.  fund raising;

    g.  consulting with Mr. Tralins by telephone and in person many times per

       week;

    h.  participating in the preparation of the damage questionnaires prepared by

       Mr. Tralins and the economic exports he retained on our behalf;

-4-

Adversary Proceeding
No. A-99-412
Class Action

i.     coordinating the distribution and collection of the damage questionnaires;

j.     providing assistance in accumulating and inputting the data from over 400

       questionnaires which we received into the databank created by Patricia

       Bloom, Ph.D. who was retained to assist us in keeping track of the details

       regarding our members;

k.     participating in preparing for and attending National Mediation Board

       proceedings;

l.     participating in preparing for and attending proceedings before this Court;

m.     participating in preparing for and attending proceedings before the United

       States District Court for Delaware;

n.     participating in preparing for and attending proceedings before the United

       States Court of Appeals for the Third Circuit Court;

o.     organizing and participating in three separate "roadshow" tours with Mr.

       Tralins which were conducted in Miami, Florida, Atlanta, Georgia,

       Providence, Rhode Island and Boston, Massachusetts;

p.     participating in the preparation and dissemination of videotapes made by

       Mr. Tralins which explained the course and status of the LPP proceedings,

       including participating in one of the videotapes where we acted as a panel,

       asking Mr. Tralins questions which we had obtained from other members

       of our group; and

-5-

Adversary Proceeding
No. A-99-412
Class Action

    q.    preparing the necessary records for a certified public accounting firm to

             prepare our tax returns and signing and filing them with the IRS and

             preparing and filing required documents with the State of Florida.

9.    Larry, Bill and I have missed work and lost income and have taken substantial time away

    from our families and friends during the past 11 years in order to pursue the LPP claims

    against Continental.

10.    Larry, Bill and I have advanced thousands of dollars out of own pockets in order to

    pursue the LPP claims against Continental.

11.    Larry, Bill and I have always been available to Mr. Tralins in order to pursue the LPP

    claims against Continental. We have met with him in person and have consulted with

    him by telephone early in the morning, late at night and on weekends and holidays.

12.    Larry, Bill and I have not received any compensation whatsoever for our efforts during

    these past 11 years. Mr. Tralins advised us this past summer that based upon our efforts

    all these years and the result we will have obtained for the class if the settlement is

    approved, that we can receive a compensation award from the gross settlement fund

    which would be apportioned among all class members equally and that he would

    certainly recommend it, both to us and to the Court. After much debate among ourselves

    we agreed.

13.    We feel that we have been of substantial benefit to the class. We have worked diligently

    to protect its interests and to provide all of the class members with a significant benefit.

-6-

Adversary Proceeding
No. A-99-412
Class Action

14.   We believe that the settlement is in the best interests of the class and that it should be
      approved.

15.   Having obtained a substantial benefit for the class, we respectfully request an
      appropriate compensation award from the Court for our efforts.

FURTHER AFFIANT SAYETH NAUGHT.

      Signed under penalty of perjury on January 2, 2002.

                                                    JAMES BALDRIDGE

-7-

FROM : BILL MANN
FROM : WORLDLINKCAFE

FAX NO. : 9419252555
FAX NO. : 9705440006

Jan. 01 2002 07:19PM  P1
Jan. 01 2002 03:33PM  P2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In Re:

CONTINENTAL AIRLINES, INC., et. al.,

        Debtors

Case No. 90-932
Chapter 11

JAMES BALDRIDGE, WILLIAM MANN,
and LARRY DUNN, individually, and
as representatives of ag class of persons
similarly situated who are referred to as
the LPP CLAIMANTS,

        Plaintiffs,

v.

CONTINENTAL AIRLINES HOLDINGS,
INC., CONTINENTAL AIRLINES,
INC. and SYSTEM ONE HOLDINGS, INC.

        Defendants.

Adversary Proceeding
No. A-99-412
Class Action

### AFFIDAVIT OF CLASS REPRESENTATIVE WILLIAM MANN
### IN SUPPORT OF REQUEST FOR COMPENSATION AWARD

I HEREBY DECLARE UNDER PENALTY OF PERJURY:

1. My name is William Mann. I reside at 7020 North Serona Drive, Sarasota, Florida. I am

   a Named Plaintiff and Class Representative in this case.

2. I was first employed with Eastern Airlines as a pilot on May 29, 1968 and remained with

   the Company as a Captain until its shutdown on January 18, 1991.

3. In early 1991, after Eastern's shutdown, James Baldridge, Larry Dunn and I recognized

   that unless we undertook to protect our LPP rights with Continental Airlines, no one

   would do it for us. With Eastern out of business, our union, the Air Line Pilots

Adversary Proceeding
No. A-99-412
Class Action

Association, had little incentive to actively fight for EAL pilots' interests by enforcing its seniority integration policy and the LPPs against Continental. First of all, the union was trying to become the collective bargaining representative at Continental and was telling CAL pilots that there would be no EAL pilots at Continental. Second, the union had stood by and done virtually nothing while EAL transferred assets which carried jobs without the jobs to other air carriers.

4.  Jim, Larry and I began contacting other Eastern pilots to see if there would be enough support to enable us to seek enforcement of our LPPs and to take other action to protect rights arising out of our jobs at Eastern. Based on the affirmative responses we received, even though we were unemployed, we put in our own funds to properly organize. We began by looking for legal counsel with the reputation, skill, ability and knowledge to take on our cause. We interviewed law firms in New York, Atlanta and Miami, ultimately deciding to retain Myles J. Tralins as our counsel. We provided Mr. Tralins with substantial documentation regarding our circumstances which he reviewed and analyzed with us. We worked with Mr. Tralins in forging a plan of action, including enforcement actions for our LPPs against Continental. We organized a telephone chain to contact as many Eastern pilots as we could to invite them to an initial organizational meeting at a hall we had rented for that purpose. We introduced Mr. Tralins at that meeting, which packed the hall to capacity, and he discussed our rights and remedies with

-2-

FROM : BILL MANN
FROM : WORLDLINKCAFE

FAX NO. : 9419252555
FAX NO. : 9705440006

Jan. 01 2002 07:20PM  P2
Jan. 01 2002 03:34PM  P4

Adversary Proceeding
No. A-99-412
Class Action

the group and answered questions. As a result of that initial meeting, 673 Eastern pilots
agreed to participate with us and give us their support.

5.    Throughout the entire second half of 1991, Jim, Larry and I, who were still unemployed,
      spent most of our time organizing the group and gathering information and materials for
      Mr. Tralins. With Mr. Tralins' legal assistance, we formed Eastern Pilots for Fairness,
      Inc. (EPFF), a Florida not for profit corporation, and, since inception, have served as its
      principal officers, members of its Board of Directors and Executive Committee.

6.    Since 1991, Jim, Larry and I have been responsible for all of the support for the matters
      leading to this class action and all of the operations of EPFF including the collection,
      accounting and expenditure of funds and the coordination and provision of support for
      Mr. Tralins' actions on our behalf.

7.    One of the first matters we turned our attention and efforts to was the protection of our
      LPP claims against Continental. We did not believe, for the reasons stated above, that
      our union would provide us with proper representation so we prepared and disseminated,
      with the help of other members of our group, individual LPP proofs of claim for Eastern
      pilots to file in the Continental bankruptcy proceeding. We provided hands-on
      instruction and help to Eastern pilots on how to fill out and file the claims and we had
      them sign powers of attorney, substituting Mr. Tralins as the attorney of record in the
      CAL bankruptcy for the union. As a result of our efforts, approximately two thirds of the
      LPP Class Action plaintiffs have claims in the pending settlement and a substantial

-3-

Adversary Proceeding
No. A-99-412
Class Action

number of those claims would not have been recognized by Continental but for our
efforts.

8.   In addition to the foregoing, for almost 11 years, Jim, Larry and I have each spent
thousands of hours of time in:

   a.   accumulating and providing Mr. Tralins with thousands of pages of
        documents and materials regarding his representation of our interests;

   b.   identifying and maintaining, on a current basis, data regarding the
        identification and location of persons who have become Class Members;

   c.   providing, on an on-going basis, written communications with our
        membership regarding the status of the legal proceedings brought on our
        behalf by Mr. Tralins including the preparation of hundreds of newsletters
        which we wrote, prepared, published and mailed;

   d.   engaging in daily telephone communications with our members who call;

   e.   serving as an interface for Mr. Tralins by responding to thousands of
        inquiries over the years which he received;

   f.   fund raising;

   g.   consulting with Mr. Tralins by telephone and in person many times per
        week;

   h.   participating in the preparation of the damage questionnaires prepared by
        Mr. Tralins and the economic experts he retained on our behalf;

-4-

FROM : BILL MANN
      FROM : WORLDLINKCAFE

FAX NO. : 9419252555
FAX NO. : 9705440006

Jan. 01 2002 07:21PM  P4
Jan. 01 2002 03:34PM  P6

Adversary Proceeding
No. A-99-412
Class Action

i.     coordinating the distribution and collection of the damage questionnaires;

j.     providing assistance in accumulating and inputting the data from over 400

questionnaires which we received into the databank created by Patricia

Bloom, Ph.D. who was retained to assist us in keeping track of the details

regarding our members;

k.     participating in preparing for and attending National Mediation Board

proceedings;

l.     participating in preparing for and attending proceedings before this Court;

m.     participating in preparing for and attending proceedings before the United

States District Court for Delaware;

n.     participating in preparing for and attending proceedings before the United

States Court of Appeals for the Third Circuit Court;

o.     organizing and participating in three separate "roadshow" tours with Mr.

Tralins which were conducted in Miami, Florida, Atlanta, Georgia,

Providence, Rhode Island and Boston, Massachusetts;

p.     participating in the preparation and dissemination of videotapes made by

Mr. Tralins which explained the course and status of the LPP proceedings,

including participating in one of the videotapes where we acted as a panel,

asking Mr. Tralins questions which we had obtained from other members

of our group; and

-5-

FROM : BILL MANN
FROM : WORLDLINKCAFE

FAX NO. : 9419252555
FAX NO. : 9705440006

Jan. 01 2002 07:21PM  P5
Jan. 01 2002 05.35PM  P1

Adversary Proceeding
No. A-99-412
Class Action

q.   preparing the necessary records for a certified public accounting firm to

prepare our tax returns and signing and filing them with the IRS and

preparing and filing required documents with the State of Florida.

9.   Jim, Larry and I have missed work and lost income and have taken substantial time away

from our families and friends during the past 11 years in order to pursue the LPP claims

against Continental.

10.  Jim, Larry and I have advanced thousands of dollars out of own pockets in order to

pursue the LPP claims against Continental.

11.  Jim, Larry and I have always been available to Mr. Tralins in order to pursue the LPP

claims against Continental. We have met with him in person and have consulted with

him by telephone early in the morning, late at night and on weekends and holidays.

12.  Jim, Larry and I have not received any compensation whatsoever for our efforts during

these past 11 years. Mr. Tralins advised us this past summer that based upon our efforts

all these years and the result we will have obtained for the class if the settlement is

approved, that we can receive a compensation award from the gross settlement fund

which would be apportioned among all class members equally and that he would

certainly recommend it, both to us and to the Court. After much debate among ourselves

we agreed.

13.  We feel that we have been of substantial benefit to the class. We have worked diligently

to protect its interests and to provide all of the class members with a significant benefit.

-6-

FROM : BILL MANN

FROM : WORLDLINKCAFE

FAX NO. : 9419252555

FAX NO. : 9705440006

Jan. 01 2002 07:22PM  P6
Jan. 01 2002 03:35PM  P4

Adversary Proceeding
No. A-99-412
Class Action

14.    We believe that the settlement is in the best interests of the class and that it should be

approved.

15.    Having obtained a substantial benefit for the class, we respectfully request an

appropriate compensation award from the Court for our efforts.

FURTHER AFFIANT SAYETH NAUGHT.

Signed under penalty of perjury on January 2, 2002.

WILLIAM MANN

-7-

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In Re:                }

              }     Case No. 90-932

CONTINENTAL AIRLINES, INC., et. al.,  }     Chapter 11

        Debtors        }

               }

JAMES BALDRIDGE, WILLIAM MANN,  }

and LARRY DUNN, individually, and   }

as representatives of ug class of persons  }

similarly situated who are referred to as  }

the LPP CLAIMANTS,         }

               }

        Plaintiffs,     }     Adversary Proceeding

v.                   }     No. A-99-412

               }     Class Action

CONTINENTAL AIRLINES HOLDINGS,  }

INC., CONTINENTAL AIRLINES,     }

INC. and SYSTEM ONE HOLDINGS, INC. }

               }

        Defendants.    }

## AFFIDAVIT OF CLASS REPRESENTATIVE LARRY DUNN
## IN SUPPORT OF REQUEST FOR COMPENSATION AWARD

I HEREBY DECLARE UNDER PENALTY OF PERJURY:

1.    My name is Larry Dunn. I reside at 11635 S.W. 108 Terrace, Miami, Florida. I am a

Named Plaintiff and Class Representative in this case.

2.    I was first employed with Eastern Airlines as a pilot on October 5, 1970 and remained

with the Company as a Captain until its shutdown on January 18, 1991.

3.    In early 1991, after Eastern's shutdown, James Baldridge, William Mann and I

recognized that unless we undertook to protect our LPP rights with Continental Airlines,

no one would do it for us. With Eastern out of business, our union, the Air Line Pilots

Adversary Proceeding
No. A-99-412
Class Action

Association, had little incentive to actively fight for EAL pilots' interests by enforcing its

seniority integration policy and the LPPs against Continental. First of all, the union was

trying to become the collective bargaining representative at Continental and was telling

CAL pilots that there would be no EAL pilots at Continental. Second, the union had stood

by and done virtually nothing while EAL transferred assets which carried jobs without the

jobs to other air carriers.

4.     Jim , Bill and I began contacting other Eastern pilots to see if there would be enough

support to enable us to seek enforcement of our LPPs and to take other action to protect

rights arising out of our jobs at Eastern. Based on the affirmative responses we received,

even though we were unemployed, we put in our own funds to properly organize. We

began by looking for legal counsel with the reputation, skill, ability and knowledge to

take on our cause. We interviewed law firms in New York, Atlanta and Miami,

ultimately deciding to retain Myles J. Tralins as our counsel. We provided Mr. Tralins

with substantial documentation regarding our circumstances which he reviewed and

analyzed with us. We worked with Mr. Tralins in forging a plan of action, including

enforcement actions for our LPPs against Continental. We organized a telephone chain to

contact as many Eastern pilots as we could to invite them to an initial organizational

meeting at a hall we had rented for that purpose. We introduced Mr. Tralins at that

meeting, which packed the hall to capacity, and he discussed our rights and remedies with

-2-

Adversary Proceeding
No. A-99-412
Class Action

the  group and answered questions. As a result of that initial meeting, 673 Eastern pilots

agreed to participate with us and give us their support.

5.    Throughout the entire second half of 1991, Jim, Bill and I, who were still unemployed,

spent most of our time organizing the group and gathering information and materials for

Mr. Tralins. With Mr. Tralins' legal assistance, we formed Eastern Pilots for Fairness,

Inc. (EPFF), a Florida not for profit corporation, and, since inception, have served as its

principal officers, members of its Board of Directors and Executive Committee.

6.    Since 1991, Jim, Bill and I have been responsible for all of the support for the matters

leading to this class action and all of the operations of EPFF including the collection,

accounting and expenditure of funds and the coordination and provision of support for

Mr. Tralins' actions on our behalf.

7.    One of the first matters we turned our attention and efforts to was the protection of our

LPP claims against Continental. We did not believe, for the reasons stated above, that

our union would provide us with proper representation so we prepared and disseminated,

with the help of other members of our group, individual LPP proofs of claim for Eastern

pilots to file in the Continental bankruptcy proceeding. We provided hands-on

instruction and help to Eastern pilots on how to fill out and file the claims and we had

them sign powers of attorney, substituting Mr. Tralins as the attorney of record in the

CAL bankruptcy for the union. As a result of our efforts, approximately two thirds of the

LPP Class Action plaintiffs have claims in the pending settlement and a substantial

-3-

P04    LARRYDUNN                                     ☒ 305*279*3357        JAN-01 17:27
                                                        No. A-99-412
                                                        Class Action

number of those claims would not have been recognized by Continental but for our

efforts.

8.    In addition to the foregoing, for almost 11 years, Jim, Bill and I have each spent

thousands of hours of time in:

    a.    accumulating and providing Mr. Tralins with thousands of pages of

        documents and materials regarding his representation of our interests;

    b.    identifying and maintaining, on a current basis, data regarding the

        identification and location of persons who have become Class Members;

    c.    providing, on an on-going basis, written communications with our

        membership regarding the status of the legal proceedings brought on our

        behalf by Mr. Tralins including the preparation of hundreds of newsletters

        which we wrote, prepared, published and mailed;

    d.    engaging in daily telephone communications with our members who call;

    e.    serving as an interface for Mr. Tralins by responding to thousands of

        inquiries over the years which he received;

    f.    fund raising;

    g.    consulting with Mr. Tralins by telephone and in person many times per

        week;

    h.    participating in the preparation of the damage questionnaires prepared by

        Mr. Tralins and the economic experts he retained on our behalf;

-4-

Adversary Proceeding
No. A-99-412
Class Action

i.    coordinating the distribution and collection of the damage questionnaires;

j.    providing assistance in accumulating and inputting the data from over 400 questionnaires which we received into the databank created by Patricia Bloom, Ph.D. who was retained to assist us in keeping track of the details regarding our members;

k.    participating in preparing for and attending National Mediation Board proceedings;

l.    participating in preparing for and attending proceedings before this Court;

m.    participating in preparing for and attending proceedings before the United States District Court for Delaware;

n.    participating in preparing for and attending proceedings before the United States Court of Appeals for the Third Circuit Court;

o.    organizing and participating in three separate "roadshow" tours with Mr. Tralins which were conducted in Miami, Florida, Atlanta, Georgia, Providence, Rhode Island and Boston, Massachusetts;

p.    participating in the preparation and dissemination of videotapes made by Mr. Tralins which explained the course and status of the LPP proceedings, including participating in one of the videotapes where we acted as a panel, asking Mr. Tralins questions which we had obtained from other members of our group; and

-5-

FROM : WORLDLINKCAFE              FAX NO. : 9705440006        Jan. 01 2002 03:49PM  P7

Adversary Proceeding
No. A-99-412
Class Action

    q.    preparing the necessary records for a certified public accounting firm to prepare our tax returns and signing and filing them with the IRS and preparing and filing required documents with the State of Florida.

9.    Jim, Bill and I have missed work and lost income and have taken substantial time away from our families and friends during the past 11 years in order to pursue the LPP claims against Continental.

10.    Jim, Bill and I have advanced thousands of dollars out of own pockets in order to pursue the LPP claims against Continental.

11.    Jim, Bill and I have always been available to Mr. Tralins in order to pursue the LPP claims against Continental. We have met with him in person and have consulted with him by telephone early in the morning, late at night and on weekends and holidays.

12.    Jim, Bill and I have not received any compensation whatsoever for our efforts during these past 11 years. Mr. Tralins advised us this past summer that based upon our efforts all these years and the result we will have obtained for the class if the settlement is approved, that we can receive a compensation award from the gross settlement fund which would be apportioned among all class members equally and that he would certainly recommend it, both to us and to the Court. After much debate among ourselves we agreed.

13.    We feel that we have been of substantial benefit to the class. We have worked diligently to protect its interests and to provide all of the class members with a significant benefit.

-6-

FROM : WORLDLINKCAFE              FAX NO. : 9705440006          Jan. 01 2002 03:50PM  P8

Adversary Proceeding
No. A-99-412
Class Action

14.   We believe that the settlement is in the best interests of the class and that it should be

approved.

15.   Having obtained a substantial benefit for the class, we respectfully request an

appropriate compensation award from the Court for our efforts.

FURTHER AFFIANT SAYETH NAUGHT.

Signed under penalty of perjury on January 2, 2002.

LARRY DUNN

-7-

Ex. H

2.    Claimant makes this proof of claim on behalf of
ALPA and the individual pilots for sums due and owing to ALPA and
said pilots represented by ALPA, as of the filing of the petition
in bankruptcy on December 3, 1990.

3.    In addition to or consistent with the sums and
priorities listed in the claim forms filed or to be filed by
individuals represented by ALPA, the Debtor was and is indebted
as follows:[2]

A.    Air Line Pilots Association,
International and Charles H.
Copeland, on his own behalf and on
behalf of all others similarly
situated v. Texas Air Corp.,
Continental Airlines, Inc., System
One Holdings, Inc. et al., Adv.
Proc. No. 89-5692A, U.S. Bankruptcy
Court, S.D.N.Y. [New York State
Fraudulent Conveyance Action].

$unliquidated

B.    Air Line Pilots Association,
International, Eastern Master
Executive Council, Charles H.
Copeland, John J. Bavis, Jr.,
Donald McClure and Ronald W. Cole,
on behalf of themselves and the
class of pilots they represent, et
al. v. Texas Air Corporation,
Continental Airlines, Inc., et al.,
Case No. 88-0804-CIV-HOEVELER U.S.
District Court, S.D. Fla. [RICO
Counterclaims]

$unliquidated

---

others, and which may be pursued in other appropriate forums.

[2]All claims are based on documents, including litigation
pleadings, already in the possession of the Debtor.

- 2 -

C.   <u>In The Matter of an Application of</u>
<u>the Air Line Pilots Association,</u>
<u>International for an Arbitration</u>
<u>Under the Labor Protective</u>
<u>Provisions Involving Eastern Air</u>
<u>Lines, Inc.</u> Richard Kasher, Arb.,
(arbitration proceeding brought by
Air Line Pilots Association for
specific performance and damages
against Continental Holdings and
Continental Airlines, <u>et al.</u>
resulting from labor protective
provisions for pilots of Eastern
Air Lines, Inc.

<u>$unliquidated</u>

4.   Claimant has received no payment, security, check
or other evidence of this debt.

5.   Claimant knows of no set-off or counterclaim to
this debt, except as set forth in litigation pleadings filed in
the above-referenced litigation.

6.   Claimant demands priority to the fullest extent
provided by law.

Dated:  September 20 , 1991

J. Randolph Babbitt
President

---

3 Penalty for presenting fraudulent claim.  Fine of not more
than $5000 or imprisonment for not more than five years or both.
Title 18 U.S.C. §152.

- 3 -

Ex. I

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: } | |
| } | Case No. 90-932 |
| CONTINENTAL AIRLINES, INC., et. al., } | Chapter 11 |
| } | |
| Debtors } | |
| ———————————————— } | |
| } | |
| JAMES BALDRIDGE, WILLIAM MANN, } | Adversary Proceeding |
| and LARRY DUNN, individually, and } | No. A-99-412 |
| as representatives of a class of persons } | Class Action |
| similarly situated who are referred to as } | |
| the LPP CLAIMANTS, } | |
| } | |
| Plaintiffs, } | **Objections Due: 5/10/02** |
| v. } | |
| } | **Hearing Date: 5/17/02 @ 1:00 P.M.** |
| CONTINENTAL AIRLINES HOLDINGS, } | |
| INC., CONTINENTAL AIRLINES, } | |
| INC. and SYSTEM ONE HOLDINGS, INC.} | |
| } | |
| Defendants. } | |
| ———————————————— } | |

**MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING THAT NEWLY
IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS,
FOR ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT
FOR THE NEW CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

The LPP Class Action Plaintiffs respectfully request the Court to issue an order

finding that 256 newly identified former Eastern Airlines (EAL) pilots listed on Exhibit A

appended hereto are members of the Class certified herein (the "New Members"). The

New Members are covered under the defined class in this matter because they (1) were

Adversary Proceeding
No. A-99-412
Class Action

members of EAL's flight deck collective bargaining unit who are identified on Eastern

Airlines' November 1990 seniority list; (2) did not settle, waive or relinquish their LPP

claims with Continental; and (3) did not withdraw their proofs of claim on or before April

15, 2000 as part of the group that moved to intervene herein as members of the Class.

Continental disputes that the New Members satisfy the requirements for inclusion in the

Class.    The disagreement between Continental and the Class Action Plaintiffs is as

follows: The Class Action Plaintiffs contend that the New Members are members of the

Class because they were included in the Proof of Claim filed by ALPA and never settled

or otherwise withdrew that claim.  Continental contends that the New Members are not

members of the Class because they did not file individual proofs of claims.

        The Class Action Plaintiffs also request that the Court direct Continental to fund

the settlement for the New Members forthwith and to grant a sixty (60) day extension

from the current bar date of June 3, 2002 until August 2, 2002, for the filing of Proofs of

Claim by the New Members in order to provide Class Counsel with sufficient time to

serve Notice on said persons of their right to participate in the Class Settlement. In

support of this Motion, the Class Action Plaintiffs' state:

        1.    On February 3, 2000, this Court entered its Order Granting Class

Certification. The class was certified as follows:

> All Eastern Airlines former flight deck employees who claim
> they are entitled to the benefits of the collective bargaining
> agreement (the "CBA") between Eastern Airlines and the Air
> Line Pilots Association in effect at the time that Eastern Airlines
> allegedly merged with Continental Airlines Holdings, Inc. who

2

Adversary Proceeding
No. A-99-412
Class Action

filed a timely claim in the above-entitled reorganization of
Continental Airlines, Inc., Case No. 90-932 (the "Reorganization")
for enforcement of the labor protective privileges embodied in
the CBA (hereafter "the Class Members"), *except* (1) those persons
who settled, waived or relinquished his or her LPP claim with
Continental and (2) those persons who moved to intervene herein,
pursuant to the "Motion to Intervene in Adversary Proceedings"
filed November 11, 1999 and who file a notice of withdrawal of
his or her Proof of Claim in this Reorganization with the Clerk
of the Bankruptcy Court for the district of Delaware on or before
April 15, 2000.

Docket Nos. 26 and 27, Opinion and Order Granting Class Certification dated February

3, 2000.

2.   The LPP Class Action Plaintiffs subsequently moved for the entry of an

order clarifying the method of identifying class members because of problems the

parties were having in deciding whether certain persons were members of the Class.

Docket No. 52; LPP Class Action Plaintiffs' Motion to Clarify Method of Identifying Class

Members)  The problems concerned the interpretation and application of the phrase

"*who filed a timely claim*" in the class definition and, more specifically,  whether "new

hires" employed by Eastern after ALPA pilots went on strike on March 4, 1989, are part

of the Plaintiff Class.   The LPP Plaintiffs contended that all EAL flight deck crew

members are entitled to participate in the Class, including the "new hires" because they

were entitled to the benefits of the ALPA/EAL collective bargaining agreement.  CAL

contended that only those pilots who filed claims in bankruptcy are entitled to

participate.

3

3.    After the Motion to Clarify was filed, the LPP Class Action Plaintiffs and CAL

agreed that because the clear language of the Proofs of Claim filed by ALPA for

enforcement of the EAL LPPs against CAL excluded the "new hires" and was limited to

persons who were EAL ALPA members <u>pre-strike</u> (before March 4, 1989), any new hire

who did not file a Proof of Claim or have a Proof of Claim filed for him or her by the

undersigned would fall outside the class definition and he or she would not be eligible to

participate in the class settlement. The parties also agreed that in order to ensure that

the participants in the Class were active employees of EAL as of its January 19, 1991

shutdown, an eligible pilot had to be listed on EAL's November 1990 Alphabetical

Seniority List.

4.    On July 10, 2001, the Court entered its Order Granting Class Action

Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the

requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical

Seniority List. The Court also required the eligible pilots to be "<u>*members of Eastern's*</u>

<u>*flight deck collective bargaining unit*</u>" rather than simply former EAL flight deck

employees "who claim they are entitled to the benefits of the collective bargaining

agreement (the "CBA") between Eastern Airlines and the Air Line Pilots Association."

This clarification comported with the parties' agreement that in order to participate in the

Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's

shutdown date), and that "new hires" who did not file claims or have claims filed for

them would be excluded from the class as they were not part of the EAL pilots who

4

were members of ALPA and they did not individually file timely claims for enforcement
of the LPPs in these proceedings.  (Docket No. 56; Order Granting Motion to Clarify
Method of Identifying Class Members)

     5.    As a result of the foregoing, the parties mutually identified 583 LPP Class
Action Plaintiffs. The Court, recognizing that there may be additional persons covered
by the class definition, expressly stated at the preliminary settlement hearing conducted
on November 16, 2001, the fairness hearing conducted on January 31, 2002, and the
hearing on the O'Neill post trial motions conducted on April 2, 2002, that it would not
limit the list of class members to the 583 persons identified by the parties but would
leave the door open for persons who claimed they met the class definition to be
included in the Class. In doing so, the Court expressly stated that if the parties could
not agree as to whether certain persons are or are not members of the Class, that the
Court would resolve the issue --- hence, this Motion.

     6.    Throughout these proceedings, Class Counsel has been working diligently
to ensure that all persons who meet the class definition are identified and provided with
notice of the settlement. As a result of the O'Neill appeal and the receipt of joinders in
that appeal from persons not previously identified as class members who appear to
qualify, as well as advice from CAL received in early April 2002 that it had discovered
248 persons who were previously not identified as class members but who might be
members of the class, the undersigned decided to redo the data research conducted
last year and shared with CAL. Accordingly, the undersigned retained a new data

processing firm to input the entire November 1990 EAL Alphabetical Seniority List

consisting of 3,387 persons into a databank, including each pilot's seniority number and

date of hire (the "Master List").  The data processors then inputted the agreed list of 583

LPP Claimants and deleted them from the Master List.  The data processors then

inputted all of the EAL pilot names and employee numbers identified on the list of

persons who elected to participate in the 1994 ALPA/CAL Settlement which was

prepared by Continental and provided to the undersigned (the"Takers List") and deleted

those persons from the Master List[1].  The data processors then worked directly from the

Bankruptcy Court docket sheets to identify, input and delete the 321 Addington/EPMC

pilots who withdrew their claims against CAL from the Master List.  The data processors

then deleted from the list all of the remaining "new hires" by deleting all pilots with a

seniority date on or after March 3, 1989.   The resulting Preliminary List of additional

LPP Plaintiffs consisted of 533 pilots.

7.    The next step was to verify how many of the 533 pilots on the Preliminary

List filed timely claims in the CAL bankruptcy.   On March 24, 1994, ALPA and

Continental entered into a Claims Settlement Agreement for purposes of settling the

EAL LPP claims ALPA filed against CAL on behalf of its pre-strike members[2]. (A copy

---

[1]      1,396 of the 2,577 pilots identified by Continental as "Takers" are listed on
the November 1990 EAL Alphabetical Seniority List

[2]      Paragraph 2 of the Claims Settlement Agreement defined  "Eligible
Pilots" as "all pilots who were in the active service of Eastern Airlines, Inc. through
March 3, 1989, as reflected on the attached Preliminary List

Adversary Proceeding
No. A-99-412
Class Action

of the Claims Settlement Agreement [Docket No. 5119 in Jointly Ad. No. 90-932] is

appended as Exhibit B). CAL agreed in the Claims Settlement Agreement that

approximately 3500 EAL pilots covered by ALPA's Proofs of Claim[3] and identified on a

list[4] attached to the Claims Settlement Agreement were entitled to participate in the

Settlement. As CAL unequivocally agreed that the EAL pilots on the "Eligible Pilots" list

were entitled to participate in the 1994 ALPA/CAL Claims Settlement Agreement as a

result being included in ALPA Proofs of Claim, there can be no dispute that their claims

were timely filed by ALPA. Accordingly, in order to ensure that every new member was

recognized by CAL to have filed a timely claim in these bankruptcy proceedings, the

data processing firm was instructed to compare the "Eligible Pilots" list appended to the

1994 ALPA/CAL Claims Settlement Agreement against the Preliminary List and to

delete the names of all EAL pilots from the Preliminary List which are not on the 1994

---

[3]    Appended as Composite Exhibit 2 to the Settlement Agreement are
ALPA's Proofs of Claims as the "'authorized representative" and the "exclusive
collective bargaining representative" of certain specified pilots (those who were pre-
strike). The Proofs of Claim were filed with respect to enforcement of the EAL LPPs
against CAL and expressly included the National Mediation Board proceedings which
this Court initially enjoined, to wit: *"In the Matter of an Application of the Air Line Pilots
Association for an Arbitration Under the Labor Protective Provisions Involving Eastern
Airlines, Inc."*

[4]    The list was subject to verification and supplementation by ALPA prior to
the Bankruptcy Court hearing on the approval of this Settlement Agreement. A review
of the docket sheet in 90-932 from the time the motion to approve the settlement was
filed until the entry of the order approving does not reflect the filing of a supplemental or
corrected list. The undersigned requested CAL's attorney to confirm that no such
supplemental or corrective list was filed or, if there was one, to provide it but has not
received a repose to the request.

7

Adversary Proceeding
No. A-99-412
Class Action

ALPA/CAL Claims Settlement "Eligible Pilots" list.   The result is the List of 256

Additional LPP Class Action Plaintiffs appended hereto as Exhibit A, all of whom were

recognized by CAL as having filed timely claims, through ALPA's Proofs of Claim, in

these bankruptcy proceedings.

8.    Notwithstanding the fact that each of the 256 additional persons identified

on attached Exhibit 1 meets all of the class definition criteria as well as the fact that

CAL agreed that all 256 persons were "Eligible Pilots" as a result of ALPA's filing of

Proofs of Claim on their behalf, CAL now states it will not agree to the inclusion of the

256 New Members because ALPA withdrew its claims as part of the settlement and the

256 pilots did not file individual claims in the bankruptcy.

9.    CAL's position is untenable.  The ALPA/CAL Claims Settlement Agreement

was an opt out agreement. If Eligible Pilots elected not to participate in the Settlement

Agreement, they retained the right to pursue their LPP Claims. That is the law of this

case as determined by this Court.  In approving the effect of the ALPA/CAL Claims

Settlement Agreement on those who elected not to participate, this Court expressly

ruled on July 19, 1994, in its Order Approving Continental-ALPA Claims Settlement

Agreement, at paragraph 4 that:

> **Those who objected had the clear recourse of refusing
> to participate in the Settlement  and <u>retaining their Claims.</u>**

(Emphasis supplied; a copy of the order, Docket No. 6016 in Jointly Ad. No. 90-932 is

8

Adversary Proceeding
No. A-99-412
Class Action

attached as Exhibit C.)    Indeed, if that were not the case, this action could not have

been brought.  Moreover, a number of the 583 LPP Class Action Plaintiffs CAL has

agreed to are persons whose claims were filed by ALPA who did not accept the

ALPA/CAL settlement.

      10.    In addition to being inconsistent, CAL's position is not logical or a fair

expression of the spirit and intent of the ALPA/CAL Claims Settlement Agreement.

CAL contends that when ALPA withdrew its claims as a result of the settlement, that

every pilot who had not filed an individual claim and who did not "elect" to participate in

the ALPA/CAL Claims Settlement was left with no claim at all.  CAL's new interpretation

of the ALPA/CAL Claims Settlement Agreement, made in order to defeat the claims of

the newly discovered Class Action Plaintiffs here, was not disclosed in the Claims

Settlement Agreement and is contrary to this Court's express ruling discussed above.

In addition, it would have been impossible for any EAL pilot who wished to opt out of

the Claims Settlement Agreement to timely file a claim on his own because the bar date

for the filing of claims had long since passed and there was no provision in the Claims

Settlement Agreement to reopen the time for filing claims.

      11.    CAL also asserts that the release language in the ALPA/CAL Claims

Settlement Agreement bars the claims of these New Members.  It does not.   The

release language at paragraph 8(A) of the Settlement Agreement is between the CAL

entities and ALPA with the exception of **"individual pilot defendants who do not**

**elect to participate in this Settlement Agreement."**  In addition, the release

9

Adversary Proceeding
No. A-99-412
Class Action

language at Paragraph 8(B) of the ALPA/CAL Claims Settlement Agreement states that **"The above release and waiver of all claims arising heretofore shall have no effect at all on (1) any claims or rights of any pilot who has filed a claim for such in the Delaware bankruptcy proceedings and does not participate in this Settlement Agreement..."** Those claims, as have been shown, were filed for the newly discovered 256 pilots by ALPA.

      12.    Finally, there are approximately 3500 "Eligible Pilots" identified on the list appended to the ALPA/CAL Claims Settlement Agreement. As this Court noted in its July 19, 1994 Order Approving Continental-ALPA Claims Settlement Agreement at paragraph 4, approximately one third of the pilots elected not to participate in the Settlement. Clearly, Continental has known since 1994 that it had approximately 1167 timely filed LPP claims to resolve. During the 8 year period since the ALPA/CAL Claims Settlement Agreement was approved, the total number of LPP claims has diminished by close to 30% to the 839 persons who meet this Court's criteria to participate in the LPP Class Action. Accordingly, it is respectfully requested that this Court find that the 256 New Members identified on Exhibit A are Class Members entitled to participate in the Class Settlement and direct Continental to fund the settlement for the 256 New Members forthwith.

      13.    In addition, Class Counsel respectfully requests a sixty (60) day extension from the current bar date of June 3, 2002 until August 2, 2002, for the filing of Proofs of Claim by the 256 newly discovered Class Members in order to provide Class Counsel

10

Adversary Proceeding
No. A-99-412
Class Action

with sufficient time to serve Notice on said persons of their right to participate in the

Class Settlement in the form attached as Exhibit D.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to

find that the newly identified former EAL pilots identified on Exhibit 1 are members of

the class; to enter an order requiring CAL to fund the settlement for the new class

members and for a 60 day extension of time to provide notice and for approval of the

form of notice appended to this Motion.

Dated: April 25, 2002

TRALINS AND ASSOCIATES
Attorneys for Class Plaintiffs
2930 One Biscayne Tower
2 S. Biscayne Blvd., Suite 2930
Miami, FL 33131
Telephone: 305-374-330

By: _____
Myles J. Tralins
Florida Bar No. 139543

-and-

PRICKETT, JONES & ELLIOTT
1310 King Street
Wilmington, DE 19801
Tel: (302) 888-6500

By: _____
BRUCE E. JAMESON
Delaware Bar No. 2931

11

Ex. J

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al., | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | re: Docket No. 169 |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' OBJECTION TO MOTION FOR FINDING
THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE
MEMBERS OF THE CLASS, FOR ENTRY OF ORDER
REQUIRING CAL TO FUND SETTLEMENT FOR NEW
CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

The above-captioned defendants ("Continental") hereby object to the Motion of

the LPP Class Action Plaintiffs (the "Motion") for (i) a finding that 226[1] "newly identified"

former Eastern Airlines ("EAL") pilots listed on Exhibit A to the Motion are members of the

---

[1]    The Motion seeks to include 256 people in the class.  Continental has located individual proofs of claim
filed by approximately 30 of these people and, therefore, has no objection to their inclusion.

class certified herein (the "Proposed New Members") and (ii) certain related relief, and in

support respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The so-called "New Members" that are the subject of the Plaintiffs'

Motion are neither "newly identified" nor are they properly members of the certified class.

Plaintiffs' counsel has previously raised the issue of whether to include in the class certain non-

settling former EAL pilots that were allegedly covered under a proof of claim filed by the Air

Line Pilots Association ("ALPA"), but who did not file individual proofs of claim, and it was

rejected by Continental. The basis for Continental's position is that when ALPA released and

withdrew its proof of claim as part of its settlement with Continental, each ALPA member was

advised in writing that if they opted-out of the settlement and failed to individually file a proof of

claim, they would be barred from seeking any individual LPP relief against Continental, absent a

court order. Since that time (April 1994), none of the Proposed New Members have sought relief

to file an individual proof of claim or participated in these bankruptcy proceedings in any way.

Accordingly, the Proposed New Members do not meet the requirements for class membership

and are not entitled to participate in the class action settlement.

## BACKGROUND

2.      On February 3, 2000, this Court entered its Opinion On Motion For Class

Certification, and a copy of which is attached hereto as Exhibit A (the "Class Certification

Opinion"). In its Class Certification Opinion, the Court found that the class consists of "all

Eastern Airlines flight deck employees (a) who are entitled to the benefits of the collective

bargaining agreement (the "CBA") between Eastern Airlines and Air Lines Pilots Association in

2

effect at the time that Eastern Airlines allegedly merged with Continental; (b) who filed a timely

claim in these proceedings for enforcement of the labor protection privileges ("LPPs") embodied

in the CBA; and (c) who did not settle, waive or relinquish his or her LPP claim with

Continental." Class Certification Opinion at p. 2.

        3.      The Plaintiffs subsequently filed a motion for an order clarifying the

method of identifying class members (the "Motion To Clarify") after a dispute arose between the

parties over the interpretation of the phrase *"who filed a timely claim"* in the class definition.  In

their Motion to Clarify, Plaintiffs specifically raised the issue of whether former EAL pilots

covered under the ALPA proof of claim should be part of the class. After significant discussion,

the parties agreed not only on a modified class definition as set forth in the Court's July 10, 2001

Order Granting Class Action Plaintiffs' Motion To Clarify Method Of Identifying Class

Members (the "Class Clarification Order"), a copy of which is attached as Exhibit B, but

ultimately on a list of eligible class members which was subsequently filed with the Court. The

list was *critical* to Continental because the parties were working towards a settlement of the class

action. Since there were limited reserves available from which to pay creditors, Continental did

not believe that it or its creditors (including the Post-Effective Date Committee) could form a

reasoned judgment about the propriety of any settlement until all interested parties understood

the total size of the class.

        4.      As a result of this process, the parties mutually identified 583 LPP Class

Action Plaintiffs and a final settlement was reached awarding each of those claimants an allowed

general unsecured Class 13 claim of $110,000. At the preliminary settlement hearing conducted

on November 16, 2001, the Court requested that both the Plaintiffs and Continental submit

3

affidavits describing how the list of class members was created.  A copy of the Mr. Tralins'
Affidavit for Plaintiffs is attached hereto as Exhibit C and Ms. Smith's Affidavit for Continental
is attached hereto as Exhibit D.  While both affidavits very clearly indicate that all ALPA
members who accepted the ALPA settlement were deleted from the list, neither affidavit includes
in the class those ALPA members who opted-out of the settlement, but did not timely file an
individual proof of claim.

     5.    Indeed, Mr. Tralins' Affidavit, which confirms that he cross-checked the
list against "Eastern Airlines pre-IAM strike seniority list" and "Eastern's November 1990
seniority list", expressly provides that he believes the list (which does not include the Proposed
New Members) is **"a complete and accurate list of all eligible members of the class in this
proceeding."**  Tralins' Affidavit at p. 3 (emphasis supplied).  While it is true that both Plaintiffs
and Continental have since determined that certain additions and deletions to the list are
warranted[2], it is not likely that Plaintiffs completely "missed" 226 people.  Moreover, the Smith
Affidavit states that the list was derived from the official claims register in these cases
identifying individual LPP claims.  Smith Affidavit, p.2, ¶ 3(a).

     6.    Notwithstanding the foregoing, and after the class action settlement was
approved by the Court and fully-funded by Continental, Plaintiffs bring their Motion to add the
Proposed New Members utilizing a procedure in the settlement order that was intended for use
by individuals who believed they should be included in the class (not the Plaintiffs who had
already verified the accuracy of the class list).

---

[2]    Since the list was created, Continental has discovered approximately 90 people that properly filed
individual LPP claims and, therefore, should be included in the class.  Continental is waiting for Plaintiffs to confirm
that the inclusion of these people in the class is acceptable.  As stated earlier, approximately 30 of the people on
Continentals' list are also on Plaintiffs' list attached to the Motion.

4

7.      Plaintiffs raise two arguments as to why the Proposed New Members
should be part of the class: (i) since Continental agreed that these former EAL pilots were
eligible to participate in the ALPA settlement as a result of being covered by the ALPA proof of
claim, Continental cannot now argue that their "claims" were not timely filed, and (ii) the Court's
order approving the ALPA settlement provided that those who opted-out of the settlement could
continue to pursue their LPP claims against Continental.  As set forth below, neither argument is
valid and therefore the Motion must be denied.

## OBJECTION

8.      It is undisputed that as part of its settlement with Continental, ALPA
waived, released, withdrew and dismissed all of its claims against Continental.  ALPA
Settlement , pp. 9-10, §§ 8 and 9.[3]  The question then is what happened to those eligible ALPA
members who opted-out of the settlement.  The release provisions of the settlement agreement
are quite clear: ALPA's release "shall have no effect at all on (1) any claims or rights of **any
pilot who has filed a claim for such in the Delaware Bankruptcy Proceedings** and does not
participate in this Settlement Agreement… ".  ALPA Settlement at p. 9, § 8(B) (emphasis
supplied).  ALPA's release and withdrawal of its proof of claim, however, most definitely
impacted those pilots that had not filed an **individual** proof of claim in the bankruptcy case and
the effect on "nonparticipating pilots" was made very clear to the ALPA members while they
considered the settlement.

---

[3]   A copy of the ALPA settlement is attached as Exhibit B to Plaintiffs' Motion .

9.    On April 12, 1994, ALPA sent a letter to its members advising them of the

terms of the settlement with Continental.  A copy of the letter is attached hereto as Exhibit E.  In

addition to urging its members to accept the settlement, ALPA made the following points:

> Under the settlement agreement, ALPA and Continental (and its corporate
> affiliates) agree to waive all claims that they currently maintain or may maintain
> against each other. (p.4)

> In addition, the Association agrees that it will provide no support or assistance,
> direct or indirect, to any former Eastern pilot who seeks to pursue claims against
> Continental. (p.4)

> If you decline to participate (and if the settlement becomes effective), you are free
> to litigate an LPP claim against Continental on your own or through your personal
> representative provided that you had filed a timely individual LPP claim against
> Continental in the Continental bankruptcy proceeding. (p. 5)

> Pilots who failed to file such individual claims are likely barred from seeking any
> individual LPP relief against Continental absent a court order. (p. 5)

Thus, Plaintiffs' assertions in their Motion that Continental's position that ALPA members who

did not accept the settlement and did not timely file an individual proof of claim would not be

entitled to participate in distributions under the plan is (i) "inconsistent", (ii) "new", (iii) "not

logical or a fair expression of the spirit and intent of [ALPA Settlement]" and (iv) "made to

defeat the claims of the newly discovered Class Action Plaintiffs" are just plain wrong.

Continental's position was fully disclosed to ALPA members and without objection from ALPA.

Most importantly, however, is that none of the Proposed New Members have ever filed or

attempted to file an individual proof of claim and/or participate in these bankruptcy proceedings

since opting-out of the settlement.

10.    Moreover, Judge Balick's order approving the ALPA settlement is not

inconsistent with Continental's position.  Those ALPA members who chose not to participate in

6

the ALPA settlement and who timely filed individual proofs of claim <u>did</u> retain their LPP claims and Continental settled those claims as part of this class action adversary proceeding.  ALPA appropriately warned its members who had not filed individual proofs of claim that if they did not accept the ALPA Settlement they would be barred from recovering on their LPP Claims. There is nothing in the Court's order that authorizes the opt-out pilots to individually pursue the proof of claim filed and withdrawn by ALPA.  Indeed, in response to the objections filed to the settlement, Judge Balick specifically found that "[t]he Court does not have authority to re-make the settlement upon a plan suggested by objecting pilots."  Order at p. 2.

11.    Finally, with respect to the related relief requested by the Motion, since the Proposed New Members are not properly part of the class, there is no reason to extend the deadline by which they must accept the class action settlement[4].  Continental has and will agree to a limited extension of the bar date for those people that the parties have <u>mutually</u> agreed are properly part of the class so that proper notice is given and those claimants have sufficient time to review and complete the necessary paperwork.

## CONCLUSION

12.    The Continental Bankruptcy has been pending since December 3, 1990 (almost 12 years).  Both before and since confirming its chapter 11 plan and going effective in April 1993, Continental has worked diligently to resolve the more than 40,000 proofs of claim

---

[4]    The parties previously agreed that the June 3, 2002 bar date would be extended until June 30, 2002 only with respect to the 256 people identified in Plaintiffs' motion and the approximately 90 additional people identified by Continental.  The bar date has already expired with respect to all others.

7

45085.1005

filed against the various debtors. The vast majority of allowed creditors received their initial distribution under the plan in late 1993 and have been waiting since then for a determination of whether there will be a final distribution and, if so, in what amount. It would be patently unfair to the allowed creditors of Continental who have waited a very long time for the claims resolution process to conclude to grant these Proposed New Members each an $110,000 claim in this bankruptcy proceeding when they have taken no steps whatsoever to pursue an individual LPP claim against Continental. Even now, it is not the individuals requesting class membership, but Plaintiffs' counsel. These former EAL pilots were clearly advised of the result if they did not accept the ALPA settlement and by opting-out and not seeking leave to file an individual claim, they effectively relinquished any claim against the Debtors. It would be unfair for Plaintiffs or this Court to grant them a windfall.

WHEREFORE, Continental respectfully requests that this Court deny the Motion and grant Continental such other and further relief as may be necessary.

Dated: June 7, 2002
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
1000 West Street
The Brandywine Building, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorney for Continental

8

$Ex. K$

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                            }
                                                  }        Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,              }        Chapter 11
                                                  }
        Debtors                                   }
—————————————————————————                         }
                                                  }
JAMES BALDRIDGE, WILLIAM MANN,                    }        Adversary Proceeding
and LARRY DUNN, individually, and                 }        No. A-99-412
as representatives of a class of persons          }        Class Action
similarly situated who are referred to as         }
the LPP CLAIMANTS,                                }
                                                  }
                Plaintiffs,                       }        Objections Due:
v.                                                }
                                                  }        Hearing Date:
CONTINENTAL AIRLINES HOLDINGS,                    }
INC., CONTINENTAL AIRLINES,                       }
INC. and SYSTEM ONE HOLDINGS, INC.}
                                                  }
        Defendants.                               }
—————————————————————————                         }

**REPLY TO DEFENDANTS' OBJECTION TO MOTION OF CLASS
ACTION PLAINTIFFS FOR FINDING THAT NEWLY IDENTIFIED
FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT
FOR THE NEW CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME
TO PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

### _Preliminary Statement_

In its Objection, Continental advises that it has discovered approximately 90

people who should be included in the class.  In reconciling Continental's list with the list

appended to Plaintiffs' subject Motion,  the parties have agreed that the 40 persons

Adversary Proceeding
No. A-99-412
Class Action

identified on Exhibit A (subject to CAL's final verification) are members of the class[1]. At issue is the status of the 228 persons identified on Exhibit B who Plaintiffs maintain meet all criteria necessary for inclusion in the class and participation in the settlement.

### *Continental's Objection*

Continental contends that in order to participate in the class settlement, the LPP Claimants identified on Exhibit B were required to file individual LPP bankruptcy claims and that the LPP claims filed by ALPA on behalf of all of its members are ineffective to protect their rights. CAL does not dispute the fact that it previously agreed in the ALPA/CAL settlement that every one of the newly discovered LPP Claimants was an "Eligible Pilot" entitled to participate in that settlement and that, but for the fact that they did not individually file a claim in bankruptcy, every one of the newly discovered LPP Claimants meet all of the class definition criteria established by this Court. As will be shown, CAL's position is inconsistent with its prior representations to this Court, is contrary to the law of this case, and is not equitable.

1. **CAL's Position is Inconsistent with its Prior Representations to this Court**

CAL's position is in direct opposition to the legal argument that it successfully asserted in its December 22, 1992 *Partial Objection to Allowance of Claims Based Upon Certain Alleged Labor Protective Provisions Involving the Air Line Pilots*

---

[1]    When the list Continental provided to Plaintiffs was cross-checked against the data base, it showed that it included persons who accepted the ALPA/AL settlement or withdrew their claims. Those persons have been deleted.

2

Adversary Proceeding
No. A-99-412
Class Action

*Association International and Eastern Air Lines Inc.* (Exhibit C) wherein it requested and obtained the ruling of this Court that because ALPA filed LPP claims in these proceedings as the collective bargaining representative for the Eastern pilots, "a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants."

On February 11, 1993, this Court entered its Order on CAL's Partial Objection (Exhibit D) holding, as CAL requested and represented, that "its ruling as to ALPA's LPP Claim is binding on both the 600 LPP Claimants represented by [sic: undersigned] counsel and the other LPP Claimants." As a matter of law, as well as fundamental fairness, if the bankruptcy claim which ALPA filed on behalf of all of its members was sufficient to bind all of its members to a ruling as to the status of their individual LPP claims which determined the nature and scope of the recovery available to each of them individually, then, too, ALPA's LPP bankruptcy claim preserved the individual LPP claims of those persons who retained their claims and opted not to participate in the ALPA/CAL settlement. Accordingly, CAL's current position, which is completely inconsistent from the position which it took to obtain relief from this Court which limited its liability on each individual pilot's LPP claim, must be rejected under the doctrine of judicial estoppel. *See: In re Continental Airlines*, 125 F.3d 120, 138 (3rd Cir. 1997) citing to *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1050 (3rd Cir. 1993).

3

Adversary Proceeding
No. A-99-412
Class Action

## 2. This Court Has Ordered that LPP Claimants Who Opted Not to Participate in the ALPA/CAL Settlement Retained Their LPP Claims.

ALPA and CAL reached their settlement, subject to Court approval, in early 1994. CAL asserts that because ALPA advised its members when it settled by correspondence dated April 12, 1994 that "*absent a court order,*" "if they opted-out of the settlement and failed to individually file a proof of claim, they *would be* barred from seeking any individual LPP relief against Continental." First, ALPA never made the unequivocal statement that the individual claims would be barred. ALPA's letter does contain the caveat that the claims *might be* barred if individual claims were not filed, with no further explanation. ALPA made this statement because it wanted to persuade as many persons as it could to accept the settlement since the settlement provided that "Continental retains the option of terminating the settlement in its entirety if fewer than 80% of eligible pilots opt to participate in the settlement." It was thus in ALPA (and CAL's) best interests to convince as many of approximately 3500 persons identified on the "Eligible Pilots" list appended to the ALPA/CAL settlement agreement to participate in the settlement and the caveat contained in the letter was ALPA and CAL's attempt to do just that.

More importantly, a court order *was* entered well after the April 12, 1994 letter was sent out which preserved the individual LPP Claimants' rights to refuse to participate in the ALPA/CAL settlement and retain their claims. The objections of over

4

a thousand of the "Eligible Pilots" to the ALPA/CAL settlement were timely filed and

considered by this Court. After conducting a hearing on the motions of ALPA and CAL

to approve the settlement, and considering the objections, this Court approved the

ALPA/CAL Claims Settlement Agreement by Order rendered July 19, 1994, expressly

ruling with respect to "approximately one third" of the LPP Claimants who objected to

the settlement that they **"had the clear recourse of refusing to participate in the**

**Settlement and retaining their Claims."** (Exhibit E) This Court's July 19, 1994 Order

is absolutely clear. CAL's assertion that the Order does not mean what it says because

it did not expressly authorize opt-out pilots to individually pursue the proof of claim filed

on their behalf by ALPA is entirely inconsistent with the clear intent and purpose of the

Order and, indeed, requests this Court to "re-interpret" its 8 year old Order so that it

operates to deprive the LPP Claimants of the claims which the Order directly states

they retained. Given this Court's unambiguous ruling that all opt out LPP Claimants

retained their claims, it is both implicit in the order and axiomatic that by doing so they

had the right to pursue the claims. To that end, CAL unsuccessfully attempted to

convince the District Court and then Third Circuit that the LPP Claimants' appeals

should be dismissed on the theory that only ALPA, as the collective bargaining

representative, had the right to take an appeal. A cogent analysis of this issue, which

is the law of the case, was provided by District Judge Joseph J. Longobardi in his

5

Adversary Proceeding
No. A-99-412
Class Action

November 25, 1995 Memorandum Opinion denying CAL's motion to dismiss:

> The bankruptcy court stated in its Order of July 19, 1994,
> that "approximately two-thirds of the pilots have elected
> to participate in the Settlement, so that the Settlement
> disposes of the greatest bulk of the claims, and greatly
> reduces the costs of litigation." Furthermore, the court
> held, "Those who objected [to the settlement] had the
> clear recourse of refusing to participate in the Settlement
> and retaining their claims. Approximately a third of the
> Pilots did so." On August 15, 1994, Continental notified
> the Court, and by carbon copy the LPP Claimants, that it
> intended to file a motion to dismiss the appeal of the LPP
> Claimants on the ground that ALPA's settlement of the
> underlying claims was binding upon them. For the first
> time, the LPP Claimants had reason to believe that their
> LPP Claims had been settled despite their non-participation
> in the Settlement Agreement.

(Exhibit F; Opinion at p. 9; record citations omitted.)

> The issue raised in the Second Motion to Dismiss as Moot
> is whether the Settlement Agreement signed by ALPA moots
> the LPP dispute, thereby mooting the appeal of both ALPA
> and the LPP Claimants. **Continental argues that it has settled
> with the only party capable of asserting the right to seniority
> list integration, so the LPP dispute is now moot.** While the
> parties dispute whether ALPA represents the LPP Claimants,
> representation is irrelevant.

> **[fn]: If ALPA was not the collective bargaining representative
> of the LPP Claimants, then it could not settle the claims of the
> LPP Claimants. If ALPA was the collective bargaining
> representative of the LPP Claimants, the language of the**

6

Adversary Proceeding
No. A-99-412
Class Action

**Settlement Agreement makes clear that ALPA did not settle those claims[2].**

The issue is whether individual pilots can assert a right to seniority list integration under the collective bargaining agreement, and, if so, whether the Settlement Agreement disposes of those rights.

The Reply Brief of Continental demonstrates that the Settlement Agreement had no effect at all on the rights of the LPP Claimants:

> **The settlement was plainly intended to leave individual pilots in the same position they were prior to the settlement — no better, no worse.**

The language of the Settlement Agreement, and the briefs of the other parties, support this statement. Thus, Continental cannot seriously claim that the settlement mooted the appeals. Rather, Continental asserts that the seniority integration rights were group rights that could only be asserted by ALPA, and the individual LPP Claimants <u>never</u> had standing to bring the LPP Claims.

[fn]: Continental does not claim that the LPP Claimants have no standing on appeal.  **Because the February 1993 Order specifically bound the LPP Claimants, they have standing to appeal that order.**

(Opinion at 22 - 23; emphasis supplied in bold; record citation omitted)

---

² CAL also asserts that ALPA's release bars the claims of these New Members.  It does not.   The release language is between CAL and ALPA ; it excepts **"individual pilot defendants who do not elect to participate in this Settlement Agreement"** and it provides that it **"shall have no effect at all on (1) any claims or rights of any pilot who has filed a claim for such in the Delaware bankruptcy proceedings and does not participate in this Settlement Agreement..."** Those claims, as have been shown, were filed for the newly discovered pilots by ALPA.

Adversary Proceeding
No. A-99-412
Class Action

Thus, the law of this case firmly establishes that:

    1.   The LPP claims of those LPP Claimants who elected not to accept the ALPA/CAL settlement survived the settlement.

    2.   By its own admission, CAL affirmatively acknowledged that the ALPA/CAL settlement was not intended to take away the individual pilots' LPP claims which existed prior to the settlement by virtue of ALPA's having filed the claim on their behalf — **"The settlement was plainly intended to leave individual pilots in the same position they were prior to the settlement — no better, no worse."**

    3.   The LPP Claimants who rejected the ALPA/CAL settlement had standing to appeal which was not mooted by ALPA's withdrawal of its claim. And if they had standing to appeal, they also had standing to pursue the claims which this Court ruled they had retained.

The District Court's opinion also supports our prior argument that CAL is judicially estopped from asserting the inconsistent position that a pre-condition to the claims of the newly discovered LPP Claimants is the requirement that they had to file individual proofs of claim and could not rely on the claim filed for them by ALPA.

Next, CAL's position that if an LPP Claimant opted out of the ALPA/CAL settlement, he or she was required to file a proof of claim is disingenuous. None of the opt-out LPP Claimants _could have_ filed an individual proof of claim after learning of the

8

ALPA/CAL settlement — as the court docket shows, the bar date for such claims was

September 27, 1991, over 2 ½ years prior to the settlement. CAL's argument that this

Court should accept the proposition that it was appropriate to advise the Eligible Pilots

they had a right to opt out of the settlement and retain their claims when, in fact, opting

out would have left them with no claim whatsoever must be rejected.

Finally, the vast majority of the class members who have already settled never

filed individual bankruptcy claims.   Rather, as CAL well knows, they terminated ALPA's

representation of their interests and retained undersigned counsel to assume their

representation on ALPA's proof of claim.  The newly discovered LPP Class Action

Plaintiffs thus stand in no different shoes from over 400 of the LPP Class Action

Plaintiffs who are members of the class and accordingly, are entitled to participate in

the class settlement.

### 3.  CAL Misstates the Date of Settlement and Ignores its Agreement to Include All Former EAL Pilots with Unresolved LPP Claims in the Class

CAL misstates the timing of the class action settlement in order to claim that a

precondition to its agreement to value the claims at $110,000 each was to limit the

class to 583 persons.  CAL's assertion that it did not agree to the settlement valuation

of $110,000 per claim until it "understood the total size of the class" as a result of the

parties' mutually identifying" 583 class members sometime between July and

November, 2001 is simply untrue.

9

Adversary Proceeding
No. A-99-412
Class Action

The settlement valuation per claim of $110,000 was agreed to in writing on September 20, 1999, two years prior to the time CAL now argues it was agreed to.

Furthermore, the September 20, 1999 settlement letter agreement, which was attached to the Class Action Complaint filed October 12, 1999 as Exhibit A (appended here as Exhibit G) makes no mention whatsoever as to the size of the class or the class definition, both of which were subsequently litigated and ruled upon by this Court. The letter agreement does, however, provide, that "each former Eastern pilot with an unresolved LPP claim" would be entitled to participate in the settlement.

CAL does not dispute — because it cannot dispute — the fact that each and every one of the LPP Claimants identified on Exhibit B were recognized by it to be "Eligible Pilots" for purposes of the ALPA/CAL settlement. Indeed, CAL directly corresponded with each one of them, sending them settlement documents which they rejected. CAL has known since 1994 that each of the persons on Exhibit B has an unresolved LPP claim; it has known the exact number of Eligible Pilots who rejected the ALPA/CAL settlement since 1994 and it has in its possession the names and addresses of the 1150 or so Eligible Pilots who rejected the ALPA/CAL settlement and retained their claims. Despite having that knowledge, CAL never disclosed the existence of said persons to the Plaintiffs, who only recently, through the procedures described in our motion, discovered them.

10

Adversary Proceeding
No. A-99-412
Class Action

As CAL has known "from the git go" exactly how many Eligible Pilots did not participate in the ALPA/CAL settlement, as well as who they are, CAL is less than candid with the Court when it suggests that it only recently agreed to the settlement based upon a class consisting of less than half the persons who CAL agreed were entitled to participate in the ALPA settlement but chose not to. Had CAL been candid at the outset, this motion, and all of the work necessary to independently identify the Eligible Pilots listed on Exhibit B, would not have been required. And even with the inclusion of the newly discovered class members in this settlement, the total number of participants is still approximately 40% less than the total number of Eligible Pilots CAL agreed to settle with because of the close to 400 persons who withdrew their claims as a result of this action. Accordingly, as the persons identified on Exhibit B meet all of the class criteria and because they were known by CAL to have unresolved LPP claims as of the September 20, 1999 settlement agreement, they are entitled to participate in the class settlement.

### 4. The Class Definition Expressly Includes Persons Whose Claims Were Filed by ALPA

CAL contends that the substance of the Plaintiffs' Motion to Clarify was "whether former EAL pilots covered under the ALPA proof of claim should be part of the class." This is simply not true.

11

Adversary Proceeding
No. A-99-412
Class Action

The Motion for Clarification was brought because the class Action Plaintiffs contended that ALPA's proof of claim covered all Eastern pilots, regardless of whether or not they were members of the Union, and that the same thus applied to the new hires. CAL disagreed. After carefully reviewing ALPA's proof of claim with CAL's attorneys, the Plaintiffs agreed that because the proof of claim was expressly limited to ALPA members, that it would only be effective for ALPA members and that it would not apply to new hires. Consistent with this agreement, CAL and the Plaintiffs stipulated before the Court for the entry of its July 10, 2001 Order Granting Class Action Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List and that they be "*members of Eastern's flight deck collective bargaining unit*'" rather than simply former EAL flight deck employees "who claim they are entitled to the benefits of the collective bargaining agreement (the "CBA") between Eastern Airlines and the Air Line Pilots Association." This clarification comported with the parties' agreement that in order to participate in the Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims or have claims filed for them would be excluded from the class as they were not part of the EAL pilots who were members of ALPA and they did not individually file timely claims for enforcement of the LPPs in these proceedings. The corollary to this is that this Court's July 10, 2001 Order expressly includes the newly identified class members listed on Exhibit B as every one of them were ALPA members on the active seniority list

12

Adversary Proceeding
No. A-99-412
Class Action

as of the stipulated date of merger who neither accepted the ALPA/CAL settlement or

withdrew their claim in bankruptcy[3].  Accordingly, the persons identified on Exhibit B are

class members entitled to participate in the settlement.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to

find that the newly identified former EAL pilots identified on Exhibit B are members of

the class; to enter an order requiring CAL to fund the settlement for the new class

members forthwith; to enter an order providing for a 60 day extension of time from the

date of the hearing to provide notice to the newly identified former EAL pilots; and for

approval of the form of notice appended to the Motion.

Dated: June 12,2002

TRALINS AND ASSOCIATES
Attorneys for Class Plaintiffs
2930 One Biscayne Tower
2 S. Biscayne Blvd., Suite 2930
Miami, FL 33131
Telephone: 305-374-330

By: _Myles J. Tralins by Bee(James)_
Myles J. Tralins
Florida Bar No. 139543

-and-

---

[3]    A substantial majority of the 400 persons in the Addington group who withdrew their claims pursuant to their stipulation with CAL and this Court's Order allowing them to do so, withdrew claims filed for them by ALPA, not claims they filed on their own.  If CAL's position here is accepted, they had no claims to withdraw as they were "lost" when ALPA settled and withdrew its claim.

13

**Adversary Proceeding**
**No. A-99-412**
**Class Action**

**PRICKETT, JONES & ELLIOTT**
1310 King Street
Wilmington, DE 19801
Tel: (302) 888-6500

By: _____
        BRUCE E. JAMESON
        Delaware Bar No. 2931

14

Ex. L

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re

CONTINENTAL AIRLINES, INC.,
et al..

Debtors.

Chapter 11
Consolidated Case Nos.
90-932 through 90-984

## DEBTORS' PARTIAL OBJECTION TO ALLOWANCE OF CLAIMS BASED ON CERTAIN ALLEGED LABOR PROTECTIVE PROVISIONS INVOLVING THE AIR LINE PILOTS ASSOCIATION, INTERNATIONAL AND EASTERN AIR LINES, INC. AND NOTICE OF HEARING

To all parties served with this Partial Objection:

Continental Airlines, Inc. and Continental Airlines Holdings, Inc., Debtors, make this partial objection to that portion of all claims filed against Debtors that seeks administrative expense status or prospective relief, including specific performance, based on claims for relief that the Air Line Pilots Association, International ("ALPA") has asserted under the labor protective provisions ("LPPs") of a collective bargaining agreement executed by ALPA and Eastern Air Lines, Inc. ("Eastern") on February 23, 1986 (the "LPP Claims").1/

Debtors' partial objection to the LPP Claims is based on the following grounds:

1.   The collective bargaining agreement out of which the claims arose was executed and expired prepetition;

2.   The events that are alleged to have given rise to obligations on Debtors' part under the LPPs all occurred prepetition;

3.   Even if such obligations arose, they can be satisfied through an alternative right to payment cognizable as a general unsecured claim;

4.   The LPP Claims are not based on any post-petition services performed for Debtors.

Debtors have previously filed a partial objection against ALPA insofar as it has asserted the same claim on behalf of the Eastern pilots, and on December 18, 1992 filed a motion with the Bankruptcy Court for the District of Delaware in Adversary Proceeding No. 91-153 seeking partial summary judgment on their partial objection to ALPA's claim.

---

1/   ALPA has asserted the LPP Claims in an arbitration styled In The Matter Of An Application Of The Air Line Pilots Association, International For An Arbitration Under The Labor Protective Provisions Involving Eastern Air Lines, Inc., Kasher, Arb.

EXHIBIT NO. "C"

0234

Debtors' motion for partial summary judgment is set for hearing on February 4, 1993. If Debtors' motion is granted, the LPP Claims will be determined to be, at best, dischargeable, general unsecured prepetition claims within the meaning of Bankruptcy Code Section 101(5), 11 U.S.C. § 101(5). Because ALPA is the collective bargaining representative for the Eastern pilots, and because the LPP Claimants are relying on an arbitration proceeding initiated by ALPA on their behalf to establish their rights under the LPPs, a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants. Any LPP Claimant who does not concede that such relief would be binding as to his or her individual claim should file a written response to this Partial Objection as provided in the attached Notice of Partial Objection. In support of this Partial Objection, Debtors incorporate by reference their Motion For Partial Summary Judgment On Their Partial Objection To Claims Based On Certain Alleged Labor Protective Provisions Involving The Air Line Pilots Association, International and Eastern Air Lines, Inc., filed with the Bankruptcy Court on December 18, 1992 in Adversary Proceeding No. 91-153. Any LPP Claimant wishing to obtain a copy of that Motion should contact the undersigned counsel for Debtors.

The filing of this partial objection does not waive any other objection(s) that Debtors will file, or have filed, as to the LPP Claims or any other claim.

WHEREFORE, Debtors pray that the LPP Claims be disallowed to the extent such claims seek relief other than as dischargeable, general unsecured prepetition claims.

Respectfully submitted,

YOUNG, CONAWAY, STARGATT & TAYLOR
Rodney Square North
Eleventh Floor
Wilmington, DE 19899
(302) 571-6600

By: _Laura Davis Jones_

Attorneys for Debtors and
Debtors in Possession

Dated:   December 22, 1992

2

0235

Ex. M

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In Re:
CONTINENTAL AIRLINES, INC., et. al.

               Debtors,

Case No. 90-932
Chapter 11

JAMES BALDRIDGE, et. al.

               Plaintiffs,

v.

CONTINENTAL AIRLINES HOLDINGS, INC., et. al.

               Defendants

Adversary Proceeding
No. A-99-412
CLASS ACTION

       The Court having considered Plaintiff's Motion for Finding that Newly Identified Former EAL Pilots Are members of the Class, for Entry of Order Requiring CAL to Fund Settlement for New Class Members, for 90 Day Extension of Time to Provide Notice and for Approval of Form of Notice (the "Motion"), and for good cause shown,

       IT IS HEREBY ORDER THAT:

1.    The Motion is granted.

2.    All persons identified on Exhibits A and B to the Plaintiff's Reply in support of its Motion are found to meet the criteria for inclusion in the Class and to be members of the plaintiff class certified in this action (the "New Class Members");

3.    Counsel to the Plaintiff Class shall cause the Claims Administrator to mail a copy of the Notice substantially in the form attached to the Motion as Exhibit D to all New Class Members on or before June 21, 2002.

4.    The deadline for the New Class Members to file a Proof of Claim and Release to participate in the settlement shall be ___Septe__ber 19___, 2002.

5.    Defendant shall forthwith fund the settlement as to the New Class Members as previously provided for under the terms of the Final Judgment and Order and Settlement Agreement.

Dated: June 11, 2002

_____
United States Bankruptcy Court Judge

$Ex. N$



## Florida Non Profit

### EASTERN PILOTS FOR FAIRNESS, INC.

### PRINCIPAL ADDRESS
11635 SW 108 TERRACE
MIAMI FL 33176

### MAILING ADDRESS
11635 SW 108 TERRACE
MIAMI FL 33176

| Document Number | FEI Number | Date Filed |
|---|---|---|
| N44317 | 650271216 | 07/15/1991 |
| **State** | **Status** | **Effective Date** |
| FL | ACTIVE | NONE |
| **Last Event** | **Event Date Filed** | **Event Effective Date** |
| AMENDMENT | 10/01/1991 | NONE |

## Registered Agent

| Name & Address |
|---|
| MYLES J TRALINS, ESQUIRE<br>ONE BISCAYNE TOWER/ STE 3310<br>2 SOUTH BISCAYNE BLVD<br>MIAMI FL 33131 |
| Name Changed: 03/31/1992 |
| Address Changed: 03/31/1992 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| DUNN, LARRY J.<br>11635 SW 108 TERRACE<br><br>MIAMI FL | PD |
| MANN, WILLIAM B.<br>7020 N. SERNOA DR.<br><br>SARASOTA FL 34241 | VD |

| BALDRIDGE, J H<br>402 STRATFIELD DRIVE<br><br>LUTZ FL 33549 | SD |
|---|---|
| VOUDY, JOHN<br>11 N POMPANO BEACH BLVD<br><br>POMPANO BEACH FL 33062 | TD |
| ZIOBRO, THOMAS J<br>10 CHAPEL HILL RD<br><br>WESTPORT CT 06880 | D |

# Annual Reports

| Report Year | Filed Date |
|---|---|
| 2004 | 02/23/2004 |
| 2005 | 02/28/2005 |
| 2006 | 04/27/2006 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| CONTINENTAL AIRLINES, INC., et. al | ) |
| | ) |
| Debtor | ) |
| | ) Case No. 90-932 & 90-933 (MFW) |
| | ) |
| **Ramon E. O'Neill** | ) Civil Action No. 06-568 (SLR) |
| | ) |
| Appellant | ) |
| v. | ) |
| | ) |
| JAMES BALDRIDGE, WILLIAM MANN | ) |
| and LARRY DUNN. | ) |
| Representatives of the LPP CLAIMANTS, | ) |
| | ) |
| and | ) |
| | ) |
| CONTINENTAL AIRLINES, INC. | ) |
| | ) |
| Appellees, | ) |
| | ) |

# CERTIFICATE OF SERVICE

I, Brownie N. Inman, certify that I am not less than 18 years of age, and that service of the **RESPONSE OF APPELLANT RAMON E ONEILL TO THE MOTION OF APPELLEE CONTINENTAL AIRLINES, INC. FOR AN ORDER (I) DISMISSING APPEAL, (II) AWARDING DAMAGES PURSUANT TO F.R.A.P. AND BANRUPTCY RULE 8020, AND (III) ENJOINING APPELLANTS** was made on October 9, 2006, 2006, upon the attached service list by first class mail, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

Respectfully Submitted,

*Ramon E O'Neill*

Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866

Counsel for Continental Airlines:
Robert Brady, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801
(302) 571-6600


Counsel for LPP Claimants:
Bruce Jameson, Esq.
Prickett, Jones & Elliott
1310 King Street
Wilmington, DE 19801
(302) 888-6532


United States District Court
for the District of Delaware
J. Caleb Boggs Federal Bldg
844 North King Street
Wilmington, DE 19801-3519
(302) 573-6170