IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case No. 90-932 & 90-933 (MFW) |
| *et al.* | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtor. | ) | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| | ) | |
| RAMON E. O'NEILL | ) | Civil Action No. 06-568 (SLR) |
| BROWNIE N. INMAN | ) | Civil Action No. 06-569 (SLR) |
| J. TRIGG ADAMS | ) | Civil Action No. 06-570 (SLR) |
| | ) | |
| Appellants, | ) | Consolidation pending[1] |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CONTINENTAL AIRLINES, INC., *et al.* | ) | |
| | ) | |
| Appellees, | ) | |
| | ) | |

-------------------------------------------------------------x

**REPLY OF APPELLEE CONTINENTAL AIRLINES, INC. TO APPELLANTS'
OBJECTIONS TO MOTION OF APPELLEE CONTINENTAL AIRLINES, INC. FOR AN
ORDER (I) DISMISSING APPEALS, (II) AWARDING DAMAGES PURSUANT TO
F.R.A.P. 38 AND BANKRUPTCY RULE 8020, AND (III) ENJOINING APPELLANTS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (Delaware Bar No. 2847)
Joseph M. Barry (Delaware Bar No. 4221)
Kenneth J. Enos (Delaware Bar No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jbarry@ycst.com

Counsel to Continental Airlines, Inc.

Dated: October 17, 2006

---

[1] On September 21, 2006, Continental filed a motion to consolidate these appeals. Briefing on that motion was completed on October 6, 2006.

Continental Airlines, Inc. ("Continental"),[2] as an appellee herein, hereby replies (the "Reply") to the objections of appellant O'Neill (the "O'Neill Objection"), appellant Inman (the "Inman Objection") and appellant Adams (the "Adams Objection," and together with the O'Neill Objection and the Inman Objection, the "Objections") to Continental's motion (the "Motion") for an order (i) dismissing the Appeals, (ii) determining that the Appeals are frivolous, (iii) awarding damages to Continental, and (iv) enjoining the appellants. In support of the Reply, Continental respectfully states as follows:

## PRELIMINARY STATEMENT

The appellants' Objections can barely be viewed as objections at all since they essentially support the bases of Continental's Motion. While the appellants insist that they are not re-litigating the Baldridge Class membership issue, they go on to do just that. In between baseless assertions of criminal conspiracy and fraud, the Objections do nothing but recount the previously litigated issue of the Baldridge Class membership, including how their arguments were rejected in their prior appeals. And not only do the Objections support the notion that this is merely rehashing that which has been lost, the appellants utterly fail to address Continental's argument that the appellants lack standing to even bring the Appeals at all. To the contrary, the appellants readily concede in their Objections that the cause they are advancing is that of the pilots they refer to as "new hires" – a category of pilots to which none of the appellants belong. Simply put, the Objections merely demonstrate the indefensibility of the appellants' positions in the Appeals and, as such, the Motion should be granted in all respects.

## THE REPLY

In its Motion, Continental advances several legal theories in support of, *inter alia*, dismissal of the Appeals including that *res judicata* bars the appellants' attempts to relitigate the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Baldridge Class membership issue and the appellants have no standing to pursue on appeal the alleged rights of others.

Appellant Adams' 3-page objection merely states that "I have argued every time that I have appeared in this matter that both Class Counsel and Continental have misled the courts as to [*sic*] lawfulness of the makeup of the Class, and accuracy of the list of names therein" and that the record supports his claims on appeal (*i.e.* that the Baldridge Class is underinclusive).

Appellant Inman appears to advance 2 arguments in opposition to the Motion. First, appellant Inman argues that the Baldridge Class – as certified – is underinclusive as it fails to include 1220 "new hires" – or pilots hired by Continental on or after March 3, 1989. Second, appellant Inman argues that 248 Baldridge Class members – what he refers to as the "248 'B' list pilots" – have never been informed that a settlement was available to them.

Appellant O'Neill's objection[3] essentially advances the same arguments as appellant Inman, though does so with a convoluted twist of non sequiturs and conjured facts. O'Neill's theory seems to be that because the Bankruptcy Court approved the Class Expansion Motion and expanded the class by 256 members after the Baldridge Class was certified, the entire process was fraudulent. Though creative in presentation, not only is Mr. O'Neill's argument – and those of appellants Inman and Adams – entirely without logic or merit, it has already been adjudicated.

A.    **Failure to Notify**

There exists no evidence in the record to support any claim that the "248 'B' list pilots" were not provided notice of the deadline to file a claim in order to participate in the Baldridge Settlement; the record establishes the contrary.

Attached hereto as Exhibit AA is the Affidavit of Linda Goldsmith, a representative of The Garden City Group, Inc. ("Garden City"), the claims processor with respect to the claims and

---

[3] At thirty-two pages, appellant O'Neill's brief is nearly two-thirds longer than that permitted by F.R.A.P. 27(d)(2).

045085.1006

distributions under the Baldridge Settlement. According to the Goldsmith Affidavit, the class

plaintiffs identified in the Bankruptcy Court's order approving the Class Expansion Motion were

provided "claim packets" on June 14, 2002 and June 21, 2002 – just days following entry of the

Bankruptcy Court's order approving the Class Expansion Motion.

Furthermore, of the names listed on Exhibit B to the Inman Objection – those that Mr.

Inman claims never received notice of the Baldridge Settlement – over sixty of them filed claims

and received distributions under the Baldridge Settlement. And certain of those listed on appellant

Inman's list are members of the EPMC which, as this Court will recall, waived any right to

participate in the Baldridge Settlement.[4]

The Court should also question appellant Inman's credibility given that his prior claims of

notice failure were proven before the Bankruptcy Court to be dubious. As discussed in greater

detail in the Motion, appellant Inman argued before the Bankruptcy Court that he did not learn

about the Baldridge Settlement until around the time he filed his June 13, 2006 motion in the

Bankruptcy Court. The record shows that not only did Mr. Inman know about the Baldridge

Settlement, he objected to it and appealed the order approving it. With apologizes to Stephen

Colbert, the "truthiness" of anything stated by appellant Inman on the subject of notice must be

questioned.

Finally, it should not be forgotten that none of the "248 'B' list pilots" are claiming in these

Appeals that they did not receive notice – only appellant Inman. The record amply demonstrates

that through various mechanisms – including the appellants' efforts – the universe of former

Eastern pilots is well aware of the Baldridge Action and the Baldridge Settlement. *See, e.g.,*

Transcript of Hearing, *In re Continental Airlines, Inc.*, Ch. 11 Case No. 90-932, Adv. No. 99-412,

at pp. 54-55 (Bankr. D. Del. January 31, 2002), Exhibit E to Motion ("MR. TRALINS: So I think

---

[4] For example, Peter Crawford – number 57 on appellant Inman's chart – is the President of the EPMC.

it's fair to say that the world of Eastern pilots between the bulletin boards, pilot communications, the monthly newsletters, that [the class representatives] have been putting out...for 11 years communicated this fact..."). It has been nearly five years since the Bankruptcy Court approved the Baldridge Settlement and over sixty of the "248 'B' list pilots" received distributions under the Baldridge Settlement. Surely in that time some credible claim of non-receipt would have arisen, if valid.

In conclusion, the record establishes that each of the "248 'B' list pilots" received notice of the Baldridge Settlement since, among other things, nearly a quarter of them accepted and received distributions under the Baldridge Settlement. Moreover, none of the appellants contend that they are one of the "248 'B' list pilots" and, as such, have no standing to raise the rights of the "248 'B' list pilots."

**B.    Class Underinclusiveness**

The appellants each maintain that the Baldridge Class membership fails to include certain pilots who were otherwise qualified to participate in the Baldridge Settlement. The appellants allege – with varying degrees of specificity – that Continental, Baldridge Class counsel and the Baldridge Class representatives purposefully excluded certain pilots from the list. The apparent reason for this allegedly purposeful and fraudulent exclusion is known only to the appellants. In any event, the record on this issue, as set forth in the Motion and summarized below, amply demonstrates that this issue has been fully and finally litigated at every judicial level in this Circuit.

The procedural history of this dispute is as follows:

- Appellant Adams objected to the Class Certification Motion alleging, among other things, that the class was underinclusive (*see* Exhibit A to Motion); that objection was <u>overruled</u>.

- Appellant Adams objected to the Baldridge Settlement alleging, again, that the Baldridge Class was underinclusive (*see* Exhibit B to Motion); that objection was <u>overruled</u>.

- Appellant O'Neill appeared at the January 31, 2002 hearing to consider approval of the Baldridge Settlement and raised, among other things, the alleged underinclusiveness of the Baldridge Class; that objection was <u>overruled</u> (*see* Exhibit E to Motion).

- Appellant O'Neill appeared at the April 2, 2002 hearing to consider Continental's Motion to Compel O'Neill and raised, again, the alleged underinclusiveness of the Baldridge Class; that objection was <u>overruled</u> (*see* Exhibit I to Motion).

- On April 25, 2002, the Baldridge Class filed the Class Expansion Motion which states, in great detail, the process by which the Baldridge Class representatives went about identifying 256 new members of the Baldridge Class – which is the <u>exact</u> relief the appellants sought in the Pilot Motions underlying this appeal (*see* Exhibit K to Motion, at ¶¶ 6-7);[5] that motion was <u>granted</u>.

- In February 2002, each of the appellants appealed the Bankruptcy Court's approval of the Baldridge Settlement raising, among other things, the alleged underinclusiveness of the Baldridge Class; those appeals were <u>dismissed</u>.

- On June 4, 2003, appellant O'Neill filed a motion before the Third Circuit Court of Appeals arguing that the Baldridge Class was underinclusive (due, not surprisingly, to Continental's alleged fraud) and requesting that the record be supplemented with various items (*see* Exhibit Q to Motion); that motion was <u>denied</u>.

- On August 21, 2003, appellant Adams filed his opening brief before the Circuit Court arguing, among other things, that "the LPP Claimants have colluded by agreeing with their illegal efforts to reduce the size of the class, attempting to enrich the few of themselves at the expense of all the larger number of claimants they are trying to exclude…" and "fraud in the courts was the foundation of all these rulings…" (*see* Exhibit BB hereto, at pp. 4, 6).

- On or about August 18, 2003, appellant O'Neill filed his opening brief before the Circuit Court arguing at length that the Baldridge Class was underinclusive in light of, among other things, alleged fraud on the part of Continental (*see*, *e.g.*, Exhibit CC hereto, at ¶ 29 ("Mr. Tralins and Continental agreed to excluded 1059 pilots.").

---

[5] Exhibit K to the Motion is the Class Expansion Motion. However, as appellant O'Neill indicated in the O'Neill Objection, Continental inadvertently submitted the incorrect document as Exhibit K. An amendment to the appendix of exhibits submitted with the Motion will be filed contemporaneously herewith with the correct Exhibit K.

5

- On March 5, 2004, appellants Adams' and O'Neill's appeals to the Circuit Court were <u>denied</u> and the Circuit Court specifically found that their objections to the class membership issue were <u>resolved</u> by the Bankruptcy Court over two years earlier (*see* Exhibits N and P to Motion, respectively).

- On April 2, 2004, appellant Adams petitioned the Circuit Court for rehearing *en banc*, wherein appellant Adams' specifically addressed the Circuit's decision regarding his argument as to underinclusiveness (*see* Exhibit DD hereto, at pp. 2-3); that petition was <u>denied</u>.

Indeed, a better characterization of the issue on appeal is provided by none other than appellant Adams himself in the Adams Objection, where he states:

> I have argued <u>every time</u> that I have appeared in this matter that both Class Counsel and Continental have misled the courts <u>as to lawfulness of the makeup of the members of the Class</u>, and <u>accuracy of the list of names</u> therein....[at the 2006 Hearing] I <u>once again</u> stated that position, but the Judge ruled, <u>once again,</u> that she would not consider those charges, and ordered things to stand as they were.

Inman Objection, at p. 1-2 (emphasis added). In other words, the appellants' complaint is not that they have not had the chance to raise this issue, but that every time they raise it, the courts rule against them.

As the Circuit Court noted in *EEOC v. U.S. Steel Corp.*, *res judicata* is "not a mere matter of technical practice or procedure" but "a rule of fundamental and substantial justice." *Equal Employment Opportunity Commission v. U.S. Steel Corp.*, 921 F.2d 489, 492 (3d Cir. 1990) (internal citations omitted). These Appeals represent the very epitome of what *res judicata* is intended to combat: the substantial injustice of requiring Continental to defend the <u>same</u> <u>claim</u> by the <u>same</u> <u>party</u> even though it has already prevailed on that <u>very</u> <u>claim</u> by that <u>very</u> <u>party</u>.

Finally, the appellants fail to even recognize, much less contest, Continental's standing argument set forth in the Motion. *See* Motion, at sect. II. The appellants offer no argument in their Objections, nor could they, that the order from which they appeal has any impact whatsoever on their rights or claims. As discussed more fully in the Motion, since the appellants rights are not

impacted by the Bankruptcy Court's denial of the Pilot Motions, the appellants lack standing to pursue the Appeals and their failure to address this issue in their Objections is telling.

## **CONCLUSION**

WHEREFORE, for all of the reasons set forth in the Motion and above, Continental respectfully requests that this Court enter an order (i) overruling the Objections, (ii) dismissing the Appeals, (iii) determining that the Appeals are frivolous within the meaning of Bankruptcy Rule 8020 and F.R.A.P. 38, (iv) awarding Continental just damages and double costs, (v) enjoining the appellants, and (vi) granting such other and further relief as this Court deems necessary and proper under the circumstances.

Dated: Wilmington, Delaware  
     October 17, 2006

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (Delaware Bar No. 2847)  
Joseph M. Barry (Delaware Bar No. 4221)  
Kenneth J. Enos (Delaware Bar No. 4544)  
The Brandywine Building  
1000 West Street, 17th Floor  
Wilmington, DE 19801  
(302) 571-6600  
jbarry@ycst.com

Counsel to Continental Airlines, Inc.

# Exhibit AA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re:<br><br>CONTINENTAL AIRLINES, INC., et al.,<br><br>Debtors | }<br>}<br>}<br>}<br>}<br>}<br>} | Case No. 90-932<br>Chapter 11 |
| JAMES BALDRIDGE, WILLIAM MANN,<br>and LARRY DUNN, individually, and<br>as representatives of a class of persons<br>similarly situated who are referred to as<br>the LPP CLAIMANTS,<br><br>Plaintiffs,<br><br>v.<br><br>CONTINENTAL AIRLINES HOLDINGS,<br>INC., CONTINENTAL AIRLINES,<br>INC. and SYSTEM ONE HOLDINGS, INC.<br><br>Defendants. | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} | Adversary Proceeding<br>No. A-99-412<br>Class Action |

<u>AFFIDAVIT OF LINDA GOLDSMITH</u>

STATE OF NEW YORK    }
                     }   ss.:
COUNTY OF SUFFOLK    }

LINDA GOLDSMITH, being duly sworn, deposes and says:

I am an Assistant Vice-President of Operations at The Garden City Group, Inc. ("GCG"), the claims administrator retained by the parties in connection with the settlement of the above-captioned action (the "Action")

1. On June 12, 2002, plaintiffs' counsel provided to GCG names of 268 additional class plaintiffs who were to receive a claim packet in this matter. The 268 names were contained on three separate lists. On or about June 14, 2002, as directed by plaintiffs' counsel, GCG mailed by first class mail postage prepaid, claim packets to 40 of the 268 class plaintiffs. The claim packets consisted of a claimant cover letter, a claim form, a copy of the settlement agreement and final judgment. On or about June 21, 2002, again pursuant to plaintiffs' counsel's direction, claim packets were mailed to the remaining 228 plaintiff class members.

*Linda Goldsmith*

Linda Goldsmith

Sworn to before me this
1\5th day of October, 2005

NOTARY PUBLIC

BARBARA KELLEY KEANE
Notary Public, State of New York
No. 01KE4760720
Qualified in Suffolk County
Commission Expires Feb. 28, 200‎

- 2 -

# Exhibit BB

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

RECEIVED
AUG 2 1 2003

Case Number 03-2376

Case Name:  IN RE:  CONTINENTAL AIRLINES INC. ET AL,
DEBTOR

INFORMAL BRIEF

1. JURISDICTION:  I am appealing primarily the MEMORANDUM ORDER of
the Bankruptcy Court, case No. A. 99-412, and the MEMORANDUM
ORDER of the District Court, on my appeal, case no. C.A. No. 02-484-
SLR, dated march 31, 2003.  I am also appealing the subsequent
MEMORANDUM ORDER dated April April 28, 2003, refusing my motion
for an *en banc* re-hearing.  I filed my notice of appeal to this Court on April
29, 2003.

2. STATEMENT OF THE CASE:  I have been objecting to the motions filed
by the debtors and the LPP Claimants since 1999, when I learned that the
LPP Claimants, before they later became certified by the Bankruptcy Court
as a class, attempted to get that Court to dismiss the claims of all other
pilots.  I pointed out to the Bankruptcy Court that it was in violation of Title
45, U.S.C., specifically the Railway Labor Act, which forbade treating any
member of a Collective Bargaining unit differently from any other, as well
as violating the Bankruptcy Code's requirements to treat members of a
debtor class equally.

That Court proceeded to ignore both this Appeals Court's decision that I
had an individual right to an arbitration under the RLA, and my objections

that until such an arbitration were allowed to resume and it's results were brought back to the Bankruptcy Court, no ruling there could be legally valid.

Despite the evidence cited, and the objections raised, the Bankruptcy Court continued to rule on misdirecting and obfuscating motions by the debtor and the LPP Claimants that did not address the issue of right to arbitration at all.

In my appeal to the District Court, I pointed out that the debtor and the LPP Claimants had misled the Bankruptcy Court with conflicting and inaccurate statements and misleading evidence to serve the ends of the debtors and a very small proportion of the total class of claimants, even to the extent of perjurious statements. At the District Court hearing I verbally told the Court that I had recently become aware of an arbitration procedure that the debtor had participated in, making their assertions in Bankruptcy at the very least a lie by omission, and, therefore, any rulings made subsequent to those assertions should be null and void.

I stated that that arbitration had additionally violated the RLA statutes, as well, and that both Courts had the duty to sanction perpetrators of perjury and fraud in its venue when such came to light.

The District Court completely ignored the above evidence, instead ruling to dismiss my and another appeal, allowing such misdeeds to be rewarded by again turning to another red herring Motion To Dismiss, saying we were moot. I do not believe that being moot on some narrow point of law should prevail over crimes in a court being reported to that court, and,

additionally, the argument it declared moot could have never come up had the proper laws been applied in the proper order in the first place, nor could they have come up had the fraud not been committed.

3. STATEMENT OF FACTS:  The debtors voluntarily participated in an arbitration, *In the matter of the Pilot Seniority Integration Arbitration among Peoples Express Pilot Merger Committee and Continental Pilot Merger Committee and Frontier Pilot Merger Committee and Continental Airlines, Inc,*  Jerome H. Ross, arbitrator (August 13, 1991).  Included in that merger were some pilots who were also listed on the Eastern Airlines, Inc. seniority list, as well as pilots hired excess to Continental's pilot needs, ostensibly to serve as scabs at Eastern in case of a strike there.  (Some did, resulting in their being put on the Eastern seniority list, per RLA rules). During that arbitration, Mr. Ross pointed out the impropriety of such dual seniorities.  The debtor was therefore perfectly aware of such impropriety and its ramifications *vis a vis* the bankruptcy process, and neither it nor the pilots involved raised any objection, allowing the integration process to go forward.

In addition to being conscious party to this violation of the Railway Labor Act, and knowing that an arbitration that was ongoing, but improperly stayed by an order of the Bankruptcy Court, owing to the fact that the Eastern Contract Bargaining Agreement had not been abrogated by section 1113 of Title 11 U.S.C., the debtor pursued a policy of diverting the Bankruptcy Court to spurious issues that would have no validity otherwise.

The Bankruptcy Court, unaware of this deliberate omission, confirmed the debtor's Final Confirmation Plan. Had not myself and several others objected to provisions of that plan, it would have been a *fait accompli* years ago, and would have been an even worse miscarriage of justice than this Settlement Order I am appealing is.

I believe the term for all this is ERROR CORAM NOBIS, and it constitutes a far greater sin than the one I accused the Bankruptcy Court of in my brief to the District Court, which was that that court had erred by simply believing all the statements of the debtor without properly vetting their veracity or completeness. In the District Court I brought up that the Supreme Court, in *Protective Committee v. Anderson,* 390 U.S. 414(1968), made the parties to that bankruptcy go back ten years and start over, merely because the parties and the courts had not done their homework.

In this case, the debtor has consciously and provably lied to the Courts. Additionally, the LPP Claimants have colluded by agreeing with their illegal efforts to reduce the size of the class, attempting to enrich the few of themselves at the expense of all the larger numbers of claimants they are trying to exclude from of a proper settlement, in the hopes of getting a larger share. Such opportunism on the part of the LPP Claimants may rise to the Coram Nobis level, for they are conversant with RLA law, and have actively colluded with the debtor to mislead the Courts by arguing with the debtor that not each and every member of the seniority list has an equal claim, contradictory to both the RLA and the bankruptcy code.

4. Statement of related cases: I filed a joinder appeal of the Bankruptcy Court decision in the supervising District Court, Civil Action No. 02-484-SLR. I do not have any other cases of any type in this or any other court.

5. The District Court incorrectly decided the facts of my case for two basic reasons: The first is because it refused to take the Bankruptcy Court to task for not doing its work properly. Even though I pointed out that the debtor and the LPP Claimants were putting forth questionable figures and arguments misdirecting it from following this Appeals Court ruling that I had a right to arbitration, it dismissed my appeal for a mootness that <u>could not have occurred if I had been allowed my legal right to an arbitration</u>, and the law then properly applied to the results of that arbitration. It had no good reason to block my access to that arbitration, and it knew full well that both the debtor and the LPP Claimants desperately wanted to avoid the potential negative findings of that arbitration, so it turned aside to the misdirecting motions and specious arguments put forth by the debtor to avoid the complications that would result.

The second reason is that by the time of the appeal hearing in the District Court I brought up the newly found <u>proof of fraud</u>, The Ross Arbitration, and in my request for a re-hearing *en banc* brought up another recent, (between the hearing and the order of the District Court), bankruptcy case reaffirming the bankruptcy courts' inability to decide certain RLA matters. The District Court absolutely ignored those facts. I was under the impression that the courts had a duty to investigate and sanction misdeeds

in its venue, immediately and without further outside action, rather than ignore them.

6. Above all, the Bankruptcy Court applied any other laws the debtor or LPP Claimants dragged in, rather than apply first the working of the Railway Labor Act. By doing so, they have allowed the negation of that Act, <u>which was especially enacted by Congress because of precisely the same union-busting actions by the same debtor in an earlier bankruptcy!</u> By allowing the Bankruptcy court to ignore the will of Congress, ignore totally even this Appeals Court's reminder for six-plus years that I had a right to arbitration, the District Court allows a complete violation of the RLA 45 U.S.C. section 151 *et seq.*, which specifically divests federal courts of jurisdiction over "minor disputes" as to the interpretation of collectively bargained agreements. It allows the violation of that law by simply keeping those protected by it from ever getting to it. The District and Bankruptcy Courts "strain at gnats and swallow camels," to quote a relevant passage in the bible, and twist themselves into an unrecognizable shape that in no way resembles the "scales of justice" statues so popular around courthouses. I would like this Court to apply the laws in proper order. First, investigate and punish the wrongdoers who have lied in its lower courts, and I am of the opinion that criminal law should apply, for those responsible knew exactly what they were doing and the lives they've destroyed thereby are incalculable. Second, since fraud in the courts was the foundation of all these rulings, reverse the portion of your order *In re Continental Airlines, Inc.,* 125 F.3d 120, 129 (3rd Cir. 1997) limiting the handling by the

bankruptcy court of any award the arbitrator may rule, and command the RLA laws be immediately followed with no more delay. Third, apply section 1113 of the Bankruptcy code, followed by such other sections as are appropriate in their proper order, since the out-of-order nature of these Title 45/Title11 rulings keeps either Code from being properly applied.

7. I believe that the District Court may have ruled as it did because of a bias toward "getting the job done" rather than straight application of the law and of being fair and just. I believe the founding fathers intended that justice was the soul of American expediency.

8. I respectfully request this honorable Appeals Court to correct the wrongs I have outlined above, although the time is not recoverable, its money value is. Thousands of honest, hardworking families have been irreparably harmed. Some have died penniless, some have committed suicide in despair. The Court should demand reparations from those responsible, and see that distributions are made equally among all the class of claimants, or their estates, strictly according to law, to the extent anything is presently recoverable from the surviving company, against which, as ruled by arbitrator Ross, I am an administrative claimant.

And lastly, but no less important, it is my hope that this Court will act in such a manner as to set an example so that this sort of egregiously immoral behavior will not be able to recur under its aegis again.

_J. Trigg Adams_
J. Trigg Adams

# PROOF OF SERVICE

I certify that on Monday, August 18, 2003, I mailed a copy of this brief and all attachments via first class mail to the following parties at the addresses listed below:

James L. Patton, Jr.
Robert S. Brady, Esq.
Young, Conaway, Stargatt & Taylor
P.O. Box 391
Wilmington, DE 19899

Myles Trailins, Esq.
2 S. Biscayne Blvd, Suite 2930
Miami, FL 33131

Bruce Jameson, Esq.
1310 King St.
Wilmington, DE 19801

And one copy hand delivered to;

Ramon. E. O'Neill

Dated: 8-18-03

By _____
J. Trigg Adams

# Exhibit CC

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Case No. 03-2374
Case No. 03-2375

IN RE: CONTINENTAL AIRLINES INC., ET AL,

Debtor

| | |
|---|---|
| RAMON E. O'NEILL | ] Chapter 11 |
| | } |
| Appellant | } Bankruptcy Case No. 90-932 |
| | } through 90-984 WFW |
| | } |
| V. | } Jointly Administered |
| | } |
| | } . |
| JAMES BALDRIDGE; WILLIAM MANN; | } C.A. No. 02-375 SLR |
| LARRY DUNN; individually and as representative of a | } C.A. No. 02-479  SLR |
| Class of persons similarly situated who are referred to as | } |
| LPP CLAIMANTS | } |
| | } |
| | } |
| Appellees, | } |

## APPELLANTS BRIEF AND APPENDIX

In accordance with the order issued by this Court on July 11, 2003, enclosed are the appellant brief and appendix. This order specifies that my brief and appendix are due on August 20, 2003.

i

# TABLE OF CONTENTS

**PETITION FOR APPEAL AND REVIEW**

Page

TABLE OF AUTHORITIES                                            iii

INTRODUCTION                                                    1

OPINIONS BELOW                                                  3

JURISDICTION                                                    3

STATUTES INVOLVED                                              4

STATEMENT OF FACTS                                            4

    I.    Case Law, Statutes and Related Cases                4

    II.   Continental's Fraud *(Error Coram Nobis)*            11

    III.  Class Misrepresentation                            14

STATEMENT OF CASE

    I.    Background                                        17

    II.   First Bankruptcy Court Decision                    21

    III.  First District court Decision                        22

    IV.  This Court of Appeals Decision                      22

    V.   My Individual Request for Arbitration                24

    VI.  The Second Bankruptcy Court Injunction              24

    VII. The Second District Court Decision                  25

ii

STATEMENT OF ISSUES

|       | Introduction                              | 26 |
| I.    | My Right to Arbitration                   | 26 |
| II.   | Unfairness of the Settlement Agreement    | 29 |
| III.  | Misrepresentation of the Class            | 31 |
| IV.   | The District Court Proceedings            | 32 |

| SUMMARY OF ARGUMENT | 35 |
| ARGUMENT            | 38 |
| CONCLUSION          | 44 |

iii

# TABLE OF AUTHORITIES

*Cases*                                                          Page

*Air Line Pilots Ass'n v E. Airlines,*
  632 F.2d 1321 (5th Circuit 1980)                             41

*Andrews v. Louisville & Nashville R.R.*
  406 U.S. 320 (1972)                                            39

*Bhd. Of locomotive Eng'rs v. Louisville &Nashville R.R.*
  373 U.S. 33 (1963)                                             28, 41

*Brady v. Trans World Airlines, Inc.*
  401 F.2d 87, 102-03 (3d Cir 1968),
  cert. denied, 393 U.S. 1048 (1969)                             8

*Consolidated Rail Corp. v.*
  *Railway Labor Executive Associations*
  491 U.S. at 299 (1989)                                         10, 27, 38, 39, 40

*CSX Transp. Inc. v. Marguar,*
  980 F.2d 359 (6th Cir. 1992)                                 8,

*Eastern Airlines v. ALPA,*
  861 F.2d 1546 (11th Cir. 1988).                              4, 18,

*EF Operating Corp. v. American Bldgs.*
  993 F.2d 1046 (3rd Cir. 1993)                                34

*Elgin, Joliet & E. Ry. V. Burley,*
  325 U.S. 711 (1945)                                            26, 38

*In re Ionosphere Clubs, Inc.,*
  105 B.R. 761 (Bankr. S.D.Y. 1989)                              18, 19

*In re Ionosphere Clubs.,*
  922 F. 2d 984 (2nd Cir. 1990)
  cert. denied, 502 U. S. 808 (1991)                             7, 9, 19

*In re Continental Airlines, Inc.*
  125 F.3d 120 (3rd Cir. 1997)                                 2, 9, 17, 26, 27, 28, 30, 34
                                                                 35, 36, 41, 45

iv

*In re Continental Airlines, Inc.*
  279 F. 3d 226 (3rd Cir. 2002)                                    2, 10, 32, 46


*In the matter of an Arbitration between*
  *Eastern Air Lines, Inc. and Airline Pilots Association,*
  Richard R. Kasher, arbitrator (August 4, 1992)                   27

*In the Matter of the Pilot Seniority Integration Arbitration*
  *among People Express Pilot Merger Committee and*
  *Continental Pilot Merger Committee and Frontier*
  *Pilot Merger Committee and Continental Airlines, Inc ,*
  Jerome H. Ross, arbitrator (August 13, 1991)                     1, 6, 29

*Hawaiian Airlines v. Norris,*
  512 U.S. at 252                                                  38


*Matter of Rosyn Corp.,*
  945 F. 2d 1279, 1281 (3rd Cir. 1991)                             8

**Statutes**

11 U.S.C. 365                                                      4

11 U.S.C. 502 (b) (7)                                              4


11 U.S.C. 1113                                                     4

11 U.S.C. 1129                                                     4

11 U.S.C. 1141(d)                                                  4

28 U.S.C. 158 (d)                                                  3

28 U.S.C. 1291                                                     3

45 U.S.C. 151                                                      4

45 U.S.C. 184                                                      4

Rule 23 F.R.C.P.                                                   41, 42

1

## PETITION FOR APPEAL AND REVIEW

I respectfully petition to review the judgment of the District Court and the Bankruptcy Court in this case. This Appellate Court decided that Continental Airlines, Inc. (Continental) did not reject a collective bargaining agreement that affords me seniority rights under specified circumstances. Disregarding the language contain in the LPP's section 13(a) & (b) and the Court of Appeals for the Fifth Circuit, this Court also decided however, that these seniority rights could be reduced to a dischargeable bankruptcy claim. This is the identical treatment that would have resulted had the collective bargaining agreement been rejected during Continental's bankruptcy proceeding. Accordingly, this Court effectively nullified Bankruptcy Code 1113, 11 U.S.C. 1113, which imposes detailed restriction on the ability of a company in bankruptcy to rid itself of rights under a collective bargaining agreement.

**While this process was been conducted, Continental secretly and deceptively merged certain select Eastern pilots into Continental seniority list, and failed to provide that information to this Court ( Coram Nobis). Those Eastern pilots who were merged into Continental seniority list are now enjoying the full privileges contain in the LPP's of the collective bargaining agreement. This secret and deceptive merger was consummated on August 13, 1991 under the auspices of arbitrator Jerome Ross (Ross arbitration) in accordance with 45 U.S.C. the Railway Labor Act. Pet. App. 151 - 285. Pages 208 and 214**

**Continental during their reorganization plan established a class of creditors which consists of all former Eastern pilots covered under the collective bargaining agreement, known as Class 13. Continental at anytime specified to the courts that**

2

**member of this class had been merged into Continental and their specific performance claims had been honored, therefore treated as an administrative claim. Continental never sought specific relief during the bankruptcy proceedings to treat members of Class 13 differently.**

On January 31, 2002 Continental and three former Eastern pilots (Class Plaintiffs) entered into a settlement agreement (Settlement), which they were not authorized by law to consummate, which deprives me of pursuing my rights to arbitration.

Review is warranted because the question presented raises a recurring issue of paramount importance regarding the effect of non-rejection on continuing rights under the collective bargaining agreement. This Court review is essential to resolving the conflict decisions on *In re Continental Airlines, Inc.* 125 F.3d 120 (3rd Cir. 1997),*In re Continental Airlines, Inc.* 279 F. 3d 226 (3rd Cir. 2002), and the Settlement.

Review is also warranted because Continental contemptuously failed to disclose the Ross arbitration to the bankruptcy court, to the district court, and to this honorable Court, even though Continental's duty was to do so. Continental was willing to deceive all three courts and had cleverly and quietly merged certain select Eastern pilots of its choice, into Continental, disregarding seniority rights, basing its choice on non-union affiliation, but was not willing to equitably, fairly and contractually merge the remaining Eastern pilots because of their affiliation with ALPA. This secret and deceptive merger occurred while Continental was employing the bankruptcy court to help it avoid an open merger or as it requested of the court, any merger at all. Continental is treating members of the same Class differently.

3

## OPINIONS BELOW

The opinion below of this United States Court of Appeals for the Third Circuit in this case is reported at 125 F. 3d 120 and is reprinted at Pet. App 23 - 54 . A later opinion of this United States Court of Appeals for the Third Circuit in this case is reported at 279 F.3d 226 and is reprinted at Pet. App 55 - 64. The decision of the United States District Court for the District of Delaware from which this appeal is taken is unpublished, and is reprinted at Pet. App 65 - 112.  The orders of the United States Bankruptcy Court for the District of Delaware from which this appeal is taken is unpublished, and is reprinted at Pet. App 1-6

## JURISDICTION

A Final Judgment and Order of Dismissal was entered by the Bankruptcy Court on January 31, 2002.  Pet. App.  1 - 6.  A timely appeal was taken from this Order on February 08, 2002. A Order RE: Docket No.118 was issued on May 02, 2002 enjoining me from a commenced arbitration. Pet. App.  7 - 8.  A Memorandum Order of the District Court was entered on March 31, 2003.  Pet. App. 9 - 17.  I requested a petition for rehearing en banc which was denied by Memorandum Order dated April 28, 2003. Pet. App. 18 - 19. A timely appeal was filed on April 28, 2003.  Pet. App. 20 - 22. The Jurisdiction of this Court is invoked under 28 U.S.C. 158 (d) and 1291.

4

## STATUTES INVOLVED

This case involves sections 365, 502 (b) (7), 1113, 1129 and 1141(d) of the

United States Bankruptcy Court, 11 U.S.C. 365, 502, 1113, 1129 and 1141, which are set

forth and reprinted at Pet. App 113 - 139. Also involved are sections 151, 153 and 184

of the Railway Labor Act, 45 U.S.C. 151, 153, and 184. Pet. App 140 - 150.

## STATEMENT OF FACTS

I will attempt to simplify this convoluted case, in doing so those facts that have

not been address previously by this Court will be in bold print. Also I will address the

facts in groups as they relate to the issues of this appeal.

**Case Law, Statutes and Related Cases**

1.      On February 23, 1986, Continental entered into a collective bargaining agreement

("CBA") with the Eastern pilots.

2.      Continental challenges the validity of the agreement and the Eleventh Circuit

Court of Appeals upholds that the CBA is binding on both parties. *Eastern Airlines*

*v. ALPA, 861 F.2d 1546 (11th Cir. 1988).*

3.      The arbitration previously initiated by ALPA then proceeded, with the System

Board of Adjustment ("SBA") addressing a number of preliminary questions regarding

the meaning of the Labor Protective Provisions (" LPPs"). Pet. App.286 -311.

4.      In an opinion authored by the neutral referee, Professor Frank Elkouri, the SBA

construed the CBA to incorporate LPP's that provided the Eastern pilots with a right to

seniority integration upon the occurrence of certain defined events, including a merger.

The SBA also interpreted the LPPs  under the CBA to create a continuing obligation:

[T] he right of pilots to know the general scope of their contractual LPP

5

protection, and to insist that the Company likewise know, and their right to insist that the Company not deny the existence or general scope of the contractual LPP protection, are all continuing rights: each and every day that these rights are denied to the pilots by the Company, their right to protest by grievance arises anew. Pet. App. 292

5.    This Elkouri decision became part of the CBA. It also included Sections 2(a), 3

and 13 of the Allegheny-Mohawk LPP's as cited below.

"Section 2 (a). The term 'merger' as used herein means joint action by two carriers whereby they unify, consolidate, merge or pool in whole or in part their separate airline facilities or any of the operations or services previously performed by them through such separate facilities." Pet. App. 308

"Section3. Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13." Pet. App. 306

"Section 13(a). In the event that any dispute or controversy (except as to matters arising under section 9) arises with respect to the protections provided herein, which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination. **The parties shall select the arbitrator from such panel by alternatively striking names until only one remains, and he shall serve as arbitrator. Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time mutually agreeable to all parties. The salary and expenses of the arbitrator shall be borne equally by the carrier and (i) the organization or organizations representing the employee or employees, or (ii) if unrepresented, the employee or employees or group or groups of employees. The decision of the arbitrator shall be final and biding on the parties.**
**(b). The above condition shall not apply if the parties by mutual agreement determine that an alternative method for dispute settlement or an alternative procedure for selection of an arbitrator is appropriate in their particular dispute. No party shall be excused from complying with the above condition by reason of having suggested an alternative method or procedure, unless and until that alternative method or procedure shall have been agreed to by all the parties. Pet. App. 306 - 307**

6

6.      From May 7, 1990 to August 13, 1991, Continental participates on a secret

merger arbitration which honored the LPP's contain in the EAL CBA. Continental

unilaterally had merged Eastern pilots on Eastern Pilots Master Seniority List into

Continental Pilots Master Seniority List. Continental unilaterally without informing

the bankruptcy court determined the merger between Eastern Airlines and

Continental. Continental unilaterally determined how and where in the Continental

seniority list where the Eastern pilots were to be merged. Continental unilaterally

determined that the claims of the Eastern pilots were post-petition administrative

claims. Continental unilaterally determined that a selected group of Eastern pilots

should be awarded specific performance. Pet. App. 208 and 214

7.      On August 13, 1991 Arbitrator Ross issues an award which reshuffled all

pilots contained within the arbitration, including the selected Eastern pilots. Some

of the Eastern pilots retained the seniority given unilaterally by Continental, other

Eastern pilots were placed to a specific positions on the Continental seniority list.

Non the less all selected Eastern pilots are still merged into Continental. Pet. App.

208 and 214

8.      Nowhere in the bankruptcy process did Continental notify the Bankruptcy

Court that it had unilaterally merged the Eastern pilots into Continental. Nowhere

in the bankruptcy process did Continental notify the Bankruptcy Court that it had

unilaterally determined the seniority integration of the Eastern pilots. Nowhere in

the bankruptcy process did Continental seek relief under 11 U.S.C. 1113 from the

Bankruptcy Court to exclude the remaining Eastern pilots from the arbitration

process. Instead Continental in September of 1993 sought relief from the

7

**Bankruptcy Court as part of the Confirmation Plan to exclude those Eastern pilots**

**which were not unilaterally merged. In doing so Continental violated 11 U.S.C. 1129**

9.    On November 29,1995, the District Court made the following observations and

rulings:

a.    LPP Claimants are composed " of a group of approximately six hundred

former Eastern Airlines Pilots". Pet. App. 66

b.    "The United Court of Appeals for the Second circuit held that Eastern

must submit to arbitration because " [a]pplication of the automatic stay to ALPA's

attempt to invoke [the arbitration] provision of the collective bargaining agreement would

allow Eastern unilaterally to alter the collective bargaining agreement by avoiding its

obligation to arbitrate" *In re Ionosphere Clubs.,* 922 F. 2d 984, 992 ( 2d Cir. 1990) cert.

denied, 502 U. S. 808 (1991)" Pet. App. 68

c.    "If ALPA was not the collective bargaining representative of the LPP

Claimants, then it could not settle the claims of the LPP Claimants. If  ALPA was the

collective bargaining representative of the LPP Claimants, then while ALPA had the

power to settle the claims of the LPP Claimants, the language of the Settlement

Agreement makes clear that ALPA did not settle those claims" Pet. App. 87 F.14

d.    " As an initial matter it must be noted that the Bankruptcy Court did not

hold that ALPA and the LPP Claimants were not entitled to equitable relief. Rather, the

court held that any right to equitable relief could be reduced to money damages as an

alternative to specific performance." Pet. App. 91

8

e.    " If Continental's obligation to integrate seniority lists can be converted

into a monetary liability i.e. damages for the alleged breach of the collective bargaining

agreement rather than specific performance), then it is a "claim". All appropriate

remedies are available to enforce violations of the Railway Labor Act. *CSX Transp. Inc.*

*v. Marguar*, 980 F.2d 359, 365 (6th Cir. 1992). Indeed money damages for violations of

the Railway Labor Act were regarded as a proper judicial remedy prior to the remedy of

reinstatement. See *Brady v. Trans World Airlines, Inc.* 401 F.2d 87, 102-03 (3d Cir

1968), cert. denied, 393 u.s. 1048 (1969). While this case involves not so much a

violation of the Railway Labor Act as a breach of a collective bargaining agreement

under the Railway Labor Act, a monetary remedy is not precluded." Pet. App. 96

f.    " Law of the case provides that when a court decides a rule of law, that

rule governs the remainder of the litigation. *Matter of Rosyn Corp.*, 945 F. 2d 1279, 1281

(3rd Cir. 1991) Pet. App. 98

g.    "To the extent that Continental seeks to abrogate its responsibilities under

the collective bargaining agreement, it must do so in accordance with the procedures of

the Bankruptcy Code, specifically 1113.

Continental argues, however, that even if 1113 do apply to the current

controversy (and it does), 1113 cannot be interpreted as a partially implied repeal of the

"provisions of the Code empowering a bankruptcy court to rule on the status of the claims

against the debtor" Continental's argument is not accepted. To the extent that provisions

of the Bankruptcy Code conflict with 1113, the plain language of 1113 controls:

No provision of this title shall be construed to permit a trustee to
unilaterally terminate or alter any provisions of a collective bargaining

9

<u>agreement prior to compliance with the provisions of this section.</u> "Vol. II Pet. App (39 and 40)

h.      "*In re Ionosphere, Inc.,* 922 F. 2d 984 (2d Cir. 1990) is instructive. That

case involves the same LPPs at issue in the present case. The Second Circuit found that

> adjudication of this dispute in the bankruptcy court would nullify effectively the arbitration clause in the collective bargaining agreement and would substitute the court's judgement for that of the arbitrator.

The collective bargaining agreement expressly provides for arbitration as the

method of dispute resolution. *Id* at 992. The bankruptcy court does have jurisdiction to

decide the merits of the LPP claims. *See 28 U.S.C. 157.* Yet, exercise of the jurisdiction

would abrogate the provision of the collective bargaining agreement that mandate

arbitration." Pet. App105 & 106

i.      "There is no need to remand this matter to the bankruptcy court because (1) the

injunction is invalid under Fed.R. Civ.P. 65 (d) and is here by vacated and (2) the

bankruptcy court may not, in light of 1113, enjoin the arbitration even is a new injunction

met the requirements of Fed.R. Civ.P. 65 (d)". Pet. App 105 & 106

10.     On August 29, 1997 this honorable Court reaffirmed the District Court opinions

and observations *In re Continental Airlines, Inc.* 125 F.3d 120 (3rd Cir. 1997). This

Court added the following observations:

a.      "Two groups of former Eastern pilots, the LPP Claimants and the Group

of 31 seek to enforce constitute "claims" within the meaning of the bankruptcy code and

thus are satisfiable, in the alternative, by a monetary award:" Pet. App. 25

10

b.    "Continental contends that the notice of appeal did not specify those

members who did not waive their claims and who are appealing from the district court's

order. We reject this argument, and conclude that the LPP Claimants of appeal

adequately identifies the appellants." Pet. App 34

c.    "When ALPA settled its claims with Continental, both Continental and

ALPA, via the settlement agreement granted the LPP Claimants the opportunity to

participate in the settlement. Continental was well aware of the **individuals** who elected

to exercise this option. The settlement agreement specifically required those pilots

electing to participate in the settlement to execute one of two forms indicating to

participate in the settlement and to return the form to Continental. Thus, the group of

LPP Claimants dwindled to an identifiable, discrete entity made up of those **individual**

pilots who chose not to participate in the settlement." Pet. App. 35 & 36

d.    "Accordingly, the issue of standing is subject to the exclusive jurisdiction

of the arbitrator, and the district court properly concluded that its role relating to this

issue was to protect the jurisdiction of the arbitration board. *Consolidated Rail* 491 U.S.

at 304." Pet. App. 37

e.    "Continental failure to reject the collective bargaining agreement

consistent with the mandate of section 1113 of the Code renders the injunction invalid."

Pet. App. 50

11.    On January 25, 2002 this honorable Court reaffirmed itself, *In re Continental*

*Airlines, Inc.* 279 F. 3d 226 (3rd Cir. 2002), and it added the following observations:

11

a.    "All claims for seniority relief must be based on the Agreement; Appellants make a claim for seniority relief; therefore, Appellants claims for seniority relief are based on the Agreement." Pet. App. 59

b.    "The doctrine of the law of the case is similar in that it limits relitigation of an issue once it has been decided. However, this doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing legal precept in later stages. 18 JAMES WM. MOORRE ET AL., MOORE'S FEDERAL PRACTICE P 134.20 (3d ed.1999) . The Court has defined the law of legal question may be raised in the trial court after the case has been remanded to that court for further proceedings. (2) an appellate court may rule on a matter and then the same legal question may be raised in the same appellate court when the case is appealed the second time. (3) The appeal before us fits squarely the second situation identified by Professor Vestal." Pet. App. 63

12.    This honorable Court is now faced with two new issues; (1) Continental's deliberate omission to the courts regarding the merger of Eastern pilots into Continental (coram nobis) (2) Continental's decision to merge Eastern pilots into Continental established how our claims would be handled. Pet. App.

**Continental's Fraud *Coram Nobis***

13.    Since September 1983, Continental's (CAL) first bankruptcy, Continental used the bankruptcy court as its greatest weapon, embarked upon the biggest union busting

12

operation in the history of labor. During the first bankruptcy Continental abrogated all of

its collective bargaining agreements. This led to the Bankruptcy Reform Act of 1984.

14.     During the period of January 1984 to December 1986, Continental embarked in

the acquisition and/or formation of the following airlines; New York Air, People Express

Airlines, Frontier Airlines and Eastern Airlines.  New York Air, People Express Airlines,

Frontier Airlines and Continental were non-union affiliated airlines, while the pilots of

Eastern Airlines were represented by the Airline Pilots Association (ALPA).

15.     Starting in the summer of 1986, Continental started hiring and transferring pilots

for Eastern Airlines. These pilots became Eastern pilots represented by ALPA under the

collective bargaining agreement with Eastern Airlines. The Ross arbitration in its analysis

states: " **Because the CAL pilots hired after April 1987 were hired for the benefit of**

**Eastern and not Continental, it would be unfair to place them ahead of the FMRs.**"

The Ross arbitration also points out **"In this regard, it would be particularly**

**inequitable to elevate the pilots hired after April 1987 as potential strike**

**replacements for Eastern, as they were surplus to Continental's operational needs."**

Continental refused to informed arbitrator Ross that the afore mention pilots were Eastern

pilots whose names appear in the Eastern Airlines Master Seniority List. This information

was also withheld from the courts. Pet. App. 208 and 214

16.     In light of the arbitration in progress under arbitrator Kasher (Kasher arbitration),

Continental unilaterally merged those Eastern pilots which were strike replacements and

had non-union affiliation into Continental's seniority list. The purpose was to protect

them because once the merger was concluded these pilots would have been furloughed

due to their seniority position in the Eastern seniority list.

13

17.    A typical example is the merger of Mr. Robert Benson from the Eastern

seniority list to Continental seniority list. Mr. Benson as reflected on Eastern

seniority list was hired on March 6, 1989, seniority number 3698, employee number

77810 and was a Captain on the DC-9. Pet. App. 328. After the Eastern shutdown on

January 18, 1991, Mr. Benson was merged into Continental with full LPP rights. In

order for Mr. Benson to retain the Captain seat at Continental he was merged as a

pilot hired at Continental on August 24, 1981. Mr Benson shows in the Continental

seniority list with seniority number 690, employee ID 26817 and a Captain on the

MD-80 which is the newer version of the DC-9. Pet. App. 329


18.    Before the acquisition of Eastern Airlines, Continental's main objective was

to not have the presence of any union, in their property. Eastern pilots became a

threat to Continental's main objective. Continental's union busting techniques

toward the Eastern pilots was personified by Mr. Frank Lorenzo in a meeting he

had with the Continental pilots on December 2, 1986. Many internal memos

followed, promoting a philosophy which did not include union representationrfor

employees, some of these memos are included in this appeal. They are dated

09/11/87, 05/07/93, 05/11/93, 05/17/93 and 05/26/93.  Pet. App. 330 - 339

19.    During the period of December 03, 1990 till present, Continental has lied to

the courts regarding the economic devastation and morale problems, the merger of

Eastern pilots into Continental would create. The Ross arbitration specifically

addresses the morale problems created by Continental, specifically when

Continental, wanted to continue its union busting tactics and was merging pilots

14

into its seniority list at will. Pet. App. 214 – 217. Continental has also failed to inform the courts the amount of inexperience pilots it hired from January 18, 1991 to present. The training of an experienced former Eastern pilot is considerably cheaper than the training of an inexperience pilot from the streets. It was and is all about union busting.

**Class Misrepresentation**

20.     All the LPP Claimants are members of an organization founded on January 1991, registered in the state of Florida as "Eastern Pilots for Fairness" (EPFF). As one of the original founders of EPFF,  the main objective of the organization was to raise monies collectively, but preserve our individual rights. In a mailing sent to the members on January 27, 1992 and endorsed by Mr. Jim Baldridge (name class plaintiff),it states

> **" 1.     Stress the fact that our legal effort is not a class action suit. Only those pilots contributing financially to EPFF are represented."** Pet. App. 343

21.     In accordance to EPFF philosophy of individual rights, we the members of EPFF filed individual claims in the bankruptcy court. Each claim was then assigned an individual creditor number, each claim was totally different from any other. I personally prepared this mailing and claim form. Pet. App. 348 - 350

22.     As time passed and litigation continued, EPFF became more structured and board members were elected. On August 28, 1997 the EPFF news letter mailing, Larry Dunn, Bill Mann and Jim Baldridge (name class plaintiffs) as officers elected by the EPFF membership, reassured the membership that **"EPFF was formed to provide a means of representing our member's individual interests"** Pet. App. 351

15

23.    On the April 1998 mailing we are led to believe that **"The Section 13 LPP Arbitration is finally underway"** Pet. App. 354 - 365

24.    The same mailing addressed my individuality as a LPP Claimant. **"Our lawyers will file a list of individual LPP Claimants who will be represented in the National Mediation Board. If you are not current in your $3900 dues by May 31, 1998 , your name will not be on the list of individual LPP Claimants who are proceeding before the National Mediation Board."** Pet. App. 364

25.    On or about September 20, 1999 Myles Tralins (Class Counsel) received a letter from Continental in regards to a settlement proposal . The settlement proposal stipulated:

"However, in order to avoid what could be years longer litigation and to finally resolve these long-pending claims, Continental would propose the following settlement terms:

(1) If , as a result of the declaratory action we understand you will bring, on behalf of all eligible EAL pilots, a final declaratory ruling is issued that the LPP claims are subject to a limitation of one year's back pay pursuant to Bankruptcy Code Section 502(b)(7), the bankruptcy estate will grant each former Eastern pilot an unresolved LPP claim **(list to be agreed to by the parties)** an agreed claim in the face amount of $110,000.00;

(2) The claims will be paid as are all general unsecured prepetition Class 13 claims under the Reorganization Plan confirmed on April 27, 1993;

(3) Because this settlement provides a face value claim greater than the one-year 502(b)(7) limitation, settling former Eastern pilots with unresolved LPP claims must agree to sign a general release releasing the bankruptcy estate and Continental and all affiliates or related parties from any claims arising out of alleged Eastern merger. Pet. App. 366 - 367

16

26.    I personally notified Mr. Tralins that I was going to retain my individual rights to arbitration and was not going to participate in the settlement. The $110,000.00 in bankruptcy dollars which Continental was offering was below the amount I had personally spent in the litigation. I started EPFF in pursue of an arbitration, Mr. Tralins was hired to pursue an arbitration.

27.    In light that many of members were not willing to settle under the terms of the letter, Mr. Tralins and the three EPFF leaders / named plaintiffs proceeded to secretly to certify a Class using our monies, and hand us over to Continental in a silver platter. In return Continental agreed to compensate them with extra monies and has compensated them at this time.

28.    Continental again manipulated the law and now the lawyer we had hired. Mr. Tralins inadequacies of not pursuing the arbitration has caused me irreparable harm. If the arbitration would have been pursued as published and promised, Mr. Tralins would have found out that Continental had merged Eastern pilots into Continental seniority list, the very act which established (1) that the merger occurred; (2) where in the Continental seniority list would the Eastern pilots be placed: and (3) how the claims are being treated. By now Mr. Tralins must have figured out why Continental wanted a **list to be agreed to by the parties. Continental wanted to make sure the names of the Eastern pilots already merged at Continental would not be part of the settlement agreement and the secret merger disclosed**.

29.    The Class certification includes all Eastern pilots covered by the CBA. Mr Tralins and Continental agreed to exclude 1059 pilots. It just happens that the Eastern pilots names  merged at Continental are within the 1059 names missing from the settlement.

17

30.    Pursuant to Mr. Tralins and Mr. Mann verbal assurance that the settlement agreement would not impair me to pursue the arbitration, I filed and was recognized to be in arbitration by the National Mediation Board on January 29, 2002. Pet. App. 149. On January 31, 2002 the Bankruptcy Court, through an order rendered approving the Settlement, again enjoined me from pursuing my rights as granted by this Court on August 29, 1997 *In re Continental Airlines, Inc.* 125 F.3d 120 (3rd Cir. 1997). Pet. App. 23 - 54

31.    On January 31, 2002 three very important issues were discussed during the bankruptcy court proceedings; (1) that even though Continental, initially lied regarding the merging of Eastern pilots into Continental when confronted with the Ross arbitration, Continental admitted that these pilots were merged and they were merged during the bankruptcy court proceedings and did not notify the bankruptcy court of their actions; (2) that the Eastern pilots merged into Continental claims were being treated differently than other Eastern pilots within the same Class. Those pilots were getting 100 cents on the dollar due to the specific performance award, while Continental wanted to pay me and other Eastern pilots pennies on the dollar; and (3) that the claim under 502(b) (7) should be handle under the provisions of the unrejected CBA. Pet. App. 368 - 437

## STATEMENT OF THE CASE

For over forty-years, **Eastern Air Lines, Inc. and The Air Line Pilots in the service of Eastern Air Lines, Inc. as represented by The Air Line Pilots Association, International** were parties to successive collective bargaining agreements governed by

18

the Railway Labor Act ("RLA"), 45 U.S.C. at 151 et seq. *In re Ionosphere Clubs, Inc.,*
105 B.R. 761,762 (Bankr. S.D.N.Y. 1989) . Eastern was an air carrier subject to the RLA.
The collective bargaining agreement was between Eastern's individual pilots represented
collectively by ALPA. ALPA is an unincorporated labor organization that was the
authorized collective bargaining representative under the RLA for the pilots employed by
Eastern.

   In February 1986, after intense negotiations, Eastern and ALPA entered into a
collective bargaining agreement (the "Agreement") that included Labor Protective
Provisions ("LPPs"). Under these LPPs, Eastern pilots secured protection of their
seniority rights in the event of a merger, between Eastern and another airline carrier by
requiring the integration of Eastern's seniority list with the merging carrier's pilot
seniority list. Less than twenty-four hours after the parties entered into the agreement,
Continental Airlines, Inc. (Continental), acquired Eastern.

   Mr Larry Schulte, as an individual filed a grievance in 1986, known as grievance
01-86 which was later converted to an *et al.* grievance because it affected each pilot
individually. This grievance was represented by ALPA, subsequently concluding that
Eastern and Continental had  LPPs as part of their Agreement.

   ALPA subsequently concluded that Continental and Eastern had effectively
merged, as defined by the LPPs. When Eastern disagreed with its conclusion, ALPA
initiated arbitration before the System Board of Adjustments ("SBA") the arbitral panel
responsible under the RLA. For adjudicating disputes under the Agreement. *Eastern Air
Lines, Inc. v ALPA*, 861 F.2d 1546, 1549 (11 th Cir. 1988). In response, Eastern sought a
declaratory judgment that there was no collective bargaining agreement between the

19

parties, on the grounds, *inter alia,* that the parties disagreed about the meaning of several provisions of the purported Agreement, including the LPPs. The Court of Appeal for the Eleventh Circuit ultimately ruled in ALPA's favor, holding that a collective bargaining agreement was in effect, and that the parties were obligated to arbitrate their disputes regarding the meaning of the ambiguous provisions. *Id* at 1550, 1555:

Grievance 01-86 was then allowed to proceed, with the SBA addressing a number of preliminary questions regarding the meaning of the LPPs. In an opinion authored by neutral referee, Professore Frank Elkouri, the SBA construed the Agreement to incorporate LPPs that provided the Eastern pilots with a right to seniority integration, upon the occurrence of certain defined events, including a merger. The SBA also interpreted the LPPs under the Agreement to create a continuing obligation:

> [T]he right of pilots to know the general scope of their contractual LPP protection, and their right to insist that the Company likewise know, and their right to insist that the Company not deny the existence or general scope of the contractual LPP protection, are all continuing rights: ***each and every day that these rights are denied to the pilots by the Company, their right to protest by grievance arises anew.***

The SBA gave me my individual right to pursue my grievance on a daily basis.

Whether a merger had in fact occurred was not before the SBA, and before the parties could proceed to that step, Eastern and its affiliates filed for bankruptcy in the Southern District of New York. *See In re Ionosphere Clubs, Inc.* 105 B.R. at 763. Citing the automatic stay in section 362 of the Bankruptcy Code. Eastern refused to submit to further arbitration, and the Bankruptcy Court denied ALPA's request for relief from the stay *Id.* at 765. On appeal, the District Court reversed, *In re Ionosphere Clubs, Inc.* 114 B.R. at 381 and the Court of Appeals for the Second Circuit affirmed, 922 F.2d 984 (2d Cir. 1990), holding that the application of the automatic stay to allow Eastern to avoid its

20

obligation to arbitrate the LPP dispute was impermissible in the absence of the debtor's

compliance with the requirements of section 1113 of the Bankruptcy Code.

During the afore mentioned period, to be more specific, on December 23, 1987

the Hon. Barrington D. Parker issued a Memorandum Order. Pet. App. 459 – 463.

The video tape which this order refers to established  Continental's not willing to merge

Eastern pilots into Continental seniority list because of the Eastern pilots union

affiliation.

In April 1991, ALPA and Eastern proceeded to arbitrate before arbitrator Richard

Kasher. Continental was invited to participate, but by this time,  Continental had filed

for bankruptcy. Despite the earlier Second Circuit decision in Eastern's bankruptcy,

Continental refused to arbitrate, repeating Eastern's argument that the arbitration was

stayed under section 362 of the Bankruptcy Code.

**In August 1991, Continental participated in an LPP arbitration with the**

**former People Express, New York Air, Frontier and selected Eastern pilots, known**

**as the Ross arbitration. One of these pilots commonality was that the underlying**

**transaction of the purchase in its entirety of their respective airlines by Continental.**

**The other commonality of the pilots which belong to other airlines besides Eastern,**

**was that they were non-union members and/or strikebreakers. All  these pilots**

**seniority list were merge in its entirety, with the exemption of the selected Eastern**

**pilots. These selected Eastern pilots were hired by Eastern to become strike**

**breakers which they did in 1989. As their reward Continental honored the LPPs**

**contained in the Eastern Agreement. The LPPs of each pilot group was respected**

**including the selected Eastern pilots. The Eastern pilots in this arbitration were not**

**represented by a labor organization or attorneys. The arbitrator respected these pilots individual rights within the LPPs contained in the Eastern Collective Bargaining Agreement. The arbitration reflects that Continental was only willing to merge non unionize pilots. Continental has just pulled the biggest fraud not only in bankruptcy process but also within the RLA. This was kept secret till January 2002.**

In September 1991 I filed as an individual, a protective proof of claim in the Continental's bankruptcy, based on my individual right to seniority integration, becoming creditor # 6202. ALPA also filed protective proof of claim in Continental's bankruptcy based on its members right to seniority integration. My claim sought specific performance of Continental's obligation till retirement date 04/30/2015, totaling $2,997.440.00.

In August 1992, Arbitrator Kasher, ruled that he had jurisdiction over the LPP's dispute and could render a determination of the appropriate remedies: relying on the Second Circuit's decision in Eastern's bankruptcy, he rejected Continental's suggestion that the arbitration was barred by the automatic stay. He schedule hearings on the merits of the LPPs dispute to commence in February of 1993.

Starting on May 07, 1993, Continental sends interoffice memorandum to the Continental pilots discouraging the pilots to participate in any labor organizing efforts using the Eastern pilots as an example of what might happen to them if ALPA was brought on the property as their collective bargaining agent. Pet. App. pages 330 - 339.

### The First Bankruptcy Court Decision

In April of 1993, not withstanding arbitrator Kasher's August 1992 ruling ( and

22

the decision of the Court of Appeals for the Second Circuit in the Eastern bankruptcy

case), the Continental Bankruptcy Court ruled that the Kasher arbitration was prohibited

by the automatic stay. The court also incorporated by reference ruling from February

1993, that the equitable remedy of seniority integration was a "claim' within the meaning

of the Bankruptcy Code,  and could be satisfied by monetary awards in lieu of specific

performance, and that this claim was not entitled to administrative expense treatment.


### *The First District Court Decision*

After appealing the Bankruptcy Court's orders to the District Court, ALPA settled

with Continental, but the individual claimants known as the LLP Claimants, listed

individually, continued the appeal. On that appeal, the District Court made several

rulings. It dismissed as moot the pilots' appeal from that portion of the Bankruptcy

Court's decision denying administrative expense status to the Claims, and it affirmed the

Bankruptcy Court's ruling that the Claims for equitable relief could be converted to

money damages. However, it also vacated the injunction against the arbitration on the

grounds that the Bankruptcy Court lacked jurisdiction to issue it.

The District Court made these rulings ignorant to the facts that members of the

class claimants had been merged into Continental seniority list with a full specific

performance award.


### *This Court of Appeals Decision ( In re Continental Airlines, Inc. 125 F.3d 120)*

Continental, the LPP Claimants listed individually and the Eastern Pilots Merger

23

Committee ("EPMC") listed individually, appealed to the Court of Appeals for the Third

Circuit. The Court of Appeals affirmed (Continental I).

In this Court of Appeals analyzes the court writes:

> Consistent with federal courts' role relating to minor disputes i.e. to protect the jurisdiction of the arbitration board, federal courts cannot inquire into the merits of an underlying dispute except to the extent necessary to determine its proper characterization as minor or major *Chicago & Northwestern Transp.*, 829 F.2d at 1428. Nor may the courts decide what remedy is appropriate if the agreement is interpreted to require recovery of remedy *General Com of Adj., United Transp. Union v. CSX R.R.* 893 f.2D 584, 592-593 (3RD Cir. 1990). Thus, the district court properly concluded that it could not consider the merits of Continental's argument that the Claimants did not have standing under the LPPs. As the Claimants' right to prosecute their claims for seniority integration have not been established under the LPPs, we find that their individual rights did not survive ALPA's settlement of the LPP dispute.

This Court was not aware that the 1991 Ross arbitration had established

individual rights within the LPP dispute and the claimants had a standing under LPP

arbitration. Continental's deception lead this Court to write the following:

> Moreover, we are convinced that the particular circumstances of this case might make the enforcement of the equitable remedy of seniority integration impractical such that an alternative money damage award would be appropriate. The seniority integration sought by the LPP Claimants and the Group 31 could potentially result in the displacement of many Continental pilots. Such displacement has the potential to create an environment rife with hostility and low employee morale, not to mention a detrimental effect on employer-employee relations. The circumstances indicate that seniority integration would not be feasible remedy and that an alternative remedy of monetary damages would be appropriate. Therefore, we conclude that the right to seniority integration gives rise to a "right of payment" such that the remedy constitute a "claim" dischargeable in bankruptcy.

This Court arrived to this conclusion without the knowledge of the contents

contained in the narration of the 1991 Ross arbitration. The arbitration goes into specifics

about the morale troubles, training costs and deception from Continental's management.

Continental led the courts to believe, specifically this Court to believe, was not true.

This Court also establishes a definite boundary in jurisdiction. The LPP claim

24

jurisdiction belongs exclusively to an arbitration tribunal and the award is subject for

review by the courts. This is reflected in this Court statement:

> **We take care to note the boundaries of our holding. It is not our purpose to suggest the award the arbitrator should grant, if an award is warranted upon disposition of the LPP dispute. Our holding is limited to how the claims should be treated in bankruptcy. Simply put, we hold that any claim based on an award of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment. As such, the right to seniority integration is satisfiable by the payment of money damages.**

This Court was ignorant of the fact that the LPP dispute had been heard by an

arbitrator and the award of seniority integration had giving Eastern pilots full

compensation and seniority rights.


### *My Individual Request for Arbitration*

On January 14, 2002 I obtained a copy of the Ross arbitration. Upon learning its

contents I immediately started to pursue my individual right to arbitrate with the National

Mediation Board as this Court awarded me in August 1997.  On January 29, 2002, the

National Mediation Board recognized my individual right and accepted my application

for arbitration. Pet. App page 149.


### *The Second  Bankruptcy Court Injunction*

On January 31, 2002 , not abiding to the August 1997 Court of Appeals decision

the  Bankruptcy Court issue a Final Judgment and Order of Dismissal prohibiting all

members of the class and anyone claiming through any of them was forever barred and

enjoined from commencing, instituting or prosecuting any action or other proceeding in

any court of law or equity, arbitration tribunal or administrative or other forum directly,

25

representatively or derivatively against any of the Released Parties as to any of the

Settled Claims.

The order also states

**" If this Final Judgment is reversed, vacated or modified, this Final Judgment shall be rendered null and void and vacated *nunc pro tunc,*, the Settlement shall be deemed terminated pursuant to the terms of the Settlement Agreement and the parties shall be deemed to have reverted to their respective status and position as provided in Article VIII of the Settlement Agreement."**

### *The Second District Court Decision*

`On March 31, 2003 the District Court grants motion to dismiss my appeal on the

ground of mootnes. By the District Court not addressing the merits of the appeal it

became part of Continental's fraud. The District Court relied entirely on false statements

brought forward by Apellees on motions to dismissed. The first motion was a dismissal

of my appeal for untimely filing of the notice of appeal. After proven wrong, the Apellees

withdraw the motion, but never addressed the issues on appeal. Instead the District Court

allowed the Apellees to file a motion after motion for the sole purpose to dismiss the

appeal without replying to the appeal. I was held to the stringent deadlines as establish by

rules 8000's while the Apellees with untrue statements convince the District Court to

dismiss the appeal without addressing the merits. The District Court was made

aware by members of the class who took the settlement agreement. that Continental has

no intend to distribute any monies, by which Continental has unilaterally modified the

Settlement agreement, nullifying such agreement. The District Court is also aware that I

have not receive any monies definitely making my position attainable.

26

## STATEMENT OF ISSUES

On January 29, 2002 I had commenced the arbitration process under 45 U.S.C.. The National Mediation Board docketed and recognized my individual right to arbitrate and admitted my application for arbitration. Pet. App. at page 149.

On January 31, 2002 the Bankruptcy Court again overstepped its boundaries, permitting a Settlement Agreement and issuing Final Judgment and Order of Dismissal in non compliance with this Court's ruling *In re Continental Airlines, Inc.* 125 F.3d 120 (3d Cir.1997) and the statutes of the Railway Labor Act ("RLA").

On March 31, 2003 the District Court Memorandum Order refused to address the merits of the Appeal.


**I.    My right to arbitration**

1.    In February 1986 the parent of Continental Airlines ("Continental") bought controlling interest in Eastern Airlines. The Eastern Pilots Collective Bargaining Agreement ("CBA"), binding upon Continental, has been an issue of this Court on two separate occasions. I'm not asking for a re-trial, but for this Court to uphold it's previous decision of August 1997 *In re Continental Airlines, Inc.* 125 F.3d 120 and protect the arbitration mechanism established by the CBA pursuant to the RLA.


2.    The RLA statutes mandate that carriers and employee representatives establish a "board of adjustment" to arbitrate such disputes 45 U.S.C. 184. The Supreme Court termed such disputes "minor disputes" *Elgin,* 325 U.S. at 723("minor disputes" relate, *inter alia,* "to the meaning or proper application of a particular provision with reference

27

to a specific situation")

3.      A core holding of *Conrail,* 491 U.S. at 307, was that the burden on the party

seeking to invoke adjustment board jurisdiction is "light." If the party "asserts a

contractual right to take the contested action, the ensuing dispute is minor if the action is

arguably justified by the terms of the parties collective bargaining agreement".

4.      RLA subsections 3, First (p) and (q) permit federal courts to set aside adjustment

board decisions on only three bases: (1) failure of the Adjustment Board to comply with

the requirements of the RLA; (2) failure of the Adjustment Board to conform or confine

itself to matters within the scope of its jurisdiction; or (3)fraud or corruption. 45 U.S.C.

153 first (p) & (q).

5.      *In the matter of an Arbitration* Between Eastern Air Lines, Inc. and Airline Pilots

Association, Richard R. Kasher, arbitrator (August 4, 1992). ("Kasher arbitration")

Arbitrator Kasher as he declares jurisdiction he quotes on page 6:

>       "Under the grievance procedure established in accordance with of the RLA, 45
>
>       U.S.C. 184, the System Board has jurisdiction over disputes " growing out of the
>
>       interpretation or application" of a collective bargaining agreement. Eastern v.
>
>       ALPA, 670 F. Supp. 947, 953 (S.D. Fla. 1987)"

6.      This honorable Court *In re Continental Airlines, Inc.* 125 F.3d 120 (3d Cir. 1997)

unequivocally stated that Continental did not reject the collective Bargaining

agreement which preserves my right to pursue arbitration. Quoting this honorable Court,

"The reality is that the Agreement has never been rejected."

28

7.    This honorable Court has mandated that the merits of these claims be

decided by the Arbitrator. *In re Continental Airlines, Inc.* 125 F.3d at 130.  This

Court held that, "individual pilots' standing to prosecute claims for seniority

integration is an <u>issue subject to the exclusive jurisdiction of the arbitrator."</u>

8.    This Court *In re Continental Airlines, Inc.* 125 F.3d 120 (3d Cir. 1997)

states:

"Accordingly, we conclude that Continental is bound by its prior representations that it
has a duty to arbitrate the LPP dispute".

9.    The certification of a class under Rule 23 of the Federal Rule of Civil Procedure

cannot be used to circumvent the remedial powers of an adjustment board through

methods of review outside the RLA. This same issue was addressed by this Court when

Continental tried to dismiss me as a non participant of the ALPA/Continental settlement.

*In re Bhd. Of locomotive Eng'rs v. Louisville & Nasville R.R.* 373 U.S. 33, (1963) BLE").

In BLE The Supreme Court based its holding on the principle that "the process of

decision through the Adjustment Board cannot be challenged collaterally by methods of

review not provided for the statute."

10.    Section 13 (b) of the Eastern collective bargained LPP's state as follows:

13(b). The above condition shall not apply if the parties by mutual agreement
determine that an alternative method for dispute settlement or an alternative
procedure for selection of an arbitrator is appropriate in their particular dispute.
No party shall be excused from complying with the above condition by reason of
having suggested an alternative method or procedure, unless and until that
alternative method or procedure shall have been agreed to by all the parties.

Myself and many other Eastern pilots have not agreed to this Settlement Agreement as an

alternative method of settling the LPP dispute. This honorable Court has determined that

29

the Eastern CBA is an unrejected CBA, therefore this Settlement Agreement violates my rights contained in the CBA.

## II    Unfairness of the settlement agreement

11.    During the period of January 19, 1991 and August 13, 1991, Continental, in light of a pending arbitration which would have merged Eastern Pilots on the Eastern Master Seniority List into the Continental Seniority list, conducted a secret merger of certain "select" Eastern pilots into Continental.

12.    During an arbitration conducted under 45 U.S.C. *In the Matter of the Pilot Seniority Integration Arbitration among People Express Pilot Merger Committee and Continental Pilot Merger Committee and Frontier Pilot Merger Committee and Continental Airlines, Inc* , Jerome H. Ross, arbitrator (August 13, 1991) ("Ross Arbitration"), page 64, Arbitrator Ross picks up on the Eastern pilots secretly merged at Continental . Pet. App. 208 and 214. "In this regard, it would be particularly inequitable to elevate the CAL pilots hired after April 1987 as potential strike replacements for Eastern, as they were surplus to Continental's operational needs."

Some of these pilots were on the Eastern System Seniority list, and protected as such by the RLA and bound by its rules, a fact which I have pointed out in both bankruptcy and district courts in this case, and which they have pointedly ignored.

13.    Continental was protecting these Eastern pilots who conducted strike-breaking activities, because, in light of the pending Kasher Arbitration, these pilots, being junior in the Eastern seniority list would have been out on furlough.

14.    These pilots are still enjoying the privileges of the Labor Protection Provisions,

30

("LPPs"), as contained in the Eastern CBA, by having been merged with seniority, into the Continental pilots seniority list.

15.    This Court *In re Continental Airlines, Inc.* 125 F.3d 120 (3d Cir. 1997) addressed the issue of equitable relief. The determination of this Court was based on the presumption that no Eastern pilot was awarded specific performance. Irrefutable evidence in the Ross arbitration proves this was not the case. Neither the Bankruptcy nor the District Courts made any reference to this evidence or the arguments based on it, in their rulings. Continental was under the obligation of the Bankruptcy Code to reveal such acts, specifically during the Confirmation Plan Hearing. 11 U.S.C. 1129 (3) "The plan has been proposed in good faith and not by any means forbidden by law." There was a violation of the RLA of which both Continental and their attorneys were aware. Continental also portrayed a very different picture to this Court by not disclosing the merger of those "select" Eastern pilots. Continental thereby circumvented both the RLA and the Bankruptcy Court, committing fraud by omission.

16.    Continental established a class of creditors in the Bankruptcy Court as the "LPP Claim class group in Class 13. "The Air Line Pilots Association and over 2000 individual pilots formerly employed by EAL have filed claims ( collectively the "LPP Claims") purportedly arising out of Continental's breach of certain labor protective provisions ("LPPs") contained in a February 23, 1986 collective bargaining agreement between ALPA and EAL."

17.    This settlement agreement is prohibiting me from pursuing my right to an equitable remedy to that the other Eastern pilots merged at Continental and members of the same class of creditors have enjoyed for the past thirteen years.

31

### III.    Misrepresentation of the Class

18.    As stated in #15 *id* above, the class of creditors is defined as all pilots represented

by the unrejected CBA.

19.    The Settlement Agreement which violates the statutes of the RLA, includes

all persons who:

    a.  "Are Eastern Airline former flight deck employees identified on the Eastern
        Airlines November 1990 Alphabetical Seniority List.

    b.  Who claim they are entitled to the benefits of the collective bargaining
        agreement between Eastern Air Lines and the Air Line Association in effect
        at the time that Eastern Airlines allegedly merged with Continental Airlines
        Holdings, Inc.

    c.  Who filed a timely claim in the above entitled reorganization of Continental
        Airlines, Inc., case no. 90-932 for enforcement of the Labor Protective
        Privileges embodied in the Eastern Airlines Collective Bargaining Agreement
        either individually or as a member of the Air Line Pilots Association or as a
        named Labor protective provision Claimant represented by class counsel in
        the reorganization and who are identified on exhibit A attached to this
        notice;"

This includes all pilots covered by grievance 01-86. Grievance 01-86 does not

preclude any pilots in the Eastern Master Seniority List, in conformance with applicable

RLA statutes. Class counsel, in collusion with Continental, is excluding 1059 pilots from

this settlement agreement, disguising the facts that within the 1059 pilots, not included in

the settlement agreement, are the names of those pilots who were merged secretly into

Continental. Pet. App. 438 – 458.

32

## IV.    The District Court Proceedings

20.    Besides ignoring the merits of the appeal. The District Court held me strictly to

Rule 8000's. Continental and Class counsel first submitted a motion to dismiss my appeal

for untimely filing. This motion was withdrawn on November 26, 2002.

21.    I submitted my appeal brief on May 31, 2002 as required by the District Court.

Continental and Class counsel requested an extension for their reply to my brief until the

motion to dismiss by untimely filing was decided. Once the motion was withdrawn

Continental and Class were under the obligation to reply to my appellate brief. Instead

the District Court allowed them to file more motions of dismissal. The District court

established a deadline of December 11, 2002 for the Appellees' to file their motions.

22.    Two motions were served on December 13, 2002, two days after the deadline,

nevertheless the district court used those two untimely motions, almost verbatim , for its

decision.

23.    The District Court ruled based on false statements of counsels and not on

the factual information provided.

a. If Continental invokes bankruptcy code 502 (b) (7) it will be admitting again

that we are rightful employees, an issue that Continental has denied in the courts but not

during the merger of the select Eastern pilots in the Ross arbitration.

b. If Continental invokes bankruptcy code 502 (b) (7) it will obligated to

compensate me as describe by this Court ruling *In re Continental Airlines, Inc.* 279 F. 3d

226 (3rd Cir. 2002),which states :

> Rights granted by the bankruptcy court, affirmed by the
> district court and discussed by us in Continental I, did not
> arise out of thin air. They were based on the Agreement. We
> made that crystal clear when this case was previously

33

before us: "Therefore, we conclude that the right to
seniority integration [set forth in the Agreement] gives rise
to a 'right of payment' such that the remedy constitutes a
claim' dischargeable in bankruptcy." In re Continental
Airlines, Inc., 125 F.3d at 136.
In Continental I, this court, as did the bankruptcy court
and the district court, did not reject the Agreement. We
interpreted it. We construed the seniority provisions of the
Agreement as a basis of providing a right of payment in lieu
of injunctive relief after considering a variety of factors to
include feasibility. The rejection-of-the-Agreement issue
raised by Appellants is irrelevant here because the legal
basis for the relief awarded -- arbitration to determine
entitlement to, and if so, the amount of damages-- was
based on an interpretation of the Agreement. What was
involved here was a simple categorical deductive syllogism:
All claims for seniority relief must be based on the
Agreement; Appellants make a claim for seniority relief;
therefore, Appellants' claims for seniority relief are based on
the Agreement.

Pet. App. at page 59

24.    The District Court decision states:

" The bankruptcy court limited the amount of money damages to one year's
wages, The Settlement Agreement at issue increased the maximum claim award
by two- or three- fold"

Totally untrue, the amount of $110,000 in Settlement Agreement does not even cover

my last year's compensation in light that Continental threatens to use Bankruptcy Code

502(b)(7) to reject the CBA . My termination compensation under the unrejected CBA

should include at least the following:

Compensation
a.    (Sections 3, 4, 5, 6 & 7). Pet. App. 464 - 468
       $12,132.96/mo.  X 12months = $145,615.92/yr.

b.    All unused vacation (Section 16) Pet. App. 469 - 475
       21 days x 2.66 hrs/day = 55.86hrs
       55.86hrs x 151.56/hr = $8,466.00
       $8,466.00 x 12 years = $101,592.00

c.    Furlough pay/separation ( Section 40 ) Pet. App. 476 - 477
       5 months X $12,132.96 = $60,664.80

   d.   · "A" fund retirement accrual ( Document 96) Pet. App. 478 - 483
18 years of service at 1%'year accrual = 18%
Approximate Final Average Earning = \$12, 132.96/mo
\$12, 132.96/mo. X 12 = \$145, 615.92/yr.
\$145, 615.92/yr. X 18% = \$26 ,210.86/yr.
\$26 ,210.86/yr. X 12 = 314,530.32

   e.   B fund retirement accrual (10% of total income accrued yearly on an
interest bearing account.) (Document 91) Pet. App. 484 - 487
Approximately total earnings \$1,747,146.20 X 10% = \$174,714.62

**TOTAL = \$797,117.66**

The \$110,000.00 the Settlement Agreement offering equates to 1/7 of what I would be entitled to receive after arbitration as my last year termination pay in accordance with Bankruptcy Code 502(b) (7), if this Bankruptcy Code applies terminating the unrejected CBA.

25.    The Bankruptcy Court during the January 31, 2002 also agreed that any settlement agreement should be based on the unrejected CBA.

26.    Again, these are issues that only an arbitrator could determine. As this Court stated *In re Continental Airlines, Inc.* 125 F.3d 120 (3d Cir. 1997) " In light of the overwhelming advantage that Continental derived from maintaining the position that it is bound by the collective bargaining agreement, and thus, had a duty to arbitrate the LPP dispute, we refuse to allow Continental to repudiate that representation and return to the district court to litigate the issue whether it is bound by the agreement. *See EF Operating Corp. v. American Bldgs.* 993 F.2d 1046, 1050 3d Cir. 1993) ("one cannot casually cast aside representations, oral or written, in the course of litigation simply because it is convenient to do so...a reviewing court may properly consider the representations made

35

in the appellate brief to be binding as a form of judicial estoppel, and decline to address a

new legal argument based on a later repudiation of those representations")"

27.    The District Court decision also states on page 8: Pet. App. 16

> "11. **Mootness.** Not only is appellant's position untenable, but the appeal is
> moot, given the withdrawal of the pending appeals and the distribution of
> consideration to class members, acts in furtherance of the settlement which cannot
> be undone."

The District Court failed to review the Settlement Agreement Article VIII. The

Settlement Agreement provides the mechanism for its undoing: Pet. App. at page 489.

> "8.01  If the court does not enter the order or judgment as provided above, or the
> court enters the order or judgment and appellate review is sought, and, on such
> review any such order or judgment is materially modified, vacated or reversed
> then any Party adversely affected shall have the right, but not the obligation, to
> cancel and terminate the Settlement Agreement."

Neither the Bankruptcy nor the District Court made any remark of the fact that co-authors

( Continental and named class plaintiffs) of this Settlement Agreement were in an

unseemly rush to divest the estate of all available remaining cash, even while the amount

and eligibility of the recipients were being actively appealed.

## SUMMARY OF ARGUMENT

The panel decision in *Continental I* 125 F.3d 120 had interpreted a collective

bargaining agreement ("CBA") between Eastern Air Lines, Inc. and the Air Line

Pilots Association ("ALPA") to construe the seniority provisions of the Agreement as a

basis of providing a right of payment in lieu of injunctive relief after considering a

variety of factors to include feasibility. The varieties of factors were morale problems

caused by the integration of pilots into one master seniority list, the cost of training and

36

the conditions set forth in the Reorganization Plan.

While this above litigation was taken place, Continental had secretly enacted an arbitration in 1991 under 45 U.S.C., the Railway Labor Act and merged selected Eastern Pilots into Continental seniority list, honoring the Labor Protective Provisions of the Agreement. Continental the Delaware Bankruptcy Court. Continental continued to portray the issue of seniority integration for the Eastern pilots as a non event in the U.S. District Court , this Court and the Supreme Court, committing one of the biggest frauds in bankruptcy law history. This fraud was discovered in January 2002.

This Court of Appeals also held that the District Court properly vacated the injunction barring arbitration of the underlying LPP dispute because Continental –having elected not to reject the agreement under section 1113 of the Bankruptcy Code –was bound by the mandatory provisions of the CBA. Enforcement of the injunction would have the effect of permitting Continental to escape its duty to arbitrate under the CBA. This Court unequivocally rejected the argument that Continental was not bound by the CBA.

Also unequivocally this Court ruled that absent ALPA's representation I had the individual right to pursue the mandatory arbitral mechanism to handle disputes growing out of my grievance.

This honorable Court *In. re. Continental* 125F. 3d at 120·upheld the district court analysis as follows:

> **"If ALPA was not the collective bargaining representative of the LPP**
> **Claimants, then it could not settle the claims of the LPP Claimants. If ALPA**
> **was the collective bargaining representative of the LPP Claimants, then**
> **while ALPA had the power to settle the claims of the LPP Claimants, the**

37

> **language of the Settlement Agreement makes clear that ALPA did not settle those claims"** Pet. App. 87 – 88

The LPP Claimants were individually named pilots throughout all the litigation process.

There are **five** issues to be resolved.

*First.* The class plaintiff's under this settlement agreement are not collective bargaining representatives. The unrejected CBA states that it is a contract between **Eastern Air Lines, Inc. and The Air Line Pilots in the service of Eastern Air Lines, Inc. as represented by The Air Line Pilots Association, International** . Absent the collective bargaining representative (ALPA) the only person that could make any decision concerning settlement of my grievance is myself.

*Second.* The Class can only be established by an arbitrator. Even if this Court permits an establishment of a class outside of the RLA jurisdiction, it has to address the class as established in the Reorganization Plan which includes all Eastern pilots covered under the unrejected CBA. There are over 1000 pilots names missing. Pet. App. 438 – 458.

*Third.* The intent of Continental to reject the contract using Bankruptcy Code 502(b) (7) can only be done using the provisions of the unrejected CBA. The unrejected CBA stipulates a termination process. There is a big difference between $797,117.66 which I am entitled to, as prescribe by the unrejected CBA termination process, and Continental's offer of $110,000.00. Again the issue of compensation can only be ruled by an arbitrator, this was already addressed by this Court.

*Fourth.* Equitable relief within the Class. Why is Continental being permitted to reward members of this Class specific performance, which includes seniority and full salary, while other members of the same Class receive termination pay?

*Fifth.* Fraud. Continental knowing that it had merge Eastern pilots into Continental

38

Seniority list, filed a Reorganization Plan which violated bankruptcy code 11 U.S.C.

1123 and 1129. Continental also violated the RLA 45 U.S.C. at 151,153 and 184. These

violations make the  Reorganization Plan null and void.

### ARGUMENT

The Railway Labor Act ("RLA") establishes a comprehensive framework for

resolving labor disputes in the rail and airline industries. Pursuant to that scheme, the

statute divides contractual disputes into two classes. The first class concerns disputes

over the creation of new collective bargaining agreements or attempts to change the terms

of existing agreements. Adopting language traditionally used in the rail industry, The

Supreme Court has termed such disputes "major disputes." *Norris*, 512 U.S. at 252 ;

*Conrail,*491 U.S. at 302-03; *Elgin, Joliet & E. Ry. V. Burley*, 325 U.S. 711, 723 (1945).

Major disputes are subject to a lengthy process of bargaining and mediation, and failing

agreement, parties may resort to economic force. *Conrail,*491 U.S. at 302-03

In contrast, the RLA established a "mandatory arbitral mechanism to handle

disputes "growing out of grievances or out of interpretation or application of agreements

concerning rates of pay rules, or working conditions." *Norris*, 512 U.S. at 248 (citing 45

U.S.C. 153, First (i)).

In the airline industry, the RLA mandates that carriers and employee

representatives establish "boards of adjustment" to arbitrate such disputes. 45 U.S.C. 184.

The Supreme Court termed such disputes "minor disputes" *Elgin,* 325 U.S. at 723

("minor disputes" relate, *inter alia,* "to the meaning or proper application of a particular

provision with reference to a specific situation")

39

Adjustment board jurisdiction to resolve minor disputes is compulsory, binding and exclusive. *Conrail,* 491 U.S. at 302-03 & n.4; Andrews v. Louisville R.R., 406 U.S. 320, 322-25 (1972) ("the notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or the carrier chooses, was never good history, and is no longer good law"). The reasons for these rules are well established and has been articulated repeatedly by The Supreme Court. One reason that appears central to The Supreme Court supervisory responsibilities is important but rarely mentioned. Opening the doors of federal courts to RLA contract interpretations issues would likely inundate the lower courts with such cases. RLA issues do not belong to the courts, it belongs to an arbitrator. The case at hand is a RLA issue. First, of course, the RLA statute demands it. 491 U.S. at 303-04 & n.4: 406 U.S. at 322-25

In addition, The Supreme Court has recognized the special competence of industry arbitrators to resolve such disputes based on custom and practice in the industry-and in particular to formulate remedies:

> The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards…[T] he arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level-disputes that require for their solution knowledge of the custom and practices of a particular industry as reflected in particular agreements.

> \* \* \* \*

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

40

There can be no question that the exclusive jurisdiction of RLA adjustment boards extends not just to the substantive rights under a labor agreement, but to nonfrivolous disputes over agreed remedies for violation of those rights as well. Continental unilaterally merged selective Eastern pilots on Eastern Pilots Master Seniority list into Continental Master Seniority List in August 1991, respecting the LPP's contained in Eastern's Collective Bargain Agreement. Continental violated the RLA by not merging all the Eastern pilots and misrepresenting those actions in the courts. The interpretation of the merger has been concluded in this arbitration . The two items pending resolutions are, where in the Continental Seniority List do I belong, and what type of compensation am I entitled to? May I remind this Court that this arbitration commenced within the proceedings of the bankruptcy process, Continental elected not to disclose it. At no time is the arbitration being contested, therefore the courts cannot interfere with the process.

A core holding of *Conrail* was that the burden on the party seeking to invoke adjustment board jurisdiction is "light." If the party "asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement.'Where in contrast, the [party's] claims are frivolous or obviously insubstantial, the dispute is major." *Conrail,*491 U.S. at 307. By making a nonfrivolous assertion of right to a particular remedy under a labor agreement, a party meets its burden to vest the adjustment board jurisdiction to decide that issue.

Citing *Conrail,* The Supreme Court declined to retain jurisdiction pending arbitration, noting that "[i]n minor disputes, the Board has full authority to resolve the matter and can grant a complete and adequate remedy to the prevailing party." *See also*

41

*Air Line Pilots Ass'n v E. Airlines,* 632 F.2d 1321,1323 (5th Circuit 1980) "The Supreme Court has recognized the need for flexibility in the formulation of arbitration remedies. As long as the award is essentially drawn from the essence of the agreement, it is valid and effectively etched in stone".

RLA subsections 3, First (p) and (q) permit federal courts to set aside adjustment board decisions on only three basis: (1) failure of the Adjustment Board to comply with the requirements of the RLA; (2) failure of the Adjustment Board to conform or confine itself to matters within the scope of its jurisdiction; or (3)fraud or corruption. 45 U.S.C. 153 first (p) & (q).

Nor may a party circumvent the remedial powers of an adjustment board through methods of review outside the *RLA. Bhd. Of locomotive Eng'rs v. Louisville & Nashville R.R.* 373 U.S. 33, 38-39 (1963) ("BLE"). In BLE The Supreme Court based its holding on the principle that "the process of decision through the Adjustment Board cannot be challenged collaterally by methods of review not provided for in the statute."

This Court *In re Continental Airlines, Inc.* 125 F.3d 120 (3d Cir. 1997) unequivocally stated that Continental did not reject the collective Bargaining agreement which provides for my right to pursue arbitration. Citing ('The reality is that the Agreement has never been rejected")

The certification of a class under Rule 23 of the Federal Rule of Civil Procedure can not be used to circumvent the remedial powers of an adjustment board through methods of review outside the RLA. This same issue was addressed by this Court when Continental tried to dismiss me as part of a class during the ALPA/Continental settlement.

42

If this Court allows the circumvention of the RLA by a certified class, it has to address Rule 23 of the Federal Rule of Civil Procedure (a) (4) "the representative parties will fairly and adequately protect the interest of the class." Class plaintiff and class counsel deceived a group of pilots known as LPP Claimants which were assured that their monies (monthly dues) were **not** being utilized for a class action lawsuit. That the LPP Claimants as listed individuals in all court procedures ( all 500+ ) as individual plaintiffs. That the monies, known as monthly dues were being utilized to protect their individual rights under the CBA. At no time did the class plaintiffs and/or class counsel, notify me of a class certification. At no time did the class plaintiffs and/or class counsel notify me of a no-opt out clause. Instead they use the monies I had sent to the EPFF organization to certify a class contrary to their representation and this Court rulings. Class counsel even reassured me on different occasions that I will always have the right to proceed if I elect to go to arbitration. Based on class counsel recommendations I filed for arbitration. My filing for arbitration was done before the settlement agreement was ordered. Now I'm back to where I started 11 years ago, fighting for my right to an arbitration.

Class counsel has on numerous occasions refused to integrate 1059 pilots that belong to the certified class. Class counsel and Continental on numerous occasions have refused to disburse monies to those pilots who took the settlement, despite letters sent to counsel by the Hon. Sue L Robinson, Chief Judge District Court for the District of Delaware. Class counsel, Continental and Class plaintiff are aware that select members of this certified class were merged at Continental enjoying full LPP privileges and

compensation. It is clear that the agreement is part of collusion and is not intended to protect the interest of the class.

The Class Settlement Agreement has a mechanism of dissolution. Citing:

## SETTTLEMENT AGREEMENT ARTICLE VIII

**801 If the Court does not enter the order or judgment as provided above, or if the Court enters the order or judgment and appellate review is sought, and, on such review, any such order or judgment is materially modified, vacated or reversed, then any Party adversely affected shall have the right, but not the obligation, to cancel and terminate this settlement.**

The Bankruptcy Court Final judgment and Order of Dismissal on paragraph 15 reasserts the mechanism of nullifying the settlement agreement. It states:

**15. " If this Final Judgment is reversed, vacated or modified, this Final Judgment shall be rendered null and void and vacated *nunc pro tunc,,* the Settlement shall be deemed terminated pursuant to the terms of the Settlement Agreement and the parties shall be deemed to have reverted to their respective status and position as provided in Article VIII of the Settlement Agreement**

Again all I am asking for, from this honorable Court is to uphold The Supreme Court rulings, as well as its own rulings. This Court has already ruled that I have a right to arbitrate.

Continental has committed one of the biggest frauds in bankruptcy history to avoid union affiliation. Continental put forward a Reorganization Plan in violation of the bankruptcy code 1123 and 1129. Continental is a participant of an arbitration which secretly merged elected Eastern pilots, but not all pilots into Continental, in violation of the RLA 45 U.S.C.. Continental has denied to the Department of Transportation and other airlines, its obligations under the CBA LPP's so that it could attain a better selling price for those international routes that are still under the Eastern Operating Certificate, again violating the RLA. Pet. App 488 - 490. Continental is still flying Eastern routes for

Eastern, under a wet lease co-certificate, violating the unrejected CBA and the RLA. Pet. App. 491 – 501.

I'm not requesting anything but equitable relief. I'm also aware that this Court cannot reach such decision until the arbitration is concluded. The findings and award of the arbitration will then be brought forward to the Court for final judgment.

## CONCLUSION

This honorable Court ruled that the Eastern Pilots Collective Bargaining Agreement (CBA) has not been rejected. This CBA contains section 1 (Scope) and sections 18, 19 & 20 (Seniority) which relates to how pilots will be promoted, demoted and/or merged and the order these events will be comply with. Pet. App. 502 -504. Continental elected to merge Eastern pilots into Continental seniority without complying with the CBA. In the process Continental violated the Bankruptcy Codes and the Railway Labor Act. The Settlement agreement is another of Continental's ploy to advert been expose to their malicious way of operation based on their philosophy of union busting. Where is equitable relief?

I fully understand that this Court has ruled that my seniority rights claim will be converted to a monetary claim. What I can not understand is how one group of pilots within the same Class, same seniority list that I belong to, is been compensated on an administrative compensation level (specific performance), while I am been compensated as an unsecured claimant bound to receive pennies on the dollar.

For the reasons described above, I respectfully request from this Court review all the irrefutable evidence brought forward and grant review of its previous two decisions;

45

*In re Continental Airlines, Inc.* 125 F.3d 120 (3rd Cir. 1997) and *In re Continental Airlines, Inc.* 279 F. 3d 226 (3rd Cir. 2002). I also respectfully request from this Court to reverse the bankruptcy court and district court orders, nullify the Settlement Agreement and let me proceed to arbitration.

Respectfully submitted,

Ramon E. O'Neill
Appellant, *Pro Se*

# Exhibit DD

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-2376

RECEIVED

APR  2 2004

---

IN RE: CONTINENTAL AIRLINES, INC., ET AL,

Debtor

J. TRIGG ADAMS

v.

JAMES BALDRIDGE; WILLIAM MANN; LARRY DUNN, individually
And as representatives of a class of persons similarly
Situated who are referred to as LPP CLAIMANTS

UNITED STATES TRUSTEE

J. Trigg Adams,
Appellant

---

On Appeal From the United States District Court
For the District of Delaware
D.C. Civ. No. 02-CV-00484

---

**PETITION FOR PANEL REHEARING**

**and**

**MOTION FOR EQUAL COMPLIANCE BY ALL PARTIES
SUBJECT TO PLAN OF CONFIRMATION AND THIS
SUBSEQUENT APPEALS JUDGEMENT ORDER**

**and**

**MOTION FOR STAY OF THESE PROCEEDINGS**

1

## STATEMENT FOR REHEARING REQUEST

I, J. Trigg Adams, pursuant to FRAP 35(b) and Third Circuit IOP 9, request this panel to rehear this opinion based upon the misapprehension of the panel of several important points, and the conflict with other Third Circuit and Supreme Court rulings, and relevant U. S. Code.

This opinion conflicts with the following decisions and law:

a) *In re Continental Airlines, Inc.* F.3rd 120 (3rd Cir. 1997) (cert. denied)

b) *Protective Committee v. Anderson*, 390 U.S, 414 (1968)

c) 45 U.S.C. Railroads (Railway Labor Act)

d) 9 U.S.C. Arbitration

e) 18 U.S.C. Crimes and Criminal Procedure

f) System Board of Adjustment Neutral Frank Elkouri decision

g) *In re Continental Airlines, Inc*, No. A-99-412 (MFW) 125 F 3d (2000) at 129-30

h) Jerome H. Ross, arbitrator (August 13, 1991)

## ARGUMENT

### MISAPPREHENSIONS BY THE PANEL

1. On P. 6 of its opinion, the Panel states that my objection to the underinclusiveness of the class certification was, "remedied by the Bankruptcy Court.", by the action of its inclusion of a clause

allowing other newly "found" class members to file a claim by the deadline of April 3, 2002, a very short time after the conclusion of that hearing.

a) The Bankruptcy Court made no requirement for the Class representative to do any proper due diligence in identifying such potential class members by not requesting the submission of the November 1990 Eastern Pilot Seniority List, and locating such members, despite their having been missing from the proceedings for thirteen years. There was no requirement to notify them by mail, nor any to constructively mount any bona fide effort to effectively publish their "newly found" rights. There is no record of any kind showing that even one of the 1059 missing pilots was ever contacted, and the Bankruptcy Court required none. Thus, it is not a <u>valid</u> remedy.

b) Class counsel still had no right under 45 U.S.C. code to represent any pilot not electing him to do so in matters coming under the purview of that title, including the all-important one: <u>who</u> had the right to LPP protection at Continental. Despite our arguments in her court to that effect, the Bankruptcy Court granted the LPP Claimants class status in her court, in matters

<u>that only an arbitrator under the Railway Labor Act has</u>

<u>jurisdiction over</u>.    Thus, it is not a valid remedy.

45 U.S.C. Sect 151- definitions:

**"Sixth. The term "representative" means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them."**

Whether or not a legal system innocent knows to object, or ask for a stay, or file an appeal at the proper time does not make a ruling based upon the violation of a law, and all that flows from it, the rule of the case, especially if a ruling is based upon fraudulent evidence.

2.    On P. 7 of the Panel's opinion, my argument about the People's Express merger is dismissed by saying that I am not a former People's Express pilot, and thus, "not entitled to the same treatment as those pilots."

a) The Panel <u>completely</u> misunderstands the conflict this ruling makes with 45 U.S.C. law regarding seniority mergers.  The point I have long been trying to make is that this People's Express, et al, merger contained pilots <u>still on the Eastern Airlines seniority list, thus merging them with seniority into Continental Airlines seniority list</u>.  Under the Collective

4

Bargaining Agreement, under 45 U.S.C. law, one cannot merge some members of a seniority list, and not others. Thus, I am entitled to the same treatment as those pilots by dint of some of them being Eastern Airlines pilots, not People's Express pilots. Arbitrator Ross specifically stated that all of the pilots in this merger were "non-union". Thus his remonstration that the parties were remiss on another area of the law that he was not ruling on.

b)  45 U.S.C. sect. 151(a) forbids any "limitation upon freedom of association....or denial, as a condition of employment, or otherwise, of the right of employees to join a labor organization."

The record on appeal shows clearly that Continental knew certain pilots in that merger were on the Eastern seniority list, and thus represented by ALPA as being covered under the Eastern Collective Bargaining agreement. Further, that merging these pilots was contrary to the law governing that contract, and therefore an illegal action to forestall union pilots on its property. Knowing their deliberate effort to violate this law, it is no wonder that they, "declined to discuss this issue," (opinion footnote 5., p. 7), in their brief, although this Panel rightly knew it was in the record of appeal. But this Panel then

5

does not seem to recognize that the fraud perpetrated upon the
bankruptcy court subsequently taints <u>every</u> result that flowed
from that fraud, requiring them <u>all</u> to be re-visited, and calls for
sanctions delineated by applicable criminal code.

c) 11 U.S.C. sect 1113(f) clearly states:

> **"No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section."**

Continental had the right to  appeal to the respective district
courts either arbitrator Elkouri's ruling in September 1989 that
the contract contained valid LPPs, or arbitrator Kasher's
decision that the issue of whether a merger had been triggered,
were proper subjects for decision under the Railway Labor Act,
and/or it could have gone through the 1113 process to seek
relief from the provisions of the contract, but it deliberately
chose not to do so.

3.    On P. 8 of the opinion, it states, "Any relief awarded by the
arbitrator would be meaningless; thus, Adams' right to arbitration
has been mooted by the settlement."

a) Arbitration cannot be constitutionally moot in this instance,
<u>unless this Court ignores, and thus approves, the fraud that has</u>

6

gone on in the courts under its supervision, by ignoring all the evidence of that fraud, and putting its imprimatur upon the proceedings as is.

b) Arbitration would certainly not be equitably moot if this court would enforce the very bankruptcy codes that have been violated, make the miscreants disgorge gains gotten through fraud upon the Court, and distribute them among the claimants that only an arbitrator has jurisdiction to determine the names of.

c) Denial of the arbitration rights by thoughtlessly mooting them in this or any process also constitutes an improper denial of other rights that require an arbitration, and flow from it, in other contexts outside this Court's jurisdiction. That would be an unintended miscarriage of justice by this Court.

d) Not even this Court has the jurisdiction to subvert the applicable Railway Labor Act law under which my right to arbitration arises.

## CONFLICTS WITH RULINGS AND LAW BY THE PANEL

1.  18, U.S.C., Part I, Chapt. 9, Sect. 152 (9): **a person who, after the filing of a case under Title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the**

**property or financial affairs of a debtor, shall be fined under this title, imprisoned for not more that 5 years, or both.**

Since first finding out about the withholding of the Ross

Arbitration shortly after filing my appeal brief with the District

Court, I have consistently argued orally there and in my brief to

this Court that this deliberate omission by Continental is a clear

violation of the above statute, as well as 45 U.S.C. and 11 U.S.C.

law, and thus negates any ruling on this bankruptcy since that

deliberate omission.  No ruling of any court has seriously

acknowledged, much less acted to investigate, this evidence.  Even

this opinion, although mentioning my accusation on P. 4, makes no

judgment about it, swallowing that camel without so much as a

burp while straining at the gnat of whether I was moot because, as

a *pro se* applicant to the halls of justice I did not know the strategy

of filing an appeal here or a motion to stay there.  (And I could not

have asked for a stay or appealed earlier rulings absent the

evidence of fraud later discovered.)

I have stated quite clearly several times in the record that there is

in that record proof of a crime, and yet not one in authority has

investigated it in any way.  I believe that this panel should very

carefully consider all aspects and evidence of this omission of data

relevant to an ongoing bankruptcy case, perhaps by empaneling a separate investigation outside the scope of this appeal, and staying these proceedings until such investigation is concluded.

2.  This Court, in *In re Continental Airlines* 125 F.3rd 120, (3rd Cir. 1997), removed as improper a bar to the arbitration of the LPP Claims. Yet this opinion keeps that bar in place as if it were proper, making this opinion in conflict with this Court's earlier ruling that I had an inalienable right to arbitration.

3.  This opinion gives no evidence that the panel considered my argument that all the combined actions of the Debtor, Class Counsel, and the lower courts to misstate, deliberately omit, or fail to require due diligence in the processes the court DID order the participants to perform, rise to the level of error delineated in *Protective Committee v. Anderson* 390 U.S. 414 (1968). I believe a thorough consideration of the failings in the instant case would exceed those of *Anderson* by a wide margin.

    a)  In *Protective Committee v. Anderson* 390 U.S. 414 (1968), the Supreme court sent an eleven year old bankruptcy back to the start line for merely sloppy work by the participants and the court, stating,

"It is essential, however, that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by facts...."

b) In the instant case, not only did the courts ignore testimony and evidence that the filings and rulings were contrary to Railway Labor Act law, but also the evidence presented that both the debtor and the class plaintiffs had not properly done even the tasks assigned them to find and notify the few eligible pilots they conned the court into limiting any award to. Nor did the courts make proper effort to vet the accuracy and completeness of the evidence presented, or even that it was all there.

c) Therefore, I can only conclude that this misfeasance on all their parts rises more than adequately to merit the opprobrium the Supreme Court visited upon the participants of the cited case, and would certainly do so again were the far greater errors of omission and commission allowed to be perpetuated in this case by not going back to the frauds upon the court and re-doing it according to relevant law and proper standards of conduct.

d) Although the Bankruptcy Court has allowed the debtor to rush the money out the door, even while these objections were being

raised as to the propriety of it, substantial portions of it can be recovered and more properly distributed, and this Court has the power to make it so.

4.     In the Elkouri arbitration and the Kasher arbitration, the arbitrators have already ruled on very important foundations of this dispute, the right to proceed down the path laid out in the Railway Labor Act to the contracted-for right to seniority integration, a pathway that is sacrosanct under all other law. Only 9 U.S.C. code provides for an appeal of that decision within 30 days, but neither Eastern nor Continental made such an appeal, preferring to bury their heads in the bankruptcy court. And only Sect. 1113 of the Bankruptcy Code allows a means of voiding provisions of the Railway Labor Act, which the debtor chose not to use. And, although this very Court finally ruled that that pathway <u>was</u> sacrosanct, the lower courts have allowed it to be blocked, thus violating this Court's intent to re-open it. Not to re-hear this appeal and carefully consider these facts would be to abandon this Court's 1997 decision as basically meaningless and in conflict with

11

any later decision that allowed an end run around it's clear 1997 intent to honor the jurisdiction of Railway Labor Act law.

5.    The bankruptcy court, *In re Continental Airlines, Inc.* 125 F 3d at 129-30, judge Walrath, in a footnote on p.4 recognizes my right to arbitration:

> **"Since the Third Circuit decision expressly allowed individual Eastern pilots to proceed to arbitration to decide whether they had claims for seniority integration under the LPP, we need not address this issue again."**

Every decision she has made since then is in conflict in that it blocks that right. This Court did not even mention that conflict in its opinion.

## CONCLUSION

In view of the foregoing, and especially, the demonstrated misconduct mentioned but not addressed in the Opinion, I hereby respectfully request that this Court conduct a re-hearing of this appeal, mandate that the lower courts correct their rulings so as to avoid conflict with 45 U.S.C., and make the following motions:

## MOTION FOR STAY OF THESE PROCEEDINGS IN ORDER TO FINISH THE ARBITRATION UNDERLYING THE DISPUTE

1.    9 U.S.C. provides the following:

Section 3. Stay of proceedings where issue therein referable to arbitration If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

2. Unless and until this suspended arbitration is heard in the proper forum and under the legal and proper jurisdiction, there can be no judgment consistent with all applicable law. In view of the long history of this attempt to sidestep the legal process of arbitration, I believe it is overdue to apply the above-quoted statute and accomplish this step. Therefore I pray this Court to grant this motion by ordering all relevant parties back to that arbitration, with the commandment that it be done within the constraints of 90 days as contained in the underlying still-in-force contract, sect. 13(a) thereof which states,

**"Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time is mutually agreeable to all parties."**

And, in addition:

13

## MOTION FOR EQUAL COMPLIANCE BY ALL PARTIES SUBJECT TO PLAN OF CONFIRMATION AND THIS SUBSEQUENT APPEALS JUDGEMENT ORDER

1. The bankruptcy court has allowed to be created, and the district court to let stand, completely contrary to bankruptcy law, three distinct classes among the pilot claimants:

   a) Pilots on the applicable Eastern pilots' seniority list who have been allowed full integration and pay for years on the debtor Continental pilots' seniority list, thus affording them full post-confirmation award, although by dint of a now-revealed and fraudulent subterfuge of the Debtor.

   b) Pilots on the Eastern seniority list who have been selected by a process that is questionable, at least, which processes the shows proof of being deficient.

   c) Pilots on the applicable Eastern seniority list who have every right under Railway Labor Act law to be protected by the LPPs, but have either been deliberately or accidentally left out by these processes.

   d) None of the above groups have been afforded the <u>only legal forum allowable under the Railway Labor Act</u> to determine eligibility for any contractual right. And that Act has

14

specific provisos that bar any other law to intervene, all of which have been pointedly ignored.

2. In view of the above, I request this Court to grant the motion, making all Eastern pilots equal under the bankruptcy process, notwithstanding that that cannot be accurately done until a duly selected Arbitrator rules, and may require those fully employed to rejoin the ranks of those not so. This is do-able, equitable, and meets the requirement that all members of the same class of creditors be treated equally under bankruptcy law.

Respectfully submitted,

*J. Trigg Adams*

J. Trigg Adams
*Pro se*

15

## PROOF OF SERVICE

I certify that on Monday, March 29, 2004, I mailed a copy of this brief and all attachments via first class mail to the following parties at the addresses listed below:

James L. Patton, Jr.
Robert S. Brady, Esq.
Young, Conaway, Stargatt & Taylor
P.O. Box 391
Wilmington, DE 19899

Myles Trailins, Esq.
2 S. Biscayne Blvd, Suite 2930
Miami, FL 33131

Bruce Jameson, Esq.
1310 King St.
Wilmington, DE 19801

And one copy hand delivered to;

Ramon. E. O'Neill

_____
(J. Trigg Adams

<u>**CERTIFICATE OF SERVICE**</u>

I, Joseph M. Barry, Esquire, hereby certify that I am not less than 18 years of age and that on October 17, 2006, I caused a copy of the attached document to be served on the following parties by Federal Express or Hand Delivery, as indicated:

**<u>VIA FEDERAL EXPRESS</u>**

Mr. Brownie N. Inman, *pro se*
18905 SW 128 Ct.
Miami, FL 33177

Mr. Ramon E. O'Neill, *pro se*
7424 SW 129 Ct.
Miami, FL 33183

Mr. J. Trigg Adams, *pro se*
3824 Park Avenue
Miami, FL 33133

**<u>VIA HAND DELIVERY</u>**

Bruce E. Jameson, Esquire
Prickett Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Counsel for James Baldridge, *et al.*

Joseph M. Barry (Delaware Bar No. 4221)

Dated: October 17, 2006