IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) | |
| | ) | |
| ———————————————— | ) | Bk. Nos. 90-932 through |
| | ) | 90-984 (MWF) |
| Ramon E. O'Neill | ) | Jointly Administered |
| Appellant | ) | BK. Adversary No. 99-412 |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-568 |
| | ) | |
| | ) | |
| CONTINENTAL AIRLINES, INC. | ) | |
| Appellees | ) | |
| | ) | |
| ———————————————— | ) | |

**APPEAL
FROM
BANKRUPTCY COURT ORDER
DATED 07/24/06**

FILED

FEB 20 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

I, Ramon E. O'Neill, in accordance with Bankruptcy Rule 8006,

petition an appeal as a result of the Bankruptcy Court's failure to reopen this

case when overwhelming evidence in the record has pointed out perjuries in

the support affidavits which led to a settlement agreement,  and these

perjuries have been ignored by the Bankruptcy Court . The overwhelming

evidence proves that the list of claimants, eligible pilot participants of the

2002 Settlement Agreement is incomplete and the debtor has never acted in

good faith to fund the entire 2002 Settlement Agreement.  The list of eligible

pilots submitted to the Bankruptcy Court by the Debtor and Class

Representatives on various occasions are part of a fraudulent scheme.

**(Exhibit A Bankruptcy Court Order on Appeal)**

The mechanism by which the Class Representatives and Continental

allowed the participation of eligible claimants is against the Appellate Court

observation. *O'Neill v. In re Continental Airlines, Inc.* No. 03-2374 and 03-2375

**(Exhibit B page 8)**

*"To the extent O'Neill argues that other pilots were missing from the class list, the
settlement, as approved by the Bankruptcy Court on January 31, 2002, included a
clause which allowed other class members who met the definitions to file a claim by
April 3, 2002. Thus, this objection to the class certification was remedied by the
Bankruptcy Court"*

The mechanism ("the A list" on **Exhibit C**) put in place is composed

of a limited amount of names and it has never represented the total amount

of names eligible under the class definition. In simple words if your name

was not on the agreed upon list between Class Representatives and

Continental, it did not matter if other pilots fit the definition of the class, if

the pilots attempted to or even filed a timely claim,  these pilot's claim

would not be honored. The Appellate Court observation (above) that eligible

pilots had a remedy if they were excluded is not true in this case. No pilot

excluded which tried to receive a remedy has been properly addressed. They

were stymied by the fixed system Class Counsel and Continental instituted

to exclude additional valid LPP Claimants

The mechanism of eligibility and the disbursement of funds from the

Settlement Agreement is a product of fraudulent testimony and inability of

the Bankruptcy Court to deal with the TRUTH.

The overwhelming evidence which delineates the fraud and its intent

was submitted to the Bankruptcy Court by the parties involved in the

Settlement Agreement; Continental Airlines, Class Representatives and

Class Counsel.

18 USC § 152 and § 157 explicitly prohibits any party to conduct

false and/or fraudulent statements, representation, declaration, conceal

documents and falsify recorded information in a title 11 proceedings.

The criminal provisions relating to bankruptcy fraud were enacted to

preserve honest administration in bankruptcy proceedings and to ensure the

distribution to creditors of as large a portion of the bankrupt's estate as

possible. These criminal sanctions are embodied in Title 18, United States

Code, § 152 to § 157. The provisions of 18 U.S.C. § 152 to § 157 are

applicable to any proceeding, arrangement or plan under the Bankruptcy

Code, Title 11, United States Code.

18 USC § 152 (2) and (3) are very specific:

**(2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;**

**(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;**

18 USC § 157. Bankruptcy fraud is also very specific:

**A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—**
**(1) files a petition under title 11;**
**(2) files a document in a proceeding under title 11; or**
**(3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,**

**shall be fined under this title, imprisoned not more than 5 years, or both.**

This appellant is petitioning this Court to reverse the

Bankruptcy Courts Order regarding the re-opening of the case so full

compliance with the 2002 Settlement Agreement is concluded, specifically :

that all LPP Claimants receive the settlement award approved by the courts.

This Appellant also petitions the imposition of maximum penalties as this

Court sees fit and in accordance with  18 USC § 152 and § 157.

This is not a frivolous appeal. As this Court reads this document it

will learn about the intentional acts committed by Continental, Class

Counsel and Class Representatives before and after the January 31, 2002

Bankruptcy Court approved Settlement Agreement and Order.  Other pilots

and I petition the Bankruptcy Court to uphold its own January 31, 2002

order, the same Bankruptcy Court order this District Court as well as the

Appellate Court upheld.

**(Exhibit C January 31, 2002 Bankruptcy Court Order)**


## ARGUMENT

The doctrine of this case is established by *Airline Pilots Ass'n (ALPA)*

*v. Continental Airlines,* 125 F. #d 120, 128 (3d Cir. 1997), known as

*Continental I.*

This Court as well as the Appellate Court are fully aware of the

doctrine because it was this Court which reversed the Bankruptcy Court and

delineated the following doctrine:

    a.    Continental has a continuing obligation to the Eastern pilots that was not extinguished by the purchasing and merging of the Eastern assets by Continental.

    b.    Continental has a continuing obligation to the Eastern pilots that was not extinguished by the bankruptcies of Eastern and/or Continental because in either bankruptcy a lack of 1113 procedures kept the Eastern Collective Bargaining Agreement (CBA) intact.

    c.    Any settlement agreement reached after the assumption of the obligations does not affect the obligations Continental has to the Eastern pilots as prescribed under the CBA

This Court, the Honorable Sue L. Robinson presiding, **(Exhibit D)**

***In Re: Trans World Airlines v Elizabeth A. M. Robinson*, Civil <u>No. 04-cv-</u>**

5

**00234(SLR)** upholds the very same doctrine mentioned above. The Appeals

Court reaffirms on May 10, 2006, <u>Case No. 05-2260</u>.

Ironically the only case cited through out the whole nine (9) pages

opinion rendered by the Appellate Court is *Continental I* . Let it be noted

that Continental and Class Counsel represented both sides of the litigation

which led to *Continental I,* it is hard for either party to claim ignorance.

This District Court being observant will notice that the title

of *Continental I* is *Airline Pilots Ass'n v. Continental Airlines,* not Baldridge

LPP Claimants v. Continental Airlines.    The *Airline Pilots Ass'n* (ALPA) by

principle of law has to represent the entire the Eastern pilot force without

segregation or discrimination based on date of hire or collective bargaining

representative membership.    In *Continental I* page 1 the only time there is a

mention of different pilot groups within the whole Eastern pilots seniority

list is as follows:

*"The bankruptcy court determined that the claims could be satisfied by monetary awards in lieu of specific performance and enjoined scheduled arbitration proceedings to enforce the seniority rights under the collective bargaining agreement.   The district court affirmed the bankruptcy court's determination relating to the claims, but vacated the injunction.   Two groups of former Eastern pilots, the LPP Claimants and the Group of 31, both of which are no longer represented by ALPA, appealed to this court.[1]*

---

*1.  "LPP Claimants' refers to a group of former Eastern Pilots whose claims in this appeal are based on certain "labor protective provisions" (LPPs) contained in the collective bargaining agreement.  The "Group of 31" is a group of former Eastern pilots, who originally were part of the "LPP Claimants" group and who have retained separate counsel for purposes of this appeal.  See discussion infra Part I.D.  While both groups claims were filed in bankruptcy court by ALPA on their behalf,"*

The Appellate Court in the above footnote points out that *both groups claims were filed in bankruptcy court by ALPA on their behalf.* Within all three groups addressed in the above footnote, Eastern Pilots, Group of 31 and LPP Claimants; non-ALPA members are included. The Air Line Pilots Association, Inc. (ALPA) is defined in *Continental I* as the collective bargaining agent. The Appellate Court footnote (above) also clarifies that ALPA filed an umbrella proof of claim in the Bankruptcy Court which covers <u>all Eastern pilots</u>.

In the Eastern Airlines Collective Bargaining Agreement (CBA) SECTION 1-RECOGNITION AND SCOPE the following is stated: **(Exhibit E)**

## *SECTION 1-RECOGNITION AND SCOPE*

**A.     The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) <u>employed by Eastern</u> have designated <u>the Association</u> to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions <u>covering all pilots in the employ of Eastern</u> in accordance with the provisions of the Railway Labor Act, as amended. (Emphasis added by Appellant)**

The Employer ( *<u>Eastern)</u>* recognizes the Union *<u>the Association, ALPA</u>* as the exclusive bargaining representative for the collective bargaining unit consisting of the following position classifications (*<u>covering all pilots in the employ of Eastern, the collective bargaining unit). (Emphasis added by Appellant)</u>*

The Supreme Court, the National Labor Relations Board and the National Mediation Board have adopted the following definitions and

doctrines throughout the years.

a.     A bargaining agent is certified by the National Labor Relations Board (NLRB) as the exclusive representative of a certain type of employee.

b.     . The term "representative" means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them. **45 U.S.C. 151 Sixth**

c.     Bargaining Unit is a group of employees certified by the National Labor Relations Board to be able to be included in a union or Bargaining Agent.

d.     A union that possesses the sole authority to act on behalf of all the employees of a particular type in a company.  Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Steel v. Louisville & N. R. Co.,* **323 U.S. 192** and  Tunstall v. *Brotherhood of Locomotive Firemen.,* **323 U.S. 210**.

Membership in the Bargaining Unit does not mean membership in

ALPA, as Class Counsel and Continental led the Bankruptcy Court to

believe. Pilots cannot be eliminated from the Class or Settlement Agreement

because of their union membership or lack thereof.

The Bankruptcy Court, this Court and the Appellate Court transferred

all the doctrines and obligations contained in  the CBA to Class Counsel and

Class Representatives, when it upheld the Class Certification.

Continental is also well aware of all the above definitions, doctrines,

obligations and its applicability to them.

Being so aware of the definitions, doctrines and obligations; Continental, Class Counsel and Class Representatives nevertheless embarked on a journey to change the interpretation of the definition of the certified class both after the class was certified in February 3, 2000 and after the January 31, 2002 settlement agreement order, to intentionally eliminate members of the certified class from receiving the agreed upon settlement.

On January 31, 2002 at the signing of the order the definition of the composition of the class was "***who are Eastern Airlines former flight deck employees***" the order refers to the Stipulation Agreement dated October 16, 2001. The same definition is at the beginning of the documents titled "*NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND SETTLEMENT HEARING* ". This was mailed to me shortly before the fairness hearing. Bankruptcy Court Docket 71- 2 Exhibit A dated 01/04/2002. **(Exhibit F)**

After the January 31, 2002 order, (post-Baldridge litigation) Continental, Class Counsel and Class Representatives brought to the attention of the Bankruptcy Court the definition of "***members of Eastern's flightdeck collective bargaining unit***" which was stipulated as a Bankruptcy Court requirement in the *Order Granting Class Action Plaintiffs' Motion to*

9

*Clarify Method of Identifying Class Members, Bankruptcy Court* Docket 56 dated July 10, 2001.

Both the January 31, 2002 and the July 10, 2001 definitions apply to **all Eastern pilots** as dictated by doctrines and definitions previously stated in this document. **Neither terms (above) refers to membership in ALPA as Class Counsel and Continental wish to assert despite being well aware that all Eastern pilots are in the " Flight deck collective bargaining unit**." **(Emphasis added by Appellant)**

Consequently and insidiously, Continental, Class Counsel and Class Representatives used the new definition to openly discriminate and fraudulently oppress many Eastern pilots (all valid LPP Claimants); in the majority, those Eastern pilots who were hired after March 4, 1989 (New Hires).

## HISTORY

***PRE –BALDRIDGE SETTLEMENT AGREEMENT ORDER***

1.    There were five affidavits filed in support of the Settlement Agreement approved by the Bankruptcy Court order of January 31, 2002. One (1) affidavit from Continental, Ms. Edna Smith, Bankruptcy Court Docket No. 72 **(Exhibit G)**; one (1) from Class Counsel (Myles Tralins,

Bankruptcy Court Docket No. 69-1(**Exhibit H)**; and one (1) from each

Class Representative Bankruptcy Court Docket No. 70-2, 70-4 and 70-5,

**(Exhibit I)**; all of which are false statements. The Bankruptcy Court relied

on the accuracy of these affidavits to issue the January 31, 2002 settlement

agreement order. The same order I'm seeking compliance with.


2.     All five affidavits filed in support of the Settlement Agreement

prove to be fraudulent in the Post- Baldrige Settlement Litigation ( Post

January 31, 2002 settlement agreement order). The only participants

involved in Post Litigation proceedings were Continental, Class Counsel

and Class Representatives. In simple words; the accuracy of the pilots'

names listed as "Exhibit A list" attached to Continental affidavit (550 names

rather than the approximately remaining 2000 LPP claimants) prove the

settlement stipulation and affidavits to be <u>instruments of deceit</u>.


3.     <u>**18 U.S.C. § 152 and § 157**</u> specifically addresses that thou shall not

commit knowingly and intentionally the following offenses:

### A.     <u>18 U.S.C. § 152</u>.

**§ 152. Concealment of assets; false oaths and claims; bribery**

**(2)** knowingly and fraudulently makes a false oath or account in or in
relation to any case under title 11;

**(3)** knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11

**B.     18 U.S.C. § 157**.

**§ 157. Bankruptcy fraud**

A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
**(1)** files a petition under title 11;
**(2)** files a document in a proceeding under title 11; or
**(3)** makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
shall be fined under this title, imprisoned not more than 5 years, or both.

4.      There is a big difference between thou shall not commit an offense

and committing an offense and let see if we get caught. Continental and

Class Counsel as legal professionals definitely know the difference and its

consequences. They did not think they would be caught.

*POST –BALDRIDGE SETTLEMENT AGREEMENT ORDER*

5.      On April 25, 2002 , 22 days past the bar date of the settlement

agreement (April 3, 2002) Class Counsel and Class Representatives filed the

following titled motion, Docket 169 4/25/2002; **(Exhibit J)**

**MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING THAT NEWLY
IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT FOR**

**THE CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

6.      The contents of the above motion vindicated the many warnings that I and others have provided to the Courts.  Class Counsel, Class Representatives and Continental had been intentionally manipulating a mechanism ( Exhibit A list) omitting pilots names with the full intent to defraud 1500 members of the Class.  This motion proves that the five affidavits filed in support of the Settlement Agreement are fraudulent .

7.      In page 3 paragraph numbered 2 **(Exhibit J)** of this motion Class Counsel and Class representatives' state:

*The LPP Plaintiffs contended that all EAL flight deck crew members are entitled to participate in the Class, including the "new hires" because they were entitled to the benefits of the ALPA/EAL collective bargaining agreement. CAL contended that only those pilots who filed claims in bankruptcy are entitled to participate.*

8.      Class Counsel and Class representatives knew very well that **all** Eastern pilots were covered by the Eastern collective bargaining agreement and ALPA had filed a timely umbrella proof of claim.

9.      In page 4 paragraph numbered 3 of this motion, Class Counsel and Class representative's state:

*"After the Motion to Clarify was filed, the LPP Class Action Plaintiffs and CAL agreed that because the clear language of the Proofs of Claim filed by ALPA for enforcement of the EAL LPPs against CAL excluded the "new hires" and was limited to persons who were EAL ALPA members pre-strike(before March 4, 1989), any new hire who did not file a*

*Proof of Claim or have a Proof of Claim filed for him or her by the
undersigned would fall outside the class definition and he or she would
not be eligible to participate in the class settlement."*

The above is **Not true,** .  The clear language on the ALPA Proof of

Claim never excludes the new hires. To the contrary; ALPA makes it very

clear that it represented all pilots as of the filing of Continental bankruptcy

petition on December 3, 1990.  J. Randolph   Babbitt as President of ALPA

filed the *et al.* proof of claim on behalf of ALPA and all the Eastern pilots

stating as follows: **(Exhibit K)**

*"Claimant makes this proof of claim on behalf of ALPA and the
individual pilots for sum due and owing to ALPA and said pilots
represented by ALPA, as of the filing of the petition in bankruptcy on
December 3, 1990."* (All pilots were represented by ALPA)

ALPA proof of claim in 3(c) specifies that:

*" In The Matter of an Application of the Air Line Pilots Association
International for an Arbitration Under the Labor Protective Provisions
Involving Eastern Airlines, Inc. Richard Kasher, Arb. , Arbitration
proceedings brought by Air Line Pilots Association for specific
performance  and damages against Continental Holdings and Continental
Airlines, et al. resulting from labor protective provisions for pilots of
Eastern Air Lines, Inc."*

ALPA's  proof of claim was filed on behalf of all Eastern pilots, there

is no such segregation of new hires or non-ALPA members mentioned on it.

10.    In page 4 paragraph numbered 4 of this motion **(Exhibit J)** which I

will divide in two parts for the purpose of simplicity Class Counsel and

Class representatives state:

>  *On July 10, 2001, the Court entered its Order Granting Class Action Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List. The Court also required the eligible pilots to be "members of Eastern's flight deck collective bargaining unit" rather than simply former EAL flight deck employees "who claim they are entitled to the benefits of the collective bargaining agreement (the CBA) between Eastern Airlines and the Air Line Pilots Association"*

This statement was intentionally and deceitfully construed by Class Counsel and Class representatives as ALPA being the collective bargaining unit and membership is required in ALPA in order to benefit from the collective bargaining agreement.

**Not true**: **Collective Bargaining Unit** is not the legal term for ALPA. The **Collective Bargaining Unit** is the legal term **for all pilots**. ALPA was the sole **collective bargaining agent** which represents **all Eastern pilots who happen to be the collective bargaining unit.**

The philosophy by Class Counsel and Class Representatives is contradictory to the inclusion of all non-ALPA members in the ALPA/ Continental agreement of 1994. The ALPA/ Continental agreement included many non-ALPA members including the Class Representatives Baldridge, Mann and Dunn.

The language contained in the Eastern collective bargaining

agreement states:

### *SECTION 1-RECOGNITION AND SCOPE*

    ***A.      The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) employed by Eastern have designated the Association to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions <u>covering all pilots in the employ of Eastern</u> in accordance with the provisions of the Railway Labor Act, as amended.***

    Members or non-members; all Eastern pilots were subjected to the same rates of pay, rules and working conditions as dictated in the Eastern Collective Bargaining Agreement. I have never seen different rates of pay, rules or working conditions set forth for members vs. non-members within the Eastern collective bargaining agreement or any other Railway Labor Act collective bargaining agreement. It is the nature of the Railway Labor Act, it cannot exist, a Collective Bargaining Agreement cannot discriminate .

12.    In the second part of this paragraph Class Counsel and Class Representative state:

    ***"This clarification comported with the parties' agreement that in order to participate in the Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims or have claims filed for them would be excluded from the class as they were not part of the EAL pilots who were members of ALPA and they did not individually file timely claims for enforcement of the LPPs in these proceedings. (Bankruptcy Court Docket***

*No. 56; Order Granting Motion to Clarify Method of Identifying Class Members)"*

This part of the paragraph is very confusing. It is stipulating that even though non -ALPA members like Baldridge, Mann and Dunn, the Class Representatives will be beneficiaries of the settlement agreement for the mere reason that they were active with EAL as of the stipulated date of merger (i.e.: EAL's shutdown date), the "New Hires" will not benefit from the settlement agreement even when the "New Hires" were also active at EAL as of the stipulated date of merger, (i.e.: EAL's shutdown date).

Class Counsel and Class Representatives statement is more puzzling after taking the position that non-ALPA member and/or new hire not having the benefits of the LPPs contained in the Eastern collective bargaining agreement, therefore not having a claim, that these same non-ALPA members and/or new hires were allowed to individually file timely claims or have timely claims filed for them. In my opinion this mere act would constitute a presentation of a fraudulent claim, punishable by fines not more than $5000 or imprisonment not more than five years or both under

## Title 18 U.S.C. § 152 (4).

*(4) knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney*

13.    In page 5 of this same motion paragraph numbered 5 and 6

(**Exhibit J**) brings out a very interesting view, that as result of my *(O'Neill)*

and other pilots' appeals; Continental, Class Counsel and Class

representatives were forced to start telling the truth in regards to the

composition of the class, but not the complete truth. The filing of this motion

and the acceptance of pilots names missing in the class make all five

affidavits in support of the settlement agreement fraudulent documents, both

parties lied.

14.    Paragraph 5 and 6 of this motion (referred above) reads as

follows:

> "*5.    As a result of the foregoing, the parties mutually identified 583 LPP Class Action Plaintiffs.  The Court, recognizing that there may be additional persons covered by the class definition, expressly stated at the preliminary settlement hearing conducted on November 16, 2001, the fairness hearing conducted on January 31, 2002, and the hearing on the O'Neill post trial motions conducted on April 2, 2002, that it would not limit the list of class members to the 583 persons identified by the parties but would leave the door open for persons who claimed they met the class definition to be included in the Class.  In doing so, the Court expressly stated that if the parties could not agree as to whether certain persons are or are not members of the Class, that the Court would resolve the issue – hence, this Motion.*"

> *6.    Throughout these proceedings, Class Counsel has been working diligently to ensure that all persons who meet the class definition are identified and provided with notice of the settlement.  As a result of the O'Neill appeal and the receipt of joinders in that appeal from persons not previously identified as class members who appear to qualify, as well as advice from CAL received early April 2002 that it had discovered 248 persons who were previously not identified as class members but who might be members of the class, the undersigned decided to redo the data research conducted last year and shared with CAL.  Accordingly, the undersigned retained a new data processing firm to input the entire November 1990 EAL Alphabetical Seniority List consisting of 3,387 persons into a databank, including each pilot's seniority number and date of hire (the "Master List").  The data processors then inputted the agreed list of 583 LPP Claimants and deleted them from the Master List.*

*The data processors then inputted all of the EAL pilot names and employee numbers identified on the list of persons who elected to participate in the 1994 ALPA/CAL Settlement which was prepared by Continental and provided to the undersigned (the "Takers List") and deleted those persons from the Master List[1]. The data processors then worked directly from the Bankruptcy Court docket sheets to identify, input and delete the 321 Addington/EPMC pilots who withdrew their claims against CAL from the Master List.* <u>*The data processors then deleted from the list all of the remaining "new hires" by deleting all pilots with a seniority date on or after March 3, 1989.*</u> *The resulting Preliminary List of additional LPP Plaintiffs consisted of 533 pilots. (Emphasis added by appellant)*

[1]  **1,396 of the 2,577 pilots identified by Continental as "Takers" are listed on the November 1990 EAL Alphabetical Seniority List**

As observant as this Court is and by Class Counsel and Class Representatives own admittance. *"The data processors then deleted from the list all of the remaining "new hires" by deleting all pilots with a seniority date on or after March 3, 1989"*

15.      The mechanism to exclude the new hires and other pilots had been put in place during pre- Baldridge litigation. This motion asking the Bankruptcy Court to perpetuate the deletion of eligible pilots from the settlement agreement proves that all parties have lied (Continental, Class Counsel and Class Representatives) during pre and post Baldridge litigation.

16.      Contrary to the Appellate Court decision in *O'Neill v. In re Continental Airlines, Inc.* <u>**No. 03-2374 and 03-2375**</u> stating:

*"To the extent O'Neill argues that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definitions to file a claim by April 3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy Court."* **(Exhibit B page 8)**

Class Counsel and Class Representatives never had the intention to properly represent the "New Hire" pilots and other purposely deleted pilots. In collusion with Continental, a blocking mechanism (the A List) was put in place during pre- Baldridge litigation. If the pilot's name was not in the "the A" list, even if he or she met the definition of the class he or she would not be compensated. Many, many pilots called Class representatives and Class Counsel on the issue of the settlement award and their entitlement, just to be ignored and humiliated.

17.    On June 7, 2002, Continental filed the objection to the previously discussed motion. The objection is titled as follows: Bankruptcy Court Docket 257 dated 6/7/2002, **(Exhibit L)**

**DEFENDANTS OBJECTION TO MOTION FOR FINDING THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT FOR THE CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

18.    In this objection the credibility of Class Counsel is challenged by Continental, page 4 paragraph numbered 5. Continental insinuates that Class Counsel after cross checking seniority lists made an inaccurate statement to the Bankruptcy Court missing 226 omitted pilots.

5.    Indeed, Mr. Tralins' Affidavit, which confirms that he cross-checked the list against "Eastern Airlines pre-IAM strike seniority list" and "Eastern's November 1990 seniority list", expressly provides that he believes the list (which does <u>not</u> include the Proposed New Members) is **"a complete and accurate list of all eligible members of the class in this proceeding."** Tralins' Affidavit at p. 3 (emphasis supplied). While it is true that both Plaintiffs and Continental have since determined that certain additions and deletions to the list are warranted[2], it is not likely that Plaintiffs completely "missed" 226 people. Moreover, the Smith Affidavit states that the list was derived from the official claims register in these cases identifying individual LPP claims. Smith Affidavit, p.2, ¶ 3(a).

19.    The footnote on the same page also verifies Continental's inaccuracies in their affidavit submitted to the Bankruptcy Court and a clear intent to defraud the class.

[2]    Since the list was created, Continental has discovered approximately 90 people that properly filed individual LPP claims and, therefore, should be included in the class. Continental is waiting for Plaintiffs to confirm that the inclusion of these people in the class is acceptable. As stated earlier, approximately 30 of the people on Continentals' list are also on Plaintiffs' list attached to the Motion.

The list Continental refers to in the footnote above was submitted by Ms. Edna Smith, Continental affidavit **(Exhibit G)**. In her affidavit Ms. Smith claims she verified the accuracy of the names. This list is referred to as "Exhibit A" in her affidavit signed January 2, 2002; and docketed on January 10, 2002. If I and others would have not brought up the issue of under inclusiveness of the class, it is clear that Continental was going to keep acting in bad faith and would not have revealed the names of

those pilots it had fraudulently omitted .

20.    **If Continental and Class Counsel have accused each other of their**

**negligent inaccuracies , why should this appellant  be prevented from**

**doing the same in the Bankruptcy Court or any other Court?**

**(Emphasis added).**  I and my fellow appellants question if Continental and

Class Counsel were just posturing before the Bankruptcy Court to appear

legitimately oppositional  while actually mutually moving to eliminate the

maximum number of LPP Claimants.

21.    On June 12, 2002, Class Counsel and Class Representatives filed their

reply to Continentals objection to the previously discussed . The reply is

titled as follows:  Docket 290, dated 6/12/2002  **(Exhibit M)**

**REPLY TO DEFENDANTS' OBJECTION TO MOTION OF CLASS
ACTION PLAINTIFFS FOR FINDING THAT NEWLY IDENTIFIED
FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE
SETTLEMENT FOR THE NEW CLASS MEMBERS, FOR 90 DAY
EXTENSION OF TIMETO PROVIDE NOTICE AND FOR
APPROVAL OF FORM OF NOTICE**

22.    Starting on page 2 of this reply Class Counsel and Class

Representatives point out the following:

*"1. CAL's Position is Inconsistent with its Prior Representations to this Court*

*CAL's position is in direct opposition to the legal argument that it successfully asserted in its December 22, 1992 Partial Objection to Allowance of Claims Based Upon Certain Alleged Labor Protection Provisions Involving the Air Line Pilots Association International and Eastern Air Lines Inc. (Exhibit C) wherein it requested and obtained the ruling of this Court that because ALPA filed LPP claims in these proceedings as the collective bargaining representative for the Eastern pilots, "a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants"*

By Class Counsel and Class Representatives own admittance *"ALPA filed LPP claims in these proceedings as the collective bargaining representative for the Eastern pilots, "a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants"*

ALPA is the collective bargaining representative for the Eastern pilots. A claim for all LPP Claimants is the same as all Eastern pilots and all Eastern pilots were LPP Claimants.

23.    The December 22, 1992, *Partial Objection to Allowance of Claims Based Upon Certain Alleged Labor Protection Provisions Involving the Air Line Pilots Association International and Eastern Air Lines Inc.* Bankruptcy Court Docket 290-C, dated 6/12/2002 **(Exhibit N)** which Class Counsel and Class Representatives refer to as *"(Exhibit C")* above is attached: (This subsequent document submitted to the Courts by Continental supports and reaffirms my appeal)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re

CONTINENTAL AIRLINES, INC.,
et al.,

     Debtors.

)
)
)
)
)
)
)

Chapter 11
Consolidated Case Nos.
90-932 through 90-984

DEBTORS' PARTIAL OBJECTION TO ALLOWANCE OF CLAIMS
BASED ON CERTAIN ALLEGED LABOR PROTECTIVE PROVISIONS
INVOLVING THE AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL AND EASTERN AIR LINES, INC.
AND NOTICE OF HEARING

To all parties served with this Partial Objection:

     Continental Airlines, Inc. and Continental Airlines Holdings, Inc., Debtors, make this

partial objection to that portion of all claims filed against Debtors that seeks administrative

expense status or prospective relief, including specific performance, based on claims for relief

that the Air Line Pilots Association, International ("ALPA") has asserted under the labor

protective provisions ("LPPs") of a collective bargaining agreement executed by ALPA and

Eastern Air Lines, Inc. ("Eastern") on February 23, 1986 (the "LPP Claims").1/

     Debtors' partial objection to the LPP Claims is based on the following grounds:

1.    The collective bargaining agreement out of which the claims arose was
executed and expired prepetition;

2.    The events that are alleged to have given rise to obligations on Debtors'
part under the LPPs all occurred prepetition;

3.    Even if such obligations arose, they can be satisfied through an alternative
right to payment cognizable as a general unsecured claim;

4.    The LPP Claims are not based on any post-petition services performed for
Debtors.

     Debtors have previously filed a partial objection against ALPA insofar as it has

asserted the same claim on behalf of the Eastern pilots, and on December 18, 1992 filed a

motion with the Bankruptcy Court for the District of Delaware in Adversary Proceeding No.

91-153 seeking partial summary judgment on their partial objection to ALPA's claim.

---

1/   ALPA has asserted the LPP Claims in an arbitration styled In The Matter Of An
Application Of The Air Line Pilots Association, International For An Arbitration Under The
Labor Protective Provisions Involving Eastern Air Lines, Inc., Kasher, Arb.

Debtors' motion for partial summary judgment is set for hearing on February 4, 1993. If Debtors' motion is granted, the LPP Claims will be determined to be, at best, dischargeable, general unsecured prepetition claims within the meaning of Bankruptcy Code Section 101(5), 11 U.S.C. § 101(5). Because ALPA is the collective bargaining representative for the Eastern pilots, and because the LPP Claimants are relying on an arbitration proceeding initiated by ALPA on their behalf to establish their rights under the LPPs, a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants. Any LPP Claimant who does not concede that such relief would be binding as to his or her individual claim should file a written response to this Partial Objection as provided in the attached Notice of Partial Objection. In support of this Partial Objection, Debtors incorporate by reference their Motion For Partial Summary Judgment On Their Partial Objection To Claims Based On Certain Alleged Labor Protective Provisions Involving The Air Line Pilots Association, International and Eastern Air Lines, Inc., filed with the Bankruptcy Court on December 18, 1992 in Adversary Proceeding No. 91-153. Any LPP Claimant wishing to obtain a copy of that Motion should contact the undersigned counsel for Debtors.

The filing of this partial objection does not waive any other objection(s) that Debtors will file, or have filed, as to the LPP Claims or any other claim.

WHEREFORE, Debtors pray that the LPP Claims be disallowed to the extent such claims seek relief other than as dischargeable, general unsecured prepetition claims.

Respectfully submitted,

YOUNG, CONAWAY, STARGATT & TAYLOR
Rodney Square North
Eleventh Floor
Wilmington, DE 19899
(302) 571-6600

By: _Laura Davis Jones_
Laura Davis Jones

Attorneys for Debtors and
Debtors in Possession

Dated: December 22, 1992

Continentals position in the above objection is that <u>ALPA is the collective bargaining representative for the</u> Eastern pilots; <u>that ALPA had</u>

filed an umbrella claim covering all Eastern pilots, that the LPP claims are

based on a pending arbitration which includes all Eastern pilots,  a ruling

declaring the LPP claims to be general unsecure prepetition claims will be

binding on all the LPP claimants. There is no mention of ALPA

membership requirement.

24.     Continuing on page 8 and continuing on page 9 **(Exhibit M)** of this

reply Class Counsel and Class Representatives reiterate the position that all

Eastern pilots were covered by ALPA's umbrella proof of claim.

*"Next, CAL's position that if an LPP Claimant opted out of the ALPA/CAL settlement, he or she was required to file a proof of claim is disingenuous.  None of the opt-out LPP Claimants could have filed an individual proof of claim after learning of the ALPA/CAL settlement – as the court docket shows, the bar date for such claims was September 27, 1991, over 2 ½ years prior to the settlement.  CAL's argument that this Court should accept the proposition that it was appropriate to advise the Eligible Pilots they had a right to opt out of the settlement and retain their claims when, in fact, opting out would have left them with no claim whatsoever must be rejected"*

25     If Continental's position was that if omitted pilots, who were not

members of ALPA, were going to be treated differently than the rest of the

Eastern pilots, even when all pilots were covered by the same CBA; then

Continental was under the obligation to notify the omitted pilots of their

intention and advise each individually omitted pilot of their right to file an

individual claim  by the bar date of September 27, 1991. Continental did not.

26.     If the Bankruptcy Court had a different interpretation of which pilots

(members or non- members of ALPA) were covered  under the ALPA's

umbrella proof of claim, then the Bankruptcy Court should have had

stipulated so in the ALPA/CAL settlement order, and set a new bar date with

proper notification to the LPP claimants affected. Absent of the Bankruptcy

Court order, the Bankruptcy Court confirms that it treated all the Eastern

pilots as a whole, covered by ALPA's umbrella proof of claim .

27.    Continental did not have a problem subjecting the omitted pilots to

the compensation, work rules, and conditions dictated in the Eastern CBA.

Continental with the help of Class Counsel and Class Representatives are

denying the omitted pilots  their legally determined LPP claims,  claims

which arise from the LPPs contained in the same CBA.

28.    Starting on page 11 **(Exhibit M)**Class Counsel and Class

Representatives in collusion with Continental took the following position:

*"4. The Class Definition Expressly Includes Persons Whose Claims Were*
     *Filed by ALPA*

        *CAL contends that the substance of the Plaintiffs' Motion to Clarify was*
*"whether former EAL pilots covered under the ALPA proof of claim should be part of*
*the class." This is simply not true.*
        *The Motion for Clarification was brought because the class Action Plaintiffs*
*contended that ALPA's proof of claim covered all Eastern pilots, regardless of whether*
*or not they were members of the Union, and that the same thus applied to the new*
*hires. CAL disagreed. After carefully reviewing ALPA's proof of claim with CAL's*
*attorneys, the Plaintiffs agreed that because the proof of claim was expressly limited to*
*ALPA members, that it would only be effective for ALPA members and that it would*
*not apply to new hires. Consistent with this agreement, CAL and the Plaintiffs*

*stipulated before the Court for the entry of its July 10, 2001 Order Granting Class Action Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List and that they be "<u>members of Eastern's flight deck collective bargaining unit</u>" rather than simply former EAL flight deck employees "who claim they are entitled to the benefits of the collective bargaining agreement (the "CBA") between Eastern Airlines and the Air Line Pilots Association." This clarification comported with the parties' agreement that in order to participate in the Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims or have claims filed for them would be excluded from the class as they were not part of the EAL pilots who were members of ALPA and they did not individually file timely claims for enforcement of the LPPs in these proceedings.*

29.    Continental and Class Counsel knowing the law, specifically the law of this case proceeded to intentionally establish several insidious mechanisms by which the eligible pilots ( LPP claimants as recognized by every Court) would be excluded from the settlement agreement. Those mechanisms are the unalterable "A list" in the settlement order, denying all new hires their LPP claims, selectively placing a limited number of claimants on the " A list", and not informing with due diligence all those who were valid "B list" LPP claimants.

30.    On June 14, 2002 the Bankruptcy Court granted the motion to the plaintiffs titled *MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT FOR THE CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE*,  ; Bankruptcy Court Docket 291

06/14/2002; **(Exhibit O)**

By granting the motion, the Bankruptcy Court set the precedent of

reopening the case past the bar date of April 02, 2002 and establishing a new

bar date for participants either previously identified "Exhibit A list" and

newly identified "Exhibit B list". The Bankruptcy Court had allowed the

parties involved to challenge and change the interpretation of the definition

of the composition of the class and also eliminate pilots on "Exhibit A list"

and "Exhibit B list" to be eliminated because these pilots were hired after

March 04, 1989.

31.     The Bankruptcy Court on June 14, 2002, set a precedent to

add purposely omitted pilots to the settlement and delete pilots who were

awarded the settlement.

## OUTSIDE LITIGATION AND THE COURTS

32.     Instead of depositing the settlement shares and monies under each

beneficiary name and social security number in an account at Morgan

Stanley, Class Counsel forwarded all the stock to his brother-in-law so his

brother-in-law could generate more business for himself. Class Counsel's

brother-in-law is an account representative at Morgan Stanley. The brother-

in-law made a mess that took substitute class counsel over a year to unscramble the mess.

33.    As time progressed many pilots tried to obtained their award, some even wrote directly to the Bankruptcy Court for assistance so their award could be disbursed to them. No pilots were added to the list even though hundreds contacted the office of Class Counsel.

34.    Class Representatives, also directors of a Florida corporation named Eastern Pilots for Fairness (EPFF) **(Exhibit P)** to the best of my knowledge, and I stand to be corrected, never sent a letter to their constituents, including myself, regarding the two Bankruptcy orders and its bar dates. Prior to the settlement Class Representatives never had a problem sending letters to the EPFF constituents when funds were being raised for the purpose of covering legal expenses regarding the LPP litigation . *see*

**(Exhibits I-1 thru I-3 page 4 numbered 8 )**

35.    Due to my involvement in the LPP litigation many pilots contacted me through time including before the settlement April 2, 2002 bar dates asking me what should they do in order to obtained their award. I instructed them to contact Class Counsel and/or Class Representatives.

36.     I personally, on numerous occasions, contacted Class Counsel,

William Mann and Larry Dunn regarding (a) pilots who had not received

their proof of claims and (b) pilots which fell within the class definition as

stated on the January 31, 2002 Bankruptcy Court order and were not

included in the "Exhibit A" settlement.

37.     Class Counsel on various occasions took malicious position that if

any pilot had objected and/or appealed the bankruptcy settlement order, such

pilot would not be allowed to participate on the settlement. Class Counsel

also took the position that if any pilot's name was not in the original

"Exhibit A", that specific pilot was not entitled to the settlement agreement.

Class Counsel's reasoning was that he had made an agreement with

Continental on the names on the list and Continental would be reluctant to

add any names.

38.     Class Counsel tried to reach an agreement with me, for exchange of

my withdrawal of the previous appeal. Class Counsel led me to believe that

because he had control of all the shares, once the bar dates were over the

remaining shares would be equally distributed to the participants of the

settlement, and I would get 1000 shares more than everyone else. In this

example it is absolutely obviously that Class Counsel was not aggressively

pursuing all pilots that who were entitled to the settlement.

39.    I also contacted Continental Counsel on numerous occasions

regarding the lack of issuance of the settlement awards to the pilots.

Continental explained their obligation under the settlement and their

compliance, and that they had provided the funds.


**CONCLUSION**

ALPA, in its capacity as collective bargaining representative for all

former Eastern pilots, had the authority to settle the lawsuits and grievances

covered by the ALPA/CAL settlement because ALPA was a party to the

claim which derived from a grievance contained in the CBA covering

all Eastern pilots equally. The ALPA proof of Claim clearly addresses all

Eastern pilots without discriminating based on their membership in ALPA.

Every litigation that ALPA commenced or was involved in defending the

LPPs clearly addressed all Eastern pilots.

Unions maintain the authority as exclusive collective bargaining

representative to litigate and settle union litigation against employers who

have filed for protection under the Bankruptcy Code, subject to the union's

duty of fair representation. See *Wien Air Alaska , Inc. v. Bachner*, 865F.2d

1106 (9th Cir. 1989). ALPA did maintain the authority to settled on behalf of

all the Eastern pilots in the ALPA/CAL agreement but chose not to, leaving the pilots who did not respond to the agreement and pilots covered under the exclusivity of the umbrella claim to pursue their own claims. ALPA was the sole creditor as it was permitted by Bankruptcy Code to represent the Eastern pilots, there could only be one recognized claim in the Bankruptcy Court on behalf of all Eastern pilots' LPPs. When ALPA removed the umbrella claim there was no form that any Eastern pilot could have filed an individual claim, the bar date was past and the Bankruptcy Court did not provide the means to establish a new bar date.

If Continental had been able to dismiss the LPP claims, Continental would certainly have included the omitted pilots in the dismissal.

If Class Counsel and Class Representative would had commenced the arbitration, Class Counsel and Class Representative would have had to certify the whole seniority list which included the omitted pilots, i.e.: all pilots.

Continental, Class Counsel and Class Representatives knew very well that they were lying when they submitted the five affidavits, the same affidavits used by the Bankruptcy Court in approving the settlement agreement. The law is very specific, thou shall not commit perjury.

The omitted pilots still preserve their right to arbitrate as describe in *Continental I*. If and when the omitted pilots file for arbitration, Continental will bring them back into the Bankruptcy Court and fight against their right to arbitrate. Continental will use this class certification and settlement agreement to prevent the omitted pilots from invoking their arbitration, This is Continental's *modus operandi*. They tried to eliminate the remaining Eastern pilots after the ALPA/CAL settlement and the courts including this Court denied Continental's motions.

Continental did not have a problem subjecting the omitted pilots, to the compensation, work rules, and conditions dictated in the Eastern CBA, but now with the help of Class Counsel and Class Representatives they are denying valid LPP claims, claims that arise from the LPPs contained in the same CBA they were subjected to.

As observant as this Court is, I am certain that it will observe that 87% of the documents submitted as exhibits attached to this document were generated by Continental, Class Counsel and Class Representatives.

Respectfully Submitted,

Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, Fl. 33183
(305) 386-4866

34

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| CONTINENTAL AIRLINES, INC., | ) | |
| | ) | |
| _____ | ) | Bk. Nos. 90-932 through |
| | ) | 90-984 (MWF) |
| Ramon E. O'Neill | ) | Jointly Administered |
| Appellant | ) | BK. Adversary No. 99-412 |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-568 |
| | ) | |
| | ) | |
| CONTINENTAL AIRLINES, INC. | ) | |
| Appellees | ) | |
| | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I, Ramon E. O'Neill, certify that I am not less than 18 years of age, and that service of the **APPEAL** was made on February 16, 2007 upon the attached service list by first class mail, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

*Ramon O'Neill*
Ramon E. O'Neill, *Pro Se*
7424 SW 129 Ct.
Miami, FL. 33183
Cell # (786) 252-0175
Home (305) 386-4866

Councel for Continental Airlines:
Robert Brady, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801
(302) 571-6600

Counsel for LPP Claimants:
Bruce Jamenson, Esq.
Prickett, Jones & Elliot, P.A.
1310 King Street
Wilmington, DE 19899
(302) 888-6532

United States District Court
District of Delaware
J. Caleb Boggs Federal Bldg
844 North King Street
Wilmington, DE 19801-3519
302-573-6170



This pouch is resealable.

**FedEx US Airbill**
Express

8504 5132 4335

FedEx Retrieval Copy

467

**1 From**

Date 02-16-07

Sender's FedEx
Account Number 160597208

Sender's
Name Ramone E ONeill

Company

Phone 305 206 4810

Address 7424 SW 129 CT

City Miami    State FL    ZIP 33156

**2 Your Internal Billing Reference**

**3 To**

Recipient's
Name U.S District Court
District of Delaware

Phone 302 573-6170

Company J. Caleb Boggs Federal Bld.

Recipient's
Address 844 North King Street

City Wilmington    State DE    ZIP 19801

8504 5132 4335

0200

From
(D No.

**4a Express Package Service**    Packages up to 150 lbs.

1 FedEx Priority Overnight
5 FedEx Standard Overnight
6 FedEx First Overnight

3 FedEx 2Day    20 FedEx Express Saver

**4b Express Freight Service**    Packages over 150 lbs.

7 FedEx 1Day Freight
8 FedEx 2Day Freight
83 FedEx 3Day Freight

**5 Packaging**

1 FedEx Envelope    2 FedEx Pak    3 FedEx Box    4 FedEx Tube    Other

**6 Special Handling**    Include FedEx address in Section 3.

3 SATURDAY Delivery
1 HOLD Weekday at FedEx Location
31 HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

No    Yes    Yes    Cargo Aircraft Only
6 Dry Ice

**7 Payment**    Bill to:

1 Sender    2 Recipient    3 Third Party    4 Credit Card    5 Cash

Total Packages    Total Weight    Total Charges

Shipper's Authorized Delivery Without a Signature

Ramone ONeill

# TABLE OF CONTENTS

**Exhibit A**    Bankruptcy Court Order on Appeal
Bankruptcy Court Docket No. 451

**Exhibit B**    *O'Neill v. In re Continental Airlines, Inc.* No. 03-2374

**Exhibit C**    Final Judgment and Order of Dismissal
Bankruptcy Court Docket No. 102

**Exhibit D**    *In Re: Trans World Airlines v Elizabeth A. M. Robinson*, Civil No. 04-cv-00234(SLR)

**Exhibit E**    Eastern Airlines Collective Bargaining Agreement
SECTION 1-RECOGNITION AND SCOPE

**Exhibit F**    NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF
CLASS ACTION AND PROPOSED SETTLEMENT AND
SETTLEMENT HEARING Bankruptcy Court Docket 71- 2

**Exhibit G**    Affidavit from Continental, Ms. Edna Smith
Bankruptcy Court Docket No. 72

**Exhibit H**    Affidavit from Class Counsel (Myles Tralins,
Bankruptcy Court Docket No. 69-1

**Exhibit I**    Affidavit from each Class Representative
Bankruptcy Court Docket No. 70-2, 70-4 and 70-5

**Exhibit J**    MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING
THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE
MEMBERS OF THE CLASS, FOR ENTRY OF ORDER
REQUIRING CAL TO FUND THE SETTLEMENT FOR THE
CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF
NOTICE
Bankruptcy Court Docket No. 169

**Exhibit K**        ALPA Proof of Claim

**Exhibit L**        DEFENDANTS OBJECTION TO MOTION FOR FINDING
                     THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE
                     MEMBERS OF THE CLASS, FOR ENTRY OF ORDER
                     REQUIRING CAL TO FUND THE SETTLEMENT FOR THE
                     CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
                     PROVIDE NOTICE AND FOR APPROVAL OF FORM OF
                     NOTICE
                     Bankruptcy Court Docket No. 257

**Exhibit M**        REPLY TO DEFENDANTS' OBJECTION TO MOTION OF
                     CLASS ATION PLAINTIFFS FOR FINDING THAT NEWLY
                     IDENTIFIEDFORMER EAL PILOTS ARE MEMBERS OF THE
                     CLASS, FOR ENTRY OF ORDER REQUIRING CAL TO FUND
                     THE SETTLEMENT FOR THE NEW CLASS MEMBERS, FOR
                     90 DAY EXTENSION OF TIMETO PROVIDE NOTICE AND
                     FOR APPROVAL OF FORM OF NOTICE
                     Bankruptcy Court Docket No. 290

**Exhibit N**        Partial Objection to Allowance of Claims Based Upon
                     Certain Alleged Labor Protection Provisions Involving
                     the Air Line Pilots Association International and Eastern
                     Air Lines Inc.
                     Bankruptcy Court Docket 290-C

**Exhibit O**        MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING
                     THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE
                     MEMBERS OF THE CLASS, FOR ENTRY OF ORDER
                     REQUIRING CAL TO FUND THE SETTLEMENT FOR THE
                     CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
                     PROVIDE NOTICE AND FOR APPROVAL OF FORM OF
                     NOTICE
                     Bankruptcy Court Docket 291

**Exhibit P**        Florida Corporation named Eastern Pilots for Fairness
                     (EPFF)

EXHIBIT  A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| *et al.*, | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | **Hearing Date: July 21, 2006 at 4:00 p.m.** |
| INC., | ) | |
| | ) | **Ref. Docket Nos. 427-436, 438-440, 443-445 & 448** |
| Defendants. | ) | |

## ORDER DENYING MOTIONS: DOCKET NOS: 427-436, 438-440, 443-445 & 448

The Court having considered the motions identified on Exhibit A annexed hereto

(collectively, the "Motions") [Docket Nos. 427-436, 438-440, 443-445 & 448] and the arguments

made therein; and upon consideration of the arguments made on the record of the hearing held in this

adversary proceeding on July 21, 2006; and the Court having made oral rulings on the record at such

hearing, all of which are incorporated herein; and no other or further notice being necessary or

required; and after due deliberation and sufficient cause appearing therefor, it is

045085.1007

7/26/06
1151

ORDERED, that the Motions, and each of them, are hereby denied.

Dated: Wilmington, Delaware
        July 24, 2006

                                        Mary F. Walrath
                                        Chief United States Bankruptcy Judge

## EXHIBIT A

| Filing Date | Docket No. | Docket Text |
|---|---|---|
| 07/20/2006 | 448 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Luis A. Baldoni |
| 07/18/2006 | 445 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Francis C. Armstrong |
| 07/18/2006 | 444 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Rafael Villanueva |
| 07/18/2006 | 443 | Motion to Compel and Compliance with January 31, 2002 Order Filed by J. Trigg Adams |
| 07/12/2006 | 439 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Richard Alan Osborne |
| 07/11/2006 | 440 | Motion to Reopen Adversary Proceeding but Object to the class Action Plaintiffs' Stipulations for Motion to Reopen Filed by Brownie N. Inman |
| 07/11/2006 | 438 | Motion to Compel Compliance with January 31, 2002 Order and Motion for Order Reopening Adversary Proceeding Filed by Ramon E. O'Neill |
| 07/11/2006 | 416 | Motion to Reopen Adversary Proceeding for Limited Purpose of enabling Compliance with this Court January 31, 2002 Order and Objections to the Stipulations for the Motion to Reopen by Class Representatives Because again Class Representative are not telling the Truth in Regards to the Composition of The Class Members Filed by Pete G. Neumann |
| 06/20/2006 | 435 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Patrick M. Broderick |
| 06/19/2006 | 434 | Motion to Reopen Adversary Proceeding. Filed by JAMES BALDRIDGE, LARRY DUNN, LPP CLAIMANTS, WILLIAM MANN |
| 06/15/2006 | 433 | Motion to Compel and Compliance with January 31, 2002 Order Filed by James M. Reifke |
| 06/13/2006 | 432 | Motion to Compel and Compliance with January 31, 2002 Order Filed by Brownie |

|            |      | N. Inman                                                                                                                                                                                              |
|------------|------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 06/13/2006 | 431  | Motion to Compel and Compliance with January 31, 2002 Order Filed by Joseph F. Kucklick                                                                                                                |
| 06/12/2006 | 430  | Motion to Compel and Compliance with January 31, 2002 Order Filed by David A. Burns                                                                                                                    |
| 06/09/2006 | 429  | Motion to Compel and Compliance with January 31, 2002 Order Filed by Michael D. Donovan                                                                                                                |
| 06/08/2006 | 428  | Motion to Reopen Adversary Proceeding and Chapter 11 Cases for the Limited Purpose of Enabling Compliance with this Court January 31, 2002 Order Filed by Peter G. Neumann                              |
| 05/31/2006 | 427  | Motion to Compel and Compliance with January 31, 2002 Order Filed by Peter G. Neumann                                                                                                                  |

EXHIBIT  B

**UNREPORTED- NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-2374 and 03-2375

IN RE: CONTINENTAL AIRLINES INC., ET AL,

Debtor

RAMON E. O'NEILL

v.

JAMES BALDRIDGE; WILLIAM MANN; LARRY DUNN, individually
and as representatives of a class of persons similarly
situated who are referred to as LLP CLAIMANTS

UNITED STATES TRUSTEE

Ramon E. O'Neill,

Appellant

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civ. Nos. 02-CV-00375 and 02-CV-00479)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)

March 5, 2004

Before:   Sloviter, Nygaard, and Chertoff, Circuit Judges.

(Filed March 9, 2004 )

OPINION

PER CURIAM

Ramon O'Neill, a pilot formerly employed by Eastern Airlines, Inc., appeals from

an order of the United States District Court for the District of Delaware, affirming the

final judgment and order of dismissal of an adversary proceeding in the Continental

Airlines, Inc. bankruptcy. We will affirm.

As we write for the parties, we need not set forth the complete procedural and

factual history of the case. The history is set forth in detail in In re Continental Airlines,

125 F.3d 120, 124-28 (3d Cir. 1997) ("Continental I"). In that case, we held that the

question of whether there had been a "merger" between Continental and Eastern under

the terms of the collective bargaining agreement, and thus whether LPP Claimants[1] had

standing to maintain an individual claim for seniority integration was a matter for

arbitration, and that the District Court properly vacated an injunction against arbitration.

---

[1] "'LPP Claimants' refers to a group of former Eastern pilots [including O'Neill]
whose claims in this appeal are based on certain 'labor protective provisions' (LPPs)
contained in the collective bargaining agreement." Continental I, 125 F.3d at 124 n.1.

2

Continental I, 125 F.3d at 130, 137-38. We also held that "any claim based on an award of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment." Id. at 136.

Following Continental I, Continental took the position that any seniority integration right acknowledged in arbitration would be subject to the limitations of Bankruptcy Code Section 502(b)(7), 11 U.S.C. § 502(b)(7), and would thus be limited to one year's back pay based on Continental's pay structure as of January 1991. An attorney for the LPP claimants agreed to bring a declaratory judgment action in the Bankruptcy Court to determine whether § 502(b)(7) applied, and requested class certification for the action. The Bankruptcy Court certified the class under Fed. R. Civ. P. Rule 23(b)(2), and later determined that § 502(b)(7) applied. Based on that finding, the LPP claimants agreed to settle with Continental, with each class member to receive a prepetition general unsecured claim in the amount of $110,000.[2] Continental represented that this amount would be substantially more than the claimants would receive under § 502(b)(7)'s one-year cap.

On January 31, 2002, the Bankruptcy Court held a hearing on a petition to approve the settlement. O'Neill was the sole class member to appear at the hearing to object to the settlement terms. The Bankruptcy Court approved the settlement, finding it to be "in all

---

[2] Although the Class initially appealed the declaratory judgment decision, following settlement, a stipulation for dismissal of the appeal was filed on February 19, 2002 and approved by the District Court on February 20, 2002.

3

respects, fair, reasonable and adequate to the Class." Appellees' App. at 223. Without

seeking a stay of the implementation of the settlement order, O'Neill appealed to the

District Court. The appeal was docketed in the District Court at 02-CV-00375 ("the

Settlement Order appeal"). On March 6, 2002, Continental filed a motion to compel

O'Neill to comply with the settlement order. The Bankruptcy Court entered an order

granting the motion on May 2, 2002. O'Neill's appeal from that order was docketed in

the District Court at 02-CV-00479 (the "Compliance Order appeal").

After motions and briefs were filed in the District Court, the Court entered an

order on April 1, 2003, captioned with both district court docket numbers, which affirmed

the Bankruptcy Court's settlement order, found the Settlement Order appeal moot, and

granted the appellees' motions to dismiss. The Court also held that the Compliance Order

appeal was mooted by the resolution of the Settlement Order appeal. This timely appeal

followed.[3]

O'Neill's appeal appears to raise three main points. First, he argues that

Continental perpetrated a fraud on the court by failing to disclose the "Ross arbitration,"

whereby former People Express pilots, some of whom were on Eastern's pilot seniority

list, were integrated into Continental's work force, while all other Eastern pilots were

precluded from a specific performance award. O'Neill appears to argue that due to this

---

[3] On the same day that O'Neill filed his Notice of Appeal, the District Court denied his
request for rehearing en banc. Although O'Neill's Notice of Appeal does not mention
this order, to the extent that he intended to appeal that order, we hold that the District
Court did not abuse its discretion in denying the motion for rehearing.

4

new evidence, <u>Continental I</u> should be overturned. Second, O'Neill argues that the settlement was not fair, as the $110,000 does not cover his last year's compensation. Third, O'Neill argues that his right to arbitration was not extinguished by the settlement. In the course of these arguments, O'Neill seems to argue that he was not properly represented by class counsel.

Continental argues (and the class representative appellees make similar arguments) that O'Neill cannot argue that there is any basis for relief on appeal because he failed to appeal the Bankruptcy Court's order granting class certification, and he failed to appeal the Bankruptcy Court's order finding that any claim would be capped by Bankruptcy Code § 502(b)(7). The appellees also agree that O'Neill's appeal is moot.

We turn first to the issue of mootness, because, if a case is constitutionally moot, we lack power to hear it. <u>United Artists Theatre Co. v. Walton</u>, 315 F.3d 217, 226 (3d Cir. 2003). A case is constitutionally moot only if the court cannot fashion any form of meaningful relief. <u>In re Continental Airlines, Inc.</u>, 91 F.3d 553, 558 (3d Cir. 1996) (en banc), <u>cert. denied</u>, 519 U.S. 1057 (1997). We do not find the case to be constitutionally moot. If we were to find that the settlement in this case was unfair to the class, we cannot say that there would be no possible relief for the Appellant.

The District Court's holding that O'Neill's appeal was moot may refer to equitable mootness; a doctrine which "prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became

5

extremely difficult to retract." Nordhoff Investments, Inc. v. Zenith Electronics Corp.,

258 F.3d 180, 185 (3d Cir. 2001).[4] The equitable mootness inquiry "is a more limited

inquiry into whether, though we have the power to hear a case, the equities weigh against

upsetting a bankruptcy plan that has already been confirmed." United Artists, 315 F.3d at

226. Particularly significant here is the fact that O'Neill did not obtain a stay of the

settlement confirmation. See In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir.1993)

(party who appeals without protection of stay does so at his own risk). However, we

decline to engage in a complete analysis of whether the appeal is equitably moot. Rather,

we will, like the District Court, affirm the Settlement Order on the merits.

We review a district court's decision to approve **a proposed** settlement of a class

action for an abuse of discretion. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). We

likewise review a court's grant of class certification under an abuse of discretion

standard. Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 165-66 (3d

Cir. 2001). Appellees argue that O'Neill cannot challenge the class certification, as he

---

[4] To determine whether an appeal is equitably moot, the court examines five factors:

> (1) whether the reorganization plan has been substantially consummated,
> (2) whether a stay has been obtained,
> (3) whether the relief requested would affect the rights of the parties not
> before the court,
> (4) whether the relief requested would affect the success of the plan, and
> (5) the public policy of affording finality to bankruptcy judgments.

In re: Continental Airlines, Inc., 91 F.3d at 560.

6

did not file an appeal of the order certifying the class. However, we hold that to the extent he objected to the class certification at the settlement hearing, he preserved his right to object to the certification on appeal. In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261-62 (10th Cir. 2004).

O'Neill did object to the class certification at the hearing, but he only objected to the extent that he felt the class was underinclusive, as it failed to include certain pilots, including those pilots who were parties to the Ross arbitration. This is related to O'Neill's first major point: that this Court should overturn Continental I and the settlement agreement because Continental failed to disclose the Ross arbitration in its bankruptcy.[5] The Bankruptcy Court noted that the Ross arbitration decision dealt with former Peoples Express pilots; and, while they may have been Eastern pilots at some point, the arbitration award was based on the Peoples Express merger. Appellees' App. at 177. O'Neill appears to argue that the former Peoples Express pilots should be members of the present class; and that if they were, he would be entitled to a specific performance award so that all class members would be treated equally. O'Neill has not represented that he was a former Peoples Express pilot. Thus, he is not entitled to the same treatment as those pilots. Further, his argument fails as this Court has already limited class members' relief to money damages. Continental I, 125 F.3d at 136.

---

[5] Continental declined to discuss this issue in its brief "because matters relating to the so-called 'Ross Arbitration' are not contained in the record on appeal . . . ." Brief at 14. We note that the Ross arbitration was discussed at length in the settlement fairness hearing, and thus find that it is the proper subject of appeal.

7

p.1

To the extent that O'Neill argued that other pilots were missing from the class list,

the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a

clause which allowed other class members who met the definitions to file a claim by April

3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy

Court.

O'Neill's second argument is that the settlement is not fair. Given our previous

holding that any claim based on an award of seniority integration would be satisfied by a

monetary claim in bankruptcy, the Bankruptcy Court's holding that any such claim would

be limited to one-year's salary pursuant to § 502(b)(7),[6] and the fact that the settlement

provided two to three and one-half times the one-year cap for every class member, we

hold that the Bankruptcy Court did not abuse its discretion in finding that the settlement

was fair. O'Neill argues on appeal that the $110,000 settlement amount does not cover

his last year's compensation. O'Neill argument appears to be based on his salary at

Eastern, rather than what his salary would have been at Continental. As class counsel

pointed out at the fairness hearing, even if an arbitrator found that O'Neill's seniority had

been preserved through the LPPs, his position would have been subject to Continental's

pay structure. Appellees' App. at 185. O'Neill conceded in the fairness hearing that the

maximum Continental salary was $64,000. Appellees' App. at 187. Thus, the $110,000

---

[6] As Appellees note, we cannot reach the merits of whether the Bankruptcy Court correctly found that § 502(b)(7) applied, as no party preserved a timely appeal to that final decision.

exceeds any amount he could have recovered in arbitration, as the amount would be

subject to the cap of § 502(b)(7).

Finally, O'Neill argues that his right to arbitration survives the settlement. We

disagree. If O'Neill were to return to arbitration, the arbitrator might recognize his right

to seniority integration under the LPPs. However, any amount awarded by the arbitrator

would be subject to § 502(b)(7)'s cap and would be less than he can recover under the

settlement. Any relief awarded by the arbitrator would be meaningless; thus, O'Neill's

right to arbitration has been mooted by the settlement.

For the foregoing reasons, we will affirm.

EXHIBIT  C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | } | |
| | } | Case No. 90-932 |
| CONTINENTAL AIRLINES, INC., et. al., | } | Chapter 11 |
| | } | |
| Debtors | } | |
| | } | |
| JAMES BALDRIDGE, WILLIAM MANN, and LARRY DUNN, individually, and as representatives or a class of persons similarly situated who are referred to as the LPP CLAIMANTS, | } | |
| | } | |
| | } | |
| | } | |
| Plaintiffs, | } | Adversary Proceeding No. A-99-412 |
| | } | Class Action |
| v. | } | |
| | } | |
| CONTINENTAL AIRLINES HOLDINGS, INC., CONTINENTAL AIRLINES, INC. and SYSTEM ONE HOLDINGS, INC. | } | |
| | } | |
| | } | |
| Defendants. | } | |
| | } | |

### FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter having come before this Court on Motion for Approval of a Settlement in this class action, and the Court, having considered all papers filed in connection with said motion, good cause appearing therefor, it is,

ORDERED, ADJUDGED AND DECREED THAT:

102

1.  This Court has jurisdiction over the subject matter of this litigation and over all Parties, including all members of the Class.

2.  On November 26, 2001: (a) the Class Settlement Notice, together with copies of the Proof of Claim substantially in the forms annexed as Exhibits 1 to 3 to Exhibit B, respectively, to the Settlement Agreement were mailed by First Class Mail to all members of the Class as identified on Exhibit C to the Settlement Agreement at their addresses listed therein; (b)the Summary Notice for Publication, substantially in the form annexed as Exhibit 2 to Exhibit B to the Settlement Agreement was published once in the National Edition of USA Today on December 3, 2001; and (c) both the Summary Notice for Publication and the Class Settlement Notice were posted on the Internet by Class Counsel on November 27, 2001. Such notice is hereby determined to be in full compliance with Rule 23 of the Federal Rules of Civil Procedure and of due process, is found to be the best notice practicable under the circumstances, and to constitute due and sufficient notice to all Persons entitled thereto.

3.  The Court finds that the Class consists of those persons identified on Exhibit A attached hereto, without prejudice to persons who file a Proof of Claim on or before April 3, 2002 and who establish, to the mutual agreement of the parties, or, absent same, to the Court, that they satisfy all criteria necessary to be included in the Class.

4.  This Court hereby approves the Settlement set forth in the Stipulation and Agreement of Compromise and Settlement (the "Settlement Agreement") dated

October 16, 2001, and finds that the Settlement of the claims of the Plaintiffs and the Class embodied therein is, in all respects, fair, reasonable and adequate to the Class. The terms and phrases used in this judgment shall have the same definition and meaning as in the Settlement Agreement.

5. The Court hereby dismisses on the merits with prejudice and without costs or attorneys' fees except as provided for in the Settlement Agreement, any and all claims, actions, requests for relief or causes of action alleged in the Baldridge class action complaint by Plaintiffs and the members of the Class as to all Defendants.

6. Upon the Effective Date, the Class Representatives and the Class, on behalf of themselves, the Persons they represent, their heirs, predecessors, successors and assigns, or any Person claiming or purporting to claim through any of the foregoing, for good and sufficient consideration, the adequacy of which is hereby acknowledged, shall be deemed to have released and forever discharged each and every Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Released Parties.

7. Upon the Effective Date, Class Counsel, on behalf of the Class Representatives and the Class, shall file a dismissal with the clerk of the United States District Court for the District of Delaware of the Baldridge LPP Class Action plaintiffs' pending appeal of the October 12, 2000 Order and Opinion of this Court.

3

8.  Upon the Effective Date, Class Counsel, on behalf of the Class Representatives and the Class, shall withdraw its Demand for LPP Arbitration filed with the National Mediation Board in March, 1998.

9.  Upon the Effective Date, the Class Representatives and all of the Members of the Class and anyone claiming through any of them will be forever barred and enjoined from commencing, instituting or prosecuting any action or other proceeding in any court of law or equity, arbitration tribunal or administrative or other forum directly, representatively or derivatively against any of the Released Parties as to any of the Settled Claims.

10. The Settlement Agreement, all proceedings undertaken in accordance with the terms set forth therein and all papers relating to it are not, and shall not be construed to be, an admission by any Party of either the validity of any of the claims or defenses or of liability to Plaintiffs, any member of the Class or any others with respect to any LPP claim arising out of the alleged Eastern merger, which liability is hereby expressly denied and disclaimed by Continental. The Settlement Agreement and any of the papers, negotiations, transactions or proceedings relating thereto, or any of the terns hereof or recitations herein, shall not be offered or received in evidence in any proceeding as an admission on the part of the Parties, or any of them, of liability or of the merit or lack of merit of any claim or defense.

11.    This Court has reviewed the application of Class Counsel for an award of attorneys' fees and hereby awards Class Counsel __30__% of the Gross

4

Settlement Consideration which shall be paid to Class Counsel upon the Effective Date.

12.    This Court has reviewed the application of Class Representatives James Baldridge, William Mann and Larry Dunn for a compensation award and hereby awards each, for the services each performed as Class Representatives in this litigation, __1,700__ shares of Continental Airlines common stock to be distributed from the Gross Settlement Consideration upon the Effective Date.

13.    This Court has reviewed the application of Class Counsel for reimbursement of expenses advanced by Eastern Pilots for Fairness, Inc. and hereby awards Eastern Pilots for Fairness, Inc. $ __95,530.14__ to be paid from the Gross Settlement Consideration upon the Effective Date.

14.    This Court has reviewed the application of Class Counsel for the payment of claims administration and publication expenses of the Claims Administrator and hereby awards The Garden City Group, Inc. claims administration expenses not to exceed $ __49,140.48__ to be paid from the Gross Settlement Consideration upon the Effective Date.

15.    If this Final Judgment is reversed, vacated, or modified, this Final Judgment (except for this Paragraph and paragraph 10 hereof) shall be rendered null and void and vacated *nunc pro tunc,* the Settlement shall be deemed terminated pursuant to the terms of the Settlement Agreement and the Parties shall be deemed to have reverted to their respective status and position as provided in Article VIII of the Settlement Agreement.

5

16. Without in any way affecting the finality of this Final Judgment, this Court hereby reserves and retains continuing jurisdiction over matters subsequently arising concerning this Settlement, including performance of the Settlement Agreement and the Settlement embodied therein, including, but not limited to the award of attorneys' fees, costs and expenses to Class Counsel and the Class from the Gross Settlement Consideration, the approval or rejection of any Proofs of Claim filed by members of the Class, the approval of settlement Administration Costs and the distribution of the proceeds of the Settlement in accordance with the Settlement Agreement and Continental's Revised Second Amended Joint Plan on Reorganization.

SO ORDERED        Jan. 31        ,2002.

BY THE COURT:

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

6

**EXHIBIT A**

## BALDRIDGE LPP CLASS ACTION CLAIMANTS

1.   Abbott, Robert D.

2.   Aber, L.A.

3.   Abrams, Billy L.

4.   Adams, Jr., J.T.

5.   Adams, Keith J.

6.   Alexander, Harold

7.   Alford, Wayne L.

8.   Alvarez, Jr. Jose A.

9.   Anderson, Ronald R.

10.  Andrews, Jr. George M.

11.  Angeletti, Thomas J.

12.  Armstrong, III F.C.

13.  Arnott, Brian G.

14.  Attebery, William M.

15.  Ayer, K.H.

16.  Baalen, P.

17.  Babbitt, J. Randolph

18.  Baldoni, L.A.

19.  Baldridge, James H.

20.  Balukonis, V.J.

21.  Baque, III Frank

22.    Barge, Patrick S.

23.    Barnes, H. Bryant

24.    Barnes, William H.

25.    Barrero, Frank

26.    Bartlett, David R.

27.    Bauch, James H.

28.    Beard, Ronald E.

29.    Beattie, Donald G.

30.    Beaty, Gregory L.

31.    Behr, Peter J.

32.    Bell, D.A.

33.    Bell, L.

34.    Beltran, J.E

35.    Berghane, D. A.

36.    Bergstein, D.S.

37.    Berry, A.L.

38.    Berwick, T.N.

39.    Beveridge, A.L.

40.    Bialko, Peter J.

41.    Biggs, Clifford G.

42.    Bisgnano, Charles

43.    Bjelkevig, Richy A.

44.    Blackburn James R.

45.    Blair, T.D.

46.    Blankenship, Jr. O.T.

47.    Blix, Victor E. III

48.    Boja, Robert N.

49.    Bonna, F.

50.    Boswell, L.L.

51.    Brablec, Douglas D.

52.    Bradley, W.D.

53.    Bradley, R.

54.    Brandt, William, M.

55.    Braynon, Oscar J.

56.    Bredthauer, Dirk

57.    Bromschwig, Kurt F.

58.    Brown, Walter R.

59.    Browning, David L.

60.    Bryant, Charles C.

61.    Buchanan, E.J.

62.    Bundrant, William D

63.    Bunn, Larry D.

64.    Buntin, Edward S.

65.    Burke, R.T.

66.    Burke, John A.

67.    Burkhart, Ronnie L.

68.  Burns, David A.

69.  Butler, David S.

70.  Butts, Ronald G.

71.  Carl, George L.

72.  Carlson, Bruce E.

73.  Carter, Bruce, R.

74.  Carter, D.L.

75.  Case, Douglas W.

76.  Chailc, Bruce

77.  Champage, Carl M.

78.  Chapo, James E.

79.  Charnes, Jonathan

80.  Cheek, Raymond T.

81.  Chirino, Rafael E.

82.  Christopher, Anthony S.

83.  Cirrotti, Dennis J.

84.  Clark, Ronald D.

85.  Clark, D.E.

86.  Clark, Wesley C.

87.  Clary, B.K.

88.  Clary, M.R.

89.  Cocuzzo, D.J.

90.  Cohn, Alan S.

91.    Cole, John D.

92.    Cole, William F.

93.    Colli, G.F.

94.    Collier, W.R.

95.    Commander, Jr. John B.

96.    Compton, John P.

97.    Connell, E.W.

98.    Connolly, James M.

99.    Conti, R.G.

100.   Cook, Carl D.

101.   Cook, Kenneth E.

102.   Cooper, T.L.

103.   Cornay, Ray

104.   Cowen, John B.

105.   Craig, Robert L.

106.   Crane, W.E.

107.   Craus, C.M.

108.   Crawford, D.B.

109.   Crow, Kenneth P.

110.   Crush, James M.

111.   Curran, T.R.

112.   Daniel, Jr., James W.

113.   Davidson, William F.

114.   Davis, Charles B.

115.   Davis, Gerald O.

116.   Davison, David J.

117.   Davoust, W.P.

118.   De Phillips, Floyd M.

119.   Deeton, James L.

120.   Delaria, David J.

121.   Deming, Maurice A.

122.   Devereaux, John A.

123.   Devton, John R.

124.   Dickinson, Randall L.

125.   Dickman, George A.

126.   Dixon Carroll

127.   Dobson, Gordon W.

128.   Doctorchik, Scott

129.   Dodson, Bonnie U.

130.   Dodson, Theodore E.

131.   Doglione, Frank

132.   Donovan, M.D.

133.   Donovan, M.F.

134.   Dorticos, Raul H.

135.   Dublin, Robert S.

136.   Duckworth, Thomas O.

137.    Dugger, T.R.

138.    Dundas, Charles P.

139.    Dunn, L.J.

140.    Dunn, R.A.

141.    Durante, J.P.

142.    Durkin, G.P.

143.    Dyer, Charles G.

144.    Dylong, J.

145.    Ealy, R.L.

146.    Eastman, J.D.

147.    Edwards, K.A.

148.    Egut, Ronald S.

149.    Eldridge, Dorothy J.

150.    Elmdanat, R.

151.    Emery, James C,

152.    Engelke, Marc J.

153.    Engelke, Warren L.

154.    Erickson, Alan W.

155.    Evans, R.H.

156.    Fahn, C.L.

157.    Fant, Jr. Glenn E.

158.    Farenga, J.H.

159.    Farnsworth, Earnest L.

160.  Farnsworth, K.L.

161.  Farrell, Richard L.

162.  Faulkner, H.C.

163.  Feliu, John E.

164.  Finch, R.A.

165.  Fisher, III Joel F.

166.  Fong, G.W.

167.  Foresto, J.M.

168.  Forsberg, Scott

169.  Foster, Hubert E.

170.  Foster, Robert W.

171.  Fowells, James E.

172.  Francis, R.H.

173.  Frank, William

174.  Frater, K.X.

175.  Frazier, Bennie W.

176.  Freytes, Luis R.

177.  Friedrichs, Howard W.

178.  Fritch, Donald A.

179.  Frost, Wayne B.

180.  Fryling, Albert A.

181.  Fugedy, J.J.

182.  Gaedtke, Michael L.

183. Garcia-Vergara, H.

184. Gardner, David E.

185. Gary, Carrol J.

186. Garza, E.

187. George, Henry R.

188. Geraghty, James D.

189. Gibson, Randall

190. Gordon, D.G.

191. Gorman, Barry William

192. Govatos, John D.

193. Grafton, Jr. J.R.

194. Grau, F.L.

195. Green, Grant S.

196. Green, G.A.

197. Greene, David L.

198. Greksa, G.J.

199. Grenie, A.A.

200. Gribas, Kenneth

201. Griffin, Donny E.

202. Griffith, Bobbie

203. Griggs, R.P.

204. Groff, W.V.

205. Grubbs, R.E.

206. Gruetzner, Allen

207. Grzegorzak, S.K.

208. Gunn, George H.

209. Gurl, John T.

210. Gurley, Louis E.

211. Hall, B.W.

212. Hall, Howard W.

213. Halloran, D.

214. Hamilton, Walcott B.

215. Haney, Fred C.

216. Hansen, P.W.

217. Hanshaw, R.G.

218. Harn, George F.

219. Harrell, Bruce

220. Harris, R.J.

221. Hartley, J.D.

222. Hassett, P.R.

223. Hastings, Gregory A.

224. Hauth, David A.

225. Hawkins, Thomas R.

226. Hiatt, Jr. H.W.

227. Higgins, R.F.

228. Hill, W.B.

229.    Hinsdale, James P.

230.    Hipps, William D.

231.    Hodgers, Benjamin

232.    Hooton, J.W.

233.    Houston, Charles M.

234.    Howard, C.A.

235.    Howard, Charles B.

236.    Howard, James W.

237.    Huddleston, J.D.

238.    Huges Jr., James R.

239.    Hunter, Richard 1.

240.    Hurley, Jay

241.    Hutchin, Robert A.

242.    Hutson, R.T.

243.    Ingle, W. D.

244.    Ingram, Capt. Culpepper F.

245.    Inman, Brownie N.

246.    Iranipour, F.

247.    Jacobowitz, L.

248.    Jansen, C.W.

249.    Jaye, Mamadou D.

250.    Johansen, William H.

251.    Johnson, R.A.

252.   Johnson, C.T.

253.   Johnson, G.M.

254.   Johnson, Richard A.

255.   Johnson, R. A.

256.   Johnson, Robert E.

257.   Jones, John L.

258.   Jordan, W.O.

259.   Kalantsri, F.

260.   Kane, S.G.

261.   Keeler, R.L.

262.   Kennedy, M.J.

263.   Khan, N.

264.   Kimble, R. L.

265.   Kingwell, R.A.

266.   Kluthe, D.B.

267.   Kovec, Robert

268.   Koziol, R. L.

269.   Kritcher, Lawrence N.

270.   Krueger, Fred W.

271.   Kucklick, Joe

272.   Kurtz, Hugo E.

273.   Laine, J. R.

274.   Laing, R. C.

275. Lamaute, L .L.

276. Lambie, J. M.

277. Lamecker, D. R.

278. Landa, George

279. Landry, Jr. Donald J.

280. Lane, F. W.

281. Lane, Jr. Gordon B.

282. Lane, Malcolm V.

283. Langer, Lawrence E.

284. Lantz, K. M.

285. Latham, Richard C.

286. Lavarello, E. F.

287. Lawrence, Charles W.

288. Lea, Robert G.

289. Lee, J. R.

290. Lee, Allan R.

291. Lehman, L.G.

292. Leonhardt, Stephen J.

293. Levy, Simon

294. Lewandowski, R.A.

295. Lewicki, John A.

296. Lewis, Gary M.

297. Liebing, Kurt M..

298. Lindell R.W.

299. Lindner, A.

300. Link, C.R.

301. Linn, D. N.

302. Lorenzo, Gustavo A.

303. Love, F.W.

304. Lyter, Jr. Henry B.

305. Lytle, Richard A.

306. Maarouf, D. H.

307. Manduley, Leonard

308. Malone, Steven J.

309. Mann, William B. Jr.

310. Manning, Bob S.

311. Marciano, Anthony P.

312. Marcinek, Jerry V.

313. Marino, Edward H.

314. Martinez-Alegri, J.

315. Marsh, A.A.

316. Mason, Hugh C.

317. Mathis, G. K.

318. Mathisen, N.A.

319. Matthews, Patrick M.

320. Maugeri, Peter J.

321.  Mauro, A.F.

322.  McCabe, Larry G.

323.  McCann, Joseph P.

324.  McCartney, Kenneth L.

325.  McClannahan, Richard W.

326.  McCracke, Keith K.

327.  McDonald, T.L.

328.  McHenry, J.R.

329.  McKenna, C.E

330.  McKenna, William D.

331.  McKennan, D.J.

332.  McKeon, A. T.

333.  McLean, D. W.

334.  McMahon, Michael S.

335.  McQuigg, A.R.

336.  McRae, James D.

337.  Means, James A.

338.  Menchini, R.L.

339.  Mendez, E.

340.  Merly, Hector M.

341.  Mesmer, Frederick H.

342.  Michael, Donald K.

343.  Milanette, R. T.

344.   Miller, Daniel P.

345.   Miller, Frank P.

346.   Miller III, W.B.

347.   Miller, James A.

348.   Miller, Robert L.

349.   Miller, Thomas O.

350.   Minardi, Jame V.

351.   Misencik, Paul R.

352.   Miskotten, Edward

353.   Mitchell, D.S.

354.   Mittelstaedt, George J.

355.   Moffitt, R.E.

356.   Moktadier, John

357.   Montgomery, D. J.

358.   Mooney, R. O.

359.   Moore, Donald B.

360.   Moore, Jr., R.E.

361.   Morgan D. P.

362.   Morrey, Frank J.

363.   Morrison, Edward H

364.   Morrison, David L.

365.   Mortensen, KimT.

366.   Moslener, C. F.

367. Munger, Steven S.

368. Munsterman, R.A.

369. Murphy, Paul R.

370. Murray, H. M.

371. Murray, Thomas O.

372. Musick, Jr., Charles R.

373. Myers, III, Wilson D.

374. Nagy, S.L.

375. Nall, Jr. Robert L.

376. Nelsen, R .J.

377. Nelson, Douglas C.

378. Ness, R.A.

379. Neumann, P.G.

380. Nicchia, Leonard R.

381. Nicholson, William T.

382. Norman, II J. S.

383. O'Connell, John M.

384. Ogden, Thomas H.

385. Ogilvie, Thurston

386. Oneill, Ramon E.

387. ORourke, M.J.

388. Ortiz, Boris

389. Osborne, Richard A.

390.   Osman, Dale E.

391.   Ouzts, Jr., J. F.

392.   Palermo, F.G.

393.   Palmer, Douglas M.

394.   Pappas, T

395.   Pareira, Fred

396.   Parkinson, Richard E.

397.   Parr, William J.

398.   Paschke, J.M.

399.   Patel, P. Raman

400.   Pauley, Leon Trenton

401.   Peacock, Donald J.

402.   Peacon, Robert C.

403.   Peery, T.H.

404.   Pell, Thomas A.

405.   Pennic, J. R.

406.   Penrod, Gary B.

407.   Perez, Jr. Efrain

408.   Perkins,  D. Grier

409.   Perry Jr A.G.

410.   Peters, L. W.

411.   Petko, J. G.

412.   Pettit, B.D.

413.  Phillips, R. A.

414.  Phillips, Henry C.

415.  Phillips, Terry E.

416.  Pinkerton, K. R.

417.  Pipkin, R. P.

418.  Poirer, Noel A.

419.  Potter, Martin

420.  Preis, M.J.

421.  Priest, Peter D.

422.  Priest, Paul B.

423.   Putonen, Leonard R.

424.  Raju, K.V.

425.  Ramaprakash, T. S.

426.  Rawlings, Jr. Walter E.

427.  Rawls III, F. H.

428.  Ray, C. G.

429.  Redd, W. J.

430.  Reeh, Charles D.

431.  Regan, J. H.

432.  Reik, K. M.

433.  Reinholtz, R. E.

434.  Reitan, A. G.

435.  Reno, Richard W.

436.  Reynolds, D. D.

437.  Richards, K. L.

438.  Roberts, Reginald

439.  Roberts, R. E.

440.  Robertson, James L.

441.  Robinson, Kenneth D.

442.  Rodriguez, F. A.

443.  Rogers, D. J.

444.  Rosenthal, Eugene P.

445.  Rosman, Ken

446.  Ross, Thomas D.

447.  Rosser, John P.

448.  Rupert II, John F.

449.  Ryan, Edward J.

450.  Sandusky, William A.

451.  Santiago, Stanley

452.  Sauer, D. P.

453.  Saunders, Daniel S.

454.  Schanzlin, D. N.

455.  Schedel, J.R.

456.  Schrag, James A.

457.  Schriner, Jr. D. O.

458.  Schroll, Jr. John E.

459.  Schultheis, D. H..

460.  Secor, E. F.

461.  Self, G.W.

462.  Sessums, Stephen E.

463.  Sewell, Jr. H. J.

464.  Sheehan, F. J.

465.  Shepard, Gary C.

466.  Shore, G.E.

467.  Shoun, J. W.

468.  Shriver, Larry L.

469.  Simmons, Gary

470.  Sirmans, J. W.

471.  Sizemore, Samuel E.

472.  Smith, Andrew C.

473.  Smith, Charles E.

474.  Smith, David W.

475.  Smith, Jack G.

476.  Smith, Jr. S. D.

477.  Smith, Robert Leo

478.  Smith, Carl C.

479.  Sofferin, Jeffrey

480.  Sorenson, John P.

481.  Spieker, Jr. Samuel G.

482. Spillman, Harry L.

483. Spitler, Douglas H.

484. Sposito, James

485. Stanton, Donald H

486. Starzyk, E. S.

487. Steward, Donald E.

488. Stewart, Wayne M.

489. Stifel, Arthur C.

490. Stokes, Clifford J.

491. Stone, Alan C.

492. Stone, Cary A.

493. Stone, Edward E.

494. Stow, Calvin E.

495. Strader, Sr. James R.

496. Stradley, K. W.

497. Straessle, Gregory C.

498. Strong, D. B.

499. Strus, M. W.

500. Sullivan, E. M.

501. Sullivan, Ennis C.

502. Sullivan, John L.

503. Sullivan, Robert F.

504. Syman, John E.

505. Taliaferro, Jr. C.E.

506. Talton, W.G.

507. Tate, Joe F.

508. Taylor, Dean H.

509. Taylor, J. M.

510. Taylor, Jr. Glyn M.

511. Taylor, Jr. Henry A.

512. Taylor, Michael J.

513. Taylor, Robert A.

514. Terrence, J. Fitzgerald

515. Tew, Jr. B. D.

516. Theakston, Peter A.

517. Thompson, Jerry L.

518. Thompson, R. L.

519. Thompson, Steve C.

520. Thomson, III John B.

521. Thornton, Kenneth

522. Threlkeld, J. G.

523. Tippett, Jeannette S.

524. Tipton, Larry K.

525. Tomelden, Arthur P.

526. Toole, Oliver A.

527. Torres, C. T.

528.  Towney, Jr. James R.

529.  Trauger, H. R.

530.  Treadwell, J. P.

531.  Triplett, David M..

532.  Trivett, Roscoe H.

533.  Tucker, Joe R.

534.  Tucker, D.

535.  Tucker, T.T.

536.  Tumlin, William H.

537.  Turner, J. R.

538.  Unger, R. A.

539.  Urso, Michael T.

540.  Vanek, A. G.

541.  Vara, R.W.

542.  Vaughan, Michael J.

543.  Vesty, Charles H.

544.  Villanueva, R.

545.  Villers, David L.

546.  Vohra, P. P.

547.  Vonkleeck, John S.

548.  Voudy, John E.

549.  Vrettos, Nicholas

550.  Wagner, Ronald

551.  Walby, Thomas F.

552.  Walker, T. W.

553.  Walther, F. O.

554.  Walton, M.R.

555.  Waterstreet, Mark A.

556.  Watson, M.D.

557.  Watt, A. K.

558.  Weaver, Linda B.

559.  Webb, Jr. Rufus

560.  Weir, James R.

561.  Weisbruch, J. E.

562.  Weller, Jr. A. E.

563.  Wengert, R. D.

564.  West, Peter

565.  Westby, Dorothy C.

566.  Westphall, Robert C.

567.  Whitaker, R.B.

568.  White, Robert L.

569.  Whitford, James E.

570.  Whitley, Donald D.

571.  Whitney, Richard A..

572.  Wilkie, James R.

573.  Wilson, James S.

574.   Wingate, Wesley A.

575.   Wood, T. R.

576.   Wood, Steven C.

577.   Wright, Dean S.

578.   Yates, G. W.

579.   Yeater, Don

580.   Young, Thomas J.

581.   Zeng, Robert E.

582.   Ziobro, Thomas J.

583.   Zito, Joseph

# EXHIBIT  D

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-2260

———————

IN RE: TRANS WORLD AIRLINES, INC.,
Debtor

AMERICAN AIRLINES, INC.,
Appellant
v.
ELIZABETH A.M. ROBINSON

MARK S. KENNEY,
Trustee

———————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 04-cv-00234)
District Judge: Honorable Sue L. Robinson

———————

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2006

Before: RENDELL, SMITH and ALDISERT, <u>Circuit</u> <u>Judges</u>.

(Filed May 10, 2006)

———————

OPINION OF THE COURT

———————

RENDELL, *Circuit Judge*.

This appeal arises out of the chapter 11 bankruptcy of debtors Trans World

Airlines, Inc. and certain of its affiliated entities (collectively, "TWA"). The appellant is American Airlines, Inc. ("American"), the purchaser of substantially all of TWA's assets. On March 24, 2003, Elizabeth Robinson filed a motion in the Bankruptcy Court seeking to compel American to pay her certain benefits under the Federal Longshoremen's and Harbor Workers' Act (the "Longshoremen's Act"). Robinson argued that American assumed this obligation under the terms of the Asset Purchase Agreement ("APA") in which it purchased substantially all of the assets of TWA.

On February 27, 2004, the Bankruptcy Court entered an order granting certain relief requested by Robinson. The Bankruptcy Court ordered American to make workers' compensation payments to Robinson in the amount of $1,866.32 per month, commencing April 9, 2001. The District Court affirmed the Bankruptcy Court's order. American argues that the Bankruptcy Court and District Court were incorrect in their conclusion that American had assumed any liability to pay Robinson pursuant to the APA. We will affirm the order of the District Court.[1]

---

[1] The Bankruptcy Court had jurisdiction to review Robinson's motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. The District Court had jurisdiction pursuant to 28 U.S.C. § 158. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 158 and 1291. We have plenary review of the District Court's determination, exercising the same review of the Bankruptcy Court's decision as that exercised by the District Court. *Airline Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 128 (3d Cir. 1997). We review the Bankruptcy Court's findings of fact only for clear error and its legal determinations *de novo*. *Id.*

to make workers' compensation payments to Robinson in the amount of $1,866.32 per
month, retroactive to April 9, 2001. All accrued but as yet unpaid monthly payments
were to be calculated with interest from the dates of accrual at the rate established by 28
U.S.C. § 1961. The Bankruptcy Court also issued a letter opinion setting forth its
reasoning: first, TWA had a continuing obligation to Robinson that was not extinguished
by the Amended CBA; second, American assumed the ongoing obligation to Robinson
by virtue of the terms of the APA; and, third, Robinson's settlement with TWA did not
affect American's obligation to her. American appealed the order of the Bankruptcy
Court to the District Court. On March 28, 2005, the District Court entered an order
affirming the Bankruptcy Court's order.

II.

American now advances three arguments on appeal. First, American argues that
TWA had no obligation to provide Robinson with Longshoremen's Act benefits after the
effective date of the Amended CBA (August 13, 1992), which American argues
eliminated TWA's obligation to provide Longshoremen's Act benefits to permanently
disabled employees. Second, American argues in the alternative, even if TWA did have
an obligation to provide Robinson with Longshoremen's Act benefits under the
Amended CBA, American did not assume that liability, and, even if it did assume that
liability, the total amount of such obligation was no more than $446.30, the pro-rata
amount of TWA's Longshoremen's Act obligation to Robinson as of the closing date of

5

conclusion in this regard.

### III.

For the foregoing reasons, we will affirm the order of the District Court affirming

the order of the Bankruptcy Court.

9

EXHIBIT  E

AGREEMENT
between
EASTERN AIR LINES, INC.
and
THE AIR LINE PILOTS
in the service of
EASTERN AIR LINES, INC.
as represented by
THE AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL

This Agreement is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between EASTERN AIR LINES, INCORPORATED, hereinafter referred to as "Eastern" and the Air Line Pilots in the service of EASTERN AIR LINES, INCORPORATED, as represented by the AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, hereinafter known as the "Association".

It is hereby mutually agreed:

## SECTION 1 - RECOGNITION AND SCOPE

A.   The Air Line Pilots Association, International, has furnished to Eastern proof (including National Mediation Board Certification, Case No. R-3641, dated June 4, 1964) that the pilots (as hereinafter defined) employed by Eastern have designated the Association to represent them and in their behalf negotiate and conclude an Agreement with Eastern as to rates of pay, rules and working conditions covering all pilots in the employ of Eastern in accordance with the provisions of the Railway Labor Act, as amended.

B.   It is agreed that all present or future flying, including flight training (except for initial factory-conducted training in newly purchased equipment), revenue flying, ferry flights, charters and wet-leases performed in or for the service of Eastern Air Lines, Inc., shall be performed by pilots whose names appear on the then-current Eastern Air Lines' System Seniority List.

C.   It is agreed that Eastern shall not establish a parent or holding Company, division or wholly-owned subsidiary to perform flying operations outside the scope of this Agreement.

- 1 -

# EXHIBIT  F



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
                                          x
In Re:                                    :
                                          :        Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,      :        Chapter 11
                                          :
                  Debtors                 :
                                          x
                                          :
JAMES BALDRIDGE, WILLIAM MANN,            :
and LARRY DUNN, individually, and         :
as representatives of a class of persons  :
similarly situated who are referred to as :
the LPP CLAIMANTS,                        :
                                          :
                  Plaintiffs,             :        Adversary Proceeding
                                          :        No. A-99-412
v.                                        :        Class Action
                                          :
CONTINENTAL AIRLINES HOLDINGS, INC.,      :
CONTINENTAL AIRLINES, INC.,               :
and SYSTEM ONE HOLDINGS, INC.,            :
                                          :
                  Defendants.             :
                                          x
```

### NOTICE OF CLASS ACTION SETTLEMENT, PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND SETTLEMENT HEARING

**TO ALL PERSONS WHO:**

(1) ARE EASTERN AIRLINES FORMER FLIGHT DECK EMPLOYEES IDENTIFIED ON EASTERN AIRLINES' NOVEMBER 1990 ALPHABETICAL SENIORITY LIST;

(2) WHO CLAIM THEY ARE ENTITLED TO THE BENEFITS OF THE COLLECTIVE BARGAINING AGREEMENT BETWEEN EASTERN AIRLINES AND THE AIR LINE PILOTS ASSOCIATION IN EFFECT AT THE TIME THAT EASTERN AIRLINES ALLEGEDLY MERGED WITH CONTINENTAL AIRLINES HOLDINGS, INC.;

(3) WHO FILED A TIMELY CLAIM IN THE ABOVE-ENTITLED REORGANIZATION OF CONTINENTAL AIRLINES, INC., CASE NO. 90-932 FOR ENFORCEMENT OF THE LABOR PROTECTION PRIVILEGES EMBODIED IN THE EASTERN AIRLINES COLLECTIVE BARGAINING AGREEMENT EITHER INDIVIDUALLY OR AS A MEMBER OF THE AIR LINE PILOTS ASSOCIATION OR AS A NAMED LABOR PROTECTIVE PROVISION CLAIMANT REPRESENTED BY CLASS COUNSEL IN THE REORGANIZATION AND WHO ARE IDENTIFIED ON EXHIBIT A ATTACHED TO THIS NOTICE;

*EXCEPT* (1) THOSE PERSONS WHO SETTLED, WAIVED OR RELINQUISHED HIS OR HER LPP CLAIM WITH CONTINENTAL AND (2) THOSE PERSONS WHO MOVED TO INTERVENE IN THIS CASE, PURSUANT TO THE "MOTION TO INTERVENE IN ADVERSARY PROCEEDING" FILED NOVEMBER 11, 1999 WHO FILED A NOTICE OF WITHDRAWAL OF HIS OR HER PROOF OF CLAIM IN THIS REORGANIZATION WITH THE CLERK OF THE BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE ON OR BEFORE APRIL 15, 2000.

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THE CONTINENTAL DEFENDANTS HAVE AGREED TO A SETTLEMENT OF THIS LITIGATION WHICH PROVIDES FOR FINANCIAL BENEFITS TO THE MEMBERS OF THE CLASS IF THE SETTLEMENT IS APPROVED BY THE COURT.

**IMPORTANT:**    IN ORDER FOR YOU TO PARTICIPATE IN THIS SETTLEMENT AND RECEIVE YOUR SHARE OF THE SETTLEMENT BENEFITS, YOU MUST COMPLETE AND RETURN THE ATTACHED PROOF OF CLAIM AND WAIVER AND RELEASE BY NO LATER THAN APRIL 3, 2002.

THE PURPOSE OF THIS NOTICE IS TO ADVISE YOU OF THE PROPOSED SETTLEMENT OF THIS CLASS ACTION. COUNSEL'S FEE APPLICATION, THE APPLICATION FOR COMPENSATION AWARDS FOR THE CLASS REPRESENTATIVES AND YOUR RIGHTS WITH RESPECT TO THESE MATTERS. THIS NOTICE IS NOT AN EXPRESSION OF OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY ANY PARTY IN THIS ACTION.

THE PROPOSED SETTLEMENT CONSISTS OF ALLOWED PRE-PETITION GENERAL UNSECURED CLAIMS IN THE CONTINENTAL BANKRUPTCY WITH EACH ELIGIBLE CLAIMANT RECEIVING AN ALLOWED PRE-PETITION GENERAL UNSECURED CLAIM IN THE AMOUNT OF ONE HUNDRED TEN THOUSAND ($110,000.00) DOLLARS RESULTING IN THE DISTRIBUTION OF GROSS SETTLEMENT CONSIDERATION FROM THE CONTINENTAL BANKRUPTCY ESTATE FOR EACH CLASS MEMBER OF 340 SHARES OF CONTINENTAL AIRLINES CLASS B COMMON STOCK AND $83.14 IN CASH MINUS COURT APPROVED FEES, COSTS AND EXPENSES.

IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT BENEFITS.

YOU MUST FILE A PROOF OF CLAIM BY APRIL 3, 2002 IN ACCORDANCE WITH PARAGRAPH 15 BELOW TO RECEIVE ANY SHARE OF THE SETTLEMENT BENEFITS TO WHICH YOU MAY BE ENTITLED.

IF, AFTER READING THIS NOTICE, YOU HAVE QUESTIONS CONCERNING THE SETTLEMENT, THE SETTLEMENT FAIRNESS HEARING OR ANY OF THE INFORMATION CONTAINED IN THIS NOTICE, YOU MAY CALL OR WRITE TO THE CLAIMS ADMINISTRATOR AT:

**EAL LPP Class Action Settlement**
**The Garden City Group, Inc.**
**Claims Administrator**
**105 Maxess Road**
**Melville, NY 11747**
**1-800-327-3664**
**WWW.EALLPPCLASSACTION.COM**

DO NOT WRITE TO OR TELEPHONE THE COURT.

You are not entitled to share in the Settlement if you have already settled your labor protective provision (LPP) claim against the Defendants and signed a release or if you withdrew your Proof of Claim in the Continental bankruptcy proceedings.

**TABLE OF CONTENTS**

|       |                                                                                                    | PAGE NO. |
|-------|----------------------------------------------------------------------------------------------------|----------|
| I.    | SUMMARY OF THE LITIGATION                                                                           | 2        |
| II.   | CONTINENTAL'S DENIAL OF LIABILITY                                                                   | 2        |
| III.  | DISCOVERY/FACTUAL INVESTIGATION                                                                     | 2        |
| IV.   | SUMMARY OF THE PROPOSED SETTLEMENT                                                                  | 3        |
| V.    | SUBMISSION OF PROOFS OF CLAIM                                                                       | 3        |
| VI.   | RECOMMENDATION OF COUNSEL                                                                           | 3        |
| VII.  | APPLICATION FOR ATTORNEYS' FEES, COSTS, DISBURSEMENTS AND COMPENSATION AWARD TO PLAINTIFFS          | 3        |
| VIII. | RIGHT TO OBJECT                                                                                     | 4        |
| IX.   | SETTLEMENT FAIRNESS HEARING                                                                         | 4        |
| X.    | SCOPE OF THIS NOTICE AND FURTHER INFORMATION                                                        | 4        |

## I.  SUMMARY OF THE LITIGATION

1.      The *Baldridge* litigation is a class action lawsuit filed in October 1989 as an adversary proceeding in the United States Bankruptcy Court for the District of Delaware in the Continental Airlines bankruptcy proceedings (*In re Continental Airlines*, Case No. 90-932) by James Baldridge, William Mann and Larry Dunn. The defendants in the bankruptcy proceedings are Continental Airlines Holdings, Inc., Continental Airlines, Inc. and System One Holdings, Inc.

The litigation was instituted pursuant to a settlement agreement reached between the Continental defendants and the Class Representatives after almost nine years of arbitration, litigation and appellate proceedings in order to obtain a binding determination on a class-wide basis of the measure of damages applicable to the labor protective provision claims filed on behalf of or by Eastern Airlines flight deck employees in the Continental Airlines bankruptcy proceedings.

2.      Plaintiffs contended that as a result of prior litigation and appeals which established that Continental has the right to substitute the equitable remedy of monetary damages as a general prepetition unsecured claim in bankruptcy to satisfy the labor protective provisions' right to seniority integration if a merger between Eastern Airlines and Continental occurred (*In Re Continental Airlines*, 125 F.3d 120, (3rd Cir. 1997) *cert. denied* 118 S. Ct. 1049, 140 L. Ed. 2d 113 (1998)), that the value of the Eastern flight deck crew members LPP claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date.

3.      In response to the lawsuit, Continental denied that the value of the LPP claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern flight deck employee's normal retirement date and affirmatively asserted that the LPP claims are limited to one year's back pay pursuant to 11 U.S.C. §502(b)(7) (the Bankruptcy Code).

4.      The Court has certified this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

5.      The Court has ruled on the merits of Plaintiffs' claim, declaring that the LPP claims are limited by 11 U.S.C. §502(b)(7).

6.      A notice of appeal of the Court's ruling was timely filed with the United States District Court for the District of Delaware. The briefing schedule has been continued pending approval of the Settlement.

## II.  CONTINENTAL'S DENIAL OF LIABILITY

7.      The Continental defendants deny, and continue to deny, that Texas Air's acquisition of Eastern Airlines resulted in a merger between Continental and Eastern. The Continental defendants have denied, and continue to deny, that any Eastern flight deck crew member has a right to seek seniority integration and/or compensation from Continental because no such merger occurred. The Continental defendants have denied, and continue to deny, that even if a merger did occur, that plaintiffs are entitled to value their compensation claims from the date of the alleged merger until each plaintiffs' normal date of retirement. The Continental defendants maintain that the determination of the Bankruptcy Court limiting the value of the claims to one year's back pay pursuant to 11 U.S.C. §502(b)(7) (the Bankruptcy Code) will be affirmed on appeal. The Continental defendants entered into the Settlement solely to avoid the substantial continuing expense, burden, inconvenience, distraction and risk of continued litigation, and to put to rest the claims raised or which could have been raised, in the litigation.

## III.  DISCOVERY/FACTUAL INVESTIGATION

8.      Class Counsel has, since 1991, conducted extensive factual investigation of the claims asserted in the Litigation. During the eight and one half years preceding the filing of this litigation, Class Counsel reviewed and conducted an in-depth analysis of approximately one million pages of documents including hundreds of thousands of pages of business records, court documents, public filings and discovery materials on the issues raised by this litigation. This review and analysis included extensive materials regarding the acquisition of Eastern Airlines by Texas Air Corporation; the Securities and Exchange Commission filings of Eastern, Continental and Texas Air; filings and administrative actions by the United States Department of Transportation regarding Eastern, Continental and Texas Air; filings and administrative actions by the Federal Aviation Administration regarding Eastern, Continental and Texas Air; the bankruptcy court proceedings of Eastern Airlines filed as *In re Ionosphere Club* in the Bankruptcy Court for the Southern District of New York, including various adversary proceedings concerning the disposition of Eastern's assets; appeals regarding Eastern's obligation to arbitrate the LPP issues; the proceedings brought by the Eastern Estate against Continental regarding the transfer of assets from Eastern to Continental; administrative proceedings regarding the alleged "single-carrier" status of Eastern and Continental; the bankruptcy court proceedings of Continental Airlines in the United States Bankruptcy Court for Delaware and various appeals taken therefrom; the business records of Eastern Airlines regarding the transfer of assets to Continental; documentation and materials obtained through discovery, including depositions and interrogatories, in the National Mediation Board proceedings and in related litigation regarding the alleged merger of Eastern and Continental under the LPPs; System Board of Adjustment proceedings regarding the purpose and intent of the Alleghany-Mohawk provisions of the Eastern pilots' collective bargaining agreement which provides for seniority integration in the event of a merger; and materials, documents, transcripts, audio and video tapes and recordings, and detailed employment and financial information provided by hundreds of members of the class. Utilizing this extensive factual investigation, Class Counsel analyzed the theories of liability on which the Litigation and the underlying arbitration are based, as well as the Defendants' defenses to the claims that have been asserted in the same. The discovery and factual investigation conducted by the Class Counsel provided Class Counsel with a thorough familiarity of the liability and damages aspects of the claims asserted in the Litigation and underlying arbitration and assisted Class Counsel in evaluating the fairness and adequacy of the Settlement.

## IV.  SUMMARY OF THE PROPOSED SETTLEMENT

9.      Prior to the institution of this action, the Third Circuit Court of Appeals had affirmed the reversal obtained by Class Counsel of the Bankruptcy Court's 1993 Orders enjoining the National Mediation Board arbitration from proceeding as to Continental and judicially estopping Continental from litigating whether or not it was bound by the Eastern collective bargaining agreement if it was determined that a merger occurred. The Third Circuit also affirmed the decision of the Bankruptcy Court determining that the equitable remedy of seniority integration constituted a claim within the meaning of the Bankruptcy Code which was convertible to money damages as a general, dischargeable, unsecured claim entitled to no administrative priority. After the United States Supreme Court declined to review the Third Circuit's decision, Class Counsel initiated arbitration proceedings against Continental on the merger issue with the National Mediation Board. Recognizing that even if the National Mediation Board ruled that a merger occurred triggering the LPPs against Continental and that said decision was sustained on appeal, Continental would exercise its judicially mandated right to convert the equitable remedy into general, dischargeable, unsecured claims in bankruptcy, and a second round of protracted litigation and appeals would ensue regarding the valuation of the LPP claims in bankruptcy, Class Counsel engaged in negotiations with Continental leading to the Settlement now before the Court for approval. The Settlement required Class Counsel to bring an action on behalf of all eligible EAL pilots to obtain a final declaratory ruling on a class-wide basis as to whether the value of the Eastern flight deck crew members' LPP

claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date, as the LPP Claimants contended, or whether the LPP claims, as Continental maintained, are limited to one year's back pay pursuant to 11 U.S.C. §502(b)(7) of the Bankruptcy Code.

10.     In consideration for proceeding with and obtaining a determination of this issue, Continental agreed to value each eligible Eastern pilot's claim at One Hundred Ten Thousand ($110,000.00) Dollars, even if the Court ruled that Continental's position was correct and the claims limited to one year's back pay. Continental also agreed that if the Court determined that the value of the Eastern flight deck crew members' LPP claims should be calculated from the date of seniority integration through the date of each otherwise eligible Eastern pilot's normal retirement date, the Class would be entitled to proceed with the National Mediation Board arbitration in order to determine whether or not a merger occurred in lieu of the Settlement.

The Court ruled on the merits of Plaintiffs' claim, declaring that the LPP Claims are limited to one year by 11 U.S.C. §502(b)(7).   The $110,000.00 valuation for each member of the Class' LPP claim is substantially greater than the allowed claim would otherwise be if, after arbitration and litigation, it was determined that a merger occurred.

11.     The Settlement Agreement thus provides that if the Settlement is approved by the Court, the Class shall receive the following Gross Settlement Consideration:

Each Eligible Claimant shall receive an allowed pre-petition general unsecured claim in the amount of One Hundred Ten ($110,000.00) Thousand Dollars and each such allowed claim will be funded with 340 shares Continental Airlines Class B Common Stock and $83.14 in cash.

12.     If the Court grants Final Approval of the proposed Settlement of the Litigation, and enters judgment thereon, the Gross Settlement Consideration shall be reduced by the settlement costs, attorneys' fees, reimbursement of expenses and class representative compensation approved by the Court (see Section VII, paragraphs 17 and 18 below). The remaining Net Cash Settlement Amount will thereafter be distributed to the members of the Class pursuant to the Settlement Agreement which has been submitted by Class Counsel for the approval of the Court.

13.     The Release of Settled Claims.  The claims that are being released (the "Settled Claims") are any and all claims and causes of action, for any form of relief, that have been or could have been asserted by the Class, or any individual Class member against the Released Parties, including without limitation any claim; arising out of or relating to the allegations which were or could have been made in the Litigation. Approval of the Settlement will release and discharge the Settled Claims against the bankruptcy estate of Continental Airlines, Inc. and its affiliated debtors, Continental Airlines Holdings, Inc., Continental Airlines, Inc. (the reorganized entity and its affiliates), System One Holdings, Inc., ExpressJet Airlines, Inc. a/k/a Continental Express, Continental Micronesia, Inc., its subsidiaries and affiliates, and its and their directors and officers, stockholders, employees, attorneys, agents, and representatives (the "Released Parties") and the Settlement will result in the dismissal of all such actions or claims. A full description of the Settled Claims, the release and discharge, and the bar on commencing any action or other proceeding is set forth in the Settlement Agreement, which is available on the website established for this Class Action Settlement at WWW.EALLPPCLASSACTION.COM or from Class Counsel or at the Court.

14.     Termination Provisions.  If the Court does not approve the proposed Settlement or it is terminated by the Parties in accordance with its terms, the rights and duties of the Parties will continue as if no Settlement Agreement has been reached and members of the Class will have no rights in or to the proposed Gross Settlement Consideration.

## V.  SUBMISSION OF PROOFS OF CLAIMS

15.     In order for you to share in the Net Cash Settlement Amount:

(i)     You must submit a properly executed Proof of Claim (a copy of which accompanies this Notice) and mail it to:

**EAL LPP Class Action Settlement**
**The Garden City Group, Inc.**
**Claims Administrator**
**105 Maxess Road**
**Melville, NY 11747**

no later than April 3, 2002. Each Proof of Claim shall be deemed filed when postmarked (if properly addressed and mailed by first class mail, postage prepaid). Any Proof of Claim submitted in any other manner shall be deemed to have been filed when it is actually received at the above address.

(ii)    Your Proof of Claim must satisfy the following conditions:

(a) It must be properly filled out, signed under penalty of perjury, and filed in a timely manner in accordance with the provisions of the preceding paragraph;

(b) It must be complete and contain no material deletions or modifications of any of the text (except for your corrections, if any, to your name, address, and other personal data).

## VI.  RECOMMENDATION OF COUNSEL

16.     Class Counsel recommends the Settlement as fair, reasonable, and adequate based on the comprehensive factual investigation and legal analysis which was conducted. Class Counsel weighed the benefit of the Gross Settlement Consideration against the risks of continued litigation. The risks considered included: an assessment of Defendants' asserted defenses, including sharply disputed issues of fact; the probability of reversing the decision of the Bankruptcy Court's decision applying 11 U.S.C. §502(b)(7) to the LPP claims; the time involved in additional appeals of the Bankruptcy Court decision; the uncertainty in predicting the outcome of an arbitration on the issue of the alleged merger between Eastern and Continental; the probabilities of additional appeals with respect to the outcome of any such arbitration; the limitation on damages available from such arbitration if the Bankruptcy Court's decision is sustained; the potential for the diminishment of the fund available for payment of the claims in the Continental bankruptcy; and the risks and delay of an appeal by the Parties not prevailing at the arbitration.

## VII.  APPLICATION FOR ATTORNEYS' FEES, COSTS, DISBURSEMENTS AND COMPENSATION AWARD TO PLAINTIFFS

17.     If this Settlement is approved by the Court, Class Counsel will request the Court to award attorneys' fees of Thirty Percent (30%) of the Gross Settlement Consideration. Class Counsel will also seek reimbursement of litigation expenses which are estimated not to exceed $100,000.00.  To the extent approved by the Court, the distributions to Class Members will be reduced by such attorneys' fees, costs, and expenses, as well as Settlement Administration Costs. Settlement Administration Costs are all Court-approved reasonable costs and expenses incurred in connection with the preparation, printing, mailing and/or publication of the Class Settlement Notice and Summary Notice, the administration of the Proofs of Claim filed by members of the Class and the distribution of the Gross Settlement Consideration. Members of the Class are not otherwise responsible for attorneys' fees, costs, and expenses. Class Counsel has an agreement with Eastern Pilots for Fairness, Inc. ("Corporation"), a not-for-profit corporation which has provided economic support for this litigation since 1991, whereby Class Counsel will reimburse the Corporation and its members in good standing (who are also Class Members) from the attorneys' fees awarded to Class Counsel a portion of the monies they have advanced so that all Class Members will bear on a pro rata basis the attorneys' fees and expenses for the result achieved on behalf of the Class.  The sole basis for this partial reimbursement is to ensure that those Class Members who have already advanced monies on behalf of the Class do not bear an unduly disproportionate amount of the costs and attorneys' fees.

18.     Class Counsel intends to apply to the Court for the payment of a compensation award of 1,700 shares of Continental Airlines stock for each of the three named Class Representative Plaintiffs, James Baldridge, William Mann, and Larry Dunn for the ten years of significant time, labor and effort expended by them in this matter. To the extent approved by the Court, the compensation awards will be paid from the Gross Settlement Consideration and the distribution to Class Members will be reduced on a pro rata basis by such compensation awards. In addition to actively participating in the Litigation and in all administrative and judicial proceedings since 1991 which led up to and were necessary for the Litigation, the three Class Representatives were in constant contact with members of

3

the Class and with Class Counsel, coordinating fund raising, assisting in document production, interfacing with communications with class members and providing support services for all legal proceedings.

## VIII. RIGHT TO OBJECT

19.     The Settlement Agreement will not become effective until it is approved by the Court as fair, reasonable, and adequate and Final Judgment is entered dismissing the claims of the Plaintiff and the Class with prejudice. Any member of the Class, either in person or through counsel, may appear at the Settlement Hearing scheduled for January 31, 2002, and be heard on whether (i) the proposed Settlement of the Litigation should be approved as fair, reasonable, and adequate; and (ii) there should be an award of attorneys' fees, costs, and expenses, including compensation awards to the Class Representatives. No member of the Class shall be heard or entitled to contest the approval of the Settlement terms and conditions, of the awards, fees, costs, and disbursements requested, unless on or before January 18, 2002, that person has filed said objections in writing and copies of any supporting papers and briefs with the Clerk of the Court for the United States Bankruptcy Court for the District of Delaware. Copies of the objections filed must also show proof of service upon each of the following:

Myles J. Trains                          Robert Brady
Trains And Associates                    Young, Conaway, Stargatt & Taylor
One Biscayne Tower                       The Brandywine Building
2 S. Biscayne Blvd., #2930               1000 West Street, 17th Floor
Miami, FL  33131                         Wilmington, DE 19801
Attorney for the Class                   Attorney for Defendants

Any member of the Class who has not made his, her, or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed Settlement. IF YOU APPROVE OF OR DO NOT OPPOSE THE SETTLEMENT, OR THE APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS, EXPENSES AND COMPENSATION AWARDS, YOU DO NOT NEED TO APPEAR AT THE HEARING.

## IX. SETTLEMENT FAIRNESS HEARING

20.     The Court will conduct a Settlement Fairness Hearing on January 31, 2002, commencing at 2:00 p.m. at the United States Courthouse, 844 King Street, Wilmington, Delaware 19801 in Courtroom 1 for the following purposes: (1) to determine whether the Class Representatives and Class Counsel adequately have represented the interests of the Class to satisfy the requirement of due process; (2) to consider whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the settlement of all claims asserted by the Class against the Defendants now pending in this Court under the above caption; (3) to determine whether the Amended Order granting class certification previously filed by the parties should be entered (4) to consider whether judgment should be entered releasing the claims in the Complaint; (5) to consider whether judgment should be entered dismissing the Complaint on the merits and with prejudice in favor of the Defendants as against all persons or entities who are members of the previously certified Class certified for purposes of the Settlement, and who have not been excluded therefrom; and (6) to consider whether and in what amount to award Class Counsel fees and reimbursement of litigation expenses; and (7) to consider whether and in what amount to award compensation awards to the Class Representatives.

21.     The Court has reserved the right to approve the Settlement with or without modification and with or without further notice of any kind. The Court has further reserved the right to enter the Order and Final Judgment dismissing the Complaint on the merits and with prejudice as against the Plaintiff and all Class Members, regardless of whether it has approved the attorneys' fees and expenses. The Court has also reserved the right to adjourn the Settlement Fairness Hearing without further notice.

## X. SCOPE OF THIS NOTICE AND FURTHER INFORMATION

22.     THIS NOTICE CONTAINS ONLY A SUMMARY OF THE LITIGATION AND THE PROPOSED SETTLEMENT.  FOR MORE COMPLETE INFORMATION CONCERNING THESE MATTERS, YOU MAY INSPECT THE PLEADINGS, SETTLEMENT AGREEMENT, AND OTHER PAPERS ON FILE IN THIS LITIGATION DURING NORMAL BUSINESS HOURS AT THE OFFICE OF THE CLERK, UNITED STATES DISTRICT BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, UNITED STATES COURTHOUSE, 844 KING STREET, WILMINGTON, DELAWARE 19801.

23.     You may telephone or write to the Claims Administrator for additional information or for copies of the Settlement Agreement at:

EAL LPP Class Action Settlement
The Garden City Group, Inc.
Claims Administrator
105 Maxess Road
Melville, NY  11747
1-800-327-3664
WWW.EALLPPCLASSACTION.COM

DO NOT WRITE TO OR TELEPHONE THE COURT FOR INFORMATION.

Dated: November 21, 2001

                                        BY ORDER OF THE COURT
                                        Clerk of the Court
                                        United States District Court
                                        for the District of Delaware

4

## EXHIBIT A

Abbott, Robert D.
Aber, L.A.
Abrams, Billy L.
Adams, Jr., J.T.
Adams, Keith J.
Alexander, Harold
Alford, Wayne L.
Alvarez, Jr. Jose A.
Anderson, Ronald R.
Andrews, Jr. George M.
Angeletti, Thomas J.
Armstrong, III F.C.
Arnott, Brian G.
Atteberry, William M.
Ayer, K.H.
Baalen, P.
Babbitt, Randolph J.
Baldoni, L.A.
Baldridge, James H.
Balukonis, V.J.
Baque, III Frank
Barge, Patrick S.
Barnes, H. Bryant
Barnes, William H.
Barrero, Frank
Bartlett, David R.
Bauch, James H.
Beard, Ronald E.
Beattie, Donald G.
Beaty, Gregory L.
Behr, Peter J.
Bell, D.A.
Bell, L.
Beltran, J.E
Berghane, D. A.
Bergstein, D.S.
Berry, A.L.
Berwick, T.N.
Beveridge, A.L.
Bialko, Peter J.
Biggs, Clifford G.
Bisgnano, Charles
Bjelkevig, Richy A.
Blackburn James R.
Blair, T.D.
Blankenship, Jr. O.T.
Blix, Victor E. III
Boja, Robert N.
Bonna, F.
Boswell, L.L.
Brablec, Douglas D.
Bradley, W.D.
Bradley, R.
Brandt, William, M.
Braynon, Oscar J.
Bredthauer, Dirk
Bromschwig, Kurt F.
Brown, Walter R.
Browning, David L.
Bryant, Charles C.
Buchanan, E.J.
Bundrant, William D
Bunn, Larry D.
Buntin, Edward S.
Burke, R.T.
Burke, John A.
Burkhart, Ronnie L.
Burns, David A.
Butler, David S.
Butts, Ronald G.
Carl, George L.
Carlson, Bruce E.
Carter, Bruce, R.
Carter, D.L.

Case, Douglas W.
Challe, Bruce
Champage, Carl M.
Chapo, James E.
Charnes, Jonathan
Cheek, Raymond T.
Chirino, Rafael E.
Christopher, Anthony S.
Cirrotti, Dennis J.
Clark, Ronald D.
Clark, D.E.
Clark, W.C.
Clark, Wesley C.
Clary, B.K.
Clary, M.R.
Cocuzzo, D.J.
Cohn, Alan S.
Cole, John D.
Cole, William F.
Colli, G.F.
Collier, W.R.
Commander, Jr. John B.
Compton, John P.
Connell, E.W.
Connolly, James M.
Conti, R.G.
Cook, Carl D.
Cook, Kenneth E.
Cooper, T.L.
Cornay, Ray
Cowen, John B.
Craig, Robert L.
Crane, W.E.
Craus, C.M.
Crawford, D.B.
Crow, Kenneth P.
Crush, James M.
Curran, T.R.
Daniel, Jr., James W.
Davidson, William F.
Davis, Charles B.
Davis, Gerald O.
Davison, David J.
Davoust,W.P.
De Phillips, Floyd M.
Deeton, James L.
Delaria, David J.
Deming, Maurice A.
Devereaux, John A.
Devton, John R.
Dickinson, Randall L.
Dickman, George A.
Dixon, C.W.
Dixon Carroll
Dobson, Gordon W.
Doctorchik, Scott
Dodson, Bonnie U.
Dodson, Theodore E.
Doglione, Frank
Donovan, M.D.
Donovan, M.F.
Dorticos, Raul H.
Dublin, Robert S.
Duckworth, Thomas O.
Dugger, T.R.
Dundas, Charles P.
Dunn, L.J.
Dunn, R.A.
Durante, J.P.
Durkin, G.P.
Dyer, Charles G.
Dylong, J.
Ealy, R.L.
Eastman, J.D.
Edwards, K.A.

Egut, Ronald S.
Eldridge, Dorothy J.
Elmdanat, R.
Emery, James C,
Engelke, Marc J.
Engelke, Warren L.
Erickson, Alan W.
Evans, R.H.
Fahn, C.L.
Fant, Jr. Glenn E.
Farenga, J.H.
Farnsworth, Earnest L.
Farnsworth, K.L.
Farrell, Richard L.
Faulkner, H.C.
Feliu, John E.
Finch, R.A.
Fisher, III Joel F.
Fong, G.W.
Foresto, J.M.
Forsberg, Scott
Foster, Hubert E.
Foster, Robert W.
Fowells, James E.
Francis, R.H.
Frank, William
Frater, K.X.
Frazier, Bennie W.
Freytes, Luis R.
Friedrichs, Howard W.
Fritch, Donald A.
Frost, Wayne B.
Fryling, Albert A.
Fugedy, J.J.
Gaedtke, M.L.
Gaedtke, Michael L.
Garcia-Vergara, H.
Gardner, David E.
Gary, Carrol J.
Garza, E.
George, Henry R.
Geraghty, James D.
Gibson, Randall
Gordon, D.G.
Gorman, Barry William
Govatos, John D.
Grafton, Jr. J.R.
Grau, F.L.
Green, Grant S.
Green, G.A.
Greene, David L.
Greksa, G.J.
Grenie, A.A.
Gribas, Kenneth
Griffin, Donny E.
Griffith, Bobbie
Griggs, R.P.
Groff, W.V.
Grubbs, R.E.
Gruetzner, Allen
Grzegorczak, S.K.
Gunn, George H.
Gurl, John T.
Gurley, Louis E.
Hall, B.W.
Hall, Howard W.
Halloran, D.
Hamilton, Walcott B.
Haney, Fred C.
Hansen, P.W.
Hanshaw, R.G.
Ham, George F.
Harrell, Bruce
Harris, R.J.
Hartley, J.D.

Hassett, P.R.
Hastings, Gregory A.
Hauth, David A.
Hawkins, Thomas R.
Hiatt, Jr. H.W.
Higgins, R.F.
Hill, W.B.
Hinsdale, James P.
Hipps, William D.
Hodgers, Benjamin
Hooton, J.W.
Houston, Charles M.
Howard, C.A.
Howard, Charles B.
Howard, James W.
Huddleston, J.D.
Huges Jr., James R.
Hunter, Richard I.
Hurley, Jay
Hutchin, Robert A.
Hutson, R.T.
Ingram, Capt. Culpepper F.
Inman, Brownie N.
Iranipour, F.
Jacobowitz, L.
Jansen, C.W.
Jaye, Mamadou D.
Johansen, William H.
Johnson, R.A.
Johnson, C.T.
Johnson, G.M.
Johnson, Richard A.
Johnson, R. A.
Johnson, Robert E.
Jones, John L.
Jordan, W.O.
Kalantsri, F.
Kane, S.G.
Keeler, R.L.
Kennedy, M.J.
Khan, N.
Kimble, R. L.
Kingweil, R.A.
Kiuthe, D.B.
Koziol, R. L.
Kritcher, Lawrence N.
Krueger, Fred W.
Kucklick, Joe
Kurtz, Hugo E.
Laine, J. R.
Laing, R. C.
Lamaute, L .L.
Lambie, J. M.
Lamecker, D. R.
Landa, George
Landry, Jr. Donald J.
Lane, F. W.
Lane, Jr. Gordon B.
Lane, Malcolm V.
Langer, Lawrence E.
Lantz, K. M.
Latham, Richard C.
Lavarello, E. F.
Lawrence, Charles W.
Lea, Robert G.
Lee, J. R.
Lee, Allan R.
Lehman, L.G.
Leonhardt, Stephen J.
Levy, Simon
Lewandowski, R.A.
Lewicki, John A.
Lewis, Gary M.
Liebing, Kurt M..
Lindell R.W.

5

# EXHIBIT A

Lindner, A.
Link, C.R.
Linn, D. N.
Lorenzo, Gustavo A.
Love, F.W.
Lyter, Jr. Henry B.
Lytle, Richard A.
Maarouf, D. H.
Manduley, Leonard
Malone, Steven J.
Mann, William B. Jr.
Manning, Bob S.
Marciano, Anthony P.
Marcinek, Jerry V.
Marino, Edward H.
Martinez-Alegri, J.
Marsh, A.A.
Mason, Hugh C.
Mathisen, N.A.
Matthews, Patrick M.
Maugeri, Peter J.
Mauro, A.F.
McCabe, Larry G.
McCann, Joseph P.
McCartney, Kenneth L.
McClannahan, Richard W.
McCracke, Keith K.
McDonald, T.L.
McHenry, J.R.
McKenna, C.E
McKenna, William D.
McKennan, D.J.
McKeon, A. T.
McLean, D. W.
McMahon, Michael S.
McQuigg, A.R.
McRae, James D.
Means, James A.
Menchini, R.L.
Mendez, E.
Merly, Hector M.
Mesmer, Frederick H.
Michael, Donald K.
Milanette, R. T.
Miller, Daniel P.
Miller, Frank P.
Miller III, W.B.
Miller, James A.
Miller, Robert L.
Miller, Thomas O.
Minardi, Jame V.
Misencik, Paul R.
Miskotten, Edward
Mitchell, D.S.
Mittelstaedt, George J.
Moffitt, R.E.
Moktadier, John
Montgomery, D. J.
Mooney, R. O.
Moore, Donald B.
Moore, Jr., R.E.
Morgan D. P.
Morrey, Frank J.
Morrison, Edward H
Morrison, David L.
Mortensen, KimT.
Mosiener, C. F.
Munger, Steven S.
Munsterman, R.A.
Murphy, Paul R.
Murray, H. M.
Murray, Thomas O.
Musick, Jr., Charles R.
Myers, III, Wilson D.
Nagy, S.L.

Nall, Jr. Robert L.
Nelson, R. J.
Nelson, Douglas C.
Ness, R.A.
Neumann, P.G.
Nicchia, Leonard R.
Nicholson, William T.
Norman, II J. S.
O'Connell, John M.
Ogden, Thomas H.
Ogilvie, Thurston
Oneill, Ramon E.
ORourke, M.J.
Ortiz, Boris
Osborne, Richard A.
Osman, Dale E.
Ouzts, Jr., J. F.
Palermo, F.G.
Palmer, Douglas M.
Pappas, T
Pareira, Fred
Parkinson, Richard E.
Parr, William J.
Paschke, J.M.
Patel, P. Raman
Pauley, Leon Trenton
Peacock, Donald J.
Peacon, Robert C.
Peery, T.H.
Pell, Thomas A.
Pennie, J. R.
Penrod, Gary B.
Perez, Jr. Efrain
Perkins, D. Grier
Perry Jr A.G.
Peters, L. W.
Petko, J. G.
Pettit, B.D.
Phillips, R. A.
Phillips, Henry C.
Phillips, Terry E.
Pinkerton, K. R.
Pipkin, R. P.
Poirer, Noel A.
Potter, Martin
Preis, M.J.
Priest, Peter D.
Priest, Paul B.
Plutonen, Leonard R.
Raju, K.V.
Ramaprakash, T. S.
Rawlings, Jr. Walter E.
Rawls III, F. H.
Ray, C. G.
Redd, W. J.
Reeh, Charles D.
Regan, J. H.
Reik, K. M.
Reinholtz, R. E.
Reitan, A. G.
Reno, Richard W.
Reynolds, D. D.
Richards, K. L.
Roberts, Reginald
Roberts, R. E.
Robertson, James L.
Robinson, Kenneth D.
Rodriguez, F. A.
Rogers, D. J.
Rosenthal, Eugene P.
Rosman, Ken
Ross, Thomas D.
Rosser, John P.
Rupert II, John F.
Ryan, Edward J.

Santiago, Stanley
Sauer, D. P.
Saunders, Daniel S.
Schanzlin, D. N.
Schedel, J.R.
Schrag, James A.
Schriner, Jr. D. O.
Schroll, Jr. John E.
Schultheis, D. H..
Secor, E. F.
Self, G.W.
Sessums, Stephen E.
Sewell, Jr. H. J.
Sheehan, F. J.
Shepard, Gary C.
Shore, G.E.
Shoun, J. W.
Shriver, Larry L.
Simmons, Gary
Sirmans, J. W.
Sizemore, Samuel E.
Smith, Andrew C.
Smith, Charles E.
Smith, David W.
Smith, Jack G.
Smith, Jr. S. D.
Smith, Robert Leo
Smith, Carl C.
Sofferin, Jeffrey
Sorenson, John P.
Spleker, Jr. Samuel G.
Spillman, Harry L.
Spitler, Douglas H.
Sposito, James
Stanton, Donald H
Starzyk, E. S.
Steward, Donald E.
Stewart, Wayne M.
Stifel, Arthur C.
Stokes, Clifford J.
Stone, Alan C.
Stone, Cary A.
Stone, Edward E.
Stow, Calvin E.
Strader, Sr. James R.
Stradley, K. W.
Straessle, Gregory C.
Strong, D. B.
Strus, M. W.
Sullivan, E. M.
Sullivan, Ennis C.
Sullivan, John L.
Sullivan, Robert F.
Syman, John E.
Taliaferro, Jr. C.E.
Talton, W.G.
Tate, Joe F.
Taylor, Dean H.
Taylor, J. M.
Taylor, Jr. Glyn M.
Taylor, Jr. Henry A.
Taylor, Robert A.
Terrence, J. Fitzgerald
Tew, Jr. B. D.
Theakston, Peter A.
Thompson, Jerry L.
Thompson, R. L.
Thomson, III John B.
Thornton, Kenneth
Threlkeld, J. G.
Tippett, Jeannette S.
Tipton, Larry K.
Tomelden, Arthur P.
Toole, Oliver A.
Torres, C. T.

Towney, Jr. James R.
Trauger, H. R.
Treadwell, J. P.
Triplett, David M..
Trivett, Roscoe H.
Tucker, Joe R.
Tucker, D.
Tucker, T.T.
Tumlin, William H.
Turner, J. R.
Unger, R. A.
Urso, Michael T.
Vanek, A. G.
Vara, R.W.
Vaughan, Michael J.
Vesty, Charles H.
Villanueva, R.
Villers, David L.
Vohra, P. P.
Vonkleeck, John S.
Voudy, John E.
Wagner, Ronald
Walby, Thomas F.
Walker, T. W.
Walther, F. O.
Walton, M.R.
Waterstreet, Mark A.
Watson, M.D.
Watt, A. K.
Weaver, Linda B.
Webb, Jr. Rufus
Weir, James R.
Weisbruch, J. E.
Weller, Jr. A. E.
Wengert, R. D.
West, Peter
Westby, Dorothy C.
Westphall, Robert C.
Wheeler, James R.
Whitaker, R.B.
White, Robert L.
Whitford, James R.
Whitley, Donald D.
Whitney, Richard A..
Wilkie, James R.
Williams, J. C.
Willis, H. P.
Wilson, J. S.
Wilson, James S.
Wingate, Wesley A.
Wood, T. R.
Wood, Steven C.
Wright, Dean S.
Yates, G. W.
Yeater, Don
Young, Thomas J.
Zeng, Robert E.
Ziobro, Thomas J.
Zito, Joseph

**Must be Postmarked
No Later Than
April 3, 2002**

**EAL LPP Class Action Settlement
The Garden City Group, Inc.
Claims Administrator
105 Maxess Road
Melville, NY 11747
1-800-327-3664
WWW.EALLPPCLASSACTION.COM**

**CNT**



## PROOF OF CLAIM AND RELEASE

Claim Number:

**CORRECTIONS OR ADDITIONAL INFORMATION**
Write any name, address and/or SSN/TIN corrections below if necessary **OR** if there is no preprinted data to the left, please provide your name and address here:

IF THIS AREA IS INCORRECT,
◄— PLEASE COMPLETE
"CORRECTIONS ONLY" BOX
TO THE RIGHT.    —►

**Please fill in SSN/TIN if box is blank:**

**Please fill in Eastern Employee Number if box is blank:**

## IMPORTANT NOTICE - PLEASE READ CAREFULLY

This Proof of Claim pertains to claims which you have as a Class Member arising out of claims filed in Continental Airline's bankruptcy proceedings, *In Re Continental Airlines, Inc.,* Case Nos. 90-932 - 984 (Bankr. D. Del.) (the "Continental Bankruptcy Proceedings"), for enforcement of the labor protective provisions of the Eastern Airlines/Air Line Pilots Association collective bargaining agreement against Continental.

If you fail to file your Proof of Claim and Release form by **April 3, 2002**, your claim will be subject to rejection and you will be precluded from receiving any benefits under the Settlement of this case, the *Baldridge* LPP Class action, if it is approved by the Court.

### Instructions

In order for you to receive any benefits under the Settlement which is pending approval by the Court in this case, you must fill out, sign and date this Proof of Claim and Release form on the reverse side in Section II entitled *Declaration of Claimant to Participate in Benefits Under Settlement*, and mail it first class mail, postage prepaid, on or before **April 3, 2002** to:

**EAL LPP Class Action Settlement
The Garden City Group, Inc.
Claims Administrator
105 Maxess Road
Melville, NY  11747**

IF YOU HAVE ANY QUESTIONS REGARDING THIS FORM, CALL THE CLAIMS ADMINISTRATOR AT 1-800-327-3664 AND WE WILL BE GLAD TO ASSIST YOU.  DO <u>NOT</u> CALL THE COURT.

### PLEASE SEE REVERSE SIDE FOR SECTION II



## II.   Declaration of Claimant to Participate in Benefits Under Settlement

I hereby elect to participate in the Settlement Agreement dated October 16, 2001 between the Baldridge LPP Class Action Plaintiffs and Continental Airlines, Inc. and Continental Airlines Holdings, Inc.  (Hereinafter "Continental") and to WAIVE AND RELEASE ALL CLAIMS against Continental and certain other entities and persons, all as more fully set forth below.  I HAVE READ THE SETTLEMENT AGREEMENT CAREFULLY and I understand that no oral or written representations from any source can vary the terms of the Settlement Agreement.  I accept and agree to be bound by the terms of the Settlement Agreement.  I represent and warrant that I have not previously settled any claim with Continental relating to labor protective provisions arising out of the alleged Eastern merger.

**Waiver and Release of Claims.**  I hereby waive and release forever any and all claims of any nature whatsoever arising heretofore, whether known or unknown, including bankruptcy claims, grievances, litigation claims and unasserted claims, against the bankruptcy estate of Continental Airlines, Inc. and its affiliated debtors, Continental Airlines Holdings, Inc., Continental Airlines, Inc. (the reorganized entity and its affiliates), System One Holdings, Inc.,  ExpressJet Airlines, Inc. a/k/a Continental Express, Continental Micronesia, Inc., its subsidiaries and affiliates, and its and their directors and officers, stockholders, employees, attorneys, agents and representatives.

**I UNDERSTAND AND AGREE THAT THIS ELECTION AND WAIVER IS NOT SUBJECT TO REVOCATION** but shall become null and void in its entirety if the Settlement Agreement is not approved or if it becomes null and void for any reason.

I hereby certify, under penalty of perjury, that the above information is true and correct to the best of my knowledge.

Date:_____

Signed:_____

Print Name:_____

**IF YOU ARE UNSURE HOW TO COMPLETE THIS FORM, CALL THE CLAIMS ADMINISTRATOR AT 1-800-327-3664 AND WE WILL BE GLAD TO ASSIST YOU.  DO NOT CALL THE COURT.**

EXHIBIT  G

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al.. | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. A-99-412 |
| CONTINENTAL AIRLINES HOLDINGS, | ) | Class Action |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS. | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF EDNA SMITH**

| | | |
|---|---|---|
| COUNTY OF HARRIS | ) | ss: |
| | ) | |
| STATE OF TEXAS | ) | |

Edna Smith, being duly sworn, deposes and says:

1.    I have been employed by Continental Airlines, Inc. ("Continental") since 1985

and I am currently a Litigation Analyst in the Continental legal department. I have been directly

involved in the administration of proofs of claims in the above-captioned bankruptcy proceeding

since Continental created the claims group in 1990. I am duly authorized to execute this affidavit and unless otherwise indicated, the facts and information set forth herein are based on my personal knowledge.

2.      I worked with Continental's in-house and outside counsel and counsel for the Plaintiffs to prepare Exhibit A to the proposed Amended Order Granting Class Certification, a copy of which is attached hereto. It is my belief and understanding that the attached Exhibit A is a complete and accurate list of all persons properly included as plaintiffs in the above-captioned class action adversary proceeding.

3.      The attached Exhibit A was compiled as follows:

(a)      I and those under my direct supervision and control reviewed the Official Claims Register maintained in these bankruptcy cases and identified any proof of claim that may have been filed by a former employee of Eastern Airlines who claimed they were entitled to the benefits of the collective bargaining agreement between Eastern Airlines and the Air Line Pilots Association (the "Eastern CBA") in effect at the time that Eastern Airlines allegedly merged with Continental Airlines Holdings, Inc. This resulted in an initial list of more than 5,000 claims.

(b)      Each proof of claim was pulled and reviewed by me personally or those under my direct supervision and control to determine if the basis of the claim was for equitable relief or damages as a result of Continental's alleged violations of the labor protective provisions (the "LPP's") of the Eastern CBA. I deleted from the list those proofs of claim that did not meet the criteria set forth above.

2

(c)    I then reviewed the list of all those claimants who had settled and released their claims against the Debtors as a result of that certain settlement agreement between the Debtors and the Air Line Pilots Association (the "ALPA Settlement"). Each claimant that had accepted the ALPA Settlement was removed from the list.

(d)    I then reviewed a list prepared by Continental's outside counsel of all those claimants who had filed a notice withdrawing their proofs of claim in these proceedings. This group is referred to as the "Addington Group." Each claimant that had withdrawn his or her claim was removed from the list.

(e)    I was then supplied with a list prepared by class counsel to the Plaintiffs of those persons that he believed would be properly included in the class. I reconciled the two lists, doing further research into a claim or claimant where necessary and I did identify certain additional claimants that were properly included in the class. The result of these efforts, which took more than 80 hours, is the list attached hereto as Exhibit A.

4.    Based on the foregoing, I submit that the list attached hereto as Exhibit A is a complete and accurate list of all persons properly included as plaintiffs in the above-captioned class action adversary proceeding.

Dated: January 2, 2002
     Houston, Texas

_Edna Smith_
Edna Smith

CHERYL RUSSELL
Notary Public, State of Texas
My Commission Expires
October 21, 2004

Notary: _Cheryl Russell_

3

WP3:715726.1                                                45085.1005

## EXHIBIT A

Lorenzo, Gustavo A.
Love, F.W.
Lyter, Jr. Henry B.
Lytle, Richard A.
Maarouf, D. H.
Manduley, Leonard
Malone, Steven J.
Mann, William B. Jr.
Manning, Bob S.
Marciano, Anthony P.
Marcinek, Jerry V.
Marino, Edward H.
Martinez-Alegri, J.
Marsh, A.A.
Mason, Hugh C.
Mathisen, N.A.
Matthews, Patrick M.
Maugeri, Peter J.
Mauro, A.F.
McCabe, Larry G.
McCann, Joseph P.
McCartney, Kenneth L.
McClannahan, Richard W.
McCracke, Keith K.
McDonald, T.L.
McHenry, J.R.
McKenna, C.E
McKenna, William D.
McKennan, D.J.
McKeon, A. T.
McLean, D. W.
McMahon, Michael S.
McQuigg, A.R.
McRae, James D.
Means, James A.
Menchini, R.L.
Mendez, E.
Merly, Hector M.
Mesmer, Frederick H.
Michael, Donald K.
Milanette, R. T.
Miller, Daniel P.
Miller, Frank P.
Miller III, W.B.
Miller, James A.
Miller, Robert L.
Miller, Thomas O.
Minardi, Jame V.
Misencik, Paul R.
Miskotten, Edward
Mitchell, D.S.
Mittelstaedt, George J.
Moffitt, R.E.
Moktadier, John
Montgomery, D. J.
Mooney, R. O.
Moore, Donald B.
Moore, Jr., R.E.
Morgan D. P.
Morrey, Frank J.
Morrison, Edward H
Morrison, David L.
Mortensen, KimT.
Moslener, C. F.
Munger, Steven S.
Munsterman, R.A.
Murphy, Paul R.
Murray, H. M.
Murray, Thomas O.
Musick, Jr., Charles R.
Myers, III, Wilson D.
Nagy, S.L.
Nall, Jr. Robert L.
Nelsen, R J.
Nelson, Douglas C.

Ness, R.A.
Neumann, P.G.
Nicchia, Leonard R.
Nicholson, William T.
Norman, II J. S.
O'Connell, John M.
Ogden, Thomas H.
Ogilvie, Thurston
Oneill, Ramon E.
ORourke, M.J.
Ortiz, Boris
Osborne, Richard A.
Osman, Dale E.
Ouzts, Jr., J. F.
Palermo, F.G.
Palmer, Douglas M.
Pappas, T
Pareira, Fred
Parkinson, Richard E.
Parr, William J.
Paschke, J.M.
Patel, P. Raman
Pauley, Leon Trenton
Peacock, Donald J.
Peacon, Robert C.
Peery, T.H.
Pell, Thomas A.
Pennie, J. R.
Penrod, Gary B.
Perez, Jr. Efrain
Perkins, D. Grier
Perry Jr A.G.
Peters, L. W.
Petko, J. G.
Pettit, B.D.
Phillips, R. A.
Phillips, Henry C.
Phillips, Terry E.
Pinkerton, K. R.
Pipkin, R. P.
Poirer, Noel A.
Potter, Martin
Preis, M.J.
Priest, Peter D.
Priest, Paul B.
Putonen, Leonard R.
Raju, K.V.
Ramaprakash, T. S.
Rawlings, Jr. Walter E.
Rawls III, F. H.
Ray, C. G.
Redd, W. J.
Reeh, Charles D.
Regan, J. H.
Reik, K. M.
Reinholtz, R. E.
Reitan, A. G.
Reno, Richard W.
Reynolds, D. D.
Richards, K. L.
Roberts, Reginald
Roberts, R. E.
Robertson, James L.
Robinson, Kenneth D.
Rodriguez, F. A.
Rogers, D. J.
Rosenthal, Eugene P.
Rosman, Ken
Ross, Thomas D.
Rosser, John P.
Rupert II, John F.
Ryan, Edward J.
Santiago, Stanley
Sauer, D. P.
Saunders, Daniel S.

Schanzlin, D. N.
Schedel, J.R.
Schrag, James A.
Schriner, Jr. D. O.
Schroll, Jr. John E.
Schultheis, D. H..
Secor, E. F.
Self, G.W.
Sessums, Stephen E.
Sewell, Jr. H. J.
Sheehan, F. J.
Shepard, Gary C.
Shore, G.E.
Shoun, J. W.
Shriver, Larry L.
Simmons, Gary
Sirmans, J. W.
Sizemore, Samuel E.
Smith, Andrew C.
Smith, Charles E.
Smith, David W.
Smith, Jack G.
Smith, Jr. S. D.
Smith, Robert Leo
Smith, Carl C.
Sofferin, Jeffrey
Sorenson, John P.
Spieker, Jr. Samuel G.
Spillman, Harry L.
Spitler, Douglas H.
Sposito, James
Stanton, Donald H
Starzyk, E. S.
Steward, Donald E.
Stewart, Wayne M.
Stifel, Arthur C.
Stokes, Clifford J.
Stone, Alan C.
Stone, Cary A.
Stone, Edward E.
Stow, Calvin E.
Strader, Sr. James R.
Stradley, K. W.
Straessle, Gregory C.
Strong, D. B.
Strus, M. W.
Sullivan, E. M.
Sullivan, Ennis C.
Sullivan, John L.
Sullivan, Robert F.
Syman, John H.
Taliaferro, Jr. C.E.
Talton, W.G.
Tate, Joe F.
Taylor, Dean H.
Taylor, J. M.
Taylor, Jr. Glyn M.
Taylor, Jr. Henry A.
Taylor, Michael J.
Taylor, Robert A.
Terrence, J. Fitzgerald
Tew, Jr. B. D.
Theakston, Peter A.
Thompson, Jerry L.
Thompson, R. L.
Thomson, III John B.
Thornton, Kenneth
Threlkeld, J. G.
Tippett, Jeannette S.
Tipton, Larry K.
Tomelden, Artrur P.
Toole, Oliver A.
Torres, C. T.
Towney, Jr. James R.
Trauger, H. R.

Treadwell, J. P.
Triplett, David M..
Trivett, Roscoe H.
Tucker, Joe R.
Tucker, D.
Tucker, T.T.
Tumlin, William H.
Turner, J. R.
Unger, R. A.
Urso, Michael T.
Vanek, A. G.
Vara, R.W.
Vaughan, Michael J.
Vesty, Charles H.
Villanueva, R.
Villers, David L.
Vohra, P. P.
Vonkleeck, John S.
Voudy, John E.
Wagner, Ronald
Walby, Thomas F.
Walker, T. W.
Walther, F. O.
Walton, M.R.
Waterstreet, Mark A.
Watson, M.D.
Watt, A. K.
Weaver, Linda B.
Webb, Jr. Rufus
Weir, James R.
Weisbruch, J. E.
Weller, Jr. A. E.
Wengert, R. D.
West, Peter
Westby, Dorothy C.
Westphall, Robert C.
Wheeler, James R.
Whitaker, R.B.
White, Robert L.
Whitford, James E.
Whitley, Donald D.
Whitney, Richard A..
Wilkie, James R.
Williams, J. C.
Willis, H. P.
Wilson, James S.
Wingate, Wesley A.
Wood, T. R.
Wood, Steven C.
Wright, Dean S.
Yates, G. W.
Yeater, Don
Young, Thomas J.
Zeng, Robert E.
Ziobro, Thomas J.
Zito, Joseph

# EXHIBIT A

Abbott, Robert D.
Aber, L.A.
Abrams, Billy L.
Adams, Jr., J.T.
Adams, Keith J.
Alexander, Harold
Alford, Wayne L.
Alvarez, Jr. Jose A.
Anderson, Ronald R.
Andrews, Jr. George M.
Angeletti, Thomas J.
Armstrong, III F.C.
Arnott, Brian G.
Atteberry, William M.
Ayer, K.H.
Baalen, P.
Baldoni, L.A.
Baldridge, James H.
Balukonis, V.J.
Baque, III Frank
Barge, Patrick S.
Barnes, H. Bryant
Barnes, William H.
Barrero, Frank
Bartlett, David R.
Bauch, James H.
Beard, Ronald E.
Beattie, Donald G.
Beaty, Gregory L.
Behr, Peter J.
Bell, D.A.
Bell, L.
Beltran, J.E
Berghane, D. A.
Bergstein, D.S.
Berry, A.L.
Berwick, T.N.
Beveridge, A.L.
Bialko, Peter J.
Biggs, Clifford G.
Bisgnano, Charles
Bjelkevig, Richy A.
Blackburn James R.
Blair, T.D.
Blankenship, Jr. O.T.
Blix, Victor E. III
Boja, Robert N.
Bonna, F.
Boswell, L.L.
Brablec, Douglas D.
Bradley, W.D.
Bradley, R.
Brandt, William, M.
Braynon, Oscar J.
Bredthauer, Dirk
Bromschwig, Kurt F.
Brown, Walter R.
Browning, David L.
Bryant, Charles C.
Buchanan, E.J.
Bundrant, William D
Bunn, Larry D.
Buntin, Edward S.
Burke, R.T.
Burke, John A.
Burkhart, Ronnie L.
Burns, David A.
Butler, David S.
Butts, Ronald G.
Carl, George L.
Carlson, Bruce E.
Carter, Bruce, R.
Carter, D.L.
Case, Douglas W.

Chaile, Bruce
Champage, Carl M.
Chapo, James E.
Charnes, Jonathan
Cheek, Raymond T.
Chirino, Rafael E.
Christopher, Anthony S.
Cirrotti, Dennis J.
Clark, Ronald D.
Clark, D.E.
Clark, Wesley C.
Clary, B.K.
Clary, M.R.
Cocuzzo, D.J.
Cohn, Alan S.
Cole, John D.
Cole, William F.
Colli, G.F.
Collier, W.R.
Commander, Jr. John B.
Compton, John P.
Connell, E.W.
Connolly, James M.
Conti, R.G.
Cook, Carl D.
Cook, Kenneth E.
Cooper, T.L.
Cornay, Ray
Cowen, John B.
Craig, Robert L.
Crane, W.E.
Craus, C.M.
Crawford, D.B.
Crow, Kenneth P.
Crush, James M.
Curran, T.R.
Daniel, Jr., James W.
Davidson, William F.
Davis, Charles B.
Davis, Gerald O.
Davison, David J.
Davoust,W.P.
De Phillips, Floyd M.
Deeton, James L.
Delaria, David J.
Deming, Maurice A.
Devereaux, John A.
Devton, John R.
Dickinson, Randall L.
Dickman, George A.
Dixon Carroll
Dobson, Gordon W.
Doctorchik, Scott
Dodson, Bonnie U.
Dodson, Theodore E.
Doglione, Frank
Donovan, M.D.
Donovan, M.F.
Dorticos, Raul H.
Dublin, Robert S.
Duckworth, Thomas O.
Dugger, T.R.
Dundas, Charles P.
Dunn, L.J.
Dunn, R.A.
Durante, J.P.
Durkin, G.P.
Dyer, Charles G.
Dylong, J.
Ealy, R.L.
Eastman, J.D.
Edwards, K.A.
Egut, Ronald S.
Eldridge, Dorothy J.
Elmdanat, R.

Emery, James C.
Engelke, Marc J.
Engelke, Warren L.
Erickson, Alan W.
Evans, R.H.
Fahn, C.L.
Fant, Jr. Glenn E.
Farenga, J.H.
Farnsworth, Earnest L.
Farnsworth, K.L.
Farrell, Richard L.
Faulkner, H.C.
Feliu, John E.
Finch, R.A.
Fisher, III Joel F.
Fong, G.W.
Foresto, J.M.
Forsberg, Scott
Foster, Hubert E.
Foster, Robert W.
Fowells, James E.
Francis, R.H.
Frank, William
Frater, K.X.
Frazier, Bennie W.
Freytes, Luis R.
Friedrichs, Howard W.
Fritch, Donald A.
Frost, Wayne B.
Fryling, Albert A.
Fugedy, J.J.
Gaedtke, Michael L.
Garcia-Vergara, H.
Gardner, David E.
Gary, Carrol J.
Garza, E.
George, Henry R.
Geraghty, James D.
Gibson, Randall
Gordon, D.G.
Gorman, Barry William
Govatos, John D.
Grafton, Jr. J.R.
Grau, F.L.
Green, Grant S.
Green, G.A.
Greene, David L.
Greksa, G.J.
Grenie, A.A.
Gribas, Kenneth
Griffin, Donny E.
Griffith, Bobbie
Griggs, R.P.
Groff, W.V.
Grubbs, R.E.
Gruetzner, Allen
Grzegorzak, S.K.
Gunn, George H.
Gurl, John T.
Gurley, Louis E.
Hall, B.W.
Hall, Howard W.
Halloran, D.
Hamilton, Walcott B.
Haney, Fred C.
Hansen, P.W.
Hanshaw, R.G.
Harn, George F.
Harrell, Bruce
Harris, R.J.
Hartley, J.D.
Hassett, P.R.
Hastings, Gregory A.
Hauth, David A.
Hawkins, Thomas R.

Hiatt, Jr. H.W.
Higgins, R.F.
Hill, W.B.
Hinsdale, James P.
Hipps, William D.
Hodgers, Benjamin
Hooton, J.W.
Houston, Charles M.
Howard, C.A.
Howard, Charles B.
Howard, James W.
Huddleston, J.D.
Huges Jr., James R.
Hunter, Richard I.
Hurley, Jay
Hutchin, Robert A.
Hutson, R.T.
Ingram, Capt. Culpepper F.
Inman, Brownie N.
Iranipour, F.
Babbitt, Randolph J.
Jacobowitz, L.
Jansen, C.W.
Jaye, Mamadou D.
Johansen, William H.
Johnson, R.A.
Johnson, C.T.
Johnson, G.M.
Johnson, Richard A.
Johnson, R. A.
Johnson, Robert E.
Jones, John L.
Jordan, W.O.
Kalantsri, F.
Kane, S.G.
Keeler, R.L.
Kennedy, M.J.
Khan, N.
Kimble, R.A.
Kingwell, R.A.
Kluthe, D.B.
Koziol, R. L.
Kritcher, Lawrence N.
Krueger, Fred W.
Kucklick, Joe
Kurtz, Hugo E.
Laine, J. R.
Laing, R. C.
Lamaute, L .L.
Lambie, J. M.
Larnecker, D. R.
Landa, George
Landry, Jr. Donald J.
Lane, F. W.
Lane, Jr. Gordon B.
Lane, Malcolm V.
Langer, Lawrence E.
Lantz, K. M.
Latham, Richard C.
Lavarello, E. F.
Lawrence, Charles W.
Lea, Robert G.
Lee, J. R.
Lee, Allan R.
Lehman, L.G.
Leonhardt, Stephen J.
Levy, Simon
Lewandowski, R.A.
Lewicki, John A.
Lewis, Gary M.
Liebing, Kurt M..
Lindell R.W.
Lindner, A.
Link, C.R.
Linn, D. N.

EXHIBIT  H

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                    }
                                          }         Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,      }         Chapter 11
                                          }
              Debtors                     }
_____       }
                                          }
JAMES BALDRIDGE, WILLIAM MANN,            }
and LARRY DUNN, individually, and         }
as representatives of a class of persons  }
similarly situated who are referred to as }
the LPP CLAIMANTS,                        }
                                          }
              Plaintiffs,                 }         Adversary Proceeding
v.                                        }         No. A-99-412
                                          }         Class Action
CONTINENTAL AIRLINES HOLDINGS,            }
INC., CONTINENTAL AIRLINES,               }
INC. and SYSTEM ONE HOLDINGS, INC. }
                                          }
              Defendants.                 }
_____       }

AFFIDAVIT OF MYLES J. TRALINS

STATE OF FLORIDA          )
                          )  ss.
COUNTY OF MIAMI-DADE  )

        Before me personally appeared MYLES J. TRALINS, who, being duly sworn, deposes

and says:

        1.     As Plaintiffs' Class Counsel, I have been directly involved in and have personal

knowledge of the procedures described herein which were utilized to identify and verify the

members of the class who are listed on Exhibit A attached hereto. (Exhibit A is also appended to

the proposed Amended Order Granting Class Certification.)

2.    Exhibit A was prepared as a result of my work with Class Representatives James Baldridge, William Mann, and Larry Dunn; Patricia Bloom, Ph.D., a consultant retained by plaintiffs to maintain a database regarding members of the class; Edna Smith, an employee of Continental Airlines; and with Continental's attorneys.

3.    Exhibit A was prepared as follows:

(a)    I have maintained a list of persons for whom I filed LPP claims in the *Continental Bankruptcy* proceedings. Persons who elected to accept the Air Line Pilots Association LPP settlement with Continental and advised me or the Class Representatives of the same were deleted from the list. Persons who withdrew their claims as a result of their participation with the Addington group were also deleted. I compared my list of class members after the deletions to the list which Continental prepared to confirm its accuracy. I also received confirmation from counsel for the Addington Group that all persons who had withdrawn their claims were deleted from the list.

(b)    In addition, I obtained from Eastern Airlines, pursuant to a Confidentiality Agreement, the social security numbers of all persons on Eastern's last seniority list who had not settled or withdrawn their claims. I provided the names, social security numbers and Eastern Airlines employee numbers to Choicepoint, a computer data research organization which we hired, in order to verify or obtain current addresses of the class members so that they could be personally served with notice.

(c)    After receiving and reviewing the addresses obtained by Choicepoint's research, I provided the resulting list of class members to the Class Representatives and to our consultant for review. During this review, the Class Representatives and I personally contacted those individuals whose status was in question in order to verify whether or not they are class

members. I also cross-checked the names on the list against Eastern Airlines pre-IAM strike seniority list and Eastern's November 1990 seniority list. The finalized list was provided to Continental's counsel with the request that Continental review same for accuracy and completeness.

        **(d)**    During the final review, we agreed with Continental to add one name which had been missed by Continental to the list and we deleted four names which were duplicate entries.

        4.    It is my belief that Exhibit A is a complete and accurate list of all eligible members of the class in this proceeding.

        FURTHER AFFIANT SAYETH NAUGHT.

MYLES J. TRALINS

**BEFORE ME,** the undersigned authority, personally appeared MYLES J. TRALINS, who being by me first duly sworn, deposes and says that he executed the foregoing Affidavit based upon his own personal knowledge and that the statements contained therein are true and correct.

        **SWORN AND SUBSCRIBED** before me, this _26th_ day of December, 2001.



NOTARY PUBLIC, State of Florida

My Commission Expires:

ARLENE D. SMITH-JUNCO
MY COMMISSION # CC 719309
EXPIRES: February 23, 2002
Bonded Thru Notary Public Underwriters

EXHIBIT I

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | }<br>} Case No. 90-932<br>CONTINENTAL AIRLINES, INC., et. al.,    }    Chapter 11<br>} |

In Re:                                        }
                                               }      Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,          }      Chapter 11
                                               }
            Debtors                            }
                                               }
_____               }
                                               }
JAMES BALDRIDGE, WILLIAM MANN,                 }
and LARRY DUNN, individually, and              }
as representatives of ag class of persons      }
similarly situated who are referred to as      }
the LPP CLAIMANTS,                             }
                                               }
                  Plaintiffs,                  }      Adversary Proceeding
v.                                             }      No. A-99-412
                                               }      Class Action
CONTINENTAL AIRLINES HOLDINGS,                 }
INC., CONTINENTAL AIRLINES,                    }
INC. and SYSTEM ONE HOLDINGS, INC.             }
                                               }
                  Defendants.                  }
_____               }

## AFFIDAVIT OF CLASS REPRESENTATIVE JAMES BALDRIDGE
## IN SUPPORT OF REQUEST FOR COMPENSATION AWARD

I HEREBY DECLARE UNDER PENALTY OF PERJURY:

1.    My name is James Baldridge. I reside at 402 Stratfield Drive, Lutz, Florida. I am a

      Named Plaintiff and Class Representative in this case.

2.    I was first employed with Eastern Airlines as a pilot on July 3, 1967 remained with the

      Company as a Captain until its shutdown on January 18, 1991.

3.    In early 1991, after Eastern's shutdown, Larry Dunn, William Mann and I recognized that

      unless we undertook to protect our LPP rights with Continental Airlines, no one would do

      it for us. With Eastern out of business, our union, the Air Line Pilots Association, had

Adversary Proceeding
No. A-99-412
Class Action

little incentive to actively fight for EAL pilots' interests by enforcing its seniority
integration policy and the LPPs against Continental. First of all, the union was trying to
become the collective bargaining representative at Continental and was telling CAL pilots
that there would be no EAL pilots at Continental. Second, the union had stood by and
done virtually nothing while EAL transferred assets which carried jobs without the jobs to
other air carriers.

4.    Larry, Bill and I began contacting other Eastern pilots to see if there would be enough
support to enable us to seek enforcement of our LPPs and to take other action to protect
rights arising out of our jobs at Eastern. Based on the affirmative responses we received,
even though we were unemployed, we put in our own funds to properly organize. We
began by looking for legal counsel with the reputation, skill, ability and knowledge to
take on our cause. We interviewed law firms in New York, Atlanta and Miami,
ultimately deciding to retain Myles J. Tralins as our counsel. We provided Mr. Tralins
with substantial documentation regarding our circumstances which he reviewed and
analyzed with us. We worked with Mr. Tralins in forging a plan of action, including
enforcement actions for our LPPs against Continental. We organized a telephone chain to
contact as many Eastern pilots as we could to invite them to an initial organizational
meeting at a hall we had rented for that purpose. We introduced Mr. Tralins at that
meeting, which packed the hall to capacity, and he discussed our rights and remedies with

-2-

Adversary Proceeding
No. A-99-412
Class Action

the group and answered questions.  As a result of that initial meeting, 673 Eastern pilots

agreed to participate with us and give us their support.

5.      Throughout the entire second half of 1991, Larry, Bill and I, who were still unemployed,

spent most of our time organizing the group and gathering information and materials for

Mr. Tralins.  With Mr. Tralins' legal assistance, we formed Eastern Pilots for Fairness,

Inc. (EPFF), a Florida not for profit corporation, and, since inception, have served as its

principal officers, members of its Board of Directors and Executive Committee.

6.      Since 1991, Larry, Bill and I have been responsible for all of the support for the matters

leading to this class action and all of the operations of EPFF including the collection,

accounting and expenditure of funds and the coordination and provision of support for

Mr. Tralins' actions on our behalf.

7.      One of the first matters we turned our attention and efforts to was the protection of our

LPP claims against Continental.  We did not believe, for the reasons stated above, that

our union would provide us with proper representation so we prepared and disseminated,

with the help of other members of our group, individual LPP proofs of claim for Eastern

pilots to file in the Continental bankruptcy proceeding.  We provided hands-on

instruction and help to Eastern pilots on how to fill out and file the claims and we had

them sign powers of attorney, substituting Mr. Tralins as the attorney of record in the

CAL bankruptcy for the union.  As a result of our efforts, approximately two thirds of the

LPP Class Action plaintiffs have claims in the pending settlement and a substantial

-3-

FROM : WORLDLINKCAFE            FAX NO. : 9705440006           Jan. 01 2002 03:43PM  P5

Adversary Proceeding
No. A-99-412
Class Action

number of those claims would not have been recognized by Continental but for our
efforts.

8.  In addition to the foregoing, for almost 11 years, Larry, Bill and I have each spent
thousands of hours of time in:

   a.  accumulating and providing Mr. Tralins with thousands of pages of
       documents and materials regarding his representation of our interests;

   b.  identifying and maintaining, on a current basis, data regarding the
       identification and location of persons who have become Class Members;

   c.  providing, on an on-going basis, written communications with our
       membership regarding the status of the legal proceedings brought on our
       behalf by Mr. Tralins including the preparation of hundreds of newsletters
       which we wrote, prepared, published and mailed;

   d.  engaging in daily telephone communications with our members who call;

   e.  serving as an interface for Mr. Tralins by responding to thousands of
       inquiries over the years which he received;

   f.  fund raising;

   g.  consulting with Mr. Tralins by telephone and in person many times per
       week;

   h.  participating in the preparation of the damage questionnaires prepared by
       Mr. Tralins and the economic exports he retained on our behalf:

-4-

Adversary Proceeding
No. A-99-412
Class Action

i.    coordinating the distribution and collection of the damage questionnaires;

j.    providing  assistance in accumulating and inputting the data from over 400
      questionnaires which we received into the databank created by Patricia
      Bloom, Ph.D. who was retained to assist us in keeping track of the details
      regarding our members;

k.    participating in preparing for and attending National Mediation Board
      proceedings;

l.    participating in preparing for and attending proceedings before this Court;

m.    participating  in preparing for and attending proceedings before the United
      States District Court for Delaware;

n.    participating in preparing for and attending proceedings before the United
      States Court of Appeals for the Third Circuit Court;

o.    organizing and participating in three separate "roadshow" tours with Mr.
      Tralins which were conducted in Miami, Florida,  Atlanta, Georgia,
      Providence, Rhode Island and Boston, Massachusetts;

p.    participating in the preparation and dissemination of videotapes made by
      Mr. Tralins which explained the course and status of the LPP proceedings,
      including participating in one of the videotapes where we acted as a panel,
      asking Mr. Tralins questions which we had obtained from other members
      of our group; and

-5-

Adversary Proceeding
No. A-99-412
Class Action

q.     preparing the necessary records for a certified public accounting firm to

prepare our tax returns and signing and filing them with the IRS and

preparing and filing required documents with the State of Florida.

9.     Larry, Bill and I have missed work and lost income and have taken substantial time away

from our families and friends during the past 11 years  in order to pursue the LPP claims

against Continental.

10.    Larry, Bill and I have advanced thousands of dollars out of own pockets in order to

pursue the LPP claims against Continental.

11.    Larry, Bill and I have always been available to Mr. Tralins  in order to pursue the LPP

claims against Continental.  We have met with him in person and have consulted with

him by telephone early in the morning, late at night and on weekends and holidays.

12.    Larry, Bill and I have not received any compensation whatsoever for our efforts during

these past 11 years. Mr. Tralins advised us this past summer that based upon our efforts

all these years and the result we will have obtained for the class if the settlement is

approved, that we can receive a compensation award from the gross settlement fund

which would be apportioned among all class members equally and that he would

certainly recommend it, both to us and to the Court.  After much debate among ourselves

we agreed.

13.    We feel that we have been of substantial benefit to the class.  We have worked diligently

to protect its interests and to provide all of the class members with a significant benefit.

-6-

FROM : WORLDLINKCAFE                FAX NO. : 9705440006            Jan. 01 2002 03:44PM  P6

Adversary Proceeding
No. A-99-412
Class Action

14.    We believe that the settlement is in the best interests of the class and that it should be
       approved.

15.    Having obtained a substantial benefit for the class, we respectfully request an
       appropriate compensation award from the Court for our efforts.

FURTHER AFFIANT SAYETH NAUGHT.

       Signed under penalty of perjury on January 2, 2002.

JAMES BALDRIDGE

-7-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                    )
                                          )        Case No. 90-932
CONTINENTAL AIRLINES, INC., et. al.,      )        Chapter 11
                                          )
            Debtors                       )
_____        )
                                          )
JAMES BALDRIDGE, WILLIAM MANN,            )
and LARRY DUNN, individually, and         )
as representatives of ng class of persons )
similarly situated who are referred to as )
the LPP CLAIMANTS,                        )
                                          )
            Plaintiffs,                   )        Adversary Proceeding
v.                                        )        No. A-99-412
                                          )        Class Action
CONTINENTAL AIRLINES HOLDINGS,            )
INC., CONTINENTAL AIRLINES,               )
INC. and SYSTEM ONE HOLDINGS, INC.        )
                                          )
            Defendants.                   )
_____        )

### AFFIDAVIT OF CLASS REPRESENTATIVE WILLIAM MANN
### IN SUPPORT OF REQUEST FOR COMPENSATION AWARD

I HEREBY DECLARE UNDER PENALTY OF PERJURY:

1.    My name is William Mann. I reside at 7020 North Serona Drive, Sarasota, Florida. I am

      a Named Plaintiff and Class Representative in this case.

2.    I was first employed with Eastern Airlines as a pilot on May 29, 1968 and remained with

      the Company as a Captain until its shutdown on January 18, 1991.

3.    In early 1991, after Eastern's shutdown, James Baldridge, Larry Dunn and I recognized

      that unless we undertook to protect our LPP rights with Continental Airlines, no one

      would do it for us. With Eastern out of business, our union, the Air Line Pilots

Adversary Proceeding
No. A-99-412
Class Action

Association. had little incentive to actively fight for EAL pilots' interests by enforcing its

seniority integration policy and the LPPs against Continental. First of all, the union was

trying to become the collective bargaining representative at Continental and was telling

CAL pilots that there would be no EAL pilots at Continental. Second, the union had stood

by and done virtually nothing while EAL transferred assets which carried jobs without the

jobs to other air carriers.

4.      Jim, Larry and I began contacting other Eastern pilots to see if there would be enough

support to enable us to seek enforcement of our LPPs and to take other action to protect

rights arising out of our jobs at Eastern. Based on the affirmative responses we received,

even though we were unemployed, we put in our own funds to properly organize. We

began by looking for legal counsel with the reputation, skill, ability and knowledge to

take on our cause. We interviewed law firms in New York, Atlanta and Miami,

ultimately deciding to retain Myles J. Tralins as our counsel. We provided Mr. Tralins

with substantial documentation regarding our circumstances which he reviewed and

analyzed with us. We worked with Mr. Tralins in forging a plan of action, including

enforcement actions for our LPPs against Continental. We organized a telephone chain to

contact as many Eastern pilots as we could to invite them to an initial organizational

meeting at a hall we had rented for that purpose. We introduced Mr. Tralins at that

meeting, which packed the hall to capacity, and he discussed our rights and remedies with

-2-

FROM : BILL MANN          FAX NO.  : 9419252555          Jan. 01 2002 07:20PM  P2
    FROM : WORLDLINKCAFE          FAX NO.  : 9705440006          Jan. 01 2002 03:34PM  P4

Adversary Proceeding
No. A-99-412
Class Action

the group and answered questions. As a result of that initial meeting, 673 Eastern pilots

agreed to participate with us and give us their support.

5.    Throughout the entire second half of 1991, Jim, Larry and I, who were still unemployed,

spent most of our time organizing the group and gathering information and materials for

Mr. Tralins. With Mr. Tralins' legal assistance, we formed Eastern Pilots for Fairness,

Inc. (EPFF), a Florida not for profit corporation, and, since inception, have served as its

principal officers, members of its Board of Directors and Executive Committee.

6.    Since 1991, Jim, Larry and I have been responsible for all of the support for the matters

leading to this class action and all of the operations of EPFF including the collection,

accounting and expenditure of funds and the coordination and provision of support for

Mr. Tralins' actions on our behalf.

7.    One of the first matters we turned our attention and efforts to was the protection of our

LPP claims against Continental. We did not believe, for the reasons stated above, that

our union would provide us with proper representation so we prepared and disseminated,

with the help of other members of our group, individual LPP proofs of claim for Eastern

pilots to file in the Continental bankruptcy proceeding. We provided hands-on

instruction and help to Eastern pilots on how to fill out and file the claims and we had

them sign powers of attorney, substituting Mr. Tralins as the attorney of record in the

CAL bankruptcy for the union. As a result of our efforts, approximately two thirds of the

LPP Class Action plaintiffs have claims in the pending settlement and a substantial

-3-

Adversary Proceeding
No. A-99-412
Class Action

number of those claims would not have been recognized by Continental but for our

offorts.

8.    In addition to the foregoing, for almost 11 years, Jim, Larry and I have each spent

thousands of hours of time in:

   a.    accumulating and providing Mr. Tralins with thousands of pages of

          documents and materials regarding his representation of our interests;

   b.    identifying and maintaining, on a current basis, data regarding the

          identification and location of persons who have become Class Members;

   c.    providing, on an on-going basis, written communications with our

          membership regarding the status of the legal proceedings brought on our

          behalf by Mr. Tralins including the preparation of hundreds of newsletters

          which we wrote, prepared, published and mailed;

   d.    engaging in daily telephone communications with our members who call;

   e.    serving as an interface for Mr. Tralins by responding to thousands of

          inquiries over the years which he received;

   f.    fund raising;

   g.    consulting with Mr. Tralins by telephone and in person many times per

          week;

   h.    participating in the preparation of the damage questionnaires prepared by

          Mr. Tralins and the economic experts he retained on our behalf;

-4-

FROM : BILL MANN                    FAX NO. : 9419252555           Jan. 01 2002 07:21PM  P4
       FROM : WORLDLINKCAFE         FAX NO. : 9705440006           Jan. 01 2002 03:34PM  P6

Adversary Proceeding
No. A-99-412
Class Action

i.      coordinating the distribution and collection of the damage questionnaires;

j.      providing assistance in accumulating and inputting the data from over 400

        questionnaires which we received into the databank created by Patricia

        Bloom, Ph.D. who was retained to assist us in keeping track of the details

        regarding our members;

k.      participating in preparing for and attending National Mediation Board

        proceedings;

l.      participating in preparing for and attending proceedings before this Court;

m.      participating in preparing for and attending proceedings before the United

        States District Court for Delaware;

n.      participating in preparing for and attending proceedings before the United

        States Court of Appeals for the Third Circuit Court;

o.      organizing and participating in three separate "roadshow" tours with Mr.

        Tralins which were conducted in Miami, Florida, Atlanta, Georgia,

        Providence, Rhode Island and Boston, Massachusetts;

p.      participating in the preparation and dissemination of videotapes made by

        Mr. Tralins which explained the course and status of the LPP proceedings,

        including participating in one of the videotapes where we acted as a panel,

        asking Mr. Tralins questions which we had obtained from other members

        of our group; and

-5-

FROM : BILL MANN
FROM : WORLDLINKCAFE

FAX NO. : 9419252555
FAX NO. : 9705440006

Jan. 01 2002 07:21PM  P5
Jan. 01 2002 03:33PM  P1

Adversary Proceeding
No. A-99-412
Class Action

q.    preparing the necessary records for a certified public accounting firm to
      prepare our tax returns and signing and filing them with the IRS and
      preparing and filing required documents with the State of Florida.

9.    Jim, Larry and I have missed work and lost income and have taken substantial time away
      from our families and friends during the past 11 years in order to pursue the LPP claims
      against Continental.

10.   Jim, Larry and I have advanced thousands of dollars out of own pockets in order to
      pursue the LPP claims against Continental.

11.   Jim, Larry and I have always been available to Mr. Tralins in order to pursue the LPP
      claims against Continental. We have met with him in person and have consulted with
      him by telephone early in the morning, late at night and on weekends and holidays.

12.   Jim, Larry and I have not received any compensation whatsoever for our efforts during
      these past 11 years. Mr. Tralins advised us this past summer that based upon our efforts
      all these years and the result we will have obtained for the class if the settlement is
      approved, that we can receive a compensation award from the gross settlement fund
      which would be apportioned among all class members equally and that he would
      certainly recommend it, both to us and to the Court. After much debate among ourselves
      we agreed.

13.   We feel that we have been of substantial benefit to the class. We have worked diligently
      to protect its interests and to provide all of the class members with a significant benefit.

-6-

FROM : BILL MANN                    FAX NO.  : 9419252555              Jan. 01 2002 07:22PM  P6

   FROM : WORLDLINKCAFE             FAX NO.  : 9705440006             Jan. 01 2002 03:35PM  P9

Adversary Proceeding
No. A-99-412
Class Action

14.    We believe that the settlement is in the best interests of the class and that it should be

approved.

15.    Having obtained a substantial benefit for the class, we respectfully request an

appropriate compensation award from the Court for our efforts.

FURTHER AFFIANT SAYETH NAUGHT.

Signed under penalty of perjury on January 2, 2002.

_____
                    WILLIAM MANN

-7-

FROM : WORLDLINKCAFE          FAX NO. : 9705440006          Jan. 01 2002 03:46PM P2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In Re: | } | Case No. 90-932 |
| | } | Chapter 11 |
| CONTINENTAL AIRLINES, INC., et. al., | } | |
| | } | |
| Debtors | } | |
| | } | |
| | } | |
| JAMES BALDRIDGE, WILLIAM MANN, | } | |
| and LARRY DUNN, individually, and | } | |
| as representatives of ug class of persons | } | |
| similarly situated who are referred to as | } | |
| the LPP CLAIMANTS, | } | |
| | } | |
| Plaintiffs, | } | Adversary Proceeding |
| v. | } | No. A-99-412 |
| | } | Class Action |
| CONTINENTAL AIRLINES HOLDINGS, | } | |
| INC., CONTINENTAL AIRLINES, | } | |
| INC. and SYSTEM ONE HOLDINGS, INC. | } | |
| | } | |
| Defendants. | } | |

**AFFIDAVIT OF CLASS REPRESENTATIVE LARRY DUNN
IN SUPPORT OF REQUEST FOR COMPENSATION AWARD**

I HEREBY DECLARE UNDER PENALTY OF PERJURY:

1.     My name is Larry Dunn.  I reside at 11635 S.W. 108 Terrace, Miami, Florida.  I am a

Named Plaintiff and Class Representative in this case.

2.     I was first employed with Eastern Airlines as a pilot on October 5, 1970 and remained

with the Company as a Captain until its shutdown on January 18, 1991.

3.     In early 1991, after Eastern's shutdown, James Baldridge, William Mann and I

recognized that unless we undertook to protect our LPP rights with Continental Airlines,

no one would do it for us.  With Eastern out of business, our union, the Air Line Pilots

Adversary Proceeding
No. A-99-412
Class Action

Association, had little incentive to actively fight for EAL pilots' interests by enforcing its

seniority integration policy and the LPPs against Continental. First of all, the union was

trying to become the collective bargaining representative at Continental and was telling

CAL pilots that there would be no EAL pilots at Continental. Second, the union had stood

by and done virtually nothing while EAL transferred assets which carried jobs without the

jobs to other air carriers.

4.      Jim , Bill and I began contacting other Eastern pilots to see if there would be enough

support to enable us to seek enforcement of our LPPs and to take other action to protect

rights arising out of our jobs at Eastern. Based on the affirmative responses we received,

even though we were unemployed, we put in our own funds to properly organize. We

began by looking for legal counsel with the reputation, skill, ability and knowledge to

take on our cause. We interviewed law firms in New York, Atlanta and Miami,

ultimately deciding to retain Myles J. Tralins as our counsel. We provided Mr. Tralins

with substantial documentation regarding our circumstances which he reviewed and

analyzed with us. We worked with Mr. Tralins in forging a plan of action, including

enforcement actions for our LPPs against Continental. We organized a telephone chain to

contact as many Eastern pilots as we could to invite them to an initial organizational

meeting at a hall we had rented for that purpose. We introduced Mr. Tralins at that

meeting, which packed the hall to capacity, and he discussed our rights and remedies with

-2-

FROM : WORLDLINKCAFE          FAX NO. : 9705440006          Jan. 01 2002 03:47PM P4

Adversary Proceeding
No. A-99-412
Class Action

the group and answered questions. As a result of that initial meeting, 673 Eastern pilots agreed to participate with us and give us their support.

5. Throughout the entire second half of 1991, Jim, Bill and I, who were still unemployed, spent most of our time organizing the group and gathering information and materials for Mr. Tralins. With Mr. Tralins' legal assistance, we formed Eastern Pilots for Fairness, Inc. (EPFF), a Florida not for profit corporation, and, since inception, have served as its principal officers, members of its Board of Directors and Executive Committee.

6. Since 1991, Jim, Bill and I have been responsible for all of the support for the matters leading to this class action and all of the operations of EPFF including the collection, accounting and expenditure of funds and the coordination and provision of support for Mr. Tralins' actions on our behalf.

7. One of the first matters we turned our attention and efforts to was the protection of our LPP claims against Continental. We did not believe, for the reasons stated above, that our union would provide us with proper representation so we prepared and disseminated, with the help of other members of our group, individual LPP proofs of claim for Eastern pilots to file in the Continental bankruptcy proceeding. We provided hands-on instruction and help to Eastern pilots on how to fill out and file the claims and we had them sign powers of attorney, substituting Mr. Tralins as the attorney of record in the

CAL bankruptcy for the union. As a result of our efforts, approximately two thirds of the

LPP Class Action plaintiffs have claims in the pending settlement and a substantial

-3-

number of those claims would not have been recognized by Continental but for our

efforts.

8.     In addition to the foregoing, for almost 11 years, Jim, Bill and I have each spent

thousands of hours of time in:

    a.     accumulating and providing Mr. Tralins with thousands of pages of

documents and materials regarding his representation of our interests;

    b.     identifying and maintaining, on a current basis, data regarding the

identification and location of persons who have become Class Members;

    c.     providing, on an on-going basis, written communications with our

membership regarding the status of the legal proceedings brought on our

behalf by Mr. Tralins including the preparation of hundreds of newsletters

which we wrote, prepared, published and mailed;

    d.     engaging in daily telephone communications with our members who call;

    e.     serving as an interface for Mr. Tralins by responding to thousands of

inquiries over the years which he received;

    f.     fund raising;

    g.     consulting with Mr. Tralins by telephone and in person many times per

week;

    h.     participating in the preparation of the damage questionnaires prepared by

Mr. Tralins and the economic experts he retained on our behalf;

-4-

Adversary Proceeding
No. A-99-412
Class Action

      q.      preparing the necessary records for a certified public accounting firm to

            prepare our tax returns and signing and filing them with the IRS and

            preparing and filing required documents with the State of Florida.

9.     Jim, Bill and I have missed work and lost income and have taken substantial time away

       from our families and friends during the past 11 years  in order to pursue the LPP claims

       against Continental.

10.    Jim, Bill and I have advanced thousands of dollars out of own pockets in order to

       pursue the LPP claims against Continental.

11.    Jim, Bill and I have always been available to Mr. Tralins  in order to pursue the LPP

       claims against Continental.  We have met with him in person and have consulted with

       him by telephone early in the morning, late at night and on weekends and holidays.

12.    Jim, Bill and I have not received any compensation whatsoever for our efforts during

       these past 11 years.  Mr. Tralins advised us this past summer that based upon our efforts

       all these years and the result we will have obtained for the class if the settlement is

       approved, that we can receive a compensation award from the gross settlement fund

       which would be apportioned among all class members equally and that he would

       certainly recommend it, both to us and to the Court.  After much debate among ourselves

       we agreed.

13.    We feel that we have been of substantial benefit to the class.  We have worked diligently

       to protect its interests and to provide all of the class members with a significant benefit.

-6-

JAN-01 21:45   LARRYDUNN                     305*279*3357        P01

FROM : WORLDLINKCAFE           FAX NO. : 9705440006          Jan. 01 2002 03:50PM  P8

Adversary Proceeding
No. A-99-412
Class Action

14.   We believe that the settlement is in the best interests of the class and that it should be
      approved.

15.   Having obtained a substantial benefit for the class, we respectfully request an
      appropriate compensation award from the Court for our efforts.

FURTHER AFFIANT SAYETH NAUGHT.

Signed under penalty of perjury on January 2, 2002.

LARRY DUNN

-7-

P08   LARRYDUNN                     305*279*3357        JAN-01 1'l:30

EXHIBIT J

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | } | |
| | } | Case No. 90-932 |
| CONTINENTAL AIRLINES, INC., et. al., | } | Chapter 11 |
| | } | |
| Debtors | } | |

JAMES BALDRIDGE, WILLIAM MANN, }     Adversary Proceeding
and LARRY DUNN, individually, and }     No. A-99-412
as representatives of a class of persons }     Class Action
similarly situated who are referred to as }
the LPP CLAIMANTS, }

        Plaintiffs, }    **Objections Due: 5/10/02**

v. }

            }    **Hearing Date: 5/17/02 @ 1:00 P.M.**

CONTINENTAL AIRLINES HOLDINGS, }
INC., CONTINENTAL AIRLINES, }
INC. and SYSTEM ONE HOLDINGS, INC.}

        Defendants. }

**MOTION OF CLASS ACTION PLAINTIFFS FOR FINDING THAT NEWLY
IDENTIFIED FORMER EAL PILOTS ARE MEMBERS OF THE CLASS,
FOR ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT
FOR THE NEW CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

The LPP Class Action Plaintiffs respectfully request the Court to issue an order

finding that 256 newly identified former Eastern Airlines (EAL) pilots listed on Exhibit A

appended hereto are members of the Class certified herein (the "New Members"). The

New Members are covered under the defined class in this matter because they (1) were

Adversary Proceeding
No. A-99-412
Class Action

members of EAL's flight deck collective bargaining unit who are identified on Eastern

Airlines' November 1990 seniority list; (2) did not settle, waive or relinquish their LPP

claims with Continental; and (3) did not withdraw their proofs of claim on or before April

15, 2000 as part of the group that moved to intervene herein as members of the Class.

Continental disputes that the New Members satisfy the requirements for inclusion in the

Class.    The disagreement between Continental and the Class Action Plaintiffs is as

follows: The Class Action Plaintiffs contend that the New Members are members of the

Class because they were included in the Proof of Claim filed by ALPA and never settled

or otherwise withdrew that claim.  Continental contends that the New Members are not

members of the Class because they did not file individual proofs of claims.

        The Class Action Plaintiffs also request that the Court direct Continental to fund

the settlement for the New Members forthwith and to grant a sixty (60) day extension

from the current bar date of June 3, 2002 until August 2, 2002, for the filing of Proofs of

Claim by the New Members in order to provide Class Counsel with sufficient time to

serve Notice on said persons of their right to participate in the Class Settlement. In

support of this Motion, the Class Action Plaintiffs' state:

        1.    On February 3, 2000, this Court entered its Order Granting Class

Certification. The class was certified as follows:

> All Eastern Airlines former flight deck employees who claim
> they are entitled to the benefits of the collective bargaining
> agreement (the "CBA") between Eastern Airlines and the Air
> Line Pilots Association in effect at the time that Eastern Airlines
> allegedly merged with Continental Airlines Holdings, Inc. who

2

Adversary Proceeding
No. A-99-412
Class Action

filed a timely claim in the above-entitled reorganization of
Continental Airlines, Inc., Case No. 90-932 (the "Reorganization")
for enforcement of the labor protective privileges embodied in
the CBA (hereafter "the Class Members"), *except* (1) those persons
who settled, waived or relinquished his or her LPP claim with
Continental and (2) those persons who moved to intervene herein,
pursuant to the "Motion to Intervene in Adversary Proceedings"
filed November 11, 1999 and who file a notice of withdrawal of
his or her Proof of Claim in this Reorganization with the Clerk
of the Bankruptcy Court for the district of Delaware on or before
April 15, 2000.

Docket Nos. 26 and 27, Opinion and Order Granting Class Certification dated February

3, 2000.

2.     The LPP Class Action Plaintiffs subsequently moved for the entry of an

order clarifying the method of identifying class members because of problems the

parties were having in deciding whether certain persons were members of the Class.

Docket No. 52; LPP Class Action Plaintiffs' Motion to Clarify Method of Identifying Class

Members)   The problems concerned the interpretation and application of the phrase

"*who filed a timely claim*" in the class definition and, more specifically,  whether "new

hires" employed by Eastern after ALPA pilots went on strike on March 4, 1989, are part

of the Plaintiff Class.   The LPP Plaintiffs contended that all EAL flight deck crew

members are entitled to participate in the Class, including the "new hires" because they

were entitled to the benefits of the ALPA/EAL collective bargaining agreement.   CAL

contended that only those pilots who filed claims in bankruptcy are entitled to

participate.

3

Adversary Proceeding
No. A-99-412
Class Action

3.    After the Motion to Clarify was filed, the LPP Class Action Plaintiffs and CAL
agreed that because the clear language of the Proofs of Claim filed by ALPA for
enforcement of the EAL LPPs against CAL excluded the "new hires" and was limited to
persons who were EAL ALPA members pre-strike (before March 4, 1989), any new hire
who did not file a Proof of Claim or have a Proof of Claim filed for him or her by the
undersigned would fall outside the class definition and he or she would not be eligible to
participate in the class settlement.  The parties also agreed that in order to ensure that
the participants in the Class were active employees of EAL as of its January 19, 1991
shutdown,  an eligible pilot had to be listed on EAL's November 1990 Alphabetical
Seniority List.

4.    On July 10, 2001, the Court entered its Order Granting Class Action
Plaintiffs' Motion to Clarify Method of Identifying Class Members by including the
requirement that eligible pilots had to be listed on EAL's November 1990 Alphabetical
Seniority List.  The Court also required the eligible pilots to be "*members of Eastern's
flight deck collective bargaining unit*" rather than simply former EAL flight deck
employees "who claim they are entitled to the benefits of the collective bargaining
agreement (the "CBA") between Eastern Airlines and the Air Line Pilots Association."
This clarification comported with the parties' agreement that in order to participate in the
Class, pilots had to be active with EAL as of the stipulated date of merger, (i.e.: EAL's
shutdown date), and that "new hires" who did not file claims or have claims filed for
them would be excluded from the class as they were not part of the EAL pilots who

4

Adversary Proceeding
No. A-99-412
Class Action

were members of ALPA and they did not individually file timely claims for enforcement of the LPPs in these proceedings.    (Docket No. 56; Order Granting Motion to Clarify Method of Identifying Class Members)

      5.    As a result of the foregoing, the parties mutually identified 583 LPP Class Action Plaintiffs.  The Court, recognizing that there may be additional persons covered by the class definition, expressly stated at the preliminary settlement hearing conducted on November 16, 2001, the fairness hearing conducted on January 31, 2002, and the hearing on the O'Neill post trial motions conducted on April 2, 2002, that it would not limit the list of class members to the 583 persons identified by the parties but would leave the door open for persons who claimed they met the class definition to be included in the Class.  In doing so, the Court expressly stated that if the parties could not agree as to whether certain persons are or are not members of the Class, that the Court would resolve the issue --- hence, this Motion.

      6.    Throughout these proceedings, Class Counsel has been working diligently to ensure that all persons who meet the class definition are identified and provided with notice of the settlement.  As a result of the O'Neill appeal and the receipt of joinders in that appeal from persons not previously identified as class members who appear to qualify, as well as advice from CAL received in early April 2002 that it had discovered 248 persons who were previously not identified as class members but who might be members of the class, the undersigned decided to redo the data research conducted last year and shared with CAL.  Accordingly, the undersigned retained a new data

5

Adversary Proceeding
No. A-99-412
Class Action

processing firm to input the entire November 1990 EAL Alphabetical Seniority List

consisting of 3,387 persons into a databank, including each pilot's seniority number and

date of hire (the "Master List"). The data processors then inputted the agreed list of 583

LPP Claimants and deleted them from the Master List. The data processors then

inputted all of the EAL pilot names and employee numbers identified on the list of

persons who elected to participate in the 1994 ALPA/CAL Settlement which was

prepared by Continental and provided to the undersigned (the"Takers List") and deleted

those persons from the Master List[1]. The data processors then worked directly from the

Bankruptcy Court docket sheets to identify, input and delete the 321 Addington/EPMC

pilots who withdrew their claims against CAL from the Master List. The data processors

then deleted from the list all of the remaining "new hires" by deleting all pilots with a

seniority date on or after March 3, 1989. The resulting Preliminary List of additional

LPP Plaintiffs consisted of 533 pilots.

7.    The next step was to verify how many of the 533 pilots on the Preliminary

List filed timely claims in the CAL bankruptcy.    On March 24, 1994, ALPA and

Continental entered into a Claims Settlement Agreement for purposes of settling the

EAL LPP claims ALPA filed against CAL on behalf of its pre-strike members[2]. (A copy

---

[1]    1,396 of the 2,577 pilots identified by Continental as "Takers" are listed on
the November 1990 EAL Alphabetical Seniority List

[2]    Paragraph 2 of the Claims Settlement Agreement defined "Eligible
Pilots" as "all pilots who were in the active service of Eastern Airlines, Inc. through
March 3, 1989, as reflected on the attached Preliminary List

6

Adversary Proceeding
No. A-99-412
Class Action

of the Claims Settlement Agreement [Docket No. 5119 in Jointly Ad. No. 90-932]  is

appended as Exhibit B).   CAL agreed in the Claims Settlement Agreement that

approximately 3500 EAL pilots covered by ALPA's Proofs of Claim[3] and identified on a

list[4] attached to the Claims Settlement Agreement were entitled to participate in the

Settlement.  As CAL unequivocally agreed that the EAL pilots on the "Eligible Pilots" list

were entitled to participate in the 1994 ALPA/CAL Claims Settlement Agreement as a

result being included in ALPA Proofs of Claim, there can be no dispute that their claims

were timely filed by ALPA.  Accordingly, in order to ensure that every new member was

recognized by CAL to have filed a timely claim in these bankruptcy proceedings, the

data processing firm was instructed to compare the "Eligible Pilots" list appended to the

1994 ALPA/CAL Claims Settlement Agreement against the Preliminary List and to

delete the names of all EAL pilots from the Preliminary List which are not on the 1994

---

[3]       Appended as Composite Exhibit 2 to the Settlement Agreement are
ALPA's Proofs of Claims as the "'authorized representative" and the "exclusive
collective bargaining representative" of certain specified pilots (those who were pre-
strike).   The Proofs of Claim were filed with respect to enforcement of the EAL LPPs
against CAL and expressly included the National Mediation Board proceedings which
this Court initially enjoined, to wit: *"In the Matter of an Application of the Air Line Pilots
Association for an Arbitration Under the Labor Protective Provisions Involving Eastern
Airlines, Inc."*

[4]       The list was subject to verification and supplementation by ALPA prior to
the Bankruptcy Court hearing on the approval of this Settlement Agreement.  A review
of the docket sheet in 90-932 from the time the motion to approve the settlement was
filed until the entry of the order approving does not reflect the filing of a supplemental or
corrected list.  The undersigned requested CAL's attorney to confirm that no such
supplemental or corrective list was filed or, if there was one, to provide it but has not
received a repose to the request.

7

Adversary Proceeding
No. A-99-412
Class Action

ALPA/CAL Claims Settlement "Eligible Pilots" list.   The result is the List of 256

Additional LPP Class Action Plaintiffs appended hereto as Exhibit A, all of whom were

recognized by CAL as having filed timely claims, through ALPA's Proofs of Claim, in

these bankruptcy proceedings.

8.    Notwithstanding the fact that each of the 256 additional persons identified

on attached Exhibit 1 meets all of the class definition criteria as well as the fact that

CAL agreed that all 256 persons were "Eligible Pilots" as a result of ALPA's filing of

Proofs of Claim on their behalf, CAL now states it will not agree to the inclusion of the

256 New Members because ALPA withdrew its claims as part of the settlement and the

256 pilots did not file individual claims in the bankruptcy.

9.    CAL's position is untenable.  The ALPA/CAL Claims Settlement Agreement

was an opt out agreement. If Eligible Pilots elected not to participate in the Settlement

Agreement, they retained the right to pursue their LPP Claims. That is the law of this

case as determined by this Court.  In approving the effect of the ALPA/CAL Claims

Settlement Agreement on those who elected not to participate, this Court expressly

ruled on July 19, 1994, in its Order Approving Continental-ALPA Claims Settlement

Agreement, at paragraph 4 that:

> **Those who objected had the clear recourse of refusing
> to participate in the Settlement  and <u>retaining their Claims.</u>**

(Emphasis supplied; a copy of the order, Docket No. 6016 in Jointly Ad. No. 90-932 is

8

Adversary Proceeding
No. A-99-412
Class Action

attached as Exhibit C.)    Indeed, if that were not the case, this action could not have

been brought.  Moreover, a number of the 583 LPP Class Action Plaintiffs CAL has

agreed to are persons whose claims were filed by ALPA who did not accept the

ALPA/CAL settlement.

10.    In addition to being inconsistent, CAL's position is not logical or a fair

expression of the spirit and intent of the ALPA/CAL Claims Settlement Agreement.

CAL contends that when ALPA withdrew its claims as a result of the settlement, that

every pilot who had not filed an individual claim and who did not "elect" to participate in

the ALPA/CAL Claims Settlement was left with no claim at all.  CAL's new interpretation

of the ALPA/CAL Claims Settlement Agreement, made in order to defeat the claims of

the newly discovered Class Action Plaintiffs here, was not disclosed in the Claims

Settlement Agreement and is contrary to this Court's express ruling discussed above.

In addition, it would have been impossible for any EAL pilot who wished to opt out of

the Claims Settlement Agreement to timely file a claim on his own because the bar date

for the filing of claims had long since passed and there was no provision in the Claims

Settlement Agreement to reopen the time for filing claims.

11.    CAL also asserts that the release language in the ALPA/CAL Claims

Settlement Agreement bars the claims of these New Members.  It does not.    The

release language at paragraph 8(A) of the Settlement Agreement is between the CAL

entities and ALPA with the exception of **"individual pilot defendants who do not

elect to participate in this Settlement Agreement."**    In addition, the release

9

Adversary Proceeding
No. A-99-412
Class Action

language at Paragraph 8(B) of the ALPA/CAL Claims Settlement Agreement states that **"The above release and waiver of all claims arising heretofore shall have no effect at all on (1) any claims or rights of any pilot who has filed a claim for such in the Delaware bankruptcy proceedings and does not participate in this Settlement Agreement..."** Those claims, as have been shown, were filed for the newly discovered 256 pilots by ALPA.

12.    Finally, there are approximately 3500 "Eligible Pilots" identified on the list appended to the ALPA/CAL Claims Settlement Agreement. As this Court noted in its July 19, 1994 Order Approving Continental-ALPA Claims Settlement Agreement at paragraph 4, approximately one third of the pilots elected not to participate in the Settlement. Clearly, Continental has known since 1994 that it had approximately 1167 timely filed LPP claims to resolve. During the 8 year period since the ALPA/CAL Claims Settlement Agreement was approved, the total number of LPP claims has diminished by close to 30% to the 839 persons who meet this Court's criteria to participate in the LPP Class Action. Accordingly, it is respectfully requested that this Court find that the 256 New Members identified on Exhibit A are Class Members entitled to participate in the Class Settlement and direct Continental to fund the settlement for the 256 New Members forthwith.

13.    In addition, Class Counsel respectfully requests a sixty (60) day extension from the current bar date of June 3, 2002 until August 2, 2002, for the filing of Proofs of Claim by the 256 newly discovered Class Members in order to provide Class Counsel

10

Adversary Proceeding
No. A-99-412
Class Action

with sufficient time to serve Notice on said persons of their right to participate in the

Class Settlement in the form attached as Exhibit D.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to

find that the newly identified former EAL pilots identified on Exhibit 1 are members of

the class; to enter an order requiring CAL to fund the settlement for the new class

members and for a 60 day extension of time to provide notice and for approval of the

form of notice appended to this Motion.

Dated: April 25, 2002

TRALINS AND ASSOCIATES
Attorneys for Class Plaintiffs
2930 One Biscayne Tower
2 S. Biscayne Blvd., Suite 2930
Miami, FL 33131
Telephone: 305-374-330

By: Myles J. Tralins by
Myles J. Tralins
Florida Bar No. 139543

-and-

PRICKETT, JONES & ELLIOTT
1310 King Street
Wilmington, DE 19801
Tel: (302) 888-6500

By: 
BRUCE E. JAMESON
Delaware Bar No. 2931

11

EXHIBIT  K

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

DEC 31 1992

-----------------------------------x
                                    :
In Re:                              :
                                    :
CONTINENTAL AIRLINES,               :    Chapter 11 Case No.
HOLDINGS, INC.                      :    90-933
                                    :
            Debtor.                 :
                                    :
-----------------------------------x

## PROOF OF ADMINISTRATIVE CLAIM OF
## AIR LINE PILOTS ASSOCIATION, INTERNATIONAL

    J. RANDOLPH BABBITT, the President of the Air Line
Pilots Association, International, with offices at 1625
Massachusetts Avenue, N.W. Washington, D.C.  20036, being duly
sworn, states as follows:

    1.    That he is the President of the Air Line Pilots
Association, International ("ALPA"), the claimant herein, and
exclusive collective bargaining representative of the pilots
employed by Continental Air Lines, Inc. at the time of the
September, 1983 bankruptcy case; the authorized representative of
certain pilots currently employed by the Debtor, and the
exclusive collective bargaining representative of pilots with
administrative claims against the Debtor who are employed by
other carriers, and that he is duly authorized by said
Association to make this proof of administrative claim.[1]

_____
    [1]The filing of this proof of claim is not intended to waive any
other causes of action, whether or not related to the claims
asserted herein, that ALPA has or may have against the Debtor or

- 1 -

2.    Claimant makes this proof of claim pursuant to the
December 1, 1992 Notice Fixing Bar Date for Filing of Proofs of
Certain Administrative Claims on behalf of ALPA and the
individual pilots for sums due and owing to ALPA and said pilots
represented by ALPA, as of and since the filing of the petition
in bankruptcy on December 3, 1990.

3.    In addition to or consistent with the sums listed
in the claim forms filed or to be filed by individuals
represented by ALPA, the Debtor was and is indebted In the matter
of an Application of the Air Line Pilots Association,
International for an Arbitration Under the Labor Protective
provisions Involving Eastern Air Lines, Inc., Richard Kasher,
Arb., (arbitration proceeding brought by Air Line Pilots
Association for specific performance and damages against
Continental Holdings and Continental Airlines, et al. resulting
from labor protective provisions for pilots of Eastern Air Lines,
Inc.].[2]  This claim is currently unliquidated but will clearly
exceed $1,000,000.

4.    Claimant has received no payment, security, check
or other evidence of this debt.

---

others, and which may be pursued in other appropriate forums.

[2]This claim is based on documents, including litigation
pleadings, already in the possession of the Debtor.

- 2 -

5.   Claimant knows of no set-off or counterclaim to this debt, except as set forth in litigation pleadings filed in the above-referenced litigation.

6.   Claimant demands priority to the fullest extent provided by law.

Dated:  December 28, 1992

Signature of Attorney
James L. Linsey
Babette A. Ceccotti
COHEN, WEISS and SIMON
330 West 42nd Street
New York, New York  10036
(212) 563-4100

Attorneys for Air Line Pilots
Association, International

*Penalty for presenting fraudulent claim.  Fine of not more than $5000 or imprisonment for not more than five years or both. Title 18 U.S.C. § 152.

- 3 -

EXHIBIT L

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case Nos. 90-932 (MFW) |
| et al., | ) | through 90-984 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ——————————————— | ) | |
| | ) | |
| JAMES BALDRIDGE, WILLIAM | ) | |
| MANN and LARRY DUNN, individually | ) | |
| and as representatives of a class of persons | ) | |
| similarly situated who are referred to as | ) | |
| the LPP CLAIMANTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 99-412 (MFW) |
| | ) | |
| CONTINENTAL AIRLINES HOLDINGS, | ) | |
| INC., CONTINENTAL AIRLINES, | ) | |
| INC. and SYSTEM ONE HOLDINGS, | ) | re: Docket No. 169 |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**DEFENDANTS' OBJECTION TO MOTION FOR FINDING
THAT NEWLY IDENTIFIED FORMER EAL PILOTS ARE
MEMBERS OF THE CLASS, FOR ENTRY OF ORDER
REQUIRING CAL TO FUND SETTLEMENT FOR NEW
CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME TO
PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

The above-captioned defendants ("Continental") hereby object to the Motion of

the LPP Class Action Plaintiffs (the "Motion") for (i) a finding that 226[1] "newly identified"

former Eastern Airlines ("EAL") pilots listed on Exhibit A to the Motion are members of the

---

[1]     The Motion seeks to include 256 people in the class. Continental has located individual proofs of claim
filed by approximately 30 of these people and, therefore, has no objection to their inclusion.

class certified herein (the "Proposed New Members") and (ii) certain related relief, and in

support respectfully represent as follows:

## PRELIMINARY STATEMENT

1.    The so-called "New Members" that are the subject of the Plaintiffs'

Motion are neither "newly identified" nor are they properly members of the certified class.

Plaintiffs' counsel has previously raised the issue of whether to include in the class certain non-

settling former EAL pilots that were allegedly covered under a proof of claim filed by the Air

Line Pilots Association ("ALPA"), but who did not file individual proofs of claim, and it was

rejected by Continental. The basis for Continental's position is that when ALPA released and

withdrew its proof of claim as part of its settlement with Continental, each ALPA member was

advised in writing that if they opted-out of the settlement and failed to individually file a proof of

claim, they would be barred from seeking any individual LPP relief against Continental, absent a

court order. Since that time (April 1994), none of the Proposed New Members have sought relief

to file an individual proof of claim or participated in these bankruptcy proceedings in any way.

Accordingly, the Proposed New Members do not meet the requirements for class membership

and are not entitled to participate in the class action settlement.

## BACKGROUND

2.    On February 3, 2000, this Court entered its Opinion On Motion For Class

Certification, and a copy of which is attached hereto as Exhibit A (the "Class Certification

Opinion"). In its Class Certification Opinion, the Court found that the class consists of "all

Eastern Airlines flight deck employees (a) who are entitled to the benefits of the collective

bargaining agreement (the "CBA") between Eastern Airlines and Air Lines Pilots Association in

effect at the time that Eastern Airlines allegedly merged with Continental; (b) who filed a timely claim in these proceedings for enforcement of the labor protection privileges ("LPPs") embodied in the CBA; and (c) who did not settle, waive or relinquish his or her LPP claim with Continental." Class Certification Opinion at p. 2.

        3.     The Plaintiffs subsequently filed a motion for an order clarifying the method of identifying class members (the "Motion To Clarify") after a dispute arose between the parties over the interpretation of the phrase *"who filed a timely claim"* in the class definition.  In their Motion to Clarify, Plaintiffs specifically raised the issue of whether former EAL pilots covered under the ALPA proof of claim should be part of the class.  After significant discussion, the parties agreed not only on a modified class definition as set forth in the Court's July 10, 2001 Order Granting Class Action Plaintiffs' Motion To Clarify Method Of Identifying Class Members (the "Class Clarification Order"), a copy of which is attached as Exhibit B, but ultimately on a list of eligible class members which was subsequently filed with the Court.  The list was *critical* to Continental because the parties were working towards a settlement of the class action.  Since there were limited reserves available from which to pay creditors, Continental did not believe that it or its creditors (including the Post-Effective Date Committee) could form a reasoned judgment about the propriety of any settlement until all interested parties understood the total size of the class.

        4.     As a result of this process, the parties mutually identified 583 LPP Class Action Plaintiffs and a final settlement was reached awarding each of those claimants an allowed general unsecured Class 13 claim of $110,000.  At the preliminary settlement hearing conducted on November 16, 2001, the Court requested that both the Plaintiffs and Continental submit

3

affidavits describing how the list of class members was created.  A copy of the Mr. Tralins'
Affidavit for Plaintiffs is attached hereto as Exhibit C and Ms. Smith's Affidavit for Continental
is attached hereto as Exhibit D.  While both affidavits very clearly indicate that all ALPA
members who accepted the ALPA settlement were deleted from the list, neither affidavit includes
in the class those ALPA members who opted-out of the settlement, but did not timely file an
individual proof of claim.

     5.     Indeed, Mr. Tralins' Affidavit, which confirms that he cross-checked the
list against "Eastern Airlines pre-IAM strike seniority list" and "Eastern's November 1990
seniority list", expressly provides that he believes the list (which does not include the Proposed
New Members) is **"a complete and accurate list of all eligible members of the class in this
proceeding."**  Tralins' Affidavit at p. 3 (emphasis supplied).  While it is true that both Plaintiffs
and Continental have since determined that certain additions and deletions to the list are
warranted[2], it is not likely that Plaintiffs completely "missed" 226 people.  Moreover, the Smith
Affidavit states that the list was derived from the official claims register in these cases
identifying individual LPP claims.  Smith Affidavit, p.2, ¶ 3(a).

     6.     Notwithstanding the foregoing, and after the class action settlement was
approved by the Court and fully-funded by Continental, Plaintiffs bring their Motion to add the
Proposed New Members utilizing a procedure in the settlement order that was intended for use
by individuals who believed they should be included in the class (not the Plaintiffs who had
already verified the accuracy of the class list).

---

[2]     Since the list was created, Continental has discovered approximately 90 people that properly filed
individual LPP claims and, therefore, should be included in the class.  Continental is waiting for Plaintiffs to confirm
that the inclusion of these people in the class is acceptable.  As stated earlier, approximately 30 of the people on
Continentals' list are also on Plaintiffs' list attached to the Motion.

4

45085.1005

7.     Plaintiffs raise two arguments as to why the Proposed New Members should be part of the class:  (i) since Continental agreed that these former EAL pilots were eligible to participate in the ALPA settlement as a result of being covered by the ALPA proof of claim, Continental cannot now argue that their "claims" were not timely filed, and (ii) the Court's order approving the ALPA settlement provided that those who opted-out of the settlement could continue to pursue their LPP claims against Continental.  As set forth below, neither argument is valid and therefore the Motion must be denied.

## OBJECTION

8.     It is undisputed that as part of its settlement with Continental, ALPA waived, released, withdrew and dismissed all of its claims against Continental.  ALPA Settlement , pp. 9-10, §§ 8 and 9.[3]  The question then is what happened to those eligible ALPA members who opted-out of the settlement.  The release provisions of the settlement agreement are quite clear:  ALPA's release "shall have no effect at all on (1) any claims or rights of **any pilot who has filed a claim for such in the Delaware Bankruptcy Proceedings** and does not participate in this Settlement Agreement… ".   ALPA Settlement at p. 9, § 8(B) (emphasis supplied).  ALPA's release and withdrawal of its proof of claim, however, most definitely impacted those pilots that had not filed an **individual** proof of claim in the bankruptcy case and the effect on "nonparticipating pilots" was made very clear to the ALPA members while they considered the settlement.

---

[3]   A copy of the ALPA settlement is attached as Exhibit B to Plaintiffs' Motion .

9.    On April 12, 1994, ALPA sent a letter to its members advising them of the

terms of the settlement with Continental.   A copy of the letter is attached hereto as Exhibit E.  In

addition to urging its members to accept the settlement, ALPA made the following points:

> Under the settlement agreement, ALPA and Continental (and its corporate
> affiliates) agree to waive all claims that they currently maintain or may maintain
> against each other. (p.4)

> In addition, the Association agrees that it will provide no support or assistance,
> direct or indirect, to any former Eastern pilot who seeks to pursue claims against
> Continental. (p.4)

> If you decline to participate (and if the settlement becomes effective), you are free
> to litigate an LPP claim against Continental on your own or through your personal
> representative provided that you had filed a timely individual LPP claim against
> Continental in the Continental bankruptcy proceeding. (p. 5)

> Pilots who failed to file such individual claims are likely barred from seeking any
> individual LPP relief against Continental absent a court order. (p. 5)

Thus, Plaintiffs' assertions in their Motion that Continental's position that ALPA members who

did not accept the settlement and did not timely file an individual proof of claim would not be

entitled to participate in distributions under the plan is (i) "inconsistent", (ii) "new", (iii) "not

logical or a fair expression of the spirit and intent of [ALPA Settlement]" and (iv) "made to

defeat the claims of the newly discovered Class Action Plaintiffs" are just plain wrong.

Continental's position was fully disclosed to ALPA members and without objection from ALPA.

 Most importantly, however, is that none of the Proposed New Members have ever filed or

attempted to file an individual proof of claim and/or participate in these bankruptcy proceedings

since opting-out of the settlement.

10.    Moreover, Judge Balick's order approving the ALPA settlement is not

inconsistent with Continental's position.   Those ALPA members who chose not to participate in

6

the ALPA settlement and who timely filed individual proofs of claim did retain their LPP claims and Continental settled those claims as part of this class action adversary proceeding. ALPA appropriately warned its members who had not filed individual proofs of claim that if they did not accept the ALPA Settlement they would be barred from recovering on their LPP Claims. There is nothing in the Court's order that authorizes the opt-out pilots to individually pursue the proof of claim filed and withdrawn by ALPA.   Indeed, in response to the objections filed to the settlement, Judge Balick specifically found that "[t]he Court does not have authority to re-make the settlement upon a plan suggested by objecting pilots." Order at p. 2.

        11.    Finally, with respect to the related relief requested by the Motion, since the Proposed New Members are not properly part of the class, there is no reason to extend the deadline by which they must accept the class action settlement[4].   Continental has and will agree to a limited extension of the bar date for those people that the parties have mutually agreed are properly part of the class so that proper notice is given and those claimants have sufficient time to review and complete the necessary paperwork.

## CONCLUSION

        12.    The Continental Bankruptcy has been pending since December 3, 1990 (almost 12 years). Both before and since confirming its chapter 11 plan and going effective in April 1993, Continental has worked diligently to resolve the more than 40,000 proofs of claim

---

[4]      The parties previously agreed that the June 3, 2002 bar date would be extended until June 30, 2002 only with respect to the 256 people identified in Plaintiffs' motion and the approximately 90 additional people identified by Continental. The bar date has already expired with respect to all others.

7

filed against the various debtors. The vast majority of allowed creditors received their initial

distribution under the plan in late 1993 and have been waiting since then for a determination of

whether there will be a final distribution and, if so, in what amount. It would be patently unfair

to the allowed creditors of Continental who have waited a very long time for the claims

resolution process to conclude to grant these Proposed New Members each an $110,000 claim in

this bankruptcy proceeding when they have taken no steps whatsoever to pursue an individual

LPP claim against Continental. Even now, it is not the individuals requesting class membership,

but Plaintiffs' counsel. These former EAL pilots were clearly advised of the result if they did not

accept the ALPA settlement and by opting-out and not seeking leave to file an individual claim,

they effectively relinquished any claim against the Debtors. It would be unfair for Plaintiffs or

this Court to grant them a windfall.

       WHEREFORE, Continental respectfully requests that this Court deny the Motion

and grant Continental such other and further relief as may be necessary.

Dated: June 7, 2002
Wilmington, Delaware

                YOUNG CONAWAY STARGATT &
                TAYLOR, LLP

                Robert S. Brady (No. 2847)
                1000 West Street
                The Brandywine Building, 17th Floor
                Wilmington, Delaware 19801
                (302) 571-6600

                Attorney for Continental

8

EXHIBIT  M

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>CONTINENTAL AIRLINES, INC., et. al.,<br><br>Debtors | Case No. 90-932<br>Chapter 11 |
| JAMES BALDRIDGE, WILLIAM MANN,<br>and LARRY DUNN, individually, and<br>as representatives of a class of persons<br>similarly situated who are referred to as<br>the LPP CLAIMANTS,<br><br>Plaintiffs,<br>v.<br><br>CONTINENTAL AIRLINES HOLDINGS,<br>INC., CONTINENTAL AIRLINES,<br>INC. and SYSTEM ONE HOLDINGS, INC.<br><br>Defendants. | Adversary Proceeding<br>No. A-99-412<br>Class Action<br><br><br>Objections Due:<br><br>Hearing Date: |

**REPLY TO DEFENDANTS' OBJECTION TO MOTION OF CLASS
ACTION PLAINTIFFS FOR FINDING THAT NEWLY IDENTIFIED
FORMER EAL PILOTS ARE MEMBERS OF THE CLASS, FOR
ENTRY OF ORDER REQUIRING CAL TO FUND THE SETTLEMENT
FOR THE NEW CLASS MEMBERS, FOR 90 DAY EXTENSION OF TIME
TO PROVIDE NOTICE AND FOR APPROVAL OF FORM OF NOTICE**

### *Preliminary Statement*

In its Objection, Continental advises that it has discovered approximately 90

people who should be included in the class. In reconciling Continental's list with the list

appended to Plaintiffs' subject Motion, the parties have agreed that the 40 persons

Adversary Proceeding
No. A-99-412
Class Action

identified on Exhibit A (subject to CAL's final verification) are members of the class[1]. At

issue is the status of the 228 persons identified on Exhibit B who Plaintiffs maintain

meet all criteria necessary for inclusion in the class and participation in the settlement.

### *Continental's Objection*

Continental contends that in order to participate in the class settlement, the LPP

Claimants identified on Exhibit B were required to file individual LPP bankruptcy claims

and that the LPP claims filed by ALPA on behalf of all of its members are ineffective to

protect their rights.  CAL does not dispute the fact that it previously agreed in the

ALPA/CAL settlement that every one of the newly discovered LPP Claimants was an

"Eligible Pilot" entitled to participate in that settlement and that, but for the fact that they

did not individually file a claim in bankruptcy, every one of the newly discovered LPP

Claimants meet all of the class definition criteria established by this Court.  As will be

shown, CAL's position is inconsistent with its prior representations to this Court, is

contrary to the law of this case, and is not equitable.

### 1.  CAL's Position is Inconsistent with its Prior Representations to this Court

CAL's position is in direct opposition to the legal argument that it successfully

asserted in its December 22, 1992 *Partial Objection to Allowance of Claims Based*

*Upon Certain Alleged Labor Protective Provisions Involving the Air Line Pilots*

---

[1]    When the list Continental provided to Plaintiffs was cross-checked against
the data base, it showed that it included persons who accepted the ALPA/AL settlement
or withdrew their claims.  Those persons have been deleted.

Adversary Proceeding
No. A-99-412
Class Action

*Association International and Eastern Air Lines Inc.* (Exhibit C) wherein it requested and

obtained the ruling of this Court that because ALPA filed LPP claims in these

proceedings as the collective bargaining representative for the Eastern pilots, "a ruling

declaring the LPP Claims to be general unsecured prepetition claims will be binding on

all of the LPP Claimants."

On February 11, 1993, this Court entered its Order on CAL's Partial Objection

(Exhibit D)  holding, as CAL requested and represented, that "its ruling as to ALPA's

LPP Claim is binding on both the 600 LPP Claimants represented by [sic: undersigned]

counsel and the other LPP Claimants."  As a matter of law, as well as fundamental

fairness, if the bankruptcy claim which ALPA filed on behalf of all of its members was

sufficient to bind all of its members to a ruling as to the status of their individual LPP

claims which determined the nature and scope of the recovery available to each of

them individually, then, too, ALPA's LPP bankruptcy claim preserved the individual LPP

claims of those persons who retained their claims and opted not to participate in the

ALPA/CAL settlement. Accordingly, CAL's current position, which is completely

inconsistent from the position which it took to obtain relief from this Court which limited

its liability on each individual pilot's LPP claim, must be rejected under the doctrine of

judicial estoppel. *See: In re Continental Airlines*, 125 F.3d 120, 138 (3rd Cir. 1997) citing

to *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1050 (3rd Cir. 1993).

3

Adversary Proceeding
No. A-99-412
Class Action

**2. This Court Has Ordered that LPP Claimants Who Opted Not to Participate
in the ALPA/CAL Settlement Retained Their LPP Claims.**

ALPA and CAL reached their settlement, subject to Court approval, in early

1994. CAL asserts that because ALPA advised its members when it settled by

correspondence dated April 12, 1994 that "***absent a court order,***" "if they opted-out of

the settlement and failed to individually file a proof of claim, they *would be* barred from

seeking any individual LPP relief against Continental." First, ALPA never made the

unequivocal statement that the individual claims would be barred. ALPA's letter does

contain the caveat that the claims *might be* barred if individual claims were not filed,

with no further explanation. ALPA made this statement because it wanted to persuade

as many persons as it could to accept the settlement since the settlement provided that

"Continental retains the option of terminating the settlement in its entirety if fewer than

80% of eligible pilots opt to participate in the settlement." It was thus in ALPA (and

CAL's) best interests to convince as many of approximately 3500 persons identified on

the "Eligible Pilots" list appended to the ALPA/CAL settlement agreement to participate

in the settlement and the caveat contained in the letter was ALPA and CAL's attempt to

do just that.

More importantly, a court order *was* entered well after the April 12, 1994 letter

was sent out which preserved the individual LPP Claimants' rights to refuse to

participate in the ALPA/CAL settlement and retain their claims. The objections of over

4

Adversary Proceeding
No. A-99-412
Class Action

a thousand of the "Eligible Pilots" to the ALPA/CAL settlement were timely filed and

considered by this Court.  After conducting a hearing on the motions of ALPA and CAL

to approve the settlement, and considering the objections, this Court approved the

ALPA/CAL Claims Settlement Agreement by Order rendered July 19, 1994, expressly

ruling with respect to "approximately one third" of the LPP Claimants who objected to

the settlement that they **"had the clear recourse of refusing to participate in the**

**Settlement  and retaining their Claims."**  (Exhibit E)  This Court's July 19, 1994 Order

is absolutely clear.  CAL's assertion that the Order does not mean what it says because

it did not expressly authorize opt-out pilots to individually pursue the proof of claim filed

on their behalf by ALPA is entirely inconsistent with the clear intent and purpose of the

Order and, indeed, requests this Court to "re-interpret" its 8 year old Order so that it

operates to deprive the LPP Claimants of the claims which the Order directly states

they retained.  Given this Court's unambiguous ruling that all opt out LPP Claimants

retained their claims, it is both implicit in the order and axiomatic that by doing so they

had the right to pursue the claims.  To that end, CAL unsuccessfully attempted to

convince the District Court and then Third Circuit that the LPP Claimants' appeals

should be dismissed on the theory that only ALPA, as the collective bargaining

representative, had the right to take an appeal.   A cogent analysis of this issue, which

is the law of the case, was provided by District Judge Joseph J. Longobardi in his

5

Adversary Proceeding
No. A-99-412
Class Action

November 25, 1995 Memorandum Opinion denying CAL's motion to dismiss:

> The bankruptcy court stated in its Order of July 19, 1994,
> that "approximately two-thirds of the pilots have elected
> to participate in the Settlement, so that the Settlement
> disposes of the greatest bulk of the claims, and greatly
> reduces the costs of litigation." Furthermore, the court
> held, "Those who objected [to the settlement] had the
> clear recourse of refusing to participate in the Settlement
> and retaining their claims. Approximately a third of the
> Pilots did so." On August 15, 1994, Continental notified
> the Court, and by carbon copy the LPP Claimants, that it
> intended to file a motion to dismiss the appeal of the LPP
> Claimants on the ground that ALPA's settlement of the
> underlying claims was binding upon them. For the first
> time, the LPP Claimants had reason to believe that their
> LPP Claims had been settled despite their non-participation
> in the Settlement Agreement.

(Exhibit F; Opinion at p. 9; record citations omitted.)

> The issue raised in the Second Motion to Dismiss as Moot
> is whether the Settlement Agreement signed by ALPA moots
> the LPP dispute, thereby mooting the appeal of both ALPA
> and the LPP Claimants. **Continental argues that it has settled
> with the only party capable of asserting the right to seniority
> list integration, so the LPP dispute is now moot.** While the
> parties dispute whether ALPA represents the LPP Claimants,
> representation is irrelevant.

> [fn]: **If ALPA was not the collective bargaining representative
> of the LPP Claimants, then it could not settle the claims of the
> LPP Claimants. If ALPA was the collective bargaining
> representative of the LPP Claimants, the language of the**

6

Adversary Proceeding
No. A-99-412
Class Action

**Settlement Agreement makes clear that ALPA did not settle those claims[2].**

The issue is whether individual pilots can assert a right to seniority list integration under the collective bargaining agreement, and, if so, whether the Settlement Agreement disposes of those rights.

The Reply Brief of Continental demonstrates that the Settlement Agreement had no effect at all on the rights of the LPP Claimants:

> **The settlement was plainly intended to leave individual pilots in the same position they were prior to the settlement — no better, no worse**.

The language of the Settlement Agreement, and the briefs of the other parties, support this statement. Thus, Continental cannot seriously claim that the settlement mooted the appeals. Rather, Continental asserts that the seniority integration rights were group rights that could only be asserted by ALPA, and the individual LPP Claimants <u>never</u> had standing to bring the LPP Claims.

[fn]: Continental does not claim that the LPP Claimants have no standing on appeal. **Because the February 1993 Order specifically bound the LPP Claimants, they have standing to appeal that order.**

(Opinion at 22 - 23; emphasis supplied in bold; record citation omitted)

_____

[2]        CAL also asserts that ALPA's release bars the claims of these New Members.   It does not.   The release language is between CAL and ALPA ; it excepts **"individual pilot defendants who do not elect to participate in this Settlement Agreement"** and it provides that it **"shall have no effect at all on (1) any claims or rights of any pilot who has filed a claim for such in the Delaware bankruptcy proceedings and does not participate in this Settlement Agreement..."**   Those claims, as have been shown, were filed for the newly discovered pilots by ALPA.

7

Adversary Proceeding
No. A-99-412
Class Action

Thus, the law of this case firmly establishes that:

1.   The LPP claims of those LPP Claimants who elected not to accept the ALPA/CAL settlement survived the settlement.

2.   By its own admission, CAL affirmatively acknowledged that the ALPA/CAL settlement was not intended to take away the individual pilots' LPP claims which existed prior to the settlement by virtue of ALPA's having filed the claim on their behalf — **"The settlement was plainly intended to leave individual pilots in the same position they were prior to the settlement — no better, no worse."**

3.   The LPP Claimants who rejected the ALPA/CAL settlement had standing to appeal which was not mooted by ALPA's withdrawal of its claim.  And if they had standing to appeal, they also had standing to pursue the claims which this Court ruled they had retained.

The District Court's opinion also supports our prior argument that CAL is judicially estopped from asserting the inconsistent position that a pre-condition to the claims of the newly discovered LPP Claimants is the requirement that they had to file individual proofs of claim and could not rely on the claim filed for them by ALPA.

Next, CAL's position that if an LPP Claimant opted out of the ALPA/CAL settlement, he or she was required to file a proof of claim is disingenuous.  None of the opt-out LPP Claimants *could have* filed an individual proof of claim after learning of the

8

Adversary Proceeding
No. A-99-412
Class Action

ALPA/CAL settlement — as the court docket shows, the bar date for such claims was September 27, 1991, over 2 ½ years prior to the settlement. CAL's argument that this Court should accept the proposition that it was appropriate to advise the Eligible Pilots they had a right to opt out of the settlement and retain their claims when, in fact, opting out would have left them with no claim whatsoever must be rejected.

Finally, the vast majority of the class members who have already settled never filed individual bankruptcy claims.  Rather, as CAL well knows, they terminated ALPA's representation of their interests and retained undersigned counsel to assume their representation on ALPA's proof of claim.  The newly discovered LPP Class Action Plaintiffs thus stand in no different shoes from over 400 of the LPP Class Action Plaintiffs who are members of the class and accordingly, are entitled to participate in the class settlement.

### 3.    CAL Misstates the Date of Settlement and Ignores its Agreement to Include All Former EAL Pilots with Unresolved LPP Claims in the Class

CAL misstates the timing of the class action settlement in order to claim that a precondition to its agreement to value the claims at $110,000 each was to limit the class to 583 persons.  CAL's assertion that it did not agree to the settlement valuation of $110,000 per claim until it "understood the total size of the class" as a result of the parties' mutually identifying" 583 class members sometime between July and November, 2001 is simply untrue.

9

Adversary Proceeding
No. A-99-412
Class Action

The settlement valuation per claim of $110,000 was agreed to in writing on September 20, 1999, two years prior to the time CAL now argues it was agreed to.

Furthermore, the September 20, 1999 settlement letter agreement, which was attached to the Class Action Complaint filed October 12, 1999 as Exhibit A (appended here as Exhibit G) makes no mention whatsoever as to the size of the class or the class definition, both of which were subsequently litigated and ruled upon by this Court.   The letter agreement does, however, provide, that "each former Eastern pilot with an unresolved LPP claim" would be entitled to participate in the settlement.

CAL does not dispute — because it cannot dispute — the fact that each and every one of the LPP Claimants identified on Exhibit B were recognized by it to be "Eligible Pilots" for purposes of the ALPA/CAL settlement.  Indeed, CAL directly corresponded with each one of them, sending them settlement documents which they rejected.   CAL has known since 1994 that each of the persons on Exhibit B has an unresolved LPP claim; it has known the exact number of Eligible Pilots who rejected the ALPA/CAL settlement since 1994 and it has in its possession the names and addresses of the 1150 or so Eligible Pilots who rejected the ALPA/CAL settlement and retained their claims. Despite having that knowledge, CAL never disclosed the existence of said persons to the Plaintiffs, who only recently, through the procedures described in our motion, discovered them.

10

Adversary Proceeding
No. A-99-412
Class Action

As CAL has known "from the git go" exactly how many Eligible Pilots did not participate in the ALPA/CAL settlement, as well as who they are, CAL is less than candid with the Court when it suggests that it only recently agreed to the settlement based upon a class consisting of less than half the persons who CAL agreed were entitled to participate in the ALPA settlement but chose not to. Had CAL been candid at the outset, this motion, and all of the work necessary to independently identify the Eligible Pilots listed on Exhibit B, would not have been required. And even with the inclusion of the newly discovered class members in this settlement, the total number of participants is still approximately 40% less than the total number of Eligible Pilots CAL agreed to settle with because of the close to 400 persons who withdrew their claims as a result of this action. Accordingly, as the persons identified on Exhibit B meet all of the class criteria and because they were known by CAL to have unresolved LPP claims as of the September 20, 1999 settlement agreement, they are entitled to participate in the class settlement.

### 4. The Class Definition Expressly Includes Persons Whose Claims Were Filed by ALPA

CAL contends that the substance of the Plaintiffs' Motion to Clarify was "whether former EAL pilots covered under the ALPA proof of claim should be part of the class." This is simply not true.

11

Adversary Proceeding
No. A-99-412
Class Action

The Motion for Clarification was brought because the class Action Plaintiffs

contended that ALPA's proof of claim covered all Eastern pilots, regardless of whether

or not they were members of the Union, and that the same thus applied to the new

hires.  CAL disagreed.  After carefully reviewing ALPA's proof of claim with CAL's

attorneys, the Plaintiffs agreed that because the proof of claim was expressly limited to

ALPA members, that it would only be effective for ALPA members and that it would not

apply to new hires.   Consistent with this agreement, CAL and the Plaintiffs stipulated

before the Court for the entry of its July 10, 2001 Order Granting Class Action Plaintiffs'

Motion to Clarify Method of Identifying Class Members by including the requirement that

eligible pilots had to be listed on EAL's November 1990 Alphabetical Seniority List and

that they be "*members of Eastern's flight deck collective bargaining unit*" rather than

simply former EAL flight deck employees "who claim they are entitled to the benefits of

the collective bargaining agreement (the "CBA") between Eastern Airlines and the Air

Line Pilots Association."  This clarification comported with the parties' agreement that in

order to participate in the Class, pilots had to be active with EAL as of the stipulated

date of merger, (i.e.: EAL's shutdown date), and that "new hires" who did not file claims

or have claims filed for them would be excluded from the class as they were not part of

the EAL pilots who were members of ALPA and they did not individually file timely

claims for enforcement of the LPPs in these proceedings.   The corollary to this is that

this Court's July 10, 2001 Order expressly includes the newly identified class members

listed on Exhibit B as every one of them were ALPA members on the active seniority list

12

Adversary Proceeding
No. A-99-412
Class Action

as of the stipulated date of merger who neither accepted the ALPA/CAL settlement or withdrew their claim in bankruptcy[3]. Accordingly, the persons identified on Exhibit B are class members entitled to participate in the settlement.

WHEREFORE, the LPP Class Action Plaintiffs respectfully request the Court to find that the newly identified former EAL pilots identified on Exhibit B are members of the class; to enter an order requiring CAL to fund the settlement for the new class members forthwith; to enter an order providing for a 60 day extension of time from the date of the hearing to provide notice to the newly identified former EAL pilots; and for approval of the form of notice appended to the Motion.

Dated: June 12,2002

TRALINS AND ASSOCIATES
Attorneys for Class Plaintiffs
2930 One Biscayne Tower
2 S. Biscayne Blvd., Suite 2930
Miami, FL 33131
Telephone: 305-374-330

By: _Myles J. Tralins by Bee (James)_
Myles J. Tralins
Florida Bar No. 139543

-and-

---

[3]      A substantial majority of the 400 persons in the Addington group who withdrew their claims pursuant to their stipulation with CAL and this Court's Order allowing them to do so, withdrew claims filed for them by ALPA, not claims they filed on their own. If CAL's position here is accepted, they had no claims to withdraw as they were "lost" when ALPA settled and withdrew its claim.

13

Adversary Proceeding
No. A-99-412
Class Action

PRICKETT, JONES & ELLIOTT
1310 King Street
Wilmington, DE 19801
Tel: (302) 888-6500

By:_____
    BRUCE E. JAMESON
    Delaware Bar No. 2931

14

EXHIBIT  N

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re                                          )
                                               )    Chapter 11
CONTINENTAL AIRLINES, INC.,                    )    Consolidated Case Nos.
et al.,                                        )    90-932 through 90-984
                                               )
            Debtors.                           )

DEBTORS' PARTIAL OBJECTION TO ALLOWANCE OF CLAIMS
BASED ON CERTAIN ALLEGED LABOR PROTECTIVE PROVISIONS
INVOLVING THE AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL AND EASTERN AIR LINES, INC.
AND NOTICE OF HEARING

To all parties served with this Partial Objection:

Continental Airlines, Inc. and Continental Airlines Holdings, Inc., Debtors, make this

partial objection to that portion of all claims filed against Debtors that seeks administrative

expense status or prospective relief, including specific performance, based on claims for relief

that the Air Line Pilots Association, International ("ALPA") has asserted under the labor

protective provisions ("LPPs") of a collective bargaining agreement executed by ALPA and

Eastern Air Lines, Inc. ("Eastern") on February 23, 1986 (the "LPP Claims").1/

Debtors' partial objection to the LPP Claims is based on the following grounds:

1.      The collective bargaining agreement out of which the claims arose was
        executed and expired prepetition;

2.      The events that are alleged to have given rise to obligations on Debtors'
        part under the LPPs all occurred prepetition;

3.      Even if such obligations arose, they can be satisfied through an alternative
        right to payment cognizable as a general unsecured claim;

4.      The LPP Claims are not based on any post-petition services performed for
        Debtors.

Debtors have previously filed a partial objection against ALPA insofar as it has

asserted the same claim on behalf of the Eastern pilots, and on December 18, 1992 filed a

motion with the Bankruptcy Court for the District of Delaware in Adversary Proceeding No.

91-153 seeking partial summary judgment on their partial objection to ALPA's claim.

---

1/    ALPA has asserted the LPP Claims in an arbitration styled In The Matter Of An
Application Of The Air Line Pilots Association, International For An Arbitration Under The
Labor Protective Provisions Involving Eastern Air Lines, Inc., Kasher, Arb.

Debtors' motion for partial summary judgment is set for hearing on February 4, 1993. If Debtors' motion is granted, the LPP Claims will be determined to be, at best, dischargeable, general unsecured prepetition claims within the meaning of Bankruptcy Code Section 101(5), 11 U.S.C. § 101(5). Because ALPA is the collective bargaining representative for the Eastern pilots, and because the LPP Claimants are relying on an arbitration proceeding initiated by ALPA on their behalf to establish their rights under the LPPs, a ruling declaring the LPP Claims to be general unsecured prepetition claims will be binding on all of the LPP Claimants. Any LPP Claimant who does not concede that such relief would be binding as to his or her individual claim should file a written response to this Partial Objection as provided in the attached Notice of Partial Objection. In support of this Partial Objection, Debtors incorporate by reference their Motion For Partial Summary Judgment On Their Partial Objection To Claims Based On Certain Alleged Labor Protective Provisions Involving The Air Line Pilots Association, International and Eastern Air Lines, Inc., filed with the Bankruptcy Court on December 18, 1992 in Adversary Proceeding No. 91-153. Any LPP Claimant wishing to obtain a copy of that Motion should contact the undersigned counsel for Debtors.

The filing of this partial objection does not waive any other objection(s) that Debtors will file, or have filed, as to the LPP Claims or any other claim.

WHEREFORE, Debtors pray that the LPP Claims be disallowed to the extent such claims seek relief other than as dischargeable, general unsecured prepetition claims.

Respectfully submitted,

YOUNG, CONAWAY, STARGATT & TAYLOR
Rodney Square North
Eleventh Floor
Wilmington, DE 19899
(302) 571-6600

By: _Laura Davis Jones_
Laura Davis Jones

Attorneys for Debtors and
Debtors in Possession

Dated: December 22, 1992

EXHIBIT  O

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br>CONTINENTAL AIRLINES, INC., et. al.<br><br>               Debtors, | Case No. 90-932<br>Chapter 11 |
| JAMES BALDRIDGE, et. al.<br><br>               Plaintiffs,<br><br>v.<br><br>CONTINENTAL AIRLINES HOLDINGS, INC.,<br>et. al.<br><br>               Defendants | Adversary Proceeding<br>No. A-99-412<br>CLASS ACTION |

The Court having considered Plaintiff's Motion for Finding that Newly Identified Former EAL Pilots Are members of the Class, for Entry of Order Requiring CAL to Fund Settlement for New Class Members, for 90 Day Extension of Time to Provide Notice and for Approval of Form of Notice (the "Motion"), and for good cause shown,

IT IS HEREBY ORDER THAT:

1.    The Motion is granted.

2.    All persons identified on Exhibits A and B to the Plaintiff's Reply in support of its Motion are found to meet the criteria for inclusion in the Class and to be members of the plaintiff class certified in this action (the "New Class Members");

3.    Counsel to the Plaintiff Class shall cause the Claims Administrator to mail a copy of the Notice substantially in the form attached to the Motion as Exhibit D to all New Class Members on or before June 21, 2002.

4.    The deadline for the New Class Members to file a Proof of Claim and Release to participate in the settlement shall be ___September 19___, 2002.

5.    Defendant shall forthwith fund the settlement as to the New Class Members as previously provided for under the terms of the Final Judgment and Order and Settlement Agreement.

Dated: June 14, 2002

_____
United States Bankruptcy Court Judge

EXHIBIT P

Division of Corporations



## Florida Non Profit

### EASTERN PILOTS FOR FAIRNESS, INC.

**PRINCIPAL ADDRESS**
11635 SW 108 TERRACE
MIAMI FL 33176

**MAILING ADDRESS**
11635 SW 108 TERRACE
MIAMI FL 33176

| Document Number | FEI Number | Date Filed |
|---|---|---|
| N44317 | 650271216 | 07/15/1991 |

| State | Status | Effective Date |
|---|---|---|
| FL | ACTIVE | NONE |

| Last Event | Event Date Filed | Event Effective Date |
|---|---|---|
| AMENDMENT | 10/01/1991 | NONE |

## Registered Agent

| Name & Address |
|---|
| MYLES J TRALINS, ESQUIRE
ONE BISCAYNE TOWER/ STE 3310
2 SOUTH BISCAYNE BLVD
MIAMI FL 33131 |
| Name Changed: 03/31/1992 |
| Address Changed: 03/31/1992 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| DUNN, LARRY J.
11635 SW 108 TERRACE
MIAMI FL | PD |
| MANN, WILLIAM B.
7020 N. SERNOA DR.
SARASOTA FL 34241 | VD |

| | |
|---|---|
| BALDRIDGE, J H<br>402 STRATFIELD DRIVE<br><br>LUTZ FL 33549 | SD |
| VOUDY, JOHN<br>11 N POMPANO BEACH BLVD<br><br>POMPANO BEACH FL 33062 | TD |
| ZIOBRO, THOMAS J<br>10 CHAPEL HILL RD<br><br>WESTPORT CT 06880 | D |

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2004 | 02/23/2004 |
| 2005 | 02/28/2005 |
| 2006 | 04/27/2006 |