IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CONTINENTAL AIRLINES, INC., | ) | Case No. 90-932 & 90-933 (MFW) |
| *et al.* | ) | |
| | ) | Jointly Administered |
| Debtor. | ) | |

--------------------------------------------------------------x

| | | |
|---|---|---|
| | ) | |
| RAMON E. O'NEILL | ) | Civil Action No. 06-568 (SLR) |
| BROWNIE N. INMAN | ) | |
| J. TRIGG ADAMS | ) | (Consolidated Lead) |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CONTINENTAL AIRLINES, INC., *et al.* | ) | |
| | ) | |
| Appellees, | ) | |
| | ) | |

--------------------------------------------------------------x

## ANSWERING BRIEF OF APPELLEE CONTINENTAL AIRLINES, INC.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (Delaware Bar No. 2847)
Joseph M. Barry (Delaware Bar No. 4221)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jbarry@ycst.com

Counsel to Continental Airlines, Inc.

Dated: March 20, 2007

# Table of Contents

Page

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ................1

III.  STANDARD OF APPELLATE REVIEW ..........................................................2

VII.  STATEMENT OF FACTS ...................................................................................4

   A.  The CBA, Eastern's and Continental's Bankruptcies and  the Kasher Arbitration ............. 5

   B.  The ALPA/LPP Claimants Litigation and the Confirmation Order ...................... 6

   C.  The Addington Group Litigation ........................................................... 7

   D.  The Baldridge Class Action ................................................................. 7

      1.  Class Certification ..................................................................... 8

      2.  The Baldridge Settlement ............................................................. 8

      3.  Post-Baldridge Settlement Litigation ........................................... 10

      4.  Appellants' Prior Appeals ........................................................... 12

      5.  Relitigation of the Class Membership Issue .................................... 15

      6.  The Instant Appeals ................................................................... 18

VIII. ARGUMENTS ...................................................................................................19

   A.  *Res Judicata* Bars the Appellants' Claims ........................................ 19

   B.  The Appellants Lack Standing to Raise the Claims of Other Pilots .................. 20

   C.  The Appeals are Frivolous and an Award of Damages Should Issue ................. 22

   D.  The Court Should Enjoin the Appellants' Vexatious Litigation ...................... 23

IX.   CONCLUSION .................................................................................................24

DB02:5843616.5                                                                    064657.1001

# Table of Authorities

Page

## Cases

*Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.,*
  654 F. Supp. 1419 (D. Del. 1987) ............................................................... *19*

*Doyle Addington, et al. v. Continental Airlines, Inc.,*
  Civil Action No. 98-4858 (MTB) ................................................................. *7*

*Equal Employment Opportunity Commission v. U.S. Steel Corp.,*
  921 F.2d 489 (3d Cir. 1990) ....................................................................... *19*

*Huck ex rel. Sea Air Shuttle Corporation v. Dawson,*
  106 F.3d 45 (3d Cir. 1997) ......................................................................... *21*

*Lubrizol Corp. v. Exxon Corp.,*
  929 F.2d 960 (3d Cir. 1991) ....................................................................... *19*

*Mellon Bank, N.A. v. Metro Comm., Inc.,*
  945 F.2d 641 (3d. Cir. 1991), cert. denied, 503 U.S. 937 (1992) ................ *2*

*Nagle v. Alspach,*
  8 F.3d 141 (3d Cir. 1993) ...................................................................... *21, 22*

*O'Neill v. Baldridge (In re Continental Airlines, Inc.),*
  Civil Action No. 02-375 (SLR), at 2 (D. Del. March 31, 2003) (Robinson, C.J.) ............... *1, 13*

*PDM Enterprises, Inc. v. Cape May Foods, Inc.,*
  301 F.3d 147 (3d Cir. 2002) ....................................................................... *21*

*United States v. Athlone Inds.,*
  746 F.2d 977 (3d Cir. 1984) ....................................................................... *19*

## Statutes

28 U.S.C. § 1334(b) ......................................................................................... 1

28 U.S.C. § 158(a) .......................................................................................... 2

28 U.S.C. § 158(a)(1) ..................................................................................... *1*

064657.1001

## I.    INTRODUCTION

As this Court recognized the first time it adjudicated these issues in the appellants' prior appeals, "[t]he underlying dispute has a long and convoluted procedural history." *Adams v. Baldridge (In re Continental Airlines, Inc.)*, Civil Action No. 02-484 (SLR), at 2 (D. Del. March 31, 2003). So convoluted, in fact, that the appellants have come full circle: their arguments were rejected by the United States Bankruptcy Court (the "Bankruptcy Court") in January 2002; this Court affirmed the Bankruptcy Court in March 2003; the United States Court of Appeals for the Third Circuit (the "Circuit Court") affirmed in March 2004; and their petitions for *writ of certiorari* were denied by the United States Supreme Court in December 2004. And here they are again – having lost once more in the Bankruptcy Court – attempting to litigate the very same issues as if the nearly five years of appellate practice never happened.

The appellants' opening briefs spin a fanciful tale of fraud and deception in an attempt to goad the Court into revisiting the Baldridge Settlement (as defined below) and the issue of class membership. The appellants' unrelenting accusations are completely unsupported by any fact or document in the record of these appeals. In reality, the appellants' instant efforts are nothing more than a further perpetuation of the personal vendetta waged by the appellants against Continental for over fifteen years. Indeed, the appellants' appeals represent "the very antithesis of what…judicial proceedings should be." *In re Continental Airlines, Inc.*, 2004 U.S. Dist. LEXIS 26644, *14 (D. Del. December 13, 2004). In sum, the appellants' actions are nothing short of harassment and must end.

## II.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The United States District Court for the District of Delaware (the "District Court") has subject matter jurisdiction to review a final order of the Bankruptcy Court pursuant to 28 U.S.C. §§ 158(a)(1) and 1334(b). On July 26, 2006, the Bankruptcy Court entered its *Order*

*Denying Motions: Docket Nos. 427-436, 438-440, 443-445 & 448* (the "2006 Order").  On August 1, 2006, the appellants each filed a notice of appeal (collectively, the "Appeals") of the 2006 Order.

## III.    STANDARD OF APPELLATE REVIEW

This Court has jurisdiction to hear the Appeals pursuant to 28 U.S.C. § 158(a).  *In re Continental Airlines, Inc.*, 2004 U.S. Dist. LEXIS 26644, at *3.  "In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions." *Id. (citation omitted)*.  "[A] Bankruptcy Court's conclusions of law are subject to plenary review." *Id.*  "With mixed questions of law and fact, the court must accept the bankruptcy court's 'finding of historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Id. quoting Mellon Bank, N.A. v. Metro Comm., Inc.*, 945 F.2d 641-642 (3d Cir.1991), *cert. denied*, 503 U.S. 937 (1992) (internal quote in *Mellon Bank* omitted).  "The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions." *In re Continental Airlines, Inc.*, 2004 U.S. Dist. LEXIS 26644, at *3-4.

## IV.    NATURE AND STATE OF THE PROCEEDINGS

On June 13, 2006, appellant Inman filed in the Bankruptcy Court his *Motion to Compel and Compliance with January 31, 2002 Order* (the "Inman Motion to Compel") and on July 11, 2006 filed his *Motion of Objection to the Class Action Plaintiff's Stipulations for Motion to Reopen* (the "Inman Objection," and together with the Inman Motion to Compel, the "Inman Motions").  On July 11, 2006, appellant O'Neill filed in the Bankruptcy Court his *Motion to Compel Compliance with January 31, 2002 Order and Motion for Order Reopening Adversary Proceeding* (the "O'Neill Motion to Compel").  And on July 18, 2006, appellant Adams filed in

2

the Bankruptcy Court his *Motion to Compel and Compliance with January 31, 2002 Order* (the "Adams Motion to Compel," and collectively with the Inman Motion to Compel and the O'Neill Motion to Compel, the "Pilot Motions to Compel"). By the Pilot Motions to Compel, the appellants sought an order from the Bankruptcy Court re-opening Continental's closed bankruptcy cases for the purpose of re-litigating the membership of the Baldridge Class (as defined below); an issue that has long been determined.

The Bankruptcy Court held a hearing on July 31, 2006 (the "2006 Hearing") to consider, among other things, the Pilot Motions to Compel. At the 2006 Hearing, following argument by the parties in attendance, including appellants Inman and Adams, the Bankruptcy Court orally denied the Pilot Motions to Compel. On July 26, 2006, the Bankruptcy Court entered the 2006 Order incorporating the oral rulings made at the 2006 Hearing denying, among other things, the Pilot Motions to Compel. It is from the 2006 Order that the appellants now appeal.

On September 29, 2006, Continental filed its *Motion for an Order (I) Dismissing Appeals, (II) Awarding Damages Pursuant to F.R.A.P. 38 and Bankruptcy Rule 8020, and (III) Enjoining Appellants* (the "Motion to Dismiss"). The appellants each filed an objection to the Motion to Dismiss on or about October 10, 2006. Continental filed its reply on or about October 17, 2006 (the "Continental Reply"). The Motion to Dismiss is currently *sub judice*.

On January 17, 2007, this Court entered an order consolidating the appellants' appeals, excusing the parties from mandatory mediation and establishing a briefing schedule.

On February 20, 2007, the appellants each filed an opening brief in the Appeals.

064657.1001

## V.     STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The sole issue presented by the appellants on appeal is whether the Bankruptcy Court erred in denying the Pilot Motions to Compel when (i) the question of membership in the Baldridge Class (as defined below) has been fully and finally adjudicated for over three years, including affirmation on appeal to the Circuit Court, and (ii) the appellants seek to raise and argue the purported rights of other individuals, not their own.  Continental further requests that this Court (i) determine that the Appeals are frivolous, (ii) dismiss the Appeals, and (iii) issue appropriate sanctions, as set forth in sections VIII.C. and D. of this brief.

## VI.     SUMMARY OF CONTINENTAL'S ARGUMENTS

1.     The appellants' contentions on appeal are barred by the doctrine of *res judicata*.  The issue presented – membership of the Baldridge Class (as defined below) – was raised, litigated and argued by the same parties to these Appeals and decided by the Bankruptcy Court five years ago, which decision was affirmed by both this Court and the Circuit Court.  As such, *res judicata* bars the appellants from attempting to relitigate this issue again.

2.     Since the appellants are attempting to advance the rights of other parties, not their own, the appellants lack standing to pursue the Appeals.

3.     Based on the uncontroverted record, the Appeals should be dismissed as frivolous, an award of damages should issue and the Court should enjoin the appellants' vexatious litigation.

## VII.     STATEMENT OF FACTS

The background of this dispute has been stated with varying degrees of specificity in a number of reported and unreported opinions of the Bankruptcy Court, this Court and the Circuit Court.  *See Air Line Pilots Association v. Continental Airlines, LLP Claimants (In re Continental Airlines, Inc.)*, 125 F.3d 120, 124 (3d Cir. 1997) ("*Continental I*"); *In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr. D. Del. 1999), *affirmed by Eastern Pilots Merger Committee*

*v. Continental Airlines*, 1999 U.S. Dist. LEXIS 23029 (D. Del. 1999), *affirmed by In re*

*Continental Airlines, Inc.*, 279 F. 3d 226, 231-32 (3d Cir. 2002) ("*Continental II*").

This Court's prior adjudication of the appellants' appeals characterized those

appeals as "legally incorrect," "untenable," "moot," and in the case of appellant Inman, untimely.

*See Adams v. Baldridge*, C.A. No. 02-484 (D. Del. March 31, 2003) *rehearing denied*, April 28,

2003; *O'Neill v. Baldridge*, C.A. No. 02-375 & 02-479 (D. Del. March 31, 2003) *rehearing*

*denied*, April 28, 2003; *Inman v. Baldridge*, C.A. No. 02-399 & 02-490 (D. Del. March 31, 2003).

And most recently, in a still further perpetuation of related litigation by the appellants' former

colleagues who formed another splinter group, the Eastern Pilots Merger Committee, Inc. (the

"EPMC"), this Court recounted the background facts of this dispute before granting Continental's

appeal and characterizing the EPMC's efforts as "futile," "not laudable," and "a waste of the

assets of the estate, as well as a tremendous waste of judicial resources." *In re Continental*

*Airlines, Inc.*, 2004 U.S. Dist. LEXIS 26644, *14-15 (D. Del. December 13, 2004).

In light of the Court's familiarity with this dispute and its prior admonitions

regarding the merits of the appellants' efforts, Continental has limited the facts recited herein.

## A.    THE CBA, EASTERN'S AND CONTINENTAL'S BANKRUPTCIES AND THE KASHER ARBITRATION

On February 23, 1986, Eastern Air Lines ("Eastern") and the Air Line Pilots

Association International ("ALPA") ratified a collective bargaining agreement (the "CBA"). The

CBA included certain Labor Protective Provisions ("LPPs"), that required, in the event of a

merger, integration of Eastern's pilot seniority list with those of the merged carrier. Shortly

thereafter, Continental's parent acquired Eastern. Believing that this acquisition constituted a

merger, ALPA requested arbitration to integrate Continental's and Eastern's seniority lists.

Eastern filed for protection under chapter 11 of the Bankruptcy Code in March

1989 and proceeded to arbitration with ALPA in April 1991 (the "Kasher Arbitration"). In the

months between Eastern's chapter 11 filing and the April 1991 commencement of the Kasher Arbitration, Continental filed its own chapter 11 bankruptcy petitions.

**B.     THE ALPA/LPP CLAIMANTS LITIGATION AND THE CONFIRMATION ORDER**

In September 1991, ALPA filed claims in Continental's bankruptcy cases based upon, *inter alia*, an asserted right to seniority integration under the LPPs. In response, Continental filed an adversary proceeding seeking injunctive and declaratory relief contending that, *inter alia*, seniority integration was not feasible and that the claims represented dischargeable general unsecured claims.

In February, 1993, the Bankruptcy Court entered orders finding that the equitable remedy of seniority integration constituted a dischargeable, general unsecured claim (the "February 1993 Orders"). On April 16, 1993, the Bankruptcy Court entered an order confirming (the "Confirmation Order") Continental's chapter 11 plan of reorganization which, among other things, enjoined the LPP arbitration. Both the February 1993 Orders and the Confirmation Order were appealed by ALPA and a group of former Eastern pilots referred to in the prior proceedings as the "LPP Claimants". During the pendency of the appeals, a second group of former Eastern pilots – the EPMC – also appeared and participated in the appeal. Prior to a decision on the then-pending appeals, Continental and ALPA settled the LPP litigation (the "ALPA Settlement").

This Court ultimately affirmed the Bankruptcy Court's rulings in all respects, save for the Bankruptcy Court's injunction of the arbitration proceedings. Continental and the LPP Claimants both appealed the District Court's rulings to the Circuit Court, which affirmed the District Court rulings (namely, *Continental I*).

DB02:5843616.5                                         064657.1001

C.    **THE ADDINGTON GROUP LITIGATION**

On or about October 23, 1998 – in contempt of the prior orders of, among others, this Court – a civil action styled *Doyle Addington, et al. v. Continental Airlines, Inc.*, Civil Action No. 98-4858 (MTB) was filed in New Jersey (the "New Jersey Action") by a group of former Eastern pilots and the EPMC (collectively, the "Eastern Pilots") seeking a declaratory judgment allowing the Eastern Pilots to (i) specifically enforce any award of seniority integration against Continental, and (ii) assert against Continental any damages arising from or related to the collective bargaining agreement arising from and after the effective date of Continental's confirmed Plan.  On December 16, 1998, Continental sought and was awarded sanctions against the Eastern Pilots with respect to their contempt of the orders of this Court and others by filing the New Jersey Action.  This Court subsequently affirmed the Bankruptcy Court's ruling and the imposition of sanctions, *see Eastern Pilots Merger Committee v. Continental Airlines*, 1999 U.S. Dist. LEXIS 23029 (D. Del. 1999), as did the Circuit Court, *see Continental II*, 279 F. 3d at 231-32.  The EPMC sought *certiorari* to the Supreme Court which was denied.  *See Eastern Pilots Merger Committee v. Continental Airlines*, 123 S. Ct. 345 (2002).

D.    **THE BALDRIDGE CLASS ACTION**

On October 12, 1999, a group of LPP Claimants who did not accept the ALPA Settlement (the "Baldridge Class") commenced a class action adversary proceeding in Continental's chapter 11 cases styled *Baldridge v. Continental Airlines Holdings, Inc. (In re Continental Airlines, Inc)*, Ch. 11 Case No. 90-932, Adv. No. A-99-412 (the "Baldridge Action"). The Baldridge Action essentially sought a declaratory judgment as to whether the one-year limitation set forth in section 502(b)(7) of the Bankruptcy Code governed the calculation of the LPP Claimants' money damages related to their LPP claims, if any.

7

### 1.    Class Certification

On October 26, 1999, the Baldridge Class filed a motion with the Bankruptcy Court seeking class certification (the "Class Certification Motion"). On December 13th and 14th, appellant Adams filed opposition papers to the Class Certification Motion. After conducting a hearing on notice, on February 3, 2000, the Bankruptcy Court issued its *Opinion on Motion for Class Certification and Order Granting Class Certification* (the "Class Certification Opinion") certifying the Baldridge Class as a non-opt-out class. *Baldridge v. Continental Airlines Holdings, Inc. (In re Continental Airlines, Inc.)*, Ch. 11 Case No. 90-932, Adv. No. A-99-412 (Bankr. D. Del. February 3, 2000). The Bankruptcy Court's Class Certification Opinion found that the requirements of Fed.R.Civ.P. 23(a) and (b)(2) had been satisfied and set forth specific findings of fact and conclusions of law in that regard. On July 10, 2001, the Bankruptcy Court entered an order clarifying the Class Certification Opinion which appellant Adams – over 4 months later – objected to on the basis that the Baldridge Class was underinclusive.[1]

### 2.    The Baldridge Settlement

The Bankruptcy Court ruled on October 12, 2000, that the claims of the members of the Baldridge Class, if any, – including all three appellants – were limited by section 502(b)(7) of the Bankruptcy Code; a ruling that the Baldridge Class appealed. *See Baldridge v. Continental Airlines Holdings, Inc. (In re Continental Airlines, Inc.)*, Civil Action No. AP-00069 (D. Del. 2000). The parties thereafter settled and on October 16, 2001, the Baldridge Class filed a motion in the Bankruptcy Court seeking preliminary approval of the settlement (the "Baldridge Settlement"). On or about November 26, 2001, notice of the Baldridge Settlement and the hearing scheduled thereon was sent to each known Baldridge Class member, including all three appellants.

---

[1] A copy of appellant Adams' November 5, 2001 filing in this regard is attached as Exhibit A to Continental's accompanying appendix filed contemporaneously herewith (the "Appx.").

In addition, on November 27, 2001, notice of the Baldridge Settlement was posted on the internet by counsel to the Baldridge Class and on December 3, 2001, notice of the Baldridge Settlement was published in the national edition of USA Today.[2] Pursuant to the Baldridge Settlement, each Class member was entitled to an allowed general unsecured claim in an amount estimated at 2 to 3½ times each member's former annual salary (the "Settled Claim Amount"). As a result, in every instance, without exception, the Settled Claim Amount far exceeded the one-year wage-cap the LPP claims would have been subject to pursuant to the Bankruptcy Court's October 12, 2000 opinion.[3]

Each of the appellants objected to the Baldridge Settlement.[4] In his written objection, appellant Adams specifically opposed the Baldridge Settlement on the grounds that not all class members were notified and/or that the Baldridge Class was underinclusive. *See, e.g.,* Exhibit B, at ¶ 2, p. 3 ("[Class counsel's] failure to contact ANY of the 60-plus pilots not in his original lawsuit group...condemns him to nothing short of gross malfeasance, and, quite possibly, criminal intent to defraud..."). Neither appellants Inman or O'Neill directly raised the alleged underinclusiveness of the Baldridge Class in their objections to the Baldridge Settlement.

At a hearing on January 31, 2002 to consider approval of the Baldridge Settlement and the appellants' objections thereto, appellant O'Neill personally appeared and argued the underinclusiveness of the class to the Court.[5] Following a lengthy presentation by Mr. O'Neill

---

[2] In the Settlement Order (as defined below), the Bankruptcy Court made specific findings regarding notice and service of the Baldridge Settlement. *See* Appx. Exhibit F, at ¶ 2.

[3] As noted, *infra*, both this Court and the Circuit Court affirmed the Bankruptcy Court's conclusion that the Baldridge Settlement was fair in all respects. *See Adams v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-2376, at p. 7 (3d Cir. March 5, 2004) ("the Bankruptcy Court did not abuse its discretion in finding that the settlement was fair."); *O'Neill v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-2374 & 03-2375, at p. 8 (3d Cir. March 5, 2004) (same).

[4] Appx. Exhibits B through D.

[5] *See* Transcript of Hearing, *In re Continental Airlines, Inc.*, Ch. 11 Case No. 90-932, Adv. No. 99-412, at pp. 6-19; 24-30 (Bankr. D. Del. January 31, 2002); Appx., Exhibit E.

regarding the class membership issue, the Bankruptcy Court expressly overruled all objections to the Baldridge Settlement, including the appellants'. *See id.* at p. 68 ("MR. BRADY: I did want to confirm that in approving the settlement, the Court is overruling all of the objections filed to the settlement. THE COURT: I am."); *id.* at p. 69 ("THE COURT: [B]ased on that and again my overruling the objections, I hereby enter the order approving the settlement agreement..."). At the conclusion of the January 31, 2002 hearing, the Bankruptcy Court entered its *Final Judgment and Order of Dismissal* (the "Settlement Order") approving the Settlement Agreement.[6] The Settlement Order provides, in pertinent part, the following:

> a.      The appellants herein qualified as members of the Baldridge Class (*see* Settlement Order, at ¶ 2);

> b.      The Baldridge Class "shall be deemed to have released and forever discharged each and every Settled Claim which they, or any of them had, may have had, now have or have as of the Effective Date of the Settlement against the Release Parties." (Settlement Order, at ¶ 6);

> c.      "[T]he Class and anyone claiming through any of them will be forever barred and enjoined from commencing, instituting or prosecuting any action or other proceeding in any court of law or equity, arbitration tribunal or administrative or other forum directly, representatively or derivatively against any of the Released Parties as to any of the Settled Claims." (Settlement Order, at ¶ 10).

In order to participate in the Baldridge Settlement, Baldridge Class members such as the appellants were required to file a claim form and sign a release no later than April 3, 2002. None of the appellants did so.

### 3.      Post-Baldridge Settlement Litigation

### a.      *Motion to Compel Appellant O'Neill's Compliance*

On February 12, 2002, appellant O'Neill appealed entry of the Settlement Order and, on February 19, 2002, filed a request with the Bankruptcy Court that his "appeal be put on

---

[6] Appx., Exhibit F.

hold until local counsel is retained and the arbitration in progress determines the class plaintiffs and award."[7]  In other words, notwithstanding the Baldridge Settlement, appellant O'Neill sought to recommence the Kasher Arbitration.[8]

On March 6, 2002, Continental filed its *Motion of Continental to Enforce Compliance with Court Order and Objection of Continental to Request for Extension of Deadline from Rule 8006* (the "Motion to Compel Compliance").[9]  In the Motion to Compel Compliance, Continental sought to compel appellant O'Neill to comply with the Settlement Order's mandate and refrain from seeking to recommence the Kasher Arbitration.  Continental additionally sought an order from the Bankruptcy Court "enforcing its Final Judgment and Order of Dismissal and confirming that O'Neill is enjoined from seeking an arbitration on any issue related to his LPP Claim." Motion to Compel Compliance, at ¶ 9.  At the hearing, appellant O'Neill again personally appeared and raised, among other things, the alleged underinclusiveness of the Baldridge Class.[10]  On May 2, 2002, the Bankruptcy Court entered an order granting the Motion to Compel Compliance (the "Compliance Order").[11]  Specifically, the Compliance Order enjoined appellant O'Neill from advancing any proceeding to enforce the LPPs and from advising other Baldridge Class members to forego participation in the Baldridge Settlement based on appellant O'Neill's allegations on appeal or otherwise.

---

[7]  Appx., Exhibit G.

[8]  As the Court is aware, the Circuit Court subsequently determined that "O'Neill's right to arbitration has been mooted by the settlement." *See O'Neill,* at p. 9.

[9]  Appx.,  Exhibit H.

[10]  *See* Transcript of Hearing, *In re Continental Airlines, Inc.*, Ch. 11 Case No. 90-932, Adv. No. 99-412, at p. 20 (Bankr. D. Del. April 2, 2002), Appx., Exhibit I ("Right now, I've got 1200 names that Mr. Myles refused to represent.").

[11]  Appx., Exhibit J.

### b.    *Motion to Expand Class Membership*

On April 25, 2002, the Baldridge Class filed its *Motion of Class Action Plaintiffs for Finding that Newly Identified Former EAL Pilots are Members of the Class, for Entry of Order Requiring CAL to Fund the Settlement for the New Class Members, for 90 Day Extension of Time to Provide Notice and for Approval of Form of Notice* (the "Class Expansion Motion").[12]  The Class Expansion Motion sought a ruling that 256 newly identified former Eastern pilots were members of the Baldridge Class and relief related thereto.  In the Class Expansion Motion, the Baldridge Class outlines in painstaking detail the measures taken to ensure that every potential member of the Baldridge Class was identified.  *See* Class Expansion Motion, at ¶¶ 5-7.  The class membership reconciliation outlined in the Class Expansion Motion is <u>exactly</u> the relief requested in the Pilot Motions to Compel that were filed over 4 years later and that is the subject of these Appeals.  On June 14, 2002, over Continental's objection, the Bankruptcy Court granted the relief requested in the Class Expansion Motion and confirmed that several hundred more former Eastern pilots were included in the Baldridge Class.

### 4.    **Appellants' Prior Appeals**

### a.    *Appellant Inman's Prior Appeal*

On February 22, 2002, appellant Inman appealed entry of the Settlement Order.  On March 31, 2003, this Court dismissed the appeal and affirmed the Bankruptcy Court's entry of the Settlement Order, opining as follows:

> Appellant's reading of the Third Circuit's decision is legally incorrect, as is abundantly clear from the procedural history recited above.  The Third Circuit limited the scope of the arbitrable question to whether the Eastern pilots have established seniority integration rights.  The Third Circuit further determined that if those rights were established, they would be satisfiable by the payment of money

---

[12]  Appx., Exhibit K (without exhibits).

> damages. The bankruptcy court limited the amount of money
> damages to one year's wages. The Settlement Agreement at issue
> increased the maximum claim award by two- or three-fold...The
> Settlement Agreement moots the arbitration proceeding by
> recognizing the Eastern pilots' claims to seniority integration and
> gives to members of the Baldridge LPP Class more value than that
> provided for in the bankruptcy court's summary decision...Not only
> is appellant's position untenable, but the appeal is moot, given the
> withdrawal of the pending appeals and the distribution of
> consideration to class members, acts in furtherance of the settlement
> which cannot be undone.

*Inman v. Baldridge (In re Continental Airlines, Inc.)*, Civil Action No. 02-399 & 02-490 (SLR),

at pp. 7-8 (D. Del. March 31, 2003).[13] This Court also found appellant Inman's appeal to be

untimely. *See id.* at 8.[14] Appellant Inman did not appeal this Court's decision.

### b.    *Appellant Adams' Prior Appeal*

On February 12, 2002, appellant Adams appealed the entry of the Settlement Order

arguing "essentially that the Baldridge LPP Class does not have the authority to enter into an

agreement with Continental that overrides the September 27, 1997 Third Circuit Court of Appeals

decision." *Adams v. Baldridge (In re Continental Airlines, Inc.)*, Civil Action No. 02-484 (SLR),

at p. 7 (D. Del. March 31, 2003).[15] This Court dismissed appellant Adams' appeal and affirmed

entry of the Settlement Order on identical grounds as it did the Inman appeal, except for the issue

of timeliness. On April 28, 2003, this Court denied appellant Adams' request for rehearing.

Appellant Adams appealed to the Circuit Court. On August 21, 2003, appellant

Adams filed his opening brief before the Circuit Court arguing, among other things, that "the LPP

Claimants have colluded by agreeing with their illegal efforts to reduce the size of the class,

---

[13] Appx., Exhibit L.

[14] Appellant Inman contends in his Opening Brief in the Appeals that this Court's dismissal of his prior appeal as
untimely was predicated on lies told to this Court by Continental, Baldridge Class counsel, or both. It is known only
to Appellant Inman what these purported lies were and this statement is unsupported by any fact in the record.

[15] Appx., Exhibit M.

064657.1001

attempting to enrich the few of themselves at the expense of all the larger number of claimants

they are trying to exclude…" and "fraud in the courts was the foundation of all these rulings…".[16]

In other words, in his prior appeal, appellant Adams raised the exact issue raised in the instant

Appeals. *See Adams v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-

2376, at p. 6 (3d Cir. March 5, 2004) ("Adams' objection to the class certification was based on

his contention that the class was underinclusive.").[17]   The Circuit Court affirmed this Court's

dismissal of appellant Adams' appeal and found that "the settlement, as approved by the

Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who

met the definition to file a claim by April 3, 2002.  Thus, [Adams'] only objections to the class

certification were remedied by the Bankruptcy Court." *Id.* at 6-7.  The Circuit Court also affirmed

on other grounds.  Appellant Adams' subsequent petitions for rehearing *en banc* and for *writ of

certiorari* to the United States Supreme Court were denied.

###### c.    *Appellant O'Neill's Prior Appeal*

On February 12, 2002, appellant O'Neill also appealed entry of the Settlement

Order.  This Court dismissed appellant O'Neill's appeal and affirmed entry of the Settlement

Order on identical grounds as it did the Adams appeal.[18]  Also like the Adams appeal, on April 28,

2003, this Court denied appellant O'Neill's request for rehearing.

Appellant O'Neill also appealed to the Circuit Court.  On or about August 18,

2003, appellant O'Neill filed his opening brief before the Circuit Court arguing at length that the

Baldridge Class was underinclusive in light of, among other things, alleged fraud on the part of

---

[16]  Appx., Exhibit N, at pp. 4, 6.

[17]  Appx., Exhibit O.

[18]  Appx., Exhibit P.

064657.1001

Continental.[19] *See, e.g.*, Appx., Exhibit Q, at ¶ 29 ("Mr. Tralins and Continental agreed to excluded 1059 pilots."). In other words, in his prior appeal, appellant O'Neill raised the <u>exact</u> issue raised in the instant Appeals. *See O'Neill v. In re Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, No. 03-2374 & 03-2375, at p. 7 (3d Cir. March 5, 2004) ("O'Neill did object to the class certification at the hearing, but he only objected to the extent that he felt that class was underinclusive, as it failed to include certain pilots…").[20]

In fact, not only did appellant O'Neill argue the underinclusiveness issue, he filed a motion before the Circuit Court seeking to compel Continental to produce documents supporting his claim that the Baldridge Class was underinclusive.[21] That motion was denied and the Circuit Court affirmed this Court's dismissal of appellant O'Neill's appeal and found that "[t]o the extent that O'Neill argues that other pilots were missing from the class list, the settlement, as approved by the Bankruptcy Court on January 31, 2002, included a clause which allowed other class members who met the definition to file a claim by April 3, 2002. Thus, this objection to the class certification was remedied by the Bankruptcy Court." *Id.* at p. 8. The Circuit Court also affirmed on other grounds. Appellant O'Neill's subsequent petitions for rehearing *en banc* and for *writ of certiorari* to the United States Supreme Court were denied.

### 5.    Relitigation of the Class Membership Issue

On June 13, 2006, appellant Inman filed the Inman Motion to Compel and on July 11, 2006 filed the Inman Objection.[22] Notwithstanding that appellant Inman objected to the

---

[19] Appx., Exhibit Q.

[20] Appx., Exhibit R.

[21] Appx., Exhibit S (without exhibits).

[22] Appx., Exhibit T.

DB02:5843616.5                                                        064657.1001

Baldridge Settlement in January 2002 and appealed entry of the Settlement Order in February

2002, appellant Inman states in the Inman Motion to Compel

> I was recently made aware, that a final 'settlement' was reached, and I
> downloaded the settlement from the internet. At no time in the past, did I
> receive a copy of this settlement with its respective claim form, or was
> made aware that such forms were sent....[the class representatives] should
> have notified me of this settlement.

Inman Motion to Compel, at ¶ 5. The Inman Motion to Compel requests that he be permitted to

participate in the Baldridge Settlement and requests that the Bankruptcy Court order a

reconciliation of the class membership list due to alleged underinclusiveness. The Inman

Objection is devoted almost entirely to the alleged underinclusiveness of the Baldridge Class.

On July 11, 2006, appellant O'Neill filed the O'Neill Motion to Compel.[23] In the

O'Neill Motion to Compel, appellant O'Neill concedes that "I appealed the settlement with an

unsuccessful conclusion terminating at the Supreme Court level on March 09, 2004." O'Neill

Motion to Compel, at ¶ 6. Appellant O'Neill further concedes that he failed to file a claim to

participate in the Baldridge Settlement by the applicable deadline – over four years ago. *See id.* at

¶¶ 7-8. Nonetheless, appellant O'Neill requested that the Bankruptcy Court reopen the Baldridge

Action for, ostensibly, the purpose of ordering Continental to award O'Neill a recovery under the

Baldridge Settlement.

On July 18, 2006, appellant Adams filed the Adams Motion to Compel.[24] In the

Adams Motion to Compel, appellant Adams concedes that he "objected to the idea of the

Settlement verbally and in my briefs, but the Class counsel prevailed. And the settlement was

ordered." Adams Motion to Compel, at ¶ 4. Appellant Adams further acknowledged in the

Adams Motion to Compel that he has already argued and lost the purported underinclusiveness of

---

[23] Appx., Exhibit U.

[24] Appx., Exhibit V.

064657.1001

the Baldridge Class and that he "declined to participate in the Settlement…" *Id.* at ¶ 4.  Despite

these concessions, appellant Adams argues that

> no one has made arrangements for my forthcoming settlement award…[t]he
> appeal opinion stated that the settlement order 'remedied' my objection to
> the class certification.  But I have had no 'remedy,' since I have not been
> paid the settlement, nor have any other pilots who failed to be properly
> notified, nor even listed on the documents upon which the Court based the
> settlement agreement.

*Id.* at ¶ 5.  Incredibly, appellant Adams argues that the Baldridge Settlement is "null and void, in

which event the only remedy is to arbitrate the composition of the list in its proper venue, under

the Railway Labor Act."  *Id.* at ¶ 6.  In other words, appellant Adams argues –5 years after the

Baldridge Settlement was approved – that arbitration under the LPPs is still a viable remedy.

At the 2006 Hearing appellant Inman appeared personally and appellant Adams

appeared telephonically; appellant O'Neill did not appear.  Predictably, appellants Adams and

Inman mainly argued that the Bankruptcy Court should compel a further reconciliation of the

Baldridge Class membership due to its purported underinclusiveness.[25]  At various times during

the 2006 Hearing, appellant Adams argued – without foundation or support of any kind – that the

class membership list was "not true and accurate…and they [Continental and the Baldridge Class]

knew it was not to be complete" (*id.* at p. 12), that the class membership was a "lie and a fraud"

(*id.*), that the class membership list was "fraudulent" (*id.* at p. 19) and that the Baldridge Class and

Continental "lied and they got away with it" (*id.*).  At the 2006 Hearing, the Bankruptcy Court

orally ruled that (i) all class membership issues were previously litigated and affirmed on appeal

(*see id.* at p. 19), and (ii) to the extent not raised in previous appeals, the appellants were precluded

from raising them now.  *See id.* at pp. 19-20.  On July 26, 2006, the Bankruptcy Court entered the

---

[25] *See* Transcript of Hearing, *In re Continental Airlines, Inc.*, Ch. 11 Case No. 90-932, at p. 9-10, 12-13, 17-20
(Bankr. D. Del. July 21, 2006), Appx., Exhibit W.

2006 Order incorporating the oral rulings made at the 2006 Hearing and denying, among other things, the Pilot Motions to Compel.[26]

### 6.    __The Instant Appeals__

Appellant O'Neill characterizes the issue on appeal as the Bankruptcy

> Court's failure to reopen this case when overwhelming evidence in the record has been pointed out (totally ignored by this Court) proving the Settlement Agreement is a scheme and a fraud.  The Settlement Agreement is a product of fraudulent testimony.

Appellant O'Neill Statement of Issues on Appeal, at p. 1.[27]  Appellant Adams similarly

states that the issue on appeal is the Bankruptcy "Court's failure to reopen this case when

overwhelming evidence in the record has been pointed out but totally ignored by this

Court, proving that the Settlement Agreement was obtained by fraudulent testimony."

Appellant Adams Statement of Issue on Appeal, at p. 1.[28]  Appellant Inman similarly

characterizes the issue on appeal as the Bankruptcy

> Court's failure to reopen this case when overwhelming evidence in the record has been pointed to (sadly ignored by this Court) proving that the Settlement Agreement is a deceptive and misleading mechanism to defraud a majority of LPP Claimants of the settlement which this Court has otherwise recognized and wisely allowed.  Approximately 1500 LPP Claimants have not received the settlement to which they are entitled...

Appellant Inman Statement of Issues on Appeal, at p. 1.[29]

Nearly every item identified by each of the appellants on his respective designation

of the record on appeal appears to relate solely to the Baldridge Class membership and nothing

else.

---

[26]  Appx., Exhibit X.

[27]  Appx., Exhibit Y.

[28]  Appx., Exhibit Z.

[29]  Appx., Exhibit AA.

064657.1001

On February 20, 2007, the appellants filed their opening briefs in the Appeals. With each filing, the appellants' charges against Continental, its counsel, the Baldridge Class representatives and counsel to the Baldridge Class become increasingly inflammatory; their opening briefs are no exception. No matter how egregious and spurious the charge, however, the appellants cannot escape from the conclusion that their allegations are baseless and meritless.

## VIII.  ARGUMENTS

### A.  *RES JUDICATA* BARS THE APPELLANTS' CLAIMS

"*Res judicata* . . . [is] fundamentally concerned with protecting persons from the expense of multiple lawsuits, conserving judicial resources, and enhancing reliance on judicial acts by immunizing against the possibility of inconsistent decisions. . . The doctrine[ is] designed to limit *subsequent* relitigation of . . . claims which were fully and fairly decided previously." *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 654 F. Supp. 1419, 1431 (D. Del. 1987) (citations omitted).[30] The Third Circuit has held that the party asserting *res judicata* must "demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *Id.* at 89 *quoting United States v. Athlone Inds.*, 746 F.2d 977 (3d Cir. 1984)). *Res judicata* requires "that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). The Third Circuit has held that *res judicata* is "not a mere matter of technical practice or procedure" but "a rule of fundamental and substantial justice." *Equal Employment Opportunity Commission v. U.S. Steel Corp.*, 921 F.2d 489, 492 (3d Cir. 1990) (internal citations omitted). "*Res judicata*

---

[30] As used herein, the term *res judicata* is intended to encompass the principles of claim and issue preclusion. *See In re Peterson*, 332 B.R. 678, 683 n.4 (Bankr. D. Del. 2005) ("Res judicata can also refer to claim preclusion and issue preclusion generally."), citing cases.

avoids the expense and vexation attending multiple lawsuits, conserves judicial resources, and

fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.*

        Here, there can be no clearer application of the doctrine of *res judicata*:  the same

issue (class membership) is being litigated by the same parties notwithstanding that the

Bankruptcy Court adjudicated that issue and was affirmed on appeal to both this Court and the

Circuit Court.  Indeed, a better characterization of the issue on appeal is provided by none other

than appellant Adams himself in the Adams Objection, where he states:

> I have argued <u>every</u> <u>time</u> that I have appeared in this matter that both Class
> Counsel and Continental have misled the courts <u>as to lawfulness of the</u>
> <u>makeup of the members of the Class</u>, and <u>accuracy of the list of names</u>
> <u>therein</u>....[at the 2006 Hearing] I <u>once</u> <u>again</u> stated that position, but the
> Judge ruled, <u>once</u> <u>again</u>, that she would not consider those charges, and
> ordered things to stand as they were.

Adams Objection, at p. 1-2 (emphasis added).  In other words, the appellants' complaint is not that

they have not had the chance to raise this issue, but that every time they raise it, the courts rule

against them.  As such, these Appeals represent the very epitome of what *res judicata* is intended

to combat:  the substantial injustice of requiring Continental to defend the <u>same</u> <u>claim</u> by the <u>same</u>

<u>party</u> even though it has already prevailed on that <u>very</u> <u>claim</u> by that <u>very</u> <u>party</u>.  As a result, these

Appeals are entirely without merit and should be denied.

**B.**    **The Appellants Lack Standing to Raise the Claims of Other Pilots**

        "Standing to appeal in a bankruptcy case is limited to 'persons aggrieved' by an

order of the bankruptcy court." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 24 (3d Cir.

2004).  A "person aggrieved" must establish that "the order of the bankruptcy court 'diminishes

their property, increases their burdens, or impairs their rights.'" *Id. quoting In re PWS Holding*

*Corp.*, 228 F.3d 224, 249 (3d Cir. 2000).  Under this rubric, standing will be "denied to marginal

parties involved in bankruptcy proceedings who, even though they may be exposed to some

potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order."

        

*In re PWS Holding Corp.*, 228 F.3d at 249 (internal quotations omitted). "Only those whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an appeal." *Id.*

Here, it is undisputed that the appellants are all members of the Baldridge Class. With the exception of appellant Inman, it is not disputed that the appellants had notice of their rights under the Baldridge Settlement. Appellant Inman's claim in the Inman Motion to Compel that he did not know of the Baldridge Settlement is betrayed by the record since he objected to and appealed the Baldridge Settlement. That the appellants failed to file claims to receive a recovery under the Baldridge Settlement by the April 3, 2002 deadline is similarly undisputed. Thus, the appellants have no claims – period – much less claims that are in any way affected by the 2006 Order.[31]

The only issue raised on appeal involves the alleged failure of the Baldridge Class representatives and/or Continental to notify certain class members of the settlement and/or to include certain pilots in the Baldridge Class who were qualified under the class definition. In other words, the appellants are arguing the alleged rights of <u>other pilots</u>, not their own.[32] Indeed, none of the appellants' rights are in any way affected by the Bankruptcy Court's 2006 Order since the only rights the appellants seek to enforce are not their own. Accordingly, the appellants lack standing to pursue the Appeals.

---

[31] Continental's standing argument was advanced in the Motion to Dismiss Appeals, to which the appellants offered no response at all, nor is this issue addressed in any of the appellant's opening briefs.

[32] Even if the appellants' claims provided them with some standing to pursue the rights of others in the Appeals, there simply exists nothing in the record to substantiate the appellants' claims. To the contrary, as discussed in the Continental Reply (to the Motion to Dismiss), many of the individuals that one or more of the appellants claim never received notice of the Baldridge Settlement actually received distributions of cash and stock thereunder and advance no claim to the contrary. Certain others are members of the EPMC which, as the Court will recall, waived any right to participate in the Baldridge Settlement. Thus, even if it could be argued that there was some semblance of standing that permitted the appellants to pursue these Appeals, substantively the appellants' claims on appeal lack any factual or legal merit and should be dismissed.

**C.**    **THE APPEALS ARE FRIVOLOUS AND AN AWARD OF DAMAGES SHOULD ISSUE**

An award of damages under F.R.A.P. 38 or Bankruptcy Rule 8020 is appropriate

where an appeal is frivolous. *See PDM Enterprises, Inc. v. Cape May Foods, Inc.*, 301 F.3d 147

(3d Cir. 2002); *Huck ex rel. Sea Air Shuttle Corporation v. Dawson*, 106 F.3d 45 (3d Cir. 1997);

*Nagle v. Alspach*, 8 F.3d 141 (3d Cir. 1993). "An appeal is frivolous if it is wholly without merit."

*Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) (citation omitted). A court must apply

this standard objectively in determining whether an appeal is frivolous. *See id.* (citation omitted).

That the appellants are *pro se*, does not shield them from liability for filing a frivolous appeal. *See*

*Kunz v. Saul, Ewing, et al.*, 200 B.R. 101, 107 (D. Del. 1996) ("a litigant's *pro se* status does not

shield him or her from sanctions for filing a frivolous appeal.") *citing Anderson v. Steers, Sullivan,*

*McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994); *Stelly*

*v. Commissioner of Internal Revenue*, 761 F.2d 1113, 1116 (5th Cir. 1985).[33]

Circumstances where an appeal is found to be wholly without merit include where

a litigant's claims were determined to be frivolous by the district court in the first instance and

where only unsupportable legal and factual conclusions that were found to be "patently wrong"

and "st[ood] logic on its head" were offered on appeal (*see, e.g., Huck ex rel. Sea Air Shuttle*

*Corporation v. Dawson*, 106 F.3d at 52), or circumstances where the "appeal appeared to have

been doomed to failure from the moment the plaintiff-appellants' brief was filed…" *Nagle*, 8 F.3d

at 144.

The appellants' claims on appeal are entirely without merit and, indeed, are

doomed to fail since, as discussed above, these issues have already been fully and finally litigated

---

[33] In *Kuntz*, this Court was particularly unsympathetic to the appellant's *pro se* status given the litigation experience he had amassed over the years. *See Kuntz*, 200 B.R. at 108. Notwithstanding his characterization of himself as an "unsophisticated litigant" at the January 2006 hearing, appellant Adams has filed no less than fifteen motions, briefs and pleadings in the various Courts of this Circuit over the years and appeared and argued at a number of contested

up through and including petitions for *writ of certiorari* to the United States Supreme Court. There is simply no legal basis under which the appellants' claims – claims that have already been fully adjudicated and rejected – can prevail on appeal. Thus, the appellants' claims are entirely without merit and are, *a fortiori*, frivolous.

Accordingly, Continental respectfully requests that this Court grant damages in an amount to be determined by separate application, but in an amount no less than double Continental's reasonable costs, including attorneys' fees and costs, incurred with respect to the Pilot Motions and these Appeals.

## D.     THE COURT SHOULD ENJOIN THE APPELLANTS' VEXATIOUS LITIGATION

Pursuant to its equitable powers, a district court can "enjoin a party who has '[a] history of litigation entailing 'vexatious, harassment and needless expense to [other parties]' and [who poses] an unnecessary burden on the courts and their supporting personnel.'" *Becker v. Dunkin' Donuts of America, Inc.*, 665 F.Supp. 211, 116 (S.D.N.Y. 1987) *quoting In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). "In such cases, 'the traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy of law, do not apply to the issuance of an injunction against vexatious litigation.'" *Becker*, 665 F.Supp. at 216 *quoting In re Martin-Trigona*, 737 F.3d at 1262. Such an injunction is appropriate where dismissing a case "by itself, will not free the defendant or the court from the expense and aggravation of future actions." *Becker*, 665 F.Supp. at 116. Continental submits that such a remedy is appropriate here given the appellants' outright refusal to accept the finality of the numerous adverse rulings against them. The appellants' tireless but futile efforts over the past decade have cost Continental hundreds of thousands of dollars and have grossly wasted the judicial resources of the courts in this Circuit.

---

hearings. Mr. Adams and Mr. O'Neill have fully briefed a case before the Circuit Court and petitioned for *writ of certiorari* to the United States Supreme Court. To be sure, the appellants are anything but "unsophisticated litigants."

23

Indeed, because the appellants are *pro se*, Continental has attempted to "turn the other cheek" and has avoided responding to the outrageous and unsupported accusations the appellants have routinely and recklessly leveled at it and others in these proceedings. However, Continental is entitled to protection from this harassment and submits that this Court can and should enjoin the appellants from pursuing, in any tribunal, any claim related to Continental, the LPPs or the Baldridge Class as a remedy for their vexatious pursuit of that which has been already lost.[34]

## IX.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, Continental respectfully requests that this Court enter an order (i) dismissing the Appeals, (ii) determining that the Appeals are frivolous within the meaning of Bankruptcy Rule 8020 and F.R.A.P. 38, (iii) awarding Continental just damages and double costs, (iv) enjoining the appellants, and (v) granting such other and further relief as this Court deems necessary and proper under the circumstances.

Dated: Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
       March 20, 2007

          Robert S. Brady (Delaware Bar No. 2847)
          Joseph M. Barry (Delaware Bar No. 4221)
          The Brandywine Building
          1000 West Street, 17th Floor
          Wilmington, DE 19801
          (302) 571-6600
          jbarry@ycst.com

          Counsel to Continental Airlines, Inc.

---

[34]  Given the severity of the accusations made by the appellants in, among other documents, their opening briefs and the fact that all such accusations have no basis in fact, Continental and its counsel reserves their rights to seek a separate remedy against the appellants.

24

## CERTIFICATE OF SERVICE

I, Joseph M. Barry, Esquire, hereby certify that I am not less than 18 years of age and that on March 20, 2007, I caused a copy of the attached document to be served on the following parties by First Class Mail or Hand Delivery, as indicated:

### VIA FIRST CLASS MAIL

Mr. Brownie N. Inman, *pro se*
18905 SW 128 Ct.
Miami, FL 33177

Mr. Ramon E. O'Neill, *pro se*
7424 SW 129 Ct.
Miami, FL 33183

Mr. J. Trigg Adams, *pro se*
3824 Park Avenue
Miami, FL 33133

### VIA HAND DELIVERY

Bruce E. Jameson, Esquire
Prickett Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Counsel for James Baldridge, *et al.*

Joseph M. Barry (Delaware Bar No. 4221)

Dated: March 20, 2007

045085.1006