IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., | ) Chapter 11<br>)<br>) |
| _____ | ) Bk. Nos. 90-932 through<br>) 90-984 (MWF) |
| Brownie N. Inman<br>                    Appellant | ) Jointly Administered<br>) BK. Adversary No. 99-412<br>) |
| v. | )<br>) Civil Action No. 06-568<br>) |
| CONTINENTAL AIRLINES, INC.<br>                    Appellees | )<br>)<br>) |
| _____ | ) |

FILED

APR − 2 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## REPLY TO APPELLEES OBJECTION OF
MY APPEAL

My Appeal from Bankruptcy Court Order Dated 07/24/07 which was

due and delivered to this District Court on 20/02/07 proved, without doubt,

that I and 1220 members of the subgroup "new hire" were eliminated from

the Class by misrepresentations (lies) to the Bankruptcy Court by Class

Counsel and Continental. .

I am Brownie Inman, Eastern Employee Number 37593, Captain

DC-9. I was hired after Mar. 3, 1989, and am therefore technically a "new

hire" as defined by Continental and Class Representatives. I am a valid LPP

Claimant, as awarded by this Court, involved in a minor disagreement with

Continental, the remedy of which, normally is arbitration by the NMB, in accordance with the RLA.

Around 1998, Judge Walrath began pressuring Continental to settle the bankruptcy which had been on the books for several years. Continental had resisted NMB arbitration which Attorney Miles Tralins wanted for his LPP pilot claimants. Continental approached Tralins and made a mutual agreement that Continental would settle with his clients for twice the legal limit and in return Tralins would honcho the Class Action Continental wanted which would force all uncommitted LPP Claimants into a no opt out Class. Tralins relayed this information to his clients in a series of roadshows but never informed his clients of the no opt out status of the class. He told his group that he was going to represent **all** the LPP Claimants who were then unrepresented. Tralin's clients were quite happy that all would be represented. We did not know at the time that all uncommitted pilots numbered 2005. Tralins and Continental quickly had the blessing of the Court. After establishing the no opt out Class Tralins at the bequest of Continental began minimizing the Class by not including the 260 B list pilots or the 1220 "new hire" pilots.

Ramon O'Neill single handedly fought his way to Appeals Court where Tralins, opposing him, miraculously found the 260 pilots who

2

constitute the B list. My present appeal indicated Tralins pocketed another three quarter million dollars for O'Neill's good work. Yet, Continental's present response is that O'Neill's appeals are frivolous.

The 1220 "new hires" of which I am one, were purposely overlooked and fraudulently deleted from the Class. Only recently did we realize that they were eliminated from the no opt out Class that Continental so highly desired to prevent an arbitration from occurring. The "new hires" were eliminated by telling the Bankruptcy Court that ALPA Proofs of Claims effectively eliminated the "new hires". **That was a total lie.**

Exhibits F and G of my Appeal are tantamount to a confession by Class Counsels: Tralins and Jameson. As Continental was well aware of both exhibit F (stating that ALPA Proof of Claims eliminate "new hires") and exhibt G (the actual ALPA Proof of Claims which includes **all** pilots) of my Appeal , in the absence of evidence to the contrary or contrary rational pleadings the allegations of my Appeal have no other rational contrary arguments, and I ask Continental to state such if any are available, however, Continental has chosen not to respond and has therefore affirmed that, yes, they did misrepresent to the Bankruptcy Court that "new hires" were eliminated from the Class by the rationale and **total lie** that ALPA Proof of Claims precluded "new hire" inclusion in the Class.

3

Continental's response to my 02/20/07 Appeal, which I received on 27 March, did not attempt to counter my assertions that the 1220 "new hires" were eliminated from the Class through misrepresentations (lies) to the Court. Instead, Continental submitted a twenty seven page circumambulation around the issue finally concluding that this Court should punish those who are merely pointing out that a very real multimillion dollar fraud has occurred. By not acknowledging the matter or challenging the assertion, Continental basically took the fifth so that Continental's Counsel need not incriminate himself any further with any more on the record statements with respect to the matter of ALPA Proof of Claims eliminations of "new hires"

May I remind this Court that the Court of Appeals has ruled that this Class Action was in lieu of NMB arbitration. If the 1220 "new hires", including myself are not part of this Class Action then the matter reverts to arbitration. If I and the 1220 "new hires" do lose this present appeal (that we were fraudulently eliminated from the Class) we still retain our status as LPP Claimants and will seek redress through arbitration. Judge Walrath understands arbitration is available and will be sought.

Quoting from the Bankruptcy Court Hearing (Exhibit A, Page 21, Line 10)

4

**Inman:   You said that they had to be on Appendix A, with no mechanisms to expand Appendix A. So you defined the Class as 560 people. And anybody that's not on it is entitled to their appeal rights to arbitration.**

**The Court:  Okay.  And that's what you're stuck with.**

## Conclusion

Approximtely 1500 LPP Claimants have been prevented from receiving the class settlement the Bankruptcy awarded to LPP Claimants in lieu of arbitration.  This was done by fraud, deception and non-notification. The Court allowed no opt out status to a mandatory class so any arbitration was not possible for several years, ie.: anyone who would have attempted arbitration would have been estopped by Continental using the rationale that they were members of the Class. But an individual couldn't get in (no entry mechanisms) and he couldn't get out (no opt out).

The no-opt out status of the Class involves both parties. Continental cannot opt out.  Continental is obligated to fund the settlement. The Class Action  was requested of the Court by Continental and cannot therefore be a two way street or just include some of the LPP Plaintiffs of Continental's choosing.

Due to the Bankruptcy Court's statement that my arbitration rights are still valid  because I have been eliminated and am not a member of the the Class, I am notifying this Court that I will proceed with arbitration and I

further petition this Court to reaffirm the Bankruptcy Courts interpretation as

reflected in the transcript of the Bankruptcy Court Hearing.

Respectfully Submitted,

*Browne Inman*

Browne Inman, *Pro Se*
18905 SW 128 Ct.
Miami, Fl. 33177
(305) 801-5227

# CERTIFICATE OF SERVICE

I, Brownie N. Inman, certify that I am not less than 18 years of age, and that service of the **REPLY TO APPELLEE'S OBJECTION OF MY APPEAL FROM BANKRUPTCY ORDER DATED 07/04/06** was made on March 29 2007, upon the attached service list by first class mail, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

*Brownie N Inman*

Brownie N Inman, *Pro Se*
18905 SW 128 Ct.
Miami, FL. 33177
Phone (305) 801-5227

Service List

Counsel for Continental Airlines:
Robert Brady, Esq.
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801

Counsel for LPP Claimants:
Bruce Jameson, Esq.
1310 King Street
Wilmington, DE 19899

Ramon E. O'Neill (electronically)

J. Trigg Adams, (electronically)



# Appendix A

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .       Chapter 11
                                    .
Continental Airlines, Inc.,         .
et al.,                             .
                                    .       Bankruptcy #90-932 (MFW
            Debtor(s).              .       through   #90-984 (MFW)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                    .
James Baldridge, William            .
Mann and Larry Dunn,                .
individually and as                 .
representative of a class of .
persons similarly situated          .
who are referred to as the          .
LPP Claimants,                      .
                                    .
            Plaintiff(s),            .
                                    .
                vs.                 .
                                    .
Continental Airlines                .
Holdings, Inc., Continental .
Airlines, Inc. and System           .
One Holdings, Inc.,                 .
                                    .
            Defendant(s).           .       Adversary #99-412 (MFW)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                        Wilmington, DE
                        July 21, 2006
                         11:00 a.m.

                TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE MARY F. WALRATH
               UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Plaintiff(s):           Bruce E. Jameson, Esq.
                                Prickett Jones & Elliott, P.A.
                                1310 King Street
                                Wilmington, DE 19899

2

For The Defendant(s):          Joseph Barry, Esq.
                               Young Conaway Stargatt
                               & Taylor, LLP
                               The Brandywine Bldg.
                               1000 West St.-17th Fl.
                               Wilmington, DE 19801

                               Kenneth J. Enos, Esq.
                               Young Conaway Stargatt
                               & Taylor, LLP
                               The Brandywine Bldg.
                               1000 West St.-17th Fl.
                               Wilmington, DE 19801

Audio Operator:                Brandon J. McCarthy

Transcribing Firm:             Writer's Cramp, Inc.
                               6 Norton Rd.
                               Monmouth Jct., NJ 08852
                               732-329-0191

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

3

THE CLERK:   All rise.   You may be seated.

THE COURT:   Good afternoon.

MR. JAMESON:   Good afternoon, Your Honor, Bruce Jameson of Prickett Jones on behalf of the LPP Class Plaintiffs.   Your Honor, we're here this afternoon on our Motion to Reopen this adversary proceeding, which was a Class Action that was settled.   The settlement was approved by the Court.   And just briefly, Your Honor, what brings us here is two years ago, Miles Tralens, who had been lead counsel in this case, was killed in an automobile accident.   Since that time, my office really has taken over as the lead position in the case.   We have obtained the files, or the vast majority of files from Mr. Tralens' office.   We've been working to basically wind up the final settlement.   In the settlement, there have been two distributions made to class members over time.   There is a remaining fund which we would like to make a final application to get Court approval to distribute out all that money.   And basically the application would consist of an application for fees and expenses in connection with the administration of the settlement up until now, which is contemplated by the agreement.   But more importantly --

THE COURT:   Well, does the settlement require that I approve the final distribution?

MR. JAMESON:   I believe it does, Your Honor.   The specific provision of the Settlement Agreement says that the

4

settlement consideration, if any, which is not distributed as a result of a failure of anybody to timely submit claims, will be applied to the payment of such additional Court approved settlement administration costs, fees or expenses which may be incurred during the administration of the settlement, with any remaining balance to revert to the Continental Estate. That is paragraph 3.01(d) of the Settlement Agreement. So that's one aspect of it, Your Honor. I believe that as I read the Settlement Agreement, yes, Court approval is required. But more importantly --

THE COURT: Or they don't get paid unless there's Court approval. It doesn't mean that --

MR. JAMESON: That -- yeah, correct. That's the other aspect. But more importantly, Your Honor, particularly from my point of view, we have been contacted now by several people, some of whom have filed applications with the Court -- at least one gentleman named Mr. Duckworth has contacted me directly, but has not made a filing with the Court -- all of whom now seek their distributions from the settlement. And various of the people give various reasons why they did not get distributions before. Some of them, as is pointed out in Continental's response, are people who claim that they didn't get notice of the settlement, even though they filed appeals from the Court Order that approved the settlement. Others claim that they simply never got notice. In Mr. Duckworth's

case, he advises me that he's been out of the country for the past nine years. Various reasons are set forth.

Your Honor, I did not feel that I could, under the Settlement Agreement, make the decision as to whether or not it's appropriate to pay these people. The Settlement Agreement obviously contemplates that you had to file a timely proof -- or not a proof of claim, but rather a timely claim form and meet various other criteria to be entitled to the settlement. Your Honor, that is the real reason that I bring this to the Court, is because I would like final Court approval and guidance on how to deal with those people. From our perspective, that is the Class Plaintiffs, I don't anticipate that we will take an affirmative position, unless we determine, for example in the case of one of the people, that they are not a member of the Class at all. Mr. Broderick who filed things, it appears to us he's not a member of the Class, because he simply didn't meet the criteria to begin with. As to the others who filed appeals and/or simply claim that they did not get notice, I would like to lay out in our application for the Court exactly the facts we have about those people. And we are happy to do whatever the Court tells us to do with respect to those people.

So that is why we come here today seeking to reopen the case. My hope is that I would be in a position to file the final application that I talked about, in mid-August basically,

6

and then we can proceed on whatever schedule suits the Court.

THE COURT: All right. Anybody else wish to be heard on the motion?

MR. ADAMS: Captain Adams, yes, Ma'am, I do.

THE COURT: All right, Captain Adams, what's your position on the motion?

MR. ADAMS: Just preliminarily I'd like to hear what some of the other Claimants have to say. But Mr. Jameson's statements are somewhat disingenuous. He claims to have notified all of the eligible Claimants on the remaining Eastern Seniority List. And they certainly have not done so. They did notify me, but I was in the appeals process at the time. And some of the people who were in the appeals process, as I understand it, were never notified, even though they should have been under the terms of the settlement.

THE COURT: Well, you can't -- if you got notice, you can't be heard to argue notice was not given.

MR. ADAMS: No, Ma'am, that's not what I'm arguing. I'm arguing that they did not adhere to the process as set out in the Settlement Order.

THE COURT: Well, they did as to you. You got notice.

MR. ADAMS: I got notice.

THE COURT: All right.

MR. ADAMS: Like I said, I was in the appeals process at the time. Had I signed the agreement at the moment, it

7

would have mooted my appeals process, so I could not do so. But nowhere in Your Honor's Order did I ever see any words to the effect that if my appeal as unsuccessful to the District and Appellate Court, that that made me ineligible for the payout.

THE COURT: Well, you did know that you had to file a claim by a set time.

MR. ADAMS: Yes, Ma'am. But as I said, I was in the appeals process during the time that that set time had expired --

THE COURT: But --

MR. ADAMS: -- which I think was reset to August of '02.

THE COURT: Well --

MR. ADAMS: I was told my appeal didn't get heard and finally judged on until -- I'm trying to remember the Appellate Court's appeal decision date. It was in '03 some time.

THE COURT: Well, that was a decision you made. You could have --

MR. ADAMS: Yes, Ma'am, it was, but --

THE COURT: You could not --

MR. ADAMS: -- your Order --

THE COURT: -- have it both ways.

MR. ADAMS: -- did not say that because I was in an appeal process, and if I lost the appeal, that I had no rights

8

under the settlement.

THE COURT: It did say if you did not file a claim, you lost all rights.

MR. ADAMS: Yes, Ma'am. But had I --

THE COURT: Okay.

MR. ADAMS: -- filed that claim, in the wording of the claim form they sent me, it say that I hereby renounce all further claims -- let's see -- all further claims against the Estate of Continental. And I couldn't do that, because I was in the appeals process. That would have mooted my appeal.

THE COURT: All right. But that was a decision you made. So there's no reason to change the settlement. That was the terms of the settlement. Either you filed your claim or your pursued the appeal. And you made your choice.

MR. ADAMS: Okay. Then was it Your Honor's intent that anybody who objected to this was then forever barred from a claim? I was only appealing Your Honor's Settlement Order.

THE COURT: Whoever did not file a claim, was precluded from participating. Yes.

MR. ADAMS: So in other words, you were pre-punishing those who objected to the terms of the Settlement Order before the issue was finally resolved.

THE COURT: Yes, because I determined that it was a settlement. If you wanted to participate in the settlement, you would get your distribution. If you did not agree to

9

participate in the settlement, by not filing your claim and by appealing, you don't get your distribution. Yes, that was the effect of the Order.

MR. ADAMS: Okay. I will accept Your Honor's ruling on that, and interpretation of that. But, again, my objection in this hearing is not simply to the -- to my money. My objection here is that under the terms of your Settlement Order, these gentlemen have violated it, chapter and verse, all up and down the line. They have not followed Your Honor's Order.

THE COURT: Well, I don't have any evidence of that.

MR. ADAMS: You don't? May I offer some?

THE COURT: Well, what evidence would you offer?

MR. ADAMS: Okay. In the record, the Class counsel submitted an alphabetized list of the people that they said were eligible, that their records show a constant reference throughout this proceeding to the November 1990 Eastern Master Pilot Seniority List. And, which is always issued in a Seniority Order format. The one they submitted was in alphabetical format, and it was not inclusive. Mr. O'Neill submitted the proper list in March of 2002. And as I understand from conversations with Mr. Inman, he has the proper list in his current filing, which is in your Court record today.

THE COURT: Captain Adams, didn't I decide the issue

10

as to who would get notice and who was eligible, in my decision
which has now been affirmed?

MR. ADAMS: The affirmation said that your
Confirmation Order was sufficient -- how shall I say this --
sufficient protection is how I remember the words. But your
Confirmation Order has not been carried out. If I may
continue?

THE COURT: Well, what evidence do you have that those
on the list referenced in the Settlement Approval Order did not
get notice?

MR. ADAMS: Did Your Honor not hear and hear both
Continental and the Class counsel saying that the Eastern Pilot
1990 Master Seniority List was the governing list from which
they were to work?

THE COURT: I ruled -- and I believe it was Exhibit A
-- I ruled that the names on Exhibit A were the relevant Class.
Was it not Exhibit A, to be --

MR. BARRY: Your Honor, I'll do you one better
actually. The -- I think Mr. Adams is referring to the exhibit
to the final judgment and Order. The parties and Your Honor
may recall that after that Order was entered, there was
subsequent litigation over the Class membership issue. In
particularly, the LPP Class filed a motion to include the
additional members to be included in the Class. And in their
motion, as we set forth in our response to the instant motion,

11

they set forth the painstaking procedure that they went through, including starting with the very list that Mr. Adams is referring to today. So, again, and as we say in our papers, and I think as Your Honor has recognized, this issue has been fully and finally litigated to its completion. And the Circuit noted that, as Your Honor stated, in its decision on both Mr. O'Neill's appeal and Mr. Adams' appeal, when it said this issue has fully and finally been resolved.

So, you know, our response essentially to Mr. Jameson's motion -- and we don't generally object to reopening just the adversary proceeding for the discreet and limited purposes that he sets forth in his motion. However, we are loathe to relitigate this Class membership issue, having fully been litigated four years ago. And we do note that Mr. Adams and essentially every other person that's filed a pleading in the case in the last two weeks was named as a Class member, and simply didn't file the claim form as required.

MR. ADAMS: Mr. -- this is Mr. Adams again. You note in your reply -- Continental does -- that they're puzzled as to who Mr. Ruski is. Now, Captain Ruski was hired on September the 13th, 1965. His seniority number is number 609. You find him a mystery. But he is an Eastern Pilot, just like myself. He is clearly listed on the Master Seniority List. And as such, would be automatically included in the Class. He's most certainly one of over the 1,000 that the Class counsel couldn't

12

be bothered to list, much less find and notify. Yet, in May of '02, they put the affidavits and documents, dockets 70 and 72, that the list was true and accurate in the first submission. In other words, you're saying they said that the list A was true and accurate, and they put affidavits and went through all the process they said they did, to make that list true and accurate. And I'm telling you that the list is not true and accurate, that the Court records have the Master Seniority List, that the list A was not complete, and they knew it not to be complete. And now they turn up wondering who Captain Ruski was. And that constitutes --

THE COURT: Well --

MR. ADAMS: -- a lie and a fraud in this proceeding.

THE COURT: Well, this has already been litigated. The list has been approved for many years now. You had your chance, and others objected. I heard the evidence and decided the list.

MR. ADAMS: So in other words, Your Honor is saying that knowing that the list was fraudulent and incomplete --

THE COURT: Not knowing --

MR. ADAMS: -- the Appellate Court said --

THE COURT: Captain Adams --

MR. ADAMS: -- knowing that --

THE COURT: Captain Adams, please, please don't interrupt.

13

MR. ADAMS:   Okay.

THE COURT:   Captain Adams, no one knows the list was incomplete.   There was a Court decision that the list was complete.   And that decision has been affirmed.   That's a finding.   The list was complete.   You cannot relitigate that issue.

MR. NEUMANN:   Pete Neumann.   May I say a few words, Ma'am?

THE COURT:   Yes.

MR. NEUMANN:   I, in my case, just speaking of my experience, I never received a claim form.   I did move twice, but all within a five mile radius, and I was in the phone book.

I also went to Larry Dunn several times at work, who never mentioned to me, "Hey, by the way, this was settled.   You might want to send in a claim form."   So there was never any attempt to locate these guys.   I would think Mr. Tralens, if he would have done this properly, they should have sent the claim forms out certified mail or return receipt requested so there's proof of some kind of delivery.   But the U.S. Mail is not a perfect service, and I have mail mixed up all the time, including the last time today, or things are not delivered.   I also recently located a friend of mine, a gentleman in the Air Force, a fellow officer, named Ron Butz, who did recently get a form in California.   He signed it and mailed it back.   And that's the last time he ever heard from EPFF.   He never got his stock.   He

14

never got the money.  Nothing.  And he did mail it back.

Now, if some of these people have a question as far as locating them, my daughter, who's 13 1/2 years old, in the past two months has access to a computer, and there is a website, a Government database.  And she located two of your eight fellow Eastern pilots that counsel said couldn't be located in the past.  And they're out there.  There's a data website of only pilots.  So people can be located.  It's just the effort was never made.  And in my case, I never received a claim form.

THE COURT:  Well, but you had notice of this.  You objected to the settlement, didn't you?

MR. NEUMANN:  After the fact, I -- as I moved -- I happened to talk to Mr. O'Neill after the deadline.  So I did appeal, because I had no other choice.  I did not receive a claim form, and I had no other recourse.  I couldn't mail back something I didn't receive.  But I finally called Mr. Jameson, I think it was back in March.  And I mentioned this to him.  He said, "Oh, I have no problem with you receiving your stock. Yes, you were one of the initial people in the group.  But call the Continental attorney, Mr. Barry.  I called Mr. Barry.  He said he'd get back to me, which he did.  He said, "Yes, we see you as part of the group.  I have no problem with you receiving your stock.  Go back to Mr. Jameson."  So they're pointing the finger at each other, saying neither one of them can do anything.  Yet, I was one of the members who just never

15

received the paperwork to mail back. Both of them agreed I should get my stock. They both told me verbally on the phone they have no problem with my receiving it. But now they're saying they have a mess deciding who should get what.

And there's not enough funds also. Your Honor, the Order that you signed, January 31st, '02, gave us certain stock plus a small cash amount. And if you take that cash amount, that was $81 per person, times let's say 400 people at EPFF, that came to an X amount. Well, as of right now, according to the filing, there's only $519 left in the account. Even if you wanted to pay everyone, the money's not there. And I don't know as far as the 71,861 shares of stock, if that's enough to cover everyone that they quoted. Now, my opinion is somebody's trying to basically not let the word out, disclose complete and full. And people are never gonna get their stock. And a few individuals are going to keep it. And we're basically gonna be defrauded out of the small settlements we got, for the loss of a career.

THE COURT: Well, Mr. Neumann, I can't consider what you're telling me other people did. If they didn't file a motion here, I don't have any proof that they did or did not get this.

MR. NEUMANN: Well, you know that Gerald Butz told me he mailed it back, and never received anything.

THE COURT: Mr. Neumann, that's hearsay. If you were

16

on the stand to testify, you could not testify to what somebody else told you.

MR. NEUMANN: Okay. I'm just letting you know that the U.S. Mail is not a perfect service. I never got my claim form, so I could never mail it back.

THE COURT: Mr. Jameson?

MR. JAMESON: Your Honor, just to address these accusations about lack of notice, part of what I contemplated in dong the final application, I mean we already went through with the Court what we did to provide notice in prior motions.

I intended to recount that and advise that we did, in fact -- you know, went through various steps to make sure we supplied notice, to try to find addresses for people where we got things returned, and so on, all of which I will lay out in the final application, if the Court permits me to file it. But any suggestion that we have either tried not to provide notice, I assure you is absolutely incorrect. And I can make the record on that in connection with the final application.

MR. NEUMANN: Well, we all had phone numbers, so they could have called my number. My cell number has never changed.

MR. ADAMS: This is Captain Adams again. Mr. Jameson, as you know, I was objecting to your list from the very front. And in the Court record are my objections that your list, Exhibit A, was incomplete at the time. And yet you say, and provide all kinds of numbers that you say there should have

17

been about 2,000 remaining pilots in that group. I recall that your Exhibit A list was already less than 1,000. And then later on, when we objected and you added another 256 names, that right there put the lie to your earlier statement that the list was complete and true, and you had done due diligence. The record shows that you did not do due diligence, that the entire 1990 November Eastern Pilot Master Seniority List from which you were to have operated was available to you. You never objected that you couldn't find it or nobody would give it to you.

THE COURT: Captain Adams --

MR. ADAMS: -- and you said that you got all these numbers off that list.

THE COURT: Captain Adams --

MR. ADAMS: And yet your Exhibit A starts out being deficient, which is proved by the May action of adding 256 names.

THE COURT: Captain Adams --

MR. ADAMS: And even still --

THE COURT: Captain Adams, please --

MR. ADAMS: Yes, Ma'am.

THE COURT: Please. You're relitigating issues that have already been decided.

MR. ADAMS: Well then, Your Honor, do you mean that our in the record statement that there were over 1,000 pilots

18

missing, it is your intention that you did not care that there were over 1,000 pilots missing?

THE COURT: I don't believe it. I've already decided that issue. And I decided --

MR. ADAMS: Ma'am, I don't believe that you've ever heard any argument as to how the list was incorrect.

THE COURT: Captain Adams, I decided the list was correct, after hearing all of the arguments that were made.

MR. ADAMS: Then what remedy do I have when I say that the list was fraudulent?

THE COURT: You have no remedy. You have lost. You have lost that issue. I'm not inclined to reopen this case. I'm not going to relitigate any issue. I think the Settlement Agreement deals with what happens. And I'm not inclined to grant any additional relief.

MR. ADAMS: So you're basically saying that your ruling is that they lied and they got away with it. Is that my understanding of it, Ma'am?

THE COURT: No. I'm ruling that they did not lie. I found what they presented was accurate. The Court above me found it was accurate. That's the truth. And any --

MR. ADAMS: I understand that. But the Appellate Court did not rule on the accuracy of the list. That was not the issue. It was the issue of the legitimacy of not following at all the Railway Labor Act, and going to an arbitrator to

19

know that the list was well and truly accurate under the Railway Labor Act under which it was constituted. That was the issue before the Appellate Court. And that was the issue that I pled to the District and Appellate Court. I did not plead how you arrived at the numbers of pilots on his Exhibit A.

THE COURT: If you did not plead it, you cannot now. You have to raise all your arguments at once. If you don't raise them, you lose them.

MR. ADAMS: Well, that puts me, an unsophisticated litigant, at the mercy of those who want to twist the Court. And I don't know if I have a remedy to that or not. I will have to see. Thank you very much, Your Honor. I appreciate it.

THE COURT: All I'm saying is I'm not inclined to grant the motion and relitigate anything. I'm sorry. There's another --

MR. ADAMS: Well, I understand --

THE COURT: -- gentleman here.

MR. ADAMS: -- Your Honor's reluctance to do so, because this has become more and more and more complex. However, there was before you a grief on my part that it was not accurate. And also a grievance that, in fact, the whole process was wrong. And 'though I agreed that the process was wrong, I was handed a decision by the Appellate Court that said, "Well, a Settlement Agreement is relief enough." And

20

that the Settlement Agreement and the accuracy of this has never been actually determined by yourself nor a Higher Court.

THE COURT: That's not true. When I approved the settlement, I approved the list. So it has been litigated and decided. I'm sorry, there's another gentleman in the Court. Do you want to be heard?

MR. INMAN: Yes, Ma'am.

THE COURT: Step forward and talk into the microphone, please.

MR. INMAN: I'm Brownie Inman. I'm a member of the Class too.

THE COURT: And your name again?

MR. INMAN: Brownie Inman.

THE COURT: Okay.

MR. INMAN: And I have -- it's right in the record that there's 2,000 that could have been available. But I -- it's in the record. We can go right to it right now and end this myth just quickly. Edna Smith admits in her deposition 5,000. She said she started working. She eliminated the 2,700 of the Continental Airlines and Eastern settlements, and the 300 of the -- what was it -- the -- pardon me.

THE COURT: The Alpha?

MR. INMAN: Addington Group.

THE COURT: Addington Group.

MR. INMAN: That's 3,000 people. She started with 5,

21

ended up with 3. I mean she started with 5, eliminated 3.
That's 2,000 people. It's right in the record, right here,
Your Honor. We can -- in the document -- in the Court records.
I'm not -- I can do it very easily. However, even if I do do
it, it doesn't matter, because you approved the -- if you'll
remember the settlement, you approved Appendix A. That was the
list you started with. Appendix A was specific names. I think
about 560 people. And you had to be on Appendix A. And there
was no option of expanding Appendix A. It was never in your
Order to expand Appendix A. You said that they had to be on
Appendix A, with no mechanisms to expand Appendix A. So you
defined the Class as 560 people. And anybody that's not on it
is entitled to their appeal rights to arbitration.

        THE COURT: Okay. And that's what you're stuck with.

        MR. INMAN: Okay. Excuse me.

        THE COURT: All right?

        MR. NEUMANN: Excuse me, Ma'am, may I ask a question?

        THE COURT: Who is speaking?

        MR. NEUMANN: Pete Neumann.

        THE COURT: Yes?

        MR. NEUMANN: What do individuals, such as myself, who
never received notification or a settlement form, or Mr. Butz,
who did receive it and mailed it back, and he never received
his stuff, or where Mr. Jameson agreed and verified me as being
entitled to a settlement, what do I do at this point? They

22

both told me they had no problem with me receiving the award.
Mr. Jameson told me I have to reopen this case. I said, "Well,
why could you just not fund or transfer the money to an
account?" He directed me to open the case. He said, "There's
nothing I can do for you unless you open the case." I had full
guidance. And in Mr. Butz's case, he followed the Court. He
mailed his claim form in. And that's the last he ever heard.

MR. JAMESON: Your Honor, can I just briefly address
with respect to Mr. Neumann, he had it wrong at first, and he
didn't get it right again. What I told him was because he did
not timely submit a claim form, I had no authority to make a
settlement payment to him under the terms of the Settlement
Agreement and the Court's Order, so that the only way that
could happen is if he got approval from the Court. That is
true. As to Mr. Butz, and I believe I have this correct, I
believe he contacted me after Mr. Neumann talked with him, and
told me that he had finally submitted a claim form, but just
never received the payments. I asked him to send -- and he
said he had proof of the mailing and receipt by the claims
agent and so on. I said, "Send me the documentation to verify
that you, in fact, sent it in. If it's good documentation and
it establishes, in fact, that you did submit it before the
deadline, then we would issue to him the payment. I've never
received that information from him since that conversation.
So, you know, I asked him for verification of that fact. He

said he had it and would send it to me, but he has not done so, so far.

MR. BARRY: And, Your Honor, one more point. Let's not forget that Mr. Neumann is also one of the parties who objected to the settlement in the first instance, and appealed the Settlement Order in the second. So Mr. Neumann should have -- for him to say he didn't know that he had to file a claim, or he wasn't aware of the deadline or of his rights, I think might be stretching it a bit. I mean he objected to the very Order that he's saying he didn't understand his rights under. So --

MR. NEUMANN: What I was objecting to more than anything, this was initially a binding Class Action without any kind of a vote or membership vote. This was turned into a Class Action with a no opt-out clause, at a full settlement. That was my objection more than anything. How could somebody turn this into a Class Action, not even ask you if you want to participate, make --

THE COURT: That's a --

MR. NEUMANN: -- make a --

THE COURT: Mr. Neumann --

MR. NEUMANN: -- settlement on your behalf, and then not even notify you?

THE COURT: Mr. Neumann --

MR. NEUMANN: That's my objection.

24

THE COURT:  Mr. Neumann, that is not the issue.  The
issue is did you have sufficient notice that there was a
deadline to file a claim.

MR. NEUMANN:  No, Ma'am.  I never received it.  I had
no communication at my phone number or --

THE COURT:  You had the settlement.

MR. NEUMANN:  -- the post office --

THE COURT:  You had the Settlement Agreement to which
you objected.

MR. NEUMANN:  I downloaded it off the internet about
two months ago.  That's correct.  And I read the whole thing
for the first time.

THE COURT:  No.  At the time you filed an appeal, you
knew the terms of the settlement to which you were objecting.

MR. NEUMANN:  When I spoke, after the deadline passed,
and I think whatever month it was we had to mail them back in -
- I spoke with Mr. O'Neill about two months later when it was
when he told me this was being appealed.  I said, "Just add me
to it then.  I have no choice.  Add me to whatever appeal
you're doing."  I personally did not do anything.  I did not
mail any forms in until I spoke with Mr. O'Neill, after the
deadline.  That was the first time I heard about a date by
which we had to mail it in.

MR. ADAMS:  Your Honor, Mr. Adams.  I believe that --
THE COURT:  Wait a minute.  Captain Adams, wait.  Mr.

25

Neumann, did you object to the settlement?

MR. NEUMANN: I objected after the deadline passed, when I did not receive any claim forms. I was told that was my only recourse.

THE COURT: Mr. Burton -- Mr. -- sorry.

MR. BARRY: I won't tell him you said that.

THE COURT: All right.

(Laughter)

MR. BARRY: Your Honor, this is Mr. Neumann's objection to the settlement. It's date stamped January 17th, '02, about 10 days before the hearing to consider the settlement. So to the extent Your Honor wants, I can hand this up for your consideration. But he clearly knew of the deadline well before the settlement was even approved. And the fact that he appealed it, again indicates that he knew of its approval and knew of its contents. So --

THE COURT: Yeah. I think to the extent that you had notice of the settlement motion and notice of approval of it, which is evidenced by both your objection and appeal, you had notice of the deadline to file a claim.

MR. NEUMANN: I spoke with Mr. O'Neill when he made me aware of this, and I said, "Do whatever needs to be done. Whatever you're pitching in to do," because I didn't have a claim form. So I was kind of riding on the coattails saying, "Whatever you guys are doing as a group, I'll be made a part of

26

it." But I never received a form to mail back.

THE COURT: Well, you're bound by what you did or failed to do. I can't grant you relief.

MR. ADAMS: All right, Your Honor, Captain --

MR. NEUMANN: What happens to those shares that have already been funded, that Mr. Jameson said he was holding, but he doesn't know how to release them?

THE COURT: Well, the Settlement Agreement tells him where to put them.

MR. NEUMANN: I mean I'm willing to give him my address, my Social Security number, whatever he needs. But he's told me he cannot give me those shares without your guidance, Your Honor.

THE COURT: Well, I'm denying your requested relief. I'm not going to grant you the option --

MR. NEUMANN: You're not gonna grant what? The shares that have been put in the account?

THE COURT: I'm not going to let you reopen the case so you can file a late claim. I think you had notice, and the time is passed.

MR. NEUMANN: So what does happen to the shares, those 340 shares?

THE COURT: Read the Settlement Agreement. Captain Adams?

MR. ADAMS: Yes, Your Honor. I believe that the

machinery that you set in motion, required Mr. Jameson and Mr. Tralens, I guess at the time, to send a notice and a claim form to each of those people on the Exhibit A list. And Mr. Neumann is saying that he never received one of those notices, as have several people that I have spoken to, who were on the A list. Now, I received mine, and I didn't sign it because I was objecting to it. But I have talked to several pilots who have said, "I never -- my name was on the list, but I never received the claim form."

MR. NEUMANN: People do move and relocate. That's one problem.

THE COURT: Well, the evidence I have before me is that it was sent to them. I don't have any evidence that they didn't receive it. To the extent Mr. Neumann is seeking to testify that he did not receive it, I'm denying his relief, because he had actual notice of the Settlement Agreement and the time to file a claim. And the fact that he did not get a form, does not relieve him of his obligation to take some action to file before the deadline, if he wanted to participate.

MR. ADAMS: Your Honor, Captain Adams.

THE COURT: Yes?

MR. ADAMS: Your Honor, you arrogated to yourself the role of arbitrator in this, and you set in motion machinery to carry out your orders. And although I don't think that was the

28

proper way to do it, I accept that Your Honor has -- seems to have the power to do it. However, the machinery that you set in motion did not work. In fact, it worked to subvert your purposes. And as a result, several people, such as Mr. Neumann, were awaiting forms from Mr. Tralens, the Class counsel, with which to file their claims. They never got those forms, or they were not processed properly. And you are saying that the negative proof, that you have no proof that it wasn't done right, is proof that everything has been satisfied by the machinery. And I submit that that is not a proper proof. That, in fact, there has to be some show by Mr. Tralens or the Class counsel remaining, that they did, in fact, mail those. They've had no proofs of mailing that I've ever heard them submit to the Court, or any other thing that they claim to have done, but that the evidence shows that they did not, in fact, do. And although Mr. Neumann may have been appealing and knew generally that he had a settlement coming due to him, he properly waited for the forms being sent out, which were never sent. And I don't think that their assertion that, "Oh, yeah, we sent them all," is good enough. I think the Court should ask for a higher standard of proof, because the prior standards of proof, which is attested to by numerous objections throughout this process, is that they never rose to that standard in any way, shape or form.

THE COURT: I don't know what proof you're attesting

29

to, Captain Adams, that they never did perform.

MR. ADAMS:  Well, Your Honor, the one --

THE COURT:  In the absence -- you're not here to testify.  I don't have evidence presented by all of these people you say didn't get notice.  There is a way to prove a case.  And the burden of proof is on those asserting they did not get their claims.

MR. ADAMS:  So there's no burden of proof on the Class counsel to say that, "I did send these forms."

MR. BARRY:  Your Honor --

MR. ADAMS:  Is that what you're saying, Ma'am?

THE COURT:  No.  I'm saying they already did that.  And if you disagree with that, you have to come forward with real evidence, not just, "So and so told me he didn't get it."

MR. BARRY:  And the only first-hand evidence Mr. Adams has, Your Honor, is that he received his claim form.  The only party he has standing to raise this issue is for himself.  And he has admitted on the record here today that he received his claim form, and that he chose not to fill it out and file it.  So, Your Honor, we would respectfully request that you deny all of the pending motions to reopen the case, subject to Mr. Jameson's -- it sounds like you've already ruled with respect to his, and all the motions to compel compliance with the Order.

THE COURT:  I'm inclined to do so.  Mr. Inman, do you

have anything further?

MR. INMAN: Yes, Ma'am. I have Mr. Neumann's daughter's list. This girl sat down for maybe three weeks, and wrote 205 names of people that were on the -- missing people, I call it. They aren't really on the -- these people that are identified on the A list. Of course, the A list is the only thing that counts anyway. That's all that counts. It doesn't matter. You know, we could find, you know, Mr. Tralens could have advertised in the newspaper and found out that Joe Schmoe was really on the list, and everything was rosy posy because he was on the Eastern 1990 list. He doesn't have any claims. He hasn't opted out. And he would go over and ask the lady, Edna, who's testified to this thing, says, "Is Edna on the list?" And she'd say, "No, she's not on the list." Even though --

THE COURT: See again, this is something that was litigated four years ago. How many years ago was the Order entered?

MR. BARRY: January 31st, '02, Your Honor.

MR. INMAN: Well, they've also had --

MR. BARRY: Over four years ago this was litigated.

MR. INMAN: Ma'am, I'm not speaking for myself. We can find those people. We can get you addresses for these people that -- there's 76,000 shares here. I'll give mine away.

THE COURT: It's too late. It's too late.

31

MR. INMAN:   Is it too late to appeal?

THE COURT:   You can appeal my Order now, but I'm denying a motion to reopen the case, because all these issues of who should or should not have been on the list, were already decided.

MR. NEUMANN:   Your Honor, Pete Neumann.

THE COURT:   Yes.

MR. NEUMANN:   When I spoke with both attorneys, Mr. Barry and Mr. Jameson, in my personal case, they both verified who I was, that I was entitled to the shares.   They were all looking for your guidance what to do with it.   They thought I was part of this from the beginning, but they were just looking what to do with all these shares.   They told me they had no idea what to do with it.   They didn't have any guidance. That's why they asked me to file a motion with the Court.

THE COURT:   All right.

MR. NEUMANN:   I just called them up and I said, "Can you please finally release the shares that were put aside four years ago?"   They both took a week to verify who I was.   They both agreed to my background, that they knew I was part of EPFF.   All I'm asking for is what was already funded.

THE COURT:   Well, I understand, but I'm going to deny the relief you're requesting, Mr. Neumann.

MR. NEUMANN:   So what happens to the shares that Continental put in its escrow account?

THE COURT:  I believe under the Settlement Agreement they go back to Continental.  Am I correct?

MR. NEUMANN:  And Mr. Barry says, "We don't want the stock back."  I asked him that question.  He said, "We funded it.  It's between you and Mr. Jameson."

MR. JAMESON:  Your Honor --

MR. NEUMANN:  When I called Mr. Jameson, he said, "I have such a mess in paperwork, I have no idea what to do right now.  I need Court guidance."

MR. JAMESON:  Your Honor, just to be correct, they actually go back to the Continental Estate --

THE COURT:  Okay.

MR. JAMESON:  -- not to Continental itself.

THE COURT:  I'm sorry.

MR. INMAN:  May I ask a question?  Were you intending to have a Class Action that would identify people who had not opted out that were on the 1990 Seniority List?

THE COURT:  I'm not gonna relitigate what the settlement dealt with.  The list was prepared and approved.  It was amended and approved.  That's the list.

MR. INMAN:  I agree.  But we could have written this Order just as easy to say let's publish the A list and pay these people some money.  So if you didn't want to provide a Class Action for people who had not opted out, I'll take it that you didn't really want to do that.  Thank you.

33

THE COURT:   Listen.   The pilots have litigated this
for years and years and years.   And the Court is well aware
that they would file documents and not file documents based on
what they perceived was their rights.   If they did not file a
claim, the Court presumes they did not want to be part of the
settlement, and did not want to receive these shares, because
they felt they had other rights that they could pursue on
appeal.   So I recognize that certain pilots did not want to
participate.

MR. NEUMANN:   Your Honor, why was this not sent
certified mail or return receipt so there's some kind of
documentation this was mailed?

THE COURT:   I'm not answering any questions.   I've
made my ruling.   I'm not inclined to grant any relief on any of
the motions.   The case has been decided, and the parties are
stuck with what was decided four years ago.

MR. NEUMANN:   So these shares will never be
distributed to whom they were intended to be distributed to.

THE COURT:   The Settlement Agreement will be complied
with.   All right, we'll stand adjourned.

MR. JAMESON:   Your Honor, should we submit an Order
with respect to all of the pending motions, or will Your Honor
just simply rely on the oral ruling today?

THE COURT:   I'd like a Form of Order.

MR. JAMESON:   Very well.   Thank you very much, Your

Honor.

       THE COURT:    Thank you.

     (Court adjourned)


CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          _____
Signature of Transcriber                 Date