IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>CONTINENTAL AIRLINES, INC., et. al<br><br>Debtor | ) Chapter 11<br>)<br>)<br>)<br>)<br>) Case No. 90-932 &90-933 (MFW) |
| Ramon E. O'Neill<br>J. Trigg Adams<br>Brownie N. Inman<br><br>Appellants<br>v.<br><br>JAMES BALDRIDGE, WILLIAM MANN<br>and LARRY DUNN.<br>Representatives of the LPP CLAIMANTS,<br><br>and<br><br>CONTINENTAL AIRLINES, INC.<br><br>Appellees, | ) Civil Action No. 06-568 (SLR)<br>) (Lead case) |

## REPLY BRIEF OF APPELLANT J. TRIGG ADAMS

### A.  INTRODUCTION

This case that never seems to end is once again characterized by misleading and inaccurate statements by the appellees, and once again repeated in their answering brief. The case has been led down many blind alleys by these sorts of misdirections, enabling the appellees to circumvent both bankruptcy and Railway Labor Act laws, to the point that at this juncture no proper application of these laws can be effected. However, it is possible to effect some small remedy for those who have been cheated, and, more

importantly, bring to the bar those who have caused this miscarriage by misleading the Courts.

In this action, my only purpose is not to re-argue the case, but only to point out to the Court the deceptions, and some outright lies, contained in the record, upon which the Courts have relied in their judgments and orders.

### B.   HISTORY

1.   On February 24, 1986 Eastern Airlines, Inc. (EAL) and the Airline Pilots Association (ALPA) signed a contract under the Railway Labor Act, (RLA), which contained Labor Protective Provisions (LPPs) which are the crux of this portion of the Continental Airlines, Inc. (CAL) bankruptcies.

2.   On March 9, 1989, Eastern had filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Eastern cited the Bankruptcy Code's automatic stay of litigation and refused to participate in the arbitration. <u>The United States Court of Appeals for the Second Circuit held that Eastern must submit to arbitration because</u> "[a] application of the automatic stay to ALPA's attempt to invoke [the arbitration] provision of the collective bargaining agreement would allow Eastern unilaterally to alter the collective bargaining agreement by avoiding its obligation to arbitrate." In re Ionosphere Clubs, Inc., 922 F.2d 984, 992-93 (2d Cir. 1990) cert. denied, 502 U.S. 808 (1991).

3.   On December 3, 1990, CAL filed for bankruptcy protection, (CAL I)

4.   On April 16, 1993 judge Bailick entered an order confirming the reorganization plan of CAL I, effective April 27, 1993, containing an order permanently enjoining LPP arbitration, including the Kasher Arbitration, and including it's previous February 1, 1993 order, which limited any LPP claims to a pre-petition, general liability

status, thus negating any application of RLA statutes, which are normally outside the jurisdiction of the Bankruptcy Courts.

5. On May 18, 1993 CAL filed its first Motion to Dismiss any and all LPP claims.

6. On April 24, 1994, CAL and ALPA negotiated a Settlement Agreement, effective July 19, 1994, with prejudice, that had "no effect" on non-participants, which removed the majority of claimant pilots from the field of contention, and which required CAL to notify and pay the settlement to the pilots who agreed to it. The Settlement Agreement clearly stated that all non-participants still retained their rights to fight for the LPPs or any other claim against CAL, and did not indicate in any way that a new and separate claim need be filed, the earlier blanket claim of ALPA still being in effect.

7. On September 2, 1994 CAL filed a second Motion to Dismiss all remaining outstanding LPP claims. In its Reply Brief, it ironically demonstrated that the Settlement Agreement had no effect on the remaining LPP Claimants.

8. On November 29, 1995 judge Longobardi, in his order from the District Court, reaffirms that the LPP claims stem from a RLA "minor dispute", over which only an Arbitrator has jurisdiction, and orders that line to be pursued before determining a final settlement for the remaining pilots.

9. On August 29, 1997, the Appeals Court reaffirmed judge Longobardi's order that <u>all eligible</u> LPP Claimants had a right to arbitrate, and that the injunction ordered by judge Bailick was vacated.

10. CAL sends confidential proposed settlement letter to Trailins on Sept 20, 1999. In it, Mr. R.E. Curtis, Managing Attorney, Labor and Employment, (who I would

presume to have some working knowledge of applicable RLA statutes he is intending to subvert here), states:

> "However, in order to avoid what could be years longer litigation and to finally resolve these long-pending claims, Continental would propose the following settlement terms:
>
> (1)     If, as a result of the declaratory action we understand you will bring on behalf of <u>all eligible EAL pilots,</u> (emphasis mine), a final declaratory ruling is issued that the LPP claims are subject to a limitation of one year's back pay pursuant to Bankruptcy Code Section 502(b)(7),.........."

It clearly shows that he recognizes that ALL remaining EAL pilots have valid claims. Further down it also shows that neither he nor Class Counsel had any illusions that they were intending to subvert an honest count of those remaining, as he continues:

> "Before proceeding to make this offer generally available, we would like to have your agreement that you will endorse the terms of the settlement to the pilots you represent"

I was representing myself before the Court, as were others, as they both well knew, and their subsequent "attempt" to notify "all" pilots, when CAL had the name, address, phone number, social security number, and employee number of every pilot who had ever been hired by EAL was a sham. All objections to that glaring reality to the Court were ignored by the Court, a result they most certainly counted on.

### C.     DISAGREEMENT WITH CAL'S STATEMENT OF THE ISSUES

Again, disingenuously, CAL states that I am re-trying previously decided issues. My sole purpose in this appeal is to bring to the Court's attention glaring inaccuracies, misstatements, omissions, and lies brought before it by the Appellees during the prosecution of this bankruptcy case.

### D. SUMMARY OF MY ARGUMENTS

1. My contentions on this appeal are solely to the point of the inaccuracies, misstatements, omissions, and lies brought before this Court, which I have certainly voiced in earlier hearings, but which have never been ruled upon by this or any other court, and therefore do not fall under *res judicata*.

2. I am not attempting to advance the rights of any other party, fully aware that I can only speak for myself, and have not done so, other than reference to the fact that what has happened to me has happened to all other LPP claimants.

3. Based on the record, this Appeal should be carefully vetted, the evidence properly considered, and any party guilty of violation of submitting false or misleading information, or of willfully hiding appropriate evidence, should be sanctioned according to the dictates of the applicable statutes.

### E. STATEMENT OF FACTS

1. Throughout the bankruptcy process CAL has constantly harped on the theme that the EAL pilots did not have valid Labor Protective Provisions, and/or that they did not apply to ALL of the pilots, to the effect that the Court has gotten hypnotized by the mantra and to this day only has a hazy concept of applicable RLA law and has applied it inconsistently throughout. During this period, CAL applied to the Department Of Transportation for permission to sell some of the EAL international routes to Delta Airlines, and in its application unequivocally stated that there were no LPP obligations, knowing that to be patently false. To wit, a letter dated November 11, 1998, from Continental counsel, John Geier, to the National Mediation Board asks them not to honor

an arbitration request from another group of EAL pilots, (the 300 who later renounced their claims in Bankruptcy to pursue another legal avenue), stating:

> **"The NMB previously supplied a panel of arbitrators in response to the request of certain former Eastern pilots, represented by attorney Myles Trailins, seeking to arbitrate pursuant to the LPP clause of the 1986 collective bargaining agreement between Eastern and the Air Line Pilots Association ("ALPA") (the "Eastern LPPs").**

I am not aware of Mr. Geier's familiarity with RLA machinery, but, since the letter is in his name, I assume he should have known that an even earlier arbitration he refers to as the Kasher Arbitration later in the letter, was still pending, for the grievance procedures under the RLA state unequivocally that a minor dispute continues until an arbitrator rules or the parties settle it. It is still open to this day!

2. During the process, CAL acquired People's Express, Frontier, and New York Airlines, and integrated those pilots into their system with no major problems. In the Bankruptcy Court, however, they asked for relief from doing the same with the EAL pilots, citing training and morale problems, misrepresenting the LPP claims of the EAL pilots and the fact that the EAL pilots were already trained on the A300 and B757 aircraft they obtained from EAL, and which CAL had no experience in operating. All of the pilot integration negotiation and arbitration issues in these mergers were kept from the Bankruptcy Court.

3. The Continental/ALPA Settlement of April, 1994 included 200+ preferential hiring interviews. From July, 1994 thru September 1997 Cal hired 220 pilots and never called one EAL pilot, contrary to the Court-sanctioned Settlement. When the Appeals Court reaffirmed judge Longobardi's decision that the EAL pilots, in their entirety according to RLA law, had a right to arbitrate, CAL then decided to honor the

EAL preferential hiring provision. The pilots subsequently hired from the EAL group suffered a three years' loss of seniority thereby, and the Court knew nothing of this abrogation of the Settlement Agreement. The Court never asked for, and CAL certainly never volunteered, any information to prove they were following the letter of the Settlement., despite being repeatedly told by myself and others that such was the case.

4. Because of the previous misdirection of the Court, it then allowed a further diversion from the RLA-mandated and confirmed right-to-arbitrate by allowing the LPP Claimants to certify as a Class Action, during the process of which they were allowed to whittle down the remaining 2232 eligible pilots to a submitted list of 584. After objections that the process was not carried out with proper due diligence and notification, and that it ignored RLA law that prohibits settlement for only a part of a represented group, the Court grudgingly ordered them to do better. Class Representatives came up with only another 256 pilots, for a total of 840, a number less than half of what they or CAL certainly knew to be true. The Court obligingly accepted that number at face value, <u>and ignored and did not investigate or rule on my, or any other, objections that the process was a sham, that it violated the RLA, and that there were gross misstatements of fact and conflicts in all of the documents</u>. Those documents are to this day proof of perjury, and the Court has done <u>nothing</u> to investigate or rule on claims that the submissions were false.

5. During the January 31, 2002 hearing, CAL admitted that they had transferred <u>certain</u> EAL pilots to CAL under a settlement outside the bankruptcy process, evidence of which was material to the bankruptcy process, and which was completely

contradicted by statements they were making in the bankruptcy Court to thwart the efforts of EAL pilots to obtain a settlement that, under both bankruptcy and RLA statutes, is <u>mandated</u> to be equitable.

6.  In May, 2002, Class Representatives and CAL reduced the numbers of the Class, citing the ALPA Proof Of Claim, filed years earlier, before it bowed out as the representative of the Eastern Pilots, which clearly stated that it covered <u>all pilots working under the Collective Bargaining Agreement</u>, "CBA", who had not taken the CAL/ALPA Settlement. Again, such reduction is a violation of RLA and Bankruptcy law, unaddressed by the Court, despite objections that its language was misrepresented, the claims triggered by it were still in good standing, and that ALPA was not a party to the Class Settlement.

7.  CAL, in its most recent reply in this action, states that the Class was expanded, when it well knows that it was, in fact, grossly reduced through the chicanery cited herein and in earlier filings by myself and others. Such a statement is not merely misleading or disingenuous, but an outright lie, and as such, constitutes a fraud upon the Court which must be addressed.

## F. ARGUMENT

1.  Continental was vouchsafed the pilot records of Eastern Airlines. I know this because I had to write to them to obtain my final flight records after Eastern closed its doors. I also know this because they administered the CAL/ALPA Settlement, dealing with the 2723 pilots who elected to take the Settlement. They could not fail to miss the fact that 300 pilots in the Eastern Pilots Merger Committee dismissed their claims to pursue other remedies in other courts. They had to know that 1935 pilots remained

claimants from the 4958 who were listed on the Master Seniority List when EAL shut down. RLA statutes are very clear that anyone hired, even as a strikebreaker, even on probation, to work under a CBA is covered by those statutes, and that no courts outside the framework delineated in the RLA can interfere with that relationship. Section 1113 only, of Title 11, can, with a complex process, abrogate <u>some of the CBA protections, but even then cannot remove basic contract rights for only a part of a group</u>. Therefore, any statement to the Court that there were less than 1935 remaining claimants is a conscious lie, a deliberate attempt to mislead the Court, which is a violation of Title 11:523 and 18 USC. The Court, having easily digested all the misdirections and lies, and, ignoring my and other's objections, but not ruling on them, allowed a group of some of the remaining Claimants to certify as a Class Action. Although a gross violation of RLA statute, and ignoring the simple fact that ALL remaining pilots still had a valid claim dating from the outset, it tortuously wound its way through several years of litigation about who was still eligible, new bar dates, machinery for certifying "new" claims, etc. All the while it ignored pleas that the very foundation of ALL the claims lay in the RLA statute machinery which mandate that a "minor dispute" such as this LPP Claim is, (and which definition has been unsuccessfully challenged in this action), can <u>only be resolved by RLA-mandated processes which are ABSOLUTELY outside of the jurisdiction of this or any other court</u>.

3.  I am not re-litigating the issue here. Instead I call attention to the evidence that the underlying information upon which the judgments were rendered were deliberately false and misleading, and in this instance, the LPP Claimants Class were now joining CAL in perpetuating the previous disinformation, and creating new disinformation.

Again the Court ignored arguments of mine and others regarding these calumnies, and did not rule on them.

4.      CAL says that, "nearly every item identified by each of the appellants......appears to relate solely to the Baldridge Class membership and nothing else." Such is not the case at all, for in my **Statement Of Facts**, above, the first item refers to the fact that CAL knew full well what the RLA says about the machinery of RLA-based grievances, yet they represented to the Court throughout that the EAL pilots had NO LPP claims. During the long period of proving them wrong, until judge Longobardi affirmed them wrong, they led the Court into decisions that made a mockery of both Bankruptcy and RLA statutes, which they knew could not or would not be undone when the original lie was disproven.

5.      And, during this process, as I point out in Fact 2, they hid from the Bankruptcy Process material changes and events which should not have gone unnoticed by the Court's supervision, and which proved that what they were alleging in the Bankruptcy Court was a lie.

6.      Furthermore, even while evading their legal burden of due process with the EAL pilots, illegally abrogating laws against "union busting" by using the court litigation as a shield, substituting a pennies-on-the-dollar first Settlement, they cheated on THAT!, as I point out in Fact 3.

I am sorry that the Counsel for CAL feels that I am "inflammatory", but there really is no way in polite language to express the idea of "lie" and "fraud" except to use those words. In cases where they apply, they are merely direct statements of fact. And if Counsel feels that this appeal to uphold the letter of the law is "vexatious", then he ought

to be grateful that his was not one of the thousands of careers that were destroyed by the pattern of legal chicanery that all of his litigation enabled. "Vexed" might better be applied to those who are victims of real harm by misuse of the legal system.

### G. CONCLUSION

WHEREFORE, for all of the foregoing reasons and fact, already entered in the record, I respectfully request that this Court, (i) investigate the truth of the allegations contained herein, for the first time, (ii) if any of the submissions to the Court are found to be false or misleading, or the appellees are found to have withheld pertinent information from the Court, to sanction them to the extent the law requires, and, (iii) re-state such rulings that are found to have been occasioned by such misdeeds, and further, (iv) to immediately mandate full adherence to its Order of January 31, 2002, requiring that ALL remaining 2232 LPP Claimants, whether identified by the Class or not, be brought even with those Claimants who were paid, until such further relief, if any, that this Court may subsequently deem proper.

Dated: May 1, 2007

J. Trigg Adams, *pro se*
3824 park Ave
Miami, Florida, 33133
305-665-8904

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br>CONTINENTAL AIRLINES, INC., et. al )<br>   )<br>Debtor )<br>   )<br>_____ )<br>   )<br>**Ramon E. O'Neill** )<br>**J. Trigg Adams** )<br>**Brownie N. Inman** )<br>   )<br>Appellants )<br>   v. )<br>   )<br>   )<br>JAMES BALDRIDGE, WILLIAM MANN )<br>and LARRY DUNN. )<br>Representatives of the LPP CLAIMANTS, )<br>   )<br>   and )<br>   )<br>CONTINENTAL AIRLINES, INC. )<br>   )<br>Appellees, )<br>   )<br>_____ )   | Chapter 11<br><br><br><br><br>Case No. 90-932 &90-933 (MFW)<br><br>Civil Action No. 06-568 (SLR)<br>(Lead case) |

## CERTIFICATE OF SERVICE

I, J. Trigg Adams, certify that I am not less than 18 years of age, and that service of **REPLY BRIEF OF APPELLANT J. TRIGG ADAMS** was made on May 02, 2007 upon the attached service list by FedEx, unless otherwise specified.

Under penalty of perjury, I declare that the foregoing is true and correct.

*[signature]*

J. Trigg Adams, *Pro Se*

Counsel for Continental Airlines:
Robert Brady, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17 Floor
Wilmington, DE 19801


Counsel for LPP Claimants:
Bruce Jameson, Esq.
1310 King Street
Wilmington, DE 19801

Hand Delivered and Electronically to
Ramon and Brownie N. Inman




**Please Rush To Addressee**

**FOR PICKUP OR TRACKING CALL 1-800-222-1811**



EB 494940368 US

**EXPRESS MAIL** — UNITED STATES POSTAL SERVICE®

**Mailing Label**
Label 11-B, March 2004
**Post Office To Addressee**

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | AM/PM | Employee Signature |
| Mo.   Day |  |  |  |
| Delivery Attempt | Time | AM/PM | Employee Signature |
| Mo.   Day |  |  |  |
| Delivery Date | Time | AM/PM | Employee Signature |
| Mo.   Day |  |  |  |

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 33283
Day of Delivery: ☑ Next  ☐ 2nd  ☐ 2nd Del. Day
Postage: $14.40
Scheduled Date of Delivery: Month 5  Day 2
Return Receipt Fee: $1.85
Date Accepted: Mo. 5  Day 1  Year 07
Scheduled Time of Delivery: ☐ Noon  ☑ 3 PM
COD Fee: $
Insurance Fee: $
Time Accepted: 16:19 ☐AM ☑PM
Military: ☐ 2nd Day  ☐ 3rd Day
Total Postage & Fees: $16.25
Flat Rate ☐ or Weight: lbs 0  ozs 8
Int'l Alpha Country Code:
Acceptance Emp. Initials: (illegible)

**CUSTOMER USE ONLY**
PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.
Federal Agency Acct. No. or Postal Service Acct. No.

☐ WAIVER OF SIGNATURE (Domestic Mail Only)

☐ NO DELIVERY  ☐ Weekend  ☐ Holiday   Mailer Signature

**FROM:** (PLEASE PRINT)  PHONE ( 305 ) 665-8904

J. TRIGG ADAMS
3824 PARK AV
MIAMI FL 33133

**TO:** (PLEASE PRINT)  PHONE ( )

C.S. DISTRICT COURT
844 N. KING ST
WILMINGTON, DE

ZIP + 4: 19801

**FOR PICKUP OR TRACKING**
Visit www.usps.com
Call 1-800-222-1811

EMS